UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | April 3, 2017 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | | |
|---|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:
 Brianna Dahlberg
 Carole Handler
 Drey Cooley

Attorneys Present for Defendants:
 Aaron Wais (By Telephone)
 Vincent Chieffo

**Proceedings:** DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT (Filed January 23, 2017, Dkt. 228)

## I.   INTRODUCTION

On July 1, 2014, Marcus Gray (P.K.A. Flame), Lecrae Moore (P.K.A. Lecrae), Emanuel Lambert, and Chike Ojukwu filed this action alleging that the song "Dark Horse" infringes upon plaintiffs' copyright in the song "Joyful Noise." Dkt. 1. Since then, plaintiffs have repeatedly amended their pleadings to add or dismiss various parties. The operative Third Amended Complaint ("TAC") no longer lists Moore as a plaintiff and alleges copyright infringement by Katheryn Elizabeth Hudson (P.K.A. Katy Perry, hereinafter "Perry"); Jordan Houston (P.K.A. Juicy J); Lukasz Gottwald (P.K.A. Dr. Luke); Sarah Theresa Hudson; Karl Martin Sandberg (P.K.A. Max Martin); Henry Russell Walter (P.K.A. Cirkut); Kasz Money, Inc.; Capitol Records, LLC; Kitty Purry, Inc; UMG Recordings, Inc.; Universal Music Group, Inc.; WB Music Corp; BMG Rights Management (US) LLC; and Kobalt Music Publishing America, Inc.

On September 16, 2016, plaintiffs filed a motion before the Honorable Jacqueline Chooljian, United States Magistrate Judge ("the Magistrate Judge"), to compel production of concert revenue information by Perry and her personal services corporation, Kitty Purry, Inc. (collectively "Perry defendants") related to Perry's "Prismatic World Tour." Dkt. 157. On October 11, 2016, the Magistrate Judge granted plaintiffs' motion with respect to domestic concerts and ordered the Perry defendants to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL            'O'

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | April 3, 2017 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

produce "[d]ocuments and information sufficient to reflect the gross ticket sales/revenues and the top line gross expenses (by categories utilized in such defendants' existing accounting methods) of the 'Prismatic World Tour' concerts in the United States as a whole." Dkt. 162 ("the Discovery Order"). On October 25, 2016, the Perry defendants filed a motion seeking review and reconsideration of the Discovery Order. Dkt. 168. On December 5, 2016, the Court denied the Perry defendants' motion, but stayed discovery of concert revenue information pending resolution of a motion for partial summary judgment. Dkt. 214. The instant motion followed.

On January 23, 2017, the Perry defendants filed the instant motion for partial summary judgment seeking a determination that Perry's concerts could not have infringed plaintiffs' copyrights because they were licensed.[1] Dkt. 228. On February 27, 2017, plaintiffs filed an opposition. Dkt. 233. On March 20, 2017, defendants filed a reply. Dkt. 236.

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.    BACKGROUND

Unless otherwise noted, the following background is undisputed.

Plaintiffs are an "American Christian hip hop" performance group. TAC ¶¶ 5-7. Plaintiffs allege that they are the authors and creators of a song entitled, "Joyful Noise." Plaintiffs claim to have created the song in 2007 and released the song in March 2008. Id. ¶ 27. On June 3, 2014, the United States Copyright Office issued a certificate of registration for the copyright in "Joyful Noise." Id. ¶ 28.

Defendants own rights in a song called "Dark Horse," which appeared on the "Prism" album released by Perry in October 2013. Dkt. 233-2, Plaintiffs' Statement of Genuine Disputes ("SGD") No. 6. Plaintiffs allege that "Dark Horse" infringes upon

---

[1] The instant motion was filed by the Perry defendants and has not been joined by any others. For purposes of this order, the Court refers to the Perry defendants as "defendants."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL            'O'

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | April 3, 2017 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

their copyrights in the song "Joyful Noise," and that defendants' "unauthorized reproduction, distribution, and public performance of [p]laintiffs' musical composition constitute infringement of plaintiffs' exclusive rights in their copyright." TAC ¶ 3.

