CHRISTINE LEPERA (*pro hac vice*)
   ctl@msk.com
JEFFREY M. MOVIT (*pro hac vice*)
   jmm@msk.com
JACOB D. ALBERTSON (*pro hac vice*)
   jla@msk.com
MITCHELL SILBERBERG & KNUPP LLP
12 East 49th Street, 30th Floor
New York, New York 10017-1028
Telephone: (212) 509-3900
Facsimile: (212) 509-7239

AARON M. WAIS (SBN 250671)
   amw@msk.com
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, CA  90064-1683
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Defendants Capitol Records
LLC, Jordan Houston, Lukasz Gottwald,
Sarah Theresa Hudson, Karl Martin Sandberg,
Henry Russell Walter, UMG Recordings, Inc.,
Universal Music Group, Inc., WB Music
Corp., Kobalt Music Publishing America,
Inc., and Kasz Money, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| MARCUS GRAY (p/k/a FLAME), et al., <br><br> Plaintiffs, <br><br> v. <br><br> KATHERYN ELIZABETH HUDSON (p/k/a KATY PERRY), et al., <br><br> Defendants. | CASE NO. 2:15-cv-05642-CAS JCx <br><br> Honorable Christina A. Snyder <br><br> **DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** <br><br> Date:   August 13, 2018 <br> Time:  10:00 a.m. <br> Ctrm:  8D – 8th Fl., First Street <br><br> Filed:  July 1, 2014 <br> Trial:  February 26, 2019 |

1

## **TABLE OF CONTENTS**

2
                                                                                    **Page**

3    I.    PRELIMINARY STATEMENT ..................................................................7

4    II.   SUMMARY OF UNDISPUTED FACTS ....................................................10

5    III.  SUMMARY JUDGMENT STANDARD .....................................................13

6

7    IV.   PLAINTIFFS CANNOT PROVE COPYRIGHT INFRINGEMENT..........14

8          A.    Plaintiffs Cannot Prove Access as a Matter of Law. .........................15

9                1.    Plaintiffs have not alleged and cannot prove direct access or
                       a chain of events leading to access to "Joyful Noise.".............16
10

11               2.    Plaintiffs cannot prove the widespread dissemination of
                       "Joyful Noise" as a matter of law. ............................................17
12

13               3.    Plaintiffs cannot rebut the undisputed testimony of the Dark
                       Horse Writers as to their independent creation ........................23
14

15         B.    Plaintiffs Cannot Prove Substantial Similarity as a Matter of Law....24

16               1.    Establishing substantial similarity ...........................................24

17               2.    Plaintiffs have failed to satisfy the extrinsic test .....................26

18   V.    CONCLUSION ......................................................................................31

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

### CASES

4

*ABKCO Music, Inc. v. Harrisongs Music, Ltd.*,

5
    722 F.2d 988 (2d Cir. 1983) ............................................................... 18

6

*Apple Comp. Inc. v. Microsoft Corp.*,

7
    35 F.3d 1435 (9th Cir. 1994) ............................................................. 25

8

*Arnett v. Jackson*,
    No. 5:16-CV-872-D, 2017 U.S. Dist. LEXIS 128672 (E.D.N.C.

9
    Aug. 14, 2017) ..................................................................................... 21

10

*Art Attacks Ink, LLC v. MGA Entm't Inc.*,

11
    581 F.3d 1138 (9th Cir. 2009) ........................................................... 22

12

*Batts v. Adams*,
    No. CV 10-8123-JFW, 2011 U.S. Dist. LEXIS 161401 (C.D. Cal.

13
    Oct. 21, 2011) ........................................................................... 24, 25, 28

14

*Batts v. Adams*,

15
    No. CV 10-8123-JFW, 2011 U.S. Dist. LEXIS 161402 (C.D. Cal.

16
    Feb. 8, 2011) .............................................................................. 21, 22, 26

17

*Benay v. Warner Bros. Entm't, Inc.*,

18
    607 F.3d 620 (9th Cir. 2010) ............................................................. 24

19

*Bernal v. Paradigm Talent & Literary Agency*,

20
    788 F. Supp. 2d 1043 (C.D. Cal. 2010) .............................................. 15

21

*Block v. City of Los Angeles*,

22
    253 F.3d 410 (9th Cir. 2001) ............................................................. 14

23

*Calhoun v. Lillenas Publ'g*,
    298 F.3d 1228 (11th Cir. 2002) ........................................................ 24

24

*Carter v. Clark County*,

25
    459 F. App'x 635 (9th Cir. 2011) ...................................................... 19

26

*Cavalier v. Random House*,

27
    297 F.3d 815 (9th Cir. 2002) ............................................................. 25

28

3

1

2

**TABLE OF AUTHORITIES**
**(continued)**

3

**Page(s)**

4

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986) ..................................................................... 13, 15

5

6

*Copeland v. Bieber,*
   No. 2:13cv246, 2016 U.S. Dist. LEXIS 178817 (E.D. Va. Sept. 8,
   2016) ...................................................................................... 26, 30, 31

7

8

*Cottrill v. Spears,*
   No. 02-3646, 2003 U.S. Dist. LEXIS 8823 (E.D. Pa. May 22,
   2003) ................................................................................................. 30

9

10

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
   509 U.S. 579 (1993) ........................................................................ 26

11

12

*F.T.C. v. Neovi, Inc.,*
   604 F.3d 1150 (9th Cir. 2010) ......................................................... 14

13

14

*Fahmy v. Jay-Z,*
   No. 07-cv-05715-CAS(PJWx); 2015 U.S. Dist. LEXIS 129446
   (C.D. Cal. Sept. 24, 2015) .............................................................. 29

15

16

*Funky Films, Inc. v. Time Warner Enm't Co.,*
   462 F.3d 1072 (9th Cir. 2006) ................................................... 14, 24

17

18

*Gable v. Nat'l Broad. Co.,*
   727 F. Supp. 2d 815 (C.D. Cal. 2010)................................... 15, 16, 25

19

20

*Goldberg v. Cameron,*
   787 F. Supp. 2d 1013 (N.D. Cal. 2011)........................................... 31

21

22

*Guzman v. Hacienda Records & Rec. Studio, Inc.,*
   No. 6:12-CV-42, 2014 U.S. Dist. LEXIS 169746 (S.D. Tex. Dec.
   9, 2014) ....................................................................................... 17, 19

23

24

*Hayes v. Keys,*
   No. CV 14-6246-PA , 2015 U.S. Dist. LEXIS 2860 (C.D. Cal. Jan.
   7, 2015) ............................................................................................ 21

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

B077854.1

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

1

## TABLE OF AUTHORITIES
### <u>(continued)</u>

2

3
<u>Page(s)</u>

4
*Hayes v. Minaj*,
    No. 2:12-cv-07972-SVW-SH, 2012 U.S. Dist. LEXIS 197043

5
    (C.D. Cal. Dec. 18, 2012) ................................................................................21

6
*Hill v. Beers*,
    670 F. App'x 644 (9th Cir. 2016) ...................................................................19

7

8
*Int'l Church of Foursquare Gospel v. City of San Leandro*,
    673 F.3d 1059 (9th Cir. 2011) ........................................................................13

9

10
*Jorgensen v. Epic/Sony Records*,
    351 F.3d 46 (2d Cir. 2003) .............................................................................15

11

12
*Litchfield v. Spielberg*,
    736 F.2d 1352 (9th Cir. 1984) ........................................................................24

13

14
*Loomis v. Cornish*,
    No. 12-5525, 2013 U.S. Dist. LEXIS 162607 (C.D. Cal. Nov. 13,

15
    2013) .................................................................................................17, 19, 20

16
*Loomis v. Cornish*,
    836 F.3d 991 (9th Cir. 2016) ....................................................................*passim*

17

18
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ........................................................................................13

19

20
*Metcalf v. Bochco*,
    294 F.3d 1069 (9th Cir. 2002) ........................................................................25

21

22
*Mowry v. Viacom Int'l, Inc.*,
    No. 03 Civ. 3090, 2005 WL 1793773 (S.D.N.Y. July 29, 2005) ....................15

23

24
*O'Keefe v. Ogilvy & Mather Worldwide, Inc.*,
    590 F. Supp. 2d 500 (S.D.N.Y. 2008) ............................................................21

