**CIVIL MINUTES – GENERAL**  'O'

| | | | |
|---|---|---|---|
| Case No. | 2:15-cv-05642-CAS (JCx) | Date | August 13, 2018 |
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Michael Kahn | Christine Lepera |
| Daniel Blakey | Aaron Wais |
| | Alana Srour |

**Proceedings:** DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Filed June 25, 2018, Dkt. 270); JOINDER (Filed 06/25/2018, Dkt. 283)

## I. INTRODUCTION

On July 1, 2014, Marcus Gray (P.K.A. Flame), Lecrae Moore (P.K.A. Lecrae), Emanuel Lambert, and Chike Ojukwu filed this action alleging that the song "Dark Horse" infringes upon plaintiffs' copyright in the song "Joyful Noise." Dkt. 1. Since then, plaintiffs have amended their pleadings to add or dismiss various parties. The operative Third Amended Complaint ("TAC"), filed on November 1, 2016, no longer lists Moore as a plaintiff and alleges copyright infringement by Katheryn Elizabeth Hudson (P.K.A. Katy Perry, hereinafter "Perry"); Jordan Houston (P.K.A. Juicy J); Lukasz Gottwald (P.K.A. Dr. Luke); Sarah Theresa Hudson; Karl Martin Sandberg (P.K.A. Max Martin); Henry Russell Walter (P.K.A. Cirkut); Kasz Money, Inc.; Capitol Records, LLC; Kitty Purry, Inc.; UMG Recordings, Inc.; Universal Music Group, Inc.; WB Music Corp.; BMG Rights Management (US) LLC; and Kobalt Music Publishing America, Inc. Dkt. 172.

On June 25, 2018, Gottwald, Houston, Hudson, Sandberg, Walter, Capital Records, Kasz Money, Kobalt Music Publishing America, UMG Recordings, Universal Music Group, and WB Music filed the instant motion for summary judgment. Dkt. 270. Defendants simultaneously filed a memorandum in support of the motion for summary

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-05642-CAS (JCx) | Date | August 13, 2018 |
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

judgment, dkt. 274 ("MSJ"), a request for judicial notice,[1] dkt. 275, and a separate statement of uncontroverted facts and conclusions of law, dkt. 273-1 ("DSUF"). On the same day, Perry and Kitty Purry filed a joinder to the motion for summary judgment. Dkt. 283.

On July 16, 2018, plaintiffs filed an opposition to the motion for summary judgment, dkt. 286 ("Opp'n), and a statement of genuine disputes of facts, dkt. 287 ("PGDF"). On August 6, 2018, defendants filed a reply, dkt. 296 ("Reply"), evidentiary objections to declarations, exhibits, and other evidence cited by plaintiffs in support of their opposition brief, dkt. 297, and a response to plaintiffs' statement of genuine disputes of fact, dkt. 298.

The Court held a hearing on August 13, 2018. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II. BACKGROUND

The following facts are not meaningfully disputed and are set forth for purposes of background. Unless otherwise noted, the court references only facts that are uncontroverted and as to which evidentiary objections have been overruled.

### A. Plaintiffs' Creation and Dissemination of "Joyful Noise"

Plaintiffs Marcus Gray, Chike Ojukwu, and Emanuel Lambert are Christian rap/hip-hop artists. DSUF No. 1. Third-party Lecrae Moore is also a Christian rap/hip-hop artist. DSUF No. 3. In 2007, Ojukwu composed and recorded the beat that would become the musical bed for the composition "Joyful Noise," and Gray, Lambert, and Moore wrote and recorded the lyrics and hook for "Joyful Noise" over Ojukwu's beat. DSUF Nos. 4, 5.

A recording of the composition "Joyful Noise" appears on Gray's album *Our World Redeemed*, which was published in March 2008. DSUF No. 6. On June 3, 2014, the United States Copyright Office issued a Certificate of Registration No. PA-1-900-321 for the copyright of the "Joyful Noise" composition. DSUF No. 8. The album debuted at

---

[1] The Court grants defendants' request for judicial notice of both the Magistrate Judge's Report and Recommendation and an Order filed with the court in Copeland v. Bieber, Civil Action No. 2:13cv246 (E.D. Va. November, 14, 2016) (Dkt. Nos. 218, 223).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      'O'

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | August 13, 2018 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

#5 on the Billboard Gospel Chart and #1 on the Christian Music Trade Association (CMTA) R&B/Hip-Hop Chart. PGDF Nos. 6, 7. In January 2009, the album was a nominee for Rap/Hip-Hop Gospel Album of the Year at the Stellar Award Show held at the Grand Ole Opry in Nashville, Tennessee. PGDF No. 8. In February 2009, the album was also a nominee for Best Rock or Rap Gospel Album at the 51st Annual Grammy Awards Show. PGDF No. 9. And in April 2009, the song "Joyful Noise" was a nominee for Best Rap/Hip-Hop Song of the Year at the 40th GMA Dove Awards. PGDF No. 12.

