Michael A. Kahn (pro hac vice)
Kahn@capessokol.com
Lauren R. Cohen (pro hac vice)
lcohen@capessokol.com
CAPES SOKOL
7701 Forsyth Blvd. 12th Floor
St. Louis, MO 63015
(314) 721-7701

Eric. F. Kayira (pro hac vice)
eric.kayira@kayiralaw.com
KAYIRA LAW, LLC
200 S. Hanley Road, Suite 208
Clayton, Missouri 63105
(314) 899-9381

Daniel R. Blakey (SBN 143748)
blakey@capessokol.com
CAPES SOKOL
3601 Oak Avenue
Manhattan Beach, CA 90266

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCUS GRAY, et al.,<br><br>           Plaintiffs,<br><br>     v.<br><br>KATHERYN ELIZABETH HUDSON, et al.,<br><br>           Defendants. | CASE NO. 2:15-cv-05642-CAS (JCx )<br><br>Honorable Christina A. Snyder<br><br>**PLAINTIFFS' *DAUBERT* MOTION NO. 1 TO EXCLUDE OR LIMIT THE TESTIMONY OF LAWRENCE FERRARA**<br><br>Final Pretrial Conference<br>Date:  July 1, 2019<br>Time: 11 a.m.<br>Courtroom: 8D<br><br>Trial: July 16, 2019 |

**PLAINTIFFS'** *DAUBERT* **MOTION NO. 1 REGARDING TESTIMONY OF LAWRENCE FERRARA**

**PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that at the Pretrial Conference on July 1, 2019 at 11 a.m. in Courtroom 8D of this Court, located on the 8th Floor of the First Street Courthouse, 350 W. First Street, Los Angeles, CA 90012, Plaintiffs will and do hereby move *in limine* for an order excluding the opinion testimony of Defendants' designated expert Lawrence Ferrara at trial on the subject matter of his third expert report, dated April 12, 2019.

This Motion is made following the conferences of counsel pursuant to Local Rules 7-3 and 16-2.6, which took place on May 23 and June 6, 2019.

This motion is made under the provisions of Federal Rule of Evidence 702 and is based upon this Notice of Motion and Motion, the attached Exhibits A and B, and any further briefing regarding this motion, the pleadings and evidence in the Court's files, and such other evidence and arguments that the Court may consider at the hearing on this motion.

Dated: June 12, 2019         /s/ Michael A. Kahn
                             Michael A. Kahn (pro hac vice)
                             Lauren R. Cohen (pro hac vice)
                             Daniel R. Blakey (SBN 143748)
                             CAPES SOKOL

                             *Attorneys for Plaintiffs*

MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs move to exclude the testimony of Defendants' "apportionment" witness Lawrence Ferrara on the grounds that the testimony regarding the subject matter of his third expert report (dated April 12, 2019) is outside his area of qualifications, is unreliable, and is—as this Court previously ruled on a similar *Daubert* motion in a prior copyright case—not only prejudicial and but likely to confuse the jury. The following documents are attached to this Memorandum:

- Exhibit A: Report of Dr. Lawrence Ferrara dated April 12, 2019
- Exhibit B: Declaration of Todd Decker dated May 20, 2019.

**The Daubert Standard**

The Court should exclude Ferrara from testifying at trial pursuant to Federal Rule of Evidence 702 and its gatekeeping duty under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), because his testimony will not be helpful to the jury, is not the product of reliable principles and methods, and is not only prejudicial but likely to confuse the jury.

The party offering expert testimony bears the burden of establishing that the requirements of Rule 702 are met. *Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*, 923 F. Supp. 2d 1245, 1253 (S.D. Cal. 2013) (citing *Cooper v. Brown*, 510 F.3d 870, 880 (9th Cir. 2007)). As this Court explained in *Fahmy v. Jay Z*, 2015 WL 5680299 (C.D. Cal. 2015):

> Under Federal Rule of Evidence 702, a trial judge acts as a "gatekeeper" to insure that expert testimony "is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). A trial judge executes this "gatekeeper" role regardless of whether expert testimony is scientific or non-scientific, with the purpose of ensuring that "an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., v. Carmichael*, 526 U.S. 137, 152 (1999).
>
> The Supreme Court in *Daubert* enumerated a list of factors useful for evaluating the reliability of an expert. These factors include: (1) whether the theory or technique can be (and has been) tested, (2) whether the theory or technique has been subjected to peer review and

publication, (3) whether there is a known or potential error rate, and (4) whether the theory or technique is generally accepted in the relevant community. *Daubert*, 509 U.S. at 587-89. When an expert's testimony is not scientific or technical, the reliability of that testimony need not be based on "a particular methodology or technical framework," but instead can be found reliable based on the expert's knowledge and experience alone. *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1018 (9th Cir. 2004).

