Michael A. Kahn (pro hac vice)
Kahn@capessokol.com
Lauren R. Cohen (pro hac vice)
lcohen@capessokol.com
CAPES SOKOL
7701 Forsyth Blvd. 12th Floor
St. Louis, MO 63015
(314) 721-7701

Eric. F. Kayira (pro hac vice)
eric.kayira@kayiralaw.com
KAYIRA LAW, LLC
200 S. Hanley Road, Suite 208
Clayton, Missouri 63105
(314) 899-9381

Daniel R. Blakey (SBN 143748)
blakey@capessokol.com
CAPES SOKOL
3601 Oak Avenue
Manhattan Beach, CA 90266

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCUS GRAY, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>KATHERYN ELIZABETH HUDSON, et al.,<br><br>    Defendants. | CASE NO. 2:15-cv-05642-CAS (JCx )<br><br>Honorable Christina A. Snyder<br><br>**PLAINTIFFS' *DAUBERT* MOTION NO. 2 TO EXCLUDE OR LIMIT THE TESTIMONY OF JASON KING**<br><br>Final Pretrial Conference<br>Date:  July 1, 2019<br>Time: 11 a.m.<br>Courtroom: 8D<br><br>Trial: July 16, 2019 |

**PLAINTIFFS' *DAUBERT* MOTION NO. 2 REGARDING TESTIMONY OF JASON KING**

**PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that at the Pretrial Conference on July 1, 2019 at 11 a.m. in Courtroom 8D of this Court, located on the 8th Floor of the First Street Courthouse, 350 W. First Street, Los Angeles, CA 90012, Plaintiffs will and do hereby move *in limine* for an order excluding or limiting the opinion testimony of Defendants' designated expert Jason King at trial.

This Motion is made following the conferences of counsel pursuant to Local Rules 7-3 and 16-2.6, which took place on May 23 and June 6, 2019.

This motion is made under the provisions of Federal Rule of Evidence 702 and is based upon this Notice of Motion and Motion, the attached Exhibits A and B, and any further briefing regarding this motion, the pleadings and evidence in the Court's files, and such other evidence and arguments that the Court may consider at the hearing on this motion.

Dated: June 12, 2019

/s/ Michael A. Kahn
Michael A. Kahn (pro hac vice)
Lauren R. Cohen (pro hac vice)
Daniel R. Blakey (SBN 143748)
CAPES SOKOL

*Attorneys for Plaintiffs*

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs move to limit at trial the testimony of Defendants' apportionment witness Dr. Jason King on the grounds that the testimony purporting to rank the importance of the ostinato at issue in comparison to other purported factors contributing to the success of the "Dark Horse" song and the *Prism* album is based upon facts not in evidence, is prejudicial, unreliable, and likely to confuse the jury.

Among other things, Dr. King's methodology has not been subjected to publication in a peer-reviewed journal, cannot be tested, does not have a known potential rate of error, and is unsound. Indeed, it is not even clear what his methodology is. Moreover, the "studies" on which he relies are nothing more than a handful of non-scholarly articles and reviews of the song and/or the album by journalists and other non-experts published in *Time* magazine, MTV news, AP News, and the *Los Angeles Times*.

One additional factor, as is apparent from the 25 pages of single-spaced text Dr. King needs to try to explain in attempt to justify his methodology and opinions: if allowed to testify, he will not only confuse and mislead the jury but, in the hours it will take him to explain his methodologies, he will overwhelm the jurors with massive amounts of irrelevant (and confusing) testimony.

A copy of his report is attached hereto as Exhibit A. A copy of the Declaration of Todd Docker is attached as Exhibit B.

### The Daubert Standard

The Court should exclude Dr. King from testifying at trial pursuant to Federal Rule of Evidence 702 and its gatekeeping duty under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), because his testimony will not be helpful to the jury, is not the product of reliable principles and methods, and is prejudicial, and likely to confuse the jury.

