Michael A. Kahn (pro hac vice)
Kahn@capessokol.com
Lauren R. Cohen (pro hac vice)
lcohen@capessokol.com
CAPES SOKOL
7701 Forsyth Blvd. 12th Floor
St. Louis, MO 63015
(314) 721-7701

Eric. F. Kayira (pro hac vice)
eric.kayira@kayiralaw.com
KAYIRA LAW, LLC
200 S. Hanley Road, Suite 208
Clayton, Missouri 63105
(314) 899-9381

Daniel R. Blakey (SBN 143748)
blakey@capessokol.com
CAPES SOKOL
3601 Oak Avenue
Manhattan Beach, CA 90266

***Attorneys for Plaintiffs***

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCUS GRAY, et al., | |
| Plaintiffs, | CASE NO. 2:15-cv-05642-CAS (JCx ) |
| v. | Honorable Christina A. Snyder |
| KATHERYN ELIZABETH HUDSON, et al., | **PLAINTIFFS' *DAUBERT* MOTION NO. 4 TO EXCLUDE TESTIMONY OF ZACHARY P. ST. MARTIN** |
| Defendants. | Final Pretrial Conference<br>Date: July 10, 2019<br>Time: 11 a.m.<br>Courtroom: 8D |
| | Trial: July 16, 2019 |

**PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that at the Pretrial Conference on July 1, 2019 at 11 a.m. in Courtroom 8D of this Court, located on the 8th Floor of the First Street Courthouse, 350 W. First Street, Los Angeles, CA 90012, Plaintiffs will and do hereby move *in limine* for an order excluding the opinion testimony of Defendants' designated expert Zachary P. St. Martin at trial on the subject matter of his expert report dated April 12, 2019 ("Martin Report"), a true and correct of which is attached hereto as **Exhibit A**.

This Motion is made following the conference of counsel pursuant to Local Rules 7-3 and 16-2.6, which took place on May 23 and June 6, 2019.

This motion is made under the provisions of Federal Rule of Evidence 702 and is based upon Plaintiff's Notice of Motion, and any further briefing regarding this Motion, the pleadings and evidence in the Court's files, and such other evidence and arguments that the Court may consider at the hearing on this motion.

Dated: June 12, 2019   /s/ Michael A. Kahn
           Michael A. Kahn (pro hac vice)
           Lauren R. Cohen (pro hac vice)
           Daniel R. Blakey (SBN 143748)
           Capes Sokol Goodman and Sarachan, PC
           7701 Forsyth Blvd, 1200
           St. Louis, MO 63105

           *Attorneys for Plaintiffs*

1

# **<u>TABLE OF CONTENTS</u>**

*Page*

Table of Contents.........................................................................................i

Table of Authorities.....................................................................................ii

Memorandum of Points and Authorities ...................................................1

    I.  Legal Standard.........................................................................2

    II. Argument .................................................................................3

        A.  Martin is not qualified to provide expert testimony here ....................3

        B.  Martin's opinions are not based upon any reliable methodology .........6

        C.  Martin's purported expert opinions are not relevant to any fact or

           issue in the case and must be excluded ................................................8

    III. Conclusion ..............................................................................10

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PLAINTIFFS' *DAUBERT* MOTION NO. 4 TO EXCLUDE TESTIMONY OF ZACHARY P. ST. MARTIN**

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

4

**Cases**

5

*Art Attacks Ink, LLC v. MGA Entm't Inc.*,
   581 F.3d 1138 (9th Cir. 2009) .............................................................. 9

6

7

*Estate of Barabin v. AstenJohnson, Inc.*,
   740 F.3d 457 (9th Cir. 2014) ............................................................... 2

8

9

*Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*,
   923 F. Supp. 2d 1245 (S.D. Cal. 2013) ............................................ 2, 3

10

11

*In re Canvas Specialty, Inc.*,
   261 B.R. 12*19 (2001) ........................................................................ 4

12

13

*Cooper v. Brown*,
   510 F.3d 870 (9th Cir. 2007) ............................................................... 3

