CHRISTINE LEPERA (admitted *pro hac vice*)
  ctl@msk.com
JEFFREY M. MOVIT (admitted *pro hac vice*)
  jmm@msk.com
JACOB D. ALBERTSON (admitted *pro hac vice*)
  j1a@msk.com
MITCHELL SILBERBERG & KNUPP LLP
437 Madison Avenue, 25th Floor
New York, New York 10022
Telephone: (212) 509-3900
Facsimile: (212) 509-7239

AARON M. WAIS (SBN 250671)
  amw@msk.com
GABRIELLA A. NOURAFCHAN (SBN 301594)
  gan@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, California 90067
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

GREENBERG TRAURIG, LLP
VINCENT H. CHIEFFO (SBN 49069)
Email: ChieffoV@gtlaw.com
ALANA C. SROUR (SBN 271905)
Email: SrourA@gtlaw.com
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
Telephone: 310-586-7700
Facsimile: 310-586-7800

Attorneys for Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| MARCUS GRAY, et al., | CASE NO. 2:15-cv-05642-CAS (JCx) |
| Plaintiffs, | Honorable Christina A. Snyder |
| v. | **DEFENDANTS' MOTION *IN LIMINE* NO. 5 TO EXCLUDE EVIDENCE OF PURPORTED PLAYING OF "JOYFUL NOISE" DURING RADIO AND TV INTERVIEWS** |
| KATHERYN ELIZABETH HUDSON, et al., | |
| Defendants. | **Final Pretrial Conference** <br> Date: July 1, 2019 <br> Time: 11:00 a.m. <br> Courtroom: 8D – 8th Fl., First Street |
| | Filed: July 1, 2014 <br> Trial: July 16, 2019 |

**DEFENDANTS' MIL NO. 5 EXCLUDING EVIDENCE OF RADIO AND TELEVISION PLAYS**

# NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** at the Pretrial Conference in this matter on July 1, 2019, at 11:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 8D of the Federal Courthouse located at 350 West 1st Street, Los Angeles, CA 90012, Defendants Capitol Records, LLC, Jordan Houston, Lukasz Gottwald, Sarah Theresa Hudson, Karl Martin Sandberg, Henry Russell Walter, UMG Recordings, Inc., Universal Music Group, Inc., WB Music Corp., Kobalt Music Publishing America, Inc., Kasz Money, Inc., Katheryn Elizabeth Hudson, and Kitty Purry, Inc. (collectively "Defendants") will and hereby do move for an order excluding any testimony by Marcus Gray ("Gray") or his wife, Crystal Gray, that Marcus Gray was interviewed on radio or television in cities where he performed in concert and that "Joyful Noise"—or at least an excerpt from it—was played in the course of that interview.

The evidence should be excluded on the grounds that it (1) lacks foundation; (2) lacks personal knowledge; (3) is speculative; (4) is unreliable and not corroborated; (5) is hearsay; (6) is irrelevant; and (7) is prejudicial.

This Motion is made following the conferences of counsel pursuant to Local Rules 7-3 and 16-2.6, which took place on May 24, 2019 and June 6, 2019. Wais Decl., ¶ 2. This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, any supporting declarations, any further briefing regarding this Motion, the pleadings and evidence in the Court's files, and such other evidence and arguments that the Court may consider at the hearing on this Motion.

| | | |
|---|---|---|
| 1 | DATED: June 12, 2019 | MITCHELL SILBERBERG & KNUPP LLP |
| 2 | | |
| 3 | | By: /s/ Aaron M. Wais |
| | | Aaron M. Wais (SBN 250671) |
| 4 | | Attorneys for Defendants other than Katheryn Elizabeth Hudson, and Kitty Purry, Inc. |
| 5 | | |
| 6 | DATED: June 12, 2019 | GREENBERG TRAURIG, LLP |
| 7 | | |
| 8 | | By: /s/ Vincent H. Chieffo |
| | | Vincent H. Chieffo (SBN 49069) |
| 9 | | Attorneys for Defendants Katheryn Elizabeth Hudson p/k/a Katy Perry and Kitty Purry, Inc. |

## ATTESTATION REGARDING SIGNATURES

Pursuant to Local Civil Rule 5-4.3.4(a)(2)(i), I hereby attest that all Parties, on whose behalf this entire filing is jointly submitted, concur in this filing's content and have authorized its filing.

