1  CHRISTINE LEPERA (admitted *pro hac vice*)
     ctl@msk.com
2  JEFFREY M. MOVIT (admitted *pro hac vice*)
     jmm@msk.com
3  JACOB D. ALBERTSON (admitted *pro hac vice)*
     j1a@msk.com
4  MITCHELL SILBERBERG & KNUPP LLP
   437 Madison Avenue, 25th Floor
5  New York, New York 10022
   Telephone: (212) 509-3900
6  Facsimile: (212) 509-7239

7  AARON M. WAIS (SBN 250671)
     amw@msk.com
8  GABRIELLA A. NOURAFCHAN (SBN 301594)
     gan@msk.com
9  MITCHELL SILBERBERG & KNUPP LLP
   2049 Century Park East, 18th Floor
10 Los Angeles, California  90067
   Telephone: (310) 312-2000
11 Facsimile: (310) 312-3100

12 GREENBERG TRAURIG, LLP
   VINCENT H. CHIEFFO (SBN 49069)
13 Email:  ChieffoV@gtlaw.com
   ALANA C. SROUR (SBN 271905)
14 Email:  SrourA@gtlaw.com
   1840 Century Park East, Suite 1900
15 Los Angeles, CA 90067-2121
   Telephone:  310-586-7700
16 Facsimile:   310-586-7800

17 Attorneys for Defendants

18              UNITED STATES DISTRICT COURT

19        CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| MARCUS GRAY, et al., | CASE NO. 2:15-cv-05642-CAS (JCx) |
|---|---|
| Plaintiffs, | Honorable Christina A. Snyder |
| v. | **DEFENDANTS' MOTION *IN LIMINE* NO. 9 TO EXCLUDE BILLBOARD EVIDENCE** |
| KATHERYN ELIZABETH HUDSON, et al., | |
| Defendants. | **Final Pretrial Conference**<br>Date:       July 1, 2019<br>Time:       11:00 a.m.<br>Courtroom:  8D – 8th Fl., First Street |
| | Filed:  July 1, 2014<br>Trial:  July 16, 2019 |

Mitchell
Silberberg &
Knupp LLP

11134740.1

**DEFENDANTS' MIL NO. 9 TO EXCLUDE BILLBOARD EVIDENCE**

# NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** at the Pretrial Conference in this matter on July 1, 2019, at 11:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 8D of the Federal Courthouse located at 350 West 1st Street, Los Angeles, CA 90012, Defendants Capitol Records, LLC, Jordan Houston, Lukasz Gottwald, Sarah Theresa Hudson, Karl Martin Sandberg, Henry Russell Walter, UMG Recordings, Inc., Universal Music Group, Inc., WB Music Corp., Kobalt Music Publishing America, Inc., Kasz Money, Inc., Katheryn Elizabeth Hudson, and Kitty Purry, Inc. (collectively "Defendants") will and hereby do move for an order precluding Plaintiffs from introducing evidence or argument that "Joyful Noise" or the album on which it appeared, *Our World Redeemed*, appeared on a Billboard chart. In the alternative, Defendants move for an order that Plaintiffs be precluded from using the appearance of "Joyful Noise" or *Our World Redeemed* on certain Billboard charts as evidence of sales of the sound recording of "Joyful Noise" or the album. Specifically, Defendants seek an order excluding the following:

1. The photocopies of three Billboard Christian and gospel music charts on which "Joyful Noise" or *Our World Redeemed* appeared, as those photocopies appear in the larger summaries of Billboard charts that Billboard prepared for purposes of this litigation. *See* the photocopies set forth on pages 1, 3, and 7 of Exhibit 1 to the Wais Decl.;

2. The summary tables that Billboard prepared for purposes of this litigation as expressed in the declaration provided by Billboard's designee and the attachment to that declaration. *See* Wais Decl., Exs. 1 & 2 (everything but the three photocopies); and

3. Deposition testimony from Billboard explaining these documents.

This evidence should be excluded on the grounds that it is (1) irrelevant and not evidence of sales and (2) hearsay.

