CHRISTINE LEPERA (admitted *pro hac vice*)
  ctl@msk.com
JEFFREY M. MOVIT (admitted *pro hac vice*)
  jmm@msk.com
JACOB D. ALBERTSON (admitted *pro hac vice*)
  j1a@msk.com
MITCHELL SILBERBERG & KNUPP LLP
437 Madison Avenue, 25th Floor
New York, New York 10022
Telephone: (212) 509-3900
Facsimile: (212) 509-7239

AARON M. WAIS (SBN 250671)
  amw@msk.com
GABRIELLA A. NOURAFCHAN (SBN 301594)
  gan@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, California  90067
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

GREENBERG TRAURIG, LLP
VINCENT H. CHIEFFO (SBN 49069)
Email:  ChieffoV@gtlaw.com
ALANA C. SROUR (SBN 271905)
Email:  SrourA@gtlaw.com
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
Telephone:  310-586-7700
Facsimile:  310-586-7800

Attorneys for Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| MARCUS GRAY, et al., | CASE NO. 2:15-cv-05642-CAS (JCx) |
| Plaintiffs, | Honorable Christina A. Snyder |
| v. | **DEFENDANTS' MOTION TO PRECLUDE THE TESTIMONY OF PLAINTIFFS' EXPERT MICHAEL EINHORN AT TRIAL** |
| KATHERYN ELIZABETH HUDSON, et al., | |
| Defendants. | **Final Pretrial Conference**<br>Date:        July 1, 2019<br>Time:        11:00 a.m.<br>Courtroom:  8D – 8th Fl., First Street |
| | Filed:   July 1, 2014<br>Trial:   July 16, 2019 |

11134861.1

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** at the Pretrial Conference in this matter on July 1, 2019, at 11:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 8D of the Federal Courthouse located at 350 West 1st Street, Los Angeles, CA 90012, Defendants Capitol Records, LLC, Jordan Houston, Lukasz Gottwald, Sarah Theresa Hudson, Karl Martin Sandberg, Henry Russell Walter, UMG Recordings, Inc., Universal Music Group, Inc., WB Music Corp., Kobalt Music Publishing America, Inc., Kasz Money, Inc., Katheryn Elizabeth Hudson, and Kitty Purry, Inc. (collectively "Defendants") will and hereby do move for an order precluding Plaintiffs' expert, Michael A. Einhorn, from testifying at trial, or, in the alternative, precluding Einhorn from testifying regarding the new opinions in his untimely "updated" reports.

This Motion is made following the conference of counsel pursuant to Local Rules 7-3 and 16-2.6, which took place on May 24, 2019 and June 6, 2019. This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, any supporting declarations, any further briefing regarding this Motion, the pleadings and evidence in the Court's files, and such other evidence and arguments that the Court may consider at the hearing on this Motion.

DATED: June 12, 2019                    MITCHELL SILBERBERG & KNUPP LLP

By: /s/ Aaron M. Wais
Aaron M. Wais (SBN 250671)
Attorneys for Defendants other than Katheryn Elizabeth Hudson, and Kitty Purry, Inc.

DATED: June 12, 2019                    GREENBERG TRAURIG, LLP

                                        By:  /s/ Vincent H. Chieffo
                                        Vincent H. Chieffo (SBN 49069)
                                        Attorneys for Defendants Katheryn Elizabeth
                                        Hudson p/k/a Katy Perry and Kitty Purry, Inc.


## ATTESTATION REGARDING SIGNATURES

Pursuant to Local Civil Rule 5-4.3.4(a)(2)(i), I hereby attest that all Parties, on whose behalf this entire filing is jointly submitted, concur in this filing's content and have authorized its filing.

Dated:  June 12, 2019                        /s/ Aaron M. Wais
                                            Aaron M. Wais

# **TABLE OF CONTENTS**

**Page**

I.   PRELIMINARY STATEMENT.................................................................9

II.  ARGUMENT ......................................................................................12

    A.   Standard for a *Daubert* Motion............................................12

    B.   Einhorn's Opinions Regarding Profits Should Be Excluded.............13

        1.   Standard For Establishing Profits ...............................13

        2.   Evidence Of Defendants' Profits In This Case.........................14

        3.   Einhorn's Opinions Regarding Profits Should Be Precluded under *Daubert* as Unreliable.......................................15

        4.   Einhorn's Calculation Of Revenues Is Not A Proper Subject Of Expert Testimony ...............................................19

    C.   Einhorn's Opinions Regarding "Actual Damages" Should Be Excluded................................................................20

        1.   Standard For Proving "Actual Damages"................................20

        2.   Einhorn's "Actual Damages" Opinions....................................21

        3.   Einhorn's "Actual Damages" Opinions Fail On Multiple Grounds..............................................................21

    D.   Einhorn's Opinions Regarding Apportionment Must Be Excluded...23

        1.   Einhorn's "Concert Tours" Opinions Are Unreliable .............24

        2.   Einhorn's "Radio Play" Opinions Are Unreliable...................24

        3.   Einhorn's "Chartmasters" Opinions Are Unreliable ...............25

    E.   Einhorn's Rebuttal Opinions Should Be Precluded..........................25

    F.   Einhorn's Untimely "Updated" Opinions Must Be Excluded.........26

        1.   Legal Standard For Excluding Untimely Reports ...................26

Mitchell
Silberberg &
Knupp LLP

**DEFENDANTS' MOTION TO PRECLUDE EINHORN**

1

**Table of Contents**
**continued**

2

**Page**

3

        2.     Plaintiffs Served An "Updated" Einhorn Report In

4

                 Violation Of The Court's Order Just Two Days Before His

5

                 Deposition ..................................................................................27

6

        3.     Plaintiffs Served A Second "Updated" Einhorn Report

7

                 After The Close Of Expert Discovery ......................................29

8

        4.     The Untimely Disclosures Are Not Substantially Justified

9

                 Or Harmless ..........................................................................29

10

III.     CONCLUSION ..............................................................................30

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

11134861.1

**DEFENDANTS' MOTION TO PRECLUDE EINHORN**

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*AFMS LLC v. United Parcel Serv. Co.*,
   2014 WL 12515335 (C.D. Cal. Feb. 5, 2014) ...................................................... 19

*Arista Records LLC v. Lime Grp. LLC*,
   2011 WL 1674796 (S.D.N.Y. May 2, 2011) ...................................................... 17

*Arista Records LLC v. Usenet.com, Inc.*,
   608 F. Supp. 2d 409 (S.D.N.Y. 2009) ...................................................... 26

*Assn. of Christian Schools Intern. v. Stearns*,
   678 F. Supp. 2d 980 (C.D. Cal. 2008) ...................................................... 27, 29

*Cream Records, Inc. v. Jos. Schlitz Brewing Co.*,
   754 F.2d 826 (9th Cir. 1985) ...................................................... 14

