Michael A. Kahn (pro hac vice)
Kahn@capessokol.com
Lauren R. Cohen (pro hac vice)
lcohen@capessokol.com
CAPES SOKOL
7701 Forsyth Blvd. 12th Floor
St. Louis, MO 63015
(314) 721-7701

Eric. F. Kayira (pro hac vice)
eric.kayira@kayiralaw.com
KAYIRA LAW, LLC
200 S. Hanley Road, Suite 208
Clayton, Missouri 63105
(314) 899-9381

Daniel R. Blakey (SBN 143748)
blakey@capessokol.com
CAPES SOKOL
3601 Oak Avenue
Manhattan Beach, CA 90266

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCUS GRAY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> KATHERYN ELIZABETH HUDSON, et al., <br><br> Defendants. | CASE NO. 2:15-cv-05642-CAS (JCx) <br><br> Honorable Christina A. Snyder <br><br> **PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO PRECLUDE CERTAIN PORTIONS OF THE TESTIMONY OF PLAINTIFFS' EXPERT TODD DECKER AT TRIAL** <br><br> Final Pretrial Conference <br> Date: July 1, 2019 <br> Time: 11 a.m. <br> Courtroom: 8D <br><br> Trial: July 16, 2019 |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO PRECLUDE CERTAIN PORTIONS OF THE TESTIMONY OF PLAINTIFFS' EXPERT TODD DECKER AT TRIAL**

I.  **Introduction**

Defendants seek to preclude Dr. Todd Decker, Plaintiffs' expert musicologist, from "testifying regarding or relying on": (1) mash-up videos and lay listener impressions; (2) the similarity of "Joyful Noise" and "Dark Horse" with respect to "texture;" and (3) information contained within a declaration prepared by Dr. Decker at the request of Plaintiffs' expert economist Dr. Einhorn. The first two categories were included in Dr. Decker's rebuttal report and were in direct response to Defendants' expert, Dr. Ferrara's, opinion. As explained below, these two categories are the proper subject of Dr. Decker's expert testimony. The third category is not an intended subject of Dr. Decker's testimony and, as such, that portion of Defendants' motion is moot.

II. **Argument**

A. <u>Dr. Decker is permitted to testify regarding mash up videos</u>

Defendants claim that Dr. Decker should not be permitted to rely upon mash up videos created by what they refer to as "lay listeners" because they believe they are "entirely unreliable" and because Dr. Decker's reliance upon these materials is irrelevant to the "extrinsic test" and "encroach on the jury's exclusive duty to consider the "intrinsic test." Doc. 348. Defendants are incorrect.

   *i.  Dr. Decker did not rely upon lay listener opinions in forming his opinion*

Dr. Decker does not rely upon lay listener impressions. Although Dr. Decker may have relied, in part, upon tools created by what Defendants refer to as "lay listeners," Dr. Decker formed his own objective, expert opinion regarding the similarity of the songs based upon the totality of the content he reviewed. As such, Dr. Decker's testimony will not encroach upon the intrinsic test for similarity such that Defendants' motion on this point can be disposed of.

2

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO PRECLUDE CERTAIN PORTIONS OF THE TESTIMONY OF PLAINTIFFS' EXPERT TODD DECKER AT TRIAL**

> *ii.* *Dr. Decker relies upon mash up videos for two independent, admissible purposes*
>
> a. <u>Dr. Decker relies upon mash up videos for purposes of rebutting Dr. Ferrara's chosen methodology</u>

Notably, Dr. Decker makes no reference to mash up videos in his opening report, but only on rebuttal for the purpose of attacking Dr. Ferrara's "transcription" methodology. Doc. 348-2. In his rebuttal report, Dr. Decker states:

> Ferrara argues that musical notation is essential to understanding this case. It is not. Popular music is inscribed in sound, not on paper. My report attempted to guide the listener without putting musical notation in the place of aural experience, which is in the sense that counts in this case. The transcription of recordings into musical notation – which Ferrara uses throughout his report – is always an interested and rhetorical act designed to make an argument. Musical scholars have agreed on this for decades. This is especially the case with the popular music styles at issue here, where the musical word is a sound recording and not a notated musical score to be realized in performance. Ferrara deploys musical notation by way of transcriptions to try to suggest that the clearly audible similarities between the principal ostinato of "Joyful Noise" and his ostinato #2 of "Dark Horse" are, in fact, not evidence to the ear. Ferrara's effort to obscure the audible similarities between the respective ostinatos by way of visual arguments based upon transcription are, therefore entirely specious. As I show below, his shifting strategies for representing the two tracks seek to undermine audible similarities that have been commented upon and demonstrated in sound in YouTube comparisons of the songs.

