CHRISTINE LEPERA (admitted *pro hac vice*)
  ctl@msk.com
JEFFREY M. MOVIT (admitted *pro hac vice*)
  jmm@msk.com
JACOB D. ALBERTSON (admitted *pro hac vice*)
  j1a@msk.com
MITCHELL SILBERBERG & KNUPP LLP
437 Madison Avenue, 25th Floor
New York, New York 10022
Telephone: (212) 509-3900
Facsimile: (212) 509-7239

AARON M. WAIS (SBN 250671)
  amw@msk.com
GABRIELLA A. NOURAFCHAN (SBN 301594)
  gan@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, California 90067
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

GREENBERG TRAURIG, LLP
VINCENT H. CHIEFFO (SBN 49069)
Email: ChieffoV@gtlaw.com
ALANA C. SROUR (SBN 271905)
Email: SrourA@gtlaw.com
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
Telephone: 310-586-7700
Facsimile: 310-586-7800

Attorneys for Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| MARCUS GRAY, et al., | CASE NO. 2:15-cv-05642-CAS (JCx) |
| Plaintiffs, | Honorable Christina A. Snyder |
| v. | **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 1 RE: ARGUMENT THAT WOULD DISTORT THE LEGAL STANDARD** |
| KATHERYN ELIZABETH HUDSON, et al., | |
| Defendants. | Final Pretrial Conference<br>Date:    July 1, 2019<br>Time:    11:00 a.m.<br>Courtroom: 8D – 8th Fl., First Street |
| | Filed: July 1, 2014<br>Trial: July 16, 2019 |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Introduction

Plaintiffs' intentionally vague motion to preclude "argument by Defendants that would distort the legal standard for widespread dissemination" (Dkt. 333, p. 2) should be denied. Initially, the motion fails to comply with the requirement that it state with particularity any evidence sought to be excluded. And at its core, Plaintiffs' motion is designed to prevent proper scrutiny into what "widespread dissemination" means in the age of the Internet and streaming sites. Defendants are not distorting anything: they intend to demonstrate, and have every right to demonstrate, that there was no "reasonable possibility"—the key test underlying "widespread dissemination"—for the relevant "Dark Horse" authors to have heard "Joyful Noise" based on Plaintiffs' alleged Internet access evidence, or otherwise.

To the contrary, Plaintiffs are the ones seeking to distort matters, trying to avoid the full, fair and considered application of the legal concept of "reasonable possibility" measured against the real world facts of the distribution models and context of the Internet channels at issue. It is Plaintiffs who are seeking to confuse the Court and the jury, by wrongly contending, for example, that the concepts of "widespread dissemination" and a "reasonable possibility" to hear a song have the same bandwidth in the context of the Internet as they do in a brick and mortar record store. They do not.

Stated otherwise, Plaintiffs wish to be able to argue that their alleged numbers of streams on YouTube or Myspace are *ipse dixit* proof of "widespread dissemination" and thus a "reasonable possibility" to hear "Joyful Noise," while preventing Defendants from demonstrating why those numbers do not present such a "reasonable possibility" given how the streaming models actually work. That handicap effort must be rejected. Defendants intend to present, and have every right to present, *inter alia*, the barriers to entry to content on the Internet. Defendants intend to show that, if admitted, Plaintiffs' alleged number of streams

do not remotely satisfy the requirement of a "reasonable possibility" to hear a song in the world of streaming.[1] And Plaintiffs' claim that Defendants seek to force them to prove "direct access" is false and another attempt to conflate legal issues.

## II. The Motion Does Not Seek Appropriate Or Particularized Relief

Motions *in limine* are directed at the exclusion of *evidence*, yet Plaintiffs ask the Court to preclude Defendants from making *arguments*. Dkt. 333, Caption, pp. 2, 5. This is not the purpose of a motion *in limine*. *See Mims v. Fed. Express Corp.*, 2015 WL 12711651, at *6 (C.D. Cal. Jan. 1, 2015) ("A motion *in limine* permits a party … to make a *specific* objection to a *specific* piece of evidence."). Plaintiffs' motion is also hopelessly vague, and does not identify any specific evidence that it seeks to exclude. The motion is inappropriate for these reasons alone. Fed. R. Civ. P. 7(b)(1); *Colton Crane Co., LLC v. Terex Cranes Wilmington, Inc.*, 2010 WL 2035800, at *1 (C.D. Cal. May 19, 2010) ("must identify the evidence at issue and state with specificity why such evidence is inadmissible."); *Quinn v. Fresno Cnty. Sheriff*, 2012 WL 2995477, at *2 (E.D. Cal. July 23, 2012) (denying "impermissibly vague" motion *in limine* that "[did] not identify any particular evidence or witnesses that would be subject to exclusion").

