CHRISTINE LEPERA (admitted *pro hac vice*)
  ctl@msk.com
JEFFREY M. MOVIT (admitted *pro hac vice*)
  jmm@msk.com
JACOB D. ALBERTSON (admitted *pro hac vice*)
  j1a@msk.com
MITCHELL SILBERBERG & KNUPP LLP
437 Madison Avenue, 25th Floor
New York, New York 10022
Telephone: (212) 509-3900
Facsimile: (212) 509-7239

AARON M. WAIS (SBN 250671)
  amw@msk.com
GABRIELLA A. NOURAFCHAN (SBN 301594)
  gan@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, California 90067
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

GREENBERG TRAURIG, LLP
VINCENT H. CHIEFFO (SBN 49069)
Email: ChieffoV@gtlaw.com
ALANA C. SROUR (SBN 271905)
Email: SrourA@gtlaw.com
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
Telephone: 310-586-7700
Facsimile: 310-586-7800

Attorneys for Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| MARCUS GRAY, et al., | CASE NO. 2:15-cv-05642-CAS (JCx) |
| Plaintiffs, | Honorable Christina A. Snyder |
| v. | **DEFENDANTS' OPPOSITION TO PLAINTIFFS MOTION *IN LIMINE* NO. 2** |
| KATHERYN ELIZABETH HUDSON, et al., | |
| Defendants. | **REDACTED VERSION OF PROPOSED DOCUMENT TO BE FILED UNDER SEAL** |
| | Final Pretrial Conference<br>Date:  July 1, 2019<br>Time:  11:00 a.m.<br>Courtroom:  8D – 8th Fl., First Street |
| | Filed:  July 1, 2014<br>Trial:  July 16, 2019 |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Introduction[1]

Plaintiffs seek a substantial amount in so-called "actual damages" from Defendants. Plaintiffs' actual damages claim is premised upon their contention that, if the writers of "Dark Horse" had conducted an arms' length negotiation with the writers of "Joyful Noise" in advance of the release of "Dark Horse" for the right to use the allegedly infringed portion of the "Joyful Noise" composition, then the "Joyful Noise" writers would have obtained a license fee in the form of a fifteen percent (15%) share of royalties earned by the composition "Dark Horse." Plaintiffs further argue that a 15% share of the "Dark Horse" composition would have earned them ▮▮▮▮▮ in royalties.

However, Plaintiffs' argument that they could have obtained such a large licensing fee is refuted by, *inter alia*, the admissions of Plaintiff Chike Ojukwu ("Ojukwu") at his deposition. Ojukwu admitted that he previously **licensed the instrumental music (a.k.a. the "beat") which allegedly is used in "Joyful Noise" for less than $300**. Ojukwu's also admitted the most he has ever sold a beat for is $500, and that he offers licenses to other beats online for $20-$60.

In their Motion *in Limine*, Plaintiffs misguidedly argue that these admissions by Ojukwu are irrelevant to the determination of actual damages. Quite the

---

[1] Plaintiffs misleadingly state in their notice of motion that "Defendants did not respond to Plaintiffs request for a conference" regarding this motion. Dkt. 328, p. 2. This is false. First, the parties met and conferred **twice** in the weeks leading up to the motion deadline, on May 24, 2019 and June 6, 2019. Declaration of Aaron Wais, dated June 19, 2019 ("Wais Decl."), ¶ 2. On neither occasion did Plaintiffs identify the evidence addressed in their motion. *Id.*, ¶ 2. Instead, Plaintiffs sought to distract Defendants from filing their own motions *in limine* by waiting until the morning of the motion deadline, June 12, to ask to meet and confer. *Id.*, Ex. 1, pp. 4-5. As Defendants were in the process of filing their own motions, they did not have time to do so and frankly should not be ambushed like that. Indeed, the purpose of meeting and conferring is to provide the parties with an opportunity to resolve evidentiary disputes and "eliminate[] the necessity for a hearing." L.R. 7-3. This obviously cannot be accomplished on the day a filing is due. Nonetheless, Defendants responded by email that same day regarding the substance of Plaintiffs' motion. Wais Decl., Ex. 1, p. 4. The Court would be justified in denying Plaintiffs' motion for this reason alone.

contrary—they are the most on point, critical evidence for the determination of actual damages. This is because "actual damages" in the form of a hypothetical license "is established through objective evidence of benchmark transactions, such as **licenses previously negotiated for comparable use of the infringed work**, and **benchmark licenses for comparable uses of comparable works.**" *Raimondi v. Olenicoff*, 2015 WL 9703485, at *2 (C.D. Cal. July 7, 2015) (emphasis added).

