Michael A. Kahn (pro hac vice)
Kahn@capessokol.com
Lauren R. Cohen (pro hac vice)
lcohen@capessokol.com
CAPES SOKOL
7701 Forsyth Blvd. 12th Floor
St. Louis, MO 63015
(314) 721-7701

Eric. F. Kayira (pro hac vice)
eric.kayira@kayiralaw.com
KAYIRA LAW, LLC
200 S. Hanley Road, Suite 208
Clayton, Missouri 63105
(314) 899-9381

Daniel R. Blakey (SBN 143748)
blakey@capessokol.com
CAPES SOKOL
3601 Oak Avenue
Manhattan Beach, CA 90266

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

MARCUS GRAY, et al.,

        Plaintiffs,

    v.

KATHERYN ELIZABETH
HUDSON, et al.,

        Defendants.

CASE NO. 2:15-cv-05642-CAS (JCx )

Honorable Christina A. Snyder

**PLAINTIFFS' CONSOLIDATED
RESPONSE TO DEFENDANTS'
MOTIONS *IN LIMINE* 1-11**

Final Pretrial Conference
Date: July 1, 2019
Time: 11 a.m.
Courtroom: 8D

Trial: July 16, 2019

# <u>TABLE OF CONTENTS</u>

*Page*

Table of Contents ...................................................................i

Table of Authorities.............................................................v

I. Plaintiffs' Opposition to Defendants' Motion *in Limine* No. 1 to Exclude Evidence Related to Violation of Plaintiff's Moral Rights [Doc. 337] ......................................................................1

II. Plaintiffs' Opposition to Defendants' Motion *in Limine* No. 2 to Preclude Evidence or Argument of Striking Similarity [Doc. 338]..........2

III. Plaintiffs' Opposition to Defendants' Motion *in Limine* No. 3 [Doc.339] to Exclude Evidence and Argument Regarding Lack of Evidence of Sales.................................................................4

   A. Plaintiffs intend to present circumstantial evidence of sales........5

   B. Plaintiffs are permitted to explain lack of evidence regarding number of sales of "Joyful Noise" and *Our World Redeemed* .....6

IV. Plaintiffs' Opposition to Defendants' Motion *in Limine* No. 4 to Exclude Evidence Regarding Live Performances of Joyful Noise [Doc. 340] ...................................................................6

   A. Evidence that "Joyful Noise" was performed in concerts across the United States is relevant, as it demonstrates the song's widespread dissemination.................................6

   B. Foundation can be established for all evidence of concert performances, and this Court should allow Plaintiffs the

i

opportunity to do so ....................................................................8

V. Plaintiffs' Opposition to Defendants' Motion *in Limine* No. 5 to
   Exclude Evidence of Playing Joyful Noise During Radio and TV
   Interviews [Doc. 341] ............................................................9

    A.  Evidence that "Joyful Noise" was played during radio and
       television interviews across the United States is relevant, as it
       demonstrates the song's widespread dissemination......................9

    B.  Foundation can be properly laid for all evidence of interviews
       where "Joyful Noise" was played, and this Court should allow
       Plaintiffs the opportunity to do so ................................................10

    C.  Evidence of radio and television interviews includes no
       hearsay ...........................................................................................11

VI. Plaintiffs' Opposition to Motion *in Limine* No. 6 to Exclude Evidence
    of Critical Acclaim for Joyful Noise [Doc. 342]....................................11

VII. Plaintiffs' Opposition to Motion *in Limine* No. 7 to Exclude
     Evidence or Argument Regarding Myspace Plays [Doc. 343] .............13

    A.  Internet Archive screenshots of Marcus Gray's and Lecrae
       Moore's respective Myspace pages and "play" counts for
       "Joyful Noise" do not lack foundation .........................................13

        i.  Plaintiffs can authenticate the Myspace pages and
           availability of "Joyful Noise" thereon .................................14

        ii. Accuracy of the "play" count goes to the weight of the
           evidence ..............................................................................14

ii

B.  The truth of the content captured in the Internet Archive screenshots is admissible and will be supplied by non-hearsay evidence ..................................................................................15

C.  The "play" counts are not speculative and should not be excluded; Defendants' arguments to the contrary are unsupported ...............................................................................16

VIII. Plaintiffs' Opposition to Motion *in Limine* No. 8 to Exclude YouTube Screenshot [Doc. 344] ...........................................................16

A.  The YouTube website screenshots were timely produced ..........16

B.  The YouTube website screenshot will be properly authenticated ...............................................................................18

i. The Court may take judicial notice of the screenshots ............18

ii. Plaintiffs will authenticate the screenshots through affidavit and live testimony in the event that the Court does not take judicial notice of the screenshots ....................19

IX. Plaintiffs' Opposition to Defendants' Motion *in Limine* No. 9 to Exclude Billoard Evidence [Doc. 345]...................................................20

A.  This Court Previously Determined that Billboard Evidence is Relevant .............................................................................20

B.  Defendants' attempt to preclude argument related to sales, as evidenced by the appearance of the song/album on Billboard Charts, is nonsensical, because Billboard testified unequivocally that the methodology for charting is based

iii

upon sales ................................................................................22

   C.  Summary charts provided by Billboard are admissible and

      not hearsay ..........................................................................24

X. Plaintiffs' Opposition to Defendants' Motion *in Limine* No. 10 to

Exclude Evidence or Argument Regarding Access Through the 51st

Grammy Awards Show [Doc. 346] ............................................26

   A.  Plaintiffs establish access because there is a sufficient

      nexus between the GRAMMYs and Defendant Gottwald .........26

   B.  Plaintiffs establish access, in part, because "Joyful Noise"

      received critical acclaim, including a GRAMMY

      nomination for *Our World Redeemed* .......................................28

   C.  Plaintiffs do not intend to offer evidence that Perry

      performed "I Kissed a Girl" ad the GRAMMY or that

      Gottwald and Sandberg co-wrote "I Kissed a Girl." ................29

XI. Plaintiffs' Opposition to Defendants' Motion *in Limine* No. 11 to

Exclude Evidence Related to Defendants' Financial Condition [Doc.

347] ...........................................................................................29

iv

1

# <u>TABLE OF AUTHORITIES</u>

2

3

**Page(s)**

4

**Cases**

5

6

*Abu-Lughod v. Calis,*
    2015 WL 12746198 (C.D. Cal. May 20, 2015)...............................................20

7

8

*Art Attacks Ink, LLC v. MGA Entm't Inc.,*
    581 F.3d 1138 (9th Cir. 2009) ...............................................................6, 28

9

10

*Brayton Purcell LLP v. Recordon & Recordon,*
    606 F.3d 1124 (9th Cir. 2010) ....................................................................1

11

*Brighton Collectibles, Inc. v. Coldwater Creek Inc.,*
    2010 WL 3718859 (S.D. Cal. Sept. 20, 2010) .............................................1

12

13

*Dzinesquare, Inc. v. Armano Luxury Alloys, Inc.,*
    2014 WL 12597154 (C.D. Cal. Dec. 22, 2014)..........................................18

14

15

*Erickson v. Nebraska Mach. Co.,*
    2015 WL 4089849 (N.D. Cal. July 6, 2015) ..............................................18

16

17

*Gable v. Nat'l Broad. Co.,*
    2010 WL 2990977 (C.D.Cal. Feb. 22, 2010) .............................................27

18

19

*Hangarter v. Provident Life and Acc. Ins. Co.,*
    373 F. 3d 998 (9th Cir. 2004) ......................................................................2

20

*Kamar Int'l, Inc. v. Russ Berrie & Co.,*
    657 F.2d 1059 (9th Cir. 1981) ...................................................................26

21

22

*L.A. Printex Indus., Inc. v. Aeropostale, Inc.,*
    676 F.3d 841 (9th Cir. 2012) .................................................................7, 21

23

24

*Liberal v. Estrada,*
    No. C 07-0024 ...........................................................................................2

25

26

*Loomis v. Cornish,*
    836 F.3d 991 (9th Cir. 2016) ...................................................7, 12, 21, 22

27

28

*Marten Transp., Ltd. v. Plattform Advert., Inc.,*
    No. 14-2464-JWL, 2016 WL 1718862 (D. Kan. Apr. 29, 2016)................19

v

*Meta-Film Assocs., Inc. v. MCA, Inc.*,
   586 F. Supp. 1346 (C.D. Cal. 1984) .................................................................. 27

*Mims v. Fed. Express Corp.*,
   CV 13-03947-AB, 2015 WL 12711651 (C.D. Cal. Jan. 15, 2015) ..................... 2

*Mukhtar v. Cal. State Univ., Hayward*,
   299 F. 3d 1053 (9th Cir 2002) (abrogated on other grounds) ............................ 3

