CHRISTINE LEPERA (admitted *pro hac vice*)
  ctl@msk.com
JEFFREY M. MOVIT (admitted *pro hac vice*)
  jmm@msk.com
JACOB D. ALBERTSON (admitted *pro hac vice*)
  j1a@msk.com
MITCHELL SILBERBERG & KNUPP LLP
437 Madison Avenue, 25th Floor
New York, New York 10022
Telephone: (212) 509-3900
Facsimile: (212) 509-7239

AARON M. WAIS (SBN 250671)
  amw@msk.com
GABRIELLA A. NOURAFCHAN (SBN 301594)
  gan@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, California 90067
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

GREENBERG TRAURIG, LLP
VINCENT H. CHIEFFO (SBN 49069)
Email: ChieffoV@gtlaw.com
ALANA C. SROUR (SBN 271905)
Email: SrourA@gtlaw.com
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
Telephone: 310-586-7700
Facsimile: 310-586-7800

Attorneys for Defendants

## UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| MARCUS GRAY, et al., | CASE NO. 2:15-cv-05642-CAS (JCx) |
| Plaintiffs, | Honorable Christina A. Snyder |
| v. | **DEFENDANTS' OPPOSITION TO PLAINTIFFS MOTION *DAUBERT* MOTION NO. 3** |
| KATHERYN ELIZABETH HUDSON, et al., | |
| Defendants. | Final Pretrial Conference<br>Date: July 1, 2019<br>Time: 11:00 a.m.<br>Courtroom: 8D – 8th Fl., First Street |
| | Filed: July 1, 2014<br>Trial: July 16, 2019 |

Mitchell
Silberberg &
Knupp LLP

11156078.1

---

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES..........................................5

I.      Introduction ................................................................................................5

II.     Background..................................................................................................7

        A.     Diamond's Background and Experience ............................................7

        B.     Diamond's Rebuttal Opinions In This Case ......................................8

III.    Argument ..................................................................................................10

        A.     Legal Standard ................................................................................10

        B.     Diamond's Critique Of Einhorn's Methodology Is A Proper
               Rebuttal Opinion .............................................................................11

        C.     Diamond Is Eminently Qualified To Rebut Einhorn's Opinions ......12

        D.     Diamond Properly Relies Upon Certain Factual Assumptions
               Provided To Him By Defendants.......................................................13

        E.     Diamond Should Not Be Precluded From Critiquing Einhorn's
               Refusal To Consider Defendants' Costs ...........................................15

CONCLUSION..............................................................................................16

Mitchell
Silberberg &
Knupp LLP

11156078.1

2

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### CASES

*Amini Innovation Corp. v. Anthony California Inc.*,
   2006 WL 6855371 (C.D. Cal. Sept. 21, 2006)................................................. 6, 11

*Castaic Lake Water Agency v. Whittaker Corp.*,
   2002 WL 34700741 (C.D. Cal. Oct. 25, 2002) ................................................. 12

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993) ......................................................................................... 10

*Dura Automotive Systems of Indiana, Inc. v. CTS Corp.*,
   285 F.3d 609 (7th Cir. 2002) ........................................................................... 13

*Fahmy v. Jay Z*,
   2015 WL 5680299 ............................................................................................ 11

*Freeland v. Ameristep, Inc.*,
   2014 WL 1646948 (E.D. Okla. April 24, 2014)................................................ 13

*Fujifilm Corp. v. Motorola Mobility LLC*,
   2015 WL 1737951 (N.D. Cal. Apr. 8, 2015)..................................................... 15

*Guido v. L'Oreal, USA, Inc.*,
   2014 WL 6603730 (C.D. Cal. July 24, 2014) ................................................... 12

*Hangarter v. Provident Life & Accident Ins. Co.*,
   373 F.3d 998 (9th Cir. 2004) ............................................................................ 10

*Hendricks v. DreamWorks, LLC*,
   2007 WL 9705916 (C.D. Cal. Nov. 20, 2007) .................................................. 15

*Hooper v. Lockheed Martin Corp.*,
   688 F.3d 1037 (9th Cir. 2012) .......................................................................... 15

