CHRISTINE LEPERA (admitted *pro hac vice*)
   ctl@msk.com
JEFFREY M. MOVIT (admitted *pro hac vice*)
   jmm@msk.com
JACOB D. ALBERTSON (admitted *pro hac vice)*
   j1a@msk.com
MITCHELL SILBERBERG & KNUPP LLP
437 Madison Avenue, 25th Floor
New York, New York 10022
Telephone: (212) 509-3900
Facsimile: (212) 509-7239

AARON M. WAIS (SBN 250671)
   amw@msk.com
GABRIELLA A. NOURAFCHAN (SBN 301594)
   gan@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, California 90067
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

GREENBERG TRAURIG, LLP
VINCENT H. CHIEFFO (SBN 49069)
Email: ChieffoV@gtlaw.com
ALANA C. SROUR (SBN 271905)
Email: SrourA@gtlaw.com
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
Telephone: 310-586-7700
Facsimile: 310-586-7800

Attorneys for Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| MARCUS GRAY, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>KATHERYN ELIZABETH HUDSON, et al.,<br><br>    Defendants. | CASE NO. 2:15-cv-05642-CAS (JCx)<br><br>Honorable Christina A. Snyder<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 5 TO EXCLUDE TESTIMONY OF WILLIAM R. ROSENBLATT**<br><br>**Final Pretrial Conference**<br>Date:       July 1, 2019<br>Time:       11:00 a.m.<br>Courtroom: 8D – 8th Fl., First Street<br><br>Filed:   July 1, 2014<br>Trial:   July 16, 2019 |

## TABLE OF CONTENTS

**Page**

I. Introduction .................................................................................................5

II. Rosenblatt Is Qualified To Testify About His Opinions Stated......................6

III. Rosenblatt's Opinions are Well-Founded and Reliable ................................11

IV. Rosenblatt's Opinions are Relevant .............................................................14

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993) .................................................................................. 11, 12

*Daubert v. Merrell Dow Pharms., Inc.*,
  43 F.3d 1311 (9th Cir. 1995) ............................................................................ 14

*Guzman v. Hacienda Records & Rec. Studio, Inc.*,
  2014 WL 6982331 (S.D. Tex. Dec. 9, 2014),
  *aff'd* 808 F.3d 1031 (5th Cir. 2015) ...................................................... 15, 16, 17

*Hangarter v. Provident Life and Acc. Ins. Co.*,
  373 F.3d 998 (9th Cir. 2004) .......................................................................... 6, 13

*In re Canvas Specialty, Inc.*,
  261 B.R. 12 (2001) ............................................................................................ 11

*In re Silicone Gel Breast Implants Prods. Liab. Litig.*,
  318 F. Supp. 2d 879 (C.D. Cal. 2004) ............................................................ 6, 11

*Kumho Tire Co., Ltd. v. Carmichael*,
  526 U.S. 137 (1999) ..................................................................................... 12, 13

*Loomis v. Cornish*,
  836 F.3d 991 (9th Cir. 2016) ....................................................................... 15, 17

*Morin v. U.S.*,
  534 F. Supp. 2d 1179 (D. Nev. 2005) ............................................................... 11

*Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*,
  752 F.3d 807 (9th Cir. 2013) .................................................................. 12, 13, 14

*Scott v. Ross*,
  140 F.3d 1275 (9th Cir. 1998) .......................................................................... 6, 8

*Sementelli v. Trinidad Corp.*,
  155 F.3d 1130 (9th Cir. 1998) ......................................................................... 6, 14

*Three Boys Music Corp. v. Bolton*,
  212 F.3d 477 (9th Cir. 2000) ............................................................... 15, 16, 17

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*U.S. v. Morales*,
   108 F.3d 1031 (9th Cir. 1997) .................................................................. 6, 8

*U.S. v. W.R. Grace*,
   504 F.3d 745 (9th Cir. 2007) ....................................................................... 12

*United States v. Brooks*,
   610 F.3d 1186 (9th Cir. 2010) ..................................................................... 11

*Warner Bros. Entm't v. Global Asylum, Inc.*,
   2013 WL 12114836 (C.D. Cal. Jan. 29, 2013) ............................................ 11

