CHRISTINE LEPERA (admitted *pro hac vice*)
   ctl@msk.com
JEFFREY M. MOVIT (admitted *pro hac vice*)
   jmm@msk.com
JACOB D. ALBERTSON (admitted *pro hac vice*)
   j1a@msk.com
MITCHELL SILBERBERG & KNUPP LLP
437 Madison Avenue, 25th Floor
New York, New York 10022
Telephone: (212) 509-3900
Facsimile: (212) 509-7239

AARON M. WAIS (SBN 250671)
   amw@msk.com
GABRIELLA A. NOURAFCHAN (SBN 301594)
   gan@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, California 90067
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

GREENBERG TRAURIG, LLP
VINCENT H. CHIEFFO (SBN 49069)
Email: ChieffoV@gtlaw.com
ALANA C. SROUR (SBN 271905)
Email: SrourA@gtlaw.com
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
Telephone: 310-586-7700
Facsimile: 310-586-7800

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| MARCUS GRAY (p/k/a FLAME), et al., <br><br> Plaintiffs, <br><br> v. <br><br> KATHERYN ELIZABETH HUDSON (p/k/a KATY PERRY), et al., <br><br> Defendants. | CASE NO. 2:15-cv-05642-CAS JCx <br><br> Honorable Christina A. Snyder <br><br> **DEFENDANTS' JOINT MEMORANDUM OF CONTENTIONS OF FACT AND LAW** <br><br> **Final Pretrial Conference:** <br> Date:  July 1, 2019 <br> Time:  11:00 a.m. <br> Ctrm:  8D – 8th Fl., First Street <br><br> Filed:  July 1, 2014 <br> Trial:  July 16, 2019 |

11170459.1

# **TABLE OF CONTENTS**

**Page(s)**

I.    INTRODUCTORY STATEMENT ..................................................7

II.    FACTUAL BACKGROUND .....................................................12

    A.    "Joyful Noise".............................................................12

    B.    "Dark Horse".............................................................13

III.    SUMMARY OF THE ELEMENTS OF PLAINTIFFS' CLAIM ................13

IV.    KEY EVIDENCE IN OPPOSITION TO PLAINTIFFS' CLAIMS ............15

    A.    Plaintiffs Will Not Be Able To Meet Their Burden of Proving They Have a Valid Copyright Registration ...........................15

    B.    Plaintiffs Have No Evidence of Access. ..............................15

    C.    The Dark Horse Authors Did Not Copy "Joyful Noise" in Creating "Dark Horse."..............................................20

    D.    "Joyful Noise" and "Dark Horse" are Not Substantially Similar in Original, Protectable Expression. ........................21

    E.    Damages ..................................................................23

        1.    Plaintiffs Cannot Prove Actual Damages ..................23

        2.    Plaintiffs Cannot Establish Profits Attributable to the Alleged Infringement ..................................24

    F.    Lack of Willfulness ....................................................26

V.    SUMMARY OF DEFENSES, THE ELEMENTS THEREOF, AND DEFENDANTS' SUPPORT FOR EACH DEFENSE. ..........................27

    A.    First Defense: Failure to State a Claim for Relief .............27

    B.    Second Defense: No Standing ........................................27

    C.    Third Defense: *De Minimis* ...........................................27

    D.    Fourth Defense: Fair Use .............................................28

DEFENDANTS' MEMO OF CONTENTIONS OF FACT AND LAW

11170459.1

E.    Fifth Defense:  Independent Creation ....................................................28

F.    Sixth Defense: No Valid Copyright Registration ...............................29

G.    Seventh Defense:  Statutory Damages and Attorneys' Fees Not Recoverable ........................................................................................29

VI.    EVIDENTIARY ISSUES ..............................................................................29

VII.    ISSUES OF LAW ........................................................................................30

A.    Burden of Proof .................................................................................30

B.    Damages ............................................................................................30

VIII.    JURY TRIAL ...............................................................................................30

A.    Issues Triable to the Jury ...................................................................30

B.    Issues Triable to the Court .................................................................30

C.    Issues That Have Previously Been Decided by the Court .................30

IX.    ATTORNEY'S FEES ...................................................................................31

X.    ABANDONMENT OF ISSUES ...................................................................31

11170459.1

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<span style="font-variant:small-caps">Cases</span>

*Apple Comp. Inc. v. Microsoft Corp.*,
  35 F.3d 1435 (9th Cir. 1994) .......................................................... 11, 21

*Batts v. Adams*,
  2011 WL 13217923 (C.D. Cal. Feb. 8, 2011) .................................. 20

*Benay v. Warner Bros. Entm't, Inc.*,
  607 F.3d 620 (9th Cir. 2010) ......................................................... 10, 21

*Bernal v. Paradigm Talent and Lit. Agency*,
  788 F. Supp. 2d 1043 (C.D. Cal. 2010) ............................................. 22

*Briggs v. Blomkamp*,
  70 F. Supp. 3d 1155 (N.D. Cal. 2014) ............................................... 15

*Burns v. Imagine Films Entm't., Inc.*,
  2001 WL 34059379 (W.D.N.Y. Aug. 23, 2001) ................................ 25

*c.f. Zivkovic v. S. Cal. Edison Co.*,
  302 F.3d 1080 (9th Cir. 2002) .......................................................... 28

*Calhoun v. Lillenas Publ'g*,
  298 F.3d 1228 (11th Cir. 2002) ......................................................... 21

*Cavalier v. Random House*,
  297 F.3d 815 (9th Cir. 2002) ....................................................... 11, 21

*Cosmos Jewelry, Ltd. v. Po Sun Hon Co.*,
  2006 WL 5105219 (C.D. Cal. Apr. 5, 2006) ..................................... 28

*Cream Records, Inc. v. Jos. Schlitz Brewing Co.*,
  754 F.2d 826 (9th Cir. 1985) ....................................................... 25, 26

*Data General Corp. v. Grumman Systems Support Corp.*,
  36 F.3d 1147 (1st Cir. 1994), abrogated on other grounds by *Reed
  Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010) .............................. 26

*Davis v. The Gap, Inc.*,
  246 F.3d 152 (2d Cir. 2001) ............................................................. 25

**DEFENDANTS' MEMO OF CONTENTIONS OF FACT AND LAW**

11170459.1

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,
    772 F.2d 505 (9th Cir. 1985) .................................................................. 25

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,
    886 F.2d 1545 (9th Cir. 1989) ................................................................ 26

*Funky Films, Inc. v. Time Warner Entm't Co., L.P.*,
    462 F.3d 1072 (9th Cir. 2006) ......................................................... 10, 21

*Guzman v. Hacienda Records & Rec. Studio, Inc.*,
    2014 WL 6982331 (S.D. Tex. Dec. 9, 2014), *aff'd* 808 F.3d 1031
    (5th Cir. 2015) .......................................................................................... 16

*Kamar Int'l, Inc. v. Russ Berrie & Co.*,
    752 F.2d 1326 (9th Cir. 1984) ................................................................ 25

*Loomis v. Cornish*,
    836 F.3d 991 (9th Cir. 2016) ...........................................................passim

*Mackie v. Reiser*,
    296 F.3d 909 (9th Cir. 2002) .................................................................. 25

*Metcalf v. Bochco*,
    294 F.3d 1069 (9th Cir. 2002) ......................................................... 11, 21

*Newton v. Diamond*,
    388 F.3d 1189 (9th Cir. 2004) ................................................................ 27

