1
2
3
4
5
6
7

| | FILED |
| | CLERK, U.S. DISTRICT COURT |
| | July 1, 2019 |
| | CENTRAL DISTRICT OF CALIFORNIA |
| | BY: __CMJ_____ DEPUTY |

8          UNITED STATES DISTRICT COURT

9          CENTRAL DISTRICT OF CALIFORNIA

10              WESTERN DIVISION

11  MARCUS GRAY (p/k/a FLAME), et al.,

12          Plaintiffs,

13      v.

14  KATHERYN ELIZABETH HUDSON (p/k/a KATY PERRY), et al.,

15

16          Defendants.

CASE NO. 2:15-cv-05642-CAS JCx

Honorable Christina A. Snyder

**PUBLICLY FILED REDACTED [PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**

**Final Pretrial Conference:**
Date:    July 1, 2019
Time:    11:00 a.m.
Ctrm:    8D – 8th Fl., First Street

Filed:   July 1, 2014
Trial:   July 16, 2019

17
18
19
20
21
22
23
24
25
26
27
28

Following pretrial proceedings, pursuant to F.R.Civ.P. 16 and L.R. 16, **IT IS HEREBY ORDERED**:

    1.     The parties are:

        a.  Plaintiffs are Marcus Gray, Emanuel Lambert, and Chike Ojukwu.

        b.  Defendants are Capitol Records, LLC, Jordan Houston, Lukasz Gottwald, Sarah Theresa Hudson, Karl Martin Sandberg, Henry Russell Walter, UMG Recordings, Inc., Universal Music Group, Inc., WB Music Corp., Kobalt Music Publishing America, Inc., Kasz Money, Inc., Katheryn Elizabeth Hudson, and Kitty Purry, Inc.

Each of these parties has been served and has appeared. All other parties named in the pleadings and not identified in the preceding paragraph are now dismissed.

The pleadings which raise the issues are: Plaintiffs' Third Amended Complaint (Dkt. No. 172) and Defendants' Answers to the Third Amended Complaint (Dkt. Nos. 210, 211, 230).

    2.     Federal jurisdiction and venue are invoked upon the grounds: The Court has subject matter jurisdiction under Section 501 of the Copyright Act, 17 U.S.C. § 501, and 28 U.S.C. §§ 1331 and 1338(a). Venue is proper in this district under 28 U.S.S. §§ 1391(b), (c), and 1400(a).

    3.     The trial has been bifurcated into liability and damages.  The trial is estimated to take 4-5 trial days for liability and 3-4 days for damages.

    4.     The trial is to be a jury trial.  On the Wednesday of the week prior to the trial date the parties shall file and serve by e-mail, fax, or personal delivery: (a) joint proposed jury instructions as required by L.R. 51-1 and the Court's Procedures (b) any special questions requested to be asked on voir dire. Objections to disputed instructions shall be filed no later than the Friday before the commencement of trial.

5.      Set forth on the attached Schedule 5a (liability) and 5b (damages) are the facts that are admitted and require no proof.  Pursuant to the parties' separate application, certain facts stated in Schedules 5a and 5b shall be sealed unless and until a trial on damages proceeds.

6.      Set forth on the attached Schedule 6a (liability) are the facts, though stipulated, shall be without prejudice to any evidentiary objection.

7.      The following are the claims and defenses to be presented at trial:

**Plaintiffs:**

a.      As set forth more fully in their Memorandum of Contentions of Fact and Law (Dkt. No. 383), Plaintiffs plan to pursue the following claims against the following defendants: Infringement of Plaintiffs' copyright in its "Joyful Noise" song by Defendants' "Dark Horse" song

b.      The elements required to establish Plaintiff's claims are: they must prove by a preponderance of the evidence that (1) they are the owners of a valid copyright the "Joyful Noise" song and (2) Defendants copied original expression in "Joyful Noise." As more fully set forth in Plaintiffs' Memorandum of Contentions of Fact and Law (Dkt. 383), Plaintiffs can prove copyright through a combination of proof that (a) Defendants had access to "Joyful Noise" (via widespread dissemination of the song or otherwise) and (b) that there is a "substantial similarity" between the original expression in "Joyful Noise" and portions of "Dark Horse."

c.      In brief, the key evidence Plaintiffs rely on for their claim is:

•      Ownership of a valid copyright: The Registration of Copyright (No. PA 1-900-321); the Assignment by Lecrae Moore of his copyright ownership interest to the three Plaintiffs (all of whom are listed as owners of the copyright in the original Registration); Assignment of Cross Movement Records; witness testimony.

**FINAL PRETRIAL CONFERENCE ORDER**

1    • Defendants' access to "Joyful Noise"—proof through the

2    following: (a) Widespread dissemination (via YouTube and MySpace views,

3    award nominations; concerts, Billboard Magazine rankings, concert performances,

4    sales, radio and tv); (b) Evidence of "striking similarities" between the two songs,

5    based upon Dr. Todd Decker's testimony; (c) The combination (i.e. nexus) of a

6    Grammy nomination the same year Defendant Gottwald was a voting member of

7    the Grammys.

8    • Substantial similarity: Dr. Todd Decker, expert musicologists,

9    to opine on the extrinsic similarities.

10   • Damages: Dr. Michael Einhorn, expert on music damages;

11   stipulations regarding revenues earned by each of the Defendants from sales of the

12   song and the Prism album; evidence produced by and testimony of Defendant

13   Capitol Records.

14   **Defendants' Response to Plaintiffs' Position**

15   As more fully set forth in Defendants' Memorandum of Contentions of Fact

16   and Law (Dkt. No. 385), Plaintiffs' claim of infringement will fail at trial.  To

17   prove copyright infringement, Plaintiffs must prove by a preponderance of the

18   evidence that (1) Plaintiffs are the owner of a valid copyright in the "Joyful Noise"

19   composition, including the allegedly infringed musical component thereof; (2)

20   Defendants copied original, protectable expression from the "Joyful Noise"

21   composition; and (3) damages.

22   As to the first element, ownership, Plaintiffs must prove that their copyright

23   registration was not obtained through fraud on the Copyright Office and does not

24   contain materially false or inaccurate information related to the nature, ownership,

25   or chain of title to the work.  Plaintiffs will not be able to satisfy their burden of

26   proving ownership as the evidence will show that they do not own a copyright in

27   the allegedly infringed instrumental music in "Joyful Noise" and do not own a

28   valid copyright registration in "Joyful Noise."

