UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL    'O'

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**       (IN CHAMBERS) - MOTIONS *IN LIMINE*

## I.    INTRODUCTION

On July 1, 2014, Marcus Gray (P.K.A. Flame), Lecrae Moore (P.K.A. Lecrae), Emanuel Lambert, and Chike Ojukwu filed this action alleging that the song "Dark Horse" infringes upon plaintiffs' copyright in the song "Joyful Noise."  Dkt. 1.  Since then, plaintiffs have amended their pleadings to add or dismiss various parties.  The operative Third Amended Complaint ("TAC"), filed on November 1, 2016, no longer lists Moore as a plaintiff and alleges copyright infringement by Katheryn Elizabeth Hudson (P.K.A. Katy Perry, hereinafter "Perry"); Jordan Houston (P.K.A. Juicy J); Lukasz Gottwald (P.K.A. Dr. Luke); Sarah Theresa Hudson; Karl Martin Sandberg (P.K.A. Max Martin); Henry Russell Walter (P.K.A. Cirkut); Kasz Money, Inc.; Capitol Records, LLC; Kitty Purry, Inc.; UMG Recordings, Inc.; Universal Music Group, Inc.; WB Music Corp.; BMG Rights Management (US) LLC; and Kobalt Music Publishing America, Inc.  Dkt. 172.  A trial in this matter is currently scheduled to begin on July 16, 2019.

The Court held a hearing on July 1, 2019.  Having carefully considered the parties' arguments, the Court finds and concludes as follows.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

## II.   PLAINTIFFS' MOTIONS *IN LIMINE*

### A.   Plaintiffs' Corrected Motion *in limine* No. 1 (Dkt. 333, filed on June 12, 2019)

Defendants plan to argue at trial that plaintiffs' evidence of widespread dissemination through Myspace and YouTube is insufficient to show that it was reasonably possible for defendants to have heard "Joyful Noise" because defendants would have had to actively sought out "Joyful Noise" to access it through those mediums. See Dkt. 369. Plaintiffs request an order precluding "defendants from arguing that an absence of direct evidence of access defeats plaintiff's ability to prove access" or that defendants needed to take "affirmative action to hear the song." Dkt. 333 at 3, 4. Defendants represent that they do not intend to argue that plaintiffs must show direct evidence of access and contend that there is nothing improper about their arguments about how users listen to music on Myspace and YouTube because it goes to whether there was a "*reasonable* possibility, not merely a bare possibility," that defendants heard "Joyful Noise." Dkt. 369 at 4 (quoting Loomis v. Cornish, 836 F.3d 991, 995 (9th Cir. 2016) (emphasis added)).

"Proof of access requires an opportunity to view or to copy plaintiff's work." L.A. Printex Indus., Inc. v. Aeropostale, Inc., 676 F.3d 841, 846 (9th Cir. 2012) (internal quotation marks omitted) (citing Three Boys Music Corp. v. Bolton, 212 F.3d 477, 482 (9th Cir. 2000)). "To prove access, a plaintiff must show a reasonable possibility, not merely a bare possibility, that an alleged infringer had the chance to view the protected work." Id. (quoting Art Attacks Ink, LLC v. MGA Entm't Inc., 581 F.3d 1138, 1143 (9th Cir. 2009)). "Absent direct evidence of access, a plaintiff can prove access using circumstantial evidence of either (1) a 'chain of events' linking the plaintiff's work and the defendant's access, or (2) 'widespread dissemination' of the plaintiff's work." L.A. Printex, 676 F.3d at 847 (quoting Three Boys Music, 212 F.3d at 482). A presumption of copying is created when a copyright plaintiff establishes both reasonable access and substantial similarity. See Three Boys Music, 212 F.3d at 486. The burden then "shifts to the defendant to rebut that presumption through proof of independent creation." Id. (citation omitted).

Plaintiffs contend that "whether any viewer, including defendants, had direct access to and/or took specific affirmative action to hear the song on, for example, YouTube, is not a required element of the proof of widespread dissemination[.]" Dkt.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

333 at 6. The Court observes, however, that courts routinely assess the characteristics and practices of a defendant in determining whether a plaintiff has established access through widespread dissemination. See e.g., Three Boys Music Corp. v. Bolton, 212 F.3d at 483 (finding that plaintiffs presented sufficient evidence of widespread dissemination of an Isley Brothers song by showing, in part, that Bolton grew up listening to groups like the Isley Brothers, that the infringed song was played on the radio in the area where Bolton grew up, and that Bolton confessed to being a huge fan of the Isley Brothers); Loomis, 836 F.3d at 998 (holding that plaintiff did not create a triable issue of access as to whether its song was widely disseminated because "there was no evidence that [the defendants] undertook any [ ] activity in that market that created a reasonable possibility of access to [the plaintiff's song]"). These cases demonstrate that whether evidence of widespread dissemination establishes access depends, in part, on the circumstances by which a particular defendant would have heard or viewed the plaintiff's work.

Plaintiffs here bear not only the burden of showing widespread dissemination of "Joyful Noise," but also the burden of showing that such evidence demonstrates a reasonable, not just bare, possibility that defendants heard "Joyful Noise" before creating "Dark Horse." Although it would be inappropriate for defendants to argue that plaintiffs must show direct evidence of access to prevail on their claim for copyright infringement, the Court finds that defendants' arguments about whether it was likely that defendants would have accessed "Joyful Noise" on Myspace or YouTube are appropriate and relevant to the issue of whether defendants had a reasonable opportunity to hear "Joyful Noise." And in the event plaintiffs demonstrate a reasonable possibility of access and the burden shifts to defendants to prove independent creation, defendants' argument would also be proper to show that they never availed themselves of the opportunity to hear "Joyful Noise." See 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright, § 13.02[A] ("The trier of fact may conclude that [the defendant] had, but did not avail himself of, the opportunity to view, but this conclusion properly goes to the ultimate issue of copying, and not to the subordinate issue of access.").

Accordingly, the Court **DENIES** plaintiffs' Motion *in limine* No. 1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL    'O'

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

### B.    Plaintiffs' Motion *in limine* No. 2 (Dkt. 328, filed on June 12, 2019)

Plaintiffs seek an order precluding defendants from presenting any evidence or argument regarding the amount of money Chike Ojukwu received for licensing the musical beat for "Joyful Noise" to Marcus Gray, the amount of money he has received for other beats, and whether plaintiffs have licensed any of their music. Dkt. 328 at 3. Plaintiffs argue that this evidence is not relevant and, in the alternative, that its "probative value is substantially outweighed by a danger of unfair prejudice, confusion of the issues, and misleading the jury." Id.  Defendants argue that the evidence is relevant in determining a hypothetical license fee. Dkt. 372 at 5. Specifically, King opines in his rebuttal report that a hypothetical license fee for the beat at issue would be "quite low" given that it had been licensed to Marcus Gray for $300. Id.

In an action for copyright infringement, "[a]ctual damages are usually determined by the loss in the fair market value of the copyright, measured by the profits lost due to the infringement or by the value of the use of the copyrighted work to the infringer." Polar Bear Prods., Inc. v. Timex Corp., 384 F.3d 700, 708 (9th Cir. 2004) (internal citations omitted). Actual damages may be based on a hypothetical lost license fee, provided that the amount is not based on "undue speculation." Id. at 709. To establish the amount of a hypothetical lost license fee, evidence may be presented of a reasonable market value for the license fee using a history of comparable licenses or "benchmark" licenses in the industry. See id.; see also Oracle Corp. v. SAP AG, 765 F.3d 1081, 1093 (9th Cir. 2014).

The Court finds that evidence of plaintiffs' prior licensing agreements and the amount Ojukwu received for licensing beats in the past, including the beat in "Joyful Noise," may be relevant in determining a hypothetical lost license fee. The Court does not find that the risks of prejudice, jury confusion, or misleading the jury outweigh the probative value of this evidence. Accordingly, the Court **DENIES** plaintiffs' Motion *in limine* No. 2.

### C.    Plaintiffs' Motion *in limine* No. 3 (Dkt. 329, filed on June 12, 2019)

Plaintiffs seek to exclude evidence and argument related to Ojukwu's use of a free program to create the beat for "Joyful Noise" and the fact that the song writers of "Joyful Noise" agreed to their respective ownership shares of the "Joyful Noise" composition after the filing of the instant lawsuit. Dkt. 329 at 3. Plaintiffs argue that this evidence is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

not relevant to the issues in the case and claim that the danger of prejudice, confusion, and misleading the jury outweighs its probative value. Id. at 3–4. Defendants respond that Ojukwu's use of a free program to create the beat at issue is relevant to damages and whether the beat is original and protected by copyright law. Dkt. 373 at 3. Defendants also assert that timing of their ownership agreement is relevant to the validity and timing of plaintiffs' copyright registration for "Joyful Noise." Id. at 3-4.

The Court is persuaded by defendants that this evidence is relevant and does not find that the risks of prejudice, jury confusion, or misleading the jury outweigh its probative value. Accordingly, the Court **DENIES** plaintiffs' Motion _in limine_ No. 3.

## III.   DEFENDANTS' MOTIONS _IN LIMINE_

### A.      Defendants' Motion _in limine_ No. 1 (Dkt. 337, filed on June 12, 2019)

Defendants seek to preclude plaintiffs from introducing evidence or argument regarding their moral rights or any reputational harm caused by defendants' alleged infringement. Dkt. 337 at 2. Specifically, defendants seek to preclude evidence regarding the "tarnish" to the "devoutly religious message of 'Joyful Noise'" caused by "witchcraft, paganism, black magic, and Illuminati imagery" evoked by "Dark Horse." Id. Defendants contend that this evidence is irrelevant, prejudicial, and an improper attempt by plaintiffs to enforce "moral rights" under the Copyright Act. Id. Plaintiffs respond in their opposition brief that they do not intend to assert a "moral rights" theory at trial but that they should be permitted to offer evidence of the reputational damage they suffered as part of their claim for lost profits. Dkt. 375 at 1.

At the hearing, plaintiffs indicated that they do not have any evidence of lost profits and that they are not going to pursue that theory of damages at trial. It thus appears that evidence regarding any "tarnish" to "Joyful Noise" caused by "Dark Horse" is irrelevant to the issues in this action. Accordingly, the Court **GRANTS** defendants' Motion _in limine_ No. 1.

