CHRISTINE LEPERA (admitted *pro hac vice*)
  ctl@msk.com
JEFFREY M. MOVIT (admitted *pro hac vice*)
  jmm@msk.com
JACOB D. ALBERTSON (admitted *pro hac vice*)
  j1a@msk.com
MITCHELL SILBERBERG & KNUPP LLP
437 Madison Avenue, 25th Floor
New York, New York 10022
Telephone: (212) 509-3900
Facsimile: (212) 509-7239

AARON M. WAIS (SBN 250671)
  amw@msk.com
GABRIELLA A. NOURAFCHAN (SBN 301594)
  gan@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, California  90067
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

GREENBERG TRAURIG, LLP
VINCENT H. CHIEFFO (SBN 49069)
Email: ChieffoV@gtlaw.com
ALANA C. SROUR (SBN 271905)
Email: SrourA@gtlaw.com
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
Telephone:  310-586-7700
Facsimile:  310-586-7800

Attorneys for Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| MARCUS GRAY (p/k/a FLAME), et al., <br><br> Plaintiffs, <br><br> v. <br><br> KATHERYN ELIZABETH HUDSON (p/k/a KATY PERRY), et al., <br><br> Defendants. | CASE NO. 2:15-cv-05642-CAS (JCx) <br><br> Honorable Christina A. Snyder <br><br> **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT** <br><br> Filed:   July 1, 2014 <br> Trial:   July 17, 2019 |

Mitchell
Silberberg &
Knupp LLP

11264105.1

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT**

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................6

II. LEGAL STANDARD ...........................................................................7

III. PLAINTIFFS HAVE FAILED TO MEET THEIR BURDEN OF
PRESENTING EVIDENCE OF COPYRIGHT INFRINGEMENT
SUFFICIENT TO CREATE A FACTUAL ISSUE FOR THE JURY ...........8

    A. Plaintiffs Failed to Meet Their Burden of Presenting Evidence that
Their Copyright In "Joyful Noise" Includes the Allegedly
Infringed Portion of "Joyful Noise"—Ojukwu's Beat. .......................9

        1. Evidence Regarding Creation and Ownership of the Beat
and "Joyful Noise"...................................................................10

        2. The Evidence Is Insufficient to Meet Plaintiffs' Burden .........12

    B. Plaintiffs Failed To Meet Their Burden Of Presenting Evidence of
*Access* Sufficient to Create a Factual Issue for the Jury....................13

        1. Plaintiffs Did Not Proffer Any Direct Evidence of Access
or Circumstantial Evidence of a Chain of Events. ..................14

        2. Plaintiffs Failed to Meet Their Burden of Presenting
Evidence of Widespread Dissemination of "Joyful Noise"
Sufficient to Create a Factual Issue for the Jury.....................16

    C. Plaintiffs Have Failed To Meet Their Burden Of Presenting
Evidence of *Substantial Similarity* Sufficient to Create a Factual
Issue for the Jury. ..............................................................................22

    D. Defendants Have Presented Unrebutted Evidence Of Independent
Creation ..............................................................................................25

    E. Judgment Should Enter As a Matter of Law As To Defendants For
Whom Plaintiffs Failed To Present Evidence Of Infringement..........27

IV. CONCLUSION ...................................................................................29

Mitchell
Silberberg &
Knupp LLP

11264105.1

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## CASES

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ...................................................................................7

*Apple Computer, Inc. v. Microsoft Corp.*,
35 F.3d 1435 (9th Cir. 1994) ...................................................................23

*Archibald v. Cty. of San Bernardino*,
2018 WL 6017032 (C.D. Cal. Oct. 2, 2018) ............................................8

*Art Attacks Ink, LLC v. MGA Entm't Inc.*,
581 F.3d 1138 (9th Cir. 2009) ................................................................14

*Batts v. Adams*,
2011 WL 13217923 (C.D. Cal. Feb. 8, 2011) ...................................18, 19

*Benay v. Warner Bros. Entm't*,
607 F.3d 620 (9th Cir. 2010) ...................................................................22

*Blue Underground Inc. v. Caputo*,
2015 WL 12683972 (C.D. Cal. Mar. 16, 2015) ........................................9

*Cavalier v. Random House, Inc.*,
297 F.3d 815 (9th Cir. 2002) .............................................................23, 25

*Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*,
499 U.S. 340 (1991) ...................................................................................8

*Ford v. Ray*,
130 F. Supp. 3d 1358 (W.D. Wash. 2015) ..............................................13

*Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*,
139 S. Ct. 881 (2019).................................................................................9

*Funky Films, Inc. v. Time Warner Entm't Co., L.P.*,
462 F.3d 1072 (9th Cir. 2006) ...........................................................9, 23

*Herbert Rosenthal Jewelry Corp. v. Kalpakian*,
446 F.2d 738 (9th Cir. 1971) ...................................................................25

**TABLE OF AUTHORITIES**
<u>continued</u>

<u>Page(s)</u>

*In re Letterman Bros. Energy Sec. Lit.*,
   799 F.2d 967 (5th Cir. 1986) ..................................................................... 7, 8, 16

*Loomis v. Cornish*,
   836 F.3d 991 (9th Cir. 2016) ........................................................................ passim

*McGonigle v. Combs*,
   968 F.2d 810 (9th Cir. 1992) ............................................................................... 7

*Metcalf v. Bochco*,
   294 F.3d 1069 (9th Cir. 2002) ........................................................................... 23

*Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*,
   531 F.3d 962 (9th Cir. 2008) ....................................................................... 12, 13

*Smith v. Jackson*,
   84 F.3d at 1218 .................................................................................................. 22

*Swirsky v. Carey*,
   376 F.3d 841 (9th Cir. 2004) ............................................................................ 23

*Three Boys Music Corp. v. Bolton*,
   212 F.3d 477 (9th Cir. 2000) ............................................................ 17, 19, 22, 25

*U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*,
   692 F.3d 1009 (9th Cir. 2012) ............................................................................ 8

*Williams v. Gaye*,
   895 F.3d 1006 (9th Cir. 2018) .......................................................................... 29

*Zenix Indus. USA, IN. v. King Hwa Indus. Co.*,
   920 F.2d 937 (9th Cir. 1990) ............................................................................ 12

**STATUTES**

17 U.S.C.
   § 411(a) ............................................................................................................... 9
   § 101 .................................................................................................................. 12
   § 103 ............................................................................................................. 12, 13
   § 106 .................................................................................................................. 27

Mitchell
Silberberg &
Knupp LLP

11264105.1

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT**

# TABLE OF AUTHORITIES

<u>continued</u>

**Page(s)**

§ 410(c) .............................................................................................. 9

§ 501 ................................................................................................... 27

## OTHER AUTHORITIES

1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright §
6.05 (2019) ....................................................................................... 12

Fed. R. Civ. P. 50(a) ...................................................................... 6, 7, 29

Mitchell
Silberberg &
Knupp LLP

11264105.1

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT**

# I.     INTRODUCTION

Pursuant to Fed. R. Civ. P. 50(a), Defendants request that judgment be entered against Plaintiffs and in Defendants' favor.  The undisputed facts and clear law can support only this one conclusion.

As discussed more fully below, Plaintiffs were unable to present a legally sufficient evidentiary basis for a reasonable jury to find for Plaintiffs on their sole cause of action for direct copyright infringement.