At issue in the instant motion are certain concerts at which Perry performed the song "Dark Horse." Specifically, between June 2014 and October 2014, as part of her "Prismatic World Tour," Perry performed 50 concerts at 39 venues in the United States ("the Tour"). SGD No. 1. During each concert of the Tour, Perry performed "Dark Horse." Id. No. 2. The parties dispute whether those performances *could* violate plaintiffs' copyrights in the song "Joyful Noise," even if the song "Dark Horse" infringes upon "Joyful Noise."

Defendants do not concede that "Dark Horse" infringes upon "Joyful Noise." That dispute remains fundamental to this case. In the instant motion, defendants argue that, assuming arguendo "Dark Horse" infringes upon "Joyful Noise," the Tour performances could not infringe upon plaintiffs' copyrights because these performances were authorized by licenses issued by the American Society of Composers, Authors and Publishers ("ASCAP").

A.   **Licensing the Prismatic World Tour**

ASCAP is a performing rights organization ("PRO") that "licenses the public performance of nondramatic musical works on behalf of copyright owners of such works." 17 U.S.C. § 101 (defining "performing rights society" and expressly referring to ASCAP). Perry, S. Hudson, Gottwald, Walter, and their affiliated music publishers are all members of ASCAP. SGD No. 8. Plaintiff Gray and his affiliated music publishers are also ASCAP members. Id. No. 9. Members of ASCAP grant ASCAP the non-exclusive right to license public performances of the members' musical compositions.[2]

---

[2] Plaintiffs acknowledge that Gray is a member of ASCAP, but argue that defendants have not adequately demonstrated that Gray has granted ASCAP the non-exclusive right to license public performances of his music. Plaintiffs argues that "[a]t most" defendants' evidence demonstrates that Gray is a member of ASCAP, but that defendants have not established the terms of Gray's membership agreement with ASCAP. The Court will discuss below whether the foregoing presents a material issue of disputed fact.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | April 3, 2017 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

Id. No. 5.  It is undisputed that ASCAP does not issue licenses to its members or other performers, but instead, in practice, issues them to promoters or concert venues.[3]  Id. No. 17.

AEG Live LLC ("AEG"), which is not a party to this dispute, worked as the promoter for all Perry's concerts during the Tour.[4]  Id. No. 3.  Defendants aver that AEG "was licensed" by ASCAP in relation to the songs within the ASCAP repertory.  Id. No. 15.  Plaintiffs dispute whether any license of AEG's would protect the Perry defendants from a suit for copyright infringement.  Id.

In support of their contention that AEG Live "was licensed" by ASCAP in relation to the Tour, defendants have offered Schilder's declaration, in which Schilder states:

> Each Tour Concert was presented pursuant to a blanket concert public performance license issued by ASCAP to all members of the North American Concert Promoters Association ("NACPA") [, of which AEG is a member] . . .

Schilder Decl. ¶ 4.  Like AEG, the NACPA is not a party to this action.

---

[3] Plaintiffs argue that defendants have not demonstrated whose "obligation" it is to obtain a license for public performances of songs in the ASCAP repertory.  Even if true, this argument is beside the point.  At issue here is whether ASCAP issued the License to AEG that is presently before the Court and the scope of that License.

[4] Defendants do not present evidence describing the role of AEG in the planning and performance of concerts other than their statement that AEG was a promoter.  Nor do defendants describe the relationship between the Perry Defendants and AEG, if any, except for the statement, offered by AEG's Assistant General Counsel, that "AEG Live was the concert promoter" of all Perry's Tour concerts.  Dkt. 228-6, Declaration of Madeline Schilder ("Schilder Decl.") ¶ 2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| | | | |
|---|---|---|---|
| Case No. | 2:15-cv-05642-CAS (JCx) | Date | April 3, 2017 |
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

### B. Content of the ASCAP License Issued to AEG

Defendants have not submitted a licensing agreement between AEG and ASCAP. On October 25, 2016, defendants filed a declaration from Richard Reimer, ASCAP's Senior Vice President of Legal Services, in which Reimer explains that an exhibit attached to his declaration, exhibit 2, "is a true copy of the form of ASCAP's 'Concerts and Recitals – Blanket License Agreement,' which sets forth the scope of the license granted by ASCAP for each of the Perry Concerts." Dkt. 168-1, Declaration of Richard Reimer ("Reimer Decl.") ¶ 5. In Schilder's declaration here, Schilder confirms that "[t]he scope of the licensing terms of the ASCAP" license obtained by AEG is set forth in the same exhibit, specifically docket number 168-2 (the "License").[5] Schilder Decl. ¶ 4.