25

26
*Repp v. Webber*,
    132 F.3d 882 (2d Cir. 1997) ...........................................................................13

27

28
*Rice v. Fox Broad. Co.*,
    330 F.3d 1170 (9th Cir. 2003) ........................................................................18

Mitchell
Silberberg &
Knupp LLP

B077854.1

DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Rosa v. Taser Int'l, Inc.*,
    684 F.3d 941 (9th Cir. 2012) .......................................................................... 14

*Satava v. Lowry*,
    323 F.3d 805 (9th Cir. 2003) ............................................................ 10, 25, 27

*Smith v. Jackson*,
    84 F.3d 1213 (9th Cir. 1996) ....................................................................... 24

*Stewart v. Wachowski*,
    574 F. Supp. 2d 1074 (C.D. Cal. 2005)................................................ 15, 16, 23

*Swirsky v. Carey*,
    376 F.3d 841 (9th Cir. 2004) .............................................................*passim*

*Three Boys Music Corp. v. Bolton*,
    212 F. 3d 477 (9th Cir. 2000) ....................................................................... 20

*Watt v. Butler*,
    457 F. App'x 856 (11th Cir. 2012)................................................................ 23

## OTHER AUTHORITIES

Fed. R. Civ. P.
    56(a)............................................................................................................. 13
    56(c)............................................................................................................. 13

Fed. R. Evid.
    702 ............................................................................................................... 26
    801 ............................................................................................................... 19

Mitchell
Silberberg &
Knupp LLP

B077854.1

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

## I.   PRELIMINARY STATEMENT

By this motion, Defendants respectfully request that this Court enter summary judgment in their favor on the single claim—for copyright infringement—brought against them by Plaintiffs.[1]  *See* Third Amended Complaint ("TAC"), attached as Exhibit 13 to Declaration of Aaron Wais ("Wais Decl.").

In September 2013, a sound recording of the composition "Dark Horse" was released as the first single from *Prism*, the album by superstar pop artist, Katy Perry. The writers of "Dark Horse" are defendants Walter, Gottwald, Sandberg, Perry, Hudson, and Houston (the "Dark Horse Writers").

In July 2014, Plaintiffs, self-described Christian hip-hop artists, sued Defendants, alleging that the "Dark Horse" *composition* infringed the copyright in their musical *composition* entitled "Joyful Noise," the recording of which appeared on Plaintiff Gray's album, *Our World Redeemed*, released in 2008.  (Plaintiffs do not claim that their *sound recording* was "sampled" or otherwise has been infringed.)  Importantly, Plaintiffs do not contend that the any aspect of the vocal melody or lyrics in "Dark Horse" are infringing.  Rather, Plaintiffs' only contention is that "Dark Horse" copies a simplistic and repetitive synthesizer part (which, in musical terms, is called an "ostinato") from "Joyful Noise."

Plaintiffs' claim is wholly lacking in merit insofar as no infringement occurred and, accordingly, Plaintiffs' claim must be dismissed as a matter of law. There can be no finding of copyright infringement unless a plaintiff meets the burden of proving by affirmative and admissible evidence that (i) the authors of

---

[1] "Plaintiffs" are plaintiffs Marcus Gray, Emanuel Lambert, and Chike Ojukwu. "Defendants," in turn, are individual defendants Henry Walter p/k/a Cirkut ("Walter"), Lukasz Gottwald p/k/a Dr. Luke ("Gottwald"), Karl Martin Sandberg p/k/a Max Martin ("Sandberg"), Sarah Hudson ("Hudson"), and Jordan Houston, p/k/a Juicy J ("Houston"), as well as corporate defendants Capitol Records, LLC, UMG Recordings, Inc., Universal Music Group, Inc., WB Music Corp., Kobalt Music Publishing America, Inc., and Kasz Money, Inc.  Defendants Katheryn Hudson p/k/a Katy Perry ("Perry") and Kitty Purry, Inc. are moving separately but join in the Defendants' motion.

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

defendants' work had access to plaintiff's work before the creation of defendants' work; *and* (ii) the works at issue are substantially similar as to protected expression. Summary judgment should be entered in Defendants' favor because Plaintiffs cannot meet their burden on either element.

To survive summary judgment on the element of **<u>access</u>**, Plaintiffs are required to bring forth affirmative, admissible proof that the Dark Horse Writers had a reasonable possibility—not merely a bare possibility—of hearing "Joyful Noise" prior to creating "Dark Horse." *Loomis v. Cornish,* 836 F.3d 991, 994-95 (9th Cir. 2016). After extensive discovery, Plaintiffs do not have a shred of evidence to meet their burden of proof that any Dark Horse Writer had access to their work. Instead, they present nothing more than speculation and conjecture. However, speculation and conjecture are not evidence. Plaintiffs admit they never met or sent any music to any of the Dark Horse Writers and they have no knowledge of any of the Dark Horse Writers having ever received or heard "Joyful Noise." Although Plaintiffs' absence of affirmative access evidence is sufficient to grant summary judgment in Defendants' favor, Defendants have taken the extra step of providing the Court with sworn declarations from all six Dark Horse Writers. In these declarations, the Dark Horse Writers unequivocally testify that they never heard "Joyful Notice" and never heard of Plaintiffs before this lawsuit, and that they independently created "Dark Horse." Plaintiff cannot rebut Defendants' affirmative evidence.

Instead, Plaintiffs ask this Court to infer access by baldly asserting that "Joyful Noise" was purportedly "widely disseminated." Plaintiffs' theory is baseless. There is no evidence that "Joyful Noise" enjoyed any commercial success whatsoever, much less was widely disseminated. To the contrary, the record is devoid of evidence of a single sale of *Our World Redeemed*. And while Plaintiffs will claim that they and a third-party, Lecrae Moore, performed "Joyful Noise" live in their concerts, the record is devoid of any admissible corroborating

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

evidence.  Even more importantly, Plaintiffs admit that have no evidence that any of the Dark Horse Writers attended any of these purported performances. The Dark Horse Writers, by contrast, make clear that they do not make a practice of listening to Christian hip-hop music, and have never attended a performance by Plaintiffs or Lecrae.  Because the Dark Horse Writers "were not participating in the relevant market" of Christian hip-hop music, any alleged dissemination of "Joyful Noise" within that market is irrelevant to the access inquiry.  *Loomis,* 836 F.3d at 998.  As Plaintiffs concede, they and Defendants "operate in different music universes." *See* Defendants' accompanying Statement of Uncontroverted Facts ("SUF") ¶ 2.

Plaintiffs also wrongly assert that there was widespread dissemination of "Joyful Noise" based on the mere fact that it was purportedly available on the Internet.  Case law makes clear that the availability online of a copyrighted work is insufficient to establish widespread dissemination. Given the sheer volume of content available online, the alleged fact that "Joyful Noise" was streamed by an unknown number of persons simply will not support an inference that any of the Dark Horse Writers ever listened to "Joyful Noise"—particularly given their undisputed testimony that they do not make a practice of searching online for or listening to Christian music.

As to **<u>substantial similarity</u>**, Plaintiffs likewise have failed to present any affirmative, admissible evidence sufficient to create an issue of fact.  To prove substantial similarity, a plaintiff must satisfy both an "extrinsic" test (which requires **objective** analytic dissection of the works by an expert) and an "intrinsic" test (which **subjectively** considers whether an ordinary, reasonable person would find "the total concept and feel of the works" to be substantially similar).  On summary judgment, only the extrinsic test is relevant, as the intrinsic test is reserved for the jury.  "If [plaintiffs] cannot present evidence that would permit a trier of fact to find that [they] satisfied the extrinsic test, [they] necessarily lose[] on summary judgment …." *Swirsky v. Carey,* 376 F.3d 841, 845 (9th Cir. 2004)

(citation and internal quotation marks omitted).