The record does not contain evidence showing that plaintiffs sold or otherwise commercially released "Joyful Noise" or the album *Our World Redeemed*. DSUF Nos. 7, 17, 18, 20. But at least five videos containing "Joyful Noise" were uploaded to YouTube. PGDF No. 32. As of March 11, 2012, the "Joyful Noise" videos uploaded to YouTube had a collective total of 1,365,041 views. PGDF No. 44. The videos are categorized under "music" on their respective YouTube.com webpages. PGDF No. 45. The "Joyful Noise" video was also posted on the Myspace pages of Moore and Gray. PGDF Nos. 52, 55. As of September 7, 2011, "Joyful Noise" had been played 1,531,856 times on Moore's Myspace page. PGDF No. 53. And as of January 24, 2012, the video had been played 933,868 times on Gray's Myspace page. PGDF No. 54.[2]

### B. The Defendants' Creation of "Dark Horse"

The writers of the musical composition "Dark Horse" are Walter, Gottwald, Sandberg, Perry, Hudson, and Houston ("'Dark Horse' Writers"). DSUF No. 9.

Over the course of a single day in March 2013, Walter and Gottwald created an instrumental musical track at Conway Studios in Los Angeles, California, which became

---

[2] Defendants raise numerous evidentiary objections to plaintiffs' declarations. The Court **OVERRULES** defendants' relevance-based and prejudice-based objections 2, 3, 4, 6, 11, 13, 14, 15, 16, 20, 21, 22, 23 because it finds the objected-to evidence to be relevant and not prejudicial. The Court also **OVERRULES** defendants' objections 11, 21, 21, 22 based on lack of foundation, lack of personal knowledge, or lack of authentication. The Court also **OVERRULES** defendants' hearsay-based objection 20 because defendants' counsel explained during the hearing that defendants were conceding this objection for purposes of this motion. The Court need not reach defendants' other evidentiary objections because the Court does not rely on the objected-to evidence.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-05642-CAS (JCx) | Date | August 13, 2018 |
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

the musical bed for "Dark Horse." DSUF No. 10. In the summer of 2013, Perry, Hudson, and Sandberg, in collaboration with Gottwald and Walter, created the sung vocal melody and lyrics for "Dark Horse" and Houston wrote and recorded the rap vocal portion over the instrumental track. DSUF Nos. 13, 14. Gottwald and Walter fine-tuned and polished the production of "Dark Horse." DSUF No. 15.

A recording of "Dark Horse" was released commercially in September and October 2013, both as a single and as a track on Perry's album, *Prism*. DSUF No. 16.

It is undisputed that the "Dark Horse" Writers have never met, received music from, attended concerts by, or watched television interviews of Gray, Lambert, Ojukwu, or Lecrae. DSUF Nos. 45, 46, 47. The "Dark Horse" Writers claim that prior to writing "Dark Horse," they had never heard of any of the plaintiffs nor had they listened to any of plaintiffs' music, including "Joyful Noise." Dkt. 276, Declaration of Henry Walker ("Walker Decl.") ¶¶ 7, 8; Dkt. 277, Declaration of Lukasz Gottwald ("Gottwald Decl.") ¶¶ 6, 7; Dkt. 279, Declaration of Sarah Hudson ("Hudson Decl.") ¶¶ 8, 9; Dkt. 278, Declaration of Perry ("Perry Decl.") ¶¶ 8, 9; Dkt. 280, Declaration of Karl Sandberg ("Sandberg Decl.") ¶¶ 8, 9; Dkt. 281, Declaration of Jordan Houston ("Houston Decl.") ¶¶ 7, 8. The "Dark Horse" Writers also claim that during the relevant time period, they were not "in the practice of" listening to or searching for Christian music. Walter Decl. ¶ 10; Gottwald Decl. ¶ 9; Hudson Decl. ¶ 11; Perry Decl. ¶ 11; Sandberg Decl. ¶ 11; Houston Decl. ¶ 10.