In addition to evaluating an expert's reliability, a trial court must also determine whether an expert has "appropriate qualifications—i.e., some special knowledge, skill, experience, training or education." *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000). "Rule 702 contemplates a broad conception of expert qualifications." *Hangarter*, 373 F.3d at 1015.

Any witness offering an expert opinion must be qualified by knowledge, skill, experience, training, or education. Fed. R. Evid. 702. Such expert testimony is only admissible if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; the testimony is based on sufficient facts or data; the testimony is the product of reliable principles and methods; and the expert has reliably applied the principles and methods to the facts of the case. *Id.* The party offering expert testimony bears the burden of establishing that these requirements are met. *Brighton Collectibles,* 923 F. Supp. 2d at 1253 (citing *Cooper v. Brown*, 510 F.3d 870, 880 (9th Cir. 2007)). "The trial judge must act as the gatekeeper for expert testimony by carefully applying Federal Rule of Evidence 702 to ensure specialized and technical evidence is 'not only relevant, but reliable.' " *Brighton Collectibles*, 923 F. Supp. 2d at 1253 (citing *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 589 (1993) and *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999)).

Reliability considers "whether an expert's testimony has 'a reliable basis in the knowledge and experience of the relevant discipline.'" *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (quoting *Kumho Tire*, 526 U.S. at 149). A district court has broad latitude to consider all factors relevant to an expert's reliability. *Kumho Tire*, 526 U.S. at 153. Exclusion is warranted if a court

determines "that there is simply too great an analytical gap between the data and the opinion offered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146; *see also Henricksen v. ConocoPhillips Co.*, 605 F. Supp. 2d 1142, 1154 (E.D. Wash. 2009). "Any step that renders [the expert's] analysis unreliable … renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplied that methodology." *Henricksen*, 605 F. Supp. 2d at 1142 (citing *In re Silicone Gel Breast Implants Products Liability Litigation*, 318 F. Supp. 2d 879, 890 (C.D. Cal.)).

**Dr. Ferrara's Opinion Does Not Pass Muster under *Daubert*.**

The crux of Dr. Ferrara's opinion is that "the value of the music at issue in the 'Dark Horse' composition should be less than 3.6% of the 'Dark Horse' composition." As the Court may recall, the same law firm representing Defendants here previously tried to submit an expert report by Dr. Jason King on the question of the apportionment of the profits in the copyright infringement case of *Fahmy v. Jay Z*, 2015 WL 5680299, Case No. 2:07-cv-05715-CAS (C.D. Cal. Sept. 24, 2015). The plaintiff there challenged Dr. King's attempt to assign precise percentages to the purported value of the allegedly infringed song as a means to reduce the profits of the defendant's song attributable to the infringing portion, e.g. "he estimates that use of [plaintiff's song] contributed between .004% and .03% to defendants' total concert revenues . . . and between .0071% and .0714% to the success for the album." *Id.* at *3.

This Court in *Fahmy* ruled that "King may not testify regarding the percentage values by which he quantifies these factors." *Id.* at *5. As the Court explained: "King's method has not been peer-reviewed by any journal nor has he established that it is generally accepted in the relevant field." King himself was unable to identify other academics or experts who have attempted to quantify the factors he identifies, let alone with the specificity contained in his report." Id. at

4

*4. So, too, the Court pointed out that Dr. King conceded that "his methodology could not be evaluated on a strictly mathematical basis." Id.