1

The party offering expert testimony bears the burden of establishing that the requirements of Rule 702 are met. *Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*, 923 F. Supp. 2d 1245, 1252 (S.D. Cal. 2013) (citing *Cooper v. Brown*, 510 F.3d 870, 880 (9th Cir. 2007)). As this Court explained in *Fahmy v. Jay Z*, 2015 WL 5680299 (C.D. Cal. 2015):

> Under Federal Rule of Evidence 702, a trial judge acts as a "gatekeeper" to insure that expert testimony "is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). A trial judge executes this "gatekeeper" role regardless of whether expert testimony is scientific or non-scientific, with the purpose of ensuring that "an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., v. Carmichael*, 526 U.S. 137, 152 (1999).
>
> The Supreme Court in *Daubert* enumerated a list of factors useful for evaluating the reliability of an expert. These factors include: (1) whether the theory or technique can be (and has been) tested, (2) whether the theory or technique has been subjected to peer review and publication, (3) whether there is a known or potential error rate, and (4) whether the theory or technique is generally accepted in the relevant community. *Daubert*, 509 U.S. at 587-89. When an expert's testimony is not scientific or technical, the reliability of that testimony need not be based on "a particular methodology or technical framework," but instead can be found reliable based on the expert's knowledge and experience alone. *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1018 (9th Cir. 2004).
>
> In addition to evaluating an expert's reliability, a trial court must also determine whether an expert has "appropriate qualifications—i.e., some special knowledge, skill, experience, training or education." *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000). "Rule 702 contemplates a broad conception of expert qualifications." *Hangarter*, 373 F.3d at 1015.

Any witness offering an expert opinion must be qualified by knowledge, skill, experience, training, or education. Fed. R. Evid. 702. Such expert testimony is only admissible if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; the testimony is based on sufficient facts or data; the testimony is the product of reliable principles and methods; and the expert has reliably applied the

principles and methods to the facts of the case. *Id.* The party offering expert testimony bears the burden of establishing that these requirements are met. *Brighton Collectibles,* 923 F. Supp. 2d at 1252 (citing *Cooper v. Brown*, 510 F.3d 870, 880 (9th Cir. 2007)). "The trial judge must act as the gatekeeper for expert testimony by carefully applying Federal Rule of Evidence 702 to ensure specialized and technical evidence is 'not only relevant, but reliable.'" *Brighton Collectibles*, 923 F. Supp. 2d at 1252 (citing *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 589 (1993) and *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999)).

Reliability considers "whether an expert's testimony has 'a reliable basis in the knowledge and experience of the relevant discipline.'" *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (quoting *Kumho Tire*, 526 U.S. at 149). A district court has broad latitude to consider all factors relevant to an expert's reliability. *Kumho Tire*, 526 U.S. at 153.

Exclusion is warranted if a court determines "that there is simply too great an analytical gap between the data and the opinion offered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146; *see also Henricksen v. ConocoPhillips Co.*, 605 F. Supp. 2d 1142, 1154 (E.D. Wash. 2009). "Any step that renders [the expert's] analysis unreliable … renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplied that methodology." *Henricksen*, 605 F. Supp. 2d at 1142 (citing *In re Silicone Gel Breast Implants Products Liability Litigation*, 318 F. Supp. 2d 879, 890 (C.D. Cal. 2004).

**Dr. King's Valuation Conclusions Do Not Pass Muster under *Daubert*.**

Having had this very Court rule in a previous case that Dr. King "may not testify regarding the percentage values by which he quantifies" the factors that contribute to the success of a song or album, *Fahmy*, *supra*, at *5, Dr. King instead

3

resorts to a far fuzzier and thus far more potentially misleading and prejudicial option of ranking certain factors as either "Primary," "Secondary," or "Tertiary." Not surprisingly, he places the ostinato at issue in this case (which he labels Ostinato 2) in the "Tertiary" category, stating that he "reach[es] the conclusion that only a small, insignificant percentage of the success of 'Dark Horse' can be attributed to Ostinato 2." (King Rep. at 25.) As for the *Prism* album on which "Dark Horse" not only appears but was one of just two huge hits, he concludes that the song "contributed a small amount to the success of the album, and even less on the Deluxe Edition."