14

15

*Daubert v. Merrell Dow Pharms., Inc.*,
   43 F. 3d 1311 (9th Cir. 1995) ...................................................... 5, 7, 8

16

17

*Daubert v. Merrell Dow Pharms. Inc.*,
   509 U.S. 579 (1993) ................................................................... 2, 6, 10

18

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997) ............................................................................ 7

19

20

*Henricksen v. ConocoPhillips Co.*,
   605 F. Supp. 2d 1142 (E.D. Wash. 2009) .......................................... 7

21

22

*Kumho Tire Co. Ltd. v. Carmichael*,
   526 U.S. 137 (1999) ..................................................................... 2, 3, 4

23

24

*L.A. Printex Indus., Inc., v. Aeropostale, Inc.*,
   676 F. 3d 841 (9th Cir. 2012) ........................................................ 8, 9

25

26

*Loomis v. Cornish*,
   836 F. 3d 991 (9th Cir. 2016) ............................................................. 9

27

*Morin v. U.S.*,
   534 F. Supp. 2d 1179 (D. Nev. 2005) ................................................. 5

28

PLAINTIFFS' *DAUBERT* MOTION NO. 4 TO EXCLUDE TESTIMONY OF ZACHARY P. ST. MARTIN

*United States v. Hankey,*
    203 F.3d 1160 (9th Cir. 2000) ................................................................. 3

*Warner Bros. Entm't v. Global Asylum, Inc.,*
    2013 WL 12114863*6 (Jan. 29, 2013) ................................................. 3, 5

**Other Authorities**

Federal Rule of Evidence 702 ....................................................... 2, 3, 4, 7, 10

Peter W. Huber, *Galileo's Revenge: Junk Science in the Courtroom*
    206-09 (1991) ......................................................................................... 5

7 Wigmore §1918 .................................................................................. 10

PLAINTIFFS' *DAUBERT* MOTION NO. 4 TO EXCLUDE TESTIMONY OF ZACHARY P. ST. MARTIN

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendants disclosed purported expert Zachary P. St. Martin ("Martin"), who seeks to offer opinion testimony on "how users generally viewed or listened to content on Myspace during the period of 2008-2013, and the circumstances under which an individual could possibly have come upon Plaintiff's song 'Joyful Noise,' as it appeared on…Myspace…" Martin Report, p. 1 ¶ 1. Specifically, Martin opines:

> [I]t is not reasonably possible that an individual would have come upon 'Joyful Noise' on the Myspace pages of Flame or Lecrae without having taken specific affirmative action.

*Id.* ("Martin's Primary Opinion").

Martin, a lawyer, who has no specialized training or professional experience in website engineering or functionality, purportedly recreates certain aspects of Myspace and concludes that "it is not reasonably possible that an individual who had no knowledge of Flame or Lecrae to affirmatively searched for and found one of their respective personal profile pages and, having found one of those pages, listened to 'Joyful Noise,' whether by clicking on it or because it auto-played." *Id.*, p. 9, ¶ 22 ("Martin Secondary Opinion").

Martin offers ancillary opinion testimony related to the legitimacy of a Myspace "play." For instance, Martin opines that (1) each "play" does not mean a person actually listened to the song, it just indicates the playing of the song was initiated; (2) each "play" does not mean the song was played in its entirety; (3)

1

each "play" does not mean a person initiated the song, perhaps a "bot" did; and (4) a "play" does not identify any one person as having initiated the song. *Id.*, p. 7-8, ¶¶16-18 ("Martin Testimony Regarding Legitimacy of Plays").

Martin's purported expert testimony falls short of meeting the requisite legal standard and must be excluded.  Martin is not qualified to offer expert testimony regarding Myspace functionality, legitimacy of plays, or internet viewership, generally, and the methodology upon which he arrived at his opinions is unreliable, amateur, untested and non-reviewed.  Moreover, his Primary and Secondary opinions are not relevant to any issue in the case.  Because his opinions are not relevant, they will not help the jury, but instead, will only serve to confuse the issues, distort the relevant legal standard, and prejudice plaintiffs.