Dated:  June 12, 2019          /s/ Aaron M. Wais
                                               Aaron M. Wais

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  Introduction and Statement Of Relevant Facts

At trial, Plaintiffs bear the burden of proving that defendants Walter and Gottwald—the sole defendants responsible for creating the allegedly infringing instrumental music for "Dark Horse"[1]—copied "Joyful Noise" in creating their instrumental music. This means Plaintiffs must prove access—meaning that Walter or Gottwald had a reasonable opportunity to hear "Joyful Noise" before creating the instrumental music for "Dark Horse"—as well as substantial similarity. As to access, Plaintiffs have long admitted that they have no direct evidence of Walter or Gottwald having had an opportunity to hear "Joyful Noise" or circumstantial evidence that they heard it through a chain of events (i.e., an intermediary). They have confirmed that they will not argue either theory at trial.

Instead, Plaintiffs' sole theory of access has always been that "Joyful Noise" was allegedly "widely disseminated" such that a jury could infer that Walter or Gottwald had a reasonable opportunity to hear the song. On summary judgment, Plaintiffs attempted to prove this theory through evidence that an excerpt from "Joyful Noise" was purportedly played during unspecified radio and television interviews of Marcus Gray while he was on concert tours. The Court, however, "[did] not rely on this evidence insofar as it may demonstrate access," correctly reasoning that any interviews of Gray were irrelevant because it was undisputed that Walter and Gottwald had never heard Gray being interviewed. Wais Decl., Ex. 1 (MSJ Order), pp. 11-12, n. 3. The Court also refused to accept Plaintiffs' evidence because Plaintiffs "did not identify[] the names of the television and radio stations that Gray claimed to have been interviewed by." *Id*.

Nothing has changed since summary judgment. Plaintiffs still do not dispute that Walter and Gottwald never heard them being interviewed. (Plaintiffs cannot

---

[1] *See* Dkt. 287, p. 3, ¶ 11; Wais Decl., Ex. 1 (MSJ Order), pp. 8-9.

even rebut the undisputed testimony of Walter and Gottwald that they did not know who Gray was before this litigation.)  Plaintiffs also have not produced any additional evidence corroborating these purported interviews, much less that some snippet of "Joyful Noise" was played during the interview.  Instead, the evidence remains the same as on summary judgment.

Nevertheless, Plaintiffs have stated their intent to rely at trial on the same evidence of "Joyful Noise" playing during Gray's interviews already rejected by this Court.  The evidence, however, is still irrelevant to proving that Walter or Gottwald had a reasonable opportunity to hear "Joyful Noise" and should be excluded.  Moreover, any minimal probative value is outweighed by the prejudice of admitting it.  Finally, the evidence is still inadmissible as it continues to lack foundation, personal knowledge, and constitute hearsay.

## II.	Interviews of Gray Are Irrelevant to Access.

Only relevant evidence—defined as evidence having "any tendency to make a fact more or less probable than it would be without the evidence"—is admissible.  Fed. R. Evid. 401, 402.  Here, Plaintiffs argue that the playing of "Joyful Noise" during radio and television interviews of Gray is relevant to prove "widespread dissemination" but do not explain how. This Court already rejected this argument on summary judgment and nothing compels a different conclusion now.