This Motion is made following the conferences of counsel pursuant to Local Rules 7-3 and 16-2.6, which took place on May 24, 2019 and June 6, 2019. Wais Decl., ¶ 2. This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, any supporting declarations, any further briefing regarding this Motion, the pleadings and evidence in the Court's files, and such other evidence and arguments that the Court may consider at the hearing on this Motion.

DATED: June 12, 2019              MITCHELL SILBERBERG & KNUPP LLP

                                  By: /s/ Aaron M. Wais
                                  Aaron M. Wais (SBN 250671)
                                  Attorneys for Defendants other than Katheryn
                                  Elizabeth Hudson, and Kitty Purry, Inc.

DATED: June 12, 2019              GREENBERG TRAURIG, LLP

                                  By: /s/ Vincent H. Chieffo
                                  Vincent H. Chieffo (SBN 49069)
                                  Attorneys for Defendants Katheryn Elizabeth
                                  Hudson p/k/a Katy Perry and Kitty Purry, Inc.

## ATTESTATION REGARDING SIGNATURES

Pursuant to Local Civil Rule 5-4.3.4(a)(2)(i), I hereby attest that all Parties, on whose behalf this entire filing is jointly submitted, concur in this filing's content and have authorized its filing.

Dated: June 12, 2019              /s/ Aaron M. Wais
                                  Aaron M. Wais

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Introduction And Statement Of Relevant Facts

At trial, Plaintiffs bear the burden of proving, *inter alia*, that defendants Walter and Gottwald—the sole defendants responsible for creating the allegedly infringing instrumental music for "Dark Horse"[1]—had a reasonable opportunity to hear "Joyful Noise" before creating the instrumental music for "Dark Horse," i.e. access. In this regard, Plaintiffs have long admitted that they have no direct evidence of Walter or Gottwald having had an opportunity to hear "Joyful Noise" or circumstantial evidence that they heard it through a chain of events (i.e., an intermediary). Instead, Plaintiffs' sole theory of access has always been that "Joyful Noise" was allegedly "widely disseminated" such that a jury could infer that Walter or Gottwald had a reasonable opportunity to hear the song.

In support of this theory, Plaintiffs seek to introduce evidence that "Joyful Noise" and *Our World Redeemed* appeared on Billboard Christian charts. (Billboard publishes weekly "charts," which rank songs and albums across all genres and within specific genres.) *See supra*, Notice Mtn., p. 2 (discussing specific evidence at issue). As discussed below, this evidence should be excluded in whole, or in part, because it is irrelevant, prejudicial, and hearsay.[2]

## II. The Billboard Charts Are Irrelevant To Widespread Dissemination

Only relevant evidence, which is defined as evidence having "any tendency to make a fact [of consequence to the action] more or less probable than it would be without the evidence[,]" is admissible. Fed. R. Evid. 401, 402. Here, evidence that "Joyful Noise" and *Our World Redeemed* appeared on Billboard Christian and gospel charts is irrelevant to widespread dissemination and, thus, is inadmissible.

---

[1] *See* Dkt. 287, p. 3, ¶ 11; Dkt. 299, pp. 3-4.

[2] The Court did consider the Billboard charts on summary judgment; as discussed below, however, the evidentiary record on this point has changed since summary judgment with a representative of Billboard being deposed. His testimony compels a different result.

In *Loomis v. Cornish*, 836 F.3d 991, 995 (9th Cir. 2016), the Ninth Circuit recognized two types of "widespread dissemination": those instances where a song reaches "an appreciable level of national saturation," which "centers on the degree of a work's commercial success and on its distribution through radio, television, and other relevant mediums" and those where there is "saturation in a relevant market in which both the plaintiff and the defendant participate." *Id.* at 997-98 (citing cases). Here, the evidence is not relevant to either theory.