*Dash v. Mayweather*,
   731 F.3d 303 (4th Cir. 2013) ...................................................... 10, 11, 21, 22

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) ...................................................... passim

*Fed. Deposit Ins. Corp. v. Van Dellen*,
   2012 WL 12886825 (C.D. Cal. Nov. 6, 2012) ...................................................... 30

*General Electric Co. v. Joiner*,
   522 U.S. 136 (1997) ...................................................... 13, 25

*Hooper v. Lockheed Martin Corp.*,
   688 F.3d 1037 (9th Cir. 2012) ...................................................... 18, 26

*In re ConAgra Foods, Inc.*,
   302 F.R.D. 537 (C.D. Cal. 2014) ...................................................... 13

*Jarvis v. K2 Inc.*,
   486 F.3d 526 (9th Cir. 2007) ...................................................... 20

*Jones v. Lincoln Electric Co.*,
   188 F.3d 709 (7th Cir. 1999) ...................................................... 23

Mitchell
Silberberg &
Knupp LLP

**DEFENDANTS' MOTION TO PRECLUDE EINHORN**

1

## TABLE OF AUTHORITIES
### continued

2

3

**Page(s)**

4

*Kumho Tire Co. v. Carmichael,*
   526 U.S. 137 (1999) .................................................. 12

5

6

*Live Face on Web, LLC v. AZ Metroway, Inc.,*
   2016 WL 4402796 (C.D. Cal. Aug. 15, 2016) ...................... 20

7

8

*Mariscal v. Graco, Inc.,*
   52 F. Supp. 3d 973 (N.D. Cal. 2014) ............................. 27

9

10

*Medtronic Inc. v. Edwards Lifesciences Corp.,*
   2013 WL 12131746 (C.D. Cal. July 24, 2013) ..................... 30

11

12

*Nationwide Transp. Fin. v. Cass Info. Sys.,*
   523 F.3d 1051 (9th Cir. 2008) ................................ 18, 26

13

14

*Oracle Corp. v. SAP AG,*
   765 F.3d 1081 (9th Cir. 2014) ................................... 20

15

*Polar Bear Prods., Inc. v. Timex Corp.,*
   384 F.3d 700 (9th Cir. 2004) .................................... 13

16

17

*Raimondi v. Olenicoff,*
   2015 WL 9703485 (C.D. Cal. July 7, 2015) ....................... 20

18

19

*Salyards v. Metso Minerals Oy,*
   2005 WL 5989797 (E.D. Cal. Sept. 15, 2005) ..................... 27

20

21

*Schwartz v. Fortune Magazine,*
   193 F.R.D. 144 (S.D.N.Y. 2000) ................................. 20

22

23

*Sementilli v. Trinidad Corp.,*
   155 F.3d 1130 (9th Cir. 1998) ................................... 13

24

25

*United States v. Chang,*
   207 F.3d 1169 (9th Cir. 2000) ................................ 16, 23

26

*United States v. Hanna,*
   293 F.3d 1080 (9th Cir. 2002) ................................... 19

27

28

*William Hablinski Architecture v. Amir Const. Inc.,*
   332 F. App'x 363 (9th Cir. 2009) ............................... 14

Mitchell
Silberberg &
Knupp LLP

11134861.1

**DEFENDANTS' MOTION TO PRECLUDE EINHORN**

# TABLE OF AUTHORITIES
## <u>continued</u>

**Page(s)**

*Wilson v. Odwalla, Inc.*,
2018 WL 3250161 (C.D. Cal. June 22, 2018).....................................30

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
259 F.3d 1101 (9th Cir. 2001)..........................................................27

### STATUTES

17 U.S.C.
§ 504...........................................................................................13
§ 504(b)......................................................................................13

### OTHER AUTHORITIES

Federal Rules of Civil Procedure
Rule 26(a) ...................................................................................26
Rule 26(a)(2)..................................................................................9
Rule 26(a)(2)(B)(i)-(ii) ................................................................27
Rule 37(c)(1)...........................................................................27, 30

Federal Rules of Evidence Rule 702 ....................................9, 12, 13, 20

Nimmer on Copyright (2008) § 14.03[C] at 14-51 ..............................13

Mitchell
Silberberg &
Knupp LLP

11134861.1

**DEFENDANTS' MOTION TO PRECLUDE EINHORN**

## **MEMORANDUM OF POINTS AND AUTHORITIES**

Pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure, and Rule 702 of the Federal Rules of Evidence, Capitol Records LLC, Jordan Houston, Lukasz Gottwald, Sarah Theresa Hudson, Karl Martin Sandberg, Henry Russell Walter, UMG Recordings, Inc., Universal Music Group, Inc., WB Music Corp., Kobalt Music Publishing America, Inc., Kasz Money, Inc., Katheryn Elizabeth Hudson, and Kitty Purry, Inc. (collectively, "Defendants") submit the following Memorandum of Law to preclude the testimony of Plaintiffs' expert witness Michael Einhorn ("Einhorn") at trial.

## I. PRELIMINARY STATEMENT

Plaintiffs' expert, Einhorn, is an economist.  At trial, he plans to use his impressive credentials—a Ph.D. from Yale—as a license to render opinions he admits he is not qualified to give.  Plaintiffs' goal, obviously, is to use Einhorn's status as an "expert" to legitimize their highly misleading and improper arguments regarding damages.  The Court should preclude Einhorn from testifying to prevent this gross misuse of expert testimony.[1]

Einhorn intends to assert four separate, and improper, opinions at trial. *First*, Einhorn intends to opine that Defendants' **net** profit is equivalent to their **gross** revenue, despite his admission that he received Defendants' **expense** data and has no reason to believe it is inaccurate.  This opinion, and Einhorn's wrongful invitation for the jury to ignore Defendants' expenses, is contrary to well-established law and highly prejudicial to Defendants.  It is also not proper expert testimony, by Einhorn's own concession.  Einhorn admits that his calculation of

---

[1] For the avoidance of doubt, Defendants adamantly dispute Plaintiffs' allegations of copyright infringement liability.

Moreover, the parties have agreed that the trial of this action should be bifurcated into separate phases for liability and damages, and have submitted an application to the Court regarding the same.  If the application is granted, Plaintiffs solely seek to introduce Einhorn's testimony during the second, damages phase of the trial.

**DEFENDANTS' MOTION TO PRECLUDE EINHORN**

Mitchell
Silberberg &
Knupp LLP

Defendants' gross revenues is a simple calculation that requires no expertise.  He also admits that his opinion that he does not need to consider Defendants' costs is a legal opinion.  There is thus nothing in Einhorn's opinion regarding profits that is admissible expert testimony under the applicable standards.  *See infra* § II.B.