Doc. 348-2, p.6. As Dr. Decker plainly explained, the impetus for his review of mash ups was to demonstrate how Dr. Ferrara's chosen methodology – transcription – is inappropriate and misleading. Accordingly, there is no basis to

3

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO PRECLUDE CERTAIN PORTIONS OF THE TESTIMONY OF PLAINTIFFS' EXPERT TODD DECKER AT TRIAL**

exclude Dr. Decker's proper use of demonstrative evidence to rebut Dr. Ferrara's methodology.

> b. Dr. Decker properly relies upon the mash ups because they provide a unique means of comparing melodic contour and scale degree

In addition to using the mash ups to demonstrate why aural comparison is more reliable that transcription, Dr. Decker relies upon the mash up videos to enhance his ability to aurally compare the tracks.  Specifically, Dr. Decker will testify that the mash ups provide an opportunity to hear things like melodic contour and scale degree, which are not otherwise readily comparable.  Dr. Decker has established that a musicologist's reliance upon materials such as mash ups is standard and customary industry practice and, in fact, Dr. Decker regularly uses mash ups as a teaching tool in the classroom.

"Rules 702 and 703 grant all expert witnesses…testimonial latitude unavailable to other witnesses on the assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999) (*citing Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993)).  Despite an expert's wide latitude regarding reliance materials, Defendants cherry pick testimony of Dr. Decker in an attempt to show that because Dr. Decker does not personally know the mashup creators, he cannot be sure of their source of origin, their methodology of processing, or their overall reliability.  In fact, Dr. Decker testified that based upon the two videos attached to his rebuttal report – by Fleshplosion (Doc. 348-1, p. 22) and Seth Mott (Doc. 348-1, p.25) – he can say with certainty that the creators "know how to use digital tools."  *See* Declaration of Lauren R. Cohen ("Cohen Decl."), a copy of which is attached hereto as Attachment 1, Ex. A, p. 115:20-21.  Dr. Decker also testified that "conversance with digital tools conveys a certain kind of musical understanding." *Id.*, p. 116:16-19.  He refers to the creation of mash

4

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO PRECLUDE CERTAIN PORTIONS OF THE TESTIMONY OF PLAINTIFFS' EXPERT TODD DECKER AT TRIAL**

ups as "an act of popular musicology." *Id.*, p. 130:1-2. Dr. Decker acknowledges that the tracks are altered. In fact, Freshplosion articulates in textual notations embedded in the video, with time code analysis, exactly what he did to alter the tracks, which Dr. Decker testified is precisely what he would ask a student to do. *Id.*, p. 135:17-25. Dr. Decker testified that although Seth Mott provided no text in his video, he is able to extrapolate the changes that were made by testing with his own ear. *Id.*, p. 136:1-137:3. Any potential prejudice and/or confusion Defendants believe may be caused by presentation of the mash up videos to the jury will be alleviated by their ability to cross examine him on these issues. Any doubt should tip in favor of the weight of the evidence, not its admissibility.

   c. <u>Applicable Ninth Circuit authority would permit the playing of mash up videos by Dr. Decker at trial</u>

  Defendants attempt to distinguish *Williams v. Gaye*, 895 F. 3d 1106 (9th Cir. 2018), which is on point. *Id.* at 1126. Specifically, in *Williams*, the Ninth Circuit concluded that the playing of mash up videos in connection with an expert's testimony was not an abuse of discretion. In arguing that this Court should not follow this Ninth Circuit precedent, Defendants focus on a sole and non-critical distinguishing factor – that the expert in *Williams* created the mash ups herself. Whether the mash ups were created by Dr. Decker is not critical. In *Williams*, the expert testified that as a result of the mash up comparisons, she was better able "to demonstrate the songs shared harmonic and melodic compatibility." *Id.* Here, Dr. Decker seeks to rely on the mash ups for the same purpose – to demonstrate the shared melodic contour and scale degree among "Joyful Noise" and "Dark Horse" in a way that would not otherwise be available. The *Williams* court was persuaded by the expert's ability to be cross-examined and the jury's liberty to weigh her testimony as it saw fit. Critically, just as in *Williams*, Dr. Decker will be subject to cross examination regarding the reliability of the mash ups and the jury will be

5

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO PRECLUDE CERTAIN PORTIONS OF THE TESTIMONY OF PLAINTIFFS' EXPERT TODD DECKER AT TRIAL**

permitted to weigh the evidence as it sees fit. Accordingly, this Court should follow the Ninth Circuit precedent and permit Dr. Decker to testify about and share demonstrative evidence of the mash up videos.