## III. Plaintiffs' Motion Is Legally Baseless and an Improper Effort to Avoid Proper Scrutiny of Their Alleged Access Evidence

There is no dispute that Plaintiffs bear the burden of proving that Walter and Gottwald—the sole defendants responsible for creating the allegedly infringing instrumental music for "Dark Horse"[2]—copied "Joyful Noise" in creating their instrumental music. Plaintiffs must prove, *inter alia*, access—meaning that Walter or Gottwald had a reasonable opportunity to hear "Joyful Noise" before creating the instrumental music for "Dark Horse."

---

[1] Plaintiffs actually know that their access proof is deficient, given their eve of trial improper effort to introduce "striking similarity" into this case. As fully briefed in Defendants' Motion *in Limine* No. 2, Plaintiffs must be precluded from doing so.

[2] *See* Dkt. 287, p. 3, ¶ 11; Dkt. 299, pp. 3-4.

As Plaintiffs again concede, they have no direct evidence of Walter or Gottwald having heard "Joyful Noise" or circumstantial evidence that they heard it through a chain of events (*i.e.,* an intermediary).  Dkt. 333, p. 3.  Instead, as also confirmed by Plaintiffs' motion, Plaintiffs' sole theory of access is that "Joyful Noise" was allegedly "widely disseminated" such that a jury could infer that Walter or Gottwald had a reasonable opportunity to hear the song.  *Id*.

In *Loomis*, (a case Plaintiffs ignore) the Ninth Circuit summarized two types of "widespread dissemination" circumstances: (1) those where a song achieves "an appreciable level of *national* saturation," which centers on "the degree of a work's commercial success and on its distribution through radio, television, and other relevant mediums" and (2) those where there is "saturation in a relevant market in which both the plaintiff and the defendant participate." *Loomis v. Cornish*, 836 F.3d 991, 994-95, 997-98 (9th Cir. 2016) (emphasis added) (citing cases).  Again, however, the key tenet was expressed to be that the evidence of access must support a "*reasonable* possibility, not merely a bare possibility," that the defendant heard the work.  *Id.* at 995 (emphasis added); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482-84 (9th Cir. 2000) (reasonable opportunity requires more than "mere speculation or conjecture").

Plaintiffs' motion concedes that the key tenant of "widespread dissemination" is that there was a "reasonable possibility" for a chance to view the work.  Dkt. 333, p. 4.  But what Plaintiffs' motion is really designed to do is try to prevent a full and fair hearing as to what a "reasonable possibility" means, especially as it relates to the Internet.  Plaintiffs would have this Court and the jury wear blinders and avoid any examination into *how* a person obtains a "reasonable possibility" to observe, view, or hear music on the Internet.  Plaintiffs' improper effort to avoid the full application of this test and scrutiny into their evidence must be rejected.

The case law is clear that dissemination alone may not necessarily support

an inference that the defendant had a *reasonable* opportunity to hear a plaintiff's song. In *Loomis*, plaintiff attempted to prove access through evidence that the defendant songwriters were recording songs in Santa Barbara at the same time that the plaintiff's song was "receiving 'tons of airplay' on local radio stations." *Loomis*, 836 F.3d at 998. The Ninth Circuit rejected this evidence, concluding that the fact that the plaintiff's song had saturated the local Santa Barbara music scene was completely irrelevant because the defendant songwriters were not participating in the Santa Barbara music scene. *See id.*; *see also Guzman v. Hacienda Records & Rec. Studio, Inc.*, 2014 WL 6982331, at *5-6 (S.D. Tex. Dec. 9, 2014), *aff'd* 808 F.3d 1031 (5th Cir. 2015) (no reasonable possibility of access where song "did not achieve popularity outside of the Tejano music scene").[3]