Obviously, Plaintiffs would prefer that the jury not hear this evidence, because it severely undermines their claims for ▮ in actual damages. But Plaintiffs' fear of the truth does not make it inadmissible. As discussed below, the applicable legal standards in the Ninth Circuit mandate the admission of this highly probative evidence.

## II. Evidence Regarding Plaintiffs' Prior Licensing Of "Joyful Noise" And Other Works Is Not Merely Admissible, It Is Hugely Relevant

### A. The Evidence Plaintiffs Seek To Exclude

Plaintiffs' Motion *in Limine* seeks to exclude key evidence regarding: (1) "The amount which [Ojukwu], the creator of the [beat] for *Joyful Noise*, has received for the sale of other beats in the past"; (2) "The amount which [Ojukwu] received for the sale of the beat for *Joyful Noise* to [Plaintiff Marcus Gray ('Gray')]"; and (3) "Whether plaintiffs have licensed any of their music in the past[.]" Dkt. 328, p. 3.

The specific evidence relating to the above includes the following:

- Ojukwu's deposition testimony that he gave an exclusive license to Gray for the right to use the "Joyful Noise" beat and one other beat **for a total of $300**. Dkt. 351-1 (Ojukwu Depo. Tr.), pp. 159 l. 20-161 l. 19.
- Ojukwu's deposition testimony that he offers other beats for sale on a site called "Airbit.com" for $20-$60, and documentary evidence of the same. *Id.*, pp. 154 l. 13-21; 155 l. 9-156 l. 2; 157 l. 10-24; 158 l. 15-159 l. 6; 162 l. 9-22; & 164-166

- Ojukwu's deposition testimony that the **most** he ever sold a beat for was $500. *Id.* pp. 65:15-66:7.

Plaintiffs offered no other evidence of licensing of any of their works.

### B. Legal Standards Relating To "Actual Damages"

In the Ninth Circuit, "**actual damages**" is defined as "the loss in the fair market value of the copyright, as 'measured by the profits lost due to the infringement or the value of the use of the copyrighted work to the infringer.'" *Live Face on Web, LLC v. AZ Metroway, Inc.*, 2016 WL 4402796, at *4 (C.D. Cal. Aug. 15, 2016) (quoting *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004)). The measure of lost profits may be established through a "hypothetical lost license." *Polar Bear*, 384 F.3d at 709. An award of hypothetical license damages may not be based on "undue speculation." *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1088 (9th Cir. 2014).

Hypothetical licenses are calculated by the jury by considering "comparable use[s] of the infringed work, and benchmark licenses for comparable uses of comparable works." *Raimondi*, 2015 WL 9703485, at *2; *see also Oracle USA, Inc. v. SAP AG*, 2011 WL 3862074, at *7 (N.D. Cal. Sept. 1, 2011) ("An objective, non-speculative license price is established through objective evidence of benchmark transactions, such as licenses previously negotiated for comparable use of the infringed work, and benchmark licenses for comparable uses of comparable works."), *aff'd in part, vacated in part*, 765 F.3d 1081 (9th Cir. 2014); *Dash v. Mayweather*, 731 F.3d 303, 319 (4th Cir. 2013) ("evidence of a copyright holder's own prior sale or licensing of copyrighted work can support the existence of actual damages under § 504(b)").[2]

---

[2] Plaintiffs cite a portion of the *Polar Bear* decision to suggest, misleadingly, that only "the value of the use of the copyrighted work to the infringer" is relevant to "actual damages," and the amounts received by a plaintiff for prior licensing "is not relevant." Dkt. 328, p. 4. But the court in *Polar Bear* said no such thing. To the contrary, it explained that a jury may "consider **either** a hypothetical lost

(…continued)

4

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MIL NO. 2

### C. The Financial Terms of Ojukwu's Prior License Agreements Are Critically Relevant To "Actual Damages"

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Here, evidence of the dollar amounts which Ojukuwu earned from transactions in which he licensed the "Joyful Noise" beat and other beats is highly probative of the amount which Plaintiffs could have negotiated in a hypothetical transaction with the "Dark Horse" writers. It clearly "has a tendency to make [the appropriate amount of 'actual damages,' if any] more or less probable than it would be without the evidence" and is "of consequence in determining the action." *Id.* *See also, e.g.*, *Raimondi*, 2015 WL 9703485, at *2 (evidence of the plaintiffs' **prior sales prices for the works at issue** relevant to award of actual damages).