*O'Toole v. Northrop Grumman Corp.*,
   499 F.3d 1218 (10th Cir. 2007) ....................................................................... 19

*Pond Guy, Inc. v. Aquascape Designs, Inc.*,
   No. 13-13229, 2014 WL 2863871 (E.D. Mich. June 24, 2014) ....................... 18

*Shenzhenshi Haitiecheng Sci. & Tech. Co. v. Rearden LLC*,
   2016 WL 11187258 (N.D. Cal. Nov. 15, 2016) ............................................... 17

*Stabile v. Paul Smith Ltd.*,
   137 F. Supp. 3d 1173 (C.D. Cal. 2015) ........................................................... 20

*Straighter v. Raymond*,
   2011 WL 13176750*3 (C. D. Cal. Nov. 21, 2011) ............................... 21, 22, 23

*Telewizja Polska USA, Inc. v. Echostar Satellite*,
   2004 WL 2367740 (N.D. Ill. Oct. 15, 2004) ................................................... 20

*Three Boys Music Corp. v. Bolton*,
   212 F.3d 477 (9th Cir. 2000) .............................................................. 26, 27, 28

*U.S. v. Weitzenhoff*,
   35 F. 3d 1275 (9th Cir. 1993) ............................................................................ 3

*Under A Foot Plant, Co. v. Exterior Design, Inc.*,
   2015 WL 1401697 (D. Or. Mar. 24, 2015) ..................................................... 19

**Statutes**

17 U.S.C. § 504(b) ................................................................................................ 30

**Other Authorities**

Fed.R.Evid. 201 ............................................................................................. 18, 19

FED. R. EVID. 401 ............................................................................................ 7, 12

vi

FED. R. EVID. 403 ................................................................................ 5

FED. R. EVID. 801 .............................................................................. 11

FED. R. EVID. 801(a)-(c) .................................................................... 14

Fed. R. Evid. 803(6)(B) ..................................................................... 20

Fed. R. Evid. 807 ........................................................................ 15, 20

Fed. R. Evid. 901 ............................................................................... 20

FED. R. EVID. 901(b)(1) ..................................................................... 14

*Authenticating Digital Evidence*, 69 Baylor L. Rev. 1, 37–38 (2017) .................... 18

Local Rule 56-3 .................................................................. 8, 10, 13, 22

Plaintiffs submit this consolidated response to Defendants' Motions *in Limine* 1-11.[1]

## I.      Plaintiffs' Opposition to Defendants' Motion *in Limine* No. 1 to Exclude Evidence Related to Violation of Plaintiffs' Moral Rights [Doc. 337]

In their first motion *in limine,* Defendants seek to preclude Plaintiffs from introducing evidence or argument regarding "moral rights" or purported harm to their reputations caused by Defendants' infringement.  Plaintiffs do not intend to assert a "moral rights" theory at trial.  However, Plaintiffs must be permitted to offer evidence of the reputational damage they suffered as part of their lost profits claim.  Indeed, it is well-established that Plaintiffs may recover for the reputational harm they suffered as a component of the lost profits associated with Defendants' infringement.  *Brighton Collectibles, Inc. v. Coldwater Creek Inc.,* 2010 WL 3718859, at *6 (S.D. Cal. Sept. 20, 2010) ("Harm to business reputation and goodwill can be foreseeable damages of copyright infringement" and are compensable as actual damages); *see also Brayton Purcell LLP v. Recordon & Recordon,* 606 F.3d 1124, 1131 (9th Cir. 2010).

Moreover, the evidentiary ruling sought by Defendants – precluding Plaintiffs from introducing evidence or argument regarding "moral rights" or harm to their reputations – is hopelessly vague and provides little to no guidance as to the specific evidence Defendants seek to exclude.   Because Defendants' motion *in limine* lacks the necessary specificity with respect to the evidence to be excluded, the Court should reserve judgment on the motion until trial when admission of

---

[1] As a result of the Court's Order [Doc. 352] bifurcating the case into separate phases for liability and damages, the issues raised in Defendants' Motions *in Limine* No. 1 will only need to be ruled upon in the event the parties proceed to the damages phase. Likewise, Plaintiffs separately filed an opposition to Defendants' Motion to Preclude Testimony by Plaintiffs' Expert Dr. Einhorn [Doc. 351]. A ruling on such motion also can be deferred until just before the second phase of trial.

1

1   certain evidence is in an appropriate factual context.  *See Mims v. Fed. Express*
2   *Corp.*, CV 13-03947-AB (SSX), 2015 WL 12711651, at *1 (C.D. Cal. Jan. 15,
3   2015), citing *Liberal v. Estrada*, No. C 07-0024 SBA, 2011 WL 3956068, at *5
4   (motions *in limine* will not lie to exclude broad categories of evidence).  "Unless
5   the motion identifies specific evidence it seeks to exclude and the specific reasons
6   to exclude it, the court would be forced to "rule in a vacuum" on the admissibility
7   of evidence" and "if granted, such amorphous motions would "leav[e] the court
8   and the parties to guess what [evidence] during trial may be included within the
9   scope of the ruling." *Id.* (internal citations omitted)*.*

10      Here, an evidentiary ruling on the issue will depend on the particular content
11  and context of the evidence and argument.  A blanket exclusion of such evidence
12  or argument *in limine* would be premature.  Therefore, the vague nature of
13  Defendants' motion mandates its denial.

14  **II.      Plaintiffs' Opposition to Defendants' Motion *in Limine* No. 2 to**
15  **Preclude Evidence or Argument of Striking Similarity [Doc. 338]**

16      Defendants argue that Plaintiffs should be precluded from introducing any
17  evidence or argument regarding the striking similarity of the songs at issue.  In
18  making this argument, Defendants claim: "Dr. Decker[,] [Plaintiffs' expert
19  musicologist,] did not provide any opinion of striking similarity in either of his
20  expert reports, or at his deposition." Doc. 338, p. 2.  Defendants improperly exalt
21  form over substance and ignore the essence of Dr. Decker's testimony.

22      Defendants inappropriately focus on Dr. Decker's use of the term
23  "substantial similarity" in an attempt to ignore the substance of his testimony.  This
24  focus is inappropriate.  "Substantial similarity" and "striking similarity" are legal
25  terms of art.  Dr. Decker is a musicologist, not a lawyer.  The role of an expert is to
26  provide an opinion based upon his/her own professional expertise, not to make an
27  interpretation of law.  *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F. 3d

28

2

998, 1016 (9th Cir. 2004) (*citing Mukhtar v. Cal. State Univ., Hayward*, 299 F. 3d
1053, 1066 n. 10 (9th Cir 2002) ("[A]n expert witness cannot give an opinion as to
her legal conclusion, i.e., an opinion on an ultimate issue of law.") (abrogated on
other grounds)).  Similarly, "instructing the jury as to the applicable law is the
distinct and exclusive province of the court." *Id.* (*citing U.S. v. Weitzenhoff*, 35 F.
3d 1275, 1287 (9th Cir. 1993) (internal citations omitted)).  No doubt, if Dr.
Decker had, as part of his opinion, concluded that the works in question here are in
fact substantially/strikingly similar in a legal sense, Defendants would have moved
to disqualify such opinion on the ground that Dr. Decker must stay in his lane.

Notably, Dr. Decker's sworn response when asked the meaning of his use of
the term "substantial similarity," makes clear that he ascribed to the term <u>no</u> legal
meaning:

Q:    What does that mean substantially similar when you use it in your report?
A:    It means that there's musical material that can be isolated: Pitches, repetition
      of patterns, formal struc – the – the formal roll of ostinato, the eight-note
      ostinato.  Those are the things – those are the elements, the musical elements
      between these two tracks that are substantially similar.  And given –
      certainly I think given the copyright dates of the two tracks, the release dates
      of the two tracks, *there's an implicit argument there for musical
      borrowing…*
Q:    So you don't know whether when you're using the term substantially similar
      it tracks with the legal definition or not, you don't know one way or the
      other?
A:    No. No.

*See* Declaration of Lauren R. Cohen ("Cohen Decl."), attached hereto as
Attachment 1, Ex. B, Decker Dep. p. 104, L 21 – 105 L 17 (emphasis added).

Having given no meaning to the legal definition of "substantial similarity,"
Dr. Decker's testimony is not limited to establishing substantial similarity, as
Defendants improperly suggest.