*In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*,
   984 F. Supp. 2d 1021 (C.D. Cal. 2013)............................................................ 13

*In re Silicone Gel Breast Implants Prod. Liab. Litig.*,
   318 F. Supp. 2d 879 (C.D. Cal. 2004).............................................................. 11

Mitchell
Silberberg &
Knupp LLP

11156078.1

3

# TABLE OF AUTHORITIES
## Table of Contents continued

**Page(s)**

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales
    Practices, & Prod. Liab. Litig.*,
    978 F. Supp. 2d 1053 (C.D. Cal. 2013) ............................................. 11

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999) ........................................................................... 10

*Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*,
    2011 WL 2295269 (S.D. Fla. June 8, 2011) ....................................... 11

*Thomas v. Newton Int'l Enters.*,
    42 F.3d 1266 (9th Cir. 1994) ............................................................. 10

*U.S. Equal Employment Opportunity Comm'n v. Mattress Firm, Inc.*,
    2016 WL 589667 (D. Nev. Feb. 11, 2016) .......................................... 12

*Whiting v. Boston Edison Co.*,
    891 F.Supp. 12 (D. Mass. 1995) .................................................. 13, 14

*Zelinski v. Columbia 300, Inc.*,
    335 F.3d 633 (7th Cir. 2003) ............................................................. 13

### OTHER AUTHORITIES

Fed. R. Evid.
    Rule 702 ............................................................................................. 10
    Rule 703 ............................................................................................. 14

Mitchell
Silberberg &
Knupp LLP

11156078.1

DEFENDANTS' OPPOSITION TO PLAINTIFFS' *DAUBERT* NO. 3

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.    Introduction

Plaintiffs intend to offer the expert opinions of Dr. Michael A. Einhorn ("Einhorn") at trial on various issues relating to damages.  Einhorn purports to base his opinions on "the techniques of [his] profession, in which [he] earned a Ph.D. in economics."  Dkt. 366 (Einhorn Report), p. 71 (¶ 1.9).  *Inter alia*, Einhorn asserts that Capitol Records purportedly failed to "prove" to his satisfaction that it incurred any costs whatsoever in connection with the exploitation of "Dark Horse," even though Einhorn concedes that the expenditure of money was required to manufacture, distribute and market the "Dark Horse" recording.  *Id.*, p. 109 (¶ 10.10); Dkt. 366 (Einhorn Depo. Tr.), pp. 30 l. 15-22, 63 l. 3-23.  Einhorn then goes on to opine that Capitol Records's net "**profits**" from "Dark Horse" are equivalent to its **gross** receipts for that song and the *Prism* album.  Dkt. 366 (Einhorn Report), p. 83 (¶ 6.4).

Given Einhorn's professed qualifications as an economist to render his opinions, Defendants have proffered entirely appropriate rebuttal expert opinions from an economist named Dr. Charles Diamond ("Diamond").[1]  Diamond has concluded that Einhorn's methodology is contrary to fundamental principles of the economics discipline.  For example, Diamond explains that in order for Einhorn to "create a reliable report based on economic principles, Dr. Einhorn was required, but failed, to seriously consider the Defendants' evidence and to attempt to estimate costs before arriving at any profit estimate."  Dkt. 334-1 (Diamond Report), p. 14.

Plaintiffs have moved to preclude Diamond's testimony because they want the jury to have the misleading impression that Einhorn speaks for his entire

---

[1] Defendants have moved to exclude Einhorn from testifying on the basis that his opinions are unreliable.  Dkt. 351.  If this Court grants Defendants' motion in its entirety, and precludes Einhorn from offering any opinions at trial, then Defendants will not be seeking to offer Diamond's testimony at trial.

economics profession.  However, he does not, and Defendants are entitled to offer the testimony of a qualified economist such as Diamond to demonstrate that Einhorn's methodology contravenes fundamental principles of the discipline. Diamond's rebuttal opinions are proper, and Plaintiffs' four arguments to the contrary should be rejected.