*Wendell v. GlaxoSmithKline LLC*,
   858 F.3d 1227 (9th Cir. 2017) ..................................................................... 14

**OTHER AUTHORITIES**

Fed. R. Evid.
   702 ............................................................................................................ 6, 12
   703 ............................................................................................................... 13

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Introduction

As explained in Defendants' various motions *in limine*, Plaintiffs' sole theory of access in this case is that "Joyful Noise" was allegedly "widely disseminated" such that a jury could infer a reasonable possibility that defendants Walter or Gottwald—the sole defendants responsible for creating the allegedly infringing instrumental music for "Dark Horse"[1]—heard and copied "Joyful Noise" in creating their instrumental music. In support of their theory, Plantiffs intend to introduce evidence at trial of the "play" counts for YouTube videos that included "Joyful Noise," their contention being that these play counts are so high that it is reasonable to say anyone—including Walter and Gottwald—had a reasonable opportunity to hear "Joyful Noise."

Plaintiffs are intent on seeking to avoid scrutiny into how users actually interact with content on YouTube (actively, not passively) and grossly overestimate the volume of views received by the "Joyful Noise" videos in the context of the greater YouTube universe. These are points that Defendants intend to prove, in part, through the testimony of their expert William Rosenblatt. Rosenblatt is a seasoned digital media consultant who has extensive experience and understanding of YouTube (among other online platforms). He will testify in this case about "how users generally viewed or listened to content on YouTube during the period of 2008-2013, and the circumstances under which an individual could possibly have come upon a YouTube video that includes the sound recording of the musical composition 'Joyful Noise' without specific affirmative steps being taken." Dkt. 335-1, p. 5-6, ¶ 12. His testimony will include his ultimate opinion that "it was extraordinarily unlikely" for someone (including, but not limited to, Walter or Gottwald) to come across "Joyful Noise" on YouTube without having sought it out affirmatively. Dkt. 335-1, p. 6, ¶ 12.

---

[1] *See* Dkt. 287 (Pls. Rsp. to SUF), p. 3, ¶ 11; Dkt. 299 (MSJ Order), pp. 3-4.

Because Plaintiffs obviously dislike Rosenblatt's conclusions, they seek to exclude his testimony at trial. They claim, without any basis, that he is unqualified to offer these opinions, that his opinions are unreliable, and that his opinions are somehow irrelevant to the issues in this case. In making these arguments, Plaintiffs ignore Rosenblatt's extensive qualifications working in and with the digital media industry and complex websites such as YouTube—qualifications that are detailed expressly in Rosenblatt's Report—as well as the well-settled legal standards regarding the reliability of expert opinions based on industry experience.

As detailed further below, Plaintiffs' motion to exclude Rosenblatt's testimony should be denied.

## II. Rosenblatt Is Qualified To Testify About His Opinions Stated

Plaintiffs fail in their attempt to challenge Rosenblatt's qualifications. The determinative query in each case is whether the witness has sufficient knowledge, skill or experience in the field so that his or her testimony would be likely to assist the jury in its search for the truth. *See* Fed. R. Evid. 702; *U.S. v. Morales*, 108 F.3d 1031, 1038 (9th Cir. 1997). Whether an expert meets this standard is construed liberally and a broad range of knowledge, skill, or training can qualify an expert. *See Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004) ("Rule 702 'contemplates a broad conception of expert qualifications.'") (quoting *Thomas v. Newton Intern. Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994)); *Sementelli v. Trinidad Corp.*, 155 F.3d 1130, 1134 (9th Cir. 1998) (FRE 702 has "broad parameters of reliability, relevancy, and assistance to the trier of fact."); *Scott v. Ross*, 140 F.3d 1275, 1286 (9th Cir. 1998) (same). "A court abuses its discretion when it excludes expert testimony solely on the ground that the witness's qualifications are not sufficiently specific if the witness is generally qualified … A lack of specialization affects the weight of the expert's testimony, not its admissibility." *In re Silicone Gel Breast Implants Prods. Liab. Litig.*, 318 F. Supp. 2d 879, 889 (C.D. Cal. 2004) (internal citation omitted).