*Polar Bear Prods. v. Timex Corp.*,
    384 F.3d 700 (9th Cir. 2004) .......................................................... 23, 25

*Raimondi v. Olenicoff*,
    2015 WL 9703485 (C.D. Cal. July 7, 2015) .......................................... 24

*Sheldon v. Metro-Goldwyn Pictures Corp.*,
    309 U.S. 390 (1940) ................................................................................. 25

*Smith v. Jackson*,
    84 F.3d 1213 (9th Cir. 1996) .......................................................... 11, 21

*Stewart v. Wachowski*,
    574 F. Supp. 2d 1074 (C.D. Cal. 2005) ............................................ 21, 22

*Swirsky v. Carey*,
    376 F.3d 841 (9th Cir. 2004) .......................................................... 11, 21

5

11170459.1

*Three Boys Music Corp. v. Bolton*,
    212 F.3d 477 (9th Cir. 2000) ........................................................... 15, 16, 17, 25

*Watt v. Butler*,
    457 F. App'x 856 (11th Cir. 2012) ................................................................. 21

*William Hablinski Architecture v. Amir Const. Inc.*,
    332 F. App'x 363 (9th Cir. 2009) ................................................................. 26

## STATUTES

17 U.S.C.
    § 107 ........................................................................................................ 28
    § 412 ............................................................................................. 23, 29, 31
    § 504 ........................................................................................................ 30
    § 504(b) ......................................................................................... 23, 24, 25
    § 505 ........................................................................................................ 31

## OTHER AUTHORITIES

Local Rule 16-4 ................................................................................................ 7

**DEFENDANTS' MEMO OF CONTENTIONS OF FACT AND LAW**

11170459.1

1   Pursuant to Local Rule 16-4, all Defendants jointly submit this

2   Memorandum of Contentions of Fact and Law in advance of the Final Pretrial

3   Conference currently scheduled for July 1, 2019.

4   **I.   INTRODUCTORY STATEMENT**

5   At issue in this copyright infringement case is whether the composition

6   "Dark Horse," the sound recording of which appeared on superstar pop artist Katy

7   Perry's album *Prism* (released in 2013), infringes the copyright in Plaintiffs'

8   composition entitled "Joyful Noise," the sound recording of which appeared on

9   Christian hip-hop artist Plaintiff Marcus Gray's album, *Our World: Redeemed*

10   (released in 2008).  Importantly, Plaintiffs do not contend that any aspect of the

11   vocal melody or lyrics in "Dark Horse" are infringing.  Rather, Plaintiffs' only

12   contention is that a portion of the instrumental music in "Dark Horse" copies a

13   simplistic phrase, in musical terms called an "ostinato," from "Joyful Noise."

14   Plaintiffs' claim fails as no infringement occurred.

15   To prevail at trial, Plaintiffs must prove by the preponderance of affirmative

16   and admissible evidence that they are the current owner of a valid copyright in the

17   "Joyful Noise" composition and that the defendant authors of "Dark Horse" copied

18   original, protectable expression from the "Joyful Noise" composition.  Copying, in

19   turn, requires Plaintiffs to prove that the relevant authors of "Dark Horse" had

20   access to plaintiff's work before the creation of the allegedly infringing

21   instrumental music *and* that "Dark Horse" and "Joyful Noise" are substantially

22   similar as to protected expression.  Plaintiffs will be unable to prove either prong.[1]

23   As to access, it is undisputed that defendants Henry Walter and Lukasz

24   Gottwald are the sole defendants responsible for creating the allegedly infringing

25

---

26   [1] Plaintiffs' eve of trial tactic to try to smuggle in a "striking similarity" theory is
the subject of one of Defendants' *in limine* motions, as the only theory that
27   Plaintiffs have relied on in this case to date is substantial similarity.  As set forth in
Defendants' motion, this tactic must be rejected for that reason and as inordinately
28   prejudicial at this stage.

**DEFENDANTS' MEMO OF CONTENTIONS OF FACT AND LAW**

1   instrumental music for "Dark Horse" and, thus, the only defendants relevant to

2   access.  Of course, it is also undisputed that none of the other writers had any

3   access.  Proving access requires Plaintiffs to present evidence that Walter or

4   Gottwald had a ***reasonable*** opportunity to hear "Joyful Noise" before creating the

5   instrumental music for "Dark Horse."  As to access, Plaintiffs have long admitted

6   that they have no direct evidence of Walter or Gottwald having had an opportunity

7   to hear "Joyful Noise" or circumstantial evidence that they heard it through a chain

8   of events (*i.e.*, an intermediary).  They have confirmed that they will not argue

9   either theory at trial.[2]

10          Instead, Plaintiffs' sole theory of access has always been that "Joyful Noise"

11   was allegedly "widely disseminated" such that a jury could infer that Walter or

12   Gottwald had a reasonable opportunity to hear the song.  This is not the first time

13   that the standard governing widespread dissemination has been litigated.  It was

14   litigated on summary judgment and on Defendants' motion for reconsideration.  In

15   the Court's order on Defendants' motion for reconsideration, the Court concluded

16   that "widespread dissemination" is fact dependent and can include situations where

17   a song achieves national saturation; saturation in a relevant market in which

18   _____

19   [2] In opposition to Defendants' motions *in limine*, Plaintiffs have recanted their prior
     statement that they would not rely on a theory of access through an intermediary.
20   *Compare* Dkt. No. 375, p. 28 n.7 *with* Dkt. No. 346-1, pp. 12-14 (confirming
     Plaintiffs' counsel's statement that "Plaintiffs will not offer any evidence or
21   argument regarding 'chain of events' access").  They now intend to argue that
     because *Our World Redeemed* was nominated for a GRAMMY and Gottwald was
22   a GRAMMY voter, the jury could infer access because the "GRAMMYs" "serve
     as an intermediary who had possession of 'Joyful Noise,' with whom both
23   Plaintiffs and Defendants were dealing concurrently." Dkt. No. 375, p. 26.  Yet,
     this theory is sheer speculation.  Plaintiffs have no evidence that the Recording
24   Academy received a copy of *Our World Redeemed*, much less that the Recording
     Academy was "dealing concurrently" with Gottwald.  Instead, as stated in
25   Defendants' motion, all of the evidence collected in discovery makes clear that no
     GRAMMY voter (including Gottwald) could have heard any music or track from
26   *Our World Redeemed* as a result of its nomination.  Dkt. No. 346, p. 6.  Since there
     is "no evidence presented beyond mere speculation" that Gottwald had access to
27   "Joyful Noise" through the GRAMMYs, "it is not 'reasonably possible that the
     paths of the infringer and the infringed work crossed.'"  *Loomis v. Cornish*, 836
28   F.3d 991, 996 (9th Cir. 2016).

1    plaintiffs and defendants both participate; or is disseminated in some other

2    undefined circumstances that would give rise to a reasonable possibility of a

3    defendant hearing plaintiff's song.  Dkt. No. 314, pp. 5-7.  Defendants agree that

4    widespread dissemination will vary from case to case but maintain that the

5    standard for "widespread dissemination" was clarified by the Ninth Circuit in

6    *Loomis*, 836 F.3d 991, to mean one of two situations.  First, the situation where a

7    song has achieved a strong level of commercial success and resulting *national*

8    saturation, a determination proven through evidence of the work's commercial

9    success and distribution through radio, television, and other relevant mediums.