4

As to the second element, copying, Plaintiffs must establish by a preponderance of the evidence (a) a reasonable possibility that defendant Walter or Gottwald—who authored the allegedly infringing instrumental music of "Dark Horse"—heard "Joyful Noise" before creating their instrumental music and (b) there are substantial similarities between "Dark Horse" and original, protectable elements of "Joyful Noise." 9th Cir. Jury Instrs. No. 17.18. A reasonable opportunity means a "*reasonable* possibility, not merely a bare possibility," that the defendant heard the work. *Loomis v. Cornish*, 836 F.3d 991 (9th Cir. 2016) (emphasis added). As to each:

- Defendants will show that Plaintiffs' admissible evidence, if any, does not prove by a preponderance of evidence that Walter or Gottwald—who authored the allegedly infringing instrumental music of "Dark Horse"—had a reasonable opportunity to hear "Joyful Noise" prior to creating "Dark Horse." Plaintiffs have no direct evidence of Walter or Gottwald hearing "Joyful Noise." Nor do they have circumstantial evidence that they heard it through a chain of events (i.e., an intermediary). (On the eve of trial, Plaintiffs have stated that they will try to prove access because *Our World Redeemed* was nominated for a GRAMMY and Gottwald was a GRAMMY voter that year but they have no evidence to support this wholly speculative theory.) Finally, Plaintiffs also do not have circumstantial evidence that "Joyful Noise" was so widely disseminated that the jury could infer that Walter or Gottwald had a reasonable opportunity to hear it. Indeed, while Plaintiffs intend to introduce evidence of the so-called widespread dissemination of "Joyful Noise," their evidence is in many instances in admissible and does not prove dissemination of a type that makes it reasonably possible that Walter or Gottwald had an opportunity to hear the song; to the contrary it will be proven that Walter and Gottwald did not know who Plaintiffs were and did not hear their music, including "Joyful Noise."

- Plaintiffs will be unable to prove substantial similarity under the relevant extrinsic and intrinsic tests.  More specifically, Plaintiffs will be unable to prove that "Joyful Noise" and "Dark Horse" are either intrinsically or extrinsically substantially similar in original, protected expression.  Their own musicologist was compelled to concede that each of the purported similarities between the works are commonplace and there are substantive differences between the two works.  Defendants' musicology expert, in turn, will show that any the purported similarities between the two works are trite, commonplace, and unremarkable, either separately or in combination with each other and emphatically not substantially similar.  (Plaintiffs have recently stated their intent to argue *striking* similarity but for nearly five years of litigation, Plaintiffs only argued that "Joyful Noise" and "Dark Horse" were substantially similar, including disclosing an expert's report opining to the two works' alleged substantial (not striking) similarity.  The argument is waived and utterly lacking in any evidentiary support, including there being no an expert opinion of striking similarity.)

Moreover, even if Plaintiffs are able to bear their burden of demonstrating that that they own protectable expression in the "Joyful Noise" composition, Plaintiffs bear the burden of substantiating that "Dark Horse" copies more than a *de minimis* amount of protectable expression from the "Joyful Noise" composition.  Here, however, any copying was *de minimis* at best.

In addition, Plaintiffs' claim will fail because they will be unable to rebut the testimony of Walter and Gottwald as to how they created "Dark Horse," including the allegedly infringing instrumental music therein, which will also preclude Plaintiffs from proving copying.

As to the third element, damages, Plaintiffs must establish by a preponderance of evidence that they are entitled to recover (1) the actual damages suffered by them as a result of the infringement, and (2) any profits of Defendants that have a non-speculative causal nexus to the infringement and are not taken into

**FINAL PRETRIAL CONFERENCE ORDER**

account in computing the actual damages.  Plaintiffs will not be able to satisfy their burden of proving damages.  Even if Plaintiffs can show that there were damages, Defendants will show that any such damages are minimal under applicable Ninth Circuit authorities.

**Defendants**:

As more fully set forth in Defendants' Memorandum of Contentions of Fact and Law (Dkt. No. 385), Defendants plan to pursue the following affirmative defenses:

**1(a).  Independent Creation**[1]

**(b).  Elements**: A showing of independent creation will defeat the presumption of copying created by a plaintiff who has proven access and substantial similarity.

**(c).  Key Evidence:** Defendants will present documentary and other physical evidence, as well as witness testimony, including but not limited to the testimony of Walter and Gottwald as to how they created the instrumental music that formed the musical bed for "Dark Horse" in March 2013; the audio recording of this instrumental music and "Dark Horse"; and the testimony of Dr. Ferrara.

**2(a).  *De Minimis* Use**[2]

**(b).  Elements**: A use of a copyrighted work is *de minimis* if the average audience would not recognize the appropriation. Even if Plaintiffs are able to bear their burden of demonstrating that that they own protectable expression in the "Joyful Noise" composition, Plaintiffs bear the burden of substantiating that "Dark

---

[1] It is Defendants' position that independent creation is not an affirmative defense but the Court need not decide this issue now as the parties agree that Defendants can present evidence of their independent creation of "Dark Horse."

[2] It is again Defendants' position that *de minimis* use is not an affirmative defense but include it here to preserve their position.

**FINAL PRETRIAL CONFERENCE ORDER**

Horse" copies more than a *de minimis* amount of protectable expression from the "Joyful Noise" composition.

**(c).   Key Evidence:** Defendants will present documentary and other physical evidence, as well as witness testimony, including but not limited to the testimony of Dr. Ferrara, to show that any use was *de minimis*.

**3(a).  Fair Use**

**(b).   Elements**: The jury may decide that Defendants' use of "Joyful Noise" constitutes fair use by considering the following factors (a) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (b) the nature of the copyrighted work; (c) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (d) the effect of the use upon the potential market for or value of the copyright work.

**(c).   Key Evidence:** Defendants will present documentary and other physical evidence, as well as witness testimony, including but not limited to the testimony of Dr. Ferrara, to show that any use constituted fair use.

<u>**Plaintiffs' Response to Defendants' Position**</u>

**1(a)** These Defendants, like all copyright defendants, claim that they independently created the allegedly infringing instrumental for the song "Dark Horse."  Neither documentary evidence nor the testimony of Dr. Ferrara can establish that the instrumental for "Dark Horse" was independently created. Defendants expect the jury to determine that the instrumental track was independently created based upon Gottwald and Walter's own testimony, alone.  In light of the extrinsic and intrinsic similarity of the instrumental in "Dark Horse" to that of Plaintiff's song "Joyful Noise," and strong indicia of widespread dissemination, contrasted with a lack of any evidence to rebut the presumption of

**FINAL PRETRIAL CONFERENCE ORDER**

1  copying other than Defendants Gottwald and Walter's own testimony, Defendants

2  cannot succeed on their affirmative defense of independent creation.