### B.      Defendants' Motion _in limine_ No. 2 (Dkt. 338, filed on June 12, 2019)

A presumption of copying is created when a copyright plaintiff establishes both reasonable access and substantial similarity. See Three Boys Music, 212 F.3d at 486. However, "[a]bsent evidence of access, a 'striking similarity' between the works may give rise to a permissible inference of copying." Baxter v. MCA., Inc., 812 F.2d 421, 423

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|----------|-------------------------|------|--------------|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

(9th Cir. 1987) (citation omitted). "At base, 'striking similarity' simply means that, in human experience, it is virtually impossible that the two works could have been independently created." Nimmer on Copyright § 13.02[B]. In a technical area, such as music, expert testimony is generally necessary to establish striking similarity. Id.

Defendants contend that plaintiffs have thus far only argued that "Joyful Noise" and "Dark Horse" are substantially similar and seek to exclude plaintiffs from changing course and arguing at trial that "Joyful Noise" and "Dark Horse" are strikingly similar. Dkt. 338. According to defendants, this argument is untimely and plaintiffs have no musicologist expert opinion of striking similarity (as opposed to substantial similarity). Plaintiffs respond that their musicology expert, Dr. Todd Decker, did not ascribe any legal meaning to the term "substantially similar" as used in his expert report, and that Decker did, in fact, opine that the similarities between the works "suggest[] significant borrowing of musical material from 'Joyful Noise' by the creators of 'Dark Horse.'" Dkt. 375 at 4. Thus, according to plaintiffs, Decker's expert testimony will support their argument at trial that the works are strikingly similar. Id.

The Court is not persuaded that Decker's expert testimony qualifies as a "striking similarity" opinion. Decker was not asked by plaintiffs to provide an opinion on whether the musical material in the two songs are strikingly similar, dkt. 338-1 at 85, nor does he opine in his report that the ostinatos in the two works are virtually identical or strikingly similar, see dkt. 338-1 at 6–20. Although Decker opines that the ostinatos in the two works share some identical features such as phrase length and rhythm, he also opines that the two ostinatos are only "nearly identical" or "substantially similar" in pitch content and timbre and that they differ in key and tempo as well as their final note. Id. at 9–14. Although Decker ultimately concludes that the similarities in the two works "suggest" musical borrowing, that opinion is not equivalent to an opinion that the two works are so strikingly similar that it is "virtually impossible that the two works could have been independently created[.]" Nimmer on Copyright § 13.02[B].

Due to the absence of expert testimony that the two works are strikingly similar or that copying is the only explanation for the similarities between the works, the Court precludes plaintiffs from arguing at trial that the two works are so strikingly similar that they need not prove access. Accordingly, the Court **GRANTS** defendants' Motion *in limine* No. 2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

### C.  Defendants' Motions *in limine* Nos. 4, 5, 6 (Dkts. 340, 341, 342 filed on June 12, 2019)

Defendants seek an order excluding plaintiffs from introducing evidence of: (1) plaintiffs' live performances of "Joyful Noise"; (2) radio and TV interviews with plaintiffs featuring "Joyful Noise"; and (3) critical acclaim of "Joyful Noise" or *Our World Redeemed* within the Christian music community.  Dkts. 340–342.  Defendants contend that this evidence is not relevant to the issue of access because, according to defendants, widespread dissemination requires a showing of "an appreciable level of national saturation," which can only be proven by demonstrating "commercial success" and "distribution through radio, television, and other relevant mediums."  Dkt. 340 (quoting <u>Loomis</u>, 836 F.3d at 994, 997).  In the absence of national saturation, defendants contend that the only other way plaintiffs can demonstrate widespread dissemination is through "saturation in a relevant market in which both the plaintiff and the defendant participate."  <u>Id.</u> (quoting <u>Loomis</u>, 836 F.3d at 997).  According to defendants, plaintiffs' evidence of performances, interviews, and critical acclaim are not relevant because they demonstrate neither national saturation nor saturation in a market that defendants participated in because defendants did not participate in the Christian music market.

The Court has previously found defendants' narrow reading of <u>Loomis</u> to be misplaced.  <u>See</u> Dkt. 314.  In its decision on defendants' motion for reconsideration of denial for summary judgment, the Court found that, despite defendants' arguments to the contrary, <u>Loomis</u> did not impose new requirements for establishing widespread dissemination:

> Because plaintiffs did not show commercial success or saturation in the relevant market, defendants argue that <u>Loomis</u> required the Court to grant defendants' motion for summary judgment.  However, <u>Loomis</u> did not make any such holding.  Rather, the Ninth Circuit stated "[t]he evidence required to show widespread dissemination will *vary from case to case*."  836 F.3d at 997 (emphasis added).

<u>Id.</u> at 5.

Despite the Court's previous ruling, defendants continue to insist that <u>Loomis</u> imposes new requirements for demonstrating access in a copyright infringement case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

The Court reiterates that "[t]he evidence required to show widespread dissemination will *vary from case to case*." Loomis, 836 F.3d at 997 (emphasis added). The Court finds that the three categories of evidence that defendants seek to exclude are relevant to widespread dissemination and whether defendants had a reasonable opportunity to hear "Joyful Noise." Whether this evidence proves that defendants had a reasonable opportunity to hear "Joyful Noise" is a matter for cross-examination and argument. Accordingly, the Court **DENIES** defendants' motions *in limine* to the extent they seek to exclude plaintiff's evidence on the grounds that it does not show nationwide saturation or saturation in a relevant market.

Defendants also argue that this evidence is irrelevant because plaintiffs cannot prove that defendants attended any of plaintiffs' concerts, heard plaintiffs' song on the radio or TV, or participated in the Christian music market. The Court is not persuaded. A plaintiff need not establish that a defendant actually viewed and knew of the plaintiff's work to prevail on his claim for copyright infringement. See Nimmer on Copyright, § 13.02[A]. Such a requirement would ignore "the underlying policy considerations that permit proof of access (and substantial similarity) as substitutes for direct proof of copying." Id. "Just as it is virtually impossible to offer direct proof of copying, so it is often impossible for a plaintiff to offer direct evidence that defendant . . . actually viewed or had knowledge of the plaintiff's work" because "[s]uch viewing will ordinarily have occurred, if at all, in a private office or home outside of the presence of any witnesses available to the plaintiff." Id. Thus, "[f]or this reason, it is clear that, even if evidence is unavailable to demonstrate actual viewing, proof that the defendant had the opportunity to view (when combined with probative similarity) is sufficient to permit the trier to conclude that copying as a factual matter has occurred—in other words, the factfinder has the discretion to reject even the uncontradicted testimony of [the defendant] that he had never in fact viewed the plaintiff's work." Id. Thus, the issue of whether defendants heard or knew about "Joyful Noise"—either by attending plaintiffs' concerts, listening to the song on the radio or TV, or learning of "Joyful Noise" through its various award nominations—is a question of fact to be decided by the jury.

Defendants also seek to exclude evidence of plaintiffs' concert performances on the grounds that plaintiffs lack any admissible evidence of those performances. Plaintiffs respond that they will establish a foundation for all evidence of concert performances through: (1) Marcus Gray's testimony about his personal knowledge of the concerts at which "Joyful Noise" was played; and (2) Crystal Gray's testimony based on her

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|---|
| Case No. | 2:15-cv-05642-CAS (JCx) | | Date | July 5, 2019 |
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | | |

knowledge as Marcus Gray's manager. Dkt. 375 at 8–9. The Court finds no reason to exclude testimony about plaintiffs' concert performances at this juncture and reserves ruling on the admissibility of this testimony until after the witnesses have had an opportunity to lay a foundation for their testimony.

Defendants also contend that plaintiffs' evidence of radio and TV interviews is inadmissible because plaintiffs will not lay a proper foundation for this evidence and because it contains hearsay. Plaintiffs respond that Marcus Gray and Crystal Gray will offer testimony on this subject and that they have personal knowledge regarding the details of these interviews. Dkt. 375 at 11. As for defendants' hearsay objection, plaintiffs argue that the fact that "Joyful Noise" played in the background of these interviews is not an assertion but rather an observable occurrence. Id. The Court agrees with plaintiffs that testimony about "Joyful Noise" playing in the background during radio and television interviews is not hearsay as it is based on the witnesses's personal observations and does not concern a statement offered in evidence to prove the truth of the matter asserted. See Federal Rule of Evidence 801.

Accordingly, the Court **DENIES** defendants' Motions *in limine* Nos. 4, 5, and 6, without prejudice to their raising objections as to the foundation of Marcus Gray's or Crystal Gray's testimony on plaintiffs' concert performances.

### D.   Defendants' Motion *in limine* Nos. 3, 9 (Dkts. 339, 345 filed on June 12, 2019)

#### i.   Testimony about Sales

Defendants represent that plaintiffs have failed to adduce any evidence of sales of "Joyful Noise" or the album it appeared on, *Our World Redeemed*, and seek an order precluding plaintiffs from offering testimony about such sales in lieu of records evidencing those sales. Dkt. 339 at 5. Specifically, defendants seek to exclude testimony from Marcus Gray about any purported sales because such testimony would not be based on personal knowledge and would lack foundation. Id. Defendants also seek to exclude any testimony about the fact that plaintiffs' former record label refused to provide plaintiffs with records of any sales. Id. According to defendants, plaintiffs could have subpoenaed these records from Gray's record label yet declined to do so, thus this

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL  'O'

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
| --- | --- | --- | --- |
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

testimony would be confusing to the jury and would result in the jury speculating about what those "hypothetical records might say." Id. at 6.

Plaintiffs respond that, although they do not have evidence of the exact number of sales, they intend to introduce circumstantial evidence of sales through the testimony of Marcus Gray's wife, Crystal Gray. Dkt. 375 at 5. In light of plaintiffs' representation that Marcus Gray will not offer testimony about sales, the Court **DENIES** as moot defendants' motion to exclude this testimony.