First, as a threshold matter, Plaintiffs failed to present sufficient evidence to establish that they own a valid copyright registration in the allegedly infringed material—i.e., the composition of the instrumental track created by Mr. Ojukwu that was published on Myspace and later sold to Mr. Gray and incorporated into "Joyful Noise" (the "Beat").  Plaintiffs' evidence did not establish that "Joyful Noise" is a joint work incorporating the Beat.  Plaintiffs failed to demonstrate that Mr. Ojukwu exercised any control over "Joyful Noise," and failed to demonstrate any objective manifestations of intent at the time of creation that Mr. Ojukwu would be a joint author of "Joyful Noise."  Rather, the evidence demonstrated that the Beat was a preexisting work with a copyright independent of "Joyful Noise."  The copyright in "Joyful Noise" therefore affords no protection to the Beat.

Second, Plaintiffs failed to present sufficient evidence that the relevant authors of "Dark Horse" had a reasonable opportunity to hear "Joyful Noise" before creating the allegedly infringing portion of "Dark Horse."  Plaintiffs presented no direct or chain-of-events evidence of access.  As to the issue of widespread dissemination, Plaintiffs offered no evidence of sales or other commercial distribution of "Joyful Noise."  The only purported evidence of widespread dissemination was bare testimony that Mr. Gray performed "Joyful Noise" at concerts, that "Joyful Noise" and *Our World Redeemed* appeared on Billboard charts, that "Joyful Noise" received critical acclaim within the Christian Music industry, and that videos containing the sound recording of "Joyful Noise"

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT**

1  were posted to Myspace and YouTube webpages.  None of these pieces of
2  evidence, individually or collectively, is sufficient to meet Plaintiffs' burden.

3       Third, Plaintiffs failed to present sufficient evidence demonstrating
4  substantial similarity in original, protectable expression between "Joyful Noise"
5  and "Dark Horse," either under the extrinsic or the intrinsic test.  During trial, Dr.
6  Decker conceded that there are many differences between "Joyful Noise" and
7  "Dark Horse," and that each of the purported similarities between the works are
8  commonplace musical devices.  Dr. Decker failed to extract these admittedly
9  commonplace elements from the works when performing his analysis, or explain
10  how the selection, coordination and arrangement of the commonplace elements in
11  "Joyful Noise" constitutes protectable expression that Plaintiffs are entitled to
12  monopolize.

13       Fourth, even if the jury could reasonably conclude that the Plaintiffs have
14  demonstrated valid ownership, access, and substantial similarity, judgment as a
15  matter of law is still warranted because Defendants presented unrebutted evidence
16  that they independently created "Dark Horse."

17       For the foregoing reasons, as set forth more fully below, Defendants' motion
18  should be granted.

19  **II.  LEGAL STANDARD**

20       Under Fed. R. Civ. P. 50(a), judgment as a matter of law in connection with
21  a jury trial is proper "when the evidence permits only one reasonable conclusion as
22  to the verdict."  *McGonigle v. Combs*, 968 F.2d 810, 816 (9th Cir. 1992); *In re*
23  *Letterman Bros. Energy Sec. Lit.*, 799 F.2d 967, 971 (5th Cir. 1986) (judgment as a
24  matter of law is "a conclusion of law when there is insufficient evidence to create a
25  factual issue for the jury."); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52
26  (1986) (the relevant inquiry in a motion for judgment as a matter of law is
27  "whether the evidence presents a sufficient disagreement to require submission to a
28  jury or whether it is so one-sided that one party must prevail as a matter of law.");

Mitchell
Silberberg &
Knupp LLP

11264105.1

7

*Letterman*, 799 F.2d at 971 (similar).  Judgment as a matter of law is not limited to situations where "there is a complete absence of probative facts to support a jury verdict."  *Id.* at 972.  Moreover, a "mere scintilla" of evidence opposed to the motion is insufficient to present a question for the jury.  *Id.* at 971.

"Although both motions employ the same legal standard, the denial of a motion for summary judgment does not mandate that a Rule 50 motion be denied, because the latter tests the sufficiency of evidence actually presented at trial." *Archibald v. Cty. of San Bernardino*, 2018 WL 6017032, at *4 (C.D. Cal. Oct. 2, 2018).  "Furthermore, after trial, the court [may have] a better basis on which to determine the existence of material issues, including that there was never a true issue of fact at all."  *Id.* (citing *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 772 (9th Cir. 1981)).

Under these standards, as applicable to each of the issues below, Defendants are entitled to judgment.

## III. PLAINTIFFS HAVE FAILED TO MEET THEIR BURDEN OF PRESENTING EVIDENCE OF COPYRIGHT INFRINGEMENT SUFFICIENT TO CREATE A FACTUAL ISSUE FOR THE JURY[1]

To establish copyright infringement, a plaintiff must prove two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 361 (1991).

As to the first element, during trial, Plaintiffs were required to establish by a preponderance of the evidence that their copyright in the composition "Joyful Noise" included the allegedly infringed portion of "Joyful Noise"—the composition in the instrumental beat created independently by Ojukwu (the "Beat").  *U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, 692 F.3d 1009, 1016

---

[1] Defendants have cited to transcripts, where available—either specifically or generally as time allowed.

1   (9th Cir. 2012) ("copyright protection in the derivative work will cover only 'the

2   material contributed by the author of such work, as distinguished from the

3   preexisting material employed in the work'" (quoting 17 U.S.C. § 103(b))); 9th Cir.

4   Jury Instrs. No. 17.6.

5          As to the second element, during trial, Plaintiffs were required to establish

6   by a preponderance of evidence that the authors of "Dark Horse" who were

7   involved in the creation of the allegedly infringing instrumental beat of "Dark

8   Horse" had access to "Joyful Noise" prior to creating the instrumental portion of

9   "Dark Horse" **and** there are substantial similarities between "Dark Horse" and

10  original, protectable expression in "Joyful Noise."  *Loomis v. Cornish*, 836 F.3d

11  991, 994 (9th Cir. 2016); *Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462

12  F.3d 1072, 1076 (9th Cir. 2006); 9th Cir. Jury Instrs. Nos. 17.1 & 17.17.  Plaintiffs

13  failed to present evidence sufficient to create a factual issue for the jury on either

14  element.

15  **A.     Plaintiffs Failed to Meet Their Burden of Presenting Evidence**

16  **that Their Copyright In "Joyful Noise" Includes the Allegedly**

17  **Infringed Portion of "Joyful Noise"—Ojukwu's Beat.**

18         Under 17 U.S.C. § 411(a), "no civil action for infringement of the copyright

19  in any United States work shall be instituted until preregistration or registration of

20  the copyright claim has been made in accordance with this title."  *Id.*; *Fourth*

21  *Estate Public Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 891 (2019).