The License provides that it is an "agreement between" ASCAP and a "LICENSEE." License at 1. The License states:

> ASCAP grants and LICENSEE accepts a license to perform publicly or cause to be performed publicly at concerts or recitals ('concerts') in the United States presented by or under the auspices of LICENSEE, and not elsewhere or otherwise, non-dramatic renditions of the separate musical compositions in the 'ASCAP repertory.' For purposes of this Agreement 'ASCAP repertory' means all copyrighted musical compositions written or published by ASCAP members . . . .

Id. ¶ 1(a). The License contains several "Limitations," which provide:

> (a) This license is not assignable or transferable by operation of law or otherwise, except upon the express written consent of the parties . . . .
>
> (b) This license is strictly limited to the LICENSEE and to the premises where each concert is presented, and does not authorize any other performances other than those given at the premises as part of licensed

---

[5] The License presently before the Court is a blank license form, which has not been signed or completed by any licensee. However, the parties appear to agree that the License's terms should govern the resolution of this motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | April 3, 2017 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

concerts. This license shall not cover concerts for which the information required under Paragraph 3 of this Agreement has not been provided.

(c) This license does not authorize broadcasting . . . of renditions of musical compositions in ASCAP's repertory to persons outside of the premises where each concert shall be presented . . . .

(e) This license does not authorize the performance of any special orchestral arrangements or transcriptions of any musical composition in the ASCAP repertory, unless such arrangements or transcriptions have been copyrighted by members of the ASCAP . . . which have granted the ASCAP the right to license such performances.

(f) ASCAP reserves the right at any time to withdraw from its repertory and from operation of this license, any musical work as to which any suit has been brought or threatened on a claim that such composition infringes a composition not contained in ASCAP's repertory, or on a claim that ASCAP does not have the right to license the performing rights in such composition.

Id. ¶ 2. As discussed in more detail below, ASCAP members agree to certain procedures for seeking royalties from the performance of songs in the repertory that they claim infringe their own works. Infra § II.C.

The License also requires certain reporting by the Licensee after a performance. The Licensee must make quarterly reports to ASCAP submitting a report "stating whether concerts were presented during the previous quarter." Id. ¶ 3(b). For each concert in the report, the licensee must state: (1) the concert date; (2) the "name of the attraction(s) appearing;" (3) details about the venue and its seating capacity; (4) the Gross Revenue of the event excluding certain costs and taxes;[6] (5) the name and address of any organization for whom the concert was performed as a "Benefit Event;" (6) the license

---

[6] In this respect, the Licensee may deduct "the portion of the ticket price donated by the performing artist to a specific charity, provided that the deduction may not exceed $5.00. The LICENSEE shall furnish ASCAP with a copy of the artist agreement setting forth the exact amount of the charitable donation per ticket sold." Id.

Case 2:15-cv-05642-CAS-JC   Document 246   Filed 04/03/17   Page 7 of 17   Page ID #:2061

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**    'O'

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | April 3, 2017 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

fee due for each concert; and (7) the total license fees due for the previous quarter. Id. In addition to the foregoing reporting, the Licensee must "furnish to ASCAP, where available . . . a program containing a list of all musical works, including encores, performed in each of LICENSEE'S concerts." Id. ¶ 3(f). The License further provides that its meaning "shall be governed by and construed in accordance with the laws of the State of New York, without regard to its conflict of laws principles." Id. ¶ 8.

Appended to the blank License in the record is a "Blanket Concert and Recital," "Report Form." Dkt. 168-2 at page 11 ("Report Form"). The Report Form, which has not been filled in, contains a table wherein a party, presumably the Licensee, would fill in the reporting details listed above. It contains blank spaces wherein the Licensee would list the "PERFORMER & OPENING ACTS," venue, city, date, and revenue data. Id. It also contains checkboxes wherein the party completing the report would note whether a "program or song list" was attached. Id.