Here, Plaintiffs' sole expert, Todd Decker, failed to comply with the Ninth Circuit's methodological requirements for the extrinsic test. *First*, while Dr. Decker asserted the existence of several claimed musical similarities between "Dark Horse" and "Joyful Noise," he did not objectively transcribe them, as required by the extrinsic test, and he made admissions at his deposition which establish each of them are commonplace and not protectible.[2] Dr. Decker then failed to extract all of these unprotectible elements—without which no similarities remain—or to alternatively explain how those unprotectible elements "are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003). *Second*, when confronted with these deficiencies, Dr. Decker disavowed the concepts of objective transcription and analytical dissection which form the basis of the extrinsic test. Dr. Decker then performed an **intrinsic** analysis by relying on the subjective reactions of lay listeners to hearing recordings of the compositions. However, the intrinsic analysis is solely the province of the jury and may not be the subject of expert testimony. Dr. Decker's methodology is wholly improper, thereby requiring preclusion of his opinions, without which Plaintiffs cannot survive summary judgment.

In sum, Plaintiffs lack affirmative, admissible evidence sufficient to create a triable issue regarding either of the essential elements of access and substantial similarity. This Court should grant summary judgment in favor of Defendants.

## II.    SUMMARY OF UNDISPUTED FACTS

In the SUF, each of the predicate facts that underlie this motion is set forth. For the convenience of the Court, a summary of the basic underlying facts follows.

---

[2] Plaintiffs' own expert musicologist, Dr. Lawrence Ferrara, agrees that each of these claimed similarities is commonplace, trite, and unremarkable, whether separately or in combination with each other.

Plaintiffs are Christian hip-hop artists.  SUF ¶ 1. Plaintiffs operate in a far different musical universe than the Dark Horse Writers. SUF ¶ 2.  In 2007, Plaintiffs and Lecrae authored "Joyful Noise," a recording of which was released on Gray's album, *Our World Redeemed*, in 2008. SUF ¶¶ 4-6.  "Joyful Noise" was not commercially released as a single. SUF ¶ 7. On June 3, 2014, the United States Copyright Office issued a copyright registration for the "Joyful Noise" composition as it appears in *Our World Redeemed*. SUF ¶ 8. The record is devoid of any evidence of any commercial exploitation of *Our World Redeemed*; Plaintiffs have not produced or seen any evidence of any sales of the album, radio play of "Joyful Noise," television broadcasts of "Joyful Noise," licensing of "Joyful Noise," or income earned from "Joyful Noise." SUF ¶¶ 17-23.

"Dark Horse" was written in 2013 by Walter, Gottwald, Sandberg, Perry, Hudson, and Houston. SUF ¶ 9. More specifically, over the course of a day in March 2013 at Conway Studios in Los Angeles, California, Walter and Gottwald independently created an instrumental musical track (the "Instrumental Track"), which became the musical bed for "Dark Horse." SUF ¶ 10. Sandberg, Perry, Hudson, and Houston did not contribute to the creation of the Instrumental Track. SUF ¶¶ 11-12. Instead, in the summer of 2013, Perry, Hudson, and Sandberg created the sung vocal melody and lyrics for "Dark Horse" in collaboration with Gottwald and Walter; and Houston wrote and recorded the rap vocal portion of "Dark Horse." SUF ¶¶ 13-14. A recording of "Dark Horse" was released commercially in September and October 2013, both as a single and as a track on Katy Perry's album, *Prism*. SUF ¶ 16.

Plaintiffs and Lecrae do not know and have never met any of the Dark Horse Writers. SUF ¶¶ 77-78. They have never given any of their music, including "Joyful Noise," to any of the Dark Horse Writers and they have no knowledge of anyone else doing so. SUF ¶¶ 79-81. While Plaintiffs claim "Joyful Noise" was performed live by Gray, Lambert, and Lecrae, they have not produced any

Mitchell
Silberberg &
Knupp LLP

B077854.1

11

1  corroborating evidence and, even more importantly, they have no evidence that any

2  Dark Horse Writer ever attended any of their claimed performances. SUF ¶¶ 86-88,

3  90-91. And while Plaintiffs claim "Joyful Noise" was available on the Internet,

4  they have no knowledge of any of the Dark Horse Writers listening to "Joyful

5  Noise." SUF ¶¶ 55, 57, 83.

6      The Dark Horse Writers, in turn, had never heard "Joyful Noise" before this

7  lawsuit; nor had any of them ever heard of Plaintiffs, Lecrae, or their music prior to

8  this lawsuit.  SUF ¶¶ 43-44, 49, 71-76.  The Dark Horse Writers never received

9  any music from Plaintiffs or Lecrae or attended any live performance by any of

10 them. SUF ¶¶ 46-47. They do not write or produce music in the Christian hip-hop

11 music genre. SUF ¶ 50. It is not their practice to listen to music falling within that

12 genre. SUF ¶ 52. They do not search online for music falling within that genre, or

13 listen to radio stations playing that genre. SUF ¶ 53. They do not watch any award

14 shows dedicated to Christian hip-hop music or follow any charts that keep track of

15 what songs and albums are popular within that genre of music. SUF ¶¶ 54, 62.

16 Each of the Dark Horse Writers has a practice and policy to never accept any

17 unsolicited music from anyone. SUF ¶ 70.

18     Plaintiffs proffered the expert opinions of Dr. Todd Decker as to the issue of

19 substantial similarity; Defendants, in turn, proffered the expert opinions of Dr.

20 Lawrence Ferrara. SUF ¶¶ 92-93.  Dr. Decker did not transcribe the purported

21 musical similarities between the works into musical notation.  SUF ¶ 94.  At his

22 deposition, Dr. Decker made admissions which establish that each of the purported

23 similarities between the works are commonplace musical devices.  SUF ¶¶ 95-106.

24 Dr. Decker failed to extract these admittedly commonplace elements from the

25 works when performing his analysis, or explain how the selection, coordination

26 and arrangement of the commonplace elements in "Joyful Noise" constitutes

27 protectable expression that Plaintiffs are entitled to monopolize.  SUF ¶ 107.

28 Instead, Dr. Decker focused on the way that the recordings of "Joyful Noise" and

1  "Dark Horse" sound, including to lay listeners.  SUF ¶¶ 110, 114-117.

2       Dr. Ferrara, in his expert reports, conducted an analytical dissection of the

3  "Joyful Noise" and "Dark Horse" compositions, including by transcribing the

4  works into musical notation, reviewing and transcribing relevant prior art, and

5  extracting those elements of both works that are unprotectible.  SUF ¶ 108.  Dr.

6  Ferrara concluded that each of the purported similarities between the two works

7  that Dr. Decker identified are trite, commonplace, and unremarkable, either

8  separately or in combination with each other.  SUF ¶ 108.

9  **III.  SUMMARY JUDGMENT STANDARD**

10       Summary judgment is warranted "if the movant shows that there is no

11  genuine dispute as to any material fact and that the movant is entitled to judgment

12  as a matter of law." Fed. R. Civ. P. 56(a). Where "the nonmoving party has failed

13  to make a sufficient showing on an essential element of [his] case with respect to

14  which [he] has the burden of proof," the "moving party is 'entitled to a judgment

15  as a matter of law'…."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

16       The shifting of burdens is an essential component of the summary judgment

17  standard.  While a defendant moving for summary judgment bears the initial

18  burden, it need only make a *prima facie* showing of the **absence** of a genuine issue

19  of material fact on a dispositive issue as to which the plaintiff will bear the burden

20  of proof at trial. *Id.* at 323-24; Fed. R. Civ. P. 56(c). Once the defendant makes this

21  showing, the burden shifts to the plaintiff to establish there is a factual dispute on a

22  dispositive issue that a reasonable jury could resolve in the non-movant's favor.

23  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

24       To satisfy this burden, "the non-moving party 'must do more than simply

25  show that there is some metaphysical doubt as to the material facts.'" *Repp v.*

26  *Webber*, 132 F.3d 882, 889 (2d Cir. 1997) (quoting *Matsushita*, 475 U.S. at 586).

27  Thus, "[a]s a rule, [] the nonmoving party must present more than a mere scintilla

28  of evidence to defeat a motion for summary judgment." *Int'l Church of*

*Foursquare Gospel v. City of San Leandro*, 673 F.3d 1059, 1068 (9th Cir. 2011) (internal quote marks and citation omitted). In fact, the nonmoving party must produce **affirmative, admissible evidence** of facts sufficient to defeat summary judgment. *Rosa v. Taser Int'l, Inc.*, 684 F.3d 941, 948 (9th Cir. 2012) (requiring "facts that would be admissible in evidence."). Indeed, "[a] district court . . . need not find a genuine issue of fact" if it is based on "uncorroborated and self-serving" testimony. *F.T.C. v. Neovi, Inc.*, 604 F.3d 1150, 1159 (9th Cir. 2010) (internal citation and quote marks omitted). *See also Block v. City of Los Angeles*, 253 F.3d 410, 419 (9th Cir. 2001) (rejecting reliance on an affidavit to defeat summary judgment where the affidavit was "based on inadmissible hearsay").