Plaintiffs dispute defendants' claim that they had not heard "Joyful Noise" prior to writing "Dark Horse," as the gravamen of plaintiffs' case against defendants is that the defendants copied "Joyful Noise" when they wrote "Dark Horse."

### III. LEGAL STANDARDS

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-05642-CAS (JCx) | Date | August 13, 2018 |
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## IV. DISCUSSION

To establish copyright infringement, plaintiffs must show (1) ownership of the copyright; and (2) that defendant copied protected elements of their work. Swirsky v. Carey, 376 F.3d 841, 844 (9th Cir. 2004). Plaintiffs' ownership of a copyright of "Joyful Noise" is not in dispute. DSUF No. 8, Wais Decl. ¶ 22, Ex. 21(Gray Deposition), Ex.1 to Gray Depo; PGDF No.1.

Where, as here, there is no direct evidence of copying, "proof of infringement involves fact-based showings that the defendant had 'access' to the plaintiff's work and that the two works are 'substantially similar.'" Three Boys Music Corp. v. Bolton, 212 F.3d 477, 481 (9th Cir. 2000).

### A. Access

"To prove access, a plaintiff must show a reasonable possibility, not merely a bare possibility, that an alleged infringer had the chance to view the protected work." Art Attacks Ink, LLC v. MGA Entm't Inc. ("Art Attacks II"), 581 F.3d 1138, 1143 (9th Cir.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-05642-CAS (JCx) | Date | August 13, 2018 |
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

2009). "Of course, reasonable opportunity as here used, does not encompass any bare possibility in the sense that anything is possible. Access may not be inferred through mere speculation or conjecture. There must be a reasonable possibility of viewing the plaintiff's work—not a bare possibility." Three Boys, 212 F.3d at 482 (quoting 4 Nimmer on Copyright, § 1302[A]).

Where there is no direct evidence of access, circumstantial evidence can be used to prove access either by (1) a particular chain of events between the plaintiffs' work and the defendants' access to that work (such as through dealings with a publisher or record company) or (2) showing that the plaintiffs' work has been widely disseminated. Id. Plaintiffs' theory of access in this case focuses on the latter—widespread dissemination. Opp'n at 1.

Defendants first argue that plaintiffs have a high burden to prove "widespread dissemination" and that the plaintiffs' work must be so popular that it can be reasonably assumed that defendants could not have avoided hearing it. MSJ at 17-18. Accordingly, defendants argue that plaintiffs have not met this high burden. However, the Court observes that plaintiffs' burden at this juncture is not so high. All plaintiffs must do here is set out specific facts showing a genuine issue for trial as to whether there is a reasonable possibility that defendants had the chance to view the protected work. See Anderson, 477 U.S. at 250; Art Attacks II, 581 F.3d at 1143.

In response to defendants' argument that the record lacks the type of proof that is necessary to infer access, plaintiffs point to evidence showing that prior to the creation of "Dark Horse," "Joyful Noise" videos had amassed nearly four million online views. Opp'n at 4. Plaintiffs note that the "Joyful Noise" videos on YouTube were categorized as "music" and not as Christian hip-hop. Opp'n at 7. Plaintiffs also offer evidence showing that "Joyful Noise" enjoyed popularity and acclaim in the Christian music industry. Opp'n at 8-9.[3]

---

[3] Plaintiffs' opposition brief also references claims by Moore and Gray that they performed "Joyful Noise" around the country and that an excerpt of the song was played whenever Gray had an interview with a radio or television station during his tour. Opp'n at 8. Plaintiffs do not dispute that the "Dark Horse" Writers never attended any concerts by Moore or Gray or that they had never seen Moore or Gray interviewed on television. DSUF Nos. 47, 48. The record lacks any evidence identifying the names of the television

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-05642-CAS (JCx) | Date | August 13, 2018 |
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

In turn, defendants urge the Court to discount the importance of the YouTube and Myspace view and play counts because, according to defendants, such counts are meaningless as they do not convey exactly how many unique humans viewed the videos. MSJ at 22. Defendants also rely heavily on Loomis v. Cornish, 2013 U.S. Dist. LEXIS 162607, at *41 (C.D. Cal. Nov. 13, 2013) aff'd Loomis v. Cornish, 836 F.3d 991 (9th Cir. 2016), in which the Court explained that, "[a]s a general matter, it appears that in order for a work to be widely disseminated, it must achieve a high degree of commercial success or be readily available in the relevant market."[4] Defendants then argue that the Christian hip-hop and rap market is so niche that the success of "Joyful Noise" in that market has no bearing on the possibility that defendants could have accessed the song. Defendants also contend that "Joyful Noise" did not achieve widespread dissemination because of its lack of commercial success. MSJ at 17-19.