Of equal concern for the Court was the risk that "King's use of percentages may mislead and confuse the jury," pointing out that "[r]ather than providing merely an estimate of [the plaintiff's song's] influence, . . King's opinion is phrased as an absolute ceiling on the amount of concert revenues that can be reasonably apportioned to [plaintiff's song]. King's other apportionments are phrased similarly." *Id.* All of this opinion testimony triggered the Court's concerns, as expressed below:

> [G]iven the complexity of apportioning profits in a copyright infringement case, it may be misleading to present the jury with numbers as remarkably precise as those in King's report. See also *Sheldon v. Metro-Goldwyn Pictures, Corp.*, 309 U.S. 390, 408 (1940) (In an apportionment analysis "what is required is not mathematical exactness but only a reasonable approximation."). * * * [P]resenting testimony with the degree of precision contained in King's report carries a substantial risk that the jury will attach undue weight to the numbers provided, even if they are ostensibly characterized to be only an illustration. This risk is particularly high in copyright infringement cases given the high degree of uncertainty involved in apportionment analyses.

Id. at *5.

Defendants' attorneys—perhaps realizing this Court would again exclude any percentage valuations by Dr. King—turned instead to their musicologist Lawrence Ferrara as the new source of precise percentages. But the *Daubert* flaws in Dr. King's percentages are only exacerbated when an academic musicologist with no background in the ***business*** side of the music industry attempts to precisely quantify the monetary value of the infringing portions of "Dark Horse."

Without extensive knowledge—or even minimal knowledge—of the relevant economic factors that may contribute to the success of a song, Dr. Ferrara instead purports to quantify the monetary value of plaintiff's song by counting up the total number of musical "note heads" in the musical score of "Dark Horse" and then calculating the percentage of the notes comprising the infringing ostinato. He

5

counts 2,865 "note heads," and contends that only 207 of them are embodied in the ostinato. Thus, he concludes that the infringing ostinato "comprises 7.2% of the total number of note heads of the 'Dark Horse' composition," which then becomes the purported monetary value of that infringing ostinato.

In other words, under Dr. Ferrara's novel, untested, and untestable method for calculating percentages, every single "note head" has the same value. The false, misleading, untested, and unsupported assumption in Ferrara's "method" would mean that, for example, the iconic eight-note ostinatos that open the Rolling Stones' "(I Can't Get No) Satisfaction" and Beethoven's Fifth Symphony—both displayed below—would be treated as merely eight "note heads" of equal value to all the other notes in the song or the symphony.

"(I Can't Get No" Satisfaction":



Beethoven's 5th Symphony:




Not only does such a method result in a misleading and prejudicial valuation but, in the process, completely ignores the value created from the listening experience. Indeed, the ostinato at issue is played over and over and over again for 95 seconds of the 212 seconds of "Dark Horse"—i.e., it comprises 45% of the song. (Decl. of Todd Decker, attached as Exhibit B.) Yet through his untested novel "quantitative" valuation Dr. Ferrara reduces that number to 7.2%—and then further reduces it to 3.6% on his assumption that the lyrics would constitute 50% of the song, and thus cut the 7.2% in half.

Moreover, and even more misleading, Dr. Ferrara's seemingly random approach to what he labels his "quantitative value assessment"—which then forms

the starting point for his "qualitative value assessment"—will confuse and prejudice the jury. Having asserted that the "quantitative value" of the ostinato is 3.6%, he then purports to assess the "qualitative value" of the ostinato as compared to the other parts of the song to conclude that the value of that ostinato "should be less than 3.6% of the 'Dark Horse' composition.

In short, all of the serious *Daubert*-level flaws that this Court identified in its prior *Daubert* ruling over Dr. King's percentages are further exacerbated by Dr. Ferrara's novel, untested, and untestable "quantitative" and "qualitative" assignment of the precise percentage of "less than 3.6%" to a distinctive and compelling ostinato that is played through almost half of the song.

## CONCLUSION

For the reasons stated above, the Court should exclude all testimony of Professor Ferrara concerning his value assessment (including his assignment of percentage values), all as set forth in his April 12, 2019 expert report attached hereto as Exhibit A.

Dated: June 12, 2019

s/ Michael A. Kahn
Michael A. Kahn (pro hac vice)
Kahn@capessokol.com
Lauren R. Cohen (pro hac vice)
lcohen@capessokol.com
Capes Sokol Goodman Sarachan PC
7701 Forsyth Blvd., 12th Floor
St. Louis, MO 63105
Telephone: (314) 721-7701

Eric F. Kayira (pro hac vice)
Clayton, Missouri 63105

Daniel R. Blakey (SBN 143748)
3601 Oak Avenue
Manhattan Beach, CA 90266

***Attorneys for Plaintiffs***