The very factors and concerns that caused this Court to exclude Dr. King's prior attempt to quantify the significance of the allegedly infringing element of the song in *Fahmy* in the form of tiny and precise percentage numbers are magnified in scope here by his "quantification" of the significance of the Ostinato 2 as "tertiary" and as contributing a tiny but imprecise percentage, namely, "only a small, insignificant percentage of the success of "Dark Horse." There is, quite simply, no possible way to test the validity of "a small, insignificant percentage."

The methodology underlying Dr. King's analysis is unsound and speculative and his conclusions are untestable, flawed, and likely to confuse and mislead the jury. In a meandering 25 pages of single-spaced type he offers a wide and difficult to follow set of observations as to what he identifies as the various factors that contribute to the success of a song. And yet his rambling discussion is filled with contradictions and confusions that undercut or even refute his "Primary," "Secondary," and "Tertiary" factors he claims contribute to the success of "Dark Horse" and the *Prism* album.

For example, he contends that the two "Primary Factors" contributing to the success of "Dark Horse" are the "celebrity star power" of Ms. Perry and the marketing of the song. This ranking is not only unverifiable and untestable but it is

4

PLAINTIFFS' *DAUBERT* MOTION NO. 2 REGARDING TESTIMONY OF JASON KING

self-refuting. The same "celebrity star power" performer named Katy Perry performs ***all 13 songs on the album*** (and all 15 songs on the deluxe album), yet only one other song on that album approached the success of "Dark Horse." Thus Ms. Perry's "celebrity star power" cannot be the primary factor for this song's greater success than almost all of the other songs on the album. It's obvious that the primary factor is the music itself. And as for the other purported Primary Factor—marketing—it simply begs the question of *why* the record label chose to focus its marketing on marketing "Dark Horse" over the other songs on the album. The obvious answer is that there was something about that song that made it far more marketable than the other songs. We submit that factor was the infringing ostinato.

While Dr. King does include some of the song's elements in his Secondary Factors, he delegates Ostinato 2 to a Tertiary Factor and then, to further muddy the *ipse dixit* nature of his opinion, he resorts to an unquantified percentage: "I reach the conclusion that only ***a small, insignificant percentage*** of the success of 'Dark Horse' can be attributed to Ostinato 2." (King Report at 25.) What does that mean? And how is a jury supposed to quantify that?

Unlike Dr. Ferrara's novel but ultimately unsupportable and misleading mathematical approach to arrive at his precise percentages of value, Dr. King offers nothing but rhetoric and untestable observations to support his "small, insignificant percentage" of value. Furthermore, his attempt to drastically minimize the importance of Ostinato 2 completely ignores the irrefutable fact that Ostinato 2 is played throughout 45% of "Dark Horse" (namely, 95 seconds of the song's 212-second length). (See Decker Decl., Exhibit B).)

Rather than being the subject of aggressive cross-examination, Dr. King's rankings of values should be excluded in their entirety. Furthermore, any probative

5

**PLAINTIFFS' *DAUBERT* MOTION NO. 2 REGARDING TESTIMONY OF JASON KING**

value is substantially outweighed by the risk of unfair prejudice, confusion of issues, and undue consumption of time his testimony would involve.

## CONCLUSION

For the reasons stated above, the Court should exclude all testimony of Dr. King concerning his value assessment all as set forth in his April 12, 2019 expert report attached hereto as Exhibit A.

Dated: June 12, 2019

s/ Michael A. Kahn
Michael A. Kahn (pro hac vice)
Kahn@capessokol.com
Lauren R. Cohen (pro hac vice)
lcohen@capessokol.com
Capes Sokol Goodman Sarachan PC
7701 Forsyth Blvd., 12th Floor
St. Louis, MO 63105
Telephone: (314) 721-7701

Eric F. Kayira (pro hac vice)
eric.kayira@kayiralaw.com
Kayira Law, LLC
200 S. Hanley Road, Suite 208
Clayton, Missouri 63105
Telephone: (314) 899-9381

Daniel R. Blakey (SBN 143748)
blakey@capessokol.com
CAPES SOKOL
3601 Oak Avenue
Manhattan Beach, CA 90266

*Attorneys for Plaintiffs*

**PLAINTIFFS' *DAUBERT* MOTION NO. 2 REGARDING TESTIMONY OF JASON KING**