## I.      Legal Standard

"The trial judge must act as the gatekeeper for expert testimony by carefully applying Federal Rule of Evidence 702 to ensure specialized and technical evidence is 'not only relevant, but reliable.'" *Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*, 923 F. Supp. 2d 1245, 1252 (S.D. Cal. 2013) (*citing Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 589 (1993) and *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999)).  "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful."  *Daubert*, 509 U.S. at 591.  Reliability considers "whether an expert's testimony has 'a reliable basis in the knowledge and experience of the relevant discipline.'" *Estate of Barabin v.*

*AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (quoting *Kumho Tire*, 526 U.S. at 149).  In addition to evaluating the relevance and reliability of an expert's opinion, a trial court must also determine whether an expert has "appropriate qualifications—i.e., some special knowledge, skill, experience, training or education." *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000).  The party offering expert testimony bears the burden of establishing that these requirements are met. *Brighton Collectibles*, 923 F. Supp. 2d at 1252 (citing *Cooper v. Brown*, 510 F.3d 870, 880 (9th Cir. 2007)).

## II.    Argument

### A.  Martin is not qualified to provide expert testimony here

Federal Rule 702 states: "If scientific, technical or other specialized knowledge will assist the trier of fact to under the evidence or to determine a fact in issue, a witness qualified as expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."  *Id.*  In order to find that a witness is qualified to testify as an expert on a particular matter, "[t]he evidence must show that the expert witness possesses the appropriate expertise."  *Warner Bros. Entm't v. Global Asylum, Inc.*, 2013 WL 12114863*6 (Jan. 29, 2013).  A trial judge executes its "gatekeeper" role with the purpose of ensuring that "an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the

practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152.

Any witness offering an expert opinion must be qualified by knowledge,

skill, experience, training, or education. Fed. R. Evid. 702.

Not only are Martin's opinions not relevant, but he is not qualified to offer

his Primary or Secondary opinions or testimony regarding legitimacy of plays.

Martin's supposed qualifications regarding Myspace viewership are limited to his

work there as *a lawyer* and his own personal "heavy [use] of Myspace."  Martin

Report, p. 2-3, ¶ 4, 5.  He is an attorney, not an internet platform engineer or

historian.  He has worked for several media companies, but always in a legal

capacity.  *Id.*, p. 1-2, ¶ 3.  In his report, he attempts to assure the reader that his

lack of professional expertise is somehow made up by his own personal experience

as a "user of the services."  *Id.*, p. 3, ¶5.  It is not.  His professional experience at

Myspace, or any other place, does not involve website design, forensics,

functionality, viewership or user experience.  Moreover, there is no indication that

Martin has any specialized training or ever has performed any similar analyses

related to the functionality of Myspace, the legitimacy of plays, or how a user may

have heard any particular work.  On this basis alone, Defendants have failed to

satisfy their burden of proving he is a qualified expert.  *See*, *e.g.*, *In re Canvas*

*Specialty, Inc.*, 261 B.R. 12*19 (2001) (court disqualified architect from offering

opinion testimony regarding whether certain structures met contract requirements

and/or had structural deficiencies because although architect may *in general* have

experience making these determinations, there was no evidence that the architect had ever performed similar analyses); *Warner Bros.*, 2013 WL at *6-7 (expert who had experience related to marketing, international business and even consumer research was excluded because proponent did not establish that he had any special training or experience crafting or analyzing consumer perception surveys).

As further evidence that Martin is not qualified to opine on the subject matter of his report, Martin never has served as an expert witness and never has published anything at all, much less any publication on the topic of his purported expert testimony.  *Morin v. U.S.*, 534 F. Supp. 2d 1179, 1185 (D. Nev. 2005) (physician who sought to opine that jet fuel can cause malignant cancer and did cause plaintiff's cancer was precluded from doing so on the ground that, although he had extensive experience diagnosing and treating cancer, he had no expertise in toxicology, epidemiology, risk-assessment, or environmental medicine, and had never done any original research or published any papers about jet fuel or its potential cancerous effects); *Daubert v. Merrell Dow Pharms., Inc.*, 43 F. 3d 1311, 1318-1319 (9th Cir. 1995) (citing Peter W. Huber, *Galileo's Revenge: Junk Science in the Courtroom* 206-09 (1991) (describing how the prevalent practice of expert-shopping leads to bad science; suggesting that "[t]he ultimate test if [a scientific expert's] integrity is her readiness to publish and be damned").  Martin's lack of qualification, alone, is grounds for exclusion.