Widespread dissemination is markedly different from "proof that defendant actually viewed, read, or heard the work at issue"[2] or "circumstantial evidence … establishing a chain of events linking the plaintiff's work and the defendant's access."[3]  "Widespread dissemination" is pertinent only in those circumstances where (1) a song achieves "an appreciable level of national saturation," which "centers on the degree of a work's commercial success **and** on its distribution

---

[2] *Briggs v. Blomkamp*, 70 F. Supp. 3d 1155, 1165 (N.D. Cal. Oct. 3, 2014).
[3] *Loomis v. Cornish*, 836 F.3d 991, 995 (9th Cir. 2016); *see also* Ninth Cir. Jury Instr. 17.18, Supp. Instr.

through radio, television, and other relevant mediums" or (2) there is "saturation in a relevant market in which both the plaintiff and the defendant participate." *Loomis*, 836 F.3d at 994-95, 997-98 (citing cases).  Moreover, regardless of the theory of access, the evidence must support a "*reasonable* possibility, not merely a barely possibility," that the defendant heard the work.  *Id.* at 995; *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482-84 (9th Cir. 2000) (reasonable opportunity requires more than mere speculation or conjecture).  As such, even in the context of widespread dissemination, a plaintiff must prove facts that explain why the specific dissemination sought to be proven would support the inference that the defendant author had a *reasonable* opportunity to hear plaintiff's song.

Here, common sense dictates that speculative evidence that "Joyful Noise" could be heard in the background of radio and television interviews of Gray cannot possibly be direct proof or circumstantial evidence probative of establishing an *inference* that Walter or Gottwald heard "Joyful Noise" because is undisputed that Walter and Gottwald did not listen to these interviews.[4]  In fact, they did not even know who Gray and Lecrae Moore were until this litigation was filed  In this regard, it does not matter if and how many times Gray was interviewed or if "Joyful Noise" could be heard in the background; Walter and Gottwald undisputedly did not hear these interviews and, thus, could not have heard "Joyful Noise."

---

[4] Walter and Gottwald specifically deny knowing who Gray was before this litigation or hearing him being interviewed on the radio or television.  Wais Decl., Ex. 2 (Walter MSJ Decl.), ¶¶ 7-8, 10; Ex. 3 (Gottwald MSJ Decl.), ¶¶ 6-7, 9.  Plaintiffs, in turn, concede that they have no evidence to the contrary, or that it was played on the radio.  Wais Decl., Ex. 4 (Gray Depo. Tr.), pp. 38, l. 14-40, l. 2 & 41, l. 4-42, l. 16; Ex. 5 (Ojukwu Depo. Tr.), pp. 49, l. 8-52, l. 9 & 53, l. 19-55, l.2; Ex. 6 (Lambert Depo. Tr.), pp. 62, l. 2-66, l. 11, 67, l. 9-68, l. 25, & 69, ll. 3-8.  Moreover, Gray is admittedly a Christian music artist and his interviews would have been on Christian radio or television stations during concert stops.  Ex. 5 (Ojukwu Dep. Tr.), p. 53, ll. 19-22.  Yet, Walter and Gottwald affirmatively testified that they have never followed Christian music, including listening to it on Christian radio or otherwise; testimony Plaintiffs cannot rebut.  Wais Decl., Ex. 2 (Walter MSJ Decl.), ¶¶ 9-10, 18-19; Ex. 3 (Gottwald MSJ Decl.), ¶¶ 8-9, 17-18.