***First***, evidence that "Joyful Noise" and *Our World Redeemed* appeared on Christian and gospel charts does not tend to prove that "Joyful Noise" reached an "appreciable level of national saturation." *Loomis*, 836 F.3d at 995. Billboard's designee testified that Billboard maintains charts that rank charts across *all* genres, as well as in specific genres. Wais Decl., Ex. 3 (Pietroluongo Depo. Tr.), pp. 43, l. 7-44, l. 16. There is a marked difference between a song that ranks highly on a chart that spans all genres—which could arguably evidence national saturation—versus one that ranks only on a chart for a niche musical genre, which, at best, indicates saturation in that particular genre. Indeed, Billboard's designee testified that the Christian and Gospel genres are smaller "in terms of market volume and audience volume" than charts that span all genres and charts in more popular genres such as rock, R&B/hip-hop, and country: "most [genres] are larger than gospel and Christian." *Id.*, p. 44, ll. 15-16.

***Second***, to the extent the appearance of "Joyful Noise" and *Our World Redeemed* on Billboard Christian and gospel charts could evidence saturation in the niche market of Christian and gospel music, it is irrelevant because it is undisputed that neither Walter nor Gottwald participated in that market. Wais Decl., Ex. 4 (Walter MSJ Decl.), ¶¶ 9-10, 18-19; Ex. 5 (Gottwald MSJ Decl.), ¶¶ 8-9, 17-18. *See Loomis*, 836 F.3d at 998 (saturation of Santa Barbara local music scene did not support access because writers of defendants' composition did not participate in that scene); *Guzman v. Hacienda Records & Rec. Studio, Inc.*, 2014

WL 6982331, at *5-6 (S.D. Tex. Dec. 9, 2014), *aff'd* 808 F.3d 1031 (5th Cir. 2015) (song not "widely disseminated" where it "did not achieve popularity outside of the Tejano music scene").[3] This evidence should be excluded.

### III. The Billboard Charts Are Not Evidence of Sales

Plaintiffs have stated that they not only seek to introduce the Billboard charts to show that "Joyful Noise" and *Our World Redeemed* appeared on the charts but also as evidence of sales of the song and album. Plaintiffs should be precluded from so arguing for the simple reason that the charts are not evidence of sales. To the contrary, Billboard's designee testified that the charts do not "reveal the amount of units" of sales of a song or album. Wais Decl., Ex. 3 (Pietroluongo Tr.), p. 45, ll. 12-17. Nor do the charts reveal anything about "numerical value or listenership" of the songs and albums appearing in the charts. *Id.*, pp. 46, l. 4-47, l. 1. The charts only reflect "rankings" of albums and songs "in relation to various metrics"; they do not identify the underlying metrics themselves. *Id.*, p. 28, ll. 5-10. Critically, Billboard cannot and does not even verify any sales information or its accuracy, as it does not even participate in compiling such data. *Id.*, pp. 36, ll. 4-11; 38, ll. 19-23; 40, ll. 19-24; 41, l. 20-42, l. 6. Sales data is collected and maintained by Nielsen Music, an entity that is completely separate from Billboard. *Id.*, pp. 31, l. 24-32, l. 5; 33, ll. 10-18; 34, ll. 2-13; 35, l. 6-36, l. 3; 45, ll. 12-17.

Moreover, to the extent that the Billboard charts could be viewed as verifiable evidence that there were *some* sales, it should still be excluded because it would be hearsay offered for the truth that the song and album were sold, and no exception applies. Fed. R. Evid. 802, 803. In addition, the charts should also be excluded because even such unverifiable evidence of *some* sales is not evidence of sales sufficient to prove the appreciable national saturation necessary to establish

---

[3] This distinguishes this case from *Straughter v. Raymond*, 2011 WL 13176750, at *3 (C.D. Cal. Nov. 21, 2011), in which the plaintiffs' song appeared on a Billboard chart in "the same musical genres in which defendants perform." *Id.*

widespread dissemination, which is the only way in which the evidence would be relevant. And any probative value of proving some sales is "substantially outweigh[ed]" by the risk of "unfair prejudice" and "misleading the jury" into speculating that there were substantial sales when, in reality, the charts themselves are silent on the number of sales and it is just as likely that there were 10 sales as there were more. Fed. R. Evid. 403.