*Second*, Einhorn plans to opine, based upon no methodology other than simple division, that Plaintiffs could have negotiated ownership of 15% of the copyright in the composition "Dark Horse" in an arm's length negotiation, and thus their "actual damages" should amount to 15% of the publishing income earned by that composition.  Notably, although he concedes that "[t]he results of other negotiations involving similar situations are useful benchmarks to inform" the determination of the amount that would result from a hypothetical negotiation, he conducts no analysis of comparable transactions.  Critically, Einhorn was not provided with evidence that the instrumental track underlying "Joyful Noise"—the **exact music at issue in this case**—was exclusively licensed for less than $300, and Plaintiff Chike Ojukwu sells licenses to other beats for $20-$60.  The omission of this evidence is inexcusable.

In fact, the Fourth Circuit previously issued an opinion in a copyright infringement action which sharply criticized and refused to credit Einhorn's opinion as to "actual damages."  The errors that the court identified in *Dash v. Mayweather*, 731 F.3d 303, 321-22 (4th Cir. 2013) were in fact not nearly as serious as those in his opinion here, yet the court recognized:

> . . . **[T]he Einhorn Report's perfunctory conclusion** [regarding plaintiff's damages] **is too speculative** to rebut [defendants'] properly supported motions for summary judgment . . . .

*Id.* at 321 (emphasis added).[2]  The same is certainly true here.  In addition, Einhorn is simply unqualified to render this opinion, as he has no relevant experience in negotiating these types of licenses.  *See infra* § II.C.

*Third*, Einhorn intends to opine that the allegedly infringing song "Dark Horse" was "critically important" in selling the album—*Prism*—on which that song was contained.  He bases this opinion upon the appearance of the song on concert set lists, radio play, and streams and videos as supposedly reflected on a website called "Chartmasters."  However, Einhorn's opinions must be excluded because he lacks methodology for making these conclusions, he is unqualified to do so, and the data upon which he relies is unreliable or misstated.  *See infra* § II.D.

*Finally*, Einhorn intends to offer opinion testimony in rebuttal to the expert report of Defendants' musicologist, Dr. Lawrence Ferrara.  But Einhorn's opinion is merely a legal brief masquerading as expert testimony.  Such testimony should not be permitted at trial.  *See infra* § II.E.

In addition to these errors (and in recognition of the many problems with his original report), Einhorn also attempted to submit two improper, untimely "updated" versions of his Report, which included substantial revisions of his opinions.  These untimely additional reports are barred under the Federal Rules and binding case law.  *See infra* § II.F.

Clearly, Plaintiffs' calculus is that Einhorn's Ph.D. in economics will give all of his plainly incompetent and improper opinions the imprimatur of "fact," and help them to obtain a grossly inflated damages award from the jury.  The Court should preclude all of Einhorn's intended testimony under the principles espoused

---

[2] Despite this clear disqualification in *Dash*, Einhorn falsely and misleadingly stated that he has "never been disqualified from testifying in court or limited in any manner related to the applied standards, concepts, or techniques of the economics profession."  Declaration of Aaron Wais dated June 12, 2019 ("Wais Decl."), Ex. 3 (Einhorn Report) ¶ 2.5.

**DEFENDANTS' MOTION TO PRECLUDE EINHORN**

by the Supreme Court in *Daubert*.  In the alternative, if the Court declines to preclude Einhorn's testimony, it should still preclude any testimony relating to Einhorn's untimely "updated" opinions.

## II.   ARGUMENT

### A.   <u>Standard for a *Daubert* Motion</u>

Fed. R. Evid. 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The Supreme Court has held that, under the district court's "gatekeeping" role, expert testimony that will not assist the trier of fact to understand the evidence or to determine a fact in issue should be excluded.  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 581, 597 (1993).  The objective of these requirements is to make certain that an expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  An expert's opinion cannot be based on "subjective belief or unsupported speculation," but "must be supported by appropriate validation – i.e., 'good grounds,' based on what is known." *Daubert*, 509 U.S. at 590.  "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is

1  connected to existing data only by the *ipse dixit* of the expert." *General Electric*
2  *Co. v. Joiner*, 522 U.S. 136, 137 (1997).

3       The party offering expert testimony bears the burden of establishing that the
4  evidence complies with Rule 702. *Daubert*, 509 U.S. at 592 n.10; *In re ConAgra*
5  *Foods, Inc.*, 302 F.R.D. 537, 549 (C.D. Cal. 2014). "In determining whether expert
6  testimony is admissible under Rule 702, the district court must keep in mind [the
7  rule's] 'broad parameters of reliability, relevancy, and assistance to the trier of
8  fact.'" *Sementilli v. Trinidad Corp.*, 155 F.3d 1130, 1134 (9th Cir. 1998) (citation
9  omitted). As set forth below, Plaintiffs cannot come close to meeting this burden
10  with respect to Einhorn, and his opinions should be precluded.

11       **B.     Einhorn's Opinions Regarding Profits Should Be Excluded**
12            **1.     Standard For Establishing Profits**

13       Section 504 of the Copyright Act provides for two categories of
14  compensatory damages that are potentially recoverable by a plaintiff in a copyright
15  infringement action: (1) the defendant's **profits** and (2) plaintiff's **actual damages**.
16  17 U.S.C. § 504(b).

17       With respect to an accused infringer's **profits**, the plaintiff bears the initial
18  burden of proving the defendant's **gross** revenue attributable to the infringement.
19  17 U.S.C. § 504(b). "From the statutory language, it is apparent that a causal link
20  between the infringement and the monetary remedy sought is a predicate to
21  recovery of both actual damages and profits." *Polar Bear Prods., Inc. v. Timex*
22  *Corp.*, 384 F.3d 700, 708 (9th Cir. 2004). The plaintiff "must first show a causal
23  nexus between the infringement and the gross revenue." *Id.* at 711. Once the
24  plaintiff meets that burden, the burden then shifts to the defendant to prove its
25  deductible **expenses**. The standard for deductibility of expenses under the
26  Copyright Act is an accounting standard. *See* 4 Melville B. Nimmer, Nimmer on
27  Copyright § 1403[C], at 14-64 (2017) ("Resolution [of expenses regarded as

28

1    deductible] must generally turn upon the definition of costs under generally

2    accepted accounting principles.").

3        The Copyright Act also provides that a plaintiff is "not entitled to 'elements

4    of profit attributable to factors other than the copyrighted work.'" *William*

5    *Hablinski Architecture v. Amir Const. Inc.*, 332 F. App'x 363, 364-65 (9th Cir.

6    2009).  Thus, a defendant may demonstrate how elements other than the alleged

7    infringement itself—such as marketing efforts and the "brand power" of famous

8    performers and producers—contributed to the profits derived from the allegedly

9    infringing song.  This process is known as **apportionment**.  Where a defendant's

10   profits are not entirely due to the alleged infringement and the defendant provides a

11   rational basis for apportionment, "it is the duty of the court to make some

12   apportionment."  *Cream Records, Inc. v. Jos. Schlitz Brewing Co.*, 754 F.2d 826,

13   829 (9th Cir. 1985).