### B. Defendants' allegation that Dr. Decker's opinions were untimely produced fails

#### i. Dr. Decker's rebuttal report was produced in timely fashion

Defendants argue that Dr. Decker's rebuttal report should be excluded at trial as untimely. Dr. Decker's rebuttal report was produced in June 2017, almost two years before the deadline for disclosure of rebuttal experts on May 3, 2019. *See* Doc. 348-2, Ex. B. Accordingly, Dr. Decker's rebuttal report was timely.

#### ii. Dr. Decker may testify regarding a similarity in the songs' "texture"

Defendants next argue that in the fourth paragraph of his rebuttal report, Dr. Decker improperly offers a "new" opinion regarding a fourth purported similarity of "texture." Doc. 348, p.17. Contrary to Defendants' conclusory assertion, Dr. Decker's opinion regarding the similarity in "texture" between "Dark Horse" and "Joyful Noise" was included in direct response to Defendants' expert Dr. Ferrara's report in which he provided examples of prior art supposedly sharing similar elements as "Dark Horse." In paragraph four of his rebuttal report, Dr. Decker makes clear that his discussion of "texture" is offered to rebut what Ferarra asserted in his report regarding prior art. For example, paragraph 4 subparagraph (g) states "Indeed, none of Ferrara's 35 prior art exhibits demonstrate anything close to the spare textural qualities described above that are shared by the melodic ostinatos at issue in 'Joyful Noise' and 'Dark Horse.'" Doc. 348-2, Ex. B.

A rebuttal expert may introduce new methods of analysis "as long as the new method is offered to contradict or rebut an opposing party's expert." *Leadership Studies, Inc. v. Blanchard*, 2018 WL 1989554, at *10 (S.D. Cal. April

6

27, 2018). Moreover, when Dr. Decker was deposed in January 2018—6 months after he submitted his rebuttal report, Defense counsel had the opportunity to—and did—address Dr. Decker's rebuttal report and his discussion of the similarity in "texture" between the two songs. Cohen Decl., Ex. A, p. 68-74, 200, 216, 269-271, 274, 276-278, 293, 307. To be precise, texture was discussed on 18 different pages of Dr. Decker's deposition. *Id.* Dr. Decker explained:

> Q: In your rebuttal report you identify another element, namely texture, correct?
> A: Yes.
> Q: Why was that not included in your original report?
> A: The original – excuse me. Listening to the prior art examples that were provided led me to keep list – I mean, obviously you keep listening to the two tracks and listening to the prior art examples led me to consider texture particularly at the start of these tracks as another alient similarity between the two, between "Dark Horse" and "Joyful Noise." So I added it as a result of the kind of – prior art examples that I listened to.
>
> Cohen Decl, Ex. A, p. 307:12-308:8.

Dr. Decker's rebuttal opinion regarding texture was properly disclosed such that Defendants' argument on this point must fail.

### C. Decker's declaration will not be the subject of his testimony at trial

Defendants assert that Dr. Decker's declaration is an untimely rebuttal report. This is simply not true. Dr. Decker's declaration does not offer an opinion but rather documents an uncontroversial fact. See Doc. 348 – 2, Ex. 5. Plaintiffs' counsel does not intend to offer the fact in the declaration through Dr. Decker's testimony at trial. Rather, the declaration is appropriately used by Dr. Einhorn as

7

reliance material. Because Dr. Decker's declaration is not being used by Dr. Decker to offer an opinion at trial, the declaration merely contains an uncontroversial fact and the information is harmless, Defendants' argument on this point is superfluous.

### III. Conclusion

Based upon the foregoing, Defendants' Motion to Preclude Portions of the Testimony of Plaintiffs' Expert Todd Decker at Trial must be denied.

Dated: June 19, 2019

s/ Lauren R. Cohen
Michael A. Kahn (pro hac vice)
Kahn@capessokol.com
Lauren R. Cohen (pro hac vice)
lcohen@capessokol.com
Capes Sokol Goodman Sarachan PC
7701 Forsyth Blvd., 12th Floor
St. Louis, MO 63105
Telephone: (314) 721-7701

Eric F. Kayira (pro hac vice)
Clayton, Missouri 63105

Daniel R. Blakey (SBN 143748)
3601 Oak Avenue
Manhattan Beach, CA 90266

***Attorneys for Plaintiffs***

8

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO PRECLUDE CERTAIN PORTIONS OF THE TESTIMONY OF PLAINTIFFS' EXPERT TODD DECKER AT TRIAL**