Plaintiffs, however, ignore this precedent and contend that "a body of law" stands for the proposition that all that is relevant is whether "Joyful Noise" was "widely disseminated" and, if it was, Defendants may not present evidence or argument as to why this purported dissemination does not make it reasonably possible that Walter or Gottwald heard the song. Far from a "body of law," however, Plaintiffs solely rely on *Arnstein v. Porter*, 154 F.2d 464 (2d Cir. 1946) a Second Circuit decision from the 1940s. Even then, Plaintiffs misstate the reasoning and holding of *Arnstein*. Plaintiffs argue that, pre-Internet, proof of record sales was a common way to prove widespread dissemination and "[i]f the sales were high enough, that [alone] was sufficient proof of access." Dkt. 333, p. 4. Plaintiffs then wrongly contend that *Arnstein* held that the sale of 1 million

---

[3] This is true even in cases finding access. In *Three Boys Music Corp.*, for example, the Ninth Circuit upheld a jury's finding that it was reasonable for the jury to infer that the songwriters, Bolton and Goldmark, had heard plaintiff's song because it "was widely disseminated on radio and television stations where Bolton and Goldmark grew up" (212 F.3d at 483-84) (emphasis added) and Bolton also admitted that he "grew up listening to groups such as the Isley Brothers," was a "huge fan," a "collector of their music," "kn[ew] everything [the Isley Brothers had] done" (*id.*), and had even expressed concern to his co-writer that they "were copying a song by another famous soul singer." *Id.* at 484.

records proved access "regardless of whether the actual defendant bought an album or listened to the album." *Id*. Not so; the Second Circuit did not make any findings; instead, it simply concluded that the plaintiff's proof of sales *and* dissemination via radio raised a triable issue of fact as to access. *Arnstein*, 54 F.2d at 469-70. The Second Circuit did not preclude the defendants from thereafter presenting contrary evidence at trial or otherwise arguing why those sales did not give rise to a reasonable opportunity for defendant to have heard plaintiff's songs. Instead, the Court said that the jury should hear "*both* parties testify." *Id*. at 469.

In this regard, Plaintiffs also incorrectly claim that Defendants seek to require Plaintiffs to prove direct access of Walter or Gottwald actually hearing "Joyful Noise" to prevail. In reality, what Defendants plan to demonstrate is that Plaintiffs' evidence, if **admissible**, of dissemination is not widespread in the context of Internet accessibility (*e.g.*, website content is not accessible like record store content) such that it may not properly give rise to an inference of a "reasonable possibility" that Walter or Gottwald heard "Joyful Noise."

Plaintiffs' alleged evidence that "Joyful Noise" built up a certain number of views/plays on YouTube and Myspace to constitute "widespread dissemination" is not allowed to sit in a vacuum under the "reasonable possibility" test. Defendants must be allowed to present evidence of, *inter alia,* how users gain entry to content and interact with those websites (actively, not passively), Walter's and Gottwald's minimal or nonuse of those websites, their lack of knowledge of Plaintiffs and their music, the immense volume of content available on YouTube and the trillions of views that content receives each year, and the unreliability of the play/view counts of "Joyful Noise," to argue that the views/plays of "Joyful Noise" on YouTube and Myspace are not "widespread" but *de minimis* in content, and in all events fail to prove a *reasonable* possibility that Walter or Gottwald heard the song.

## CONCLUSION

Wherefore, the Court should deny Plaintiffs' Motion *in Limine* No. 1.

| | | |
|---|---|---|
| 1 | DATED: June 19, 2019 | MITCHELL SILBERBERG & KNUPP LLP |
| 2 | | |
| 3 | | By: /s/ Aaron M. Wais |
| | | Aaron M. Wais (SBN 250671) |
| 4 | | Attorneys for Defendants other than Katheryn Elizabeth Hudson, and Kitty Purry, Inc. |
| 5 | | |
| 6 | DATED: June 19, 2019 | GREENBERG TRAURIG, LLP |
| 7 | | |
| 8 | | By: /s/ Vincent H. Chieffo |
| | | Vincent H. Chieffo (SBN 49069) |
| 9 | | Attorneys for Defendants Katheryn Elizabeth Hudson p/k/a Katy Perry and Kitty Purry, Inc. |
| 10 | | |

## ATTESTATION REGARDING SIGNATURES

Pursuant to Local Civil Rule 5-4.3.4(a)(2)(i), I hereby attest that all Parties, on whose behalf this entire filing is jointly submitted, concur in this filing's content and have authorized its filing.

Dated: June 19, 2019          /s/ Aaron M. Wais
                              Aaron M. Wais