While Plaintiffs' expert Dr. Michael Einhorn ignored this critical evidence in rendering his inflated actual damages calculation,[3] this evidence was duly considered by Defendants' expert Dr. Jason King ("King") in his own expert rebuttal report. King, who has extensive experience with licensing negotiations, opines in his rebuttal report that "the licensing history of 'Joyful Noise' and similar works by the Plaintiffs indicates that the [license] fee would be quite low" in a hypothetical negotiation with the "Dark Horse" writers. After reviewing the evidence that Ojukwu sold an exclusive license to the "Joyful Noise" beat (along with a second beat) for $300, and that he sells licenses to beats he purportedly created on a site called "Airbit.com" for $19.99 to $59.99, King explains:

---

(…continued) license fee **or** the value of the infringing use to the infringer to determine actual damages." *Polar Bear Prods., Inc.*, 384 F.3d at 709 (emphasis added).

[3] Defendants moved to exclude Einhorn's opinion under *Daubert* based on deficiencies including, but not limited to, his failure to consider this evidence.

Mitchell Silberberg & Knupp LLP

11156012.1

5

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MIL NO. 2**

> In light of all of the above, it is clear that the reasonable outcome of a hypothetical negotiation would have been a small flat fee. Based on my experience, and consideration of the above factors, a price of not more than $5,000 would be a reasonable result of such negotiations (though the price could have been far lower). I believe that the Plaintiffs would likely have accepted this amount, particularly since it is so much higher than the amount for which the "Joyful Noise" beat was previously licensed.

Wais Decl. Ex. 2 (King Rebuttal Report), p. 16. Plaintiffs' arguments regarding the purported irrelevance of Ojukwu's prior licensing transactions do not bear the slightest scrutiny, and they must be rejected.

    Finally, although Plaintiffs summarily assert that the probative value of this evidence is substantially outweighed by a danger of unfair prejudice, confusion of the issues, and misleading the jury, they make no attempt to show why. Dkt. 328, p. 4. Indeed, there is no risk of any of these harms, let alone enough to "substantially outweigh" the highly probative nature of the evidence. The fact that this evidence is bad for Plaintiffs does not make it unduly prejudicial. *United States v. Adams*, 238 F.3d 431 (9th Cir. 2000) ("'Unfair prejudice' in the context of Rule 403 'means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" (quoting Fed. R. Evid. 403, Adv. Comm. Note)).

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion *in Limine* should be denied.

| | | |
|---|---|---|
| 1 | DATED: June 19, 2019 | MITCHELL SILBERBERG & KNUPP LLP |
| 2 | | |
| 3 | | By: /s/ Aaron M. Wais |
| | | Aaron M. Wais (SBN 250671) |
| 4 | | Attorneys for Defendants other than Katheryn Elizabeth Hudson, and Kitty Purry, Inc. |
| 5 | | |
| 6 | DATED: June 19, 2019 | GREENBERG TRAURIG, LLP |
| 7 | | |
| 8 | | By: /s/ Vincent H. Chieffo |
| | | Vincent H. Chieffo (SBN 49069) |
| 9 | | Attorneys for Defendants Katheryn Elizabeth Hudson p/k/a Katy Perry and Kitty Purry, Inc. |
| 10 | | |

## ATTESTATION REGARDING SIGNATURES

Pursuant to Local Civil Rule 5-4.3.4(a)(2)(i), I hereby attest that all Parties, on whose behalf this entire filing is jointly submitted, concur in this filing's content and have authorized its filing.

Dated: June 19, 2019    /s/ Aaron M. Wais
                        Aaron M. Wais