Likewise, Plaintiffs are not precluded from arguing that Dr. Decker's
opinion supports a finding of striking similarity, because the essence of his opinion

3

1   supports such a finding.  Striking similarity requires "a similarity between the

2   plaintiff's work and the defendant's work that is so 'striking' that it is highly likely

3   the works were not created independent of one another."  Ninth Cir. Manual of

4   Model Civ. Jury Inst. §17.18 ("Copyright Infringement – Copying"), Supplement.

5   Dr. Decker made clear in his report produced in April 2017 and at his deposition in

6   January 2018 that he believes the works are so similar that there is an inference of

7   copying, or what he calls "musical borrowing."  Decker Report, attached to Wais

8   Decl. (Doc. 338-1, Ex. 1, p. 2) ("The similarities between the tracks' underlying

9   musical material and the clear chronological relationship between the two (with

10  "Joyful Noise" widely released in 2008 and "Dark Horse" released in 2013)

11  suggests significant borrowing of musical material from "Joyful Noise" by the

12  creators of "Dark Horse."). Cohen Decl. Ex. B, Decker Dep. 104, L 21 – 105 L 12.

13  Plaintiffs do not intend to offer an "undisclosed, late opinion" by Dr. Decker, or a

14  "new" or "sham" argument, as Defendants allege.  As such, Defendants should not

15  be permitted to preclude Plaintiffs from making argument properly supported by

16  the evidence.

**III.   Plaintiffs' Opposition to Defendants' Motion *in Limine* No. 3 [Doc. 339]
to Exclude Evidence and Argument Regarding Lack of Evidence of
Sales**

20          Plaintiffs are unclear as to what Defendants truly seek to limit in their

21  Motion *in Limine* No. 3. (Doc. 339).  The Motion itself is entitled "Motion *in*

22  *Limine* No. 3 to Exclude Evidence and Argument Regarding Lack of Evidence of

23  Sales." However, on page 2 of the Motion, Defendants appear to seek the exact

24  opposite result: "[Defendants] move for an order excluding argument and

25  testimony of sales of 'Joyful Noise' and [its album,] *Our World*

26  *Redeemed*."  Adding to the mystery, in their Memorandum, Defendants appear to

27  confine their argument to precluding solely the testimony of Plaintiff Marcus Gray

28

4

1   concerning sales—and not anyone else. (Doc. 339, pp. 5-7). In any event,

2   Defendants' Motion should be denied.

3       A. <u>Plaintiffs intend to present circumstantial evidence of sales</u>

4           Defendants argue that, in opposition to their Motion for Summary Judgment

5   filed in Summer 2018, Plaintiffs, on July 16, 2018, did not dispute that they, at that

6   time, had no evidence of sales of "Joyful Noise" or *Our World Redeemed*. (Doc.

7   339, p. 4). According to Defendants, "[s]ince summary judgment, Plaintiffs have

8   not obtained any evidence of sales. Indeed the evidentiary record remains the same

9   as it was on summary judgment." (Doc. 339, p. 5). This is simply untrue. Fact

10  discovery continued following the filing of Defendants' Motion for Summary

11  Judgment and the Court's subsequent Order denying the same. (Doc. 299). Indeed,

12  this Court's schedule expressly permitted further fact discovery of certain

13  individuals and entities (including, among others, Billboard and Crystal Gray) (*See*

14  Doc. 322).

15          As a result of that discovery, Plaintiffs intend to present evidence, testimony

16  and argument relating to the sales of "Joyful Noise" and *Our World*

17  *Redeemed*. For example, a representative from Billboard will testify about, among

18  other things, "Joyful Noise" and *Our World Reedeemed's* Billboard rankings and

19  that Billboard's charting systems ranks songs and albums based upon their relative

20  number of sales. Further, Crystal Gray may testify concerning sales of "Joyful

21  Noise" and *Our World Redeemed*. Defendants were present at the deposition of

22  Billboard and cross-examined the witness. Defendants, though well aware of Ms.

23  Gray for years, chose not to depose her.

24          Defendants argue that "[Marcus] Gray's testimony about sales would lack

25  foundation, not be based upon personal knowledge and would be hearsay." (Doc.

26  339, pp. 5-7). Defendants also argue that Gray's testimony on sales would be

27  "[p]rejudicial" under Rule 403. (Doc. 339, pp. 5-7). Though Plaintiffs disagree

28

1  with Defendants' evidentiary arguments, Marcus Gray will not testify as to the

2  specific number of sales of "Joyful Noise" and *Our World Redeemed* at trial.

3      B. Plaintiffs are permitted to explain lack of evidence regarding number of

4          sales of "Joyful Noise" and *Our World Redeemed.*

5      It is true that Plaintiffs do not have evidence of the *exact* number of sales of

6  "Joyful Noise" and *Our World Redeemed*. To the extent Defendants argue that

7  Plaintiff has no evidence regarding any sales of "Joyful Noise" or *Our World*

8  *Redeemed*, Plaintiffs have every intention of rebutting said testimony and argument

9  through testimony that Plaintiff Gray's former record label refused to account for

10 said sales.  This testimony is relevant, rebuttal evidence. Defendants cannot

11 highlight Plaintiffs' inability to come forward with specific sales numbers, while at

12 the same time seek to preclude Plaintiffs from explaining to the jury why they were

13 unable to do so.  In short, Plaintiffs should be entitled to establish that the absence

14 of sales records does not mean an absence of sales.

15 **IV.  Plaintiffs' Opposition to Defendants' Motion *in Limine* No. 4 to**

16 **Exclude Evidence Regarding Live Performances of "Joyful Noise"**

17 **[Doc. 340]**

18      A. Evidence that "Joyful Noise" was performed in concerts across the

19          United States is relevant, as it demonstrates the song's widespread

20          dissemination

21      "Proof of infringement involves fact-based showings that the defendant had

22 'access' to the plaintiff's work…*Where there is no direct evidence of access*,

23 circumstantial evidence can be used to prove access … [by] showing that the

24 plaintiff's work has been widely disseminated." *Art Attacks Ink, LLC v. MGA*

25 *Entm't Inc.,* 581 F.3d 1138, 1143 (9th Cir. 2009) (internal citations omitted)

26 (emphasis added). There is no rigid rubric for what evidence is relevant to this

27 inquiry; rather, "[t]he evidence required to show widespread dissemination will

28

1    vary from case to case." *L.A. Printex Indus., Inc. v. Aeropostale, Inc.,* 676 F.3d

2    841, 847 (9th Cir. 2012). This evidence may include "the degree of a work's

3    commercial success and … its distribution through radio, television, and other

4    relevant mediums." *Loomis v. Cornish,* 836 F.3d 991, 997 (9th Cir. 2016).

5          Evidence that "Joyful Noise" was performed at concerts throughout the

6    nation will demonstrate the song's distribution through this channel.  As such, this

7    evidence is relevant to access.  While the sufficiency of this evidence to establish

8    access is a question for the jury, it passes the lenient federal test for relevance. FED.

9    R. EVID. 401.

10         Defendants argue that details of these concerts are made irrelevant because

11   no evidence establishes Defendants Walter or Gottwald attended the performances.

12   Widespread dissemination is an alternative to direct access. *Loomis*, 836 F.3d at

13   997. The Defendants' argument improperly distorts the legal standard for

14   widespread dissemination.[2]  Plaintiffs are not required to prove that Defendants

15   attended their concerts, as this would require proof of direct access.  Defendants

16   acknowledge that "[w]idespread dissemination is markedly different from 'proof

17   that defendant actually viewed, read, or heard the work at issue…'" (Doc. 340, p.

18   5). Notably, the standard centers on the objective reach of a protected work, not on

19   conduct of an alleged infringer. The purpose of widespread dissemination as an

20   alternative to direct access is thwarted if Defendants can control the relevance of

21   concert performances by claiming they had no *direct access* to the concerts.

22         Moreover, contrary to Defendants' assertion, Plaintiffs do dispute for the

23   purpose of trial whether Walter and Gottwald were present at the concerts at issue.

24   This was "undisputed" for the purpose of summary judgment, as Plaintiffs were

25   not in possession of evidence that controverted this alleged "fact," as required by

26   _____
     [2] Plaintiffs directly address this issue in their Motions to Exclude Testimony by
27   Defendants' Disclosed Experts Martin [Doc. 336] and Rosenblatt [Doc. 335].
     Plaintiffs incorporate arguments previously made on this topic, as if fully stated
28   herein.

1    Local Rule 56-3. Although Plaintiffs do not have direct evidence that Defendants

2    attended their concert, they also do not have direct evidence that they did not.

3    More importantly, Plaintiffs need not prove Defendants attended a concert in order

4    to prove widespread dissemination.

5         Contrary to Defendants' assertion, Defendants will not be unfairly

6    prejudiced by relevant evidence of a song's distribution.  Distribution of "Joyful

7    Noise" via concert performances tends to prove the extent of the song's

8    dissemination all over the country.  At trial, Defendants may argue that this

9    evidence does not prove access and the jury will weigh the totality of the evidence.