*First,* Plaintiffs argue that Diamond's opinions are purportedly improper because Diamond only critiques Einhorn's methodology and does not proffer his own damages estimate.  However, this critique misunderstands the role of a rebuttal expert.  Where rebuttal expert testimony is "'intended solely to contradict or rebut' the Plaintiff's report it [is] not necessary for [the rebuttal expert] to conduct its own damage calculations." *Amini Innovation Corp. v. Anthony California Inc.*, 2006 WL 6855371, at *1 (C.D. Cal. Sept. 21, 2006).

*Second*, Plaintiffs complain that Diamond purportedly lacks experience in the music industry.  However, because Diamond has decades of academic and "real world" experience in the economics profession, and because Diamond is evaluating Einhorn's work pursuant to the fundamental, baseline standards that are required of **all** economists regardless of their specialty, it is not necessary for Diamond to have experience in the music industry.

*Thrid*, Plaintiffs objects that Diamond was provided with a small number of factual assumptions in rendering one of his opinions regarding deductible expenses.  This objection also lacks merit.  It is standard for experts to be provided with factual assumptions, and the specific assumptions which Defendants provided to Diamond will be established at trial through the testimony of a representative of Capitol Records.

*Finally*, Plaintiffs complain that Diamond's opinions purportedly ignore legal standards which Einhorn has cited as a justification for ignoring Defendant's costs.  However, Diamond has opined that Einhorn's refusal to consider Defendants' evidence of costs is contrary to basic **economic** principles, which

1  require an economist to consider a party's evidence of costs when calculating its

2  profits. The fact that Einhorn has asserted a meritless **legal** excuse (*i.e.*, the burden

3  of proof under Section 504(b) of the Copyright Act) for refusing to consider these

4  costs does not detract from the appropriateness of Diamond's critique.

5  **II.    Background**

6         **A.    <u>Diamond's Background and Experience</u>**

7         Diamond has over four (4) decades of wide-ranging experience in the

8  economics discipline, which makes him eminently qualified to provide the

9  opinions set forth in his rebuttal report regarding the fundamental principles and

10  methodologies of the economics profession.  (The full range of Diamond's

11  experience is set forth on page 2 of his report, and in Exhibit A to the report, Dkt.

12  334-1.)

13         Diamond has a Ph.D. in Economics from Texas A&M University (1984), a

14  M.A. in Economics from Clemson University (1975); and a B.A. in Political

15  Science from Clemson University (1974).  Prior to returning to graduate school in

16  1981, Diamond worked at Fluor-Daniel International Corporation, as a Senior Site

17  Consultant from 1980-1981; Pickens County, SC Planning and Development

18  Commission as Executive Director from 1978-1980; and South Carolina

19  Appalachian Council of Government as Industrial Development Specialist from

20  1975-1978.

21         Diamond also has extensive academic experience.  For over sixteen (16)

22  years, Diamond taught both graduate and undergraduate courses in labor

23  economics, econometrics, managerial economics, and microeconomics at Utah

24  State University, Clemson University, University of Louisville, and The American

25  University in Cairo.

26         Since 2001, Diamond has served as an economic consultant, and he is

27  currently a Director at the consulting firm Resolution Economics, LLC.  Contrary

28  to Plaintiffs' unfair and inaccurate characterizations of the scope of Diamond's

Mitchell
Silberberg &
Knupp LLP
11156078.1

7

experience as limited to labor matters, Diamond has done economic consulting work in a wide variety of capacities, including, by way of example only, directing teams testing Anti-Money Laundering data processes and medical databases. Diamond has also provided economic expert testimony for an equally broad array of litigations, covering diverse subject matters including but not limited to construction estimate cost contingency related to the World Trade Center attacks, and defamation, among many other issues.

Diamond's publication history is equally diverse and extensive.  Diamond's academic research has been published in the Journal of Labor Economics, Journal of Econometrics and Journal of Development Studies.  His CV sets forth his presentation of eleven papers at professional conferences, as well as twenty-eight other papers.

### B.    <u>Diamond's Rebuttal Opinions In This Case</u>

In his rebuttal opinion, Diamond has assessed whether the opinions in Einhorn's report are credible based upon the same basic methodological standards and principles that an economist must apply when an economist studies **any** industry—and not just the music industry.  Diamond has concluded that Einhorn's methodology is **not** consistent with these basic economic standards and principles, and therefore his opinions are not credible.