Here, Rosenblatt opines on "how users generally viewed or listened to content on YouTube during the period of 2008-2013, and the circumstances under which an individual could possibly have come upon a YouTube video that includes the sound recording of the musical composition 'Joyful Noise' without specific affirmative steps being taken." Dkt. 335-1, pp. 5-6, ¶ 12. In this regard, his Report and resume are more than sufficient to establish his qualifications:

- Rosenblatt holds a BSE degree in Electrical Engineering and Computer Science from Princeton University and a MS in Computer and Information Science from the University of Massachusetts. Dkt. 335-1, p. 5, ¶ 9.
- From 1996 to 1999, Rosenblatt worked for Sun Microsystems in various capacities. Dkt. 335-1, pp. 24-25. From 1996-1997, he served as Enterprise IT Architect, where he worked on various technology projects, including Sun's MediaCenter line of streaming media servers. *Id*., p. 25. He subsequently became Market Development Manager, where he served as a consultant to online content providers. *Id*., p. 24.
- In 1999, Rosenblatt became VP of Technology and New Media at McGraw-Hill, where he led the technical implementation of AviationNow.com, an aviation industry information portal website associated with *Aviation Week* magazine. Dkt. 335-1, p. 24. From 1999-2000, Rosenblatt served as VP & Chief Technology Officer of Morningside Ventures, where he led the technical implementation of Fathom.com, a destination website for online courses, authenticated knowledge, and e-commerce affiliated with Columbia University, London School of Economics, and other educational and cultural institutions. *Id*., p. 24.
- In 2000, Rosenblatt founded GiantSteps Media Technology Strategies, a consulting firm that specializes in the media and content technology industries. Dkt. 335-1, p. 3, ¶ 1; p. 24. He has served as president of GiantSteps since its founding. *Id*. As president, Rosenblatt has had

extensive experience consulting clients on technology issues, including copyright, in a variety of industries, including music. *Id*., p. 3, ¶ 1; p. 24.

- Rosenblatt has consulted and testified to various public policy entities on copyright related matters and given guest lectures at several colleges, universities, and law schools on the music business and on technology issues related to copyright. Dkt. 335-1, pp. 3-4, ¶¶ 2-3.
- Rosenblatt has authored numerous book chapters, articles, and whitepapers on digital media technology and copyright, including the book "Digital Rights Management: Business and Technology." Dkt. 335-1, p. 4, ¶ 4.

In short, Rosenblatt has extensive experience with, and knowledge of, the issues relevant to his opinions beyond that possessed by the average person. *See Scott*, 140 F.3d at 1286 (testimony of sociology professor who had studied and written about "anti-cult movement" for 19 years "was proper for the jury because he testified regarding matters beyond the general knowledge of jurors."); *Morales*, 108 F.3d at 1039 (district court abused its discretion by excluding expert with "twenty years of bookkeeping experience" from testifying at trial regarding bookkeeping expertise).

Plaintiffs concede Rosenblatt's extensive knowledge and experience in digital media and analysis of online platforms, and also that he has "testified and written on many topics related to digital media," but nevertheless make vague challenges to his qualifications. Plaintiffs' challenges are beside the point because whether Rosenblatt possesses the qualifications identified by Plaintiffs has no bearing on his ability to render the opinions he has rendered. They also lack a factual basis; indeed, as stated above, Rosenblatt's Report and resume make clear that he is more than qualified to render his opinions. And to the extent that Plaintiffs had wanted to challenge or probe those qualifications they should have deposed Rosenblatt, which they declined to.

First, Plaintiffs contend that Rosenblatt has no experience in "website engineering." Dkt. 335, pp. 6-7; *id*., p. 9 (Rosenblatt has no experience "reconstructing YouTube (or any other web-based platform, for that matter)"). As a threshold matter, Plaintiffs fail to explain why experience in website engineering matters; it does not because Rosenblatt is not opining on an issue involving website construction or coding. Moreover, the contention is simply false, as is made clear by Rosenblatt's Report and resume, which Rosenblatt has further elaborated on solely for the purpose of rebutting Plaintiffs' challenges to his qualifications.[2]

Indeed, as his resume reflects, Rosenblatt has a degree in engineering. Dkt. 335-1, p. 26. And as VP of Technology and New Media at McGraw-Hill and VP and Chief Technology Officer of Morningside Ventures, Rosenblatt led the technical implementation various websites, including AviationNow.com and Fathom.com. *Supra*, p. 7; *see also* Dkt. 335-1, p. 24; Rosenblatt Decl., ¶ 3. Both of these projects were technically complex, cost millions of dollars to build, and involved the work of dozens of people. *Id*. As a consultant, Rosenblatt also helped design the technology architecture for various websites that featured digital content distribution. *See id*., ¶ 4.