10   Alternatively, in the absence of national saturation, the only other way this

11   dissemination theory of access can be proven is if there is saturation in a niche

12   relevant market in which both the plaintiff and the defendant participate.  *Id.* at

13   994-95, 997-98.  There are no other circumstances that would give rise to an

14   inference of a reasonable possibility of a defendant hearing the plaintiff's song.  If

15   the song did not achieve national saturation or was not disseminated in a market in

16   which the defendant participated, then any inference of access would be

17   completely speculative.  This is discussed further in the context of this case below.

18        Here, Plaintiffs have no evidence of any actual sales or airplay on national

19   radio or television (or *any* radio or television channel for that matter) that could

20   demonstrate that "Joyful Noise" had commercial success to the level of national

21   saturation.  Instead, at best, Plaintiffs can present limited evidence that "Joyful

22   Noise" received critical acclaim in the Christian hip hop music community and

23   was viewed on YouTube and Myspace.  Of course, acclaim in the Christian music

24   community does not show saturation at a national level, nor does it show saturation

25   in any market in which Walter or Gottwald participated, as they undisputedly did

26   not participate in or follow the Christian music or Christian hip hop community.

27        Plaintiffs have sought to proffer certain questionable evidence as to "views"

28   (not purchases, or any internet streaming income for Joyful Noise—there is none)

11170459.1

on two websites: YouTube and Myspace.  This evidence, as Defendants will show, wholly fails to support a reasonable possibility of access to "Joyful Noise" by the Defendant writers of the track, Walter and Gottwald.  First, even if considered, view counts do not mean that the same precise number of different persons actually viewed or listened to the track; indeed a number of views could be by the same person, or series of people, or even bots, as Defendants' evidence will demonstrate.  Second, a view, unlike a purchase, does not even support the inference that the entire track was "viewed" or obtained by the viewer.  Third, in the Internet universe, Plaintiffs' numbers of views is a minuscule drop in the bucket in the context of the billions to trillions of views those websites receive every year, and does not stand for the "widespread" concept Plaintiffs are misleadingly urging on this Court.  Finally, and critically to the concept of what constitutes a *reasonable* opportunity, Plaintiffs would have this Court not be advised as to how people actually engage with these sites—they are not passive sites, users must engage and affirmatively seek out content within the sites, particularly given the massive volume of content on each.  Simply put, there is only the barest of possibilities that Walter and Gottwald would have encountered "Joyful Noise" on YouTube or Myspace absent having known about it or had some reason to seek it out, which they did not have; indeed, it is undisputed that they did not know who Plaintiffs were or about their music before this litigation and did not follow or engage with Christian music.

As to substantial similarity, at trial, Plaintiffs will have to prove substantial similarity "under the 'extrinsic test' and . . . under the 'intrinsic test.'" *Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 624 (9th Cir. 2010). The intrinsic test is left to the trier of fact and "examines an ordinary person's *subjective* impressions of the similarities between two works." *Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072, 1077 (9th Cir. 2006).  The extrinsic test, in turn, "considers whether two works share a similarity of ideas and expression based on

**DEFENDANTS' MEMO OF CONTENTIONS OF FACT AND LAW**

**external, objective criteria**.” *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996) (emphasis added). “The extrinsic test requires ‘analytical dissection of a work and expert testimony’” to “break[] the works ‘down into their constituent elements, and compar[e] those elements for proof of copying as measured by ‘substantial similarity.’’” *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004). But not all similarities are relevant: “[P]rotectable *expression* includes the specific details of an author’s rendering of ideas,” but not the ideas themselves. *Metcalf v. Bochco*, 294 F.3d 1069, 1074 (9th Cir. 2002) (emphasis added). For this reason, the trier of fact must “**filter out and disregard** the non-protectible elements in making [a] substantial similarity determination.” *Cavalier v. Random House*, 297 F.3d 815, 822 (9th Cir. 2002); *Apple Comp. Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994) (“the unprotectable elements have to be identified, or filtered, before the works can be considered as a whole.”).

As to the intrinsic test, Plaintiffs will be unable to prove that “Joyful Noise” and “Dark Horse” are either intrinsically or extrinsically substantially similar in original, protected expression. Their own musicologist was compelled to concede that each of the purported similarities between the works are commonplace and there are substantive differences between the two works. Defendants’ musicology expert, in turn, will show that any the purported similarities between the two works are trite, commonplace, and unremarkable, either separately or in combination with each other and emphatically not substantially similar.

Finally, any inference of copying will be rebutted by the extensive and unrebutted testimony—and corroborating evidence—of Walter and Gottwald that they independently created the allegedly infringing instrumental music over the course of a single day in March 2013.

\*     \*     \*

In sum, Plaintiffs will not be able to prove copyright infringement at trial.

**DEFENDANTS’ MEMO OF CONTENTIONS OF FACT AND LAW**

## II.    FACTUAL BACKGROUND

### A.    "Joyful Noise"

Plaintiffs are Christian hip-hop artists who operate in a far different musical universe than the Dark Horse Writers, who are pop artists, songwriters, and producers.  In 2007, using a free music site, Chike Ojukwu created a very simple "beat," which eventually became the musical bed for the song at issue in this case, "Joyful Noise."  Ojukwu put this beat on his Myspace page and Plaintiff Marcus Gray paid $300 to him to use the beat (along with another beat) in a Christian hip-hop song.  Gray thereafter used the beat in co-authoring "Joyful Noise" with Emanuel Lambert.  (A third-party Christian hip-hop artist, Lecrae Moore, also recorded a rap verse, which is included in "Joyful Noise.")  A recording of "Joyful Noise" was released on Gray's album, *Our World Redeemed*, in 2008 by third-party Cross Movement Records.

"Joyful Noise" itself was not commercially released as a single and the record is devoid of any evidence of any commercial exploitation of *Our World: Redeemed* or "Joyful Noise."  Plaintiffs have not produced or seen any admissible evidence of any sales of the album, radio play of "Joyful Noise," television broadcasts of "Joyful Noise," licensing of "Joyful Noise," or income earned from "Joyful Noise."  Instead, the only "distribution" of "Joyful Noise" that Plaintiffs have claimed is that the sound recording of "Joyful Noise" is embodied in five videos posted to YouTube and was also posted to the Myspace profile pages of Plaintiff Gray and Lecrae.[3]

On June 3, 2014, the United States Copyright Office issued a copyright registration for the "Joyful Noise" composition as it appears in *Our World:*

---

[3] Plaintiffs also contend that "Joyful Noise" received critical acclaim in the Christian music world because it and the album *Our World: Redeemed* were nominated for three Christian music awards in 2009, including a Best Rock or Rap Gospel Album Grammy nomination, and appeared on three Christian music and gospel Billboard charts between 2008 and 2012.

*Redeemed*, which lists the authors as Chike Ojuku, Marcus Gray, Lecrae Moore, and Emanuel Lambert.

**B.    "Dark Horse"**

"Dark Horse" was written in 2013 by defendants Walter, Gottwald, Sandberg, Perry, Hudson, and Houston.  As is relevant here, over the course of a day in March 2013 at Conway Studios in Los Angeles, California, Walter independently created an instrumental musical track (the "Instrumental Track"), which became the musical bed for "Dark Horse."  That same day, Walter played the Instrumental Track for Gottwald, who contributed to it.  Sandberg, Perry, Hudson, and Houston were not present that day and never made any contribution to the Instrumental Track.