3      **2(a)** Defendants' position that their use of Plaintiffs' copyrighted work was

4  *de minimis* will be readily defeated.  Not only does the infringing ostinato repeat

5  throughout 45% of "Dark Horse," but also, Katy Perry admitted at her deposition

6  that the ostinato, or what she calls the "chorus," is the most "identifiable part of the

7  song."  Accordingly, Defendants affirmative defense of *de minimis* use will fail.

8      **3(a)** Defendants misconstrue the doctrine of fair use.  It is undisputed that

9  Defendant's song "Dark Horse," which infringes Plaintiffs' copyright in "Joyful

10  Noise," was commercially exploited such that 17 U.S.C § 107 does not apply here.

11      8.  In view of the admitted facts and the elements required to establish the

12  claims and affirmative defenses, the following issues remain to be tried:

13      <u>**Plaintiffs**</u>

14      As more fully set forth in Plaintiffs' Memorandum of Contentions of Fact

15  and Law (Dkt. No. 383), the following issues remain to be tried:

16          • Whether Plaintiffs are the owners of a valid copyright in "Joyful

17            Noise?"

18          • Whether Defendants had access to "Joyful Noise" through proof of (1)

19            a reasonable opportunity to hear it; (2) striking similarity; or (3) an

20            intermediary/nexus?

21          • Whether "Dark Horse" is substantially similar to original elements of

22            "Joyful Noise"?

23          • Whether Defendants are able to sustain their burden of proving their

24            affirmative defense of independent creation?

25          • Whether Defendants are able to sustain their burden of proving their

26            affirmative defense of *de minimis* use?

27          • Whether Defendants are able to sustain their burden of proving their

28            affirmative defense of fair use?

- Whether Plaintiffs sustained actual damages as the result of Defendants' infringement?
- The amount of actual damages Plaintiffs sustained as a result of Defendants' infringement?
- Whether Defendants derived profit attributable to Defendants' infringement?
- The amount of profit derived by Defendants which is attributable to Defendants' infringement?

**<u>Defendants</u>**

As more fully set forth in Defendants' Memorandum of Contentions of Fact and Law (Dkt. No. 385), Defendants submit that the following liability issues remain to be tried:

- Are Plaintiffs unable to sustain their burden of proving that each Defendant infringed Plaintiffs' copyrights in the "Joyful Noise" composition?
- Are Plaintiffs unable to sustain their burden of proving that they are the current owners of a valid copyright in the allegedly infringed instrumental music contained in the "Joyful Noise" composition?
- Are Plaintiffs unable to sustain their burden of proving that they are the current owners of a valid copyright registration in the "Joyful Noise" composition?
- Are Plaintiffs unable to sustain their burden of proving that Defendants copied original, protectable expression from the "Joyful Noise" composition?
- Are Plaintiffs unable to sustain their burden of proving there is a reasonable possibility that defendant Walter or Gottwald—who authored the allegedly infringing instrumental music in "Dark

Horse"—heard "Joyful Noise" before creating their instrumental music?

- Are Plaintiffs unable to sustain their burden of proving that there are substantial similarities between "Dark Horse" and original, protectable elements of "Joyful Noise"?

- Are Plaintiffs unable to sustain their burden of proving copying where Defendants have presented unrebutted evidence of the independent creation of "Dark Horse" and the allegedly infringing instrumental music therein?

- Are Plaintiffs unable to sustain their burden of proving that any copying of "Joyful Noise" in "Dark Horse" rose above the level of *de minimis* use?

- Are Plaintiffs unable to sustain their burden of proving that any use of "Joyful Noise" in "Dark Horse" constitutes fair use?

As more fully set forth in Defendants' Memorandum of Contentions of Fact and Law (Dkt. No. 385), if Plaintiffs prove liability, Defendants submit that the following damages issues remain to be tried:

- Are Plaintiffs unable to sustain their burden of proving that they suffered actual damages as the result of the alleged infringement by each Defendant?

- If Plaintiffs sustains their burden of proving actual damages, what amount of damages have Plaintiffs sustained their burden of proving were the result of the alleged infringement by each Defendant?

- Are Plaintiffs unable to sustain their burden of proving a non-speculative, causal nexus between the alleged infringement by each defendant and the claimed net profits earned by each defendant as a result of their alleged infringement?

FINAL PRETRIAL CONFERENCE ORDER

- If Plaintiffs sustains their burden of proving a non-speculative, causal nexus between the alleged infringement by each defendant and the claimed net profits earned by each defendant as a result of their alleged infringement, what amount of the net profits have Plaintiffs sustained their burden of proving is attributable to the alleged infringement?

- Are Plaintiffs unable to sustain their burden proving a non-speculative, causal nexus between the alleged infringement by each defendant and the claimed net profits earned by each Defendant from the exploitation of sound recordings containing "Dark Horse"?

- If Plaintiffs sustains their burden of proving a non-speculative, causal nexus between the alleged infringement by each defendant and the claimed net profits earned by each Defendant from the exploitation of sound recordings containing "Dark Horse," what amount of the net profits have Plaintiffs sustained their burden of proving is attributable to the alleged infringement?

9.   All discovery is complete.

10.   All disclosures under F.R.Civ.P. 26(a)(3) have been made.

The joint exhibit list of the parties has been filed under separate cover as required by L.R. 16-6.1. Unless all parties agree that an exhibit shall be withdrawn, all exhibits will be admitted without objection at trial, except for the following exhibits:

Plaintiffs object to the following exhibits:

| Exhibit No. | Grounds for Objection |
|---|---|
| 2 | Irrelevant. [FRE 401, 402]<br>Unfairly prejudicial in that it is misleading and confuses the issues. [FRE 403]<br>Lacks foundation. [FRE 602]<br>Lacks authentication. [FRE 901]<br>Hearsay. [FRE 801, 802] |

12

| Exhibit No. | Grounds for Objection |
|---|---|
| 3 | Irrelevant. [FRE 401, 402]<br>Unfairly prejudicial in that it is misleading and confuses the issues. [FRE 403]<br>Lacks foundation. [FRE  602]<br>Lacks authentication. [FRE 901]<br>Hearsay. [FRE 801, 802] |
| 86 | Irrelevant. [FRE 401, 402]<br>Unfairly prejudicial in that it is misleading and confuses the issues. [FRE 403]<br>Lacks foundation. [FRE  602]<br>Lacks authentication. [FRE 901]<br>Hearsay. [FRE 801, 802]<br>Hearsay within hearsay. [FRE 805] |
| 87 | Irrelevant. [FRE 401, 402]<br>Unfairly prejudicial in that it is misleading and confuses the issues. [FRE 403]<br><br>This evidence is the subject of Plaintiff's *Motion In Limine* #2 to exclude evidence not relevant to the claims at issue [Doc. 328]. |
| 94 | Irrelevant. [FRE 401, 402]<br>Unfairly prejudicial in that it is misleading and confuses the issues. [FRE 403]<br>Lacks foundation. [FRE  602]<br>Lacks authentication. [FRE 901] |
| 95 | Irrelevant. [FRE 401, 402]<br>Unfairly prejudicial in that it is misleading and confuses the issues. [FRE 403]<br>Lacks foundation. [FRE  602]<br>Lacks authentication. [FRE 901] |
| 96 | Irrelevant. [FRE 401, 402]<br>Unfairly prejudicial in that it is misleading and confuses the issues. [FRE 403]<br>Lacks foundation. [FRE  602]<br>Lacks authentication. [FRE 901] |
| 97 | Irrelevant. [FRE 401, 402]<br>Unfairly prejudicial in that it is misleading and confuses the issues. [FRE 403]<br>Lacks foundation. [FRE  602]<br>Lacks authentication. [FRE 901] |