Plaintiffs also argue that they only intend to use the record label's refusal to provide sales records as rebuttal evidence in the event plaintiffs argue that defendants have no evidence regarding sales. Id. According to plaintiffs, "[d]efendants cannot highlight [p]laintiffs' inability to come forward with specific sales numbers, while at the same time seek to preclude [p]laintiffs from explaining to the jury why they were unable to do so." Id. at 6. The Court finds that testimony about the record label's refusal to provide sales records would be appropriate to rebut an assertion that plaintiffs lack any evidence of sales. To the extent defendants wish to establish that plaintiffs could have obtained this information through a subpoena, they may elicit that testimony through cross-examination. In light of plaintiffs' representation that they only intend to offer testimony about the record label's refusal to provide sales records as rebuttal evidence, the Court **DENIES** defendants' motion to exclude this testimony.

### ii.      Billboard Charts as Evidence of Sales

Defendants also seek to preclude plaintiffs from using Billboard charts as evidence of sales because the charts do not "reveal the amount of units" of sales of a song or album. Dkt. 345 at 6. Defendants represent that Billboard rankings are based on various different metrics, not sales alone, and therefore, the charts are not evidence of sales. Id. Plaintiffs respond that, although the Billboard charts "do not establish definitively how many albums or singles were sold," the charts on which "Joyful Noise" and *Our World Redeemed* appeared ranked songs and albums based on physical and digital album sales as well as digital downloads. Dkt. 375 at 23. In lieu of providing evidence about the actual number of sales, plaintiffs contend that they should be allowed to introduce the Billboard charts as circumstantial evidence that "Joyful Noise" and *Our World Redeemed* experienced commercial success. Id. at 24.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

The Court has reviewed the cases in which commercial success was analyzed in determining whether the plaintiff had established widespread dissemination of a work. In each of those cases, the approximate number of sales of the work was analyzed to determine its reach. See Art Attacks Inc. v. LLC v. MGA Entertainment Inc., 581 F.3d 1138, 1144 (9th Cir. 2009) (2000 sales per year insufficient to establish widespread dissemination); Rice v. Fox Broadcasting Co., 330 F.3d 1170, 1178 (9th Cir. 2003) (19,000 sales over 13 years insufficient to establish widespread dissemination); Jason v. Fonda, 526 F. Supp. 774, 776 (C.D. Cal. 1981) (sales of 2,000 copies nationwide did not create more than a bare possibility of access). Here, the Billboard charts do not reveal the number of sales of either "Joyful Noise" or *Our World Redeemed*, and it appears that Billboard has refused to reveal either its methodology or the data underlying its rankings. It is thus unknown whether plaintiffs sold one hundred copies or one million copies of "Joyful Noise." The Billboard charts are therefore not probative of whether "Joyful Noise" was commercially successful, or, more precisely, whether it was widely disseminated through sales.

Accordingly, the Billboard charts may not be introduced for the purpose of establishing that "Joyful Noise or *Our World Redeemed* experienced commercial success or a high number of sales.

### iii.     Relevance

Defendants also contend that the Billboard charts should be excluded because they are not relevant to access. The Court finds that the Billboard charts are relevant to access for the same reasons set forth in the Court's order on Motions *in Limine* Nos. 4, 5, and 6. Specifically, the Court finds that the appearance of "Joyful Noise" and *Our World Redeemed* on Billboard charts is relevant to the issue of access because Billboard is a popular music publication—as such, defendants may have learned about "Joyful Noise" by seeing it on a Billboard chart. The Billboard charts also indicate that those works were relatively popular within the Christian music market—which may be relevant depending on the extent to which defendants participated in that market.

### iv.     Hearsay

Defendants also seek to exclude any tables prepared by Billboard which summarize the instances when "Joyful Noise" and *Our World Redeemed* appeared on a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:15-cv-05642-CAS (JCx) | | Date | July 5, 2019 |
|----------|-------------------------|---|------|--------------|
| Title    | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | | |

Billboard chart prior to the creation of "Dark Horse."  Dkt. 345 at 7.  Defendants contend that these summary tables contain hearsay in that they are being offered to prove the truth that "Joyful Noise" and *Our World Redeemed* appeared on the Billboard chart in the position and on the date stated.  Id.  Plaintiffs respond that the summary tables were created and produced by Billboard in response to a subpoena and were authenticated during a deposition with a representative from Billboard.  Dkt. 375 at 24.  The Billboard representative testified that he researched the title "Joyful Noise" and *Our World Redeemed* in the Billboard internal database and pulled the charts on which the song and album appeared on a week-by-week basis.  Dkt. 375-4 at 16.  When asked why Billboard did not just produce the charts themselves, the representative testified that "it's easier to digest a week by week summary than to just find it on a chart if we just provided images, and not every week of those charts had a printed chart that accompanied it."  Id. at 18.  Plaintiffs do not dispute that the summary charts constitute hearsay but assert that the business records exception should apply because the data and information underlying the summary tables were kept by Billboard in the ordinary course of business.  Defendants respond that the summary tables are not business records because they were prepared for purposes of litigation.  Dkt. 345 at 8.

Federal Rule of Evidence 803(6) provides that "records of a regularly conducted activity" are exceptions to the rule against hearsay if, among other requirements, "the record was kept in the course of a regularly conducted activity of a business . . ."  The summary charts do not fall within this exception because, although the summary charts appear to be based on business records, the summary charts themselves were prepared for the purposes of litigation and were not kept in the course of a regularly conducted activity.  And although Federal Rule of Evidence 1006 provides that a "proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court," the proponent must nonetheless "make the originals or duplicates available for examination or copying . . . by other parties at a reasonable time and place."  See also Paddack v. Dave Christensen, Inc., 745 F.2d 1254, 1259 (9th Cir. 1984).  At the hearing, it became apparent that at least some of the data and records underlying Billboard's summary charts were never made available to the parties for inspection and that plaintiffs will not be able to obtain those records before trial.  Accordingly, the Court will exclude the summary charts unless plaintiffs obtain all the underlying business records from Billboard prior to trial.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

At the hearing, however, plaintiffs indicated that they may be able to provide evidence of some of the weekly Billboard charts through screenshots of the Billboard website. The Court reserves ruling on the admissibility of those weekly Billboard charts until plaintiffs have had an opportunity to lay a foundation for that evidence.

Accordingly, the Court **GRANTS** in part and **DENIES** in part defendants' Motions *in limine* Nos. 3 and 9. Plaintiffs may offer testimony about the record label's refusal to provide sales records as rebuttal evidence. Plaintiffs may not introduce the Billboard charts for the purpose of establishing that "Joyful Noise or *Our World Redeemed* experienced commercial success or a high number of sales, but they may offer the Billboard charts for the purpose of showing that "Joyful Noise" and *Our World Redeemed* appeared on those charts and to show that those works were relatively popular in the Christian music market. The Court will exclude the summary charts created by Billboard for purposes of this litigation unless plaintiffs obtain all the underlying business records from Billboard. The Court reserves ruling on the admissibility of any weekly Billboard charts until plaintiffs have had an opportunity to lay a foundation for that evidence.

### E.     Defendants' Motion *in limine* No. 7 (Dkt. 343, filed on June 12, 2019)

Defendants seek to preclude plaintiffs from introducing screenshots of archived versions of Lecrae Moore's and Marcus Gray's Myspace pages captured by the Internet Archive. Dkt. 343 at 4. It appears that plaintiffs plan to introduce these screenshots to show the play counts of "Joyful Noise" on Moore's and Gray's Myspace pages. Defendants argue that the screenshots are unreliable, lack foundation, contain hearsay, and that the conclusions drawn by plaintiffs from the screenshots are speculative. Id. The screenshots at issue are displayed below:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |



UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |



Dkt. 343-1 at 22–24.

    **i.**    **Foundation**

    Defendants claim that plaintiffs will not be able to lay a proper foundation for the contents of the screenshots because they "cannot establish that the pages were, in fact, created by Gray and Moore; that the 'Joyful Noise' audio file identified on the page was the song at issue in this case or was even available to listen to[.]" Dkt. 343 at 5. Plaintiffs argue that Gray and Moore can testify to the fact that they created the pages and uploaded "Joyful Noise" to those pages. Dkt. 375 at 14. In the alternative, plaintiffs also contend that "anyone familiar with how the page looked could identify it." Id. It appears that both Gray and Moore will be able to lay a foundation for the contents of the screenshots. Moreover, the Court is not persuaded that there is a genuine dispute as to the authenticity of these screenshots and the fact that these Myspace pages were created by Gray and Moore.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL   'O'

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

### ii.   Reliability and Speculation

Defendants contend that the "play counts" are "entirely unreliable and speculative" because a play count "does not identify any one person in particular as having initiated playback or listened to the song in question" and "does not account for or foreclose that the 'play counts' were improperly inflated by bots or other online crawlers."  Dkt. 347 at 6.  Plaintiffs respond that the parties are working on a stipulation related to how "plays" are counted and what the meaning of a "play count" is.  Dkt. 375 at 14.  It appears that defendants are not contesting the authenticity of the number of play counts displayed on the screenshots but rather the meaning of those play counts.  This concern goes to the weight of the evidence, not its admissibility, and can be addressed by defendants through cross-examination.

### iii.   Hearsay

Defendants also argue the screenshots contain hearsay because the "Internet Archive cannot testify to the truth of the contents of the screenshots; *e.g.*, the Internet Archive cannot say what the song allegedly was or that the number of "plays" stated on the pages accurately reflects the number of times the song was, in fact, clicked on."  Dkt. 347 at 5.  Plaintiffs contend that the screenshots are admissible to prove the truth of their contents under the residual exception to the hearsay rule.  Federal Rule of Evidence 807 provides that a hearsay statement not otherwise covered by an exception in Rule 803 or 804 is admissible if: "(1) the statement has equivalent circumstantial guarantees of trustworthiness; (2) it is offered as evidence of a material fact; (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and (4) admitting it will best serve the purposes of [the Federal Rules] and the interests of justice."  Fed. R. Evid. 807.