22  At trial, Plaintiffs failed to satisfy this requirement because their copyright

23  registration does not protect the allegedly infringed portion of "Joyful Noise";

24  namely, the Beat created by Ojukwu.[2]

---

[2] Initially, it should be noted that the copyright registration for "Joyful Noise" is
not prima facie evidence of the validity of the copyright or of the facts stated in the
certificate because the registration was not made within five years after first
publication of "Joyful Noise."  17 U.S.C. § 410(c).  Instead, the evidentiary weight
accorded to the certificate of registration is within the discretion of the Court.  *Id.*
Here, the registration for "Joyful Noise"—issued 6 years after the first publication

1.     **Evidence Regarding Creation and Ownership of the Beat and "Joyful Noise"**

In 2007, Mr. Ojukwu created the Beat on his own without any input from or discussion with Mr. Gray, Mr. Lambert, or Mr. Moore.  7/18 Tr. at 53:23-54:15 (Lambert); 7/18 Tr. at 111:17-112:1, 118:19-119:3 (Ojukwu); 7/19 Tr. at 45:5-46:8 (Gray).

After the Beat was completed, Mr. Ojukwu published it to his Myspace page.  7/18 Tr. at 122:19-22 (Ojukwu).  Mr. Gray heard the Beat on Mr. Ojukwu's Myspace page, and by that time the Beat "was a musical composition that was already constructed."  7/19 Tr. at 46:6-8 (Gray); 7/18 Tr. at 122:19-22 (Ojukwu).  Mr. Gray, after hearing the Beat, paid Mr. Ojukwu $300 for the right to use the Beat and one other instrumental composition.  7/18 Tr. at 136:5-8 (Ojukwu).  There was no agreement between Mr. Gray and Mr. Ojukwu concerning ownership of the Beat or any subsequent work by Mr. Gray that incorporated the Beat.  7/18 Tr. at 137:3-12 (Ojukwu); 7/19 Tr. at 49:4-9 (Gray).  Mr. Ojukwu did not even know Gray was going to pay him for the Beat.  7/18 Tr. at 137:3-12 (Ojukwu).  Mr. Gray and Mr. Ojukwu did not have any discussions about the type of agreement for the purchase of the Beat when Mr. Gray sent Mr. Ojukwu a check for the Beat.  7/18 Tr. at 138:1-10 (Ojukwu).

After Mr. Ojukwu sold the Beat to Mr. Gray, Mr. Ojukwu had no input into the lyrics or the mixing and mastering of "Joyful Noise."  7/18 Tr. at 141:16-25; 143:2-16 (Ojukwu).  After Mr. Ojukwu sent the Beat to Mr. Gray but prior to its inclusion in "Joyful Noise," the synthesizer sounds in the Beat were replaced with guitars, but Mr. Ojukwu had no input into that decision.  *Id*. at 143:7-12.  He did not receive any versions of "Joyful Noise" until after the song was mixed,

---

of the composition and solely for purposes of suing Defendants—should be accorded "no weight."  *See, e.g.*, *Blue Underground Inc. v. Caputo*, 2015 WL 12683972, at *5 (C.D. Cal. Mar. 16, 2015) (citing *Sem-Torq, Inc. v. KMart Corp.*, 936 F.2d 851, 853-54 (6th Cir. 1991)).

Mitchell Silberberg & Knupp LLP

11264105.1

mastered, and finalized.  *Id.* at 143:13-16.  Mr. Lambert, who contributed lyrics to "Joyful Noise," had never met Mr. Ojukwu prior to this litigation, and admitted at his deposition that he had never heard the name "Chike Ojukwu" prior to this litigation.  7/18 Tr. at 45:8-10, 55:22-56:7.

"Joyful Noise" was released by Cross Movement Records on the album *Our World Redeemed* in 2008.  Tr. Ex. 58.  In the official liner notes for the album, Mr. Ojukwu was not listed as a "writer."  *Id.*[3]  When "Joyful Noise" was nominated for a Dove Award, Mr. Ojukwu was not listed as a "writer" of the composition.  Tr. Ex. 21.  Mr. Gray was aware of the nomination, but, in the two months between the announcement of the nominations and the award ceremony, he did not seek to have the Dove Award nominations changed to reflect that Mr. Ojukwu was a writer.  7/19 Tr. at 53:7-57:10, 97:9-99:14 (Gray).

There was no written transfer of the copyright in the Beat.  At no point until 2014, after this lawsuit was filed, did Mr. Ojukwu enter into any written agreement concerning any ownership in "Joyful Noise," and he admitted at his deposition (as acknowledged at trial) that he did not know whether he owned 50 percent in "Joyful Noise" until after Mr. Moore assigned his copyright in "Joyful Noise" in 2014.  7/18 Tr. at 139:20-23, 140:5-9 (Ojukwu); 7/19 Tr. at 79:4-7 (Gray); 7/18 Tr. at 66:8-67:6 (Lambert).  There is no written documentation of ownership in "Joyful Noise" that existed prior to the creation of "Dark Horse" in 2013: the Copyright Registration for "Joyful Noise" was filed on June 3, 2014 (Tr. Ex. 1), the assignment of copyright from Cross Movement Records was executed on July 3, 2014 (Tr. Ex. 6), the assignment of copyright from Lecrae Moore was executed on July 22, 2014 (Tr. Ex. 4), and the "Songwriters Split Agreement" was executed in the fall of 2014 (Tr. Ex. 5).

---

[3] Mr. Ojukwu was listed as a "producer," not a "writer" of "Joyful Noise," and he admitted that he understands that there are differences between producers and writers.  7/18 Tr. at 154:18-21 (Ojukwu).

Mitchell
Silberberg &
Knupp LLP

11264105.1

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT**

## 2.     The Evidence Is Insufficient to Meet Plaintiffs' Burden

Because, as the evidence at trial proved, the Beat was an independently-created composition that was later used in "Joyful Noise," "Joyful Noise" is a derivative work.  "The copyright in a . . . derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material."  17 U.S.C. § 103.

Separate contributions of authorship can only be a jointly authored work if the creators' intention, at the time of writing, was to merge the contributions into a greater work. 1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 6.05 (2019) ("[i]f his work is written 'with the intention that the contribution…be merged into inseparable or interdependent parts of a unitary whole,' then the merger of his contribution with that of others creates a joint work. If that intention occurs only after the work has been written, then the merger results in a derivative or collective work.") (citing *Oddo v. Ries*, 743 F.2d 630, 633-34 (9th Cir. 1984).); 17 U.S.C. § 101 (definition of a joint work).

There are three criteria used in the Ninth Circuit for determining whether a work is jointly authored: (1) whether the alleged coauthors objectively expressed intent to be coauthors; (2) whether the alleged author "superintended the work by exercising control"; and (3) whether the 'audience appeal of the work' was attributable to both authors such that "the share of each in its success cannot be appraised."  *Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*, 531 F.3d 962, 968 (9th Cir. 2008) (citing *Aalmuhammed v. Lee*, 202 F.3d 1227, 1234 (9th Cir. 2000)). While the second criterion, the alleged author's control over the final product, is often indicative, courts have also stated the importance of intent.  *Zenix Indus. USA, IN. v. King Hwa Indus. Co.*, 920 F.2d 937, at *4 (9th Cir. 1990) ("an author who intends to create a joint work must clearly demonstrate his or her intent in that regard") (quoting *Weissmann v. Freeman*, 868 F.2d 1313, 1319 (2d Cir. 1989).