### C. ASCAP's Performance License System

ASCAP issues licenses on behalf of "over 585,000 songwriter, composer, and music publisher members." Reimer Decl. ¶ 2. It grants performance licenses to its members' songs, collects licensing fees, and distributes royalties to its members. Id. In support of their motion, defendants have offered an expert report by Bob Kohn. Kohn is a Visiting Scholar at Columbia Law School and co-author of a treatise on music licensing entitled *Kohn on Music Licensing*. Dkt. 228-5 ("Kohn Report") at 1. In his report, Kohn explains ASCAP's organization and rules in more detail.[7]

---

[7] Plaintiffs object to the entirety of the Kohn report as impermissible legal opinion regarding legal issues for the Court to decide. However, Kohn appears to be sufficiently qualified to offer his observations of industry practice and opinions regarding the same. To the extent that the Court relies upon the Kohn report here, plaintiffs' objection is overruled because the Court relies only upon Kohn's undisputed opinions regarding the custom and practice in the industry. The Court does not rely upon Kohn's conclusions of law. As a result, the Court does not reach the question of whether certain discrete passages of the Kohn Report, upon which it does not rely, should be excised on the basis that they are inadmissible legal opinions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL  'O'

| | | | |
|---|---|---|---|
| Case No. | 2:15-cv-05642-CAS (JCx) | Date | April 3, 2017 |
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

Kohn explains that all ASCAP members, when they become members, agree to a system for resolving disputes over royalties for allegedly infringing works. Specifically, according to Kohn, membership agreements incorporate by reference a compendium of rules, including the following:

> **2.8.1 Disputed Claims Between ASCAP Members.** When one Member of ASCAP claims all or a portion of an interest in a composition or catalog that has been claimed by another Member and ASCAP concludes that there is reasonable basis for the claim, ASCAP may hold royalties attributable to the disputed portion of such interest for as long as ASCAP deems appropriate. If ASCAP does hold such royalties, ASCAP will notify both Members. At ASCAP's sole discretion, ASCAP may determine that an agreement indemnifying ASCAP against claims by either Member, or a suitable bond, can be accepted as a condition to release such royalties. If there is no indemnification agreement, suitable bond or a resolution of the claim between the two Members, ASCAP may, at its sole discretion, either release the royalties being held or seek appropriate legal remedies, which may include initiation of an interpleader action.

Id. at 17 (internal pagination) n. 4. As Kohn explains, performers, venues, and promoters rely upon ASCAP licenses and ASCAP's resolution of disputes. In practice, ASCAP resolves entitlement to royalties from the performance of an infringing song without removing the song from the repertory or otherwise restricting ASCAP's authority to maintain licensing agreements for allegedly infringing songs. Id. The foregoing process permits a member who claims rights in a song that is in the repertory to obtain royalties for performances of the song without disturbing the continuity of licenses for the alleged infringing song.[8] Id.

---

[8] As part of plaintiffs' efforts to enforce their alleged rights in "Dark Horse," plaintiffs have demanded that ASCAP withhold royalties earned by "Dark Horse" based on the claim that it infringes upon their rights in "Joyful Noise." SGD No. 25. Because of plaintiffs' demand, ASCAP has agreed to withhold, and has withheld, royalties relating to defendants' performances. Id. No. 26.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL           'O'

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | April 3, 2017 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

### III. LEGAL STANDARDS

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

### IV. DISCUSSION

The Perry defendants seek a finding that Perry's performances of "Dark Horse" during the Prismatic World Tour did not infringe upon any of plaintiffs' copyrights in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-05642-CAS (JCx) | Date | April 3, 2017 |
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

song "Joyful Noise" because these performances were authorized by the ASCAP license issued to the NACPI and/or AEG in relation to Perry's concerts.