## IV.   PLAINTIFFS CANNOT PROVE COPYRIGHT INFRINGEMENT

Summary judgment is proper because Plaintiffs are unable to establish that a reasonable jury could resolve Plaintiffs' claims in their favor. "To establish copyright infringement, a plaintiff must prove two elements: '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Loomis*, 836 F.3d at 994, quoting *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 361 (1991).[3] Regarding the latter element, "[a]bsent direct evidence of copying," Plaintiffs must prove that the Defendants had (1) access to "Joyful Noise" and (2) that "Joyful Noise" and "Dark Horse" are substantially similar in protected expression. *Id.* (internal quote marks and citations omitted); *see also Funky Films, Inc. v. Time Warner Enm't Co.*, 462 F.3d 1072, 1076 (9th Cir. 2006).

Here, Plaintiffs have never alleged direct copying and do not claim to have any evidence of direct copying. Thus, to defeat summary judgment, Plaintiffs must establish that a reasonable jury could conclude that the Dark Horse Writers had access to "Joyful Noise" and that "Joyful Noise" and "Dark Horse" are

---

[3] For summary judgment only, Defendants do not contest if Plaintiffs have a valid copyright in the "Joyful Noise" composition, but reserve all rights on the issue.

1   substantially similar in protected expression. Plaintiffs cannot satisfy their burden

2   as to access or substantial similarity.  Thus, summary judgment should be granted.

3   **A.    Plaintiffs Cannot Prove Access as a Matter of Law.**

4       A reasonable jury could not conclude that any Dark Horse Writer had access

5   to "Joyful Noise" before creating "Dark Horse." Access "requires an opportunity

6   to view or to copy plaintiff's work." *Loomis*, 836 F.3d at 995. Where, as here, a

7   defendant moves for summary judgment on the ground that the plaintiff cannot

8   prove access, the defendant need only make a *prima facie* showing that the record

9   is devoid of evidence supporting access. *Celotex*, 477 U.S. at 323. The plaintiff

10  then bears the burden to bring forth "'significant, affirmative and probative'

11  evidence supporting [its] claim of access." *Gable v. Nat'l Broad. Co.*, 727 F. Supp.

12  2d 815, 824 (C.D. Cal. 2010), *aff'd* 438 F. App'x 587 (9th Cir. 2011); *Jorgensen v.*

13  *Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003), quoting *Scott v. Paramount*

14  *Pictures Corp.*, 449 F. Supp. 518, 520 (D.D.C. 1978) (same). *See, e.g., Stewart v.*

15  *Wachowski*, 574 F. Supp. 2d 1074, 1092-93 (C.D. Cal. 2005) (granting summary

16  judgment for defendants on copyright infringement claim, where defendants

17  presented evidence that they did not have access to the work, and plaintiff had

18  adduced no admissible evidence controverting this showing).[4]

19      To do so, a plaintiff must prove "**a reasonable possibility**, not merely a bare

20  possibility, that an alleged infringer had the chance to view the protected work."

21  *Loomis*, 836 F.3d at 995, quoting *Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581

22  F.3d 1138, 1143 (9th Cir. 2009) (emphasis added). "Where there is no direct

23  evidence of access, circumstantial evidence can be used to prove access either by

24  (1) establishing a chain of events linking the plaintiff's work and the defendant's

25

---

26  [4] *See also Bernal v. Paradigm Talent & Literary Agency*, 788 F. Supp. 2d 1043,
    1054 (C.D. Cal. 2010) (same). *Accord Mowry v. Viacom Int'l, Inc.*, No. 03 Civ.

27  3090, 2005 WL 1793773, at *5 (S.D.N.Y. July 29, 2005) (quoting *Jorgensen v.
    Careers BMG Music Publ'g*, No. 01 Civ. 357, 2002 WL 1492123, at *4 (S.D.N.Y.

28  July 11, 2002)).

Mitchell
Silberberg &
Knupp LLP

B077854.1

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

access, or (2) showing that the plaintiff's work has been widely disseminated." *Id*. But, again, such evidence must be "significant, affirmative, and probative"; "mere speculation or conjecture" is legally insufficient. *Gable*, 727 F. Supp. 2d at 824 (citations omitted).[5]

As discussed below, there is no evidence in support of any theory by which access could be inferred. Defendants further have submitted testimony from all of the Dark Horse Writers, that they did not hear or have access to "Joyful Noise" prior to independently creating "Dark Horse." No rebuttal evidence exists.

### 1. Plaintiffs have not alleged and cannot prove direct access or a chain of events leading to access to "Joyful Noise."

Plaintiffs have not and cannot articulate or prove a viable theory that any Dark Horse Writer had direct access to "Joyful Noise."[6] SUF ¶¶ 43-91. Plaintiffs also have not and cannot articulate or prove a viable "chain of events" theory by which any Dark Horse Writer could have had access to "Joyful Noise." SUF ¶¶ 43-91. Nor could they possibly do so as they admit that they have never met the Dark Horse Writers (SUF ¶ 77); have never sent any music, including "Joyful Noise," to any of the Dark Horse Writers and have no knowledge of anyone else doing so (SUF ¶¶ 79-81); and have no information that any of the Dark Horse Writers ever

---

[5] Absent sufficient evidence of a chain of events or widespread dissemination, a copyright infringement plaintiff may satisfy the access prong only by showing a "striking similarity" between the works at issue. *Stewart*, 574 F. Supp. 2d at 1100. Neither Plaintiffs nor their expert, Dr. Decker, argued or opined that "Joyful Noise" and "Dark Horse" are strikingly similar.

[6] At one point, Plaintiffs theorized that because *Our World: Redeemed* was nominated for a Best Rock or Rap Gospel Album at the 51st Annual GRAMMY Awards and Gottwald and Houston were registered voters for those GRAMMY awards, they could have accessed "Joyful Noise" through a streaming website made available to voters by the Recording Academy. That theory, however, has been thoroughly debunked: neither Gottwald or Houston (or any other Dark Horse Writer) voted in the Best Rock or Rap Gospel Album category for the 51st Annual GRAMMY Awards or visited any streaming website associated with those GRAMMY Awards. SUF ¶¶ 64-65. And dispositive of the theory, the Recording Academy has affirmatively stated that none of the works nominated for a Best Rock or Rap Gospel Album were available to be streamed in any event. SUF ¶ 66-67. Thus, no one could have listened to "Joyful Noise."

Mitchell
Silberberg &
Knupp LLP

B077854.1

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

1    received or heard "Joyful Noise" (SUF ¶¶ 55, 57, 83, 90-91).[7]

2           Moreover, all of the Dark Horse Writers have testified unequivocally that

3    they had never heard or received "Joyful Noise" before this lawsuit was filed.

4    They have also testified unequivocally that they did not know who Plaintiffs or

5    Lecrae were before this litigation; have never met them; have not attended any of

6    their performances; have never purchased, streamed, or listened to any of their

7    music.  SUF ¶¶ 43-49. This evidence is unrebutted by Plaintiffs.

8                    **2.    Plaintiffs cannot prove the widespread dissemination of**

9                    **"Joyful Noise" as a matter of law.**

10           The record is entirely devoid of evidence of the type of commercial success

11   and circumstances necessary to infer access to "Joyful Noise." The standard for

12   proving widespread dissemination is well-established. "The evidence required to

13   show widespread dissemination will vary from case to case" but, "[i]n most cases,

14   the evidence of widespread dissemination centers on the degree of a work's

15   commercial success and on its distribution through radio, television, and other

16   relevant mediums." *Loomis*, 836 F.3d at 997, quoting *L.A. Printex Indus., Inc. v.*

17   *Aeropostale, Inc.*, 676 F.3d 841, 847 (9th Cir. 2012) (collecting cases). In that

18   regard, "the public dissemination necessary to infer that a defendant might have

19   had access to the work is **considerable**." *Loomis v. Cornish*, No. 12-5525, 2013

20   U.S. Dist. LEXIS 162607, at *41 (C.D. Cal. Nov. 13, 2013) (emphasis added),

21   *aff'd Loomis*, *supra*, 836 F.3d 991, quoting *McRae v. Smith*, 968 F.Supp. 559, 564

22   (D. Colo. 1997). "As a general matter, in order for a work to be widely

23   disseminated, it must achieve a high degree of commercial success or be readily

24   available in the market." *Id.*, at *11-12 (collecting cases)[8]; *see also Guzman v.*

25   _____

[7] Lecrae admits the same. SUF ¶¶ 78, 80, 84 & 87.