Drawing all reasonable inferences in the light most favorable to plaintiffs, the Court finds that there is a reasonable possibility that defendants had access to "Joyful Noise" through its alleged widespread dissemination.

The Court acknowledges that the mere existence of copyrighted materials on YouTube and Myspace would not justify an inference of access. Indeed, courts in this

---

and radio stations that Gray claims to have been interviewed by, as well as evidence identifying the names of the venues where Gray performed or the size of the audience at any of his performances. Thus, at this juncture, the Court does not rely on this evidence insofar as it may demonstrate access. Plaintiffs also try to draw a link between Perry and the Christian music industry by citing to a Rolling Stones article that describes Perry's history as a Christian artist prior to 2002. While the Court may take judicial notice of a magazine article, it can do so only to "indicate what was in the public realm at the time, not whether the contents of those articles were in fact true." Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir. 2010) (citing Premier Growth Fund v. Alliance Capital Mgmt., 435 F.3d 396, 401 n.15 (3d Cir. 2006)). As plaintiff requests judicial notice of the facts contained within these articles, the request is **DENIED**.

[4] The Court also finds that the facts in Loomis are unhelpful in guiding the instant case. The song at issue in Loomis appears to have never gained much popularity outside of a brief spate of airplay in Santa Barbara.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | August 13, 2018 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

district have found that evidence limited to the posting of a video online is insufficient to support a finding of access. See, e.g., Loomis, 2013 U.S. Dist. LEXIS 162607, at *47 ("The availability of a copyrighted work on the Internet, in and of itself, is insufficient to show access through widespread dissemination."); Batts v. Adams, 2011 U.S. Dist. LEXIS 161402, at *11-12 (C.D. Cal. Feb. 8, 2011) (finding that access was not established by evidence that the plaintiffs' song was posted on YouTube, Amazon.com and iTunes); Hayes v. Keys, 2015 U.S. Dist. LEXIS 2860, at *7 (C.D. Cal. Jan. 7, 2015) (finding that access was not established by the plaintiffs' sole allegation that the work was uploaded to YouTube). But the Court is persuaded that plaintiffs have shown more than just mere posting of "Joyful Noise" on the internet. Due to the millions of views and plays of "Joyful Noise" on YouTube and Myspace, both readily accessible websites, and the success and popularity of "Joyful Noise" in the Christian hip-hop/rap industry, a reasonable jury could conclude that there is more than a "bare possibility" that defendants—who are experienced professional songwriters—had the opportunity to hear "Joyful Noise."

The Court recognizes that the record does not show that "Joyful Noise" was commercially exploited. Although the Ninth Circuit in Loomis noted that "[i]n most cases, the evidence of widespread dissemination centers on the degree of a work's commercial success and on its distribution through radio, television, and other relevant mediums," 836 F.3d at 997, it also acknowledged that "[t]he evidence required to show widespread dissemination will vary from case to case," id. (quoting L.A. Printex Indus., Inc. v. Aeropostale, Inc., 676 F.3d 841, 847 (9th Cir. 2012)). Although defendants insist that a showing of commercial exploitation is necessary to prove access, such reasoning would make it permissible to infringe on a copyrighted work simply because it was never for sale. So while plaintiffs have not shown evidence of commercial success, they have demonstrated a triable issue of fact as to access because "Joyful Noise" achieved critical success, including a Grammy nomination, and was readily available and viewed millions of times on YouTube and Myspace. Defendants' concerns about the meaningfulness of the YouTube and Myspace view counts, the distinctiveness of the Christian music market, and the lack of commercial activity are questions of fact to be resolved by the jury.

Defendants also argue that plaintiffs cannot rebut defendants' own testimony that they independently created "Dark Horse," and that therefore, plaintiffs' claim for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | | |
|---|---|---|---|
| | **CIVIL MINUTES – GENERAL** | | **'O'** |
| Case No. | 2:15-cv-05642-CAS (JCx) | Date | August 13, 2018 |
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

copyright infringement fails.[5]  MSJ at 23.  However, the Court observes that the strength of defendants' evidence concerning independent creation is a factual issue for the jury to determine at trial, and is not an issue suited for determination at this stage.  See Three Boys, 212 F.3d at 486 ("By establishing reasonable access and substantial similarity, a copyright plaintiff creates a presumption of copying.  The burden shifts to the defendant to rebut that presumption through proof of independent creation.").