*B.  Martin's opinions are not based upon any reliable methodology*

The Supreme Court in *Daubert* enumerated a list of factors useful for evaluating the reliability of an expert testimony. These factors include: (1) whether the theory or technique can be (and has been) tested, (2) whether the theory or technique has been subjected to peer review and publication, (3) whether there is a known or potential error rate, and (4) whether the theory or technique is generally accepted in the relevant community. *Daubert*, 509 U.S. at 587-89.

Martin fails to identify any recognized theory or technique he relied upon in reaching his opinions.  Instead, Martin's methodology consists of reconstructing Myspace, including its functionality and design, based upon *his own memory* and inert screenshots of a sampling of past versions of the now [basically] defunct internet platform.  He then discusses the various features of Myspace and explains what *he believes* to be the user experience, all to support his ultimate opinion.  For instance, Martin offers what he remembers was "generally" or "typically" the way a user would interact with a particular feature of the Myspace website during the relevant time period. Martin Report, p. 9, ¶ 21, 23; p. 11, ¶26.  He states that he sampled snapshots of the Myspace homepage and saw "almost no evidence" of Christian themed music and "zero evidence" of Christian hip hop.  *Id.*, p. 11, ¶ 28.  Based upon such "sampling" he concludes, without explanation, that it

PLAINTIFFS' *DAUBERT* MOTION NO. 4 TO EXCLUDE TESTIMONY OF ZACHARY P. ST. MARTIN

would be highly unlikely for a user to locate "Joyful Noise" through the Myspace homepage.  He repeats this analysis for other features of the website.  Martin fails to explore several important discovery functions, including the Christian music genre page and the possibility of dissemination through embeds on other web pages or social media (which Martin ruled out because he simply "did not see any evidence" that this happened).

Likewise, Martin fails to identify any objective source upon which he based his methodology.  To survive a 702 attack, an expert "must explain precisely how they went about reaching their conclusions and point to some objective source – a learned treatise, the policy statement of a professional association, a published article in a reputable scientific journal or the like…" *Daubert*, 43 F. 3d at 1318-19.  Exclusion is warranted if a court determines "that there is simply too great an analytical gap between the data and the opinion offered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *see also Henricksen v. ConocoPhillips Co.*, 605 F. Supp. 2d 1142, 1154 (E.D. Wash. 2009).  The analytical gap here is more like a crater.  Martin is a hired gun, whose opinions were developed expressly for the purpose of testifying in this matter.  His reliance on his own beliefs regarding how users "generally" or "typically" used Myspace during the relevant period fall woefully short of the kind of reliable methodology required to satisfy

*Daubert*.  Accordingly, on this basis, too, Martin must be precluded from offering exert testimony in this matter.

> ### C.  Martin's purported expert opinions are not relevant to any fact or issue in the case and must be excluded

The parties agree that plaintiff's copyright claim hinges on proof of two elements, namely, "access" and "substantial similarity."  Circumstantial evidence can be used to prove access by showing that the plaintiff's work has been widely disseminated.  *L.A. Printex Indus., Inc., v. Aeropostale, Inc.*, 676 F. 3d 841, 846-47 (9th Cir. 2012) (internal quotations omitted).  Plaintiffs intend to offer circumstantial evidence of widespread dissemination by showing that their song was played extensively on the radio, sold nationwide, played in concert venues across the country, listed on several Billboard Music Charts (which is based upon commercial sales), nominated for several awards, including a Grammy, and viewed millions of times on the internet.  One indication of such widespread dissemination is that prior to the creation of the infringing song, "Dark Horse," Plaintiffs' song, "Joyful Noise," was posted on two well-known and popular websites: YouTube.com and Myspace.com and viewed/played at least **3,830,765** times by visitors to those websites.