Nor should Plaintiffs be heard to argue that these purported concerts somehow prove widespread dissemination. Sporadic interviews where a snippet of a song *might* have played in the background cannot possibly evidence national saturation. Nor can it evidence saturation in a market in which Walter or Gray also participated because Walter and Gottwald undisputedly did not follow Christian music. *Supra*, n. 4. And again, it is undisputed that neither heard Gray being interviewed. Consistent therewith, this Court on summary judgment, as well as courts throughout the country have rejected similar evidence submitted as support for widespread dissemination. *See, e.g., Apps v. Universal Music Group, Inc.*, 283 F. Supp. 3d 946, 955 (D. Nev. 2017) (no widespread dissemination where "no evidence that … defendants or another member of Universal Music Group were present [at live performances] and heard [the allegedly infringed song]"); *Loomis v. Cornish*, 2013 WL 6044345, at *12 (C.D. Cal. Nov. 13, 2013), *aff'd*, 836 F.3d 991 (9th Cir. 2016) (concerts could not evidence widespread dissemination where plaintiff "[did] not dispute that he has no reason to believe that any [defendant] ever attended any performance of BRC."); *Benson v. Coca-Cola Co.*, 795 F.2d 973, 975 (11th Cir. 1986) (no "reasonable possibility" of access where plaintiff "produced no evidence that [defendant's] songwriters visited any of the places of performance"). The evidence should be excluded.

### III. The Evidence is Inadmissible Because It Lacks Foundation, Calls for Speculation, Is Unreliable and is Hearsay.

In addition to being irrelevant, Plaintiffs' evidence of interviews is inadmissible, another conclusion this Court correctly reached on summary judgment. As proof of Gray's interviews and the purported playing of "Joyful Noise" in the background, Plaintiffs have not produced authenticated copies of such interviews. Nor have they produced records that interviews occurred, much less where the interviews took place, on what station, to what audience size the interviewed was broadcast, and that "Joyful Noise" was played. Instead, Plaintiffs

intend to present the testimony of Gray or his wife, who will simply say this. Of course, in his summary judgment declaration, the best Gray could do was to testify that he was interviewed while in many of the unnamed cities he performed concerts in and that "Joyful Noise"—or at least an excerpt from the song—was played during the interview. Wais Decl., Ex. 7 (Gray MSJ Decl.), ¶ 12.[5] Such conclusory testimony is the very type of evidence that should be excluded as lacking foundation and personal knowledge; not being authenticated; and being unreliable. *See* FRE 602 & 901.

The testimony is also hearsay without an exception—Gray and Crystal Gray cannot testify to the contents of an interview to prove the truth of the same; again, the actual interviews themselves or other authenticated records of the same are necessary. Fed. R. Evid. 802, 803. The evidence should be excluded.

### IV. Evidence Of Live Performances Is Prejudicial.

Finally, even if marginally relevant, the evidence should be excluded because it presents a serious risk of prejudice as it will undoubtedly confuse the issues and mislead jurors into speculating that Walter or Gottwald had a reasonable opportunity to hear "Joyful Noise," when, as explained above, it is undisputed that it cannot be. This is precisely the type of "unfair prejudice" and "misleading [of] the jury" that the Rule 403 seeks to prevent. *See U.S. v. Espinoza-Baza*, 647 F.3d 1182, 1190 (9th Cir. 2011) (affirming exclusion under FRE 403 where the evidence "if admitted, would have created a substantial risk of confusion and that it might have caused the jury to base its verdict on highly speculative evidence...").

### CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant its motion *in limine*.

---

[5] His wife, in turn, did not provide *any* testimony whatsoever. Given Gray's lack of knowledge, one would assume that if Crystal Gray had verifiable and reliable evidence to share, she would have done so.

| | | |
|---|---|---|
| 1 | DATED: June 12, 2019 | MITCHELL SILBERBERG & KNUPP LLP |
| 2 | | By:  /s/ Aaron M. Wais |
| 3 | | Aaron M. Wais (SBN 250671) |
| 4 | | Attorneys for Defendants other than Katheryn Elizabeth Hudson, and Kitty Purry, Inc. |
| 5 | | |
| 6 | DATED: June 12, 2019 | GREENBERG TRAURIG, LLP |
| 7 | | |
| 8 | | By:  /s/ Vincent H. Chieffo |
| | | Vincent H. Chieffo (SBN 49069) |
| 9 | | Attorneys for Defendants Katheryn Elizabeth Hudson p/k/a Katy Perry and Kitty Purry, Inc. |