Indeed, if Plaintiffs had wanted to introduce evidence of sales, they had five years to obtain such information. They could have subpoenaed their former record label, Cross Movement Records, or Nielsen Music for the information. They did not and the reason is obvious—neither "Joyful Noise" nor *Our World Redeemed* achieved any appreciable level of sales; certainly not the volume that would be necessary for either to reach an "appreciable level of national saturation." *Loomis*, 836 F.3d at 995. Because the charts are not evidence of sales, it may not be offered in support of a misleading argument that there were sales, much less sales sufficient for "Joyful Noise" to have been widely disseminated.

## IV. The Summary Tables Provided By Billboard Are Hearsay

Finally, if the Court is going to allow evidence of Billboard charts, it should still exclude the summary tables prepared by Billboard for this litigation. *Supra*, Ntc. Mtn., p. 2, ¶ 2. Each table purports to summarize those instances in which the song or album appeared on a Billboard chart prior to the creation of "Dark Horse."[4] To the extent offered to prove the truth of the matters asserted therein—namely, that the song/album appeared on the Billboard chart in the position and on the date stated—the summaries are hearsay and no exception applies. FRE 802 & 803.

Indeed, the only conceivably applicable exception is that the summaries are business records, but they plainly are not because they were not made near the time

---

[4] The Billboard data produced in this case also includes four additional charts and four additional summary tables, each of which relates only to purported chart positions *after* the creation of "Dark Horse." Plaintiffs, however, concede that such evidence is not relevant and do not seek to admit it.

of the activity in question or in the ordinary course of Billboard's business, and are not a regular practice of Billboard. Instead, Billboard's corporate designee testified that the summaries were "created solely for purposes of this litigation" by taking information and "physically put[ting] it on a . . . Word document," and the summaries "would not otherwise have existed as part of Billboard's business documents . . . if the [Plaintiffs'] subpoena had not requested the information." Wais Decl., Ex. 3 (Pietroluongo Tr.), pp. 29, ll. 4-15; 36, l.12-37, l. 15; 39, l. 16-40, l. 7; 41, ll. 8-19. Case law is clear that "a document prepared for purposes of litigation is not a business record because it is lacking in trustworthiness." *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1258-59 (9th Cir. 1984); *see also Alarcon v. Vital Recovery Servs., Inc.*, 706 F. App'x 394, 395 (9th Cir. 2017). Indeed, here, Billboard's designee testified that "it simply wasn't possible to produce" all of the charts (Wais Decl., Ex. 3 (Pietroluongo Tr.), p. 30, ll. 22-25), which begs the question of why (they certainly were not voluminous), as well as where the information found in the summaries derived from.[5]

Nor may Plaintiffs rely on Rule 1006, which permits the use of summary tables "to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." Fed. R. Evid. 1006. Here, the "underlying materials" upon which the summary is based are not admissible in evidence and were not "made available to the opposing party for inspection." *Paddack*, 745 F.2d at 1259. Moreover, the underlying charts have not been proven to be so voluminous that the summaries are "'the only practicable means of making their contents available to judge and jury.'" *Id*.

\* \* \*

For all these reasons, Defendants' motion should be granted.

---

[5] Nor may Plaintiffs try to belatedly rely on Billboard's website, which according to Billboard's designee may reproduce information from historical charts. No website information was produced by Plaintiffs in discovery and, in any event, Plaintiffs have not demonstrated that a hearsay exception applies.

DATED: June 12, 2019

MITCHELL SILBERBERG & KNUPP LLP

By: /s/ Aaron M. Wais
Aaron M. Wais (SBN 250671)
Attorneys for Defendants other than Katheryn Elizabeth Hudson, and Kitty Purry, Inc.

DATED: June 12, 2019

GREENBERG TRAURIG, LLP

By: /s/ Vincent H. Chieffo
Vincent H. Chieffo (SBN 49069)
Attorneys for Defendants Katheryn Elizabeth Hudson p/k/a Katy Perry and Kitty Purry, Inc.