14               **2.      Evidence Of Defendants' Profits In This Case**

15       During discovery, Defendants produced documents reflecting their revenues

16   and deductible expenses.  To establish Capitol Records LLC's ("Capitol")

17   deductible expenses, Capitol produced a Profit and Loss Statement ("P&L"), an

18   accounting statement which contain granular detail from Capitol's own accounting

19   systems, setting forth all of the revenue and expenses related to the exploitation of

20   the allegedly infringing sound recording and composition "Dark Horse."

21   Indisputably, the data set forth in the P&L Statements is created and/or maintained

22   by Capitol in the ordinary course of business, and the pages of the P&L Statements

23   constitute business records and/or summaries thereof.  Wais Decl., Ex. 1

24   (Drellishak Depo Tr.), p. 9 l. 16-20.  Further, Capitol's corporate representative,

25   Steven Drellishak, testified at deposition regarding Capitol's revenues, expenses,

26   and net income.

27       Plaintiffs did not produce any factual evidence to satisfy their burden of proof

28   with respect to gross revenues.  Instead, Plaintiffs seek to prove Defendants' gross

revenues through Defendants' own documentation produced in discovery. Similarly, Plaintiffs have not proffered any fact evidence with which to challenge the Defendants' presentation of their costs and apportionment, or with which to establish their actual damages.  Rather, they have solely addressed each of these issues through the opinions of Einhorn.

### 3. Einhorn's Opinions Regarding Profits Should Be Precluded under *Daubert* as Unreliable

At his deposition, Einhorn admitted the obvious fact that the Defendants incurred numerous categories of actual expenses in connection with the exploitation of the song "Dark Horse," including royalty payments, manufacturing and distribution costs, and marketing expenses.  Wais Decl., Ex. 2 (Einhorn Depo. Tr.), pp. 63 l. 3-23; 64 l. 5-23.  Einhorn also claims to have reviewed the voluminous documentation produced by the Defendants setting forth the amount of these expenses.  Wais Decl., Ex. 3 (Einhorn Report) ¶ 3.

Nonetheless, Einhorn opines that the amount of **profits** that should be assessed against each Defendant is equivalent to the amount of **gross revenue** which that Defendant received from the exploitation of the song "Dark Horse" **without regard to any expenses**.  This is a common strategy for Einhorn, who regularly testifies on behalf of parties claiming infringement of their works, and "routinely state[s] in [his] opinions and in [his] testimony that the allegedly infringing party has not proven costs."  Wais Decl., Ex. 2 (Einhorn Depo. Tr.), pp. 17 l. 9-15; 31 l. 9-15; 32 l. 10-15.  Einhorn tries to justify this refusal in this case by: (a) contending that he has no obligation to incorporate the Defendants' costs in calculating Defendants' "profits" until he is personally satisfied that the Defendants have "prove[n]" the amounts of their deductible expenses (*see, e.g., id.*, p. 30 l. 15-22; Wais Decl., Ex. 3 (Einhorn Report) ¶ 10.10.); and (b) critiquing certain expenses as "not properly deductible."  (*id.* ¶¶ 10.6-10.9).

1    Einhorn has no right to offer these opinions, and is not qualified to make

2    them.  His "opinions" regarding Defendants' expenses and profits should be

3    precluded.  More specifically:

4        **a.      By His Own Admission, Einhorn Is Unqualified to**

5                 **Critique Capitol's P&L Statement**

6        To be capable of assisting the trier of fact in deciding the relevant issues of

7    the case, a proposed expert's qualifications must be sufficiently related to the facts

8    and matters on which they seek to testify.  *See United States v. Chang*, 207 F.3d

9    1169, 1173-74 (9th Cir. 2000).  As a threshold matter, Einhorn indisputably lacks

10   the expertise to critique the accuracy and/or veracity of the Capitol's P&L

11   Statement.  This is because, by his own admission, Einhorn is not an accountant,

12   let alone an accounting expert.  Wais Decl., Ex. 2 (Einhorn Depo. Tr.), p. 23 l. 3-

13   8.)

14       Indeed, Einhorn unequivocally admitted in sworn testimony in two unrelated

15   copyright infringement cases that he is unqualified to assess a defendant's P&L

16   Statement:

17           EINHORN: I'm not opining as to whether the P&L was

18           accurate.

19           Q.:    And one of the reasons you're not voicing that

20           opinion is because you've seen evidence of variances

21           between other reports in the P&L?

22           EINHORN: **My reason for not opining is that I'm not**

23           **an accountant.**  Wais Decl., Ex. 4 (*Fitness Quest* Depo.

24           Tr.), pp. 141-142 (lines 65:22-66:3 in the original)

25           (emphasis added).

26                   *          *          *

27           EINHORN:  . . . A P&L is a profit and loss statement.

28           Reports revenues and costs.  A lot of the definitions of

revenues and costs are really matters of accounting, and **an economist is not qualified to talk about them**.  Wais Decl., Ex. 5 (*Bridgeport* Tr.), p. 147 l. 3-7 (emphasis added); *see also* Wais Decl., Ex. 2 (Einhorn Depo. Tr.), p. 23 l. 9-19.)

Moreover, at his deposition in this action, Einhorn was compelled to concede upon cross-examination that, in truth, he "is not qualified to critique the P&L as a matter of accounting."  Wais Decl., Ex. 2 (Einhorn Depo. Tr.), pp. 61 l. 15-62 l. 1.  Thus, by his own sworn admissions, Einhorn is unqualified to criticize Capitol's P&L.  Einhorn should not be allowed to provide any testimony to the jury critiquing, or otherwise, challenging, Defendants' presentation of expenses. *Arista Records LLC v. Lime Grp. LLC*, 2011 WL 1674796, at *5-6 (S.D.N.Y. May 2, 2011) (expert unqualified to offer an expert opinion about statistics or surveying issues where expert "does not have a degree in statistics, does not teach statistics, has never published articles on statistics, and, in fact, has never taken a class in a statistics department or one where statistics was the primary focus of the class").

> **b.     Einhorn May Not Ignore Defendants' Expenses and Pretend Their Net Profit Is Equivalent to Their Gross Revenue**

Even if Einhorn were qualified to testify regarding Defendants' profits (and he is not), his contention that Plaintiffs may ignore, and have no legal obligation to review, Defendants' factual evidence of expenses is plainly lacking any support in the law or simple logic.

Although the defendant bears the burden of proof to establish deductible expenses, this does not give the plaintiff's expert free rein to ignore categories of expenses such as royalty payments which even the expert **admits** have been incurred.  Notably, Einhorn himself cites to and relies upon data in Capitol's P&L Statement in the sections of his expert reports which address issues **other than** the

computation of Defendants' expenses.[3]  He acknowledges that he is "accepting the income as true, but not the expenses as true even though they were provided to [him] in the exact same documents."  Wais Decl., Ex. 2 (Einhorn Depo. Tr.), pp. 29 l. 10-30 l. 3.  Einhorn's own reliance upon the data in Capitol's P&L constitutes a concession that the accounting ledgers in the P&L are indeed reliable, and that there was no legitimate basis for him to ignore those ledgers in purporting to calculate Defendants' "profits."  Indeed, he acknowledged that he is not opining that the expense data are inaccurate.  *Id.*, p. 24 l. 13-24.