10        B. Foundation can be established for all evidence of concert performances,

11           and this Court should allow Plaintiffs the opportunity to do so.

12        Defendants next argue that evidence of concert performances of "Joyful

13   Noise" lack of foundation. Namely, they assert that two documents which provide

14   certain details of concert performances are inadmissible, because the documents do

15   not specifically identify "Joyful Noise" as being performed at the listed concerts.

16   (Kahn Decl. ¶¶ 3, 4). Further, Defendants note that Marcus Gray could not provide

17   concert details or authenticate the documents; rather, he testified that these

18   documents were typically sent to his wife and manager, Crystal Gray, who is more

19   familiar with concert bookings. (Doc. 340, p. 7, FN 5).

20        Despite Defendants' challenges, Marcus and Crystal Gray are able to lay an

21   appropriate foundation regarding evidence of "Joyful Noise" played at concerts.

22   Specifically:

23        • First, Marcus Gray will testify, as a matter of personal knowledge, at

24           which concerts "Joyful Noise" was played.

25        • Second, as Marcus Gray testified, his wife and manager, Crystal Gray,

26           was "the filter and liaison between our booking department" and has

27

28

1   greater knowledge of the two documents, venues, and booking details.
2   (Cohen Decl. Ex. A, Gray Dep., 112:1-113:5).

3   • Third, Crystal Gray has personal knowledge regarding details of the
4   "[p]erformances, marketing and use of Plaintiffs' song, 'Joyful
5   Noise'". (Cohen Decl. Ex. D, Initial Disclosures). She was, in fact,
6   responsible for playing music at concerts, including the music bed
7   track for "Joyful Noise." (Cohen Decl. Ex. A, Gray Dep., 110:21-
8   111:18).

9   Defendants chose not to depose Crystal Gray, the primary witness who will
10  lay foundation for the documents regarding concert performances, despite (a) her
11  inclusion in initial disclosures as a witness with knowledge and (b) Marcus Gray's
12  subsequent testimony that she had the most knowledge on these topics—they had
13  three years to do so.

14  Moreover, a ruling on this evidence is not necessary at this stage. At trial,
15  both parties will be required to lay proper foundation for evidence they seek to
16  admit. The Defendants' motion does not demonstrate that it would be *impossible* to
17  lay proper foundation. Rather, the Defendants guess at the content and form of
18  possible trial testimony, speculate as to Plaintiffs' ability to lay foundation, and ask
19  this Court to prohibit testimony on an entire topic without hearing the foundation
20  first.  Plaintiffs would be prejudiced by a premature ruling on this issue without an
21  appropriate opportunity to establish foundation at trial.

22  **V.     Plaintiffs' Opposition to Defendants' Motion *in Limine* No. 5 to**
23  **Exclude Evidence of Playing of "Joyful Noise" During Radio and TV**
24  **Interviews [Doc. 341]**

25      A. Evidence that "Joyful Noise" was played during radio and television
26         interviews is relevant, as it demonstrates the song's widespread
27         dissemination

28

9

1    Plaintiffs hereby incorporate by reference their argument from Plaintiffs'

2    Opposition to Motion *in Limine* No. 4 (*see* Section IV above), as it relates to

3    relevance.  Like concert performances, evidence of radio and television interviews

4    where "Joyful Noise" was played establishes the work's distribution through these

5    mediums. Whether the evidence is sufficient to prove access through widespread

6    dissemination is a question for the jury, but Plaintiffs are not required to prove

7    Defendants had direct access (e.g. actually heard the interviews).

8    Moreover, Plaintiffs dispute for the purpose of trial whether Walter or

9    Gottwald viewed or heard the interviews at issue. This point was "undisputed" for

10   the purpose of summary judgment, as Plaintiffs were not in possession of evidence

11   that controverted this alleged "fact," as required by Local Rule 56-3. While

12   Plaintiffs do not have direct evidence that Defendants have viewed these

13   interviews, they also do not have direct evidence that they have not.  More

14   importantly, Plaintiffs need not prove Defendants listened to these interviews to

15   prove widespread dissemination.

16   Finally, Defendants will not be unfairly prejudiced by this relevant evidence

17   of the song's distribution. Distribution of "Joyful Noise" via radio and television

18   interviews tends to prove access through the song's dissemination. At trial,

19   Defendants may call this evidence into question and argue what weight should be

20   given by the jury.

21   B. Foundation can be properly laid for all evidence of interviews where

22   "Joyful Noise" was played, and this Court should allow Plaintiffs the

23   opportunity to do so.

24   Defendants claim this evidence lacks foundation, because Plaintiffs have not

25   produced copies of the interviews and did not offer certain details of these

26   interviews at the summary judgment stage.

27

28

1    Defendants' foundation challenges ignore that witnesses will lay foundation

2  for these interviews at trial. As Defendants acknowledged, Plaintiffs intend to call

3  Marcus Gray and Crystal Gray who will offer testimony on this subject. Marcus

4  Gray was the subject of these interviews, and Crystal Gray, his wife and manager,

5  has knowledge regarding details of "[p]erformances, marketing and use of

6  Plaintiffs' song, 'Joyful Noise.'" (Cohen Decl. Ex. D, Initial Disclosures). These

7  witnesses will testify based on personal knowledge. Defendants have not and

8  cannot state that Plaintiffs cannot lay a proper foundation. They chose not to

9  inquire into this topic—failing to raise the issue with Marcus Gray at his deposition

10  and failing to ever depose Crystal Gray, despite having three years to do so.

11    Moreover, a ruling on this evidence is not necessary at this stage.

12  Defendants' motion does not demonstrate that it would be *impossible* to lay proper

13  foundation. Rather, the Defendants guess at the content and form of possible

14  testimony, speculate whether Plaintiffs can lay foundation, and ask this Court to

15  prohibit testimony on an entire topic without hearing the testimony first.  It would

16  be far more appropriate to rule on such testimony when offered.

17    C. Evidence of radio and television interviews includes no hearsay.

18     Finally, testimony regarding whether "Joyful Noise" was played during

19  these interviews simply is not hearsay. Only "statements" can be hearsay—a

20  "statement" is made by a person's assertion or conduct, "[i]f the person intended it

21  as an assertion." Fed. R. Evid. 801. "Joyful Noise" played in the background of

22  interviews—it was not an assertion; it was an observable occurrence. This

23  testimony is no different than observing the weather or that a traffic light was red.

24  It is not a statement offered for the truth of the matter asserted.  Accordingly, this

25  argument fails.

26  **VI.   Plaintiffs' Opposition to Motion *in Limine* No. 6 to Exclude Evidence of**

27  **Critical Acclaim for "Joyful Noise" [Doc. 342]**

28

1    Plaintiffs hereby incorporate by reference their argument from Plaintiffs'

2    Opposition to Motion *in Limine* No. 4 (Doc. 340), as it relates to relevance. Like

3    concert performances of "Joyful Noise," evidence of critical acclaim and Billboard

4    charting of "Joyful Noise" in the Christian music genre will establish the scale of

5    distribution, popularity, and success of "Joyful Noise." Defendants recognize that

6    "[t]he evidence is arguably relevant to proving that 'Joyful Noise' reached a

7    sufficient level of saturation in the Christian music world to constitute widespread

8    dissemination in that niche market." (Doc. 342, p. 5).  Moreover, this Court has

9    already recognized the relevance of this evidence. (MSJ Order, Doc. 299, p. 8).

10   Defendants merely argue that *Christian* critical acclaim and *Christian* music

11   charting is less convincing evidence than the same in a different genre. While the

12   sufficiency of this evidence to support a reasonable possibility of Defendants'

13   access is a question for the jury, it passes the lenient test for relevance. FED. R.