*First*, Diamond responds to Einhorn's opinion that "'Dark Horse' was "one of the most important commercial songs on the album Prism, if not the most important" by methodically reviewing all of the data (concerts, radio play, streams and video views) upon which Einhorn premises that opinion.  Diamond opines that Einhorn's methodology in rendering this opinion fails to comport with basic requirements of the economics profession because (*inter alia*) Einhorn "does not document any studies" or other empirical data "that support the inference that appearances on concert set lists, radio play, streams and video views are correlated to the importance or sales of an album."  Dkt. 334-1 (Diamond Report), p. 5.

1   *Second*, Diamond responds to Einhorn's opinion that in a hypothetical arms-
2   length negotiation, Plaintiffs could have obtained 15% of the royalties earned by
3   the "Dark Horse" composition from the "Dark Horse" writers in exchange for a
4   license to use the allegedly infringing ostinato.  Diamond opines that this "analysis
5   has little or no foundation in economic science" because (*inter alia*) Einhorn has
6   failed to consider Plaintiff Chike Ojukwu's real-world licensing transactions,
7   including a deal where he sold the very music at issue in this case for a mere $300.
8   *Id.*, pp. 8-9.

9   *Third*, Diamond explains that the Einhorn report's presentation of
10  Defendants' gross revenues as their net profit, without deducting any costs,
11  violates basic principles of economics.  Diamond explains:

12              Simply put, as a matter of accepted practice in the field
13              of economics, Dr. Einhorn's ruling out of Defendants'
14              attempts to estimate costs—and his own lack of cost
15              estimates—leaves his analysis of the alleged damages
16              owed to Plaintiffs fatally flawed. As it stands now, the
17              Einhorn Report says that all revenues that accrued to the
18              Defendants from bringing the products at issue to market
19              are profit. This assumption is an obvious fallacy and it
20              leads to absurd conclusions, including that the
21              Defendants could have brought to market an infinite
22              quantity of products. The Einhorn Report is incomplete
23              and unreliable without extensive study of the complete
24              costs associated with the production, distribution and
25              marketing of the song and album in this case. To create a
26              reliable report based on economic principles, Dr. Einhorn
27              was required, but failed, to seriously consider the

1    Defendants' evidence and to attempt to estimate costs

2    before arriving at any profit estimate.

3  *Id.*, pp. 13-14.  Diamond also considers each of the specific justifications which

4  Einhorn asserted in his report for refusing to consider Defendant's costs, and

5  concludes that each of those justifications are without basis in economics.  *Id.*, pp.

6  11-13.

7  **III.   Argument**

8     **A.   <u>Legal Standard</u>**

9     Under Rule 702, a "witness who is qualified as an expert by knowledge,

10  skill, experience, training, or education" may offer opinion testimony if: (1) her

11  scientific, technical, or other specialized knowledge will assist the trier of fact; (2)

12  her "testimony is based on sufficient facts or data"; (3) her "testimony is the

13  product of reliable principles and methods"; and (4) she has reliably applied those

14  principles and methods to the facts of the case.  Fed. R. Evid. 702.  In *Daubert v.*

15  *Merrell Dow Pharmaceuticals, Inc.,* the Supreme Court held that expert testimony

16  is admissible so long as it "rests on a reliable foundation and is relevant to the task

17  at hand."  509 U.S. 579, 597 (1993). While *Daubert* highlighted several indicia of

18  reliability, the Court has since made clear that the *Daubert* test is "flexible" and

19  that "*Daubert*'s list of specific factors neither necessarily nor exclusively applies to

20  all experts or in every case." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141

21  (1999).