Second, Plaintiffs argue emphatically that Rosenblatt does not "even establish that he was familiar or had knowledge of the functionality of YouTube during the relevant time frame." Dkt. 335, p. 10. This is another false statement. In his Report, he specifically identifies his personal knowledge of YouTube during the relevant time period, including that from 2009-2011, Rosenblatt worked with a digital music startup called Beyond Oblivion. Rosenblatt Decl., ¶ 5. One of Rosenblatt's responsibilities while working with Beyond Oblivion was competitive

---

[2] As explained above, Rosenblatt's Report and resume sufficiently establish his qualifications to provide his opinions in this case. *Supra*, pp. 6-7. To the extent that additional detail regarding these qualifications would be helpful to the Court in evaluating Plaintiffs' motion, Defendants have submitted a declaration from Rosenblatt with this Opposition, which elaborates on the qualifications identified in his Report and resume.

strategy, which required being extremely familiar with other digital music distributors, especially YouTube. *Id.* In order to ensure that the service being built by Beyond Oblivion could be competitive, Rosenblatt became intimately familiar with YouTube's features, content, and user base, including YouTube's features for accessing content (e.g., searching, browsing, social networking, link sharing). *Id.*

In addition, in 2012, Rosenblatt was retained by YouTube in connection with a confidential legal matter, which required him to research and opine on YouTube's search and access functionality for music videos compared to other Internet video and social network services for the period from 2011-2012. Rosenblatt Decl., ¶ 6. In addition, in 2011 and 2012, Rosenblatt testified on behalf of Sirius XM Satellite Radio before the Copyright Royalty Board in a rate-setting proceeding adverse to SoundExchange. Rosenblatt Decl., ¶ 7. His testimony in that proceeding included a discussion of the historical development of mobile music applications, including YouTube, from 2011 through 2011 and included a comparison of their feature sets. *Id*. In 2015, Rosenblatt also testified on behalf of Pandora Media in a rate court trial in the Southern District of New York, and his testimony in that case included information regarding YouTube's rise to prominence as a music distribution platform during the period 2008-2014, including statistics on the size and usage habits of its user base compared to other music distribution platforms. Dkt. 335-1, p. 5; Rosenblatt Decl., ¶ 8. Rosenblatt's intimate knowledge of these features is directly relevant to the features that he investigated and opined on in this action.

Third, Plaintiffs make a number of challenges that generally relate to their contention that Rosenblatt has not previously opined on the exact issue in this case. They complain that Rosenblatt has never "evaluat[ed] the possibility that YouTube's algorithms would return results for *Joyful Noise* outside a specific search for a song/artist," opined on "valuing the relative popularity of a particular video in YouTube's ecosystem," or opined on the "mechanisms by which a person

could come across a particular song on YouTube during the period 2008-2013.[3] Dkt. 335, pp. 9-10. Yet, the law does not require expertise at such a granular level. *United States v. Brooks*, 610 F.3d 1186, 1196 (9th Cir. 2010) ("The fact that Detective Hein lacked an advanced degree, supervisory experience, previous experience as an expert witness, or relevant publications did not render her unfit to provide expert testimony."); *see also In re Silicone Gel*, 318 F. Supp. 2d at 889.[4]

In sum, Rosenblatt's experience and knowledge as discussed above suffices to support his testimony at trial.[5]

## III. Rosenblatt's Opinions are Well-Founded and Reliable

Plaintiffs' challenge to Rosenblatt's opinions miss the point because it treats Rosenblatt's testimony, which is based on *specialized* knowledge regarding YouTube, as *scientific* testimony based on *scientific* knowledge. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the U.S. Supreme Court held that Federal Rule of Evidence 702 obligates a trial judge to "ensure that any and all scientific testimony … is not only relevant, but reliable." 509 U.S. at 589. In doing so, the Court identified certain factors that the trial court *may* consider in

---

[3] Plaintiffs snidely contend that Rosenblatt is seeking to act as a "website medium regarding the likelihood that someone heard or saw a certain work on a certain website at a certain point in time" (*id.*, p. 11). Such snarky statements are unnecessary and, as discussed herein, misplaced.