A couple months later, in early summer 2013, Walter and Gottwald met Perry in Santa Barbara in connection with the recording of her forthcoming album, *Prism.*  Among other instrumental tracks, Walter and Gottwald played the Instrumental Track for Perry, who liked it and decided to use it as the basis for a song.  Over the course of the summer of 2013, Perry, Hudson, and Sandberg created the vocal melody and lyrics for "Dark Horse" in collaboration with Gottwald and Walter.  Later, Houston wrote and recorded independently the rap vocal portion of "Dark Horse." These elements were mixed together into a recording of "Dark Horse," which was released commercially in September and October 2013, both as a single and as a track on Perry's album, *Prism.*[4]

**III.    SUMMARY OF THE ELEMENTS OF PLAINTIFFS' CLAIM**

On July 1, 2014, Plaintiffs filed this lawsuit.  They subsequently amended their complaint several times, primarily to add defendants.  The operative pleading

---

[4] The *Prism* album and the "Dark Horse" sound recording were released and promoted by Defendant Capitol Records, LLC.  Defendants Kobalt Music Publishing America, Inc. and WB Music Corp. provide music publishing administration services for certain of the individual defendants with respect to the composition "Dark Horse."  Defendant Kasz Money, Inc. furnished the production services of Walter and Gottwald for the "Dark Horse" sound recording.

**DEFENDANTS' MEMO OF CONTENTIONS OF FACT AND LAW**

is the Third Amended Complaint (the "TAC").  In the TAC, Plaintiffs assert a single copyright infringement claim against all Defendants, claiming the composition "Dark Horse" infringes the composition "Joyful Noise."  More specifically, they allege that "Dark Horse" copies an "ostinato" from "Joyful Noise."

   To prove their claim, Plaintiffs must establish by a preponderance of the evidence the following elements:

   1.   Plaintiffs are the current owner of a valid copyright in the "Joyful Noise" composition; and

   2.   The defendants copied original, protectable expression from the "Joyful Noise" composition.

*See* Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017 Ed.) ("9th Cir. Jury Instrs.") Nos. 17.1 & 17.5.

   As to the first element, ownership, Plaintiffs must establish by a preponderance of the evidence that:

   1.   "Joyful Noise" is original; and

   2.   Plaintiffs are the authors of "Joyful Noise" or received a transfer of the copyright to "Joyful Noise."

9th Cir. Jury Instrs. No. 17.6.

   As to the second element, copying, Plaintiffs must establish by a preponderance of the evidence that:

   1.   The authors of "Dark Horse" had access to the "Joyful Noise" composition; and

   2.   There are substantial similarities between "Dark Horse" and original, protectable elements of "Joyful Noise."

*See* 9th Cir. Jury Instrs. Nos. 17.1 & 17.17.

**DEFENDANTS' MEMO OF CONTENTIONS OF FACT AND LAW**

## IV.   KEY EVIDENCE IN OPPOSITION TO PLAINTIFFS' CLAIMS

### A.   <u>Plaintiffs Will Not Be Able To Meet Their Burden of Proving They Have a Valid Copyright Registration</u>

It is Plaintiffs' burden to prove that they own the copyright in the allegedly infringed musical composition; to the extent that they are unable to do so, they may not pursue their claim.  Plaintiffs must prove that their copyright registration was not obtained through fraud on the Copyright Office and does not contain materially false or inaccurate information related to the nature, ownership, or chain of title to the work.  In this regard, Defendants will present evidence that Plaintiffs' copyright registration does not satisfy this standard due to its inclusion of materially false or inaccurate information related to the nature, ownership, or chain of title to the work.

### B.   <u>Plaintiffs Have No Evidence of Access</u>.

At trial, Plaintiffs bear the burden of proving by a preponderance of the evidence that the relevant authors of "Dark Horse" (Walter and Gottwald) had access to "Joyful Noise," meaning they had a reasonable opportunity to hear the song before creating the allegedly infringing portion of "Dark Horse," i.e., the Instrumental Track.  9th Cir. Jury Instrs. No. 17.18.  A reasonable opportunity means a "*reasonable* possibility, not merely a bare possibility," that the defendant heard the work.  *Loomis*, 836 F.3d at 995 (emphasis added); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482-84 (9th Cir. 2000) (reasonable opportunity requires more than mere speculation or conjecture).

The evidence through which a plaintiff can prove access is well-defined.  A plaintiff can prove access through "proof that the defendant actually viewed, read, or heard the work at issue."  *Briggs v. Blomkamp*, 70 F. Supp. 3d 1155, 1165 (N.D. Cal. 2014).  "Where there is no direct evidence of access, circumstantial evidence can be used to prove access either by (1) establishing a chain of events linking the plaintiff's work and the defendant's access, or (2) showing that the plaintiff's work

has been widely disseminated." *Loomis*, 836 F.3d at 995; 9th Cir. Jury Instr. 17.18, Supp. Instr.  In *Loomis*, the Ninth Circuit summarized two types of "widespread dissemination" cases: (1) those where a song achieves "an appreciable level of *national* saturation," which centers on "the degree of a work's commercial success and on its distribution through radio, television, and other relevant mediums" and (2) those where there is "saturation in a relevant market in which both the plaintiff and the defendant participate." *Id*. at 994-95, 997-98 (citing cases) (emphasis added).

Regardless of the theory of access, the evidence must support a "*reasonable possibility, not merely a bare possibility*," that the defendant heard the work. *Loomis*, 836 F.3d at 995 (emphasis added); *Three Boys Music Corp.*, 212 F.3d at 482-84 (reasonable opportunity requires more than mere speculation or conjecture).  As such, even in the context of widespread dissemination, a plaintiff must prove facts that explain why and how the specific dissemination sought to be proven would support an inference that the defendant author had a *reasonable* opportunity to hear plaintiff's song.  For example, in *Loomis*, plaintiff attempted to prove access by presenting evidence that the defendant songwriters were recording songs in Santa Barbara at the same time that plaintiff's song was "receiving 'tons of airplay' on local radio stations" and national and local newspapers were carrying "stories about the band's achievements.".  *Loomis*, 836 F.3d at 998.  The Ninth Circuit, however, rejected this evidence, concluding that the fact that plaintiff's song had saturated the local Santa Barbara music scene was completely irrelevant because the defendant songwriters were not participating in the Santa Barbara music scene.  *See id.*; *see also Guzman v. Hacienda Records & Rec. Studio, Inc.*, 2014 WL 6982331, at *5-6 (S.D. Tex. Dec. 9, 2014), *aff'd* 808 F.3d

**DEFENDANTS' MEMO OF CONTENTIONS OF FACT AND LAW**

11170459.1

1031 (5th Cir. 2015) (a song was not "widely disseminated" where it "did not achieve popularity outside of the Tejano music scene").[5]

At trial, Defendants will show that Plaintiffs' admissible evidence—if any—does not prove by a preponderance of evidence that a relevant author of "Dark Horse" had a reasonable opportunity to hear "Dark Horse." In this regard, the only authors of "Dark Horse" relevant to access are Walter and Gottwald, who are the sole defendants who had any involvement in creating the allegedly infringing Instrumental Track. Plaintiffs, however, will not be able to present evidence sufficient to prove that Walter or Gottwald had a reasonable opportunity to hear "Joyful Noise" prior to creating "Dark Horse."[6]

More specifically, Plaintiffs have long admitted that they have no direct evidence of Walter or Gottwald having had an opportunity to hear "Joyful Noise" or circumstantial evidence that they heard it through a chain of events (i.e., an intermediary). Instead, Plaintiffs' sole theory of access has always been that "Joyful Noise" was allegedly "widely disseminated" such that that a jury could infer that Walter or Gottwald had a reasonable opportunity to hear the song. In furtherance of this theory, Plaintiffs intend to introduce certain evidence at trial but none if it raises a reasonable possibility that Walter or Gottwald heard "Joyful Noise." As to each:

- Plaintiffs intend to introduce evidence that an excerpt from "Joyful Noise" was purportedly played during unspecified radio and television interviews

---

[5] This is true even in cases finding access. In *Three Boys Music Corp.*, for example, the Ninth Circuit upheld a jury's finding that it was reasonable for the jury to infer that the songwriters, Bolton and Goldmark, had heard plaintiff's song because it "was widely disseminated on radio and television stations *where Bolton and Goldmark grew up*" (*Three Boys Music Corp.*, 212 F.3d at 483-84) (emphasis added) **and** Bolton also admitted that he "grew up listening to groups such as the Isley Brothers," was a "huge fan," a "collector of their music," "kn[ew] everything [the Isley Brothers had] done" (*id.*), and had even expressed concern to his co-writer that they "were copying a song by another famous soul singer." *Id.* at 484.