Defendants object to the following exhibits:

13

| Exhibit No. | Grounds for Objection. |
|---|---|
| 14 | Relevance<br>Rule 403<br>Hearsay<br>Foundation<br>Authentication<br><br>*See* Defendants Motion *in Limine* No. 4, Dkt. 340 |
| 15 | Relevance<br>Rule 403<br>Hearsay<br>Foundation<br>Authentication<br><br>*See* Defendants Motion *in Limine* No. 4, Dkt. 340 |
| 16 | Defendants do not know what this document is and therefore reserve their right to object.  Out of an abundance of caution, they also state the following objections:<br>Relevant<br>Rule 403<br>Foundation<br>Authentication |
| 19 | Relevance<br>Rule 403<br>Hearsay<br><br>*See* Defendants Motion *in Limine* No. 3, Dkt. 339 |
| 20 | Relevance<br>Rule 403<br>Hearsay<br><br>*See* Defendants Motion *in Limine* No. 3, Dkt. 339 |
| 21 | Relevance<br>Rule 403<br>Hearsay<br><br>*See* Defendants' Motion *in Limine* No. 6, Dkt. 342 |
| 22 | Relevance<br>Rule 403<br>Hearsay<br><br>*See* Defendants' Motion *in Limine* No. 6, Dkt. 342. |
| 23 | Not produced in discovery<br>Relevance<br>Rule 403<br>Hearsay<br>Foundation<br>Authentication<br><br>*See* Defendants Motion *in Limine* No. 4, Dkt. 340 |
| 24 | Not produced in discovery |

14

| Exhibit No. | Grounds for Objection. |
|---|---|
| | Relevance<br>Rule 403<br>Hearsay<br>Foundation<br>Authentication<br><br>*See* Defendants Motion *in Limine* No. 4, Dkt. 340 |
| 25 | Relevance<br>Rule 403<br>Hearsay<br><br>*See* Defendants' Motion *in Limine* No. 6, Dkt. 342 |
| 26 | Relevance<br>Rule 403<br>Hearsay |
| 27 | Relevance<br>Rule 403<br>Hearsay |
| 28 | Relevance<br>Rule 403<br>Hearsay |
| 29 | Relevance<br>Rule 403<br>Hearsay<br>Foundation |
| 30 | Rule 403 (duplicative)<br>Not produced in discovery |
| 31 | Rule 403 (duplicative)<br>Not produced in discovery |
| 32 | Rule 403 (duplicative)<br>Not produced in discovery |
| 33 | Relevance<br>FRE 403 (duplicative)<br>Hearsay |
| 34 | Relevance<br>FRE 403 (duplicative)<br>Hearsay |
| 35 | Relevance<br>FRE 403 (duplicative)<br>Hearsay |
| 36 | Relevance |

**FINAL PRETRIAL CONFERENCE ORDER**

| Exhibit No. | Grounds for Objection. |
|---|---|
| | FRE 403 (duplicative)<br>Hearsay |
| 37 | Relevance<br>FRE 403 (duplicative)<br>Hearsay |
| 38 | Relevance<br>FRE 403 (duplicative)<br>Hearsay |
| 39 | Relevance<br>FRE 403 (duplicative)<br>Hearsay |
| 40 | Relevance<br>FRE 403 (duplicative)<br>Hearsay |
| 41 | Relevance<br>FRE 403 (duplicative)<br>Hearsay |
| 42 | Relevance<br>FRE 403 (duplicative)<br>Hearsay |
| 43 | Relevance<br>FRE 403 (duplicative)<br>Hearsay |
| 44 | Relevance<br>FRE 403 (duplicative)<br>Hearsay |
| 45 | Relevance<br>FRE 403 (duplicative)<br>Hearsay |
| 46 | Relevance<br>FRE 403 (duplicative)<br>Hearsay |
| 47 | Relevance<br>FRE 403 (duplicative)<br>Hearsay |
| 48 | Hearsay<br>Foundation<br>Authentication<br>Relevance |

| Exhibit No. | Grounds for Objection. |
|---|---|
| 49 | *See* Defendants' Motion *in Limine* No. 1, Dkt. 337<br><br>Hearsay<br>Foundation<br>Authentication<br>Relevance<br>FRE 403 |
| 51 | *See* Defendants' Motion *in Limine* No. 1, Dkt. 337<br><br>Hearsay<br>Relevance<br>FRE 403<br>Foundation<br>Authentication |
| 52 | Hearsay<br>Foundation<br>Authentication |
| 53 | Hearsay<br>Relevance<br>FRE 403<br>Foundation<br>Authentication |
| 54 | Hearsay<br>Relevance<br>FRE 403<br>Foundation<br>Authentication |
| 55 | Hearsay<br>Relevance<br>FRE 403<br>Foundation<br>Authentication |
| 57 | Relevance<br>Rule 403<br>Foundation<br>Authentication |
| 59 | Playing the video is duplicative, wastes time, is not relevant, and violates FRE 403 |
| 60 | Playing the video is duplicative, wastes time, is not relevant, and violates FRE 403 |
| 61 | Playing the video is duplicative, wastes time, is not relevant, and violates FRE 403 |