As an initial matter, the Court is not persuaded that the Myspace play counts are hearsay.  See United States v. Lizarraga-Tirado, 789 F.3d 1107, 1109–10 (9th Cir. 2015) (explaining that Rule 801 only applies to "a *person's* oral assertion, written assertion, or nonverbal conduct" and holding that "machine statements aren't hearsay") (emphasis in the original).  But even assuming that the play counts are hearsay, the Court nonetheless finds that the play counts of "Joyful Noise" on the Myspace screenshots are admissible through the residual hearsay exception.  Here, defendants do not do not dispute that the screenshots are from the Internet Archive and that the screenshots accurately reflect the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL       'O'

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|----------|-------------------------|------|--------------|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

content of the Myspace pages at the time the screenshots were captured. The screenshots clearly indicate that the name of the song is "Joyful Noise" and provide the number of times that "Joyful Noise" has been played. The number of Myspace plays of "Joyful Noise" also goes to a material fact in the case—namely, whether "Joyful Noise" was widely disseminated. And given defendants' representation at the hearing that Myspace is "mostly defunct," it does not appear that plaintiffs would be able to obtain this information from any other source. The Court also finds that admitting these screenshots will serve the purposes of the Federal Rules of Evidence and the interests of justice. The Court thus finds that, to the extent that the play counts are even hearsay, the requirements of Rule 807 are satisfied.

In accordance with the foregoing, the Court **DENIES** defendants' Motion *in limine* No. 7.

### F.      Defendants' Motion *in limine* No. 8 (Dkt. 344, filed on June 12, 2019)

Defendants seek to exclude a screenshot produced from the Internet Archive of a "Joyful Noise" music video on YouTube. Dkt. 344 at 4. Defendants argue that the document was produced in an untimely manner after discovery closed. Id. Defendants assert that five different YouTube videos were authenticated and produced during discovery and that plaintiffs did not disclose this sixth YouTube video until June 11, 2019. Id. at 5-6. Defendants argue that the document lacks foundation, has not been authenticated, is hearsay, and will severely prejudice defendants. Id. at 7-8.

Plaintiffs oppose defendants' motion by arguing that the document was produced on May 13, 2016, more than two years before the discovery cut-off date of May 25, 2018. Dkt. 375 at 16; Dkt. 267. Furthermore, plaintiffs explain that both parties were acting under a mutual misapprehension with respect to the identity of the official YouTube video for Joyful Noise. Id. at 17. As a result, the fifth video identified in the Joint YouTube Stipulation was mistakenly identified as the official video. Id. Defendants contest this fact and argue that plaintiffs have not pursued any discovery on this video, that this video was not included in the parties' "YouTube stipulated facts," nor did plaintiffs proffer this particular video in their opposition to defendants' motion for summary judgment. Dkt. 387-1 at 5.

It appears that defendants were made aware of the official YouTube video as early as May 13, 2016, and that defendants were not prevented from conducting any discovery

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL            'O'

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

in relation to this screenshot.  Id.  Plaintiffs contend that they can and will properly authenticate the screenshot and the underlying YouTube video through affidavits, judicial notice, and live testimony.  Id. at 19.  In addition, plaintiffs argue that the screenshot is not hearsay since it is not a statement at all and to the extent it is offered for the truth of the matter asserted, the screenshot is admissible under the residual exception to the hearsay rule.  Id. at 20.

The Court is not persuaded by defendants' contention that they will be unfairly prejudiced if this screenshot is admitted into evidence.   Moreover, it appears that plaintiffs will be able to lay a proper foundation for this evidence at trial.  Accordingly, the Court **DENIES** defendants' Motion *in limine* No. 8, without prejudice to their raising objections as to the foundation of this evidence at trial.

### G.    Defendants' Motion *in limine* No. 10 (Dkt. 346, filed on June 12, 2019)

Defendants seek to exclude evidence that Perry performed the song "I Kissed a Girl" at the 51st GRAMMY awards on February 8, 2009, which is the same year that *Our World Redeemed* was nominated in the category of Best Rock or Rap Gospel Album. Dkt. 346 at 4.  Defendants contend that evidence about this performance is irrelevant to the issue of widespread dissemination because "Joyful Noise" was not played or mentioned during the award show and would result in the jury speculating that Katy Perry would have learned about "Joyful Noise" during the award show.  Id. at 5, 7. Plaintiffs respond that they "do not intend, and have never indicated that they intend, to try this case by proving that Katy Perry attended or performed at the GRAMMYs.  Dkt. 375 at 29.  At the hearing, counsel for plaintiffs confirmed that they will not introduce evidence about Perry's performance at the 51st GRAMMY awards.  Accordingly, the Court **DENIES** as moot defendants' motion to exclude evidence about Perry's performance at the 51st GRAMMY awards.

Defendants also seek to exclude evidence that Gottwald was a voting member of the GRAMMYs the same year that *Our World Redeemed* was nominated for an award. Dkt. 346 at 4.  Plaintiffs contend that this fact is relevant because "the GRAMMYs served as a third-party intermediary linking Plaintiffs and Defendants" and thus "the jury may impute access where there is evidence that a third party (the GRAMMYs) with whom both Plaintiffs and Defendants were dealing, concurrently, had possession of 'Joyful Noise.'"  Dkt. 375 at 26.  According to defendants, plaintiffs had previously indicated that they were not going to offer any evidence or argument regarding access

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

through a chain of events. See Dkt. 346-1, Ex. 2 at 14. Plaintiffs also do not dispute defendants' representation that "Joyful Noise" was not made available to GRAMMY voters.

As it appears that plaintiffs have no evidence demonstrating that Gottwald would have been able to access the song because he was a voting member of the GRAMMYs, the Court finds that plaintiffs' chain of events theory is too speculative to establish a reasonable possibility of access and would confuse and distract the jury. Accordingly, plaintiffs may not introduce evidence of the fact that Gottwald was a voting member of the GRAMMYs for the purpose of demonstrating that he could have obtained access to "Joyful Noise" through the GRAMMYs.

At the hearing, however, plaintiffs explained that Gottwald's status of a voting member was also relevant to access because he received a list of nominated songs, which included "Joyful Noise," and therefore may have had more of an incentive to seek out "Joyful Noise" on the internet. Although the Court is not persuaded that Gottwald's status of a voting member of the GRAMMYs is relevant to establishing that "Joyful Noise" was widely disseminated, this fact may become relevant in the event Gottwald testifies that he did not know, or have any reason to know, about plaintiffs, "Joyful Noise," or *Our World Redeemed*. Accordingly, the Court reserves ruling on whether evidence about Gottwald's status as a voting member of the GRAMMYs may be received in rebuttal until after Gottwald has testified at trial.

### H.   Defendants' Motion *in limine* No. 11 (Dkt. 347, filed on June 12, 2019)

Defendants seek an order precluding any argument or evidence regarding defendants' general wealth or the relative wealth of plaintiffs and defendants. Dkt. 347 at 4. Defendants acknowledge that plaintiffs have agreed that such evidence is not relevant and that they generally do not intend to offer such evidence, however, defendants claim that plaintiffs will not agree to a "blanket prohibition" on such argument or evidence. Id. Accordingly, defendants argue that evidence of defendants' financial condition should be precluded because it is irrelevant, unduly prejudicial, and may improperly influence the jury. Id. at 5-6.

Plaintiffs respond that they have no present intention of offering evidence of defendants' general wealth, however, plaintiffs seek permission to comment on defendants' industry experience and success as context for evidence offered in support of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL   'O'

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|----------|-------------------------|------|--------------|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

plaintiffs' claim.  Dkt. 375 at 29.  Plaintiffs contend that it is "unavoidable" for jurors to perceive defendants' wealth.  Id. at 30.  Plaintiffs intend to present evidence on the profits of "Dark Horse" in support of their claim for damages, and plaintiffs claim that these profits will necessarily reveal the defendants' vast financial resources.  Id.

At the hearing, plaintiffs explained that defendants' success is relevant to establishing that defendants listen to a wide variety of music.  It appears, however, that plaintiffs can elicit the fact that defendants listen to a wide variety of music without suggesting that the defendants are successful or wealthy.  The Court thus finds that defendants' wealth or success are irrelevant to plaintiffs' claim for copyright infringement, except possibly the question of damages.  Accordingly, the Court **GRANTS** Defendants' Motion *in limine* No. 11.

## IV.   PLAINTIFFS' DAUBERT MOTIONS

### A.      Plaintiffs' Daubert Motion No. 1 (Dkt. 330, filed on June 12, 2019)

Defendants' musicology expert, Lawrence Ferrara, is expected to provide testimony at trial regarding: (1) the quantitative value of the amount of the music at issue in the "Dark Horse" composition; (2) the qualitative value of the music at issue within the context of the overall musical and lyrical "Dark Horse" composition; and (3) his expert opinion that the value of music at issue in the "Dark Horse" composition should be less than 3.6%.  Dkt. 330-1 ("Ferrara Report") at 1, 4.  Plaintiffs seek to exclude this testimony on the grounds that it is outside his area of qualifications and relies on a novel, untested, and untestable method of percentage valuation.  Dkt. 330 at 1.

Under Federal Rule of Evidence 702, a trial judge acts as a "gatekeeper" to ensure that expert testimony "is not only relevant, but reliable."  Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993).  A trial judge executes this "gatekeeper" role regardless of whether expert testimony is scientific or non-scientific, with the purpose of ensuring that "an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  Kumho Tire Co., v. Carmichael, 526 U.S. 137, 152 (1999).

The Supreme Court in Daubert enumerated a list of factors useful for evaluating the reliability of an expert.  These factors include: (1) whether the theory or technique can be (and has been) tested, (2) whether the theory or technique has been subjected to peer

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

review and publication, (3) whether there is a known or potential error rate, and (4) whether the theory or technique is generally accepted in the relevant community. Daubert, 509 U.S. at 587-89. When an expert's testimony is not scientific or technical, the reliability of that testimony need not be based on "a particular methodology or technical framework," but instead can be found reliable based on the expert's knowledge and experience alone. Hangarter v. Provident Life & Acc. Ins. Co., 373 F.3d 998, 1018 (9th Cir. 2004).

In addition to evaluating an expert's reliability, a trial court must also determine whether an expert has "appropriate qualifications – i.e., some special knowledge, skill, experience, training or education." United States v. Hankey, 203 F.3d 1160, 1168 (9th Cir. 2000). "Rule 702 contemplates a broad conception of expert qualifications." Hangarter, 373 F.3d at 1015.