1     *Ford v. Ray*, 130 F. Supp. 3d 1358, 1362-64 (W.D. Wash. 2015), is

2  illustrative.  In that case, the plaintiff claimed that he was a joint author of the song

3  "Baby Got Back" because he created the "beat" for the song and provided

4  "scratching" for the chorus of the song and a solo.  Although the plaintiff

5  continued to work with the defendant following his work on "Baby Got Back," the

6  parties never entered into a "formal agreement."  *Id.* at 1359.  In finding that the

7  plaintiff was **not** a joint author of the work, the court relied on the fact that,

8  "[a]lthough plaintiff possessed initial control over his contribution to 'Baby Got

9  Back,' the ultimate decision as to how or whether to incorporate plaintiff's

10  creations was left to defendant."  *Id.* at 1363.  As the court noted, "[t]he choices

11  regarding whether to use one of the beats, in whole or in part, and whether to make

12  alterations to the track rested entirely with defendant."  *Id.*  Furthermore, there was

13  no evidence that the plaintiff had "ever identified himself as the author of 'Baby

14  Got Back,' that defendant ever acknowledged him as a co-author, or even that he

15  had made a claim of authorship prior to the filing of the Complaint."  *Id.*

16     This case is no different.  The evidence at trial demonstrated that Mr.

17  Ojukwu did not "superintend[] the work by exercising control," and there is no

18  evidence, prior to the filing of this lawsuit, of "objective manifestations of a shared

19  intent to be coauthors."  *Richlin*, 531 F.3d at 968.  Accordingly, Mr. Ojukwu

20  cannot be said to be a joint author of "Joyful Noise."  Instead, "Joyful Noise" is a

21  derivative work incorporating the Beat, and the copyright in "Joyful Noise" does

22  not protect the preexisting material embodied in the Beat.  17 U.S.C. § 103.

23     **B.**   **<u>Plaintiffs Failed To Meet Their Burden Of Presenting Evidence of</u>**

24            **<u>*Access* Sufficient to Create a Factual Issue for the Jury.</u>**

25     Proof of access requires "an opportunity to view or to copy plaintiff's work."

26  *Loomis v. Cornish*, 836 F.3d 991, 995 (9th Cir. 2016) (quoting *Sid and Marty*

27  *Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1172 (9th Cir.

28  1977), *superseded on other grounds by* 17 U.S.C. § 504(b)).  "To prove access, a

plaintiff must show a reasonable possibility, not merely a bare possibility, that an alleged infringer had the chance to view the protected work." *Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1143 (9th Cir. 2009).  "Where there is no direct evidence of access, circumstantial evidence can be used to prove access either by (1) establishing a chain of events linking the plaintiff's work and the defendant's access, or (2) showing that the plaintiff's work has been widely disseminated."  *Id*.  Here, Plaintiffs failed to present evidence sufficient to create a factual issue for the jury on access:

### 1.    Plaintiffs Did Not Proffer Any Direct Evidence of Access or Circumstantial Evidence of a Chain of Events.

Plaintiffs failed to present any direct evidence of access by any Defendant, including the relevant authors of the ostinato in "Dark Horse" that Plaintiffs allege infringes "Joyful Noise."[4]  Plaintiffs also failed to present circumstantial evidence establishing a chain of events linking "Joyful Noise" and access by any Defendant, including the relevant authors.  To the contrary, during trial, Plaintiffs admitted that:

- They have never met, spoken to, or communicated with the Individual Defendants (7/18 Tr. at 45:12-46:7 (Lambert); 7/18 Tr. at 145:19-146:7 (Ojukwu));

- They never sent music, including "Joyful Noise," to the Individual Defendants and have no knowledge of anyone else doing so (7/18 Tr. at

---

[4] The evidence at trial made clear that Mr. Walter created the original instrumental beat for "Dark Horse" in March 2013 and that this beat included Ostinato #1 (which is not in issue) and Ostinato #2 (which is in issue) and that Gottwald was there that day and contributed to the beat by suggesting changes to the bass notes in the chorus (not Ostinato #1 and #2).  The other defendants—Katheryn Hudson, Sarah Hudson, Sandberg, and Houston—did not create, modify, or contribute to the instrumental track, including Ostinatos #1 and #2.  As a result and for the sake of judicial economy, Houston did not testify live but his testimony about his lack of involvement was read into evidence (among other testimony).  Thus, when Defendants refer to the testimony of the "relevant authors" in this motion, it does not include Houston.  Conversely, when Defendants refer to the Individual Defendants, it is referring to all of the "Dark Horse" authors, including Houston.

46:8-47:7 (Lambert); 7/18 Tr. at 146:8-20, 147:4-10 (Ojukwu); 7/19 Tr. at 27:9-28:4 (Gray));

- They have no knowledge of the Individual Defendants buying a copy of *Our World Redeemed* (7/18 Tr. at 47:8-18 (Lambert); 7/18 Tr. at 147:11-19 (Ojukwu); 7/19 Tr. at 28:5-8 (Gray));

- They have no knowledge of the Individual Defendants hearing a recording or performance of "Joyful Noise" or attending a concert where "Joyful Noise" was played (7/18 Tr. at 47:19-48:9 (Lambert); 7/18 Tr. at 146:21-147:3 (Ojukwu); 7/19 Tr. at 28:9-24, 44:6-9 (Gray));

- They have no knowledge of any of the Individual Defendants hearing "Joyful Noise" on the radio or on television (7/18 Tr. at 48:14-20 (Lambert));

- They have no knowledge of any of the Individual Defendants downloading "Joyful Noise" from the Internet or hearing it on Myspace (7/18 Tr. at 50:24-52:2 (Lambert); 7/18 Tr. at 150:12-23 (Ojukwu); 7/19 Tr. at 35:25-37:13 (Gray));

- They have never sent "Joyful Noise" to any employee or executive of the Corporate Defendants[5] (7/18 Tr. at 49:11-50:1 (Lambert); 7/18 Tr. at 148:23-149:12 (Ojukwu); 7/19 Tr. at 35:3-18 (Gray));

- They have no knowledge of any employee or executive of the Corporate Defendants buying a copy of *Our World Redeemed* (7/18 Tr. at 50:3-6 (Lambert); 7/18 Tr. at 149:13-16 (Ojukwu));

- They have no knowledge of any employee or executive of the Corporate Defendants attending a concert where "Joyful Noise" was performed (7/18 Tr. at 50:7-22 (Lambert); 7/18 Tr. at 149:23-150:6 (Ojukwu); 7/19 Tr. at 35:19-21 (Gray)).

---

[5] The "Corporate Defendants" are Capitol Records, LLC, UMG Recordings, Inc., Universal Music Group, Inc., WB Music Corp., Kobalt Music Publishing America, Inc., and Kasz Money, Inc., and Kitty Purry, Inc.

- The relevant authors, in turn, unequivocally testified that they did not know of Plaintiffs or Plaintiffs' music, including "Joyful Noise," and never heard "Joyful Noise" prior to this litigation being filed.  Indeed, the relevant authors testified that they never purchased "Joyful Noise" or the album on which it appeared, *Our World Redeemed*; never listened to it being performed live; and did not listen religious music (including Christian hip hop), or follow religious charts or religious awards.  7/18 Tr. at 96:1-98:4, 99:3-9 (Katheryn Hudson); 7/23 a.m. Tr. at 18:14-23:18 (Sandberg); 7/23 a.m. Tr. at 70:20-72:25, 74:5-75:14 (Walter); 7/23 a.m. Tr. at 104:20-107:22 (Gottwald); 7/23 p.m. Tr. at 80:15-84:2, 85:3-15 (Sarah Hudson).[6]

### 2.  Plaintiffs Failed to Meet Their Burden of Presenting Evidence of Widespread Dissemination of "Joyful Noise" Sufficient to Create a Factual Issue for the Jury.