Before reaching the central issue to this motion, the Court must first address an argument raised by plaintiffs about Gray's own membership in ASCAP. Specifically, plaintiffs argue that defendants have not satisfied their initial burden of demonstrating that Gray signed any membership agreement with ASCAP or the terms of any such agreement. Because ASCAP cannot license rights in songs without an initial grant of authority from the owner of such rights, the License at issue stems from whatever rights Gray granted to ASCAP in the song "Joyful Noise." However, plaintiffs' argument is without merit. The undisputed evidence demonstrates that Gray granted ASCAP the authority to issue nonexclusive performance licenses in the song "Joyful Noise."

It is undisputed that Gray and his affiliated music publishers are ASCAP members. SGD No. 9. Plaintiffs appear to argue that, although Gray acknowledges being a member of ASCAP, defendants have failed to make any showing that he has authorized ASCAP to issue performance licenses for the song "Joyful Noise." On the contrary, the undisputed evidence is that the song "Joyful Noise" is currently listed in ASCAP's repertory. See Chieffo Decl. ¶ 5 (explaining that Exhibit 4 to his declaration was taken from the ASCAP website and lists "Joyful Noise" as an ASCAP repertory song); Id. Ex. 4 (the "Joyful Noise" listing from the ASCAP website). As Reimer, Senior Vice President of Legal Services for ASCAP, states:

> I have also reviewed ASCAP records with respect to the song (or songs) at issue in this action. ASCAP's records confirm that both the composition entitled *Dark Horse*, co-written by Perry and others, and the composition entitled *Joyful Noise*, co-written by Plaintiff Marcus Gray ("Gray") and others, are in the ASCAP repertory and have been assigned, respectively, ASCAP Work ID numbers 885905730 and 400942432.

Reimer Decl. ¶ 6. Additionally, defendants have offered into evidence a letter sent by ASCAP to defendants explaining that plaintiffs had filed a claim with ASCAP for royalties from the song "Dark Horse." Chieffo Decl. Ex. 10. The letter explains that Gray is a member of ASCAP and that ASCAP was treating the dispute as one by, in part, a member against a member, subject to ASCAP's compendium of rules. Id. at 2-3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL      'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | April 3, 2017 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

Having conceded that Gray is a member of ASCAP, plaintiffs do not explain how Gray has not granted ASCAP the authority to license his songs. As Kohn explains, the purpose of ASCAP is to manage the performance licensing rights of its members. Kohn Report at 15. Plaintiffs do not aver that Gray never signed a membership agreement, nor do plaintiffs aver that ASCAP lacked authority to issue a performance license for "Joyful Noise." Instead, they rest their argument upon the parties' respective burdens in relation to summary judgment.

Although the moving party bears an initial burden of showing entitlement to summary judgment, defendants have satisfied their burden here. Therefore, the burden shifts to plaintiffs to demonstrate a material issue of disputed fact regarding Gray's membership in ASCAP and ASCAP's authority to issue nonexclusive licenses to perform "Joyful Noise." However, plaintiffs have failed to "set out specific facts" entitling them to trial in regard to Gray's membership in ASCAP. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Accordingly, having concluded that there is no material issue of disputed fact regarding ASCAP's authority to issue AEG a performance license for "Joyful Noise" and "Dark Horse," the Court proceeds to determine whether the ASCAP License protects defendants.

### A.   The Scope of the License

The License permits the exercise of specific, limited rights in relation to "Joyful Noise" and "Dark Horse." Because the Court has federal question jurisdiction over copyright infringement actions like this one, federal choice-of-law principles apply. In re Lindsay, 59 F.3d 942, 948 (9th Cir. 1995). Under the circumstances, federal courts regularly rely upon the Restatement of Conflict of Law as authority for federal common law doctrine on choice-of-law. See e.g. Id. (relying upon the Restatement (Second) of Conflict of Law to evaluate the controlling substantive law). Where a contract contains a reasonable choice-of-law provision, it will ordinarily be enforced. Restatement (Second) of Conflict of Law § 187 (1988). Therefore, in light of the choice of law provision in the License and the parties' apparent agreement that New York law should govern the interpretation of the License, Motion at 14; Opp'n at 8 n. 3, the License's interpretation appears to be governed by New York law.