26   [8] Citing *Art Attacks Ink,* 581 F.3d at 1144 (T-shirt design was not widely
     disseminated where plaintiff sold 2,000 shirts a year, displayed the design at fair
27   booths and store kiosks, and posted the designs on the Internet); *Rice v. Fox Broad.*
     *Co.*, 330 F.3d 1170, 1178 (9th Cir. 2003)  (insufficient evidence of widespread
28   dissemination where plaintiff sold 17,000 copies of a video over a 13 year period);
                                                                      (…continued)

1   *Hacienda Records & Rec. Studio, Inc.*, No. 6:12-CV-42, 2014 U.S. Dist. LEXIS

2   169746, at *17 (S.D. Tex. Dec. 9, 2014) (a song was not "widely disseminated"

3   where it "did not achieve popularity outside of the Tejano music scene"). The mere

4   fact of commercial success or ready availability in the market does not suffice;

5   courts still require evidence that would make reasonable an inference of access,

6   such as evidence that the song had obtained ubiquity,[9] the defendant listened to that

7   type of music, or the song was readily available in a market in which defendant

8   participated.[10]

9          This high burden makes sense because, as it pertains to infringement of

10   musical works, evidence of widespread dissemination does not prove that a

11   defendant did, in fact, hear the plaintiff's work but, instead, is used to ***infer*** there is

12   a ***reasonable*** possibility that the defendant heard the work. Put another way, the

13   standard is by necessity high because what a court is really concluding is that the

14   plaintiff's work was so popular or the circumstances such that it can reasonably be

15   assumed that the defendant could not have avoided hearing it.

16          Here, the scant evidence produced by Plaintiffs in discovery falls drastically

17   short of the required standard. Notably, Plaintiffs lack evidence of *any* commercial

18   success whatsoever—the record is devoid of any evidence of even a single sale of

19   "Joyful Noise" or *Our World Redeemed*.[11] *Cf. Rice*, 330 F.3d at 1178 (sales of

20   _____

     (…continued)

21   *Jason v. Fonda*, 526 F. Supp. 774, 776 (C.D. Cal. 1981) (book sales of no more
     than 2,000 copies nationwide and no more than 700 copies in Southern California

22   were insufficient).

23   [9] *See, e.g., ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 722 F.2d 988 (2d Cir.
     1983) (access found where song was number one on the popular music charts for
     weeks in the United States and England).

24   [10] *See, e.g., Loomis*, 836 F.3d at 998 (even if plaintiff's song had saturated the Santa

25   Barbara market, the fact that the defendant songwriters spent time there did not
     evidence access because defendants "were not participating in the relevant market

26   – the Santa Barbara music scene – during their brief stay in Santa Barbara").

27   [11] To the extent that Plaintiffs try to rely on the purported critical success of
     "Joyful Noise" and *Our World Redeemed* in the Christian hip-hop community,

28   there is a vast difference between *niche critical* success and *widespread*
     *commercial* success. *See Loomis*, 836 F.3d at 994 (where the plaintiff's song had
                                                                              (…continued)

Mitchell
Silberberg &
Knupp LLP

B077854.1

1  **17,000 copies** held insufficient to establish widespread dissemination). The record

2  is equally devoid of any evidence that "Joyful Noise" was ever played on the radio

3  or broadcast on television.[12]

4          Equally unavailing is Plaintiffs' attempt to infer access through alleged live

5  performances of "Joyful Noise." Plaintiffs have not produced any admissible

6  documentary evidence that "Joyful Noise" was ever performed live.  They can at

7  best offer their own vague testimony of having performed "Joyful Noise" at an

8  unknown number of venues for an unspecified number of audience members.

9  Such purported evidence is palpably insufficient.  *Loomis*, 2013 U.S. Dist. LEXIS

10  162607, at *46-47 (concert performances did not constitute access evidence where

11  the plaintiff "ha[d] not produced any evidence, such as the scope, extent,

12  attendance levels, locations, or number of performances of [the allegedly infringed

13  composition]"), *supra*, note 10.

14          Even if Plaintiffs' uncorroborated assertions regarding concert performances

15  _____

(…continued)

16  won several awards, the Court found that, "[d]espite these achievements, Bright
Red Chords was not commercially successful"). This is particularly so where

17  Walter and Gottwald (and the other Dark Horse Writers) had no interest in and
were not participants in the Christian hip-hop community. *Supra*, p. 12.

18  [12] Plaintiffs' interrogatory responses, in which they say that "Joyful Noise" was
played on the radio and in the background during televised interviews they gave,

19  are not admissible evidence. *See* Fed. R. Evid. 801; *Hill v. Beers*, 670 F. App'x
644, 645 (9th Cir. 2016) (where the defendant relied only on his interrogatory

20  responses in opposing summary judgment, the court held that "[s]uch responses are
not proper evidence"); *Carter v. Clark County*, 459 F. App'x 635, 636 (9th Cir.

21  2011) ("vague, conclusory answers . . . interrogatories" are insufficient to create a
genuine issue of fact on summary judgment (citation omitted)). Plaintiffs produced

22  zero admissible, competent evidence of radio or television play. They did not even
show that they received the royalties they would have been due from such

23  exploitation. SUF¶¶ 21-22. At most, Plaintiff Gray vaguely testified that a clip of
"Joyful Noise" was played during the announcement of nominees during the 2009

24  GMA (Gospel Music Association) Dove Awards, at which the song was nominated
for Best Rap/Hip Hop Song of the Year. But Gray did not know whether that clip

25  was broadcast on television, nor did he know what portion of the song was played.
SUF ¶ 23. And, even if credited, the fact that a portion of "Joyful Noise" was

26  played during the broadcast of a niche, gospel music program cannot establish
access. *See Loomis*, 2013 U.S. Dist. LEXIS 162607, at *44-45 ("evidence of small

27  circulation . . . or local air time without other proof of access is generally not
enough to demonstrate a reasonable possibility of access." (citation omitted));

28  *Guzman*, 2014 U.S. Dist. LEXIS 169746, at *17.

Mitchell
Silberberg &
Knupp LLP

B077854.1

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

of "Joyful Noise" were accepted as proof (and they should not be), those performances cannot create an *inference of* access as a matter of law because it is undisputed that none of the Dark Horse Writers heard Plaintiffs or Lecrae perform "Joyful Noise." First, all of the Dark Horse Writers unequivocally testified that they never attended any performance by Plaintiffs or Lecrae. Second, Plaintiffs and Lecrae concede they have no information or knowledge of any Dark Horse Writer ever attending their performances.

Moreover, the (inadmissible) evidence that Plaintiffs and Lecrae performed at an unknown number of venues for an unknown and unspecified number of audience members over the years is not widespread dissemination of "Joyful Noise." That purported evidence does not allow for the inference that it was reasonably possible one of the Dark Horse Writers heard a performance of "Joyful Noise." The Dark Horse Writers undisputedly are not involved in the Christian hip-hop community, do not listen to that genre of music, do not attend performances of that genre of music, and have never attended a performance by Plaintiffs or Lecrae. *Loomis*, 836 F.3d at 998 (Santa Barbara local music scene "saturated" with the allegedly infringed work when defendants worked in Santa Barbara did not constitute widespread dissemination because the writers of the defendants' composition did not participate in that scene). *Cf. Three Boys Music Corp. v. Bolton*, 212 F. 3d 477 (9th Cir. 2000) (jury could find access given, *inter alia*, that defendant Michael Bolton was a "huge fan" and collector of the music of the group which recorded the allegedly infringed composition).