### B. Substantial Similarity

In order to determine whether two works are substantially similar, the Ninth Circuit employs a two-part analysis consisting of an objective extrinsic test and a subjective intrinsic test.  Swirsky, 376 F.3d at 845.  "For the purposes of summary judgment, only the extrinsic test is important because the subjective question whether works are intrinsically similar must be left to the jury."  Id.  The extrinsic test "requires that the plaintiff identify concrete elements based on objective criteria" and "often requires analytical dissection of a work and expert testimony."  Three Boys, 212 F.3d at 485.  The extrinsic test demands similarity in "*protected* elements of the copyrighted work . . ."  Swirsky, 376 F.3d at 845 (emphasis in original).  Thus, "it is essential to distinguish between the protected and unprotected material in a plaintiff's work."  Id.

The Ninth Circuit has never announced a uniform set of factors for analyzing a musical composition under the extrinsic test.  Id. at 849.  This is because a musical composition can be comprised of a number of otherwise unprotectable elements, including lyrics, rhythm, pitch, cadence, melody, harmony, tempo, phrasing, structure, chord progression, instrumental figures, and others.  Id.  "Music, like software programs and art objects, is not capable of ready classification into only five or six constituent

---

[5] The Court acknowledges that the "Dark Horse" Writers claim that they had never heard "Joyful Noise" before writing "Dark Horse."  The defendants in Three Boys also insisted that they had not heard the song that they had been accused of copying.  212 F.3d at 484.  But even if defendants cannot remember hearing "Joyful Noise," the Ninth Circuit recognizes that copyright infringement of a popular song can be subconscious.  See id. at 483.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | August 13, 2018 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

elements; music is comprised of a large array of elements, *some combination of which* is protectable by copyright."[6] Id. (emphasis added).

In support of their argument concerning substantial similarity, plaintiffs rely upon the report submitted by their musicologist expert, Todd Decker, Ph.D.[7] Dkt. 282, Declaration of Aaron M. Wais ("Wais Decl.") ¶ 5, Ex. 3 ("Decker Report"). Decker opines that the "most obvious, pervasive, and substantial similarity" between the two songs is a "descending ostinato[8] figure which serves as the primary formal building block for both tracks." Decker Report at 4. According to Decker, the ostinatos in both songs are identical in phrase length as both use two-bar units of eight beats in length, identical in rhythm as both use eight even quarter notes in duple meter time in a stiff and mechanical style, and remarkably similar in the timbre of the upper and primary voice. Id. at 4-6. Decker further explains that both ostinatos are nearly identical in pitch content and melodic contour. Id. at 5. Decker also identifies differences in the ostinatos but

---

[6] Defendants cite Satava v. Lowry, 323 F.3d 805, 811 (9th Cir. 2003) for the proposition that a combination of unprotectable elements is only eligible for protection "if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." The Ninth Circuit recently distinguished music, which is comprised of a large array of elements, from the glass-in-glass jellyfish sculpture at issue in Satava, and declined to deviate from the substantial similarity standard articulated in Swirsky in musical infringement suits. Williams v. Gaye, 895 F.3d 1106, 1120 (9th Cir. 2018). To the extent the defendants seek to persuade the Court to deviate from the substantial similarity standard as it is articulated in Swirsky, the Court declines to do so.

[7] The Court finds that Decker is qualified to offer an opinion regarding the similarity of "Joyful Noise" and "Dark Horse." Decker holds a Ph.D. in musicology from the University of Michigan and has published research involving musical borrowing in popular songs. Decker Report at 2-3.

[8] Decker defines "ostinato" as "a fairly short melodic, rhythmic, or chordal pattern repeated continuously throughout a piece or section." Decker Report at 2 (quoting Oxford Companion to Music, 2002).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | | |
|---|---|---|---|
| | **CIVIL MINUTES – GENERAL** | | **'O'** |
| Case No. | 2:15-cv-05642-CAS (JCx) | Date | August 13, 2018 |
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

explains that they are trivial and can be partially explained by the different generic context of the two songs. Id. at 7.

Decker concludes that the "ostinato in Dark Horse clearly borrows a memorable and highly characteristic combination of discrete and specific musical elements heard in Joyful Noise" and that "[g]iven the important structural function and expressive use of the ostinato in Dark Horse, Joyful Noise can be said to have provided essential and highly characteristic musical materials for Dark Horse." Id. at 15.