Martin's Primary and Secondary opinions are not relevant to any issue in the case because they inject a new element into the legal standard for widespread dissemination, improperly suggesting that a user/viewer must take "affirmative

action" to view the work in question in order to prove access.  On the contrary, the standard for proving access through "widespread dissemination" is loose and requires only a showing of a "reasonable possibility…that an alleged infringer had the chance to view the protected work."  *Id.* at 846-47 ("The evidence required to show widespread dissemination will vary from case to case.").  To prove access circumstantially, a plaintiff must prove *either* a chain of events linking the plaintiff's work and defendant's access, *or* that the plaintiff's work has been widely disseminated.  *Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1143 (9th Cir. 2009); Ninth Circuit Manual of Model Civil Jury Instructions ("MCJI"), MCJI §17.18 (2017 edition, last updated April 2019).  "As a general matter, in order for a work to be widely disseminated, it must achieve a high degree of commercial success…"  *Loomis v. Cornish*, 836 F. 3d 991 (9th Cir. 2016).  Plaintiffs are not required to prove where or how Defendants heard "Joyful Noise," nor are they required to prove that any particular one of the millions of viewers/listeners on Myspace took affirmative action to view/listen to "Joyful Noise."

Plaintiffs will offer evidence of Myspace views for purposes of showing that "Joyful Noise" was widely disseminated over the internet, and that such dissemination, together with many other forms, was widespread such that the totality of the dissemination makes it reasonably possible that the Defendants had the chance to hear it.  Accordingly, whether any viewer, including Defendants,

9

took specific affirmative action to view the song on Myspace is not at issue. Martin's Primary and Secondary opinions will not assist the trier of fact and will only serve to confuse the issues and prejudice Plaintiffs and, thus, must be excluded. *Daubert*, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, not helpful.").

Martin's testimony regarding legitimacy of plays also is not relevant. Martin opines that the millions of plays on Myspace are insignificant relative to the amount of songs played in the Myspace universe. Martin bases this "opinion" on regurgitated testimony from the inadmissible hearsay declaration of Myspace corporate representative, Christopher Magill. Moreover, certain facts related to the legitimacy of Myspace plays are stipulated by the parties. Accordingly, Martin's testimony on the subject is not grounded upon his own expertise, and is nothing but sheer argument, which must be left to the lawyers, not the experts. On this basis, Martin's testimony regarding legitimacy of plays is unhelpful, superfluous and a waste of time, and must be excluded. Fed. R. Evid. 702; *Daubert*, 509 U.S. at 591; 7 Wigmore §1918.

## III.   Conclusion

Martin falls short of the standard for qualifying an expert witness in every respect – he is unqualified, his methodology is unreliable, amateur, untested and unreviewed, and the subject matter of his testimony is not relevant to any issue

---

PLAINTIFFS' *DAUBERT* MOTION NO. 4 TO EXCLUDE TESTIMONY OF ZACHARY P. ST. MARTIN

in this case.  Accordingly, he must be precluded from offering Primary and

Second opinions and testimony regarding legitimacy of plays.


Dated: June 12, 2019

                                   s/ Michael A. Kahn
                                   Michael A. Kahn (pro hac vice)
                                   Kahn@capessokol.com
                                   Lauren R. Cohen (pro hac vice)
                                   lcohen@capessokol.com
                                   Capes Sokol Goodman Sarachan PC
                                   7701 Forsyth Blvd., 12th Floor
                                   St. Louis, MO 63105
                                   Telephone: (314) 721-7701

                                   Eric F. Kayira (pro hac vice)
                                   eric.kayira@kayiralaw.com
                                   Kayira Law, LLC
                                   200 S. Hanley Road, Suite 208
                                   Clayton, Missouri 63105
                                   Telephone: (314) 899-9381

                                   Daniel R. Blakey (SBN 143748)
                                   blakey@capessokol.com
                                   CAPES SOKOL
                                   3601 Oak Avenue
                                   Manhattan Beach, CA 90266

                                   ***Attorneys for Plaintiffs***

PLAINTIFFS' *DAUBERT* MOTION NO. 4 TO EXCLUDE TESTIMONY OF ZACHARY P. ST. MARTIN