Einhorn's only rationale for ignoring expenses is his admittedly **legal** conclusion that "the Defendants . . . bear the responsibility to identify all deductible costs and to apportion the worth of 'Dark Horse' from every sale or licensing transaction on which the song appears, and must then present a credible means of performing both assignments."  Wais Decl., Ex. 3 (Einhorn Report) ¶ 10.10; Wais Decl., Ex. 2 (Einhorn Depo. Tr.), p. 66 l. 16-18.  He offers no other reason—whether in the domain of accounting, economics, or otherwise—for doing so.  Clearly, Plaintiffs and Einhorn are willfully ignoring Defendants' expenses, and conflating the distinct concepts of revenues and profits, in a disingenuous effort to seek an unwarranted award of Defendants' gross revenues.  Plaintiffs' effort to confuse the jury and obtain a tremendous windfall through Einhorn's deceptive testimony should not be countenanced.  *See Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037, 1052 (9th Cir. 2012) ("matters of law are inappropriate subjects for expert testimony"); *Nationwide Transp. Fin. v. Cass Info. Sys.*, 523 F.3d 1051, 1058-59 (9th Cir. 2008) (court properly excluded expert and lay opinions asserting legal conclusions because, among other things, it "was not 'helpful to a clear understanding of the testimony or a fact in issue.'").

---

[3] Specifically, Einhorn cites to and relies upon Capitol's P&L Statement in his discussion of the computation of Defendants' gross revenues.  *See* Wais Decl., Ex. 3 (Einhorn Report) ¶¶ 6.4; Wais Decl., Ex. 2 (Einhorn Depo. Tr.), p. 49 l. 12-17.

c.    **Einhorn's Specific Critiques Of The Capitol P&L Lack Merit**

In addition to his overall refusal to consider costs on legal grounds, Einhorn offers few specific critiques to Capitol's costs as reflected in the P&L.  But even those are insufficiently reliable to avoid preclusion.  For example, Einhorn objects to Capitol's deduction of expenses (such as manufacturing and distribution fees) which it paid to related, but distinct corporate entities that are not defendants in this action.  Wais Decl., Ex. 3 (Einhorn Report) ¶¶ 10.7-10.8.  According to Einhorn, these costs are illegitimate because they are "transfer payments within the UMG organization."  *Id.* ¶ 10.7.  But he cites no authority or principle—whether it be in the domain of accounting or economics—to support this blanket statement.  Indeed, he admits that this objection "is a legal opinion."  Wais Decl., Ex. 2 (Einhorn Depo. Tr.), p. 65 l. 12-25.

Moreover, Einhorn admits that: (1) "it costs money to manufacture and distribute an album"; (2) "Capitol Records would have to pay someone to manufacture and distribute the album, whether a related corporate entity or an unrelated entity"; and (3) "if Capitol Records does pay a related entity to manufacture and distribute the album, . . . that related entity incurs costs in doing so."  *Id.*, p. 63 l. 3-23.  Accordingly, Einhorn's opinions regarding transfers to related entities must be excluded.

4.    **Einhorn's Calculation Of Revenues Is Not A Proper Subject Of Expert Testimony**

Einhorn's computation of Defendants' gross revenues should also be precluded because it does not make use of "matters within the witness' scientific, technical or specialized knowledge" and instead improperly pertains to "lay matters which the jury is capable of understanding and deciding without the expert's help."  *AFMS LLC v. United Parcel Serv. Co.*, 2014 WL 12515335, at *4 (C.D. Cal. Feb. 5, 2014); *see also United States v. Hanna*, 293 F.3d 1080, 1086

Mitchell
Silberberg &
Knupp LLP

11134861.1

**DEFENDANTS' MOTION TO PRECLUDE EINHORN**

(9th Cir. 2002) ("Expert testimony is admissible under Fed.R.Evid. 702 if it addresses an issue 'beyond the common knowledge of the average layperson.'"). In calculating Defendants' gross revenues, Einhorn has merely performed a simple arithmetic exercise by adding up gross revenue figures that are set forth in black-and-white in documents, including summary documents, produced by Defendants in this action. This is an elementary calculation that the jury can perform itself. *Schwartz v. Fortune Magazine*, 193 F.R.D. 144, 147 (S.D.N.Y. 2000). Indeed, Einhorn admits that "you do not need a Ph.D. in economics to take numbers from one page and bring it over to another." Wais Decl., Ex. 2 (Einhorn Depo. Tr.), pp. 43 l. 14-44 l. 3; 26 l. 20-27 l. 21; 28 l. 4-13; 47 l. 23-48 l. 7; 50 l. 24-51 l. 25.

## C. **Einhorn's Opinions Regarding "Actual Damages" Should Be Excluded**

### 1. **Standard For Proving "Actual Damages"**

In the Ninth Circuit, "**actual damages**" is defined as "the loss in the fair market value of the copyright, as 'measured by the profits lost due to the infringement or the value of the use of the copyrighted work to the infringer.'" *Live Face on Web, LLC v. AZ Metroway, Inc.*, 2016 WL 4402796, at *4 (C.D. Cal. Aug. 15, 2016) (quoting *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004)). "[I]n situations where the infringer could have bargained with the copyright owner to purchase the right to use the work, actual damages are 'what a willing buyer would have been reasonably required to pay to a willing seller for the plaintiffs' work.'" *Jarvis v. K2 Inc.*, 486 F.3d 526, 533 (9th Cir. 2007). An award of hypothetical license damages may not be based on "undue speculation." *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1088 (9th Cir. 2014) (citation omitted). "Typically, a 'license price is established through objective evidence of benchmark transactions, such as licenses previously negotiated for comparable use of the infringed work, and benchmark licenses for comparable uses of comparable works.'" *Raimondi v. Olenicoff*, 2015 WL 9703485, at *2 (C.D. Cal. July 7, 2015).

### 2.      Einhorn's "Actual Damages" Opinions

Here, with respect to Plaintiffs' alleged actual damages, Einhorn states that "[t]here is no rule for determining an exact amount that would result from a negotiation." He fails to cite to any methodology generally accepted in the music industry for determining a hypothetical royalty, except that he states "[t]he results of other negotiations involving similar situations are useful benchmarks to inform this analysis." Wais Decl., Ex. 3 (Einhorn Report) ¶¶ 5.2-5.3.