14   EVID. 401.

15      Moreover, this evidence is not made irrelevant simply because Defendants

16   claim they do not participate in the Christian music market or listen to Christian

17   music.  Defendants' reliance on *Loomis* in support of their relevance argument is

18   misdirected.  This Court found at summary judgment that Defendants' analogy to

19   *Loomis*—an argument rehashed here—was "unhelpful in guiding the instant case"

20   because "[t]he song…in *Loomis* appears to have never gained much popularity

21   outside a brief spate of airplay in Santa Barbara." (MSJ Order, Doc. 299, p. 7, FN

22   4).  Defendants' attempt to artificially limit Defendants' opportunity to access the

23   song by narrowing in on the genre in which the song most closely aligns, based

24   upon the Defendants' own testimony alone, is disingenuous in a day and age where

25   music can be heard anywhere at any time.  Moreover, "Joyful Noise" was

26   disseminated through secular mediums, making the acclaimed song discoverable to

27   all. This Court has further noted that "[t]he distinctiveness of the Christian music

28

12

1   market…[is a] question[ ] of fact to be resolved by the jury." *Id*. at p. 8. In short,

2   Defendants' argument relates to the weight of the evidence, not its relevance.

3        Further, contrary to Defendants' assertion, Plaintiffs do dispute for the

4   purpose of trial whether Walter or Gottwald have ever listened to or searched for

5   music in the Christian genre.  Whether Defendants listen to Christian music was

6   "undisputed" for the purpose of summary judgment, as Plaintiffs were not in

7   possession of direct evidence that controverted this alleged "fact," as required by

8   Local Rule 56-3. While there is no direct evidence that Defendants listen to

9   Christian music as a matter of practice, there is also no evidence that they have

10  never done so.  In any event, as set forth above, any music, regardless of genre, can

11  be heard anywhere at any time in the digital age, such that Defendants' argument

12  on this topic is disingenuous.  Defendants will not be unfairly prejudiced by

13  evidence that "Joyful Noise" achieved success and acclaim. Ultimately, any

14  argument on this topic should go to the weight of the evidence, not its

15  admissibility.

16  **VII.   Plaintiffs' Opposition to Motion *in Limine* No. 7 to Exclude Evidence or**

17          **Argument Regarding Myspace Plays [Doc. 343]**

18       A. Internet Archive screenshots of Marcus Gray's and Lecrae Moore's

19          respective Myspace pages and "play" counts for "Joyful Noise" do not

20          lack foundation.

21       As a preliminary matter, Defendants do not challenge the accuracy of the

22  Internet Archive screenshots. Rather, they argue Plaintiffs cannot lay proper

23  foundation for or authenticate the "contents" of the screenshots, including (a)

24  whether the pictured pages belonged to Marcus Gray or Lecrae Moore, (b) whether

25  the "Joyful Noise" audio file pictured in the screen shots was the song at issue in

26  this case and was available to listen to, or (c) whether the "play" count accurately

27  represents the number of times the audio file was listened to.

28

i.   *Plaintiffs can authenticate the Myspace pages and availability of "Joyful Noise" thereon*

As Defendants' motion acknowledges, Gray and Moore could testify that they uploaded "Joyful Noise" to their page and that it was available. (Doc. 343, p. 5). Defendants argue that, because they do not expect Moore to testify at trial, there is no possible way Plaintiffs could demonstrate that "Joyful Noise" was available on Moore's Myspace page. (Doc. 343, p. 5, FN2). They claim, without providing any rationale, that testimony from anyone other than Moore about the page or the song's availability thereon would be hearsay and lack personal knowledge. To the contrary, anyone familiar with how the page looked could identify it. Anyone who has "clicked on" the pictured audio file knows whether "Joyful Noise" played as a result. Witness testimony based on knowledge is enough to authenticate evidence. FED. R. EVID. 901(b)(1). Further, such testimony would not be hearsay. Only "statements" can be hearsay—a "statement" is made by a declarant's assertion or conduct, "[i]f the person intended it as an assertion." FED. R. EVID. 801(a)-(c). The existence of a web page or availability of a song on the Internet is obviously not an assertion, nor is there any declarant. It is a matter of objective observation.

As Defendants acknowledge, Marcus Gray can lay the foundation with respect to his page and the song's availability thereon. (Doc. 343., p. 5). They erroneously argue that it would be impossible to lay foundation with respect to Moore's page. Defendants try to predict counsels' ability to lay foundation and ask this Court to prohibit testimony on this entire topic without an opportunity to lay the foundation. It would be premature to rule on the admissibility of such evidence without first providing Plaintiffs an opportunity to lay a foundation.

ii.   *Accuracy of the "play" count goes to the weight of the evidence.*

14

1    Defendants argue that neither Gray nor Moore can testify that the song was

2 actually "played" the number of times pictured in the screenshots, as each lacks

3 personal knowledge of the same.

4    First, Plaintiffs would state that the screenshots speak for themselves.

5 Defendants do not contest the accuracy of the screenshots. (Doc. 343, pp. 5, 6).

6 These screenshots contain a "play" count for each song on the captured pages.

7 Second, the parties are working out stipulated facts related to Myspace and this

8 issue, including how "plays" are counted and the meaning of what a "play"

9 represents. The Defendants may argue, as will be stipulated, that the "play" count

10 is an approximation that does not mean the entire song was listened to or reflect

11 unique persons who played the song. This does not make the evidence

12 inadmissible; it simply goes to its weight.

13    B.  <u>The truth of the content captured in the Internet Archive screenshots is</u>

14       <u>admissible and will be supplied by non-hearsay evidence.</u>

15    Defendants do not contest that the screenshots are accurate—e.g. that an

16 audio file titled "Joyful Noise" appeared on the captured pages and that "play"

17 counts appeared on the pages. Nor do Defendants object to admission of the

18 screenshots themselves on hearsay grounds. (Doc. 343, p. 6). Defendants argue,

19 instead, that a second layer of hearsay exists—that the screenshots cannot be used

20 to prove the underlying truth of the page contents as pictured (e.g. that "Joyful

21 Noise" actually played upon clicking the audio file or that the "play" count was an

22 accurate representation of how many times the song was clicked on).

23    The Internet Archive screenshots are admissible to prove the truth of

24 their contents under Fed. R. Evid. 807, the residual exception to the hearsay rule.

25 Further, as stated above, the underlying truth of the screenshots' contents will also

26 be established by witnesses with personal knowledge and a stipulation between the

27 parties, not by relying on the screenshots to prove the truth of the matter asserted.

28

C. The "play" counts are not speculative and should not be excluded; Defendants' arguments to the contrary are unsupported.

This evidence is far from speculative. Plaintiffs will present "play" count as a finite number, contextualized by a stipulation explaining what a "play" means, and will be established by screenshots and other foundational testimony, as discussed above. This evidence tends to prove the work's dissemination. The parties are working out a stipulation that addresses the fact that "play" count is an approximation that does not mean the entire song was listened to or reflect unique persons who played the song.  Accordingly, Defendants are expected to attempt to undermine the legitimacy of the play count.[3]  As such, Defendants' concern goes to the weight of the evidence, not its admissibility.  A jury is well-equipped to weigh the value of this evidence at trial, particularly where both parties will have extensive opportunity to frame its importance.

## VIII.  Plaintiffs' Opposition to Motion *in Limine* No. 8 to Exclude YouTube Screenshot [Doc. 344]

A. The YouTube website screenshots were timely produced

In Defendants' Motion *in Limine* No. 8 [Doc. 344], they argue at length, for over four pages, that Plaintiffs "did not produce the screenshot at issue until June 11, 2019, over a year *after* the close of discovery." [Doc. 344, p. 4] (emphasis in original). This is simply not true. Plaintiffs produced the screenshots at issue on May 13, 2016, more than three (3) years prior to the filing of Defendants' Motion *in Limine* No. 8 and long before the close of discovery.  They were produced with Doc. 344-1, Ex. 9, pp. 119-22. Defendants further misstate that the May 2016 screenshots produced are "outside the relevant date range." In fact, three of the four match up to the exact dates in the parties' Joint YouTube Stipulation (Doc. 344-1, Ex. 8, p. 111), namely:  November 4, 2010 (Doc. 344-1, Ex. 9, p. 122;

---

[3] Plaintiff seeks to exclude Defendants' disclosed experts Martin and Rosenblatt from offering testimony on this topic at trial [Doc. 335, 336].

P000052); July 26, 2011 (Doc. 344-1, Ex. 9, p. 121; P000051); March 11, 2012 (Doc. 344-1, Ex. 9, p. 120; P000050). The screenshots produced relate to the Official Music Video for "Joyful Noise" posted on YouTube (the "Official Video Screenshots"). (Ex. 9, pp. 119-22; P000049-P000052). Moreover, the dates of the screenshots are irrelevant as to whether they may be used at trial.

Contrary to Defendants' unsupported claim, Plaintiffs have done nothing to prevent Defendants from conducting any discovery in relation to the Official Video Screenshots or the Official YouTube Video itself. Defendants have known of the video for over three years, but have done nothing to pursue such discovery. Having known of the Official Video Screenshots for years, Defendants cannot show that they have been prejudiced by an alleged "untimely" production of screenshots. *Shenzhenshi Haitiecheng Sci. & Tech. Co. v. Rearden LLC*, 2016 WL 11187258, at *1 (N.D. Cal. Nov. 15, 2016), relied upon by Defendants, is inapposite. In that case the plaintiff failed to produce documents. There is no dispute that, here, the Plaintiffs did produce documents related to the Official YouTube Video. Here, both parties were technically aware of the existence of the real Official YouTube Video, but both were also operating under the mistaken impression that the Official YouTube Video was also included in the YouTube Stipulation.