22     In applying Rule 702, the Ninth Circuit "contemplates a broad conception of

23  expert qualifications."  *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d

24  998, 1015 (9th Cir. 2004) (quoting *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266,

25  1269 (9th Cir. 1994)).  "Rule 702 is broadly phrased and intended to embrace more

26  than a narrow definition of qualified expert." *Thomas*, 42 F.3d at 1269.  "A court

27  abuses its discretion when it excludes expert testimony solely on the ground that

28  the witness's qualifications are not sufficiently specific if the witness is generally

1   qualified." *In re Silicone Gel Breast Implants Prod. Liab. Litig.*, 318 F. Supp. 2d

2   879, 889 (C.D. Cal. 2004).  Even where a court finds that an expert is not

3   sufficiently specialized, this is not grounds for exclusion.  "A lack of specialization

4   affects the weight of the expert's testimony, not its admissibility."  *Id.*

5   **B.   Diamond's Critique Of Einhorn's Methodology Is A Proper**

6   **Rebuttal Opinion**

7        Plaintiffs misguidedly argue that Diamond should be excluded because

8   Diamond does not set forth a damages model of his own, and instead his testimony

9   "would be limited to explaining, repelling, counteracting or disproving Plaintiffs'

10  evidence …."  Dkt. 334, pp. 8-9.  However, a party is fully entitled to proffer

11  rebuttal expert testimony that is limited to pointing out the flaws in another

12  expert's opinions.  "Defendants are entitled to provide a rebuttal expert under the

13  FRCP," and where expert testimony is "'intended solely to contradict or rebut' the

14  Plaintiff's report it [is] not necessary for [the rebuttal expert] to conduct its own

15  damage calculations."  *Amini Innovation Corp.*, 2006 WL 6855371, at *1; *see also*

16  *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, &*

17  *Prod. Liab. Litig.*, 978 F. Supp. 2d 1053, 1069 (C.D. Cal. 2013) (citing *United*

18  *States v. 4.0 Acres of Land*, 175 F.3d 1133, 1141 (9th Cir.1999)) ("rebuttal witness

19  . . . may rely largely on other expert reports . . . and point out flaws in their

20  methodologies or conclusions"); *Pandora Jewelers 1995, Inc. v. Pandora Jewelry,*

21  *LLC*, 2011 WL 2295269, at *5-6 (S.D. Fla. June 8, 2011) (denying motion to

22  exclude rebuttal expert testimony on apportionment issues, and holding that "[a]

23  rebuttal expert can testify as to the flaws that she believed are inherent in another

24  expert's report that implicitly assumes or ignores certain facts"); *Fahmy v. Jay Z*,

25  2015 WL 5680299, at *5 (expert rebuttal witness permitted to "critique"

26  affirmative expert's opinions).

27        There is no basis to preclude Diamond from testifying merely because his

28  opinions are limited to critiquing Einhorn's methodology.

## C.   <u>Diamond Is Eminently Qualified To Rebut Einhorn's Opinions</u>

Diamond's assignment in this case is solely to review and analyze the work of Plaintiffs' damages expert, Einhorn, and determine whether it is consistent with fundamental principles of the economics profession.  As an economist with decades of wide-ranging experience, Diamond is fully qualified to fulfill this assignment.

Plaintiffs do not contend that Diamond lacks qualification as an economist; rather, they argue that he is unqualified because he lacks sufficient experience in the music industry specifically.  Dkt. 334, p. 6.  However, Diamond is not opining in this case as an expert in the music industry.  He is solely opining as a rebuttal witness in response to Einhorn's opinions as they relate to the application of fundamental principles in the field of economics that apply to the study of **all** industries.  Dkt. 334-1 (Diamond Report), pp. 4-6, 9-14.  Whether or not Diamond would be sufficiently qualified to opine on issues that relate solely to the music industry (and not economics generally) is irrelevant because he is not doing so. Accordingly, by defining the relevant "field or discipline" as the music industry, as opposed to economics, Plaintiffs' motion "defines the relevant field of expertise too narrowly," *Guido v. L'Oreal, USA, Inc.*, 2014 WL 6603730, at *10 (C.D. Cal. July 24, 2014), and "incorrectly equates expert specialization with expert qualification," *U.S. Equal Employment Opportunity Comm'n v. Mattress Firm, Inc.*, 2016 WL 589667, at *2 (D. Nev. Feb. 11, 2016).