[4] Rosenblatt's expertise in this area is also evidenced by the many articles he has written which draw specifically on his expertise in the digital media industry to provide insights regarding streaming services such as YouTube and their popularity as a source of music. Dkt. 335-1, pp. 28-32.

[5] The cases cited by Plaintiffs to support their argument that Rosenblatt is not qualified are inapposite. In *In re Canvas Specialty, Inc.*, 261 B.R. 12, *18 (2001), the expert was not qualified as an expert in architecture because he did not "state where he received his education, what type of experience he ha[d], or what kind of knowledge or training he ha[d] in the field of architecture." Similarly, in *Warner Bros. Entm't v. Global Asylum, Inc.*, 2013 WL 12114836, at *7 (C.D. Cal. Jan. 29, 2013), the court excluded a proffered expert on consumer surveys because his "biography d[id] not suggest that he has any experience or training in crafting surveys of any kind." And in *Morin v. U.S.*, 534 F. Supp. 2d 1179, 1185 (D. Nev. 2005), the medical expert proffered to establish a "causal link between jet fuel and cancer" had no prior experience diagnosing cancer caused by jet fuel. These cases are entirely different from the situation here, where Rosenblatt has provided extensive detail regarding his prior experience in digital media, including building websites and analyzing YouTube's features and user base.

making its gatekeeping determination, namely, those identified by Plaintiffs—e.g., whether the expert used a theory or technique that has been tested, subject to peer review, has a known or potential rate of error, and is generally accepted in the relevant community. *Id*. at 592-594; Dkt. 335, pp. 11-12.

Following *Daubert*, the Court confirmed that *Daubert*'s "general principles" of establishing reliability of expert testimony apply to all expert matters described in Rule 702, but also clarified that the specific factors espoused in *Daubert* "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149, 150 (1999). Instead, the *Daubert* inquiry is a "flexible one" "tied to the facts of a particular case." *Id*. at 150 (internal quote marks and citations omitted) (assessment of reliability "depends upon the particular circumstances of the particular case at issue"); *Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 817 (9th Cir. 2013) ("The 'reliability' test is flexible and should be applied based on the circumstances of the case."). As a result, the relevant question is not whether an expert's testimony satisfies the standards applicable to statisticians and survey experts, but whether the testimony, viewed in a "holistic" manner, is reliable. *See U.S. v. W.R. Grace*, 504 F.3d 745, 762 (9th Cir. 2007).

Here, Plaintiffs' challenges to the reliability of Rosenblatt's testimony are really an effort to fit a square peg in a round hole. First, Plaintiffs claim that Rosenblatt should be excluded because he "fails to identify any recognized theory or technique he relied upon in reaching his opinions." Dkt. 335, p. 12. However, it is well-settled that "[a]n expert opinion is reliable 'if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline.'" *Pyramid Techs.*, 752 F.3d at 816 (citation omitted). For instance, industry experts like Rosenblatt regularly offer expert opinions, even though their findings are not necessarily "scientific" or based on a methodology that can be quantified. *See,*

1 *e.g., Hangarter*, 373 F.3d at 1018 ("Given that, unlike scientific or technical
2 testimony, the reliability of [the expert's] testimony was not contingent upon a
3 particular methodology or technical framework, the district court did not abuse its
4 discretion in finding [the expert's] testimony reliable based on his knowledge and
5 experience.").

6     Plaintiffs also take issue with the fact that Rosenblatt's methodology
7 "consists of reconstructing YouTube, including its functionality and design, based
8 upon his 'personal recollection' and some printouts from the Internet Archive."
9 Dkt. 335, p. 12. However, it is appropriate for Rosenblatt to rely on his
10 experiences using YouTube in both his personal and professional life to render his
11 opinions in this case. The law is clear that the facts or data forming the basis of an
12 expert's opinion may be those "the expert has been made aware of or personally
13 observed." Fed. R. Evid. 703; *see also Kumho Tire*, 526 U.S. at 150 ("Engineering
14 testimony rests upon scientific foundations, the reliability of which will be at issue
15 in some cases … In other cases, the relevant reliability concerns may focus upon
16 personal knowledge or experience.") (internal citation omitted).