[6] While not necessary to prove at trial, the same is true for the other authors of "Dark Horse"— Perry, Hudson, Sandberg, and Houston.

**DEFENDANTS' MEMO OF CONTENTIONS OF FACT AND LAW**

11170459.1

(with unstated audience reach) of Marcus Gray while he was on concert tours.  Not only is Plaintiffs' evidence inadmissible, but it does not demonstrate access because it was undisputed that Walter and Gottwald never heard Gray being interviewed and never knew who Gray was prior to this lawsuit.

- Plaintiffs intend to introduce evidence that Gray and Moore performed live "Joyful Noise," including in concerts, before the creation of the Instrumental Track.  Not only is Plaintiffs' evidence inadmissible, it also does not demonstrate access because it was undisputed that Walter and Gottwald never attended those performances.

- Plaintiffs intend to introduce evidence that, in 2009, "Joyful Noise" and the album on which it appeared, *Our World Redeemed*, were nominated for three Christian music awards and, at times between 2008 and 2012, one or the other appeared on three Billboard Christian music charts.  Not only is certain of Plaintiffs' evidence inadmissible, it also does not demonstrate access because Walter and Gottwald were not participating in the relevant niche market of Christian music.  Instead, as Plaintiffs concede, they operated in a far different music universe.

- Plaintiffs intend to introduce evidence of (1) the purported number of times "Joyful Noise" was "viewed" in five videos on YouTube[7] and (2) the purported number of times "Joyful Noise" was "played" on the personal Myspace pages of plaintiff Marcus Gray and third-party LeCrae Moore.  The only evidence of Myspace that Plaintiffs have of such "plays," however, are inadmissible screenshots of archived versions of Moore and Gray's Myspace pages captured by the Internet Archive on specific dates.  Even if admissible, the YouTube views and Myspace plays do not supply sufficient evidence access here.

---

[7] On the eve of trial, Plaintiffs produced purported evidence relating to a **sixth** YouTube video.  For the reasons set forth in Defendants' Motion *In Limine* No. 8, this evidence should not be considered.  Dkt. No. 344.

**DEFENDANTS' MEMO OF CONTENTIONS OF FACT AND LAW**

Defendants will introduce percipient and expert testimony that these views on YouTube simply do not support, for numerous reasons, the concept of widespread distribution amounting to national saturation. At most it shows that specific people with specific knowledge of Gray or Moore or their music sought out and visited those pages. YouTube is an interactive, not passive, medium of dissemination. YouTube is not like a television station where one visits the site and passively watches whatever YouTube airs. It is a video-sharing website, to which anyone in the world can upload a video and anyone in the world can watch it. To say there is a reasonably possibility here means that every single person in the world with a computer and access to YouTube has a reasonable opportunity to hear to "Joyful Noise." That is exactly what Plaintiffs are urging on this Court and jury. But that is nonsensical. YouTube has an incomprehensibly vast universe of content and there are hundreds of thousands of hours of videos uploaded daily and *billions of views* generated *every day*.

Defendants will introduce percipient and expert testimony that, at the relevant time, Myspace was a social networking site like Facebook is now where an individual could create his or her own Myspace page and follow or be followed by other Myspace users. In this regard, Myspace was not akin to a radio station, where a user passively listened and heard songs unsolicited from a variety of personal Myspace pages. Instead, a person interacted with Myspace and, to listen to a song posted on a specific Myspace page, a person would had to have reason to know about, seek out, and visit that Myspace page. Also, like the "Joyful Noise" views on YouTube, the numbers of plays on Myspace do not accurately reflect the number of listeners of "Joyful Noise."

In addition, Plaintiffs cannot present any evidence at trial to remotely suggest that Walter or Gottwald would have known about, sought out, or visited the YouTube videos or Gray's personal Myspace page or Moore's Myspace page. To the contrary, Walter and Gottwald will testify that they had never heard of Gray

19

11170459.1

or Moore or their music before this lawsuit and, thus, would not have known that the "Joyful Noise" videos were on YouTube or that Gray or Moore had Myspace pages, much less had a reason to search for and visit one of their Myspace pages. Any inference to the contrary is pure speculation and nothing more. *See Loomis*, 836 F.3d at 998 (where arguably the evidence was better for the plaintiff than that here, the Court found: "Although there was a bare possibility that they head Bright Red Chords on the radio, or that they read about Loomis and the Lust in a magazine in the break room of Playback Studios, or that they picked up one of Loomis's promotional CDs while at Playback, that is not enough to raise a triable issue of access."); *Batts v. Adams*, 2011 WL 13217923, at *4 (C.D. Cal. Feb. 8, 2011) ("[P]osting of videos and/or songs on YouTube, Amazon.com, and iTunes by an unknown singer, [*inter alia*] 'can only be described as the modern day equivalent of looking for a needle in a haystack—where the alleged seeker does not know the needle exists, and isn't looking for it.'")

In short, Plaintiffs will be unable to prove that a reasonably possibility exists or can be inferred that Walter or Gottwald heard "Joyful Noise" prior to this case.

## C.   The Dark Horse Authors Did Not Copy "Joyful Noise" in Creating "Dark Horse."

As discussed above, Plaintiffs will be unable to prove the necessary element of access, which is fatal to their copyright claim. Plaintiffs will also be unable to rebut the testimony of Walter and Gottwald as to how they created the Instrumental Track in March 2013, which they did independent of "Joyful Noise." This conclusion will be proven through Walter and Gottwald's unrebutted testimony, which is corroborated by the audio recording of the Instrumental Track created in March 2013. This showing will also result in a finding that Walter and Gottwald

**DEFENDANTS' MEMO OF CONTENTIONS OF FACT AND LAW**

1   did not copy "Joyful Noise" in creating the Instrumental Track and, thus, "Dark

2   Horse" does not infringe "Joyful Noise."[8]

3   **D.    "Joyful Noise" and "Dark Horse" are Not Substantially Similar in**

4   **Original, Protectable Expression.**

5           Plaintiffs also are unable to meet their burden of demonstrating substantial

6   similarity in original, protectable expression between "Joyful Noise" and "Dark

7   Horse."  At trial, Plaintiffs will have to prove substantial similarity "under the

8   'extrinsic test' and . . . under the 'intrinsic test.'" *Benay*, 607 F.3d at 624.  The

9   intrinsic test is left to the trier of fact and "examines an ordinary person's