**FINAL PRETRIAL CONFERENCE ORDER**

| Exhibit No. | Grounds for Objection. |
|---|---|
| 62 | Playing the video is duplicative, wastes time, is not relevant, and violates FRE 403 |
| 63 | Playing the video is duplicative, wastes time, is not relevant, and violates FRE 403 |
| 64 | Rule 403<br>Foundation<br>Authentication<br>Hearsay<br><br>*See* Defendants' Motion *in Limine* No. 8, Dkt. 344 |
| 65 | Rule 403<br>Foundation<br>Authentication<br>Hearsay<br><br>*See* Defendants' Motion *in Limine* No. 8, Dkt. 344 |
| 66 | Rule 403<br>Foundation<br>Authentication<br>Hearsay<br><br>*See* Defendants' Motion *in Limine* No. 8, Dkt. 344 |
| 67 | Not produced in discovery<br>Rule 403<br>Foundation<br>Authentication<br>Hearsay<br><br>*See* Defendants' Motion *in Limine* No. 8, Dkt. 344 |
| 68 | Not produced in discovery<br>Rule 403<br>Foundation<br>Authentication<br>Hearsay<br><br>*See* Defendants' Motion *in Limine* No. 8, Dkt. 344 |
| 69 | Rule 403<br>Foundation<br>Authentication<br>Hearsay<br><br>*See* Defendants' Motion *in Limine* No. 7, Dkt. 343 |
| 70 | Relevance<br>Rule 403<br>Hearsay<br><br>*See* Defendants' Motion *in Limine* No. 9, Dkt. 345 |
| 71 | Relevance<br>Rule 403 |

**FINAL PRETRIAL CONFERENCE ORDER**

| Exhibit No. | Grounds for Objection. |
|---|---|
| | Hearsay<br><br>*See* Defendants' Motion *in Limine* No. 9, Dkt. 345 |
| 72 | Relevance<br>Rule 403<br>Hearsay<br><br>*See* Defendants' Motion *in Limine* No. 9, Dkt. 345 |
| 73 | Relevance<br>Rule 403<br>Hearsay<br><br>*See* Defendants' Motion *in Limine* No. 9, Dkt. 345 |
| 77 | Relevance<br>Rule 403<br>Foundation<br>Authentication<br><br>*See* Defendants Motion *in Limine* No. 1, Dkt. 337 |
| 78 | Relevance<br>Rule 403<br>Foundation<br>Authentication |
| 79 | Relevance<br>FRE 403<br>Foundation<br>Authentication<br>Hearsay |
| 80 | Hearsay<br>Relevance<br>Rule 403 |
| 81 | Hearsay<br>FRE 403<br><br>*See* Defendants' Partial *Daubert* Motion, Dkt. 348 |
| 82 | Hearsay<br>FRE 403<br><br>*See* Defendants' Partial *Daubert* Motion, Dkt. 348 |
| 83 | Hearsay<br>Authentication<br>Foundation<br>FRE 702<br>FRE 703<br><br>*See* Defendants' Partial *Daubert* Motion, Dkt. 348 |
| 84 | Hearsay<br>Authentication |

19

**FINAL PRETRIAL CONFERENCE ORDER**

| Exhibit No. | Grounds for Objection. |
|---|---|
| | Foundation<br>FRE 702<br>FRE 703<br><br>*See* Defendants' Partial *Daubert* Motion, Dkt. 348 |
| 85 | Hearsay<br>Authentication<br>Foundation<br>FRE 702<br>FRE 703<br><br>*See* Defendants' Partial *Daubert* Motion, Dkt. 348 |
| 98 | Duplicative, time consuming, and irrelevant due to stipulation of fact |
| 99 | Duplicative, time consuming, and irrelevant due to stipulation of fact |
| 100 | Duplicative, time consuming, and irrelevant due to stipulation of fact |
| 101 | Duplicative, time consuming, and irrelevant due to stipulation of fact |
| 102 | Duplicative, time consuming, and irrelevant due to stipulation of fact |
| 103 | Duplicative, time consuming, and irrelevant due to stipulation of fact |
| 104 | Duplicative, time consuming, and irrelevant due to stipulation of fact |
| 105 | Duplicative, time consuming, and irrelevant due to stipulation of fact |
| 106 | Duplicative, time consuming, and irrelevant due to stipulation of fact |
| 107 | Duplicative, time consuming, and irrelevant due to stipulation of fact |
| 108 | Duplicative, time consuming, and irrelevant due to stipulation of fact |
| 109 | Duplicative, time consuming, and irrelevant due to stipulation of fact |
| 110 | Duplicative, time consuming, and irrelevant due to stipulation of fact |
| 111 | Relevance<br>Rule 403<br><br>*See* Defendants' *Daubert* Motion, Dkt. 351 |
| 112 | Relevance<br>Rule 403<br>Authentication<br>Foundation<br><br>*See* Defendants' *Daubert* Motion, Dkt. 351 |
| 113 | Hearsay<br>FRE 403 |

| Exhibit No. | Grounds for Objection. |
|---|---|
| | See Defendants' *Daubert* Motion, Dkt. 351 |
| 114 | Hearsay<br>FRE 403<br><br>See Defendants' *Daubert* Motion, Dkt. 351 |
| 115 | Hearsay<br>FRE 403<br><br>See Defendants' *Daubert* Motion, Dkt. 351 |

11.  Witness lists of the parties have been filed with the Court.

Only the witnesses identified in the lists will be permitted to testify (other than solely for impeachment).  Any party may call any witness listed by another party.

Each party intending to present evidence by way of deposition designations will mark such depositions in accordance with L.R. 16-2.7 and L.R. 32-1 before the appropriate phase of trial (liability and damages).  For this purpose, the following depositions shall be lodged with the Clerk as required by L.R. 32-1:

Plaintiffs:

- Silvio Pietroluongo (Billboard)
- Defendant Katherine Hudson (p/k/a Katy Perry)
- Defendant Sarah Hudson
- Defendant Karl Martin Sandburg (p/k/a Max Martin)

Defendants:

- Silvio Pietroluongo (Billboard)
- Marcus Gray
- Emanuel Lambert
- Chike Ojukwu
- Todd Decker
- Michael Einhorn

21

1    Nothing herein is intended to limit the parties' ability to use deposition

2  testimony afforded by the Federal Rules and each party will be allowed to present

3  the testimony of an adverse party, as well as their agents and experts.

4    Each party will also be allowed to present the deposition testimony of an

5  opposing party in the event that the party unexpectedly does not appear at

6  trial.  Such designations will need to be disclosed within one day of the party being

7  given notice of the other party's complete unavailability.

8    Plaintiffs object to the presentation of testimony by deposition of the

9  following witnesses: Todd Decker; Michael Einhorn.  Plaintiffs will object to

10  specific deposition testimony identified by Defendants in the index lodged with the

11  Court pursuant to Local Rules 16-2.7(c) and 32-1.

12    Defendants object to the presentation of testimony by deposition by Silvio

13  Pietroluongo for the reasons set forth in their Motion *in Limine* No. 9 but reserve

14  the right to present his testimony as needed in response to testimony presented by

15  Plaintiffs.  Defendants will object to specific deposition testimony identified by

16  Plaintiffs in the index lodged with the Court pursuant to Local Rules 16-2.7(c) and

17  32-1.