Ferrara is a professor of music at New York University's Steinhardt School and has taught music for over 40 years. Ferrara Report at 1; Dkt. No. 374-1 ("Ferrara Decl.") at 8. He has taught courses in music theory and analysis, music history, music criticism, and aesthetic inquiry. Ferrara Decl. at 14–15. He has written and published books and articles regarding music analysis and methodologies in music research. Id. at 14. He has also provided deposition or trial testimony in eight cases in the last five years. Id. at 16. Based on this experience, defendants claim that Ferrara is qualified to testify on the musicological value of the music at issue in "Dark Horse." Dkt. 374 at 12.

Plaintiffs argue that Ferrara's method for calculating the monetary value of the allegedly infringed portions of "Dark Horse" is "novel, untested, and untestable." Dkt. 330 at 6. Defendants respond that Ferrara will not opine on the monetary value of the ostinato from "Joyful Noise" that was allegedly infringed[1] but rather on the musical significance of that ostinato to the "Dark Horse" composition as a whole. Dkt. 374 at 2. Plaintiffs appear to be incorrect in their assertion that Ferrara "purports to quantify the monetary value of plaintiff's song." Dkt. 330 at 5. Ferrara's report is cabined to his opinion about the musicological value of the allegedly infringed portions of "Dark

---

[1]    For ease of reference, and not as a comment on the merits of the case, the Court hereinafter uses the phrase "'Joyful Noise' ostinato" to refer to the ostinato that was allegedly copied from "Joyful Noise."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|----------|-------------------------|------|--------------|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

Horse"—he offers no opinion about the monetary value of the ostinato from "Joyful Noise."

According to Ferrara's report, the proper method for assessing the quantitative value of the "Joyful Noise" ostinato is to identify the total number of notes heads in "Dark Horse," subtract out duplicative "Sub Bass" parts, and then identify all note heads in all iterations and variations of the ostinato at issue. Dkt. 374 at 9. Based on this method, Ferrara concluded that the "Joyful Noise" ostinato constitutes 7.2% of the total note heads in the "Dark Horse" composition. Id. Ferrara also explains that because the lyrics make up 50% of the "Dark Horse" composition, the "Joyful Noise" ostinato is 3.6% of the combined music and lyrics of the "Dark Horse" composition. Id. Ferrara also provides a qualitative value assessment of the "Joyful Noise" ostinato in "Dark Horse," opining that the "Joyful Noise" ostinato is not as important as another ostinato in "Dark Horse" and concluding that the value of the "Joyful Noise" ostinato is less than 3.6% of the "Dark Horse" composition. Id. at 10-11.

The Court finds that Ferrara is qualified to provide an opinion about the quantitative and qualitative musicological value of the music at issue in "Dark Horse." Ferrara has the necessary qualifications to engage in the aforementioned analysis, and despite plaintiffs' contention otherwise, Ferrara's methods have been peer-reviewed. Dkt. 374 at 14–15. Ferrara's analysis, which is based on his expertise and peer-reviewed methodology, may be helpful to the factfinder in determining the musicological value of the "Joyful Noise" ostinato in the "Dark Horse" composition.

Plaintiffs cite Fahmy v. Jay-Z, No: 2:07-cv-05715-CAS, 2015 WL 5680299 (C.D. Cal. Sept. 24, 2015), in support of their argument that Ferrara may not offer precise percentages of the purported monetary value of the music at issue. In Fahmy, the defendants' expert, Dr. Jason King, had estimated that "use of [plaintiff's song] contributed between .004% and .03% to defendants' total concert revenues . . . and between .0071% and .0714% to the success for the album." Id. at *3. The Court noted that Dr. King had not explained how those numbers were calculated and determined that Dr. King "may not testify regarding the percentage values by which he quantifies these factors" because his method "has not been peer-reviewed by any journal nor has he established that it is generally accepted in the relevant field." Id. at *4. The Court also found that "given the complexity of apportioning profits in a copyright infringement case, it may be misleading to present the jury with numbers as remarkably precise as those in King's report." Id. at 5. The Court finds that the troubling aspects of King's testimony in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
| --- | --- | --- | --- |
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

Fahmy will not be presented by Ferrara's proposed testimony. First, Ferrara will not opine on the monetary value of the "Joyful Noise" ostinato. Second, unlike King, Ferrara does disclose an objective, replicable, and peer-reviewed method for calculating his percentages. And finally, unlike the percentages offered by King, Ferrara's opinion that the value of the "Joyful Noise" ostinato is less than 3.6% is not "remarkably precise." Thus, the Court is not persuaded that Ferrara's opinion must be excluded for the same reasons that King's opinion was excluded in the Fahmy case.

Accordingly, the Court **DENIES** plaintiffs' motion to exclude Ferrara's expert testimony.

### B.    Plaintiffs' Daubert Motion No. 2 (Dkt. 331, filed on June 12, 2019)

Plaintiffs seek to exclude or limit the testimony of defendants' expert Jason King regarding the impact of various factors, including the "Joyful Noise" ostinato, to the commercial success of "Dark Horse" and the *PRISM* album. Dkt. 331. Plaintiffs contend that King's conclusions are prejudicial and the product of unreliable methods. Id. at 1.

King is an associate professor at the Clive Davis Institute of Recorded Music at New York University. Dkt. 331-1 ("King Report") at 4. As a professor at the Clive Davis Institute, King has helped to establish a curriculum focusing on the study of hip-hop, pop, electronic music, and the recording industry. Id. He has taught courses on the labeling and branding of celebrities, including a course that used articles on Katy Perry. Id. at 6. He has also worked and consulted with numerous individuals and companies in the music recording industry. Id. at 9. Based on this experience, King claims to have specialized knowledge regarding the historical, cultural, and social aspects of popular music, celebrity, and stardom. Id. at 4. He also claims to have expertise in the business of marketing and branding, particularly as it relates to music. Id.

Defendants intend to present King's testimony regarding the various factors that have contributed to the commercial success of "Dark Horse" and *PRISM*. In his expert report, King asserts that it is possible to retroactively deconstruct the factors that contributed to the success of a particular song or sound recording. Id. at 8. From evidence such as marketing campaigns, chart successes, and historical and journalistic discussions of a song, King identifies and prioritizes the factors that contributed to the song's success. Id. at 8.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

In applying his method to "Dark Horse," King identifies eight factors that drove the success of the song and prioritizes them as either primary, secondary, or tertiary factors. Id. at 17-25. The factors include: (1) celebrity star power/branding, (2) marketing of the single, (3) hook, (4) vocal performances, (5) instrumental elements other than the "Joyful Noise" ostinato, (6) production/arrangement, (7) lyrics, and (8) the "Joyful Noise" ostinato. Id. at 25. King explains in his report that "Dark Horse" is "pop fusion" music compromised of multiple styles and that one of the contributing factors to the success of "Dark Horse" was the novelty of its offbeat fusion of sounds. Id. at 3. He also explains that PepsiCo, Inc. promoted *PRISM* through a social media campaign which led to significant radio play prior to a label push. Id. at 4. Accordingly, King concludes that celebrity star power/branding and marketing of the single were the most significant factors contributing to the success of "Dark Horse." Id. at 25. While King admits that the "Joyful Noise" ostinato is one of the elements that helped drive the success of "Dark Horse," he concludes that the ostinato is a tertiary factor at best and contributed only a "small, insignificant percentage" to the success of "Dark Horse" and an even smaller amount to the success of *PRISM*. Id. at 25, 29.

Plaintiffs argue that King's conclusion that the "Joyful Noise" ostinato contributed a "small, insignificant percentage" to the success of "Dark Horse" and *PRISM* should be excluded because his conclusion attempts to quantify the significance of that ostinato through an "unsupportable and misleading mathematical approach." Dkt. 331 at 5. In support of their argument, plaintiffs cite to the Fahmy case mentioned above in which King was precluded from testifying on precise percentage ranges to quantify the importance of factors he deemed relevant. Id. at 3–4. Here, plaintiffs contend that King is attempting to testify in a similar manner and there is no possible way to test the validity of a "small, insignificant percentage." Id.

As a preliminary matter, the Court finds that King is qualified to testify regarding cultural and social factors that contribute to the success of musicians and their songs. The Court also finds that King is qualified to engage in a comparative discussion of these factors, including a discussion of the relative influence of defendants' use of "Joyful Noise" in comparison to other factors contributing to the success of "Dark Horse." As explained above, King has extensive academic and professional credentials with regard to the music industry and the convergence of pop culture and music. Based on his experience and scholarship, King bears the necessary qualifications to engage in the type of comparative discussion set forth in his expert report. See also Ty, Inc. v. Publications

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL                     'O'

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|----------|-------------------------|------|--------------|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

<u>Int'l Ltd.</u>, 2004 WL 2359250, at *6 (N.D. Ill. Oct. 19, 2004) ("[A]n expert informed by observation and experience might determine the relative importance of the infringing content to the value of the infringing work as a whole.").

The Court also finds that King's basic methodology for evaluating the relative importance of various factors to the success of "Dark Horse" may be considered by the jury. King's opinion is informed by a lengthy and detailed analysis of relevant sources such as chart successes, marketing materials, and journalistic and historical evidence of the success of defendants and "Dark Horse." In addition, King's methodology stems from the apparently reasonable assumption that the success of a given work of music can best be understood within its cultural and historical context. Accordingly, the Court finds that King's qualitative analysis, which is based on his demonstrated expertise, may be helpful to the factfinder in determining the relative importance of the "Joyful Noise" ostinato to the success of "Dark Horse." <u>See</u> <u>Daubert</u>, 509 U.S. at 597 (expert testimony may be admissible if it "rests on a reliable foundation and is relevant to the task at hand.").

Furthermore, the Court finds that plaintiffs have not presented a persuasive reason to preclude King from testifying that the "Joyful Noise" ostinato contributed a "small, insignificant percentage" to the success of "Dark Horse." Unlike King's opinion in <u>Fahmy</u>, his opinions here are not expressed as remarkably precise percentages. King's use of the phrase "small, insignificant percentage" is merely another way of saying "very insignificant." The Court does not find that this terminology carries a substantial risk that a jury will attach undue weight to the description provided.

Accordingly, the Court **DENIES** plaintiffs' motion to exclude King's expert testimony.