Lacking direct evidence or circumstantial evidence of a chain of events, during trial, Plaintiffs tried to establish access by relying exclusively on circumstantial evidence that "Joyful Noise" was widely disseminated as to give rise to a reasonable opportunity for the relevant authors to hear it before they created the allegedly infringing instrumental beat heard in "Dark Horse."  Plaintiffs failed.  At best, Plaintiffs presented only a "mere scintilla" of evidence of widespread dissemination.  *Letterman*, 799 F.2d at 971.  Plaintiffs tried to prove several forms of dissemination to meet their burden but their proof fails individually and in the aggregate.  As to each:

<u>YouTube</u>: at trial, Plaintiffs presented evidence that six videos containing a sound recording of "Joyful Noise" were on YouTube and that these six videos had a cumulative "view" count of 3.88 million views.  Defendants, however, presented evidence that six videos on YouTube with those view levels does not rise to the

---

[6] Plaintiffs concede that they are not arguing willful infringement.  7/18 Tr. at 14:18-15:1.  In any event, there is no evidence of willful infringement (or infringement at all).

level of widespread dissemination.  Instead, finding the YouTube videos was the equivalent of looking for the proverbial needle in a haystack and 3.88 million views is an infinitesimal number of views in the context of the larger YouTube universe.

Indeed, the stipulated facts and unrebutted testimony of Defendants' expert, Bill Rosenblatt,[7] proved that Plaintiffs' six videos were six in hundreds of millions to billions of videos and that their 3.88 million views were dwarfed by the 4.14 trillion views during 2008-March 2013 (i.e., the period between when "Joyful Noise" was posted to YouTube and the instrumental beat for "Dark Horse" was created).  *See* Tr. Ex. 122 (Stipulated Facts); Rosenblatt Testimony, 7/24/2019. Rosenblatt also testified that to find a "Joyful Noise" video on YouTube, a user would have to take affirmative steps to search for and find it by searching for the song by name or by the artist's name.  Absent such information, he testified that trying to find "Joyful Noise" on YouTube would be the equivalent of trying to find six people in China without knowing their names.

Finally, the relevant authors testified that they did not listen to religious music—including Christian hip-hop—and did not seek it out online.[8]  *See* 7/18 Tr. at 96:1-98:4, 99:3-9 (Katheryn Hudson); 7/23 a.m. Tr. at 18:14-23:18 (Sandberg); 7/23 a.m. Tr. at 70:20-72:25, 74:5-75:14 (Walter); 7/23 a.m. Tr. at 104:20-107:22 (Gottwald); 7/23 p.m. Tr. at 80:15-84:2, 85:3-15 (Sarah Hudson).

Plaintiffs' evidence is not sufficient to give rise to a reasonable opportunity to hear "Joyful Noise" on YouTube. *See Loomis*, 836 F.3d at 998 (where arguably the evidence was better for the plaintiff than that here, the Court found: "Although

---

[7] At trial, Rosenblatt testified about his extensive experience and other qualifications that served as the basis for his opinions and testimony. Rosenblatt Testimony, 7/24/2019.

[8] Dkt. 403, p. 3 (courts may assess the characteristics and practices of a defendant in determining whether a plaintiff has established access through widespread dissemination) (citing *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 483 (9th Cir. 2000)).

1   there was a bare possibility that they head Bright Red Chords on the radio, or that

2   they read about Loomis and the Lust in a magazine in the break room of Playback

3   Studios, or that they picked up one of Loomis's promotional CDs while at

4   Playback, that is not enough to raise a triable issue of access."); *Batts v. Adams*,

5   2011 WL 13217923, at *4 (C.D. Cal. Feb. 8, 2011) ("[P]osting of videos and/or

6   songs on YouTube, Amazon.com, and iTunes by an unknown singer, [*inter alia*]

7   'can only be described as the modern day equivalent of looking for a needle in a

8   haystack—where the alleged seeker does not know the needle exists, and isn't

9   looking for it.'").

10      Myspace: at trial, Plaintiffs presented evidence that a sound recording of

11   "Joyful Noise" was on the Myspace profile pages for Gray and Moore and that the

12   recording had a cumulative "play" count of 2.49 million plays.  Defendants,

13   however, presented evidence that two profile pages with those play counts do not

14   rise to the level of widespread dissemination.  Instead, finding the Myspace profile

15   pages of Gray and Moore on Myspace is the equivalent of looking for the

16   proverbial needle in a haystack and 2.49 million views is an infinitesimal number

17   of views in the context of the larger Myspace universe.

18      Indeed, the unrebutted testimony of Defendants' expert, Zachary St. Martin,[9]

19   proved that Plaintiffs' two Myspace pages were two out of 265 million registered

20   accounts and that "Joyful Noise" was one song out of up to 53 million songs from

21   over 14 million artists.  7/23 p.m. Tr. at 103:16-105:15 (St. Martin).  He also

22   testified that the 2.49 million plays of "Joyful Noise" were dwarfed by one billion

23   plays every month during 2008-March 2013 (i.e., the period between when "Joyful

24   Noise" was posted to YouTube and the instrumental beat for "Dark Horse" was

25   created).  *Id*.

26   _____

27   [9] At trial, St. Martin testified about his extensive experience and other qualifications—including working at Myspace for nearly a decade—that served as the basis for his opinions and testimony. 7/23 p.m. Tr. at 91:2-94:9; 111:1-14 (St. Martin).

28

St. Martin also testified regarding how users generally viewed or listened to content on Myspace between 2008 and 2013, and the circumstances under which an individual user could have come upon "Joyful Noise" on Myspace. *Id*. at 98:13-100:9. He testified, that the primary ways in which users could access a song on Myspace were through: (1) searching for a particular artist or song that the user already knew about; or (2) viewing the songs "featured" on Myspace, which were songs chosen by the Myspace editorial team from the most popular, mainstream songs in the rap, rock, and pop genres, not religious music or Christian hip-hop. *Id*.

Finally, the relevant authors testified that they did not listen to religious music—including Christian hip-hop—and did not seek it out online.[10] *See* 7/18 Tr. at 96:1-98:4, 99:3-9 (Katheryn Hudson); 7/23 a.m. Tr. at 18:14-23:18 (Sandberg); 7/23 a.m. Tr. at 70:20-72:25, 74:5-75:14 (Walter); 7/23 a.m. Tr. at 104:20-107:22 (Gottwald); 7/23 p.m. Tr. at 80:15-84:2, 85:3-15 (Sarah Hudson). Plaintiffs' evidence is not sufficient to give rise to a reasonable opportunity to hear "Joyful Noise" on Myspace. *See Loomis*, 836 F.3d at 998, *supra*; *Batts*, 2011 WL 13217923, at *4.