Under New York law, a trial court's "primary objective [in interpreting a contract] is to give effect to the intent of the parties as revealed by the language they chose to use."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-05642-CAS (JCx) | Date | April 3, 2017 |
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

Seiden Assocs. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir.1992) (citing Slatt v. Slatt, 477 N.E.2d 1099 (N.Y.1985)). "Summary judgment is only proper in contract disputes if the language of the contract is 'wholly unambiguous.'" Mellon Bank, N.A. v. United Bank Corp., 31 F.3d 113, 115 (2d Cir.1994). Contract language is unambiguous if it has "a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." Hunt Ltd. v. Lifschultz Fast Freigh, Inc., 889 F.2d 1274, 1277 (2d Cir.1989) (quoting Breed v. Ins. Co. of N. Am., 385 N.E.2d 1280, 1282 (N.Y.1978)). By contrast, contractual language is ambiguous if it is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." Collins v. Harrison–Bode, 303 F.3d 429, 433 (2d Cir.2002). Whether contract language is unambiguous is a legal question, to be resolved by the Court. Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan, 7 F.3d 1091, 1094 (2d Cir.1993). "In interpreting an unambiguous contract, the court is ... not to consider any extrinsic evidence as to the parties' intentions." JA Apparel Corp. v. Abboud, 568 F.3d 390, 397 (2d Cir.2009).

The parties both advance arguments predicated upon the plain language of the License. Defendants rely primarily upon language in the first line of the body of the License, which describes the "Grant and Term" of the License: "ASCAP grants and LICENSEE accepts a license to perform *or cause to be performed publicly* at concerts . . . presented by *or under the auspices of* LICENSEE, and not elsewhere or otherwise" songs from the ASCAP repertory. License ¶ 1(a) (emphasis added). The foregoing emphasized language appears to grant AEG the authority to "cause" performances of "Joyful Noise" either directly or "under the auspices" of AEG. Given that reading, the License would appear to permit the performance of "Joyful Noise" by the Perry defendants.

Plaintiffs, for their part, rely primarily upon language in the "Limitations" section of the License, wherein the License provides, "[t]his license is *strictly limited to the LICENSEE* and to the premises where each concert is presented." Id. ¶ 2(b). In plaintiffs' view, the only reasonable interpretation of the limitation in paragraph 2(b) is that only the LICENSEE is licensed.

In determining whether contract language is ambiguous, the court must view that language "in the context of the entire agreement." WWW. Assocs. v. Giancontieri, 556

Case 2:15-cv-05642-CAS-JC   Document 246   Filed 04/03/17   Page 13 of 17   Page ID #:2067

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | April 3, 2017 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

N.E.2d 639, 642 (N.Y.1990). Read together, paragraphs 1(a) and 2(b) have a plain and unambiguous meaning – the benefit of the license inures to any performers who perform "under the auspices" of AEG at a concert which AEG has "caused." If paragraph 2(b) were intended to mean that only the Licensee obtained any protection from the license and was, in that sense, "licensed" to perform songs, the phrase "under the auspices of LICENSEE" in paragraph 1(a) would be rendered meaningless.

Instead of being ambiguous or irreconcilable, it is clear that paragraphs 1(a) and 2(b) simply address different concepts. Paragraph 1(a) addresses what activities are licensed (performances by AEG or caused to be performed by AEG under its auspices). Paragraph 2(b) limits the license to those performances by AEG or caused to be performed by AEG (and no one else) at specific concert venues. The foregoing interpretation is consistent with the remainder of the license, which necessarily and implicitly acknowledges the reality that AEG, a corporate entity, cannot perform music without the involvement of performers emitting sounds or using tools to do the same.[9] The License repeatedly acknowledges that "concert[s]" will be occurring under the purview of the License – a term that any lay person would read to mean, musicians performing live. It also requires the Licensee to report the names of the "attraction(s)" (in other words bands, performers, and musicians), License ¶ 3(b), and expressly permits the Licensee to deduct up to $5.00 from each ticket price (as applied to gross revenue) if it was "donated by *the performing artist*" to a charity, id. ¶ 3(b)(iv) (emphasis added). In light of the foregoing, the License unambiguously applies to the Perry defendants.