Finally, Plaintiffs cannot prove access on the ground that "Joyful Noise" was available on the Internet. Courts have repeatedly held that, as a matter of law, a work's availability on the Internet does not constitute widespread dissemination capable of supporting an inference of access. *See, e.g., Loomis*, 2013 U.S. Dist. LEXIS 162607, at *47 ("The availability of a copyrighted work on the Internet, in and of itself, is insufficient to show access through widespread dissemination.");

1   *Batts v. Adams*, No. CV 10-8123-JFW, 2011 U.S. Dist. LEXIS 161402, at *11-12

2   (C.D. Cal. Feb. 8, 2011) (the plaintiffs' evidence, including "the posting of videos

3   and/or songs on YouTube, Amazon.com, and iTunes by an unknown singer," is "is

4   hardly 'widespread' [dissemination] and, in fact, is quite limited, and clearly

5   insufficient to support a finding of access"); *Hayes v. Keys*, No. CV 14-6246-PA,

6   2015 U.S. Dist. LEXIS 2860, at *7 (C.D. Cal. Jan. 7, 2015) ("Plaintiffs' sole

7   allegation with regard to access is that the work was uploaded to YouTube in 2009.

8   However, this does not imply it was disseminated widely, and the FAC provides no

9   facts to support such an inference."); *Hayes v. Minaj*, No. 2:12-cv-07972-SVW-

10  SH, 2012 U.S. Dist. LEXIS 197043, at *9-10 (C.D. Cal. Dec. 18, 2012) ("The fact

11  that the video was placed on YouTube does not imply it was disseminated widely,

12  and the Complaint provides no other facts to support such an inference."); *O'Keefe

13  v. Ogilvy & Mather Worldwide, Inc.*, 590 F. Supp. 2d 500, 515 (S.D.N.Y. 2008)

14  ("[T]he mere fact that [plaintiff's] work was posted on the internet prior to the

15  creation of defendants' work is insufficient by itself to demonstrate wide

16  dissemination."); *Arnett v. Jackson*, No. 5:16-CV-872-D, 2017 U.S. Dist. LEXIS

17  128672, at *6 (E.D.N.C. Aug. 14, 2017) ("[T]he court does not infer Jackson's

18  access to *Remember Me* based on its presence on the internet.").

19          This well-established authority applies with equal force here. While

20  Plaintiffs assert that five videos containing "Joyful Noise" were uploaded to

21  YouTube and "viewed" by an unknown number of people prior to March 11, 2012

22  (a year before "Dark Horse" was created), such evidence—even if admitted—

23  wholly fails to demonstrate any access.  Plaintiffs have no evidence that the Dark

24  Horse Writers watched or would have watched any of such videos. Posting a video

25  on YouTube is the modern day equivalent to placing a proverbial needle in a

26  haystack. As the declaration of YouTube's representative Joel Truher makes clear,

27  hundreds of thousands of hours of video are uploaded daily and ***billions views are

28  generated every day***. SUF ¶ 33.

Mitchell
Silberberg &
Knupp LLP

B077854.1

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

1    Plaintiffs also contend that the five "Joyful Noise" videos on YouTube
2    collectively have a "view count" in excess of 1 million views over a four year
3    period dating from 2008 until 2012.  YouTube "view counts," however, are
4    inherently meaningless—a view does not necessarily mean that a human actually
5    watched or listened to the video, or that the video was played for more than a few
6    seconds.  SUF ¶ 27.  Indeed, a "view count" does not even identify the number of
7    unique viewers because one person could have watched the same or several of the
8    videos multiple times.  SUF ¶ 25.  In addition, "view counts" may be inflated by
9    third parties using improper means.  SUF ¶ 29.  Although the inherent
10   meaninglessness and unreliability of view counts alone should result in the
11   rejection of any argument by Plaintiffs relying on "view counts," it also bears
12   noting that, while it took four years for Plaintiffs' five videos to accumulate a
13   collective "view count" exceeding 1 million views, many other videos receive
14   **_hundreds of millions of views in a single year_**.  SUF ¶¶ 34-37.
15   Plaintiffs' "view count" argument is particularly irrelevant given that the
16   Dark Horse Writers have each testified that they do not search for, much less listen
17   to music within the Christian hip-hop genre, including online.  Given this
18   unrebutted testimony, and the staggering amount of content available on YouTube,
19   it would be completely unreasonable to infer that a Dark Horse Writer conducted
20   an affirmative search on YouTube that resulted in him or her stumbling across
21   "Joyful Noise."  *See Art Attacks Ink*, 581 F.3d at 1145 (holding no widespread
22   dissemination due to availability of design on website, in part, because "the
23   Spoiled Brats design was only one of several images on the page" and "[v]iewers
24   would not see the Spoiled Brats design without scrolling down on the page.");
25   *Loomis*, 836 F.3d at 998 (citing Nimmer, supra at § 13.02[A] (explaining that
26   "evidence showing that Gloria Estefan was present in a room with 15,000 records,
27   including one containing plaintiff's song" was insufficient to demonstrate access)
28   (citing *Palmieri v. Estefan*, 35 U.S.P.Q.2d 1382, 1383 (S.D.N.Y. 1995))); *Batts*,

Mitchell
Silberberg &
Knupp LLP

B077854.1

22

2011 U.S .Dist. LEXIS 161402, at *11-12 ("[T]he posting of videos and/or songs on YouTube, Amazon.com, and iTunes by an unknown singer, the limited two months of radio play in a single city in the United States, and the limited licensing of the song in France 'can only be described as the modern day equivalent of looking for a needle in a haystack—where the alleged seeker does not know the needle exists, and isn't looking for it.'").[13]

In sum, Plaintiffs cannot satisfy their burden of proving access and summary judgment should be entered for this reason alone.

### 3. Plaintiffs cannot rebut the undisputed testimony of the Dark Horse Writers as to their independent creation.

As discussed above, Defendants have demonstrated Plaintiffs cannot prove the necessary element of access, as a matter of law, which is fatal to their copyright claim. Defendants have also provided the Court with unrebutted testimony from the six Dark Horse Writers, attesting that "Dark Horse" was independently created without access to "Joyful Noise," in 2013. SUF ¶¶ 9-16; 43-76. There is nothing that Plaintiff can proffer to rebut Defendants' proof of independent creation of "Dark Horse," which is thus also established as a matter of law.

In an analogous case, *Stewart*, 574 F. Supp. 2d 1074, the Court granted the defendants' motion to dismiss the plaintiff's copyright claim involving the "Matrix" and "Terminator" films, on the grounds, *inter alia*, that the creators of those films testified they were created independently without access to the plaintiff's works, which testimony was unrebutted. *Id*. at 1086-88, 1094. That same result should apply here. *See also Watt v. Butler*, 457 F. App'x 856, 861 (11th Cir.

---

[13] Plaintiffs contend that "Joyful Noise" was also capable of being listened to on Myspace, but they have no admissible evidence of this. Plaintiffs did not produce any evidence that "Joyful Noise" was actually uploaded to any particular Myspace page—let alone evidence that anyone could actually listen to a sound recording of "Joyful Noise" through any Myspace page. Moreover, the availability of "Joyful Noise" on Myspace would no more evidence widespread dissemination than its availability on YouTube. *Supra*, pp. 20-23; *see also* SUF ¶¶ 38-42.

Mitchell Silberberg & Knupp LLP

B077854.1

2012) (defendants entitled to summary judgment because "even if [plaintiff] had made out a prima facie case based on a showing of access and substantial similarity, the evidence of independent creation would have negated [it]"); *accord Calhoun v. Lillenas Publ'g*, 298 F.3d 1228, 1234-35 (11th Cir. 2002).

**B.    Plaintiffs Cannot Prove Substantial Similarity as a Matter of Law.**

**1.    Establishing substantial similarity.**

In addition to proving "access," a plaintiff must prove that the two works at issue are "substantially similar." *Batts v. Adams*, No. CV 10-8123-JFW, 2011 U.S. Dist. LEXIS 161401, *8 (C.D. Cal. Oct. 21, 2011) (citation omitted).  To prevail in a copyright infringement case, a plaintiff "must prove *both* substantial similarity . . . under the 'extrinsic test' and substantial similarity . . . under the 'intrinsic test.'" *Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 624 (9th Cir. 2010) (emphasis in original); *see also Swirsky*, 376 F.3d 845; *Litchfield v. Spielberg*, 736 F.2d 1352, 1355 (9th Cir. 1984), *cert. denied*, 470 U.S. 1052 (1985). On summary judgment, the Ninth Circuit considers only the extrinsic test; while "[t]he intrinsic test is left to the trier of fact." *Benay*, 607 F. 3d at 624; *Funky Films*, 462 F.3d at 1077.  That is because the "intrinsic test, which examines an ordinary person's *subjective* impressions of the similarities between two works, is exclusively the province of the jury."  But in any event, "**a 'plaintiff who cannot satisfy the extrinsic test necessarily loses on summary judgment**, because a jury may not find substantial similarity without evidence on both the extrinsic and intrinsic tests.'" *Funky Films*, 462 F.3d at 1077 (emphasis added), quoting *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994).