Defendants, in turn, rely on the report of their musicology expert, Lawrence Ferrara, Ph.D., who opined that "'Dark Horse' does not share any significant structural, harmonic, rhythmic, melodic, or lyrical similarities, individually or in combination, with 'Joyful Noise.'" Dkt. 282, Declaration of Aaron M. Wais ("Wais Decl.") Wais Dec. ¶ 6, Ex. 6 at 65 ("Ferrara Report").

The Court finds that Decker's expert testimony is sufficient to raise a genuine issue of material fact as to substantial similarity. As in Three Boys, Decker has identified particular features of the works which, taken in combination, could support a finding of substantial similarity by a reasonable jury. Three Boys, 212 F.3d at 485 (upholding jury verdict based upon a combination of five unprotectable elements). Although Decker's opinions are contradicted or challenged by defendants' expert, Ferrara, all plaintiffs must do to defeat summary judgment is provide "indicia of a sufficient disagreement concerning the substantial similarity of the two works." Swirsky, 376 F.3d at 846 (quoting Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1472 (9th Cir. 1992)).

Furthermore, the Court is largely unconvinced by defendants' criticisms of Decker.

First, defendants argue, without citation to legal authority, that Decker failed to properly apply the methodology of the extrinsic test because he did not transcribe the musical similarities of the two compositions into musical notation.[9] MSJ at 26. "The

---

[9] Defendants object to Decker's expert report on Federal Rule of Evidence 702 grounds due to Decker's methodology. At this juncture, it does not appear that Decker's decision not to reduce the "Joyful Noise" and "Dark Horse" compositions to musical notation precludes him from rendering an opinion on the alleged similarities between the two compositions. Defendants also object to Decker's allegedly improper opinion on the intrinsic test during his deposition testimony and in his rebuttal report. The Court did not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-05642-CAS (JCx) | Date | August 13, 2018 |
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

extrinsic test considers whether two works share a similarity of ideas and expression as measured by external, objective criteria." Swirsky, 376 F.3d at 845. As stated earlier, the Ninth Circuit does not require a uniform set of factors to be utilized in analyzing a musical composition under the extrinsic test. Id. Without transcribing the works into musical notation, Decker identified concrete elements of the ostinatos including phrase length, rhythm, pitch content, and timbre. Decker also explained his reasons for depicting the pitch content of the two songs with scale degrees instead of musical notations:

> Pitch content in this context is best understood by way of scale degrees, which allow for comparison to be made despite the difference in key between the two tracks and without using musical notation. Scale degrees at once speak to the melodic contour (the shape of a melody) and the harmonic function of given pitches in the tonal music system (as specific scale degrees inherently suggest either the need for further motion or arrival at a point of rest).

Decker Report at 5. The Court concludes that although Decker did not transcribe the two songs into musical notation, he nonetheless engaged in an analysis of external, objective criteria of both songs through his evaluation of elements such as phrase length, rhythm, pitch content, and timbre.

Defendants then argue that Decker did not extract unprotectable musical elements from his comparison of the two songs nor did he explain how the combination of elements in the ostinato of "Joyful Noise" constitutes protectable expression. MSJ at 27-28. The Court acknowledges that certain elements Decker relies upon to support his opinion on substantial similarity may be unprotectable individually. The Ninth Circuit has made clear, however, that the extrinsic test can be satisfied by showing copying of a "*combination* of unprotectible elements." Three Boys, 212 F.3d at 485 (emphasis added); see also Swirsky, 376 F.3d at 851–52 ("Although it is true that a single musical note would be too small a unit to attract copyright protection (one would not want to give the first author a monopoly over the note of B-flat for example), an arrangement of a limited number of notes can garner copyright protection."). Decker's report engages in a comparison of the overlapping similarities of several elements of the ostinatos in both

---

rely on Decker's deposition testimony or his rebuttal report in reaching its decision and therefore does not reach defendants' objection.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | August 13, 2018 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

songs and eventually concludes that "Dark Horse clearly borrows a memorable and highly characteristic combination of discrete and specific musical elements heard in Joyful Noise." Decker at 15. Accordingly, the Court cannot determine as a matter of law that the overlapping similarities identified by Decker are not protectable musical expressions.

In light of the foregoing, the Court finds that there is a genuine issue of material fact as to whether "Dark Horse" is substantially similar to protectable elements in "Joyful Noise."

## V.   CONCLUSION

Consistent with the Court's findings and conclusions above, defendants' motion for summary judgment is **DENIED**.

IT IS SO ORDERED.

|  | 00 | 19 |
|---|---|---|
| Initials of Preparer | CMJ | |