In reaching his opinion that "a reasonable outcome for a copyright negotiation for rights in 'Joyful Noise' would have granted to Plaintiffs a 15 percent share of copyright royalties . . . in the musical composition 'Dark Horse'" (*id.* ¶ 5.12), Einhorn does **not** consider "results of other negotiations." Rather, his analysis consists simply of the following *ipse dixit* assertions: (a) it is "proper for Plaintiffs to share some royalty share sales and licensing of ['Dark Horse'] with regard to reproduction, performance, and video synchronization"; (b) there are five primary writers of "Dark Horse" who own equal shares in 90% of the work; (c) the allegedly infringed portion of "Joyful Noise" would "represent a sixth contribution to 'Dark Horse' that must be assigned some share of royalties paid; and (d) dividing the 90% total by six would result in a 15% share for each of the six writers (including the Plaintiffs collectively). *Id.* ¶¶ 5.10-5.16.

### 3.      Einhorn's "Actual Damages" Opinions Fail On Multiple Grounds

Einhorn's opinions regarding actual damages should be precluded because they: (a) fail to consider additional, highly relevant evidence of prior transactions; (b) misstate the evidence of record; and (c) are entirely outside of his professed knowledge and expertise as an economist. *See generally Dash*, 731 F.3d at 322 (rejecting Einhorn's damages opinion because it was based on inapposite data).

*First*, although Einhorn touts the importance of analyzing "other negotiations involving similar situations" (indeed, he recognizes no other accepted

methodology), he was not provided, and thus failed to consider, evidence of relevant transactions, including **one involving the very music at issue in this case**. Specifically, Plaintiff Chike Ojukwu testified at his deposition about an actual negotiation for use of the instrumental music (a/k/a, "the beat") at issue here. Wais Decl., Ex. 6 (Ojukwu Depo. Tr.), pp. 159 l. 20-161 l. 19. According to Ojukwu, he gave an exclusive license to Plaintiff Marcus Gray for the right to use the "Joyful Noise" beat and one other beat **for a total of $300**. *Id.* In addition, Ojukwu conceded at his deposition that he offers other beats for sale on a site called "Airbit.com" for $20-$60. *Id.*, pp. 154 l. 13-21; 155 l. 9-156 l. 2; 157 l. 10-24; 158 l. 15-159 l. 6; 162 l. 9-22; & 164-166. Based upon Einhorn's own purported methodology, these pieces of evidence are critically important and should have informed his analysis.

Indeed, Einhorn's analysis is far more inappropriate than his "actual damages" opinion in the *Dash* case, which the Fourth Circuit refused to credit. In *Dash*, Einhorn offered an "actual damages" sum based on four "benchmark licenses." *Dash*, 731 F.3d at 321. The court found that his conclusion was "perfunctory" and "too speculative" to rebut summary judgment "because that conclusion is based *only* and without explanation on the fees paid to well-established artists for the use of their works." *Id.* (emphasis in original). As the court found, the analysis was "insufficient, given that the benchmarks are not comparable to [the plaintiff's work] and [] Dr. Einhorn failed to explain how the differences between the benchmarks used and [the plaintiff's] beat factored into his analysis of [the plaintiff's] actual damages claim." *Id.* at 322. Here, in contrast, Einhorn offers no "benchmark licenses," rendering his opinion even more "perfunctory" and "speculative," especially in light of the available evidence of transactions involving the **same music that is at issue in this case**. The failure to address this evidence makes Einhorn's opinion as to "actual damages" completely unreliable.

*Second*, Einhorn's opinion that it is "proper for Plaintiffs to share some royalty share sales and licensing of" "Dark Horse" is expressly based on "Decker's opinion"[4] that "the infringing ostinato is repeated throughout 'Dark Horse' and is a major component of the work." Wais Decl., Ex. 3 (Einhorn Report) ¶¶ 5.10-5.11. But nowhere in his two reports in this case or at his deposition did Decker opine that the allegedly infringing ostinato "is a major component of" "Dark Horse." Certainly, Decker did not opine that the ostinato from "Joyful Noise" was equally important to the contributions of the writers of "Dark Horse." Thus, since the underlying "fact" on which Einhorn bases his opinion is wrong, the conclusion regarding actual damages is flawed and unreliable.

*Third*, Einhorn is entirely unqualified to render these opinions regarding actual damages. Einhorn admits that he has never negotiated any type of license for a single composition. Wais Decl., Ex. 2 (Einhorn Depo Tr.), pp. 19 l. 14-20 l. 14; 22 l. 11-25; 25 l. 1-9. Thus, he has no personal knowledge of any actual customs and practices of the music licensing business, and he has not provided any other reliable justification (such as academic literature) to establish their existence. Einhorn's degree in economics cannot substitute for his lack of expertise in these other disciplines which form the basis of these opinions. *See, e.g., Chang*, 207 F.3d 1172-73 (excluding testimony beyond witness' expertise).[5]

### D. Einhorn's Opinions Regarding Apportionment Must Be Excluded

Einhorn's calculation of revenue "related to" "Dark Horse" includes all revenue from the *Prism* album, without apportionment. Wais Decl., Ex. 3

---

[4] Dr. Todd Decker is Plaintiffs' expert musicologist.

[5] Einhorn's lack of relevant experience is not merely an issue of credibility for the jury to consider. This Court has the obligation to engage in the necessary exercise of "'comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony.'" *Jones v. Lincoln Electric Co.*, 188 F.3d 709, 723 (7th Cir. 1999) (citation omitted). Where, as here, there is a marked mismatch between the expert's credentials and the subject matter of his testimony, the Court should exclude the testimony.

Mitchell
Silberberg &
Knupp LLP

11134861.1

DEFENDANTS' MOTION TO PRECLUDE EINHORN

(Einhorn Report) ¶ 4.5; Wais Decl., Ex. 2 (Einhorn Depo. Tr.), pp. 45 l. 1-47 l. 18. In order to justify this massively overstated revenue for the **entire album**, Einhorn states that "Dark Horse" "was critically important to the success of this album." Wais Decl., Ex. 3 (Einhorn Report) ¶ 9.1.  He offers three categories that purportedly "document[]" and "demonstrate[]" this critical importance: (1) "concert tours"; (2) "radio play"; and (3) "streams and videos on Chartmasters." *Id.* ¶¶ 9.1-9.26.  Each of these purported rationales demonstrates the unreliability of Einhorn's opinion.

### 1.    Einhorn's "Concert Tours" Opinions Are Unreliable

Einhorn admitted that he has no "empirical evidence . . . that there is a statistical correlation between a track appearing on a concert set list and the contribution of that track in motivating consumers to purchase the album on which the track appears."  Wais Decl., Ex. 2 (Einhorn Depo. Tr.), p. 54 l. 12-21. Furthermore, Einhorn admits that he has no relevant experience to draw upon in rendering this opinion: he has never promoted a concert tour or an album, or published on these subjects.  *Id.*, pp. 52 l. 24-53 l. 12.