Somehow the parties, both the Plaintiffs and the Defendants, mistook "Video 5" for the Official Music Video for "Joyful Noise" posted on YouTube. The exact genesis of this mutual mistake is not quite clear, but it appears that both Plaintiffs and Defendants proceeded through discovery under the same misapprehension with respect to the Official YouTube Video. Bill Rosenblatt, Defendants' purported YouTube expert, mistakenly calls Video 5 the "Official" video in paragraph 31 of his report:

> The fifth video is an official video. It was uploaded on January 21, 2011. This is the only one of the five videos that contains actual video content – mostly of the artists in live performance. This video had a view count of 293,956

17

1  views as of March 11, 2012 (Plaintiffs' Statement of Facts
2  39).

3  (Doc. 335-1, Page ID#:3939). Despite Rosenblatt's citation to Plaintiffs'
4  Statement of Facts ¶39, nowhere therein do the Plaintiffs call that YouTube video
5  the "official" video.[4] (See Doc. 298 at pp. 14-15, "The video bates labeled
6  GOOGFLAME00000010.mp4 had the following view count totals as of the
7  following dates: November 4, 2010 (0 views); March 16, 2011 (31,224 views);
8  July 26, 2011 (119,662 views); and March 11, 2012 (293,956 views).")

9  B. The YouTube website screenshot will be properly authenticated

10  i.    The Court may take judicial notice of the screenshots

11  "Archived versions of websites as displayed on the 'Wayback Machine'
12  (www.archive.org) are frequently the subject of judicial notice…" Hon. Paul W.
13  Grimm et. al., *Authenticating Digital Evidence*, 69 Baylor L. Rev. 1, 37–38 (2017).
14  Under Fed.R.Evid. 201 this Court can, even in the absence of an authenticating
15  affidavit, take judicial notice of the Internet Archive's Wayback Machine
16  screenshots. *Dzinesquare, Inc. v. Armano Luxury Alloys, Inc.,* 2014 WL 12597154,
17  at *3 (C.D. Cal. Dec. 22, 2014) (court took judicial notice under Rule 201within
18  summary judgment proceedings of two exhibits based upon an affidavit provided
19  by the Internet Archive regarding Wayback Machine's archived versions of
20  historical webpages); *Erickson v. Nebraska Mach. Co.*, 2015 WL 4089849, at *1
21  n.1 (N.D. Cal. July 6, 2015) ("Courts have taken judicial notice of the contents of
22  web pages available through the Wayback Machine as facts that can be accurately
23  and readily determined from sources whose accuracy cannot reasonably be
24  questioned, see Fed. R. Evid. 201."); *Pond Guy, Inc. v. Aquascape Designs, Inc.,*
25

26  ---
[4] Video 5 is not labeled as an official video on YouTube, but the video is a
27  reproduction of the "Joyful Noise" Official YouTube Video apparently posted by
someone other than Cross Movement Records, the Plaintiffs music label at the
28  time. (Doc. 344-1, Ex. 9, pp. 119-22; P000049-P000052).

18

No. 13-13229, 2014 WL 2863871, at *4 (E.D. Mich. June 24, 2014) ("[T]he Internet Archive has been found to be an acceptable source for the taking of judicial notice")(taking *sua sponte* judicial notice of key website evidence relating to the parties' historical internet presence.); *Marten Transp., Ltd. v. Plattform Advert., Inc.*, No. 14-2464-JWL, 2016 WL 1718862, at *2–4 (D. Kan. Apr. 29, 2016) (allowing authentication of Wayback Machine screenshot via affidavit of Internet Archive employee and taking judicial notice of information retrieved from the Internet Archive); *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1224-25 (10th Cir. 2007) (holding district court abused its discretion in refusing to take judicial notice of information from the Internet Archive under Rule 201); *Under A Foot Plant, Co. v. Exterior Design, Inc.*, 2015 WL 1401697, at *2 (D. Or. Mar. 24, 2015) ("District courts have routinely taken judicial notice of content from The Internet Archive pursuant to this rule.").

      ii.    *Plaintiffs will authenticate the screenshots through affidavit and live testimony in the event that the Court does not take judicial notice of the screenshots*

Plaintiffs can and will properly authenticate at trial both the Internet Archive screenshots, and the underlying YouTube video, through an appropriate authenticating affidavit, judicial notice and live testimony. Immediately upon discovery of the misapprehension with respect to the Official YouTube Video, counsel for Plaintiffs advised Defendants' counsel of the mutual mistake that the parties had been operating under and requested that the real Official YouTube Video be added to the parties' stipulation with respect to YouTube videos. (Kahn Decl. ¶ 5) (Doc. 344-1, Ex. 9). When the Defendants indicated that they would not stipulate with respect to the Official YouTube Video, Plaintiff immediately took action to obtain authentication of the YouTube screenshots depicted in 000049-

1   P000052. (Kahn Decl. ¶ 6). That authenticating affidavit will be used at trial to

2   authenticate those screenshots.

3        Defendants' claim of double hearsay is without merit. Once authenticated

4   with the affidavit from the Internet Archive, the Wayback Machine screenshots are

5   excepted from the hearsay rule as business records under Fed. R. Evid. 803(6)(B).

6   *Abu-Lughod v. Calis*, 2015 WL 12746198, at \*3 (C.D. Cal. May 20, 2015). The

7   Wayback Machine's affidavit also satisfies the Fed. R. Evid. 901 requirement for

8   admissibility. *Stabile v. Paul Smith Ltd*., 137 F. Supp. 3d 1173, 1178 n.5 (C.D. Cal.

9   2015).

10        As to the second layer of hearsay, "to the extent these [Wayback Machine

11   screenshot] images and text are being introduced to show the images and text

12   found on the websites, they are not statements at all—and thus fall outside of the

13   ambit of the hearsay rule." *Id*. at \*5, quoting *Telewizja Polska USA, Inc. v.*

14   *Echostar Satellite*, 2004 WL 2367740, at \*5 (N.D. Ill. Oct. 15, 2004). To the extent

15   offered for the truth of the matter asserted, the Wayback Machine screenshots are

16   admissible under Fed. R. Evid. 807, the residual exception to the hearsay rule.[5]

17        Plaintiffs will offer the testimony of one or more of the Plaintiffs sufficient

18   to establish the authenticity of the Official YouTube Video.[6] Plaintiffs were present

19   during and involved in the filming and production of the video. Plaintiffs thereby

20   have sufficient personal knowledge of it to authenticate it and lay a proper

21   foundation for its admission into evidence at trial and can testify that the video

22   depicts what it purports to show and that is in fact the Official YouTube Video.

23   **IX.**     **Plaintiffs' Opposition to Defendants' Motion *in Limine* No. 9 to**

24          **Exclude Billboard Evidence [Doc. 345]**

25     A. <u>This court previously determined that billboard evidence is relevant</u>

26  

---

27   [5] The contents of these webpages is also the subject of a stipulation that the parties are in the process of finalizing relating to YouTube "views" and "view counts."

28   [6] http://www.youtube.com/watch?v=MllhC0qyEjY

1   Defendants seek to preclude Plaintiffs from offering evidence that

2   "Joyful Noise" and the album on which it was published, *Our World Redeemed*,

3   appeared on charts of Billboard – an eponymous, nationally recognized authority

4   tabulating relative song popularity since 1940. *See* Excerpt from the Deposition of

5   Billboard Corporate Representative, attached hereto as (Cohen Decl. Ex. C,

6   Pietroluongo Dep. p. 7, L 15 - p. 8 L 10). In an attempt to preclude the jury from

7   hearing such persuasive evidence, Defendants argue that it is not relevant because:

8   (1) it "does not tend to prove an appreciable level of national saturation;" and (2)

9   "it is undisputed that neither Walter nor Gottwald participated in that market." *See*

10   Defendants' Motion, (Doc. 345) p. 5.

11   First, Defendants' relevance argument was flatly rejected by the Court at the

12   summary judgment phase, where the Court determined that evidence of "Joyful

13   Noise" and *Our World Redeemed* on Billboard charts must go to the jury because it

14   is "relevant and not prejudicial." *See* Doc. 299 FN. 2. Accordingly, such

15   argument can and should be disposed of here. Moreover, this Court previously has

16   held that evidence of publication on a Billboard chart not only is relevant to

17   widespread dissemination, but affirmatively evidences widespread dissemination.