Plaintiffs fail to cite any cases that could be read to suggest that an economist may not rebut the testimony of another economist if he lacks particular industry specialization.  Each of Plaintiffs' cases involved experts who purported to opine on fields of learning in which they had no qualifications.  *See Castaic Lake Water Agency v. Whittaker Corp.*, 2002 WL 34700741, at *5-6 (C.D. Cal. Oct. 25, 2002) ("environmental engineer" who was "not a chemist or chemical engineer," had "no degrees in chemistry or chemical engineering," and had "not

Mitchell
Silberberg &
Knupp LLP

11156078.1

1  taught in those fields" was not qualified to testify regarding whether "perchlorate

2  could [] be a by-product of the chemical processes used to produce sodium

3  hypochlorite"); *Freeland v. Ameristep, Inc.*, 2014 WL 1646948, at *3-4 (E.D.

4  Okla. April 24, 2014) (engineer's expertise was "in the area of metallurgy" but he

5  had "very limited experience with UV inhibitors to polymer materials—the very

6  materials that are the subject of this case"); *Whiting v. Boston Edison Co.*, 891

7  F.Supp. 12, 17-19 (D. Mass. 1995) (epidemiologist was not qualified to opine on

8  the field of "health physics"—"a specialized branch of science" in which the

9  expert had no "formal training," "ha[d] not published," "d[id] not teach," and about

10  which he "ha[d] difficulty with even elementary concepts"); *Dura Automotive*

11  *Systems of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 614-16 (7th Cir. 2002)

12  (purported expert "lack[ed] the necessary expertise to determine whether the

13  techniques [set forth in his report] were appropriately chosen and applied").[2]  Here,

14  in contrast, Diamond is not offering any testimony that requires knowledge or

15  expertise beyond his own training and experience in the fundamental tenets of

16  economics.[3]

17      There is no basis to exclude Diamond based upon a purported lack of

18  specific music industry experience.

19  **D.    Diamond Properly Relies Upon Certain Factual Assumptions**

20  **Provided To Him By Defendants**

21      Plaintiffs next argue that Diamond's opinions should be excluded because,

22  on pages 12 and 13 of his report, Diamond sets forth certain factual assumptions

23  that Defendants provided to him.  Dkt. 334, pp 7-8.  The facts which are the

---

[2] The last case cited by Plaintiffs, *Zelinski v. Columbia 300, Inc.*, 335 F.3d 633, 640 (7th Cir. 2003), merely re-states that *Daubert* standard, and does not consider any dispute regarding the expert's qualifications.

[3] Even if Plaintiffs were right that Diamond lacked sufficient specialization to fully critique Einhorn—and they are not—this would bear only on "the weight of the expert's testimony, not its admissibility." *In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*, 984 F. Supp. 2d 1021, 1028 (C.D. Cal. 2013).

Mitchell
Silberberg &
Knupp LLP
11156078.1

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' *DAUBERT* NO. 3**

1   subject of these assumptions are all matters within the knowledge of Capitol

2   Records; and a corporate representative of Capitol Records will provide trial

3   testimony placing those facts into evidence.  *See* Dkt. 334-1 (Diamond Report), pp.

4   12-13.  And each of these facts is directly relevant to Diamond's critique of

5   Einhorn's refusal to consider Defendants' costs.  By way of example, Diamond

6   states the following on page 13 of his report:

> Dr. Einhorn objects to the deductibility of manufacturing
> costs paid [by Capitol Records] to [a related non-party
> corporate entity called] Universal Music Logistics
> because these "do not reflect any truly incurred
> manufacturing expense paid to an outside entity," and
> there "could be a variance between the standard rate and
> actual cost of operation." (*See* Section 10.6.) However, I
> am informed that Universal Music Logistics charges the
> same rates to UMG-related entities [such as Capitol
> Records] that it charges to unrelated third parties.

17  *Id.*, p. 13.  The assumptions set forth on pages 12-13 of Diamond's report solely

18  pertain to the opinions he provides on those two pages, and not to the opinions in

19  the remainder his report.