17     Plaintiffs also contend that Rosenblatt should be excluded because he fails to
18 provide "any explanation or analysis" for the conclusions in his Report. Dkt. 335,
19 p. 12. This argument is nonsensical and ignores the language of the Report itself.
20 Indeed, in his Report, Rosenblatt explains in detail the precise reasons for his
21 opinion that it would not be reasonably possible for any individual to come upon
22 "Joyful Noise" on YouTube without taking specific affirmative action. *See, e.g.,*
23 Dkt. 335-1, pp. 13-21; *see also Pyramid Techs.*, 752 F.3d at 815 (expert
24 "adequately explained his methodology in reaching his opinion" where he
25 "described how the data he collected and reviewed helped him determine [his
26 opinions]").[6]

27

28 [6] Plaintiffs make a passing reference that Rosenblatt's methodology has purportedly not been peer reviewed. Dkt. 335, p. 13. However, the Ninth Circuit has made clear that, while peer review is one of many relevant factors in assessing

Mitchell Silberberg & Knupp LLP

11144768.6

13

**DEFENDANTS' OPPOSITION TO PL. MIL NO. 5 RE: ROSENBLATT TESTIMONY**

Finally, Plaintiffs request exclusion because of a purported "analytical gap" between the data and Rosenblatt's opinions. Dkt. 335, p. 13. This argument also fails. Plaintiffs do not identify these so-called gaps; Rosenblatt's testimony and opinions flow logically from his experience and knowledge of YouTube and the data he reviewed. Moreover, an expert may properly base his or her opinions on reasonable inferences from facts in the record. *Sementelli*, 155 F.3d at 1134 (expert's "opinions and inferences" that "were based on his review of [the factual record], as well as his knowledge, experience, training and education" were permissible).

Plaintiffs' arguments challenging the reliability of Rosenblatt's opinions should be rejected.

## IV. Rosenblatt's Opinions are Relevant

Plaintiffs' argument that Rosenblatt's testimony is not relevant to any fact or issue in the case is nonsensical; his opinions clearly relate to access; *i.e.*, to whether Walter and Gottwald had a reasonable opportunity to hear "Joyful Noise" through YouTube before creating the instrumental music for "Dark Horse." *Pyramid Techs.*, 752 F.3d at 813 ("Expert testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry.").

At trial, Plaintiffs bear the burden of proving by a preponderance of evidence both access and substantial similarity. As to access, Plaintiffs have long admitted that they have no direct evidence of Walter or Gottwald having heard "Joyful Noise" or circumstantial evidence that they heard it through a chain of events (i.e., an intermediary). Instead, Plaintiffs' sole theory of access has always

---

reliability, it is not a requirement, and an expert's methodology "may still be reliable . . . without peer review and publication." *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1235 (9th Cir. 2017). Indeed, the Ninth Circuit has acknowledged "good reasons" that an expert's work may not be peer reviewed – for instance, it may be "too recent," or the subject matter may be of "insufficiently broad interest." *Daubert v. Merrell Dow Pharms., Inc.* ("*Daubert II*"), 43 F.3d 1311, 1318 n.9 (9th Cir. 1995).

been that "Joyful Noise" was allegedly "widely disseminated" such that a jury could infer that Walter or Gottwald had a reasonable opportunity to hear the song. Dkt. 335, p. 14. In *Loomis*, the Ninth Circuit summarized two types of "widespread dissemination" cases: (1) those where a song achieves "an appreciable level of *national* saturation," which centers on "the degree of a work's commercial success and on its distribution through radio, television, and other relevant mediums" and (2) those where there is "saturation in a relevant market in which both the plaintiff and the defendant participate." *Loomis v. Cornish*, 836 F.3d 991, 994-95, 997-98 (9th Cir. 2016) (citing cases) (emphasis added). Of course, widespread dissemination cannot be considered in a vacuum; no different than any theory of access, any evidence of access must support a "*reasonable* possibility, not merely a bare possibility," that the defendant heard the work. *Id*. at 995 (emphasis added); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482-84 (9th Cir. 2000) (reasonable opportunity requires more than "mere speculation or conjecture").