10  *subjective* impressions of the similarities between two works."  *Funky Films, Inc.*,

11  462 F.3d at 1077.  The extrinsic test, in turn, "considers whether two works share a

12  similarity of ideas and expression based on **external, objective criteria**." *Smith v.*

13  *Jackson*, 84 F.3d at 1218 (emphasis added). "The extrinsic test requires analytical

14  dissection of a work and expert testimony" to "break[] the works 'down into their

15  constituent elements, and compar[e] those elements for proof of copying as

16  measured by 'substantial similarity.'"" *Swirsky*, 376 F.3d at 845.  But not all

17  similarities are relevant: "[P]rotectable *expression* includes the specific details of

18  an author's rendering of ideas," but not the ideas themselves. *Metcalf*, 294 F.3d at

19  1074 (emphasis added).  For this reason, the trier of fact must "**filter out and**

20  **disregard** the non-protectible elements in making [a] substantial similarity

21  determination." *Cavalier*, 297 F.3d at 822; *Apple Comp. Inc.*, 35 F.3d at 1446 ("the

22  unprotectable elements have to be identified, or filtered, before the works can be

23  _____

24  [8] *See, e.g., Stewart v. Wachowski*, 574 F. Supp. 2d 1074, 1086-88, 1094 (C.D. Cal.
    2005) (granting motion for summary judgment as to plaintiff's copyright claim

25  involving the "Matrix" and "Terminator" films, on the grounds, *inter alia*, that the
    creators of those films testified they were created independently without access to
    the plaintiff's works, which testimony was unrebutted); *Watt v. Butler*, 457 F.

26  App'x 856, 861 (11th Cir. 2012) (defendants entitled to summary judgment
    because "even if [plaintiff] had made out a prima facie case based on a showing of

27  access and substantial similarity, the evidence of independent creation would have
    negated [it]"); *accord Calhoun v. Lillenas Publ'g*, 298 F.3d 1228, 1234-35 (11th

28  Cir. 2002).

11170459.1

1   considered as a whole.").

2       As to the intrinsic test, the jury's *subjective* impression of the similarities

3   between "Joyful Noise" and "Dark Horse" will not rise to the level of substantial

4   similarity.  As to the extrinsic test, Plaintiffs will offer the opinions of Dr. Todd

5   Decker as to the issue of substantial similarity; Defendants, in turn, offer the expert

6   opinions of Dr. Lawrence Ferrara.  Of relevance here, Dr. Decker did not

7   transcribe the purported musical similarities between the works into musical

8   notation.  At his deposition, Dr. Decker made admissions which establish that each

9   of the purported similarities between the works are commonplace musical devices.

10  Dr. Decker failed to extract these admittedly commonplace elements from the

11  works when performing his analysis, or explain how the selection, coordination

12  and arrangement of the commonplace elements in "Joyful Noise" constitutes

13  protectable expression that Plaintiffs are entitled to monopolize.  Instead, Dr.

14  Decker focused on the way that the recordings of "Joyful Noise" and "Dark Horse"

15  sound, including to lay listeners.  This was improper.

16      Dr. Ferrara, in turn, conducted an analytical dissection of the "Joyful Noise"

17  and "Dark Horse" compositions, including by transcribing the works into musical

18  notation, reviewing and transcribing relevant prior art, and extracting those

19  elements of both works that are unprotectible.  Dr. Ferrara concluded that each of

20  the purported similarities between the two works that Dr. Decker identified are

21  trite, commonplace, and unremarkable, either separately or in combination with

22  each other and emphatically **__not__** substantially similar.[9]  Of particular note, Dr.

23  _____

24  [9] Plaintiffs have recently stated their intent to argue *striking* similarity.  A plaintiff
    need not prove access where the two works are strikingly similar; in such
25  situations, access is inferred.  Of course striking similarity is rarely found and
    exists only when two songs are so much alike that "in human experience, it is
26  virtually impossible that the two works could have been independently created."
    *Stewart*, 574 F. Supp. 2d at 1103; *Bernal v. Paradigm Talent and Lit. Agency*, 788
27  F. Supp. 2d 1043, 1052 (C.D. Cal. 2010) (arises only in "rare cases").  For nearly
    five years of litigation, Plaintiffs only argued that "Joyful Noise" and "Dark
28  Horse" were substantially similar, including disclosing an expert's report opining
    to the two works' alleged substantial (not striking) similarity.  On the eve of trial,
    (…continued)

22

Ferrara concluded (and Dr. Decker agreed) that the main ostinato in "Dark Horse" ("Ostinato #1") was not similar to any protectable musical expression in "Joyful Noise."  "Ostinato #2," the allegedly infringing portion of "Dark Horse," was derived from the admittedly non-infringing Ostinato #1.

For these reasons, Plaintiffs will be unable to sustain their burden of proving substantial similarity.

### E.    Damages

In the event that Plaintiffs are able to sustain their burden as to liability, they will still need to prove that they are entitled to damages.  A copyright owner is entitled to recover (1) the actual damages suffered by him or her as a result of the infringement, and (2) any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. 17 U.S.C. § 504(b).[10]  At trial, Plaintiffs will not be able to meet their burden of establishing damages.  Even if Plaintiffs can show that there were damages, Defendants will show that any such damages are minimal under applicable Ninth Circuit authorities.

### 1.    Plaintiffs Cannot Prove Actual Damages

"Actual damages are usually determined by the loss in the fair market value of the copyright, measured by the profits lost due to the infringement or by the value of the use of the copyrighted work to the infringer."  *Polar Bear Prods. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004).  To meet their burden to establish

---

(…continued)
however, Plaintiffs suddenly argued that the two works are strikingly similar, notwithstanding their utter lack of proof in support of this argument.  The argument is waived and, in any event, not supported by admissible evidence.  This is the subject of a motion *in limine* filed by Defendants.

[10] Plaintiffs are not entitled to statutory damages or attorneys' fees because they failed to register their copyright interest in the composition of "Joyful Noise" prior to the commencement of Defendants' alleged infringement of it or within three months of first publication of "Joyful Noise."  17 U.S.C. § 412.  Timely registration of "Joyful Noise" was required to recover statutory damages and attorneys' fees.  On the other hand, if Defendants prevail they can recover their substantial attorneys' fees.

1  actual damages, Plaintiffs intend to rely solely on the opinions of their expert,

2  Michael Einhorn.  Einhorn will testify regarding a hypothetical negotiation by

3  which Plaintiffs could have obtained a royalty for the right to use "Joyful Noise."

4  "Typically, a 'license price is established through objective evidence of benchmark

5  transactions, such as licenses previously negotiated for comparable use of the

6  infringed work, and benchmark licenses for comparable uses of comparable

7  works.'"  *Raimondi v. Olenicoff*, 2015 WL 9703485, at *2 (C.D. Cal. July 7, 2015).

8  But even though Einhorn acknowledges that such "benchmark" transactions are

9  helpful in establishing a hypothetical license, he makes no effort to tether his

10  opinion to relevant examples.  His opinion is therefore pure speculation.

11       As Defendants will show at trial, there were highly relevant real-world

12  "benchmark" transactions that Einhorn should have considered.  Specifically,

13  Defendants will show that Plaintiff Ojukwu sold an exclusive license to Plaintiff

14  Gray for the right to use the "Joyful Noise" beat—the very music that is at issue in

15  this case and which would be the subject of a hypothetical license—for less than

16  $300.  In addition, Ojukwu offered other beats for sale on a site called

17  "Airbit.com" for $20-$60.  Moreover, Defendants will offer the expert testimony

18  of Charles Diamond, Ph.D., an economist, who will demonstrate that Einhorn's

19  opinions are not based in accepted practices in the field of economics, rely on

20  disproven or unproven assumptions, and are altogether unreliable.