18    12.  The following law and motion matters and motions *in limine*, and no

19  others, are pending or contemplated:

20    a.  Defendants' Motion in Limine No. 1 to Exclude Evidence or

21      Argument Regarding Alleged Violations of Plaintiffs' So-Called

22      Moral Rights

23    b.  Defendants' Motion in Limine No. 2 to Preclude Evidence or

24      Argument of Striking Similarity

25    c.  Defendants' Motion in Limine No. 3 to Exclude Evidence and

26      Argument Regarding Lack of Evidence of Sales

27    d.  Defendants' Motion in Limine No. 4 to Exclude Evidence

28      Regarding Live Performances of "Joyful Noise"

e.  Defendants' Motion in Limine No. 5 to Exclude Evidence of Purported Playing of "Joyful Noise" During Radio and TV Interviews

f.  Defendants' Motion in Limine No. 6 to Exclude Evidence of Critical Acclaim for "Joyful Noise" In The Christian Music Community

g.  Defendants' Motion in Limine No. 7 to Exclude Evidence or Argument Regarding Myspace Plays

h.  Defendants' Motion in Limine No. 8 to Exclude Untimely And Unauthenticated Youtube Screenshot

i.  Defendants' Motion in Limine No. 9 to Exclude Billboard Evidence

j.  Defendants' Motion in Limine No. 10 to Exclude Evidence or Argument Regarding Access through The 51st Grammy Awards Show

k.  Defendants' Motion in Limine No. 11 to Exclude Evidence or Argument Relating to Defendants' Financial Condition

l.  Defendants' Motion to Preclude Portions of the Testimony of Plaintiffs' Expert Todd Decker at Trial

m. Defendants' Motion to Preclude the Testimony of Plaintiffs' Expert Michael Einhorn at Trial

n.  Plaintiffs' Motion in Limine No. 1 to preclude defendants from making argument that would distort the standard for "widespread dissemination'

o.  Plaintiffs' Motion in Limine No. 2 to exclude evidence, reference and argument related to matters not relevant to the issues in this case

p.  Plaintiffs' Motion in Limine No. 3 to exclude evidence, reference

1   and argument related to matters not relevant to the issues in this

2   case.

3   q.  Plaintiffs' Daubert Motion No. 1 to preclude the testimony of

4   Defendants' Expert Lawrence Ferrara (on the valuation topics set

5   forth in his April 12, 2019 report)

6   r.  Plaintiffs' Daubert Motion No. 2 to preclude the testimony of

7   Defendants' Expert Jason King

8   s.  Plaintiffs' Dauber t Motion No. 3 to preclude the testimony of

9   Defendants' Expert Charles Diamond

10  t.  Plaintiffs' Daubert Motion No. 4 to preclude the testimony of

11  Defendants' Expert Zachary P. St. Martin

12  u.  Plaintiffs' Daubert Motion No. 5 to preclude the testimony of

13  Defendants' Expert Bill Rosenblatt.

14  v.  Defendants contend that because the effective date of the copyright

15  registration for the "Joyful Noise" composition is more than five

16  years after the publication of "Joyful Noise," the copyright

17  registration is not prima facie evidence of the validity of the

18  copyright and the facts stated in the certificate.  17 U.S.C.

19  § 401(c).  As such, the Court will need to decide what evidentiary

20  weight, if any, is given to the registration.  *Id.*

21  w.  Plaintiffs contend that because Defendants explicitly abandoned

22  their affirmative defense No. 13 related to the existence of a valid

23  and enforceable copyright registration, which Defendants raised

24  again for the first time in their Memorandum of Contentions of

25  Law and Fact (Dkt. No. 385), the Court must determine whether

26  Defendants are barred from pursuing such defense at trial.

27  13.  Bifurcation of the following issues for trial is ordered. The trial will

28  be bifurcated into liability and damages.  Whether and which Defendants have

infringed Plaintiffs' copyright will be the issue of the first trial.  If liability is found, the type(s) and amount(s) of damages owed to Plaintiffs, if any, will be the issue of the second trial.  Plaintiffs contend that an unresolved issue remains regarding whether Plaintiffs will be entitled to conduct discovery on and assert as part of their damages claim profits related to Defendants' concert revenues. Defendants contend that the issue was resolved and Plaintiffs are not entitled to conduct discovery or seek profits related to Defendants' concert revenues.

14.    The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues remaining to be litigated, this Final Pretrial Conference Order shall supersede the pleadings and govern the course of the trial of this cause, unless modified to prevent manifest injustice.

**IT IS SO ORDERED.**

Dated:  July 1, 2019          By: _____
                                  Honorable Christina A. Snyder
                                  Judge of the United States District Court

1   Approved as to form and content:

2   DATED: June 27, 2019                    CAPES SOKOL GOODMAN
3                                           SARACHAN PC

4                                           By:  /s/ Michael A. Kahn
5                                           Michael A. Kahn (*pro hac vice*)

6                                           Eric F. Kayira (*pro hac vice*)
                                            KAYIRA LAW, LLC
7
8                                           Attorneys for Plaintiffs

9   DATED: June 27, 2019                    MITCHELL SILBERBERG & KNUPP LLP
10
11                                          By:  /s/ Aaron M. Wais
                                            Aaron M. Wais (SBN 250671)
12                                          Attorneys for Defendants other than Katheryn
                                            Elizabeth Hudson, and Kitty Purry, Inc.
13

14  DATED: June 27, 2019                    GREENBERG TRAURIG, LLP
15
16                                          By:  /s/ Vincent H. Chieffo
                                            Vincent H. Chieffo (SBN 49069)
17                                          Attorneys for Defendants Katheryn Elizabeth
                                            Hudson p/k/a Katy Perry and Kitty Purry, Inc.
18

19
20                    **<u>ATTESTATION REGARDING SIGNATURES</u>**

21          Pursuant to Local Civil Rule 5-4.3.4(a)(2)(i), I hereby attest that all parties,

22  on whose behalf this filing is jointly submitted, concur in this filing's content and

23  have authorized its filing.

24
    Dated: July 27, 2019                    /s/ Aaron M. Wais
25                                          Aaron M. Wais

26

27

28

**FINAL PRETRIAL CONFERENCE ORDER**

## Schedule 5(a)

In the liability trial, the following facts are admitted and require no proof.

1.     The website www.youtube.com is an online video-sharing service owned by Google where users can upload, share, and watch videos.

2.     YouTube launched in 2005.

3.     By 2010, users were uploading more than 50,000 hours of video content to YouTube each day and there were more than two billion views of YouTube videos each day.

4.     By 2012, users were uploading more than 85,000 hours of video content to YouTube each day and there were more than four billion views of YouTube videos each day.

5.     Today, YouTube has over a billion users and there are more than 576,000 hours of video content being uploaded to YouTube each day, and each day users watch a billion hours of video, generating billions of "views" each day.