### C.    Plaintiffs' Daubert Motion No. 3 (Dkt. 334, filed on June 12, 2019)

Plaintiffs move to exclude the testimony of defendants' expert, Charles Diamond. Dkt. 334. Diamond is an economist and is offered as a rebuttal witness for plaintiffs' expert witness, Michael Einhorn. In his rebuttal report, Diamond concludes that Einhorn's methodology of calculating Capitol Records' net profits from "Dark Horse" is contrary to the fundamental principles of the economics discipline. Dkt. 334-1. Plaintiffs contend that Diamond, as a labor and employment economist, does not have the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

appropriate qualifications and specialized knowledge to opine on economic, accounting, and financial matters in the music industry. Dkt. 334 at 4. Plaintiffs further contend that his report relies on undisclosed and unreliable information that defendants never produced to plaintiffs, and that, by critiquing Einhorn's failure to include costs when calculating "Dark Horse's" profits, Diamond impermissibly provided an alternative damages model instead of merely contradicting, impeaching, or defusing Einhorn's testimony. Id. at 8.

### i.      Diamond's Qualifications

The Court has reviewed Diamond's qualifications and rebuttal reports and finds that Diamond is qualified to testify on whether Einhorn's methodology is contrary to fundamental principles of the economics discipline. Diamond is trained as an economist and bears the necessary qualifications to engage in the type of analysis set forth in his rebuttal report. See Dkt. 334-1 ("Diamond Report") at 2 (listing his qualifications, including his training in economics, his experience in preparing economic and statistical assessments for litigation, and his publications in academic journals). Diamond does not offer any testimony that requires knowledge or expertise specific to the music industry; thus, his purported lack of experience in that industry does not disqualify him from providing an opinion about the purported flaws in Einhorn's economic analysis.

### ii.      Appropriate Rebuttal Testimony

The Court finds that Diamond's critique of Einhorn's failure to include costs when calculating profits is appropriate rebuttal testimony and is not, as plaintiff contends, an alternative damages model.

### iii.      Undisclosed Assumptions

In forming his rebuttal opinion, Diamond relied on the following assumptions:

- "I am informed that, for an album by a superstar artist like Katy Perry, 18 months is a conservative estimate, since the album cycle is often much longer."
- "[I] am informed that, because Prism spawned so many hit singles and four years transpired between Prism and Perry's next album, the active promotion

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

cycle likely lasted longer than 18 months, which makes UMG's conservative approach even more reasonable."

- "I am informed that these companies are separately incorporated, have their own employees, and their own expenses."
- "[I] am informed that this entity charges UMG-affiliated entities a *lower rate* than it charges third-party entities."
- "[I] am informed that Universal Music Logistics charges the same rates to UMG-related entities that it charges to unrelated third parties."
- "I am informed that the UMG-related entities who provide those services charge the same rate to other UMG-related entities that they charge to unrelated third parties."

Dkt. 334-1 at 12–13. Plaintiffs seek to exclude Diamond's opinions that rely on these assumptions because the evidence underlying those assumptions were never disclosed to them. Defendants respond that it "is standard for experts to be provided with factual assumptions, and the specific assumptions which [d]efendants provided to Diamond will be established at trial through the testimony of a representative of Capitol Records." Dkt. 377 at 6.

At the hearing, plaintiffs indicated that they had an opportunity to depose Diamond but elected not to do so. To the extent plaintiffs wanted to obtain information about the basis of the assumptions in Diamond's rebuttal report, they could have sought additional discovery or deposed Diamond. Accordingly, the Court is not persuaded that the nondisclosure of the facts underlying these assumptions is a basis for excluding Diamond's testimony at trial.

In accordance with the foregoing, the Court **DENIES** plaintiff's motion to exclude Diamond's expert testimony.

### D.     Plaintiffs' Daubert Motion Nos. 4, 5 (Dkt. 336, 335 filed on June 12, 2019)

Plaintiffs seek to exclude testimony of defendants' experts Zachary St. Martin and Bill Rosenblatt. Dkt. 336 at 1; Dkt. 335 at 1. St. Martin and Rosenblatt are being offered to provide background information about Myspace and YouTube and to opine that it is unreasonable for a person to have viewed "Joyful Noise" on either Myspace or YouTube

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                            **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

without prior knowledge of the artist or song or without affirmative action.  Plaintiffs
contend that both St. Martin and Rosenblatt lack requisite training and professional
experience to provide testimony on website engineering, functionality, or the individual
internet websites.  Id. at 2.  Plaintiffs also criticize the experts' methodologies as being
unreliable, amateur, untested, and non-reviewed.  Id.  Lastly, plaintiffs claim that St.
Martin's and Rosenblatt's testimonies are irrelevant and will confuse the jury.  Id.

     **i.**      **Zachary St. Martin**

     St. Martin graduated from Tulane University School of Law and has been a
practicing attorney since 2001.  Dkt. 336, Ex. A ("St. Martin Report") ¶ 2.  In 2006, he
became the Director of Business and Legal Affairs for Fox Interactive Media, which at
the time was the parent company of Myspace.  Id. ¶ 3.  During his time at Fox, he worked
on legal matters related to Myspace services.  Id. ¶ 4.  He continued to work for Myspace
until April 2015, at which time he left to work for Sony Pictures.  Id. ¶ 3.  Through his
work with Myspace, St. Martin contends that he became familiar with the product.  Id. ¶
4.  He also was a "heavy user" of Myspace for over a decade.  Id. ¶ 5.

     St. Martin is expected to provide testimony on how users generally viewed or
listened to content on Myspace between 2008 and 2013 and the circumstances under
which an individual could possibly have come upon "Joyful Noise" as it appeared on
Myspace.  Dkt. 336 at 1.  St. Martin opines that a person who had no knowledge of
"Joyful Noise" could not have reasonably come across "Joyful Noise" on Myspace
without affirmative action.  St. Martin Report ¶ 9.  According to St. Martin, a person
would need to have known of the song or its artists in order to find the song on Myspace.
Id.  St. Martin is also expected to provide testimony on how each "play" does not mean
that: (1) a person listened to the song; (2) it was played in its entirety; or (3) a person
initiated the song as opposed to a bot.  Id. at 1, 2.  St. Martin's opinions are based in part
on screenshots of Myspace pages using the Internet Archive between 2008 and 2013.  Id.

     **ii.**     **Bill Rosenblatt**

     Rosenblatt is the president and founder of GiantSteps Media Technology
Strategies, a consulting firm specializing in the media and content technology industries.
Dkt. 379 at 7.  Rosenblatt has a degree in electrical engineering and computer science
from Princeton University and a degree in computer and information science from the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

University of Massachusetts. <u>Id.</u> In the past 19 years, Rosenblatt has consulted multiple clients, including music companies, on technology and business issues related to copyright law. <u>Id.</u> at 7-8. Rosenblatt became "intimately familiar with YouTube's features, content, and user base, including YouTube's features for accessing content" when he worked with a digital music start-up that was in competition with YouTube and when he was retained by YouTube for a legal matter. <u>Id.</u> at 9-10. He has also testified on behalf of other media and music companies in other cases about YouTube. <u>Id.</u> at 10.

Rosenblatt is expected to provide testimony on how users generally viewed or listened to content on YouTube between 2008 and 2013 and the circumstances under which an individual could have come upon a YouTube video of "Joyful Noise." Dkt. 335 at 1. Specifically, Rosenblatt opines that: (1) view counts are not evidence that a specific person took an affirmative step to watch a video; (2) view counts are not inherently reliable indicators of the number of people who actually watched the video; and (3) the view counts of "Joyful Noise" are not significant in the context of the larger YouTube universe. <u>Id.</u> Rosenblatt provides information about the large number of YouTube music videos and views between 2008 and 2013 and concludes that the view count of "Joyful Noise" is extremely small when considering the size of the YouTube universe. <u>Id.</u> Ex. A. Rosenblatt also opines that "it was not reasonably possible for any individual to have come upon 'Joyful Noise' on YouTube so as to hear it without having taken specific affirmative action." <u>Id.</u>

### iii.    Discussion

As a preliminary matter, the Court finds that St. Martin and Rosenblatt possess relevant experience and knowledge of digital media and online platforms and are qualified to provide background information about the functionality of Myspace and YouTube between 2008 and 2013 and to opine about what one would have had to do to access "Joyful Noise" on those websites. St. Martin and Rosenblatt may also opine about whether the play or view counts of "Joyful Noise" on Myspace and YouTube accurately reflect how many people actually heard the song and whether those view or play counts are significant relative to the number of views and plays garnered by other songs on YouTube and Myspace. However, St. Martin and Rosenblatt may not opine about the ultimate probability or likelihood that an individual would have accessed "Joyful Noise." Such testimony invades the province of the jury as factfinder as it is for the jury to decide

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | ‘O’ |
|---|---|---|---|
| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

whether the defendants in this case had a reasonable opportunity to hear "Joyful Noise" through Myspace or YouTube.

In accordance with the foregoing, plaintiffs' motion to exclude the testimony of St. Martin and Rosenblatt is **GRANTED** in part and **DENIED** in part. St. Martin and Rosenblatt may offer testimony consistent with what was disclosed in their expert reports, but they may not opine about the ultimate probability or likelihood that an individual would have accessed "Joyful Noise."

## V.    DEFENDANTS' DAUBERT MOTIONS

### A.    Defendants' Daubert Motion No. 1 (Dkt. 348, filed on June 12, 2019)

Defendants seek to exclude the portions of Todd Decker's expert testimony that rely upon evidence that is unauthenticated, irrelevant, or not timely disclosed. Dkt. 348. Specifically, defendants seek to exclude testimony regarding: (1) four YouTube videos of unknown origin containing "mash-ups" that purport to compare the sound recordings of "Dark Horse" and "Joyful Noise"; (2) lay-listener impressions regarding the alleged similarities between the two sound recordings; (3) the similarity of texture in both "Joyful Noise" and "Dark Horse"; and (4) any opinion or analysis provided in a declaration prepared by Decker and served on May 28, 2019. Id. at 2.

#### i.    Mash-Up Videos

In his rebuttal report, Decker states that "several individuals have constructed comparative audio analyses of the ostinatos at issue in the form of YouTube mashups" and opines that "[t]hese acts of popular musicology express the perception of contemporary listeners . . . that the two tracks at issue bear a relationship that can only be described as . . . 'Dark Horse,' taking or copying highly characteristic material from the earlier track, 'Joyful Noise.'" Dkt. 388-1 at 45. Defendants argue that Decker should be precluded from relying on "mash-up" YouTube videos to compare the sound recordings of "Dark Horse" and "Joyful Noise" because those videos cannot be verified or authenticated, and because the creators of those videos may have changed the songs to make them sound more similar. Dkt. 348 at 12.