<u>Live Performances</u>: during trial, Plaintiffs did not provide a shred of documentary evidence that Gray or Moore performed live "Joyful Noise" and to the extent that Gray and Crystal Gray's testimony of 300 performances of "Joyful Noise" is credited, it is insufficient. Plaintiffs could not provide evidence of the audience size of these performances. In addition, Gray and Crystal Gray testified that 70 percent of his concerts were at churches and other religious venues. 7/19 Tr. at 39:16-18 (Gray); 7/23 p.m. Tr. at 26:12-16 (C. Gray). In addition, of the remaining 30 percent, Mr. Gray testified that "a good portion" of those venues are still religious themed events. 7/19 Tr. at 96:17-97:8 (Gray). He also admitted that

---

[10] Dkt. 403, p. 3 (courts may assess the characteristics and practices of a defendant in determining whether a plaintiff has established access through widespread dissemination) (citing *Three Boys*, 212 F.3d at 483).

"Joyful Noise" was not performed during any award shows.  7/19 Tr. at 37:14-39:15 (Gray).  This means that, at most, less than 100 concerts over the five years at issue were non-religious.  Performing "Joyful Noise" at religious venues and events is irrelevant given the unrebutted testimony of the Defendant authors that they did not listen to religious music or attend religious concerts, including those of Gray and Moore.  *See* 7/18 Tr. at 96:1-98:4, 99:3-9 (Katheryn Hudson); 7/23 a.m. Tr. at 18:14-23:18 (Sandberg); 7/23 a.m. Tr. at 70:20-72:25, 74:5-75:14 (Walter); 7/23 a.m. Tr. at 104:20-107:22 (Gottwald); 7/23 p.m. Tr. at 80:15-84:2, 85:3-15 (Sarah Hudson).  And 100 concerts over five years at secular venues, but largely for religious events, does not rise to the level of widespread dissemination.

Radio and Television Interviews: at trial, Plaintiffs did not provide a shred of documentary evidence that "Joyful Noise" was played on the radio or television.  Instead, they presented testimony from Gray and Crystal Gray that the song was played during interviews of Gray while touring between 2008 and March 2013.  Plaintiffs, however, could not provide any evidence of the radio stations or television stations on which these interviews aired, the audience these radio stations reached, the time of day the interviews aired, or any other information about these interviews.  7/19 Tr. at 44:13-15 (Gray).  Even Lambert and Ojukwu testified that they never heard "Joyful Noise" on the radio.  7/18 Tr. at 48:11-13 (Lambert); 7/18 Tr. at 148:16-18 (Ojukwu).  Moreover, even if one assumes that Gray was interviewed before each performance he gave, 300 interviews on unnamed radio and television stations reaching unknown audiences does not rise to the level of widespread dissemination.  This is particularly true where the relevant authors testified they did not listen to Christian music.  *See* 7/18 Tr. at 96:1-98:4, 99:3-9 (Katheryn Hudson); 7/23 a.m. Tr. at 18:14-23:18 (Sandberg); 7/23 a.m. Tr. at 70:20-72:25, 74:5-75:14 (Walter); 7/23 a.m. Tr. at 104:20-107:22 (Gottwald); 7/23 p.m. Tr. at 80:15-84:2, 85:3-15 (Sarah Hudson).

Sales: at trial, Plaintiffs did not provide any evidence of any sales of *Our World Redeemed* or "Joyful Noise" and admit that they have no such evidence. 7/19 Tr. at 44:2-5 (Gray); 7/18 Tr. at 48:22-49:8 (Lambert); 7/23 p.m. Tr. at 39:18-20 (C. Gray).  They did not provide any sales records or records showing income received from the exploitation of "Joyful Noise."  While they tried to blame Gray's former record label, Cross Movement Records, for this lack of proof, they did not even try to obtain this information in discovery, choosing to not subpoena Cross Movement.  7/19 Tr. at 33:1-34:16, 100:18-23 (Gray).  Moreover, while Gray and Crystal Gray testified that they saw evidence of "Joyful Noise" or the album on which it appeared, *Our World Redeemed*, being available for sale on websites or in brick-and-mortar stores, they did not present evidence—documentary or testimony—that anyone actually bought it, much less in quantities sufficient to prove widespread dissemination.[11]  This evidence is also insufficient to raise a triable issue of fact.

Billboard charts and award nominations: Plaintiffs also presented evidence that "Joyful Noise" or *Our World Redeemed* appeared on Billboard charts in the Christian and Gospel music categories and were also nominated for two Christian music awards (the Stellar Awards and the Dove Awards) and a Grammy Award in the category of Best Rock or Rap Gospel Album.  Such evidence does not prove widespread dissemination—at best it shows critical acclaim in the niche genre of Christian music—which the relevant authors testified they did not follow as a musical genre or as it pertains to Billboard charts and awards.  *See* 7/18 Tr. at 96:1-98:4, 99:3-9 (Katheryn Hudson); 7/23 a.m. Tr. at 18:14-23:18 (Sandberg); 7/23 a.m. Tr. at 70:20-72:25, 74:5-75:14 (Walter); 7/23 a.m. Tr. at 104:20-107:22 (Gottwald); 7/23 p.m. Tr. at 80:15-84:2, 85:3-15 (Sarah Hudson).

---

[11] The only document produced by Plaintiffs shows that the song was available on Amazon.com as of July 10, 2014, ten days after the filing of the original Complaint in this case.  Tr. Ex. 79; 7/19 Tr. at 29:14-32:23 (Gray).

Mitchell Silberberg & Knupp LLP

11264105.1

21

The evidence in aggregate: Finally, even if one adds up all this evidence, it still is not sufficient to raise a factual issue for the jury to resolve regarding widespread dissemination.  Instead, it is no different than the evidence rejected by other courts in entering judgment in favor of Defendants in copyright infringement cases.  *See, e.g., Loomis*, 836 F.3d at 998 ("Although there was a bare possibility that they head Bright Red Chords on the radio, or that they read about Loomis and the Lust in a magazine in the break room of Playback Studios, or that they picked up one of Loomis's promotional CDs while at Playback, that is not enough to raise a triable issue of access."); *Cf. Three Boys*, 212 F.3d at 482-84 (reasonable opportunity requires more than mere speculation or conjecture).

Finally, even if Plaintiffs could prove that "Joyful Noise" was widely disseminated through these mediums of distribution (and they cannot), judgment in favor of the Defendants would still be warranted.  Plaintiffs did not rebut the testimony of the Defendant authors that they did not avail themselves of any alleged opportunity to hear "Joyful Noise."  *See* 7/18 Tr. at 96:1-98:4, 99:3-9 (Katheryn Hudson); 7/23 a.m. Tr. at 18:14-23:18 (Sandberg); 7/23 a.m. Tr. at 70:20-72:25, 74:5-75:14 (Walter); 7/23 a.m. Tr. at 104:20-107:22 (Gottwald); 7/23 p.m. Tr. at 80:15-84:2, 85:3-15 (Sarah Hudson).  This dispels any inference of copying.  *See* Dkt. 403, p. 3 (citing 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright*, § 13.02[A]).

## C. Plaintiffs Have Failed To Meet Their Burden Of Presenting Evidence of *Substantial Similarity* Sufficient to Create a Factual Issue for the Jury.