If the language is ambiguous, "extrinsic evidence as to the parties' intent may properly be considered." JA Apparel Corp., 568 F.3d at 397. Even after the introduction of extrinsic evidence, a court may "resolve the ambiguity in the contractual language as a matter of law if there is no extrinsic evidence to support one party's interpretation of the ambiguous language or if the extrinsic evidence is so one-sided that no reasonably factfinder could decide contrary to one party's interpretation." Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc., 232 F.3d 153, 159 (2d Cir. 2000).

---

[9] If AEG were the sole beneficiary of the License, one might wonder what the License means when it suggests that AEG might "perform" a song without the aid of a human, acting under its auspices.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**           'O'

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | April 3, 2017 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

Here, the Court concludes that the License is unambiguous. However, the extrinsic evidence regarding the intent of the License is similarly one-sided – it only lends further support to the Court's interpretation. Defendants have offered undisputed evidence regarding ASCAP's and AEG's intent in offering and accepting the License's terms – they intended for its benefits to extend to the performers at AEG's concerts. As Kohn explains, with respect to ASCAP's intent in agreeing to paragraph 1(a), the License:

> is understood by custom and practice in the music industry to mean that, not only is the named licensee authorized to publicly perform the songs in the [ASCAP] repertory, but so is every singer, musician, and every other person responsible for performing them under the auspices of the license, either directly (e.g., vocal rendering) or by means of any device or process (e.g., playing a musical instrument or otherwise operating sound production or audio enhancement equipment).

Kohn Report at 5. Otherwise, according to Kohn, every individual who touches a sound switch, or instrument, or otherwise contributes to putting on the concert might be exposed to liability for infringing a copyright owners' performance rights. Thus:

> It has been ASCAP's practice to endeavor to throw the blanket of their public performances licenses over the apex of the performance hierarchy . . . . This practice has been in place since ASCAP's earliest enforcement efforts.

Id. at 5-6.

Similarly, AEG understood the License to protect performers who perform or assist in a licensed performance. As Schilder explains:

> [i]t was and is the intent and understanding of AEG Live that the ASCAP Tour Concert Licenses obtained by AEG Live, as the promoter of the Tour Concerts, permitted the musicians (including Perry) to perform any composition in the ASCAP composition repertory and that neither Perry nor any of the other performers in the Tour Concerts were obligated by ASCAP

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-05642-CAS (JCx) | Date | April 3, 2017 |
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

to obtain separate individual public performance licenses from ASACP [sic] for their performances during the Tour Concerts.

Schilder Decl. ¶ 6.

It is noteworthy that, pursuant to the License, ASCAP does not retain any right to withdraw allegedly infringing songs from the repertory if they are alleged to infringe a song that is also within the repertory. See License ¶ 2(f). Instead, ASCAP has an internal procedure through which members may obtain royalties for performances of their original works and any infringing songs that are also in ASCAP's repertory. Kohn Report at 16. As Kohn explains, the practical purpose and goal of the License is to assure performers that they can perform songs in ASCAP's repertory without requiring every music user or party involved in performances to negotiate a separate license. Id. at 15-16. Paragraph 2(f) is intended, in part, to assure performers that to the extent possible (limited to the songs validly in ASCAP's repertory) performers may perform any song in ASCAP's repertory – infringing or not.

For their part, plaintiffs offer no rebuttal expert opinion regarding the intent of the License or any evidence regarding the intent of the parties who negotiated the License terms – AEG and ASCAP. Instead, plaintiffs argue that defendants must demonstrate Perry and Gray's intent in accepting ASCAP's terms of membership. However, insofar as Perry and Gray are not parties to the License and did not assent, individually, to its terms, Perry and Gray's intent, if relevant at all, are not at issue.