"[T]he 'extrinsic' test considers whether two works share a similarity of ideas and expression based on **external, objective criteria**." *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996) (emphasis added). "The extrinsic test requires analytical dissection of a work and expert testimony" to "break[] the works 'down into their constituent elements, and compar[e] those elements for proof of copying

1  as measured by 'substantial similarity.'" *Swirsky*, 376 F.3d at 845 (citation

2  omitted).  But not all similarities are relevant: "[P]rotectable *expression* includes

3  the specific details of an author's rendering of ideas," but not the ideas themselves.

4  *Metcalf v. Bochco*, 294 F.3d 1069, 1074 (9th Cir. 2002) (emphasis added).

5      Accordingly, in applying the extrinsic test on summary judgment, a court

6  "must take care to inquire only whether 'the **protectible elements, standing alone**,

7  are substantially similar,'" and must "**filter out and disregard** the non-protectible

8  elements in making [a] substantial similarity determination." *Cavalier v. Random*

9  *House*, 297 F.3d 815, 822 (9th Cir. 2002), quoting *Williams v. Crichton*, 84 F.3d

10  581, 588 (2d Cir. 1996) (emphasis added); *Apple Comp. Inc. v. Microsoft Corp.*, 35

11  F.3d 1435, 1446 (9th Cir. 1994) ("the unprotectable elements have to be identified,

12  or filtered, before the works can be considered as a whole"); *Batts*, 2011 U.S. Dist.

13  LEXIS 161401, at *8.  The Ninth Circuit has held that "a combination of

14  unprotectable elements is eligible for copyright protection only if those elements

15  are numerous enough and their selection and arrangement original enough that

16  their combination constitutes an original work of authorship."  *Satava*, 323 F.3d at

17  811.  Plaintiff bears the burden on this.  *See infra* p. 26.

18      Ultimately, substantial similarity "may often be decided as a matter of law.

19  Indeed, the Ninth Circuit ha[s] frequently affirmed summary judgment on the issue

20  of substantial similarity." *Gable*, 727 F. Supp. 2d at 832 (internal citations and

21  quotations marks omitted).  *Batts*, 2011 U.S. Dist. LEXIS 161401, at *10 (quoting

22  *Narell v. Freeman*, 872 F.2d 907, 910 (9th Cir. 1989)) (same).[14]

23      Here, summary judgment is also warranted for the additional reason that

24  Plaintiffs cannot prove that "Joyful Noise" and "Dark Horse" are "substantially

25  _____

26  [14] Importantly, the mere fact that Plaintiffs' expert conclusorily contends "Joyful Noise" and "Dark Horse" are substantially similar (while Defendants' expert Dr. Ferrara opines they are not substantially similar) does not, by itself, create an issue of fact sufficient to deny summary judgment. "[T]he mere existence of dueling expert reports does not necessarily create a triable issue of fact." *Batts*, 2011 U.S. Dist. LEXIS 161401, at *12 n.6, quoting *Gable*, 727 F. Supp. 2d at 836-37.

Mitchell Silberberg & Knupp LLP

B077854.1

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

1   similar," as required under the extrinsic test, by virtue of the admissions and

2   methodological failings of their expert, Dr. Todd Decker.

3          **2.      Plaintiffs have failed to satisfy the extrinsic test.**

4          Plaintiffs bear the burden to adduce "expert testimony that addresses some

5   or all of the [] elements [which comprise a musical composition such as, without

6   limitation melody, harmony and rhythm] and supports its employment of them" to

7   demonstrate "that the similarity was 'substantial' and to 'protected elements' of the

8   copyrighted work." *Swirsky*, 376 F.3d at 849.

9          Under Federal Rule of Evidence 702, a trial judge acts as a "gatekeeper" to

10  ensure that expert testimony "is not only relevant, but reliable." *Daubert v. Merrell*

11  *Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993).  In the copyright-

12  infringement context, expert testimony must be precluded where the expert's

13  testimony goes to the intrinsic, rather than the extrinsic test.  *Copeland v. Bieber*,

14  No. 2:13cv246, 2016 U.S. Dist. LEXIS 178817, at *15, (E.D. Va. Sept. 8, 2016);

15  *Batts*, 2011 U.S. Dist. LEXIS 161402, at *16, n.5.

16         "If [plaintiffs] cannot present evidence that would permit a trier of fact to

17  find that [they] satisfied the extrinsic test, [they] necessarily lose[] on summary

18  judgment because a jury may not find substantial similarity without evidence on

19  both the extrinsic and intrinsic tests." *Swirsky*, 376 F.3d at 845 (citation and

20  internal quotation marks omitted).  Here, Plaintiffs cannot meet their burden

21  because their expert, Dr. Decker, failed to comply with the standards for the

22  extrinsic test, and improperly relied and opined upon the subjective, intrinsic test.

23         **a.      Dr. Decker failed to properly apply the methodology**

24                 **of the extrinsic test, yet admitted the similarities at**

25                 **issue were unprotectable.**

26         Dr. Decker admittedly failed to transcribe the musical similarities that he

27  claimed to exist between the two compositions into objective musical notation

28  (SUF ¶ 94).  Instead, he simply pointed out several alleged similarities between

their two ostinatos—principally, a pitch sequence of 3, 3, 3, 3, 2 (or "**mi, mi, mi, mi, re**" in the solfége system) in a minor mode, which he deemed to be the "most specific musical content shared by both tracks." SUF ¶ 95.  At his deposition, Dr. Decker admitted that each of the similarities identified between the compositions in his affirmative expert report were, in fact, common, or otherwise constitute musical expression that no composer is entitled to monopolize.  Most critically, Dr. Decker opined that the pitch sequence of 3, 3, 3, 3, 2 "is not a pitch sequence in any key or any mode that anyone is entitled to monopolize." SUF ¶ 97.[15]

Defendants' own expert, Dr. Lawrence Ferrara, also opined in his expert reports—through the use of transcriptions of "Dark Horse," "Joyful Noise," and prior art examples containing the similarities at issue—that each of Dr. Decker's claimed similarities is trite, commonplace, and unremarkable, either separately or in combination with each other.  SUF ¶ 108.[16]

Unlike Dr. Ferrara, however, Dr. Decker entirely failed to extract what he conceded were unprotectible musical elements from his comparison of "Dark Horse" and "Joyful Noise," as required by *Swirsky.* (Had Dr. Decker done so, he would have been forced to concede that there are no protectible similarities.)  Nor did Dr. Decker explain, as required by *Satava*, how the selection, coordination and

---

[15] The other purported similarities which Dr. Decker claimed to exist in his affirmative expert report are: "importance of [the] ostinatos," use of musical phrases consisting of "two bar units of eight beats in length," "use of even quarter notes in duple meter time," and use of "a pingy, synthesized timbre."  SUF ¶ 96. He also made admissions establishing these are commonplace musical devices. *See* SUF ¶ 98 ("countless musical works predating the creation of 'Joyful Noise' have contained ostinatos"); SUF ¶ 99 (use of four-bar phrases "is a general characteristic of contemporary beat-driven popular music in many genres") & SUF ¶ 100 (noting that this is "a basic musical building block" in the genres of hip-hop and beat-driven pop music); SUF ¶¶ 102 & 104 (noting the "relative simplicity" of the rhythm in both tracks); SUF ¶ 103 (admitting that duple meter time is commonplace and "not something any one composer is entitled to monopolize"); SUF ¶ 106 (admitting that the use of a "leading voice in a pingy, synthesized timbre" is not something any composer is entitled to monopolize); SUF ¶ 105 (no composer is allowed to monopolize the use of a minor key).