His analysis is also illogical.  Einhorn notes that the "Prismatic World Tour," which promoted *Prism*, was successful.  Wais Decl., Ex. 3 (Einhorn Report) ¶¶ 9.3-9.4.  He then cites the set list for the tour, which contained 20 songs— including "Dark Horse" and 12 other songs from *Prism. Id.* ¶ 9.4.  Thus, virtually **every** song from the *Prism* album was played during the concert tour (Wais Decl., Ex. 2 (Einhorn Depo. Tr.), pp. 54 l. 22-55 l. 1), rendering absurd any suggestion that "appearance of ['Dark Horse'] in concert tours" means that the song was "critically important to the success" of *Prism*.

### 2.    Einhorn's "Radio Play" Opinions Are Unreliable

Einhorn admitted in his deposition that he has no empirical proof demonstrating the connection (if any) between radio airplay and album sales.  *Id.*, p. 18 l. 13-25.  Nor does he have relevant experience working in radio promotions.

*Id.*, p. 21 l. 7-22.  In addition, during his deposition, he was compelled to admit that his analysis of the data was wrong.  *Id.*, pp. 33 l. 4-35 l. 6; 36 l. 12-24; 37 l. 1-25; 38 l. 9-39 l. 4; & 40 l. 10-18.  Accordingly, all of the conclusions he made concerning the erroneous totals in his "radio plays" chart were also wrong.  *Id.*, pp. 40 l. 20-42 l. 20 (admitting that paragraphs 9.10 through 9.15 are "erroneous," and that he "can't stand behind" his conclusion in 9:16 that these numbers demonstrate that "Dark Horse" "was a leading promotional song on the album – if not the most important"); *see also* Wais Decl., Ex. 3 (Einhorn Report) ¶¶ 9.7-9.16.

### 3. Einhorn's "Chartmasters" Opinions Are Unreliable

With respect to the supposed popularity of "Dark Horse" on streaming services, Einhorn cites only a website called "Chartmasters."  *Id.* ¶¶ 9:17-9:25.  But Einhorn admitted that he does not know anything about the site, including who maintains it, whether it is run by professionals, or whether people in the music industry rely on its data.  Wais Decl., Ex. 2 (Einhorn Depo. Tr.), pp. 56 l. 24-57 l. 24; 59 l. 2-12.  He did nothing to assess the reliability of Chartmasters other than reading the Chartmasters website.  *Id.*, p. 60 l. 16-20.  For all he knows, the numbers in Chartmasters are completely made up.  *Id.*, pp. 58 l. 8-59 l. 1.

Simply put, there is nothing in the Einhorn Report that comes close to establishing the reliability or admissibility of his opinions regarding the "importance" of "Dark Horse."  Those opinions should be excluded.  *Gen. Elec. Co.*, 522 U.S. at 146 ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.  A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").

### E. Einhorn's Rebuttal Opinions Should Be Precluded

In addition to his affirmative report, Einhorn submitted a rebuttal report addressed to the musicological value assessment by Defendants' expert, Dr. Lawrence Ferrara.  Wais Decl., Ex. 7 (Einhorn Rebuttal).  But Einhorn offers no

"expert" opinion in his report; he merely opines that Ferrara's report fails to meet what he considers (in his non-expert opinion) to be the relevant **legal** standards. Indeed, Einhorn even goes so far as to assert that Ferrara has "failed to meet the *Daubert* standards specified by this Court" and "is likely to mislead the jury." *Id.* ¶¶ 4.11-4.12.[6]

Einhorn's rebuttal testimony must be excluded because it is an obvious and egregious example of "expert" opinion that "simply regurgitates what a party has told him" and therefore "provides no assistance to the trier of fact through the application of specialized knowledge." *Arista Records LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409, 424 (S.D.N.Y. 2009).  His legal opinions are inadmissible. *Hooper*, 688 F.3d at 1052 ("matters of law are inappropriate subjects for expert testimony"); *Nationwide Transp. Fin.*, 523 F.3d at 1058-59 (expert's legal conclusions are "not 'helpful to a clear understanding of the testimony or a fact in issue.'").

### F.    Einhorn's Untimely "Updated" Opinions Must Be Excluded

As discussed above, Einhorn should be precluded from testifying at all during trial.  In the alternative, Defendants respectfully submit that Einhorn's two "updated" reports, and any testimony relating to the new opinions therein, should be excluded.

### 1.    Legal Standard For Excluding Untimely Reports

Federal Rule of Civil Procedure 26(a) requires parties to disclose—by a date certain—all experts who will testify at trial and to provide a written report containing (1) "a complete statement of all opinions the witness will express and

---

[6] He also gives the obviously legal opinions that Ferrara's analyses "are not appropriately quantified for the needs of this Court" (*id.* ¶ 4.5); he "presents no evidence that his technique or related valuations has ever appeared in any peer-reviewed paper or formed the foundation for the fees for licensing of music samples in the music business" (*id.* ¶ 4.8); "fails to cite any technical literature" (*id.* ¶ 4.9); and his "technique cannot be reproduced or verified by a Court" (*id.* ¶ 4.10).

the basis and reasons for them" and (2) "the facts or data considered by the witness in forming them."  Fed. R. Civ. Proc. 26(a)(2)(B)(i)-(ii).  "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence… at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. Proc. 37(c)(1); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1105-06 (9th Cir. 2001).

Exclusion of evidence under Rule 37(c)(1) is "self-executing" and "automatic." *Id*. at 1106 (quoting Fed R. Civ. P. 37 Adv. Comm. Notes to 1993 Amendment).  The goal is to "provide[] a strong inducement for disclosure of material" in discovery.  *Id*.  Consistent therewith, courts frequently preclude expert opinions not timely disclosed in discovery, absent the party resisting disclosure showing that the untimely disclosure was substantially justified or harmless.  *See, e.g., Assn. of Christian Schools Intern. v. Stearns*, 678 F. Supp. 2d 980, 987 (C.D. Cal. 2008) (excluding undisclosed expert opinion); *Mariscal v. Graco, Inc.*, 52 F. Supp. 3d 973, 983-84 (N.D. Cal. 2014) (excluding untimely opinion).  This "eliminat[es] [] unfair surprise to the opposing party and [conserves] resources.'" *Salyards v. Metso Minerals Oy*, 2005 WL 5989797, at *2 (E.D. Cal. Sept. 15, 2005).