18   *See Straighter v. Raymond*, 2011 WL 13176750*3 (C. D. Cal. Nov. 21, 2011)

19   (taking judicial notice of song's appearance on Billboard charts).

20   Second, Defendants' suggestion that Plaintiffs must prove "national

21   saturation" to establish widespread dissemination is a misstatement of the law and

22   a mischaracterization of *Loomis v. Cornish*, 836 F. 3d 991, 995 (9th Cir. 2016), the

23   case they cite for that proposition. "The evidence required to show widespread

24   dissemination will vary from case to case." *L.A. Printex Indus., Inc. v.

25   Aeropostale, Inc.*, 676 F. 3d 841, 846-47 (9th Cir. 2012). Although Plaintiffs do

26   believe the evidence tends to show "Joyful Noise" rose to the level of national

27   saturation and, certainly, experienced widespread commercial success, the term

28

"national saturation" has not been well-defined in *Loomis* or elsewhere and is not a required element of widespread dissemination, in any event.

Last, the Court's prior ruling on the admissibility of Billboard evidence should not be called into question by Defendants' argument that it is irrelevant because "it is undisputed that neither Walter nor Gottwald participated in [the Christian or Gospel] market." *Id.*, p. 5. Defendants' argument mischaracterizes Plaintiffs' position and should be disregarded. [Whether Defendants' participation in Christian or Gospel was "undisputed" for purposes of summary judgment is based solely upon the specific requirements of Local Rule 56-3.] Of course, Plaintiff does in fact dispute whether Defendants listened to Christian and/or Gospel music, because they believe that Defendants heard "Joyful Noise" and copied it. Although Plaintiffs do not have direct evidence of access, they do not need it. The evidence tends to show that "Joyful Noise" was widely disseminated such that there is a reasonable possibility that they had the opportunity to hear the song. Defendants' attempt to artificially limit Defendants' opportunity to access the song by narrowing in on the genre in which the song most closely aligns, based on Defendants' own testimony alone, is disingenuous in a day and age where any music can be heard anywhere at any time. The Court should not disturb its prior finding of relevance based upon Defendants' veiled attempt.

B. Defendants' attempt to preclude argument related to sales, as evidenced by the appearance of the song/album on Billboard Charts, is nonsensical, because Billboard testified unequivocally that the methodology for charting is based upon sales

In response to Plaintiffs' subpoena, Billboard produced a document ("Billboard Summary Document") containing information derived from Billboard's database that reflect the appearance of "Joyful Noise" and *Our World Redeemed* on Billboard Charts during the relevant time period ("Summary

22

Charts"). *See* Doc. 345-1, Wais Decl., Ex. 1.  Where possible, Billboard produced a copy of the actual Chart on which the song and/or album appeared ("Chart Copies").  Plaintiff deposed a corporate representative of Billboard, Silvio Pietroluongo ("Billboard"), who testified extensively as to the foundation, authenticity and reliability of the Summary Document, including the Chart Copies and the Summary Charts.  Defendants do not seek to preclude the admission of the Chart Copies themselves.  Rather, Defendants argue Plaintiffs should be precluded from: (1) arguing that the appearance of "Joyful Noise" and *Our World Redeemed* on Billboard Charts evidences sales of the song and album; and (2) introducing as evidence the Summary Charts.

Plaintiffs concede that that the Billboard Charts do not establish definitively how many albums or singles were sold.  However, the following testimony establishes unequivocally that Billboard's charting system ranks songs and albums based upon their relative number of sales:

- The Top Christian Albums Chart, on which *Our World Redeemed* appeared for two weeks in 2008, ranks albums based upon physical and digital album sales.  *Id.*, p. 24.

- The Top Gospel Albums Chart, on which *Our World Redeemed* appeared for thirty-five weeks in 2008 and 2009, ranks albums based upon physical and digital album sales.  *Id.*, p. 28.

- The Gospel Digital Songs Sales Chart, on which "Joyful Noise" appeared for twenty-nine weeks in 2011 and 2012, ranks songs based upon sold digital downloads.  *Id.*, p. 34.

Accordingly, Defendants' argument that the appearance of "Joyful Noise" and *Our World Redeemed* does not establish sales is illogical.  Plaintiffs need not establish sales in order to prove widespread dissemination.  Again, evidence of publication on a Billboard chart, alone, establishes widespread dissemination.  *See Straighter*, 2011 WL at *3 (C. D. Cal. Nov. 21, 2011).  Minimally, Plaintiffs can

23

1  put on evidence of Billboard's methodology in ranking songs/albums and should

2  be permitted to argue, based upon unequivocal Billboard testimony, that "Joyful

3  Noise" and *Our World Redeemed* experienced commercial success through sales.

4  The Billboard Charts are not hearsay, nor is the testimony of Billboard itself

5  regarding its methodology.

6       In a last plea, Defendants argue that the Billboard Charts are misleading and

7  unfairly prejudicial.  The fact is that Defendants do not want the jury to know that

8  "Joyful Noise" appeared on Billboard Charts – not because they will be confused,

9  but because they will understand too well the extent to which "Joyful Noise" was

10 widely disseminated and had substantial commercial success.  If Defendants truly

11 believe the information reflected in the Billboard Charts is unreliable, it goes to the

12 weight of the evidence.  Certainly, they can attempt to argue to the jury that an

13 organization that has been ranking music according to sales data for eighty years

14 cannot be trusted.

15      C.  Summary charts provided by billboard are admissible and not hearsay

16      Defendants argue that the Summary Charts created and produced by

17 Billboard in response to a subpoena and authenticated at the Billboard deposition

18 should be excluded on the ground of hearsay.  This objection fails.  The Summary

19 Charts, contained within the Summary Document, were prepared and produced by

20 a subpoenaed party.  At deposition, Billboard authenticated the Summary

21 Document and all of the content contained therein, including the Summary Charts,

22 by walking through all of the steps undertaken to prepare the Summary Document,

23 which establishes the reliability of the information and the procedure by which the

24 Summary Document was prepared.  (Cohen Decl. Ex. C, Pietroluongo Dep., p. 14

25 L 6 – p. 22, L 25).

26      Specifically, the Billboard corporate representative confirmed that the

27 Summary Document was produced in response to a request for all information

28

regarding the charts on which "Joyful Noise" and *Our World Redeemed* appeared during the relevant period.  (Cohen Decl. Ex. C, Pietroluongo Dep., p. 15 L 5 – p. 16, L 2).  The Billboard corporate representative testified that he and his department personally prepare the underlying charts and then input the data contained within the charts into the Billboard internal database.  (Cohen Decl. Ex. C, Pietroluongo Dep., p. 20, L 19 - p. 21, L 11).  The Billboard corporate representative testified that he personally researched the title "Joyful Noise" and *Our World Redeemed* in the Billboard internal database and pulled the charts on which the song and album appeared on a week-by-week basis.  (Cohen Decl. Ex. C, Pietroluongo Dep., p. 16 L 4 – p. 17 L 10).  Next, he directed his team members to "transpose" the information related to the song/album's appearance on each chart into the Summary Document.  (Cohen Decl. Ex. C, Pietroluongo Dep., p. 16 L 16-21).  When specifically asked "why…Billboard prepared a summary report rather than producing the actual charts themselves," Billboard testified that "it's easier to digest a week by week summary than to just find it on the chart if we just provided images, and not every week of those charts had a printed chart that accompanied it."  (Cohen Decl. Ex. A, Gray Dep., p. 18, L 13-25).  In other words, not only was the Summary Document containing the Summary Charts methodically and reliably prepared in a form easy to digest, but "in some cases, it simply wasn't possible to produce a chart" such that the information could not be produced in any other form.  (Cohen Decl. Ex. A, Gray Dep., p. 18 L 22-25).  Billboard confirmed that all of the data and information that was reviewed and summarized into the Summary Document, including the Summary Charts, was kept by Billboard in the ordinary course of its business.  (Cohen Decl. Ex. A, Gray Dep. p. 20, L2-9).  He also testified that after the Summary Document was prepared, he reviewed it and confirmed that it was accurate.  (Cohen Decl. Ex. A, Gray Dep., p. 22, L 17-25).  Defendants' motion should be denied.