20      Diamond's reliance upon the factual assumptions set forth on pages 12 and

21  13 of his report is entirely proper.  Experts routinely rely on assumptions and

22  information provided to them as bases for their analysis.  *See* Fed. R. Evid. 703

23  ("An expert may base an opinion on facts or data in the case that **the expert has**

24  **been made aware of** or personally observed.") (emphasis added).  Indeed,

25  Einhorn's own report is filled with such assumptions, and it is devoid of any

26  explanation of the source of those assumptions.  *See* Dkt. 366 (Einhorn Report),

27  pp. 74-75, 77, 79-82, 96, 109 (¶¶ 4.1, 4.4, 5.1, 5.4, 5.10, 5.18, 5.20, 8.11, 10.10).

28  Of course, as with any expert's opinion, "[i]f the factual basis or assumptions for

Mitchell
Silberberg &
Knupp LLP
11156078.1

1  [Diamond's] opinion are found to be inaccurate or ill-founded, then the jury may

2  afford the opinion less weight, if any." *Fujifilm Corp. v. Motorola Mobility LLC*,

3  2015 WL 1737951, at *4 (N.D. Cal. Apr. 8, 2015) (citation omitted).  Certainly,

4  Diamond's reliance on these assumptions is not a basis for exclusion of any of his

5  opinions—let alone precluding him from testifying at trial entirely.

6       **E.**    **Diamond Should Not Be Precluded From Critiquing Einhorn's**

7             **Refusal To Consider Defendants' Costs**

8       Diamond opines in his report that "as a matter of accepted practice in the

9  field of **economics**, Einhorn's ruling out of Defendants' attempts to estimate

10  costs—and his own lack of cost estimates—leaves his analysis of the alleged

11  damages owed to Plaintiffs fatally flawed."  Dkt. 334-1 (Diamond Report), p. 13

12  (emphasis added).  Plaintiffs argue that Diamond should not be allowed to critique

13  Einhorn's refusal to consider Defendant's costs for the mere reason that under

14  Section 504(b) of the Copyright Act, Defendants (rather than Plaintiffs) have the

15  burden of proof to establish their costs.  Dkt. 334, p. 9.  According to Plaintiffs, the

16  burden of proof purportedly gives Einhorn a license to pretend that Defendants'

17  costs do not exist, and prevents Diamond from criticizing Einhorn's pretense.

18       However, Plaintiffs fails to comprehend that Einhorn is an expert in

19  **economics**; he is not an expert in "the relevant [legal] standards governing the

20  Plaintiffs' damages." *Id.*  Neither Einhorn, nor any other expert witness, has any

21  business testifying regarding that legal standard.  *Hooper v. Lockheed Martin*

22  *Corp.*, 688 F.3d 1037, 1052 (9th Cir. 2012) ("matters of law are inappropriate

23  subjects for expert testimony"); *Hendricks v. DreamWorks, LLC*, 2007 WL

24  9705916, at *5 (C.D. Cal. Nov. 20, 2007).  Diamond is fully entitled to opine that

25  that Einhorn's failure to consider Defendants' costs, and Einhorn's justifications

26  for that refusal, are indefensible as a matter of **economics**.

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CONCLUSION

For the foregoing reasons, the Court should DENY Plaintiffs' *Daubert* motion to exclude or limit the testimony of Diamond.

DATED: June 19, 2019          MITCHELL SILBERBERG & KNUPP LLP

By:  /s/ Aaron M. Wais
Aaron M. Wais (SBN 250671)
Attorneys for Defendants other than Katheryn
Elizabeth Hudson, and Kitty Purry, Inc.

DATED: June 19, 2019          GREENBERG TRAURIG, LLP

By:  /s/ Vincent H. Chieffo
Vincent H. Chieffo (SBN 49069)
Attorneys for Defendants Katheryn Elizabeth
Hudson p/k/a Katy Perry and Kitty Purry, Inc.

## ATTESTATION REGARDING SIGNATURES

Pursuant to Local Civil Rule 5-4.3.4(a)(2)(i), I hereby attest that all Parties, on whose behalf this entire filing is jointly submitted, concur in this filing's content and have authorized its filing.

Dated:  June 19, 2019           /s/ Aaron M. Wais
Aaron M. Wais

Mitchell
Silberberg &
Knupp LLP

11156078.1

16