As such, dissemination alone may not necessarily support an inference that the defendant author had a *reasonable* opportunity to hear a plaintiff's song. For example, in *Loomis*, the plaintiff attempted to prove access through evidence that the defendant songwriters were recording songs in Santa Barbara at the same time that plaintiff's song was "receiving 'tons of airplay' on local radio stations" and local and national newspapers were carrying stories about the band's achievements. *Loomis*, 836 F.3d at 998. The Ninth Circuit rejected this evidence, concluding that the fact that the plaintiff's song had saturated the local Santa Barbara music scene was completely irrelevant because the defendant songwriters were not participating in the Santa Barbara music scene. *See id*.; *see also Guzman v. Hacienda Records & Rec. Studio, Inc.*, 2014 WL 6982331, at *5-6 (S.D. Tex. Dec. 9, 2014), *aff'd* 808 F.3d 1031 (5th Cir. 2015) (not reasonable possibility of

access where plaintiff's song "did not achieve popularity outside of the Tejano music scene").

This is true even in cases finding access. In *Three Boys Music Corp.*, for example, the Ninth Circuit upheld a jury's finding that it was reasonable for the jury to infer that the songwriters, Bolton and Goldmark, had heard plaintiff's song because it "was widely disseminated on radio and television stations *where Bolton and Goldmark grew up*" (212 F.3d at 483-84) (emphasis added) **and** Bolton also admitted that he "grew up listening to groups such as the Isley Brothers," was a "huge fan," a "collector of their music," "kn[ew] everything [the Isley Brothers had] done" (*id.*), and had even expressed concern to his co-writer that they "were copying a song by another famous soul singer." *Id.* at 484.

Here, Plaintiffs intend to present evidence at trial that—among other methods of dissemination—five videos containing a sound recording of "Joyful Noise" were posted to YouTube and accumulated plays counts ranging from approximately 7,000 plays to 500,000 plays over the course of four years (2008-2012). Plaintiffs then intend to argue that these view counts are so high as to constitute dissemination "widespread" enough to infer a reasonable possibility that Walter or Gottwald heard of "Joyful Noise."

In doing so, Plaintiff do not intend to, nor can they, introduce evidence that Walter or Gottwald was actually one of the people to view "Joyful Noise" on YouTube. Plaintiffs also do not intend to, nor can they, introduce evidence that the availability of "Joyful Noise" on YouTube helped it achieve saturation in a "relevant market" in which Walter or Gottwald also participated or that some other circumstance exists that makes it more likely that Walter or Gottwald was one of the people to view "Joyful Noise" on YouTube as opposed to others. To the contrary, it is undisputed that Walter and Gottwald did not follow Christian music and did not know who Plaintiffs were or about their music before this litigation. Wais Decl., Ex. 1 (Walter MSJ Decl.), ¶¶ 7-10, 18-19; Ex. 2 (Gottwald MSJ

Decl.), ¶¶ 6-9, 17-18. Instead, Plaintiffs' theory of "widespread dissemination" theory boils down to their belief that "Joyful Noise" achieved such a level of ubiquity (i.e., national saturation) that it reasonable to infer that *anyone*, including Walter or Gottwald, heard the song.

According to Plaintiffs, their theory means that only *their* evidence of dissemination, including through YouTube, is relevant. Put differently, Plaintiffs apparently believe it should work like this at trial: Plaintiffs will introduce evidence that "Joyful Noise" was on YouTube, as well as the view counts for those videos, and, on this basis alone, a jury will decide whether the view counts constitute "widespread dissemination." If yes, then it will be inferred that Walter or Gottwald heard "Joyful Noise." This is ludicrous. Plainly, Defendants are entitled to challenge Plaintiffs' evidence, present their own evidence dispelling any inference of access, and explain to a jury why Plaintiffs' evidence proves nothing at all.

Plaintiffs' theory also finds no support in the law and none is cited by Plaintiffs. As is made clear in cases like *Loomis*, *Three Boys*, and *Guzman*, while evidence of dissemination may be probative of access, also relevant is evidence tending to prove that the dissemination at issue does or does not raise a ***reasonable*** possibility that the defendant author heard plaintiff's work. Otherwise, "widespread dissemination" would essentially equate to a strict liability standard where if a plaintiff shows sales or internet views above a certain number, access is automatically inferred without any regard to whether those sales or views make it reasonably possible that the defendant author heard the song.