21       Thus, there is simply no evidence Plaintiffs can offer to establish "actual

22  damages," and even if they can meet their burden, Defendants will demonstrate

23  that the amount of "actual damages" is in the range of the real-world "benchmarks"

24  involving the music and the parties at issue in this case.

### 2.  Plaintiffs Cannot Establish Profits Attributable to the Alleged Infringement

27       With respect to profits, Plaintiffs will bear the burden at trial of proving the

28  defendant's gross revenue attributable to the infringement.  17 U.S.C. § 504(b).

24

Plaintiff must demonstrate a causal nexus between the alleged infringing use and the gross revenue before the burden shifts to the infringer to apportion the profits. *Mackie v. Reiser*, 296 F.3d 909, 915-16 (9th Cir. 2002); *Polar Bear Prods.*, 384 F.3d at 708-10.  This is true regardless of whether profits are classified as direct or indirect.  *Polar Bear*, 384 F.3d at 710-11, 711 n.7; *see also* 9th Cir. Jury Instrs. No. 17.34.

If Defendants' profits are determined to be recoverable at all, only ***net*** profits in excess of any actual damages that are "attributable" to the alleged infringement are potentially recoverable.  The Plaintiffs—as the purported copyright owners—bear the initial burden proving the gross receipts realized by the Defendants and that the gross receipts are "attributable," *i.e.*, causally related, to the infringement.  *See Polar Bear Prods., Inc.*, 384 F.3d at 711; *Davis v. The Gap, Inc.*, 246 F.3d 152, 160 (2d Cir. 2001).

Only ***if*** Plaintiff is able to sustain his burden to establish a causal nexus with Defendants' gross revenues does the burden then shift to Defendants to apportion the profits attributable to the infringement and to deduct expenses.[11]  17 U.S.C. § 504(b); *Mackie*, 296 F.3d at 915.  Where, as here, an infringer's profits so clearly derive from factors other than the infringement, an apportionment must be made. *Cream Records, Inc. v. Jos. Schlitz Brewing Co.*, 754 F.2d 826, 828-29 (9th Cir. 1985).  Defendants do not need to prove to a mathematical certainty the profits that are attributable to other factors—Defendants need only provide a rational division. *See Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 408-09 (1940); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.* ("*Frank Music I*"), 772 F.2d

---

[11] Defendants are entitled to deduct from gross receipts both (1) direct and indirect expenses, *see Burns v. Imagine Films Entm't., Inc.*, 2001 WL 34059379, at *7 (W.D.N.Y. Aug. 23, 2001) ("defendants must be given some leeway in calculating indirect expenses"); and (2) overhead, *see Kamar Int'l, Inc. v. Russ Berrie & Co.*, 752 F.2d 1326, 1333 (9th Cir. 1984).  Additionally, non-willful infringers may deduct income taxes and management fees paid on the infringing profits. *Three Boys Music Corp.*, 212 F.3d at 488.

**DEFENDANTS' MEMO OF CONTENTIONS OF FACT AND LAW**

11170459.1

505, 518 (9th Cir. 1985); *Cream Records*, 754 F.2d at 829; *Data General Corp. v. Grumman Systems Support Corp.*, 36 F.3d 1147, 1174-75 (1st Cir. 1994), abrogated on other grounds by *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.* ("*Frank Music II*"), 886 F.2d 1545, 1549 (9th Cir. 1989).

During discovery, Defendants produced proof of their gross revenues and their expenses. At trial, Defendants will offer this proof of expenses incurred by each of the Defendants, which will substantially reduce the amount of gross revenues earned by Defendants. In addition, Defendants will demonstrate that the portion of such revenues attributable to the infringement—*i.e.*, the use of the allegedly infringing ostinato—are exceedingly small. *First*, with respect to the musicological value of the allegedly infringing ostinato, Defendants will offer the testimony of Dr. Ferrara that this ostinato is minimally valuable to "Dark Horse," both qualitatively and quantitatively. *Second*, Defendants will offer the testimony of Dr. Jason King that the allegedly infringing ostinato had a negligible impact on the commercial success of "Dark Horse" and the *Prism* album. Since Plaintiffs are "not entitled to 'elements of profit attributable to factors other than the copyrighted work,'" *William Hablinski Architecture v. Amir Const. Inc.*, 332 F. App'x 363, 364-65 (9th Cir. 2009), any recovery of profits would be substantially limited.

## F.    Lack of Willfulness

Plaintiffs bear the burden of demonstrating that Defendants acted willfully in allegedly infringing Plaintiffs' copyright. To meet this burden, Plaintiffs must demonstrate that (1) Defendants "engaged in acts that infringed the copyright; and (2) [Defendants] knew those acts infringed the copyright, or the defendant acted with reckless disregard for, or willful blindness to, the copyright holder's rights." 9th Cir. Jury Instrs. No. 17.37. Here, even if Plaintiffs could establish that infringement occurred (they cannot), Plaintiffs will be unable to establish that any

1  such infringement was willful because no Defendant had knowledge of any

2  infringement; any infringement was unintentional.

3  **V.     SUMMARY OF DEFENSES, THE ELEMENTS THEREOF, AND**

4  **DEFENDANTS' SUPPORT FOR EACH DEFENSE.**

5     **A.     <u>First Defense</u>: Failure to State a Claim for Relief**

6        Plaintiffs' Complaint lacks evidence sufficient to prove the *prima facie*

7  elements of their claim against Defendants. The evidence that Defendants will use

8  to support this defense is the evidence stated above, *supra*, § IV, pp. 15-27.

9     **B.     <u>Second Defense</u>: No Standing**

10       It is Plaintiffs' burden to prove that they own the composition to "Joyful

11 Noise"; to the extent that they are unable to do so, they will lack standing to pursue

12 their claim.  In this regard, the evidence that Defendants will rely on is Plaintiffs'

13 lack of evidence of their ownership of the copyright to the allegedly infringed

14 musical composition.

15    **C.     <u>Third Defense</u>: *De Minimis***

16       Plaintiffs bear the burden of substantiating that the amount of protectable

17 expression of "Joyful Nose" that was allegedly copied by "Dark Horse" was more

18 than *de minimis*.  A use of a copyrighted work is *de minimis* "if the average

19 audience would not recognize the appropriation."  *Newton v. Diamond*, 388 F.3d

20 1189, 1193 (9th Cir. 2004).

21       Here, even if Plaintiffs are able to bear his burden of demonstrating that

22 certain portions of "Joyful Noise" were copied by "Dark Horse," Plaintiffs'

23 copyright infringement claim still must fail as any use of such protectable

24 expression in "Dark Horse" was *de minimis*.  *See id*.  The evidence that Defendants

25 will use to support this defense include the compositions at issue, and the expert

26 testimony of Dr. Ferrara.

27

28

**DEFENDANTS' MEMO OF CONTENTIONS OF FACT AND LAW**

1

    **D.    Fourth Defense:** Fair Use

2      Defendants' use of "Joyful Noise" constitutes fair use under 17 U.S.C.

3  § 107.  In determining whether the use made of "Joyful Noise" was fair, the jury

4  should consider the following factors:

5      a.    the purpose and character of the use, including whether such use is of

6  a commercial nature or is for nonprofit educational purposes;

7      b.    the nature of the copyrighted work;

8      c.    the amount and substantiality of the portion used in relation to the

9  copyrighted work as a whole;

10      d.    the effect of the use upon the potential market for or value of the

11  copyright work.