6.     Among the records maintained by Google for each video that is uploaded to YouTube is the total number of "views" that a video has received at a particular moment in time—e.g., as of a specific date at a specific time.  This is called a "view count."

7.     A view count does not identify any one person in particular as having watched a particular video.

8.     Moreover, a "view" does not necessarily mean that a human actually watched or listened to the video while it was playing; it only means that the video was played.

9.     In addition, a "view" does not necessarily mean that a video was played in its entirety or was even played for more than a few seconds.

10.     Google takes proprietary measures to improve the accuracy of video view counts so that these numbers better reflect "quality views" by actual humans

1   and not computer programs or other means that may be used to artificially inflate a

2   video's view count.

3        11.    Video views are algorithmically validated using proprietary means.

4        12.    To help verify that views are real and accurate, Google may also

5   temporarily slow down, freeze, or adjust the view count, as well as discard suspect

6   playbacks in its discretion. Because Google is constantly validating views, a view

7   count for a particular video is always subject to being adjusted.  Although Google

8   takes measures to ensure that a video view count reflects only quality views,

9   Google cannot guarantee that all of the views reflected in a video view count are in

10  fact quality views, as the view count may have been improperly inflated by means

11  that were not detected by Google.

12       13.    Google is aware of certain instances in the past in which video view

13  counts were improperly inflated by third parties using automated means in

14  violation of YouTube policy.

15       14.    In 2008, there were approximately ▮▮▮▮▮ videos available for

16  viewing on YouTube, including approximately ▮▮▮▮▮▮ that were

17  uploaded to YouTube in 2008 alone.  The available videos accumulated

18  approximately ▮▮▮▮ views during 2008.

19       15.    In 2009, there were approximately ▮▮▮▮▮ videos available for

20  viewing on YouTube, including approximately ▮▮▮▮ videos that were

21  uploaded to YouTube in 2009 alone.  The available videos accumulated

22  approximately ▮▮▮▮ views during 2009.

23       16.    In 2010, there were approximately ▮▮▮▮▮ videos available for

24  viewing on YouTube, including approximately ▮▮▮▮ videos that were

25  uploaded to YouTube in 2010 alone.  The available videos accumulated

26  approximately ▮▮▮▮ views during 2010.

27       17.    The YouTube videos receiving the most "views" in 2010 were:

28

**FINAL PRETRIAL CONFERENCE ORDER**

a. First, the Official Music Video for Justin Bieber's song, Baby, featuring Ludacris, received 425,688,273 views in 2010;

b. Second, the video for Shakira's song, Waka Waka (This Time for Africa), received 270,763,562 views in 2010;

c. Third, the video for Lady Gaga's song, Bad Romance, received 266,191,920 views in 2010;

d. Fourth, the Official Music Video for Eminem's song, Love the Way Lie, featuring Rihanna, received 251,890,764 views in 2010;

e. Fifth, the Official Video for Justin Bieber's song, One Time, received 183,274,415 views in 2010.

18.     In 2011, there were approximately ███████ videos available for viewing on YouTube, including approximately ███████ videos that were uploaded to YouTube in 2011 alone. The available videos accumulated approximately ██████ views during 2011.

19.     The YouTube videos receiving the most "views" in 2011 were:

a. First, the Jennifer Lopez song, On the Floor, featuring Pitbull, received 464,437,051 views in 2011;

b. Second, the video Crocodile Attack received 407,888,327 views in 2011;

c. Third, the video for LMFAO's song, Party Rock Anthem, featuring Lauren Bennett, GoonRock, received 339,831,952 views in 2011;

d. Fourth, the video Sterio heart received 313,286,752 views in 2011;

e. Fifth, the Official Music Video for Justin Bieber's song, Baby, featuring Ludacris, received 259,746,426 views in 2011.

**FINAL PRETRIAL CONFERENCE ORDER**

20.     In 2012, there were approximately ███ videos available for viewing on YouTube, including approximately ███ videos that were uploaded to YouTube in 2012 alone.  The available videos accumulated approximately ███ views during 2012.

21.     The YouTube videos receiving the most "views" in 2012 were:

   a. First, the video for Psy's song, Gangnam Style M/V, received 1,101,849,272 views in 2012;

   b. Second, the video for Carly Rae Jepsen's song, Call Me Maybe, received 373,789,532 views in 2012;

   c. Third, the Official Video for Michel Telo's song, Ai Se Eu Te Pego, received 373,608,879 views in 2012;

   d. Fourth, the Official Video for Gotye's song, Somebody That I Used To Know, featuring Kimbra, received 331,408,797 views in 2012;

   e. Fifth, the Official Video for One Direction's song, What Makes You Beautiful, received 271,945,208 views in 2012.

22.     In 2013, there were approximately ███ videos available for viewing on YouTube, including approximately ███ videos that were uploaded to YouTube in 2013 alone.  The available videos accumulated approximately ███ views during 2013.

23.     The YouTube videos receiving the most "views" in 2013 were:

   a. First, the video for Psy's song, Gangnam Style M/V, received 783,446,910 views in 2013;

   b. Second, the video for Psy's song, Gentleman M/V, received 619,058,370 views in 2013;

   c. Third, the Official Video for Miley Cyrus's song, Wrecking Ball, received 461,848,016 views in 2013;

**FINAL PRETRIAL CONFERENCE ORDER**

d.  Fourth, the Official Video for Macklemore & Ryan Lewis's song, Thrift Shop, featuring Wanz, received 440,889,984 views in 2013;

e.  Fifth, the Official Video for Miley Cyrus's song, We Can't Stop, received 332,047,880 views in 2013.

24.  For each video in the above paragraphs for 2008-2013, the view count stated is only for the specific video identified, not all videos of that song posted on YouTube.

25.  The sound recording of "Joyful Noise" is embodied in five videos posted to YouTube:

a.  A video posted to YouTube on January 21, 2011, titled "Flame—Joyful Noise" at the url, https://www.youtube.com/watch?v=QCcW-guAs_s (Video 1).

b.  A video posted to YouTube on January 21, 2011, titled "Flame—Joyful Noise" at the url, https://www.youtube.com/watcv=jTLeHuvHXuk (Video 2)

c.  A video posted to YouTube on December 18, 2009, titled "Joyful Noise—Flame feat. Lecrae and John Reilly" at the url, https://www.youtube.com/watch?v=PwoEOB3Jr8Y (Video 3).

d.  A video published to YouTube on November 7, 2009, titled "Flame—Joyful Noise with Lyrics" and available at the url, https://www.youtube.com/watch?v=zaUIncoyJ4w (Video 4).

e.  A video posted to YouTube on March 15, 2008, titled "Flame ft. Lecrae and John Reilly – Joyful Noise LYRICS" at the url, https://www.youtube.com/watch?v=HU3gAGWoKYM (Video 5).