Plaintiffs rely on Williams v. Gaye, 895 F.3d 1106 (9th Cir. 2018), in which the Ninth Circuit held that the playing of mash-up audio recordings in connection with the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|
| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

musicologist's testimony was not an abuse of discretion.  Id. at 1126–27.  However, the expert in Williams created the mash-up recordings herself.  Id. at 1128.  Here, Decker admitted in his deposition that he did not know the "full extent of alterations" made to the sound recordings in the mash-up videos and that it was "possible" that those users "made additional alterations to the sound recordings of which [he] is not aware[.]"  Dkt. 348-1 at 136–137.  Here, in the absence of testimony from the creators of those videos as to the manner by which they altered the sound recordings, the Court finds that these videos cannot be properly authenticated under Federal Rule of Evidence 901 ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.").  And although an expert witness may rely on inadmissible data in support of his opinion, he may only do so if experts in his field would reasonably rely on that data in forming their opinion or if their probative value outweighs their prejudicial effect.  Fed. R. Evid. 703.  Here, there is no evidence in the record demonstrating that musicologists rely on similar YouTube videos when engaging in a comparative objective analysis of two songs.  And in the absence of testimony establishing how the sound recordings were altered, these videos appear to have no probative value as they may not be an accurate representation of either sound recording.

Accordingly, the Court finds that Decker may not rely on, nor may plaintiffs play, the mash-up YouTube videos during trial.

### ii.      Lay-Listener Opinions

In determining whether two works are "substantially similar" for the purposes of copyright infringement, the Ninth Circuit "employ[s] a two-part analysis: an objective extrinsic test and a subjective intrinsic test."  Swirsky v. Carey, 376 F.3d 841, 845 (9th Cir. 2004). "The extrinsic test considers whether two works share a similarity of ideas and expression as measured by external, objective criteria [and] . . . requires analytical dissection of a work and expert testimony."  Id. (internal quotations omitted).  "[T]he subjective question of whether works are intrinsically similar"—i.e., the subjective intrinsic test—"must be left to the jury."  Id.

In his rebuttal report, Decker opines that "Ferrara's insistence that musical notation and transcription are essential to this case is a false assertion designed to distract the ear from the very evident, clearly audible relationship between these two ostinatos, a relationship heard by many and demonstrated with skill from severally mutually

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:15-cv-05642-CAS (JCx) | | Date | July 5, 2019 |
|----------|-------------------------|--|------|--------------|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | | |

reinforcing strategies in social media." Dkt. 338-1 at 48. Defendants contend that Decker's reliance on lay-listener opinions should be precluded because the opinions improperly invade the jury's role in conducting the subjective intrinsic test. Dkt. 348 at 14. The Court agrees that this testimony invades the province of the jury and precludes Decker from testifying about how the two songs are perceived by lay listeners. See Cottrill v. Spears, 2003 WL 21223846, at *8 (E.D. Pa. May 2003) (excluding expert testimony about how the songs "are aurally perceived by the lay listener" because it went to the intrinsic test, not the extrinsic test, and thus, "regardless of its reliability, does not aid the trier of fact in the detailed examination of the elements of the two works required under the extrinsic test").

### iii.      Decker's Untimely Declaration

Defendants seek to exclude testimony based on a declaration authored by Decker and served on May 28, 2019—four days after the close of expert discovery and twenty-five days after the deadline for rebuttal reports. Dkt. 348 at 16–17. Plaintiffs respond that Decker's May 28, 2019 declaration will not be the subject of his testimony at trial. Dkt. 367 at 7. However, at the hearing, defendants noted that Einhorn's testimony relies in part on the substance of Decker's untimely declaration. The Court is not persuaded that defendants will be prejudiced by Einhorn's reliance on this declaration at trial. The substance of the declaration is straightforward—Decker merely states that the total playing time of "Dark Horse" is 212 seconds and that the "Joyful Noise" ostinato played a total of 95 seconds during "Dark Horse." Dkt. 348-2 at 82. To the extent defendants disagree with that statement, it would not be unduly burdensome for their musicologist expert to conduct a similar analysis to determine how many seconds the "Joyful Noise" ostinato plays during "Dark Horse."

### iv.      Testimony on "Texture"

Defendants argue that Decker's opinion about the textural similarities of the two songs in his rebuttal report should be excluded because he did not disclose that opinion in his opening report. Plaintiffs respond that this testimony is appropriate to rebut Ferrara's opinion about the similarity of the ostinatos to prior art. According to Decker, Ferrara's prior art exhibits do not "demonstrate anything close to the spare textural qualities . . . that are shared by the melodic ostinatos at issue . . ." Dkt. 348-2. Plaintiffs also note that defendants questioned Decker about this opinion in his January 2018 deposition. Dkt. 368 at 7. It appears that Decker's opinion about the textural similarities of the two songs

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|----------|-------------------------|------|--------------|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

qualifies as proper rebuttal to Ferrara's report and that, in any event, defendants would not be prejudiced by the introduction of this testimony because they have had an opportunity to question Decker about this particular opinion.

In light of the foregoing, the Court **GRANTS** in part and **DENIES** in part defendants' motion to exclude portions of Decker's expert testimony. Decker is precluded from relying on mash-up YouTube videos or offering his opinion about how lay-listeners have perceived similarities between the two songs. Decker may, however, provide testimony about the textural similarities between the two songs to rebut Ferrara's opinion about the similarity of the ostinatos to prior art.

## B. Defendants' Daubert Motion No. 2 (Dkt. 351, filed on June 12, 2019)

Defendants move to exclude the testimony of plaintiffs' damages expert, Michael Einhorn, at trial. Dkt. 351. According to defendants, Einhorn plans to provide the following "improper" opinions at trial: (1) that defendants' net profit is equivalent to their gross revenue; (2) that actual damages should amount to 15% of the publishing income earned by "Dark Horse" because plaintiffs could have hypothetically negotiated ownership of 15% of the copyright in the "Dark Horse" composition; (3) that the song "Dark Horse" was critically important in selling *PRISM*; and (4) that Ferrara's methodology of assessing the musicological value of the "Joyful Noise" ostinato is flawed. Id. Defendants also move to exclude testimony related to Einhorn's allegedly untimely "updated" expert reports. Id.

As a preliminary matter, the Court finds that Einhorn is qualified to provide an opinion on plaintiffs' damages and defendants' profits resulting from the alleged infringement. Einhorn has worked as a professional economist since receiving a Ph.D in economics in 1981. Dkt. 351-1, Ex. C ("Einhorn Report") ¶ 2.1. He has testified as an expert at depositions and trials in several cases, including cases involving the valuation of intellectual property owned by musicians and record labels. Id. ¶ 2.3. And as explained below, the Court finds that defendants' concerns with Einhorn's testimony go to its weight and not its admissibility. Any purported flaws in his methodology or the evidence he relied upon in reaching his opinion are matters for cross-examination and argument.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. |

### i.        Einhorn's Calculation of Net Profit

Defendants contend that Einhorn's opinions regarding profits should be excluded because he failed to subtract defendants' costs from their revenue. Dkt. 351 at 15. It appears that Einhorn decided not to incorporate defendants' costs in his analysis because he was not satisfied that defendants had proven the amounts of their deductible expenses. Id. The Court is not persuaded that this purported flaw in Einhorn's methodology renders his opinion inadmissible under Daubert. Einhorn's failure to consider costs when calculating profits goes to the weight of his testimony and can be addressed on cross-examination.

### ii.        Einhorn's Calculation of Actual Damages

Einhorn opines that "a reasonable outcome for copyright negotiations for rights in 'Joyful Noise' would have granted to Plaintiffs a 15 percent share of copyright royalties . . . in the musical composition 'Dark Horse.'" Einhorn Report ¶ 5.12  He explained his methodology as follows: "There are now five listed primary writers of "Dark Horse"— "Katy Perry, Max Martin, Dr. Luke, Cirkut, and Sarah.  Together, the five primary writers owned a copyright share of 90 percent of the work.  Each of the five writers then received an equal royalty share of 18 percent." Id. ¶ 5.13.  Relying on Decker's opinion about the significance of the "Joyful Noise" ostinato in "Dark Horse," Einhorn opines that the "taking of the ['Joyful Noise'] ostinato would then represent a sixth contribution to 'Dark Horse' that must be assigned some share of royalties paid." Id. ¶ 5.15.  Einhorn concludes that "[i]f each of [the] five primary shares are equally valued at eighteen percent of royalties paid, each of [the six shares] would then be valued at fifteen percent." Id. ¶ 5.16.  Thus, according to Einhorn, plaintiffs could have reasonably negotiated for 15% of the copyright royalties of "Dark Horse." Id. ¶ 5.17.  Based on this figure, Einhorn estimates how much plaintiffs would have earned as a licensing payment for their share of "Dark Horse." Id. ¶ 5.19.

Defendants contend that this opinion should be precluded because it: "(a) fail[s] to consider additional, highly relevant evidence of prior transactions; (b) misstate[s] the evidence in the record; and (c) [is] entirely outside of his professed knowledge and expertise as an economist." Dkt. 351 at 21.  Defendants point out Einhorn's failure to consider the fact that Chike Ojukwu testified in his deposition that he licensed the beat, which includes the "Joyful Noise" ostinato, to Marcus Gray for $300. Id. at 22.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

Plaintiffs respond that Einhorn's opinion is based on an application of cooperative game theory and that game theory is often used by economists to establish values. Dkt. 367 at 8. Plaintiffs also contend that Einhorn rightfully chose the negotiations among the writers of "Dark Horse" as the correct benchmark to determine plaintiffs' hypothetical share of "Dark Horse's" copyright royalties.

The Court is not persuaded that the purported flaws in Einhorn's analysis merit excluding his testimony under <u>Daubert</u>. These issues go to the weight of his testimony and can be addressed on cross-examination.