Plaintiffs have also failed to meet their burden of demonstrating substantial similarity in original, protectable expression between "Joyful Noise" and "Dark Horse."  Plaintiffs were required to prove substantial similarity "under the 'extrinsic test' and . . . under the 'intrinsic test.'" *Benay v. Warner Bros. Entm't*, 607 F.3d 620, 624 (9th Cir. 2010).  The extrinsic test, "considers whether two

works share a similarity of ideas and expression based on **external, objective criteria**." *Smith v. Jackson*, 84 F.3d at 1218 (emphasis added). "The extrinsic test requires analytical dissection of a work and expert testimony" to "break[] the works 'down into their constituent elements, and compar[e] those elements for proof of copying as measured by 'substantial similarity.''" *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004). But not all similarities are relevant: "[P]rotectable *expression* includes the specific details of an author's rendering of ideas," but not the ideas themselves. *Metcalf v. Bochco*, 294 F.3d 1069, 1074 (9th Cir. 2002) (emphasis added). For this reason, the trier of fact must "**filter out and disregard** the non-protectible elements in making [a] substantial similarity determination." *Cavalier*, 297 F.3d at 822; *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994) ("the unprotectable elements have to be identified, or filtered, before the works can be considered as a whole."). If Plaintiff fails to satisfy the extrinsic test, the inquiry is over.

The intrinsic test, in turn, is left to the trier of fact and "examines an ordinary person's *subjective* impressions of the similarities between two works." *Funky Films, Inc.*, 462 F.3d at 1077. The jury must consider whether the two works **as a whole** are "substantially similar in the total concept and feel of the works." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002).

As to the extrinsic test, during trial, Plaintiffs presented the testimony of Dr. Todd Decker. Dr. Decker, however, did not transcribe any of the material in "Dark Horse" or "Joyful Noise" in full. 7/19 Tr. at 193:6-9 (Decker). Aside from the ostinato in "Joyful Noise" and Ostinato #2 in "Dark Horse," Dr. Decker did not analyze any of the differences between "Dark Horse" and "Joyful Noise." *Id.* at 193:10-14. During trial, Dr. Decker made admissions (either through testimony or through acknowledging his admissions at his deposition) which establish that there are many differences between "Dark Horse" and "Joyful Noise," including:

- the last two notes in the ostinatos at issue are different (*id.* at 149:20-22);

1    • "Dark Horse" and "Joyful Noise" are in different keys (*id.* at 150:5-25)

2    • the tempo of "Dark Horse" and "Joyful Noise" are different (*id.* at 152:1-6,
3       194:23-25);

4    • the harmony is different between "Dark Horse" and "Joyful Noise" (*id.* at
5       194:11-18);

6    • the harmonic rhythm is different between "Dark Horse" and "Joyful Noise"
7       (*id.* at 194:19-22);

8    • the rhythm of rap vocals is different between "Dark Horse" and "Joyful
9       Noise" (*id.* at 195:1-5);

10   • the ostinato in "Joyful Noise" has "slides" and the ostinato in "Dark Horse"
11      does not (*id.* at 195:9-22);

12   • the timbre in "Dark Horse" and "Joyful Noise" with respect to the ostinatos
13      are not identical (*id.* at 206:21-207:4).

14      Dr. Decker also admitted that the similarities he identified between "Dark
15   Horse" and "Joyful Noise" are simple.  Specifically, he admitted that:

16   • countless musical works have contained ostinatos (*id.* at 197:2-7);

17   • evenly spaced notes are a "relatively simple rhythmic choice" that "no
18      composer's entitled to monopolize" (*id.* at 197:17-23);

19   • a great many popular song feature both singing and rapping (*id.* at 206:15-
20      17);

21   • repetitive syncopated bass lines are common in popular music (*id.* at 206:18-
22      20);

23   • a pingy synthesized timbre cannot be monopolized (*id.* at 206:21-207:4);

24   • it is relatively simple to hit four C notes in a row followed by two B notes
25      (*id.* at 206:1-14).

26   • a C note and a B note are right next to each other on a piano, and are not
27      hard to play (*id.* at 184:1-7).

28

Mitchell
Silberberg &
Knupp LLP

11264105.1

24

1      Dr. Decker failed to extract these admittedly commonplace elements from

2  the works when performing his analysis, or explain how the selection, coordination

3  and arrangement of the commonplace elements in "Joyful Noise" constitutes

4  protectable expression that Plaintiffs are entitled to monopolize.

5      Dr. Ferrara, in turn, conducted an analytical dissection of the "Joyful Noise"

6  and "Dark Horse" compositions, including by transcribing the works into musical

7  notation, reviewing and transcribing relevant prior art, and extracting those

8  elements of both works that are unprotectible.  Dr. Ferrara testified that each of the

9  purported similarities between the two works that Dr. Decker identified are trite,

10 commonplace, and unremarkable, either separately or in combination with each

11 other and emphatically **not** substantially similar.  Of particular note, Dr. Ferrara

12 testified (and Dr. Decker agreed, *see id.* at 183:7-10, 184:14-18, 186:8-14, 187:4-6)

13 that the main ostinato in "Dark Horse" ("Ostinato #1") was not similar to any

14 protectable musical expression in "Joyful Noise."  "Ostinato #2," the allegedly

15 infringing portion of "Dark Horse," was derived from the admittedly non-

16 infringing Ostinato #1.

17     As to the intrinsic test, an ordinary person listening to the wholes of "Joyful

18 Noise" and "Dark Horse" would not subjectively find the two works as a whole to

19 be "substantially similar in the total concept and feel of the works."  *Cavalier*, 297

20 F.3d at 822.

21  **D.    Defendants Have Presented Unrebutted Evidence Of Independent**

22  **Creation**

23     If a plaintiff shows that the defendant had access to the plaintiff's work and

24 that there is a substantial similarity between the infringed and infringing works, a

25 presumption of copying arises shifting the burden to the defendant to rebut the

26 presumption or to show that the alleged infringing work was independently

27 created.  *Three Boys Music*, 212 F.3d at 486 ("By establishing reasonable access

28 and substantial similarity, a copyright plaintiff creates a presumption of copying.

Mitchell
Silberberg &
Knupp LLP

11264105.1

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT**

The burden shifts to the defendant to rebut that presumption through proof of independent creation.") (citing *Granite Music Corp. v. United Artists Corp.*, 532 F.2d 718, 721 (9th Cir. 1976)); *see also Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738, 741 (9th Cir. 1971) ("It is true that defendants had access to plaintiff's [copyrighted] pin and that there is an obvious similarity between plaintiff's pin and those of defendants.  These two facts constitute strong circumstantial evidence of copying.  But they are not conclusive, and there was substantial evidence to support the trial court's finding that defendant's pin was in fact an independent creation.") (citations omitted).

Here, even if Plaintiffs presented evidence sufficient to create a presumption of copying, Defendants have rebutted this inference by presenting affirmative evidence of independent creation, which Plaintiffs cannot rebut.