Plaintiffs appear to argue that, by becoming an ASCAP member, Gray never intended to "waive his rights, including his right to seek compensation, for any public performances of a song that infringes the copyright in his song if that infringing song is also an ASCAP song." Opp'n at 6 (quoting Dkt. 233-3, Declaration of Marcus Gray ("Gray Decl.") ¶ 7), and that Gray "would never sign a Writer Agreement with ASCAP or any other licensing agency that would allow – indeed, authorize – such conduct," Gray Decl. ¶ 8. Defendants do not argue or present evidence suggesting that Gray has "waive[d]" his right to seek compensation or pursue damages from parties who infringe his rights in the song "Joyful Noise." Defendants are arguing here that, at least with respect to Gray's exclusive right to perform the song "Joyful Noise," Gray has granted ASCAP authority to issue performance licenses in exchange for performance royalties. ASCAP has issued one such license for Perry's performances during the Tour. Insofar as

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | April 3, 2017 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

it is undisputed that Gray authorized ASCAP to issue performance licenses for "Joyful Noise," whatever other intent Gray may have had in becoming a member of ASCAP is irrelevant to the questions presented here. When ASCAP and AEG mutually assented to the License, the undisputed evidence supports defendants' contention that ASCAP and AEG objectively intended that the License authorize performances of songs in ASCAP's repertory.

"Anyone who is authorized [or licensed] by the copyright owner to use the copyrighted work in a way specified in the statute . . . is not an infringer of the copyright with *respect to such use*." Sony Corp., 464 U.S. at 433 (emphasis added). Here, the License authorized the Perry defendants to perform both "Dark Horse" and "Joyful Noise" and said performance could not have infringed plaintiffs' performance rights in "Joyful Noise," even if "Dark Horse" is derivative of "Joyful Noise." Accordingly, defendants' motion for partial summary judgment is **GRANTED**.

**B.   The Scope of Summary Judgment**

Defendants do not argue that they had any license or right to prepare derivative works. If "Dark Horse" was, in fact, derived from "Joyful Noise" within the meaning of the Copyright Act, then, at some time, an infringement of plaintiffs' rights occurred. The instant motion stems from a dispute about plaintiffs' discovery rights in relation to defendants' profits from performances during the Tour. In that respect, defendants seek a determination that:

> no 'profits' derived from such licensed public performances could be 'attributable' to any allegedly infringing act. Therefore, such economic information is not relevant to any of Plaintiffs' claims and should not be discoverable under Fed. R. Civ. P. 26(b)(1).

Motion at 25.

By this ruling, the Court does not suggest a finding that there are no circumstances under which concert revenues from the Tour might be relevant if a trier of fact determines that defendants infringed upon "Joyful Noise." Some portion of Tour revenues may be attributable to infringements that allegedly preceded the performances themselves.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL 'O'

| | | | |
|---|---|---|---|
| Case No. | 2:15-cv-05642-CAS (JCx) | Date | April 3, 2017 |
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

> On its face, § 504(b) does not differentiate between 'direct profits'—those that are generated by selling an infringing product—and 'indirect profits'—revenue that has a more attenuated nexus to the infringement. Nor does it discuss whether tort principles, such as causation, should play a role in determining whether the infringer's profits were a result of the infringing act. Nevertheless, in our prior decisions, we have held that a copyright holder must establish the *existence of a causal link* before indirect profits damages can be recovered.

Mackie v. Rieser, 296 F.3d 909, 914 (9th Cir. 2002) (emphasis added).

Here, the complexity and conceptual difficulties involved in plausibly demonstrating any such causal link, as well as the issues of apportionment it might entail, caution against compelling disclosure of defendants' concert revenue information at this stage of the litigation. Unless and until plaintiffs establish that "Dark Horse" infringes upon "Joyful Noise," profits from the Tour are not relevant. Before determining what portion, if any, of revenues from the concert could, *theoretically be* the basis for a damage award where the performance itself was licensed but other alleged antecedent infringements were not, it seems appropriate to determine whether, in fact, Dark Horse infringes Joyful Noise. Accordingly, such discovery should be bifurcated. Until such time as defendants have been found to have infringed upon "Joyful Noise," the existing stay of the Discovery Order shall remain in effect.

## V. CONCLUSION

Consistent with the Court's findings above, defendants' motion for partial summary judgment is **GRANTED**. The existing stay of the Discovery Order will remain in effect until otherwise ordered by the Court.

IT IS SO ORDERED.

|  | 00 | 15 |
|---|---|---|
| Initials of Preparer | CMJ | |