[16] Dr. Decker did not challenge the accuracy of Dr. Ferrara's prior art transcriptions establishing the commonplace nature of the similarities at issue (SUF ¶ 109).

arrangement of the commonplace elements in the ostinato of "Joyful Noise" constitutes protectable expression that Plaintiffs are entitled to monopolize.  (As he could not do so.)  The case of *Batts*, *supra,* 2011 U.S. Dist. LEXIS 161401, is instructive as to why Dr. Decker's claimed similarities fail to create an issue of fact.  In *Batts*, the plaintiffs alleged that their song "Boom Dynamite," was substantially similar to the defendants' song "Boom Boom Pow." In support of that allegation, the plaintiffs proffered the report of an expert musicologist who opined that the songs shared numerous musical elements. Notwithstanding this opinion, Judge Walter held that the works were not substantially similar because: most of the similarities between the works were, by the admission of plaintiffs' expert, unprotectible; and plaintiffs' expert failed to explain how the "selection, coordination, and arrangement of those non-protectable elements created an original, protectable expression that was then copied by the . . . Defendants." *Id.* The identical analysis applies here.

### b.    Dr. Decker's methodology is also flawed because he opined on the intrinsic test.

Compounding his flawed methodology and failed approach *vis a vis* the extrinsic test, Dr. Decker also disavowed in his rebuttal report and at his deposition the core aspects of the extrinsic test: objective identification, through musicological transcription, of the elements of a musical composition.  Dr. Decker claimed objective musical transcription is purportedly contrary to current trends in academia.  *See, e.g.,* SUF ¶ 111 ("[S]cholars of popular music would disagree that transcription can answer the question at issue here.").  Unable to support this false tenet, Dr. Decker was compelled to concede that in his own scholarly publications, he has made use of transcriptions of popular musical works, including for purposes of comparing similarities between two compositions.  SUF ¶ 112.[17]  He just failed

---

[17] Dr. Decker also conceded that scholars whom he cites in his rebuttal report have also made use of musical transcriptions in their own academic work. SUF ¶ 113.

to do it here.

In addition to failing to properly apply the extrinsic test, Dr. Decker made further fatal flaws in methodology because he improperly relied and opined upon the intrinsic test, namely how the *recordings* of "Dark Horse" and "Joyful Noise" subjectively *sound* to ordinary lay listeners. *See, e.g.*, SUF ¶ 114 (opining that "[t]he similarity between the ostinatos at issue in this case is … a matter of listening" as opposed to transcription and analytic dissection; "the issue here is the *sound* of these *records*" (emphasis added); confirming that his "opinion in the case" is that "civilian listeners would find the songs to be similar"; "The ear decides in this case, the similarities of those ostinatos, these eight-note ostinatos."); SUF ¶ 110 ("I distrust any efforts to use . . . transcriptions to pull us away from the evident similarity between the two tracks, one that is commonly . . . recognized by people that I – you know, by – by the ear, I think, to my – to my hearing.").[18]

In his incorrect reliance upon the intrinsic test, Dr. Decker went so far as to rely upon the subjective responses of anonymous Internet users hearing the songs—thereby usurping the role of the jury. Specifically, Dr. Decker relied upon four YouTube users who posted "mashup" videos that purport to compare the sound recordings of "Dark Horse" and "Joyful Noise." SUF ¶ 115. Dr. Decker conceded that he does not know the users, has never spoken to them, does not

---

[18] This Court has explained that "when a comparison is made for purposes of ascertaining whether there has been infringement of a copyright in a written composition, the factfinder may only compare those musical elements which are actually protected, which in most cases will be the sheet music of the written composition" as opposed to a recording of that composition. *Fahmy v. Jay-Z*, No. 07-cv-05715-CAS(PJWx), 2015 U.S. Dist. LEXIS 129446, *38-39 (C.D. Cal. Sept. 24, 2015) (Snyder, J.) (citing *Apple Comp.*, 35 F.3d at 1443 ("[O]nly those elements of a work that are protectable and used without the author's permission can be compared when it comes to the ultimate question of illicit copying"); *Newton v. Diamond*, 204 F. Supp. 2d 1244, 1249 (C.D. Cal. 2002) ("Plaintiff contends that Defendants' sampling infringed upon his underlying musical composition. Accordingly, the court must first determine what elements of plaintiff's work are protected by his copyright in the musical composition, as opposed to those protected by the copyright in the sound recordings, and 'filter out' the latter.")).

know who actually created the mashup videos, and does not know how the videos were created (SUF ¶ 116), and that "[e]ach of the mashup videos alters one or both of the sound recordings at issue" and that he did not know the extent of such alterations (SUF ¶ 117).  Dr. Decker disingenuously referred to these subjective, non-expert comparisons as "acts of popular musicology." SUF ¶ 115. They are not. These mashups of altered sound recordings by unknown users utilizing untested methods are the *antithesis* of proper expert testimony that is reliable and soundly based on expert musicology under the extrinsic test.

Courts have rejected similar attempts by expert musicologists to employ a subjective, intrinsic analysis, instead of an objective, extrinsic analysis.  For example, in *Cottrill v. Spears*—a case cited with approval by the Ninth Circuit in *Swirsky*[19]—the plaintiffs' expert considered how the songs at issue "are aurally perceived by the lay listener," and the expert admitted that his opinion was "not textually based."  No. 02-3646, 2003 U.S. Dist. LEXIS 8823, at *29-30 (E.D. Pa. May 22, 2003). The court rejected this analysis, since it went to the intrinsic test, not the extrinsic test, and therefore, "regardless of its reliability, does not aid the trier of fact in the detailed examination of the elements of the two works required under the extrinsic test …." *Id.*

Similarly, in *Copeland*, the plaintiff's music expert testified that his opinion was "based on his subjective belief that the hooks of the two songs sound the same, and that they would sound the same to an ordinary listener." 2016 U.S. Dist. LEXIS 178817, at *15.  Specifically, the expert testified that "[u]pon [playing the transposed songs concurrently] . . . the lay person and professional listener can clearly hear that the hook . . . is strikingly similar in lyric, melody, and rhythmic phrasing." *Id.* The court excluded the expert's testimony, finding that his opinions were "not reliable and will not assist the trier of fact in assessing the extrinsic

---

[19] *Swirsky*, 376 F.3d at 849.

Mitchell
Silberberg &
Knupp LLP

B077854.1

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

1  similarities, if any, between the songs." The *Copeland* court subsequently granted

2  the defendants' motion for summary judgment "in light of recently excluded expert

3  testimony." Request for Judicial Notice, Ex. 1 at 1, Ex. 2.  *See also Goldberg v.*

4  *Cameron*, 787 F. Supp. 2d 1013, 1021-1022 (N.D. Cal. 2011) (summary judgment

5  for defendants was appropriate where plaintiff's expert considered "the effects the

6  works of music have on the listener" instead of "provid[ing] a proper

7  musicological comparison of the protectable elements of the musical works").

8       Similarly here, Dr. Decker's reports and testimony are fundamentally flawed

9  and unreliable.  He fails to apply the extrinsic test properly, fails to rebut Dr.

10  Ferrara's extrinsic findings (while admitting core matters are unprotectible), and

11  then improperly devolves into a purely subjective opinion reserved for the intrinsic

12  test and the jury.  Dr. Decker's opinions fail to meet the standards for expert

13  testimony in this Circuit.  For that reason, Plaintiffs have no requisite proof of

14  substantial similarity under the extrinsic test as they have no admissible proper

15  expert testimony.  *Swirsky*, 376 F.3d at 845.

16  **V.   CONCLUSION**

17       Plaintiffs' claim for copyright infringement should be dismissed as a matter

18  of law because there is insufficient evidence to support either of the two requisite

19  elements of their claim—access or substantial similarity.

20  DATED: JUNE 25, 2018                    MITCHELL SILBERBERG & KNUPP LLP

21

22                                          By: /s/ Aaron M. Wais
23                                              Christine Lepera
                                                Jeffrey M. Movit
24                                              Aaron M. Wais
                                                Jacob D. Albertson
25                                              Attorneys for Defendants Identified in
                                                the Caption
26

27

28

Mitchell
Silberberg &
Knupp LLP

B077854.1

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**