## 2. Plaintiffs Served An "Updated" Einhorn Report In Violation Of The Court's Order Just Two Days Before His Deposition

In its Scheduling Order, the Court ordered the parties to disclose any damages experts on April 12, 2019 and any rebuttal experts on May 3, 2019.  Wais Decl., Ex. 8 (Scheduling Order).  Pursuant to this Order, on April 12, Plaintiffs served the Einhorn Report.  Defendants noticed Einhorn's deposition for May 17. Less than two days before his deposition was to start, and over a month after the deadline for opening reports, Plaintiffs served an "updated" report from Einhorn,

Mitchell
Silberberg &
Knupp LLP

11134861.1

27

which contained multiple substantive changes—too many to fully describe here. *See* Wais Decl., Ex. 9 (First "Updated" Einhorn Report); Wais Decl., Ex. 10 (redline comparing the original Einhorn Report to the First "Updated" Einhorn Report).  Some major changes include:

- In his original report, Einhorn opines that, in determining a hypothetical royalty, "The results of other negotiations involving similar situations ***are*** useful benchmarks to inform this analysis."  Wais Decl., Ex. 3 (Einhorn Report) ¶ 5.3 (emphasis added).  Yet, after Defendants' rebuttal experts criticized Einhorn for failing to consider actual, historical transactions involving the musical track underlying "Joyful Noise" (in which the allegedly infringed composition was valued at less than $300), Einhorn changed his opinion to state that "The results of other negotiations involving similar situations ~~are~~ ***can sometimes be*** useful benchmarks to inform this analysis."  Wais Decl., Ex. 9 (First "Updated" Einhorn Report) ¶ 5.3 (excised term re-inserted and struck through for clarity, emphasis added).

- In response to criticism by Defendants' rebuttal experts that Einhorn's royalty opinion lacked appropriate methodology, Einhorn substantially changed his explanation of his purported methodology for determining a hypothetical royalty.  *Id.* ¶¶ 5.13-5.17.

- In his original report, Einhorn stated, without citation and inaccurately, that Plaintiffs' musicologist "opines that the infringing ostinato is repeated throughout 'Dark Horse' and is a major component of the work."  Wais Decl., Ex. 3 (Einhorn Report) ¶ 5.10.  In his updated report, he advises that, "Upon written statement of counsel, I am also advised that Prof. Decker has determined that the ostinato accounts for 95 seconds of the song (which Defendants' expert Ferrara times at 3:32, or 212 seconds); or 45 percent of the elapsed time in the entire composition."  Wais Decl., Ex. 9 (First

1   "Updated" Einhorn Report) ¶ 5.10.  However, no such "written statement"

2   was disclosed by Decker or stated in Einhorn's original report.

3   • In his updated report, Dr. Einhorn also, for the first time, relied on testimony

4       from Katy Perry's deposition, notwithstanding the fact that Plaintiffs'

5       counsel had received her transcript weeks before service of Einhorn's

6       original report.  *Id.* ¶ 3; Wais Decl., Ex. 11 (March 21, 2019 email

7       transmitting Perry deposition transcript).

8           **3.    Plaintiffs Served A <u>Second</u> "Updated" Einhorn Report**

9               **After The Close Of Expert Discovery**

10          Pursuant to the Court's Scheduling Order, expert discovery closed on May

11   24, one week after Einhorn's deposition.  Four days after the close of discovery,

12   and a month and a half after the deadline of opening reports, Plaintiffs served a

13   **second** "Updated" Einhorn report.  *See* Wais Decl., Ex. 12 (May 28, 2019 email

14   transmitting Second "Updated" Einhorn Report); Wais Decl., Ex. 13 (Second

15   "Updated Einhorn Report); Wais Decl., Ex. 14 (redline comparing the First

16   "Updated" Einhorn Report to the Second "Updated" Einhorn Report).  This

17   updated report also includes new argument and opinions.  *See* Wais Decl., Ex. 13

18   (Second "Updated" Einhorn Report) ¶¶ 9.8-9.23.

19          **4.    The Untimely Disclosures Are Not Substantially Justified**

20              **Or Harmless**

21          Plaintiffs cannot justify the untimely disclosures of the opinions in the

22   "updated" reports.  Plaintiffs had ample time (years) and multiple opportunities to

23   timely disclose the opinions and analysis of their experts.  To the extent that they

24   failed to do so by the Court-imposed deadlines, there is no excuse.  And, to the

25   extent that Plaintiffs' experts simply got it wrong, this is not justification for

26   allowing their experts to change their opinions and deepen their analysis in

27   response.

28

Mitchell
Silberberg &
Knupp LLP

11134861.1

Plaintiffs' untimely disclosures are not only unjustified but prejudicial. Plaintiffs are seeking enormous damages from Defendants, calculated entirely based on the purported expert opinions of Einhorn.  Yet expert discovery is now closed and trial is set to begin in weeks and Defendants were frustrated or denied the ability to rebut Einhorn's constantly changing and new opinions and analysis. As such, Plaintiffs should be precluded from introducing new opinions.  *See Assn. of Christian Schools*, 678 F. Supp. 2d at 987 ("Defendants are prejudiced as they are unable to have their experts rebut the opinions").[7]

\*      \*      \*

Because these new opinions were untimely in violation of the Scheduling Order, exclusion is mandatory pursuant to Rule 37(c)(1).

## III.    CONCLUSION

For the reasons set forth above, Einhorn's opinions are unreliable by his own admissions, and would confuse (rather than assist) the trier of fact.  Einhorn should be precluded from testifying at the trial of this action pursuant to *Daubert* and its progeny.  In the alternative, testimony relating to his untimely "updated" reports and opinions should be precluded.

---

[7] Plaintiffs cannot avoid exclusion by arguing that Einhorn's "updated" reports are "supplemental" reports permitted under Rule 26(e).  "Supplemental" reports that "state[] *additional opinions* or *seeks to strengthen or deepen opinions* expressed in the original expert report [are] beyond the scope of proper supplementation and *subject to exclusion* under Rule 37(c)."  *Wilson v. Odwalla, Inc.*, 2018 WL 3250161, at \*2 (C.D. Cal. June 22, 2018) (emphasis added, citation omitted); *Medtronic Inc. v. Edwards Lifesciences Corp.*, 2013 WL 12131746, at \*2 (C.D. Cal. July 24, 2013) ("Supplementary disclosures . . . do not permit a party to introduce new opinions after the disclosure deadline under the guise of a 'supplement.'"); *Fed. Deposit Ins. Corp. v. Van Dellen*, 2012 WL 12886825, at \*1 (C.D. Cal. Nov. 6, 2012) ("To rule otherwise would create a system where preliminary reports could be followed by supplementary reports and there would be no finality to expert reports.").  Such is the case with Einhorn's "updated" reports.

1   DATED: June 12, 2019          MITCHELL SILBERBERG & KNUPP LLP

2                                 By:  /s/ Aaron M. Wais

3                                 Aaron M. Wais (SBN 250671)
                                  Attorneys for Defendants other than Katheryn
4                                 Elizabeth Hudson, and Kitty Purry, Inc.

5   DATED: June 12, 2019          GREENBERG TRAURIG, LLP

6

7                                 By:  /s/ Vincent H. Chieffo

8                                 Vincent H. Chieffo (SBN 49069)
                                  Attorneys for Defendants Katheryn Elizabeth
9                                 Hudson p/k/a Katy Perry and Kitty Purry, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

11134861.1

**DEFENDANTS' MOTION TO PRECLUDE EINHORN**