X.      **Plaintiffs' Opposition to Defendants' Motion *in Limine* No. 10 to Exclude Evidence or Argument Regarding Access Through the 51st Grammy Awards Show [Doc. 346]**

Defendants move to exclude testimony or reference to their access to "Joyful Noise" through the 51st Annual GRAMMY Awards ("GRAMMYs") on the grounds that it is "irrelevant" and "unduly prejudicial."  To the contrary, evidence related to the GRAMMYs is relevant to Plaintiffs' theory of access for two reasons.  *First*, the GRAMMYs served as a third-party intermediary linking Plaintiffs and Defendants.  Indeed, the jury may impute access where there is evidence that a third party (the GRAMMYs) with whom both Plaintiffs and Defendants were dealing, concurrently, had possession of "Joyful Noise."  ***Second***, that Plaintiffs' album *Our World Redeemed*, which included a recording of "Joyful Noise," was nominated for a GRAMMY Award is compelling evidence of widespread dissemination.  Notably, this Court has already found that Plaintiffs "demonstrated a triable issue of fact as to access because "Joyful Noise" achieved critical success, including a GRAMMY nomination…"  Order Denying Defendants' Motion for Summary Judgment, August 13, 2018 [Doc. 299].

A. Plaintiffs establish access because there is a sufficient nexus between the GRAMMYs and Defendant Gottwald.

Courts in this Circuit have repeatedly held that where there is a sufficient nexus between a third-party intermediary and the infringer, and where there is evidence that the third party dealing with the plaintiff and the defendant has possession of the work, the factfinder may infer not just a "bare" possibility, but a "reasonable" possibility of access.  *See Kamar Int'l, Inc. v. Russ Berrie & Co.,* 657 F.2d 1059, 1062 (9th Cir. 1981) ("evidence that a third party with whom both the plaintiff and defendant were dealing had possession of plaintiff's work is sufficient to establish access by the defendant.");  *Three Boys Music Corp. v. Bolton*, 212

F.3d 477, 482 (9th Cir. 2000) (access may be inferred if "a particular chain of events is established between the plaintiff's work and the defendant's access to that work (such as through dealings with a publisher or record company)"; *Gable v. Nat'l Broad. Co.*, 2010 WL 2990977, at *9 (C.D.Cal. Feb. 22, 2010) (to establish access, a plaintiff may "show that he submitted his work to an intermediary who is in a position to transmit the plaintiff's work to the creators of the infringing work.").

To permit an inference of access, "the dealings between the plaintiff and the intermediary and between the intermediary and the alleged copier must involve some overlap in subject matter." *Meta-Film Assocs., Inc. v. MCA, Inc.,* 586 F. Supp. 1346, 1358 (C.D. Cal. 1984). Plaintiffs must show a sufficient nexus between "the individual who possesses knowledge of a plaintiff's work and the creator of the allegedly infringing work." *Id.* at 1357. Here, Gottwald was a voting member of the GRAMMYs during the same year when Plaintiffs' album *Our World Redeemed,* which included the song "Joyful Noise" was nominated for a GRAMMY award. Accordingly, the GRAMMYs serve as an intermediary who had possession of "Joyful Noise," with whom both Plaintiffs and Defendants were dealing concurrently, sufficient for the jury to infer access.

Defendants argue that "Joyful Noise" could not have been heard by GRAMMY voters, including Gottwald, based on the content of the GRAMMY streaming website. *See* Doc. 346, pp. 5-6. Defendants attempt to defend against Plaintiffs' indirect evidence of access (via the GRAMMYs as an intermediary) by claiming that Gottwald did not *actually* listen to the song. But all that is needed for the jury to infer access is a relationship that links Plaintiffs, the intermediary and the GRAMMYs, therefore providing Defendants with the chance to listen to "Joyful Noise" – not evidence that they availed themselves of the opportunity. *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000) (whether a

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

defendant actually viewed or copied the work is not relevant to the specific inquiry of whether it had the opportunity to do so).   Accordingly, the evidence Defendants seek to exclude is highly probative of an essential element of Plaintiffs' claim and, therefore, must be admitted.[7]

      B.  Plaintiffs establish access, in part, because "Joyful Noise" received critical acclaim, including a GRAMMY nomination for *Our World Redeemed.*

In addition to proving access via intermediary, Plaintiffs intend to offer evidence that "Joyful Noise" was widely disseminated such that it is reasonably possible that Defendants had the chance to hear it.  Circumstantial evidence can be used to prove access either by (1) a particular chain of events between the plaintiffs' work and the defendants' access to that work (such as through dealings with the GRAMMYs) or (2) showing that the plaintiffs' work has been widely disseminated. *Three Boys Music Corp.,* 212 F.3d at 482.  Evidence that "Joyful Noise" was part of a GRAMMY-nominated album shows that it received significant critical acclaim such that, taken with Plaintiffs' other evidence, the jury could find a reasonable possibility that Defendants had a chance to view it. *See Art Arracks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1143 (9th Cir. 2009). Indeed, this Court already found the critical success of "Joyful Noise," including the GRAMMY nomination, significant to the issue of widespread dissemination at the summary judgment phase.  Order Denying Defendants' Motion for Summary Judgment, August 13, 2018 [Doc. 299].

---

[7] Oddly, Defendants claim that Plaintiffs "abandoned" the intermediary theory of access.  Not so.  Although Plaintiffs have repeatedly stated that they, like most copyright plaintiffs, do not have direct evidence that Defendants *actually* observed their work, they have never committed to refrain from presenting indirect evidence of access (through an intermediary, or otherwise) at trial.

C. Plaintiffs do not intend to offer evidence that Perry performed "I Kissed a Girl" at the GRAMMYs or that Gottwald and Sandberg co-wrote "I Kissed a Girl."

At trial, Plaintiffs intend to prove that Defendants had access to "Joyful Noise" which is substantially and/or strikingly similar to Defendants' later record, "Dark Horse." Plaintiffs do not intend, and have never indicated that they intend, to try this case by proving that Katy Perry attended or performed at the GRAMMYs or that Gottwald and Sandberg wrote "I Kissed a Girl." But to suggest, as Defendants do, that there is no possible way that Defendants' relation to and dealings with the GRAMMYs, in the same year that Plaintiffs' song "Joyful Noise" was nominated for a GRAMMY award, could be relevant to the fact-finder, strains credibility. To the extent that Defendants believe Plaintiffs' presentation of evidence related to the GRAMMYs will "mislead" jurors, Defendants can lodge objections at trial when the Court has the context to determine whether such evidence is actually misleading. Accordingly, Defendants' motion *in limine* to exclude evidence or argument regarding access through the GRAMMYs should be denied.

## XI. Plaintiffs' Opposition to Defendants' Motion *in Limine* No. 11 to Exclude Evidence Related to Defendants' Financial Condition [Doc. 347]

Defendants move *in limine* to bar testimony or other evidence concerning their "general wealth or financial resources, or comparing Plaintiffs' and Defendants' financial resources at trial" on the grounds that such evidence is "irrelevant and unduly prejudicial." Although Plaintiffs have no present intention of offering evidence to establish Defendants' wealth, Plaintiffs must be permitted to comment on Defendants' industry experience and success as context for the evidence offered in support of Plaintiffs' claim. Defendants are well-known

29

1   public figures and performance artists.  Lay jurors will readily perceive that

2   Defendants have vast financial resources and are capable of paying a damages

3   award.   Accordingly, the jurors' perception of Defendants' wealth is unavoidable.

4        Moreover, jurors will undoubtedly receive evidence regarding Defendants'

5   financial income from their exploitation of "Dark Horse."   *See* FN 2 to

6   Defendants' Motion *in Limine* No. 11 (Doc. 346).  Importantly, in support of their

7   claim for damages, Plaintiffs will put on evidence of profits Defendants realized as

8   a result of their exploitation of "Dark Horse," which infringes "Joyful Noise." *See*

9   17 U.S.C. § 504(b) (copyright owner is entitled to recover [1] the actual damages

10  suffered by him or her as a result of the infringement, and [2] any profits of the

11  infringer that are attributable to the infringement and are not taken into account in

12  computing the actual damages.).  Given the extraordinary commercial success of

13  "Dark Horse," and the resulting significant profits received by Defendants, the

14  evidence that Plaintiffs *must* offer to establish their damages will necessarily reveal

15  that Defendants have vast financial resources.   Accordingly, this Court should

16  deny Defendants' motion *in limine* No. 11.

**PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANTS' MOTIONS *IN LIMINE* 1-11**

Dated: June 19, 2019

                                 s/ Lauren R. Cohen
Michael A. Kahn (pro hac vice)
Kahn@capessokol.com
Lauren R. Cohen (pro hac vice)
lcohen@capessokol.com
Capes Sokol Goodman Sarachan PC
7701 Forsyth Blvd., 12th Floor
St. Louis, MO 63105
Telephone: (314) 721-7701

Eric F. Kayira (pro hac vice)
Clayton, Missouri 63105

Daniel R. Blakey (SBN 143748)
3601 Oak Avenue
Manhattan Beach, CA 90266

***Attorneys for Plaintiffs***

**PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANTS' MOTIONS *IN LIMINE* 1-11**