The issue of "Joyful Noise" being available on YouTube proves this point. At trial, Plaintiffs intend to introduce evidence that "Joyful Noise" built up a cumulative view count of 1 million+ views/ on YouTube and argue that these numbers are so massive that there is a reasonable possibility that anyone, including Walter and Gottwald, heard "Joyful Noise." While they may be entitled to do so,

Defendants are equally entitled to present evidence of, *inter alia*, the ways in which users actually interact with YouTube (actively, not passively), Walter's and Gottwald's minimal or nonuse of YouTube, their lack of knowledge of Plaintiffs and their music, the immense volume of content available on YouTube and the billions to trillions of views that the content receives each year, as well as the unreliability of the views counts of "Joyful Noise, and to rely on such evidence to argue that the views of "Joyful Noise" on YouTube are *de minimis* and in no way constitute "widespread dissemination" and to argue that even if the view count was sizeable, it still does not prove a *reasonable* possibility that Walter or Gottwald heard the song.

In this regard, Rosenblatt's testimony emphatically *is* relevant to and will assist the trier of fact in determining this question. While the average juror likely knows what YouTube is and has perhaps watched videos on it, it is unlikely that jurors understand the features of YouTube by which a user can explore YouTube; the unreliability of views (which are susceptible to bots and being bought in bulk); the nearly infinite volume of content available YouTube and volume of views this content receives; and why all of this makes it exponentially unlikely that any individual user would have come across "Joyful Noise" by chance absent a specific reason to search for "Joyful Noise."

Keep in mind also that the relevant time period is 2008-2013. It is equally unlikely that the typical juror knows what features existed on YouTube versus what features exist now. This is crucially important. As one example only, YouTube **currently** has an "auto-play" feature, which means that when a user chooses a video to watch, YouTube will automatically generate a playlist of additional videos that will then play consecutively so long as the user remains on that page and does not stop the videos from playing. Such a feature could arguably increase the likelihood of a user hearing a song passively. Based on his experience and knowledge, as well as his confirmatory research, however, Rosenblatt will be

able to explain to the jury that this feature did not exist before 2014, meaning it did not exist during the relevant time period, and thus does not make it more likely that the average online user would have come across "Joyful Noise" on YouTube. It is important to educate the jury on such differences and not allow the jury's current personal use and limited knowledge of YouTube to erroneously influence their decision.

*       *       *

In short, it is not Defendants' position that Plaintiffs must present direct proof of Walter or Gottwald hearing "Joyful Noise" to prevail. Nor do they seek to prevent Plaintiffs from presenting **admissible** and **relevant** evidence of dissemination that might give rise to an inference of a reasonable possibility that Walter or Gottwald heard "Joyful Noise." Defendants, however, are equally entitled to present contrary evidence and explain to a jury why Plaintiffs' so-called proof does not give rise to an inference of access, which includes Rosenblatt's testimony.

## CONCLUSION

Wherefore, the Court should deny Plaintiffs' Motion *in Limine* No. 5.

DATED: June 19, 2019          MITCHELL SILBERBERG & KNUPP LLP

By: /s/ Aaron M. Wais
Aaron M. Wais (SBN 250671)
Attorneys for Defendants other than Katheryn Elizabeth Hudson, and Kitty Purry, Inc.

DATED: June 19, 2019          GREENBERG TRAURIG, LLP

By: /s/ Vincent H. Chieffo
Vincent H. Chieffo (SBN 49069)
Attorneys for Defendants Katheryn Elizabeth Hudson p/k/a Katy Perry and Kitty Purry, Inc.

# ATTESTATION REGARDING SIGNATURES

Pursuant to Local Civil Rule 5-4.3.4(a)(2)(i), I hereby attest that all Parties, on whose behalf this entire filing is jointly submitted, concur in this filing's content and have authorized its filing.

Dated: June 19, 2019

/s/ Aaron M. Wais
Aaron M. Wais

**DEFENDANTS' OPPOSITION TO PL. MIL NO. 5 RE: ROSENBLATT TESTIMONY**

Mitchell Silberberg & Knupp LLP

11144768.6