12  17 U.S.C. § 107.

13      Here, even if Plaintiffs are able to establish any copying of protectable

14  expression in "Joyful Noise," their copyright claim must fail because any alleged

15  infringement constitutes fair use as a trivial portion was used and the use was

16  entirely transformative.

17      **E.    Fifth Defense:** Independent Creation

18      Defendants disagree that independent creation is an affirmative defense;[12]

19  however, to the extent it is, a showing of independent creation will defeat the

20  presumption of copying created by a plaintiff proving access and substantial

21  similarity.  Here, to the extent that Plaintiffs prove access and substantial

22  similarity, as discussed above, *supra*, § IV.C., Defendants will rebut this showing

23

24  [12] *See, e.g., Cosmos Jewelry, Ltd. v. Po Sun Hon Co.*, 2006 WL 5105219, at *1
    (C.D. Cal. Apr. 5, 2006) (independent creation is not an affirmative defense),

25  *citing Calhoun v. Lillenas Publ'g*, 298 F.3d 1228, 1230 n. 3 (11th Cir. 2002)
    (under copyright law, "independent creation is *not* an affirmative defense . . .

26  Rather, independent creation attempts to prove the opposite of the [plaintiff's]
    primary claim, i.e., copying . . ."); *c.f. Zivkovic v. S. Cal. Edison Co.*, 302 F.3d

27  1080, 1088 (9th Cir. 2002) ("A defense which demonstrates that plaintiff has not
    met its burden of proof is not an affirmative defense.") (*citing Flav-O-Rich v.

28  Rawson Food Service, Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988)).

**DEFENDANTS' MEMO OF CONTENTIONS OF FACT AND LAW**

by proving Walter's independent creation of the Instrumental Track through the audio recording of the Instrumental Track, as well as the testimony of Walter, Gottwald, and Dr. Ferrara.

**F.     Sixth Defense: No Valid Copyright Registration**

It is Plaintiffs' burden to prove that they have a valid and enforceable copyright registration for the composition "Joyful Noise"; a registration that was not obtained through fraud on the Copyright Office and does not contain materially false or inaccurate information related to the nature, ownership, or chain of title to the work.  In this regard, Defendants will present evidence that Plaintiffs' copyright registration does not satisfy this standard due to its inclusion of materially false or inaccurate information related to the nature, ownership, or chain of title to the work.

**G.     Seventh Defense:  Statutory Damages and Attorneys' Fees Not Recoverable**

Plaintiffs cannot recover statutory damages and attorneys' fees, as they did not register the composition in "Joyful Noise" prior to the alleged infringement or within three months of first publication of "Joyful Noise." 17 U.S.C. § 412.

The support for this defense is evidence that "Dark Horse" was released in October 2013 but Plaintiffs did not register the composition in "Joyful Noise" until June, 2014.  Defendants, on the other hand, are entitled to recover their legal fees.

**VI.   EVIDENTIARY ISSUES**

The parties have met and conferred about evidentiary issues.  As a result, the parties intend to stipulate to the authenticity of certain documents and evidence and to stipulate to certain facts.  The parties have filed motions *in limine* seeking to exclude certain evidence and testimony, which will be decided at the pretrial conference.

**DEFENDANTS' MEMO OF CONTENTIONS OF FACT AND LAW**

## VII.   ISSUES OF LAW

### A.   <u>Burden of Proof</u>

The elements of Plaintiffs' *prima facie* case are set forth above, *supra*, § III, p. 13-14.  It is Plaintiffs' burden to prove by a preponderance of evidence each of the elements identified therein.

### B.   <u>Damages</u>

The Copyright Act provides for three potential measures of damages: (1) the net profits of the infringer that are attributable to the infringement; (2) any provable actual damages suffered by the plaintiff; and (3) statutory damages. 17 U.S.C. § 504.  The legal standards regarding these measures of damages as applied to the evidence in this case are set forth above, *supra*, § IV.E., p. 23-26. As discussed above, it will be proven that the attribution of any "actual damages" or profits to the inclusion of a small portion of the "Joyful Noise" musical composition would be minimal at best.[13]

## VIII.  JURY TRIAL

### A.   <u>Issues Triable to the Jury</u>

A timely demand for a jury has been made.  All issues other than those set forth below in Sections IX.B and IX.C are triable by jury.

### B.   <u>Issues Triable to the Court</u>

None.

### C.   <u>Issues That Have Previously Been Decided by the Court</u>

The following issues have already been properly determined by the Court during this litigation, and need not be revisited by either the Court or the jury:

1.   Pursuant to a license obtained by AEG from ASCAP, Perry and Kitty Purry, Inc. were authorized to perform both "Dark Horse" and "Joyful Noise"; as

---

[13] This Court has already held that defendant Perry's live concert performances are not infringing and, as such, any revenues attributable to the same are not recoverable.  In any event, with respect to her live concert performances, there is no non-speculative nexus.

DEFENDANTS' MEMO OF CONTENTIONS OF FACT AND LAW

1   such, any performance of "Dark Horse" by Perry could not have infringed

2   Plaintiffs' performance rights in "Joyful Noise," even if "Dark Horse" is derivative

3   of "Joyful Noise." *See* Dkt. No. 246, p. 16.

4         2.     The Court has ordered bifurcation of trial such that liability and

5   damages will be tried separately.  A trial on liability will proceed first.  A second

6   trial on damages will proceed thereafter if there is a finding of liability.  Dkt. No.

7   362.

8   **IX.  ATTORNEY'S FEES**

9         Defendants intend to seek attorney's fees as the prevailing party.  17 U.S.C.

10  § 505.  Plaintiffs are not entitled to statutory damages or attorneys' fees because

11  they failed to register their copyright interest in the composition of "Joyful Noise"

12  prior to the commencement of Defendants' alleged infringement of it or within

13  three months of first publication of "Joyful Noise."  17 U.S.C. § 412.  Timely

14  registration of "Joyful Noise" was required to recover statutory damages and

15  attorneys' fees.  On the other hand, if Defendants prevail they can recover their

16  substantial attorneys' fees.

17  **X.  ABANDONMENT OF ISSUES**

18        Defendants do not intend to pursue the affirmative defenses stated in their

19  Answers but not identified above in Section V.

20
21  DATED: June 25, 2019          MITCHELL SILBERBERG & KNUPP LLP

22                        By:  /s/ Aaron M. Wais

23                        Aaron M. Wais (SBN 250671)

24                        Attorneys for Defendants other than Katheryn
    Elizabeth Hudson, and Kitty Purry, Inc.

25
26
27
28

DATED: June 25, 2019          GREENBERG TRAURIG, LLP

                              By:  /s/ Vincent H. Chieffo
                              Vincent H. Chieffo (SBN 49069)
                              Attorneys for Defendants Katheryn Elizabeth
                              Hudson p/k/a Katy Perry and Kitty Purry, Inc.


## <u>ATTESTATION REGARDING SIGNATURES</u>

Pursuant to Local Civil Rule 5-4.3.4(a)(2)(i), I hereby attest that all Parties, on whose behalf this entire filing is jointly submitted, concur in this filing's content and have authorized its filing.

Dated:  June 25, 2019          /s/ Aaron M. Wais
                               Aaron M. Wais

11170459.1