26.  As of March 11, 2012, Video 1 had a view count of 293,956.

27.  As of March 11, 2012, Video 2 had a view count of 483,931.

31

1  28.    As of March 11, 2012, Video 3 had a view count of 7,283.

2  29.    As of March 11, 2012, Video 4 had a view count of 18,153.

3  30.    As of March 11, 2012, Video 5 had a view count of 561,718.

4  31.    The view counts for Videos 1-5 do not identify any one person in

5  particular as having watched any of the five videos listed.

6  32.    Myspace LLC operates the website service www.myspace.com.

7  Myspace is a social networking website, which was founded in 2003.

8  33.    Throughout its history, Myspace has offered an interactive, user-

9  submitted network of friends, each of whom creates a personal profile page on

10  which the user can blog, upload music, videos, and photographs.

11  34.    Myspace tracks and displays the number of times that play of a

12  specific song on a specific profile page is initiated. This "play count" is displayed

13  on the profile page either in a column titled "plays" or by displaying the play count

14  adjacent to the arrow "play" button on the profile page.

15  35.    Each "play" does not necessarily mean that a person actually listened

16  to the song while it was playing; instead, it indicates that the playing of the song

17  was initiated.

18  36.    Each "play" does not necessarily mean that the song was played in its

19  entirety or was even played for more than a few seconds.

20  37.    Each "play" of a song does not necessarily mean that a person

21  initiated the play of a song.  During Myspace's history, users have used "bots,"

22  which are autonomous programs that can interact with computer systems and

23  websites such as Myspace, to autonomously initiate plays of a song.

24  38.    A "play" does not identify any one person in particular as having

25  initiated playback or listened to the song in question.  Myspace has no records of

26  and cannot identify whether any one person in particular has played or listened to a

27  song.

28

**FINAL PRETRIAL CONFERENCE ORDER**

**<u>Schedule 5(b)</u>**

In the damages phase of trial, the following facts are admitted and require no proof.  Plaintiffs agree not to seek any additional discovery of financial data or backup materials from the Defendants.

The admissions below are without prejudice to the Parties' claims or positions in this case, including the Defendants' position that there is no liability. Defendants reserve the right to challenge the amount of alleged damages, including but not limited to the percentage or amount, if any, of income or profits earned by Defendants that Plaintiffs may appropriately seek as damages.  Plaintiffs, in turn, reserve their right to challenge the deductibility of some or all of the categories of costs incurred by Defendants.

1.      Houston received total gross income of $█████████ from the exploitation of the composition and sound recording of "Dark Horse" in the United States.

2.      Houston incurred costs attributable to the aforementioned exploitation of "Dark Horse" in the amount of $████████, consisting of legal and accounting fees.

3.      Sandberg received total gross income of $█████████ from the exploitation of the composition and sound recording of "Dark Horse" in the United States.

4.      Sandberg incurred the following costs attributable to the aforementioned exploitation of "Dark Horse."

                a.   Management commissions in the amount of $████████, calculated as ████████████████████████████ ████;

**FINAL PRETRIAL CONFERENCE ORDER**

b. Legal, administrative, and accounting fees in the amount of $██████████████████████

5.   Gottwald received total gross income of $██████ from the exploitation of the composition and sound recording of "Dark Horse" in the United States.

6.   Gottwald incurred the following costs attributable to the aforementioned exploitation of "Dark Horse."

a. Production expenses in the amount of $█████

b. Professional fees in the amount of $██████.

7.   Kasz Money Inc. received total gross income of $████████ from the exploitation of the composition and sound recording of "Dark Horse" in the United States.

8.   Kasz Money Inc. incurred the following costs attributable to the aforementioned exploitation of "Dark Horse."

a. Production expenses in the amount of $█████

b. Professional fees in the amount of $██████.

9.   Walter received total gross income of $██████ from the exploitation of the composition and sound recording of "Dark Horse" in the United States.

10.   Walter incurred the following costs attributable to the aforementioned exploitation of "Dark Horse."

a. Management fees in the amount $██████, calculated as █████████████████████████;

b. Legal fees in the amount of $██████, calculated as ████████████████████████████; and

**FINAL PRETRIAL CONFERENCE ORDER**

1      c.  Business management fees in the amount of $███████,

2          calculated as ████████████████████████████████████

3          █████

4  11.    Sarah Hudson received total gross income of $██████████ from the

5  exploitation of the composition and sound recording of "Dark Horse" in the United

6  States.

7  12.    Sarah Hudson incurred the following costs attributable to the

8  aforementioned exploitation of "Dark Horse."

9      a.  Legal fees in the amount $████████, calculated as a percentage

10         of an advance from Prescription Songs;

11     b.  Legal fees in the amount of $███████, calculated as a ███

12         ██████████████████████████████████████████████████

13         █████████████████; and

14     c.  Business management fees in the amount of $████████,

15         calculated as ████████████████████████████████████

16         █████

17 13.    Perry received total gross income of $████████████ from the

18 exploitation of the composition and sound recording of "Dark Horse" in the United

19 States.

20 14.    Perry incurred the following costs attributable to the aforementioned

21 exploitation of "Dark Horse."

22     a.  Management commissions in the amount of $█████████,

23         calculated as ████████████████████████████████████

24         █████

25     b.  Legal fees in the amount of $█████████, calculated as ███

26         ██████████████████████████████████████████████████

27         ████████████;

28

35

**FINAL PRETRIAL CONFERENCE ORDER**

c.  Business management and accounting fees in the amount of $███████, calculated as ███████████████████ ██████████.

15.    Kobalt Music Publishing America, Inc. received net income of $████████ from the exploitation of the composition and sound recording of "Dark Horse" in the United States.

16.    WB Music Corp. received net income of $████████ from the exploitation of the composition and sound recording of "Dark Horse" in the United States.

**FINAL PRETRIAL CONFERENCE ORDER**

## Schedule 6(a)

In the liability phase of trial, the following facts are stipulated to without prejudice to Defendants' evidentiary objections to the matters stated therein, as stated in Defendants' Motion *in Limine* No. 7.

1.      Pages 5-8 of Exhibit 69 is an archived screenshot from the Internet Archive from the URL http:/www.myspace.com:80/lecrae as of September 7, 2011.

2.      Page 9 of Exhibit 69 is an archived screenshot from the Internet Archive from the URL https:/myspace.com/lecrae/music/songs?filter=featured as of June 13, 2013.

Pages 10-11 of Exhibit 69 is an archived screenshot from the Internet Archive from the URL https:/myspace.com/flame314 as of January 24, 2012.

**FINAL PRETRIAL CONFERENCE ORDER**