### iii.     Apportionment

Einhorn's calculations of revenues related to "Dark Horse" includes all revenue from the *PRISM* album, without any apportionment. Einhorn Report ¶ 4.5. Einhorn opines "that 'Dark Horse' was one of the most important commercial songs on the album *PRISM*, if not the most important. Given the demonstrated importance of the song 'Dark Horse' to generating sales of the *PRISM* album, any method of apportioning album or concert revenues to 'Dark Horse' by simply dividing total sales by the total number of tracks or songs is not an economic means of valuing its relative worth." <u>Id.</u> ¶ 9.26. Defendants seek to exclude Einhorn's opinion regarding apportionment on the grounds that the purported rationales for his opinion are unreliable. Dkt. 351 at 24. For example, defendants critique Einhorn's opinion that the appearance of "Dark Horse" in concert tours means that the song was important to the success of *PRISM* because every other song from *PRISM* was also played during the concert tour. <u>Id.</u> The Court also finds that these issues go to the weight of Einhorn's testimony rather than its admissibility and can be addressed on cross-examination.

### iv.     Einhorn's Rebuttal Report

Einhorn submitted a rebuttal report addressing Ferrara's musicological value assessment of the "Joyful Noise" ostinato in "Dark Horse." <u>See</u> Dkt. 351-1, Ex. 7 ("Einhorn Rebuttal"). In this report, Einhorn opines that "Ferrara presents no evidence that his technique or related valuations has ever appeared in any peer-reviewed paper or formed the foundation for fees for licensing of music samples in the music business." <u>Id.</u> ¶ 4.8. Ferrara only opines that 3.6% of "Dark Horse" is based on the "Joyful Noise" ostinato. He does not argue that this percentage reflects the monetary value of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

"Joyful Noise" ostinato to "Dark Horse" in the event of an infringement. Einhorn's rebuttal report attempts to rebut a theory that has not been advanced by Ferrara and is therefore irrelevant and confusing. Accordingly, the Court excludes Einhorn's rebuttal testimony.

### v.       Einhorn's "Updated" Reports

Defendants represent that Einhorn submitted two "updated" reports after the relevant deadlines and seek to exclude any testimony based on those reports because, defendants "were frustrated or denied the ability to rebut Einhorn's constantly changing and new opinions." Dkt. 351 at 30. One example of what defendants contend are "multiple substantive changes" is a sentence that Einhorn changed from, "The results of other negotiations involving similar situations *are* useful benchmarks to inform this analysis," to, "The results of other negotiations involving similar situations *can sometimes be* useful benchmarks to inform this analysis." Id. at 28.

Plaintiffs respond that Einhorn's updated opinions merely supplemented or corrected his expert reports pursuant to Federal Rule 26(e)(2). Dkt. 367 at 12. Plaintiffs also note that the updated reports were served on or before May 28, 2019—19 days before the cut-off for filing pre-trial disclosures under Federal Rule 26(a)(3).

Under Rule 37(c)(1), opinions not included in expert reports pursuant to Rule 26(a) must be excluded unless the lack of disclosure was "substantially justified" or "harmless." However, Rule 26(a)(2)(B) "does not limit an expert's testimony simply to reading his report[.] The rule contemplates that the expert will supplement, elaborate upon, and explain his report in his oral testimony." Hall v. City of Fairfield, 2012 WL 1155666, at *4 (E.D. Cal. Apr. 5, 2012). Here, the Court finds that the nature of Einhorn's "updates" are fairly within the scope of supplementing, elaborating upon, or explaining his report in oral testimony and sees no reason to exclude these updates.

Accordingly, the Court **DENIES** in part and **GRANTS** in part defendants' motion to exclude Einhorn's testimony.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|----------|-------------------------|------|--------------|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

## VI.   ISSUES RAISED AT THE HEARING

### A.   Defendants' Arguments Regarding the Validity of Plaintiffs' Copyright

At the hearing, plaintiffs sought to preclude defendants from arguing that plaintiffs' copyright of the "Joyful Noise" composition is invalid.  At the hearing, defendants represented that they plan to argue that the copyright is invalid because plaintiffs did not disclose that "Joyful Noise" is based on a derivative work in their application for a copyright and because the beat that contains the ostinato at issue is not an original work.  Plaintiffs responded that this was the first time they learned that defendants were pursuing these specific contentions.  Plaintiffs argued that defendants should be precluded from making these arguments at trial because defendants had responded to plaintiffs' interrogatory about this defense with objections and never amended their answer to disclose the facts that they are now relying on to argue that the copyright is invalid.  Plaintiffs, however, indicated that they did not move to compel a further response from defendants.  Accordingly, the Court finds that there is no basis for excluding these arguments because defendants were never compelled to provide a further response.

However, defendants do not set forth sufficient details about their contentions as to why the copyright is invalid in either the proposed pretrial conference order or their memorandum of contentions of fact and law.  Defendants merely state in the proposed pretrial conference order that they will contest plaintiffs' position that it owns a valid copyright in "Joyful Noise."  Dkt. 390 at 4.  And defendants' memorandum of contentions of fact and law explains only that defendants "will present evidence that Plaintiffs' copyright registration does not satisfy this standard due to its inclusion of materially false or inaccurate information related to the nature, ownership, or chain of title to the work."  Dkt. 385 at 29.   Defendants are thus directed to amend the pretrial conference order by July 10, 2019 to reflect their contentions and any evidence upon which they intend to rely.

### B.   Perry's Concert Revenues

At the hearing, counsel for plaintiffs noted that the Court had stayed discovery on Perry's concert revenues until after the determination of liability and inquired whether they would have an opportunity to pursue this discovery before damages phase of the trial.  In its order on defendants' motion for partial summary judgment, the Court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

determined that any licensed performances by defendants of "Dark Horse" could not have infringed plaintiffs' performance rights in "Joyful Noise" and that profits from those performances are therefore not relevant.  Dkt. 246 at 16.  However, the Court acknowledged the possibility that certain revenues from "infringements that allegedly preceded the performances themselves" could be the basis of a damages award.  Id.  Plaintiffs, however, appear to misunderstand this order and contend that if liability is found in their favor, they would have a "right to recover a portion of those revenues reflecting the performance of the infringing song[.]"  Dkt. 383 at 9.  The Court's summary judgment order forecloses plaintiffs' contention that they may be entitled to concert revenues reflecting the performance of "Dark Horse."  To the extent plaintiffs still intend to seek a portion of the concert revenues, plaintiffs are directed to identify by July 10, 2019 what, other than the performances, would give rise to concert revenues attributable to defendants' alleged infringement of "Joyful Noise."

**V.    CONCLUSION**

In accordance with the foregoing, the Court **DENIES** plaintiffs' Motion *in limine* No. 1.

The Court **DENIES** plaintiffs' Motion *in limine* No. 2.

The Court **DENIES** plaintiffs' Motion *in limine* No. 3.

The Court **GRANTS** defendants' Motion *in limine* No. 1.

The Court **GRANTS** defendants' Motion *in limine* No. 2.

The Court **DENIES** defendants' Motions *in limine* Nos. 4, 5, and 6, without prejudice to their raising objections as to the foundation of Marcus Gray's or Crystal Gray's testimony on plaintiffs' concert performances.

The Court **GRANTS** in part and **DENIES** in part defendants' Motions *in limine* Nos. 3 and 9.  Plaintiffs may offer testimony about the record label's refusal to provide sales records as rebuttal evidence.  Plaintiffs may not introduce the Billboard charts for the purpose of establishing that "Joyful Noise or *Our World Redeemed* experienced commercial success or a high number of sales, but they may offer the Billboard charts for the purpose of showing that "Joyful Noise" and *Our World Redeemed* appeared on those charts and to show that those works were relatively popular in the Christian music

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|----------|-------------------------|------|--------------|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

market.  The Court will exclude the summary charts created by Billboard for purposes of this litigation unless plaintiffs obtain all the underlying business records from Billboard before trial.  The Court reserves ruling on the admissibility of any weekly Billboard charts until plaintiffs have had an opportunity to lay a foundation for that evidence.

The Court **DENIES** defendants' Motion *in limine* No. 7.

The Court **DENIES** defendants' Motion *in limine* No. 8, without prejudice to their raising objections as to the foundation of this evidence at trial.

The Court **GRANTS** in part and **DENIES** in part defendants' Motion *in limine* No. 10.  Plaintiffs may not introduce evidence about Gottwald's status as a voting member of the GRAMMYs to demonstrate that Gottwald accessed "Joyful Noise" through the GRAMMYs.  The Court reserves ruling on whether evidence about Gottwald's status as a voting member of the GRAMMYs may be received in rebuttal until after Gottwald has testified at trial.

The Court **GRANTS** Defendants' Motion *in limine* No. 11.

The Court **DENIES** plaintiffs' motion to exclude Ferrara's expert testimony.

The Court **DENIES** plaintiffs' motion to exclude King's expert testimony.

The Court **DENIES** plaintiffs' motion to exclude Diamond's expert testimony.

In accordance with the foregoing, plaintiffs' motion to exclude the testimony of St. Martin and Rosenblatt is **GRANTED** in part and **DENIED** in part.  St. Martin and Rosenblatt may offer testimony on how users interacted with Myspace and YouTube between 2008 and 2013 and opine about what one would have had to do to access "Joyful Noise" on those websites.  St. Martin and Rosenblatt, however, may not opine about the ultimate probability or likelihood that an individual would have accessed "Joyful Noise."

The Court **GRANTS** in part and **DENIES** in part defendants' motion to exclude portions of Decker's expert testimony.  Decker is precluded from relying on mash-up YouTube videos or offering his opinion about how lay-listeners have perceived similarities between the two songs.  Decker may, however, provide testimony about the textural similarities between the two songs to rebut Ferrara's opinion about the similarity of the ostinatos to prior art.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

The Court **DENIES** in part and **GRANTS** in part defendants' motion to exclude Einhorn's testimony.

Defendants are directed to amend the pretrial conference order by July 10, 2019 to reflect their specific contentions as to why the plaintiffs' copyright is invalid and any evidence upon which they intend to rely to support this defense.

To the extent plaintiffs still intend to seek a portion of the concert revenues, plaintiffs are directed to identify by July 10, 2019 what, other than the performances, would give rise to concert revenues attributable to defendants' alleged infringement of "Joyful Noise."

IT IS SO ORDERED.

|  | 00 | 00 |
|---|---|---|
| Initials of Preparer | CMJ | |