As discussed above, Defendants presented unrebutted evidence that they did not avail themselves of any opportunity to hear "Joyful Noise."  In addition, the Individual Defendants testified about their creation of "Dark Horse."  First, Walter testified about his creative process that led to the creation of the beat, including Ostinatos #1 and #2, which would eventually become the musical bed of "Dark Horse."  7/23 a.m. Tr. at 57:18-65:8 (Walter).  He testified that, in March 2013, he and Gottwald were at Conway Studios waiting for an artist to show up for a songwriting session.  *Id.* at 58:2-22.  Walter took out his music equipment and started playing music.  *Id.*  He eventually played a simple downward run of phrases—3, 2, 1, 5 (Ostinato #1).  *Id.* at 59:22-61:13.  He liked the sound so he recorded it to his music program, Cubase, and looped it.  *Id.*

However, after about 13 seconds, the intro started to sound repetitive, so Walter decided to stretch the notes out and slow it down to give it some space for an eventual verse.  *Id.* at 61:14-62:1.  In doing so, he simply kept his fingers on the same keys and stretched it out by repeating the keys.  *Id.*  He repeated the 3 four times, the 2 two times, and again played the 1 and the 5, turning it into 3-3-3-3-2-

Mitchell
Silberberg &
Knupp LLP

11264105.1

26

2-1-5 (Ostinato #2).  *Id.*  Thereafter, he added some drum sounds, copied Ostinato #1 into the chorus, and made some additional modifications.  *Id.* at 62:8-63:4.  At that point, Walter and Gottwald both testified that Gottwald joined Walter and suggested adding some different underlying bass notes to give it more depth.  *Id.*; 7/23 p.m. Tr. at 7:4-17 (Gottwald).

Thereafter, Gottwald and Walter met with Katheryn Hudson, who was working on a new album, in Santa Barbara.  7/23 a.m. Tr. at 65:9-66:16 (Walter); 7/23 p.m. Tr. at 9:14-20 (Gottwald).  Gottwald and Walter played the beat as one of a series of options and Katheryn Hudson liked it and wanted to write a song to it.  *Id.*  At that point, the testimony by the Individual Defendants was that Katheryn Hudson and Sarah Hudson wrote lyrics, Sandberg contributed to the vocal melody, Houston recorded a rap verse, and Gottwald and Walter continued to refine the instrumental track.  7/18 Tr. at 88:23-90:11 (Katheryn Hudson); 7/19 Tr. at 225:18-226:4 (Houston); 7/23 a.m. Tr. at 17:2-18:13 (Sandberg); 7/23 a.m. Tr. at 67:13-69:6 (Walter); 7/23 p.m. Tr. at 9:21-10:10 (Gottwald); 7/23 p.m. Tr. at 79:2-80:14 (Sarah Hudson).  (Ostinato #1 and #2 remained the same from the original beat created by Walter.  7/23 a.m. Tr. at 69:14-70:1 (Walter); 7/23 p.m. Tr. at 10:11-11:9 (Gottwald).)  The finished product was "Dark Horse."  7/23 a.m. Tr. at 69:14-70:1 (Walter).

> ### E. <u>Judgment Should Enter As a Matter of Law As To Defendants For Whom Plaintiffs Failed To Present Evidence Of Infringement.</u>

A plaintiff in a copyright case may only recover against a defendant "who violates any of the exclusive rights of the copyright owner," namely: the rights to reproduce, prepare derivative works, distribute, publicly perform, and display the copyrighted work.  17 U.S.C. §§ 501, 106.  In addition to the reasons stated above, Plaintiffs failed to present sufficient evidence of infringement by the following Defendants:

- **<u>UMG Recordings, Inc. and Universal Music Group, Inc.</u>**  Plaintiffs presented no evidence whatsoever that UMG Recordings, Inc. and Universal Music Group, Inc. undertook any activity whatsoever, much less any activity that infringed Plaintiff's exclusive rights under the Copyright Act.

- **<u>Kobalt Music Publishing America, Inc.</u>**  The sole evidence that Plaintiffs presented regarding Kobalt Music Publishing America, Inc. was that it "provides music publishing administrative services" for certain Defendants with respect to the musical composition "Dark Horse." Tr. Ex. 123. Plaintiffs presented no evidence regarding what "administrative services" means or what specific administrative services were provided by Kobalt Music Publishing America, and no evidence to demonstrate that such activity violates any of the exclusive rights under the Copyright Act.

- **<u>Kitty Purry, Inc.</u>**  The sole evidence that Plaintiffs presented regarding Kitty Purry, Inc. was that it "is a California corporation owned and/or controlled by Defendant Katheryn Hudson (p/k/a Katy Perry)." *Id.* Plaintiffs presented no evidence of Kitty Purry undertaking any activity whatsoever, much less any activity that would violate any of the exclusive rights under the Copyright Act.

- **<u>Kasz Money, Inc.</u>**  The sole evidence that Plaintiffs presented regarding Kasz Money, Inc. was that it "furnished the production services of Walter and Gottwald for the 'Dark Horse' sound recording." *Id.* Plaintiffs presented no evidence of what it means to "furnish" "production services," or that such activity violates any of the exclusive rights under the Copyright Act.

- **<u>WB Music Corp.</u>**  The sole evidence that Plaintiffs presented regarding WB Music Corp. was that it "provides music publishing administrative services for the ownership interest of Katheryn Hudson (p/k/a Katy Perry) in the 'Dark Horse' composition." *Id.* Plaintiffs presented no evidence regarding

Mitchell Silberberg & Knupp LLP

11264105.1

1    what "administrative services" means or what specific administrative

2    services were provided by WB Music Corp., and no evidence to demonstrate

3    that such activity violates any of the exclusive rights under the Copyright

4    Act.

5    • **Katheryn Hudson, Gottwald, Sarah Hudson, Sandberg, and Houston**.

6    Plaintiffs failed to present any evidence that Katheryn Hudson, Gottwald,

7    Sarah Hudson, Sandberg, or Houston copied or distributed "Joyful Noise."

8    Moreover, Plaintiffs have no claim for vicarious liability or contributory

9    infringement.  Since they failed to offer proof that any of these defendants directly

10   infringed their copyright, judgment must be granted against Plaintiffs and in favor

11   of these defendants. *See Williams v. Gaye*, 895 F.3d 1106, 1130-32 (9th Cir.

12   2018).

13   **IV.    CONCLUSION**

14   For all of the foregoing reasons, Defendants respectfully request that the

15   Court grant the relief sought herein pursuant to Fed. R. Civ. P. 50(a).

16   DATED: July 25, 2019              MITCHELL SILBERBERG & KNUPP LLP

17

18   By:  /s/ Aaron M. Wais
     Aaron M. Wais (SBN 250671)

19   Attorneys for Defendants Capitol Records,
     LLC, Jordan Houston, Lukasz Gottwald,

20   Sarah Theresa Hudson, Karl Martin Sandberg,
     Henry Russell Walter, UMG Recordings, Inc.,

21   Universal Music Group, Inc., WB Music

22   Corp., Kobalt Music Publishing America, Inc.,
     and Kasz Money, Inc.

23

24   DATED: July 25, 2019              GREENBERG TRAURIG, LLP

25

26   By:  /s/ Vincent H. Chieffo
     Vincent H. Chieffo (SBN 49069)

27   Attorneys for Defendants Katheryn Elizabeth
     Hudson p/k/a Katy Perry and Kitty Purry, Inc.

28

Mitchell
Silberberg &
Knupp LLP

11264105.1

                                29

## <u>ATTESTATION REGARDING SIGNATURES</u>

Pursuant to Local Civil Rule 5-4.3.4(a)(2)(i), I hereby attest that all Parties, on whose behalf this filing is jointly submitted, concur in this filing's content and have authorized its filing.

DATED: July 25, 2019

　　　　　　　　　　　/s/ Aaron M. Wais
　　　　　　　　　　　Aaron M. Wais

Mitchell
Silberberg &
Knupp LLP

11264105.1

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT**