CHRISTINE LEPERA (admitted *pro hac vice*)
    ctl@msk.com
JEFFREY M. MOVIT (admitted *pro hac vice*)
    jmm@msk.com
JACOB D. ALBERTSON (admitted *pro hac vice*)
    j1a@msk.com
MITCHELL SILBERBERG & KNUPP LLP
437 Madison Avenue, 25th Floor
New York, New York 10022
Telephone: (212) 509-3900
Facsimile: (212) 509-7239

AARON M. WAIS (SBN 250671)
    amw@msk.com
GABRIELLA A. NOURAFCHAN (SBN 301594)
    gan@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, California  90067
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

GREENBERG TRAURIG, LLP
VINCENT H. CHIEFFO (SBN 49069)
Email:  ChieffoV@gtlaw.com
ALANA C. SROUR (SBN 271905)
Email:  SrourA@gtlaw.com
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
Telephone:  310-586-7700
Facsimile:  310-586-7800

Attorneys for Defendants-Appellants

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| MARCUS GRAY (p/k/a FLAME), et al., <br><br> Plaintiffs, <br><br> v. <br><br> KATHERYN ELIZABETH HUDSON (p/k/a KATY PERRY), et al., <br><br> Defendants. | CASE NO. 2:15-cv-05642-CAS (JCx) <br><br> Honorable Christina A. Snyder <br><br> **NOTICE OF APPEAL** <br><br> Filed:   July 1, 2014 <br> Trial:   July 17, 2019 |

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendants Capitol Records LLC, Jordan Houston, Lukasz Gottwald, Sarah Theresa Hudson, Karl Martin Sandberg, Henry Russell Walter, Katheryn Elizabeth Hudson, WB Music Corp., Kobalt Music Publishing America, Inc., and Kasz Money, Inc. (collectively, "Defendants" or "Defendants-Appellants") hereby appeal to the United States Court of Appeals for the Ninth Circuit from the judgment entered on September 11, 2019 (the "Judgment," Dkt. No. 473) as well as any and all interlocutory rulings, decisions, and orders adverse to Defendants that gave rise to the Judgment and are merged therein, including, but not limited to, all rulings adverse to Defendants on the record during the trial as set forth on the official trial transcript. A true and correct copy of the Judgment is attached hereto as **Exhibit A**.[1]

For the avoidance of doubt, Defendants-Appellants' appeal of the Judgment to the United States Court of Appeals for the Ninth Circuit also includes, but is not limited to, the following:

    1.    This Court's Order denying Defendants' Motion for Summary Judgment dated August 13, 2018 (the "MSJ Order," Dkt. No. 299);

    2.    This Court's Order denying Defendants' Motion for Reconsideration of the MSJ Order dated October 17, 2018 (the "MSJ Reconsideration Order," Dkt. No. 314);

    3.    The rulings adverse to Defendants in this Court's Order regarding the parties' Motions *In Limine* dated July 5, 2019 (the "MIL Order," Dkt. No. 403);

---

[1] Defendants understand that, pursuant to Federal Rule of Appellate Procedure 4(a)(4), the deadline to file this Notice of Appeal is stayed until after the disposition of Defendants' pending Rule 50(b) and 59 motions. Defendants are filing this Notice of Appeal solely as a precautionary matter.

Mitchell Silberberg & Knupp LLP

11535673.1

**NOTICE OF APPEAL**

4.    The Jury Verdict following the liability phase of trial in this action dated July 29, 2019 (the "Liability Verdict," Dkt. No. 456);

5.    The Jury Verdict following the damages phase of trial in this action dated August 1, 2019 (the "Damages Verdict," Dkt. No. 467);

6.    This Court's denial of Defendants' Motion for Judgment as a Matter of Law pursuant to Rule 50(a) made at the close of evidence during the liability phase of trial in this action; and

7.    This Court's denial of Defendants' Motion of Judgment as a Matter of Law pursuant to Rule 50(a) made at the close of evidence during the damages phase of trial in this action.

True and correct copies of the MSJ Order, MSJ Reconsideration Order, MIL Order, Liability Verdict, and Damages Verdict are attached hereto as **Exhibits B-F**, respectively.

Pursuant to Ninth Circuit Rule 3-2, a Representation Statement identifying all parties to the action, along with the names, addresses, and telephone number of their respective counsel, is attached hereto as **Exhibit G**.

DATED: October 11, 2019          MITCHELL SILBERBERG & KNUPP LLP

By: /s/ Aaron M. Wais
Aaron M. Wais (SBN 250671)
Attorneys for Defendants-Appellants Capitol Records, LLC, Jordan Houston, Lukasz Gottwald, Sarah Theresa Hudson, Karl Martin Sandberg, Henry Russell Walter, WB Music Corp., Kobalt Music Publishing America, Inc., and Kasz Money, Inc.

1    DATED: October 11, 2019          GREENBERG TRAURIG, LLP

2

3                                     By:  /s/ Vincent H. Chieffo
                                      Vincent H. Chieffo (SBN 49069)
4                                     Attorneys for Defendant-Appellant Katheryn
                                      Elizabeth Hudson p/k/a Katy Perry
5

6

7              **ATTESTATION REGARDING SIGNATURES**

8          Pursuant to Local Civil Rule 5-4.3.4(a)(2)(i), I hereby attest that all Parties,

9    on whose behalf this filing is jointly submitted, concur in this filing's content and

10   have authorized its filing.

11   DATED: October 11, 2019           /s/ Aaron M. Wais
                                       Aaron M. Wais
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

11535673.1

# EXHIBIT A

1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          CENTRAL DISTRICT OF CALIFORNIA

10

11   MARCUS GRAY, et al.,                    CASE NO. 2:15-cv-05642-CAS (JCx )

           Plaintiffs,                       Honorable Christina A. Snyder
12

13         v.                                **[PROPOSED]** JUDGMENT

14   KATHERYN ELIZABETH
     HUDSON, et al.,
15
           Defendants.
16

17

18       This action was tried by a jury with the Honorable Christine A. Snyder

19   presiding, and the jury has rendered a verdict.

20       IT IS HEREBY ORDERED AND ADJUDGED that judgment is ENTERED

21   in favor of Plaintiffs and separately and severally against each Defendant on

22   Plaintiffs' claim for copyright infringement in the amount assessed by the jury as

23   against each  Defendant as follows:

24       • Jordan Houston: $115,223.56

25       • Karl Martin Sandberg: $253,332.88

26       • Lukasz Gottwald: $60,799.08

27       • Kasz Money, Inc.: $188,659.80

28

- Henry Russell Walter: $139,462.36

- Sarah Hudson: $132,462.36

- Katheryn Elizabeth Hudson: $550,256.98

- Kobalt Music Publishing America, Inc.: $29,807.13

- WB Music Corp.: $29,351.33

- Capitol Records, LLC: $1,289,911.05

Plaintiffs' request for injunctive relief was waived and is hereby dismissed. The clerk is ordered to enter this Judgment.

DATED: <u>September 11, 2019</u>

CHRISTINE A. SNYDER
U.S. DISTRICT JUDGE

---

2

**PLAINTIFFS' RULE 58(d) MOTION FOR ENTRY OF JUDGMENT**

# EXHIBIT B

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL  'O'

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | August 13, 2018 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Michael Kahn | Christine Lepera |
| Daniel Blakey | Aaron Wais |
| | Alana Srour |

**Proceedings:**     DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Filed June 25, 2018, Dkt. 270); JOINDER (Filed 06/25/2018, Dkt. 283)

## I.    INTRODUCTION

On July 1, 2014, Marcus Gray (P.K.A. Flame), Lecrae Moore (P.K.A. Lecrae), Emanuel Lambert, and Chike Ojukwu filed this action alleging that the song "Dark Horse" infringes upon plaintiffs' copyright in the song "Joyful Noise."  Dkt. 1.  Since then, plaintiffs have amended their pleadings to add or dismiss various parties.  The operative Third Amended Complaint ("TAC"), filed on November 1, 2016, no longer lists Moore as a plaintiff and alleges copyright infringement by Katheryn Elizabeth Hudson (P.K.A. Katy Perry, hereinafter "Perry"); Jordan Houston (P.K.A. Juicy J); Lukasz Gottwald (P.K.A. Dr. Luke); Sarah Theresa Hudson; Karl Martin Sandberg (P.K.A. Max Martin); Henry Russell Walter (P.K.A. Cirkut); Kasz Money, Inc.; Capitol Records, LLC; Kitty Purry, Inc.; UMG Recordings, Inc.; Universal Music Group, Inc.; WB Music Corp.; BMG Rights Management (US) LLC; and Kobalt Music Publishing America, Inc.  Dkt. 172.

On June 25, 2018, Gottwald, Houston, Hudson, Sandberg, Walter, Capital Records, Kasz Money, Kobalt Music Publishing America, UMG Recordings, Universal Music Group, and WB Music filed the instant motion for summary judgment.  Dkt. 270. Defendants simultaneously filed a memorandum in support of the motion for summary

EXHIBIT  B
PAGE 9

Case 2:15-cv-05642-CAS-JC Document 489 Filed 10/11/19 Page 10 of 94 Page ID
#:10201
Case 2:15-cv-05642-CAS-JC Document 299-1 Filed 08/13/18 Page 2 of 13 Page ID #:3549

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | August 13, 2018 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

judgment, dkt. 274 ("MSJ"), a request for judicial notice,[1] dkt. 275, and a separate statement of uncontroverted facts and conclusions of law, dkt. 273-1 ("DSUF"). On the same day, Perry and Kitty Purry filed a joinder to the motion for summary judgment. Dkt. 283.

On July 16, 2018, plaintiffs filed an opposition to the motion for summary judgment, dkt. 286 ("Opp'n"), and a statement of genuine disputes of facts, dkt. 287 ("PGDF"). On August 6, 2018, defendants filed a reply, dkt. 296 ("Reply"), evidentiary objections to declarations, exhibits, and other evidence cited by plaintiffs in support of their opposition brief, dkt. 297, and a response to plaintiffs' statement of genuine disputes of fact, dkt. 298.

The Court held a hearing on August 13, 2018. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.    BACKGROUND

The following facts are not meaningfully disputed and are set forth for purposes of background. Unless otherwise noted, the court references only facts that are uncontroverted and as to which evidentiary objections have been overruled.

### A.    Plaintiffs' Creation and Dissemination of "Joyful Noise"

Plaintiffs Marcus Gray, Chike Ojukwu, and Emanuel Lambert are Christian rap/hip-hop artists. DSUF No. 1. Third-party Lecrae Moore is also a Christian rap/hip-hop artist. DSUF No. 3. In 2007, Ojukwu composed and recorded the beat that would become the musical bed for the composition "Joyful Noise," and Gray, Lambert, and Moore wrote and recorded the lyrics and hook for "Joyful Noise" over Ojukwu's beat. DSUF Nos. 4, 5.

A recording of the composition "Joyful Noise" appears on Gray's album *Our World Redeemed*, which was published in March 2008. DSUF No. 6. On June 3, 2014, the United States Copyright Office issued a Certificate of Registration No. PA-1-900-321 for the copyright of the "Joyful Noise" composition. DSUF No. 8. The album debuted at

---

[1] The Court grants defendants' request for judicial notice of both the Magistrate Judge's Report and Recommendation and an Order filed with the court in Copeland v. Bieber, Civil Action No. 2:13cv246 (E.D. Va. November, 14, 2016) (Dkt. Nos. 218, 223).

EXHIBIT B
PAGE 10

Case 2:15-cv-05642-CAS-JC   Document 489   Filed 10/11/19   Page 11 of 94   Page ID
#:7020
Case 2:15-cv-05642-CAS-JC   Document 299   Filed 08/13/18   Page 3 of 13   Page ID #:3550

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | August 13, 2018 |
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. |

#5 on the Billboard Gospel Chart and #1 on the Christian Music Trade Association (CMTA) R&B/Hip-Hop Chart.  PGDF Nos. 6, 7.  In January 2009, the album was a nominee for Rap/Hip-Hop Gospel Album of the Year at the Stellar Award Show held at the Grand Ole Opry in Nashville, Tennessee.  PGDF No. 8.  In February 2009, the album was also a nominee for Best Rock or Rap Gospel Album at the 51st Annual Grammy Awards Show.  PGDF No. 9.  And in April 2009, the song "Joyful Noise" was a nominee for Best Rap/Hip-Hop Song of the Year at the 40th GMA Dove Awards.  PGDF No. 12.

The record does not contain evidence showing that plaintiffs sold or otherwise commercially released "Joyful Noise" or the album *Our World Redeemed*.  DSUF Nos. 7, 17, 18, 20.  But at least five videos containing "Joyful Noise" were uploaded to YouTube.  PGDF No. 32.  As of March 11, 2012, the "Joyful Noise" videos uploaded to YouTube had a collective total of 1,365,041 views.  PGDF No. 44.  The videos are categorized under "music" on their respective YouTube.com webpages.  PGDF No. 45.  The "Joyful Noise" video was also posted on the Myspace pages of Moore and Gray.  PGDF Nos. 52, 55.  As of September 7, 2011, "Joyful Noise" had been played 1,531,856 times on Moore's Myspace page.  PGDF No. 53.  And as of January 24, 2012, the video had been played 933,868 times on Gray's Myspace page.  PGDF No. 54.[2]

**B.     The Defendants' Creation of "Dark Horse"**

The writers of the musical composition "Dark Horse" are Walter, Gottwald, Sandberg, Perry, Hudson, and Houston ("'Dark Horse' Writers").  DSUF No. 9.

Over the course of a single day in March 2013, Walter and Gottwald created an instrumental musical track at Conway Studios in Los Angeles, California, which became

---

[2] Defendants raise numerous evidentiary objections to plaintiffs' declarations.  The Court **OVERRULES** defendants' relevance-based and prejudice-based objections 2, 3, 4, 6, 11, 13, 14, 15, 16, 20, 21, 22, 23 because it finds the objected-to evidence to be relevant and not prejudicial.  The Court also **OVERRULES** defendants' objections 11, 21, 21, 22 based on lack of foundation, lack of personal knowledge, or lack of authentication.  The Court also **OVERRULES** defendants' hearsay-based objection 20 because defendants' counsel explained during the hearing that defendants were conceding this objection for purposes of this motion.  The Court need not reach defendants' other evidentiary objections because the Court does not rely on the objected-to evidence.

EXHIBIT  B
PAGE  11

Case 2:15-cv-05642-CAS-JC   Document 489   Filed 10/11/19   Page 12 of 94   Page ID
Case 2:15-cv-05642-CAS-JC   Document 299-1   Filed 08/13/18   Page 4 of 13   Page ID #:3551
#:10295

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | August 13, 2018 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

the musical bed for "Dark Horse." DSUF No. 10. In the summer of 2013, Perry, Hudson, and Sandberg, in collaboration with Gottwald and Walter, created the sung vocal melody and lyrics for "Dark Horse" and Houston wrote and recorded the rap vocal portion over the instrumental track. DSUF Nos. 13, 14. Gottwald and Walter fine-tuned and polished the production of "Dark Horse." DSUF No. 15.

A recording of "Dark Horse" was released commercially in September and October 2013, both as a single and as a track on Perry's album, *Prism*. DSUF No. 16.

It is undisputed that the "Dark Horse" Writers have never met, received music from, attended concerts by, or watched television interviews of Gray, Lambert, Ojukwu, or Lecrae. DSUF Nos. 45, 46, 47. The "Dark Horse" Writers claim that prior to writing "Dark Horse," they had never heard of any of the plaintiffs nor had they listened to any of plaintiffs' music, including "Joyful Noise." Dkt. 276, Declaration of Henry Walker ("Walker Decl.") ¶¶ 7, 8; Dkt. 277, Declaration of Lukasz Gottwald ("Gottwald Decl.") ¶¶ 6, 7; Dkt. 279, Declaration of Sarah Hudson ("Hudson Decl.") ¶¶ 8, 9; Dkt. 278, Declaration of Perry ("Perry Decl.") ¶¶ 8, 9; Dkt. 280, Declaration of Karl Sandberg ("Sandberg Decl.") ¶¶ 8, 9; Dkt. 281, Declaration of Jordan Houston ("Houston Decl.") ¶¶ 7, 8. The "Dark Horse" Writers also claim that during the relevant time period, they were not "in the practice of" listening to or searching for Christian music. Walter Decl. ¶ 10; Gottwald Decl. ¶ 9; Hudson Decl. ¶ 11; Perry Decl. ¶ 11; Sandberg Decl. ¶ 11; Houston Decl. ¶ 10.

Plaintiffs dispute defendants' claim that they had not heard "Joyful Noise" prior to writing "Dark Horse," as the gravamen of plaintiffs' case against defendants is that the defendants copied "Joyful Noise" when they wrote "Dark Horse."

**III.   LEGAL STANDARDS**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v.

EXHIBIT  B
PAGE  12

Case 2:15-cv-05642-CAS-JC   Document 489   Filed 10/11/19   Page 13 of 94   Page ID
Case 2:15-cv-05642-CAS-JC   Document 299   Filed 08/13/18   Page 5 of 13   Page ID #:3552
#:10204

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | August 13, 2018 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

*Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); <u>see also</u> Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 888 (1990); <u>see also</u> <u>Celotex</u>, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Id.</u> at 322; <u>see also</u> <u>Abromson v. Am. Pac. Corp.</u>, 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. <u>See</u> <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (citation omitted); <u>Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co.</u>, 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. <u>See</u> <u>Matsushita</u>, 475 U.S. at 587.

**IV.   DISCUSSION**

To establish copyright infringement, plaintiffs must show (1) ownership of the copyright; and (2) that defendant copied protected elements of their work. <u>Swirsky v. Carey</u>, 376 F.3d 841, 844 (9th Cir. 2004). Plaintiffs' ownership of a copyright of "Joyful Noise" is not in dispute. DSUF No. 8, Wais Decl. ¶ 22, Ex. 21(Gray Deposition), Ex.1 to Gray Depo; PGDF No.1.

Where, as here, there is no direct evidence of copying, "proof of infringement involves fact-based showings that the defendant had 'access' to the plaintiff's work and that the two works are 'substantially similar.'" <u>Three Boys Music Corp. v. Bolton</u>, 212 F.3d 477, 481 (9th Cir. 2000).

**A.   Access**

"To prove access, a plaintiff must show a reasonable possibility, not merely a bare possibility, that an alleged infringer had the chance to view the protected work." <u>Art Attacks Ink, LLC v. MGA Entm't Inc. ("Art Attacks II")</u>, 581 F.3d 1138, 1143 (9th Cir.

EXHIBIT  B
PAGE  13

Case 2:15-cv-05642-CAS-JC   Document 489   Filed 10/11/19   Page 14 of 94   Page ID
#:10293
Case 2:15-cv-05642-CAS-JC   Document 299   Filed 08/13/18   Page 6 of 13   Page ID #:3553

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                          **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | August 13, 2018 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

2009).  "Of course, reasonable opportunity as here used, does not encompass any bare possibility in the sense that anything is possible.  Access may not be inferred through mere speculation or conjecture.  There must be a reasonable possibility of viewing the plaintiff's work—not a bare possibility."  Three Boys, 212 F.3d at 482 (quoting 4 Nimmer on Copyright, § 1302[A]).

Where there is no direct evidence of access, circumstantial evidence can be used to prove access either by (1) a particular chain of events between the plaintiffs' work and the defendants' access to that work (such as through dealings with a publisher or record company) or (2) showing that the plaintiffs' work has been widely disseminated.  Id. Plaintiffs' theory of access in this case focuses on the latter—widespread dissemination. Opp'n at 1.

Defendants first argue that plaintiffs have a high burden to prove "widespread dissemination" and that the plaintiffs' work must be so popular that it can be reasonably assumed that defendants could not have avoided hearing it.  MSJ at 17-18.  Accordingly, defendants argue that plaintiffs have not met this high burden.  However, the Court observes that plaintiffs' burden at this juncture is not so high.  All plaintiffs must do here is set out specific facts showing a genuine issue for trial as to whether there is a reasonable possibility that defendants had the chance to view the protected work.  See Anderson, 477 U.S. at 250; Art Attacks II, 581 F.3d at 1143.

In response to defendants' argument that the record lacks the type of proof that is necessary to infer access, plaintiffs point to evidence showing that prior to the creation of "Dark Horse," "Joyful Noise" videos had amassed nearly four million online views. Opp'n at 4.  Plaintiffs note that the "Joyful Noise" videos on YouTube were categorized as "music" and not as Christian hip-chop.  Opp'n at 7.  Plaintiffs also offer evidence showing that "Joyful Noise" enjoyed popularity and acclaim in the Christian music industry.  Opp'n at 8-9.[3]

---

[3] Plaintiffs' opposition brief also references claims by Moore and Gray that they performed "Joyful Noise" around the country and that an excerpt of the song was played whenever Gray had an interview with a radio or television station during his tour.  Opp'n at 8.  Plaintiffs do not dispute that the "Dark Horse" Writers never attended any concerts by Moore or Gray or that they had never seen Moore or Gray interviewed on television. DSUF Nos. 47, 48.  The record lacks any evidence identifying the names of the television

EXHIBIT  B
PAGE  14

Case 2:15-cv-05642-CAS-JC   Document 489   Filed 10/11/19   Page 15 of 94   Page ID
#:10296
Case 2:15-cv-05642-CAS-JC   Document 299   Filed 08/13/18   Page 7 of 13   Page ID #:3554

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | August 13, 2018 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

In turn, defendants urge the Court to discount the importance of the YouTube and Myspace view and play counts because, according to defendants, such counts are meaningless as they do not convey exactly how many unique humans viewed the videos. MSJ at 22.   Defendants also rely heavily on <u>Loomis v. Cornish</u>, 2013 U.S. Dist. LEXIS 162607, at *41 (C.D. Cal. Nov. 13, 2013) <u>aff'd</u> <u>Loomis v. Cornish</u>, 836 F.3d 991 (9th Cir. 2016), in which the Court explained that, "[a]s a general matter, it appears that in order for a work to be widely disseminated, it must achieve a high degree of commercial success or be readily available in the relevant market."[4]  Defendants then argue that the Christian hip-hop and rap market is so niche that the success of "Joyful Noise" in that market has no bearing on the possibility that defendants could have accessed the song. Defendants also contend that "Joyful Noise" did not achieve widespread dissemination because of its lack of commercial success.  MSJ at 17-19.

Drawing all reasonable inferences in the light most favorable to plaintiffs, the Court finds that there is a reasonable possibility that defendants had access to "Joyful Noise" through its alleged widespread dissemination.

The Court acknowledges that the mere existence of copyrighted materials on YouTube and Myspace would not justify an inference of access.  Indeed, courts in this

---

and radio stations that Gray claims to have been interviewed by, as well as evidence identifying the names of the venues where Gray performed or the size of the audience at any of his performances.  Thus, at this juncture, the Court does not rely on this evidence insofar as it may demonstrate access.  Plaintiffs also try to draw a link between Perry and the Christian music industry by citing to a Rolling Stones article that describes Perry's history as a Christian artist prior to 2002.  While the Court may take judicial notice of a magazine article, it can do so only to "indicate what was in the public realm at the time, not whether the contents of those articles were in fact true."  <u>Von Saher v. Norton Simon Museum of Art at Pasadena</u>, 592 F.3d 954, 960 (9th Cir. 2010) (citing <u>Premier Growth Fund v. Alliance Capital Mgmt.</u>, 435 F.3d 396, 401 n.15 (3d Cir. 2006)).  As plaintiff requests judicial notice of the facts contained within these articles, the request is **DENIED**.

[4] The Court also finds that the facts in <u>Loomis</u> are unhelpful in guiding the instant case.  The song at issue in <u>Loomis</u> appears to have never gained much popularity outside of a brief spate of airplay in Santa Barbara.

---

EXHIBIT  B
PAGE  15

Case 2:15-cv-05642-CAS-JC   Document 489   Filed 10/11/19   Page 16 of 94   Page ID
#:7020
Case 2:15-cv-05642-CAS-JC   Document 299-1   Filed 08/13/18   Page 8 of 13   Page ID #:3555

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | August 13, 2018 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

district have found that evidence limited to the posting of a video online is insufficient to support a finding of access.  See, e.g., Loomis, 2013 U.S. Dist. LEXIS 162607, at *47 ("The availability of a copyrighted work on the Internet, in and of itself, is insufficient to show access through widespread dissemination."); Batts v. Adams, 2011 U.S. Dist. LEXIS 161402, at *11-12 (C.D. Cal. Feb. 8, 2011) (finding that access was not established by evidence that the plaintiffs' song was posted on YouTube, Amazon.com and iTunes); Hayes v. Keys, 2015 U.S. Dist. LEXIS 2860, at *7 (C.D. Cal. Jan. 7, 2015) (finding that access was not established by the plaintiffs' sole allegation that the work was uploaded to YouTube).  But the Court is persuaded that plaintiffs have shown more than just mere posting of "Joyful Noise" on the internet.  Due to the millions of views and plays of "Joyful Noise" on YouTube and Myspace, both readily accessible websites, and the success and popularity of "Joyful Noise" in the Christian hip-hop/rap industry, a reasonable jury could conclude that there is more than a "bare possibility" that defendants—who are experienced professional songwriters—had the opportunity to hear "Joyful Noise."

The Court recognizes that the record does not show that "Joyful Noise" was commercially exploited.  Although the Ninth Circuit in Loomis noted that "[i]n most cases, the evidence of widespread dissemination centers on the degree of a work's commercial success and on its distribution through radio, television, and other relevant mediums," 836 F.3d at 997, it also acknowledged that "[t]he evidence required to show widespread dissemination will vary from case to case," id. (quoting L.A. Printex Indus., Inc. v. Aeropostale, Inc., 676 F.3d 841, 847 (9th Cir. 2012)).  Although defendants insist that a showing of commercial exploitation is necessary to prove access, such reasoning would make it permissible to infringe on a copyrighted work simply because it was never for sale.  So while plaintiffs have not shown evidence of commercial success, they have demonstrated a triable issue of fact as to access because "Joyful Noise" achieved critical success, including a Grammy nomination, and was readily available and viewed millions of times on YouTube and Myspace.  Defendants' concerns about the meaningfulness of the YouTube and Myspace view counts, the distinctiveness of the Christian music market, and the lack of commercial activity are questions of fact to be resolved by the jury.

Defendants also argue that plaintiffs cannot rebut defendants' own testimony that they independently created "Dark Horse," and that therefore, plaintiffs' claim for

EXHIBIT  B
PAGE  16

Case 2:15-cv-05642-CAS-JC Document 489 Filed 10/11/19 Page 17 of 94 Page ID
Case 2:15-cv-05642-CAS-JC Document 299 Filed 08/13/18 Page 9 of 13 Page ID #:3556
#:10206

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | August 13, 2018 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

copyright infringement fails.[5]  MSJ at 23.  However, the Court observes that the strength
of defendants' evidence concerning independent creation is a factual issue for the jury to
determine at trial, and is not an issue suited for determination at this stage.  See Three
Boys, 212 F.3d at 486 ("By establishing reasonable access and substantial similarity, a
copyright plaintiff creates a presumption of copying.  The burden shifts to the defendant
to rebut that presumption through proof of independent creation.").

**B.**     **Substantial Similarity**

In order to determine whether two works are substantially similar, the Ninth
Circuit employs a two-part analysis consisting of an objective extrinsic test and a
subjective intrinsic test.  Swirsky, 376 F.3d at 845.  "For the purposes of summary
judgment, only the extrinsic test is important because the subjective question whether
works are intrinsically similar must be left to the jury."  Id.  The extrinsic test "requires
that the plaintiff identify concrete elements based on objective criteria" and "often
requires analytical dissection of a work and expert testimony."  Three Boys, 212 F.3d at
485.  The extrinsic test demands similarity in "*protected* elements of the copyrighted
work . . ."  Swirsky, 376 F.3d at 845 (emphasis in original).  Thus, "it is essential to
distinguish between the protected and unprotected material in a plaintiff's work."  Id.

The Ninth Circuit has never announced a uniform set of factors for analyzing a
musical composition under the extrinsic test.  Id. at 849.  This is because a musical
composition can be comprised of a number of otherwise unprotectable elements,
including lyrics, rhythm, pitch, cadence, melody, harmony, tempo, phrasing, structure,
chord progression, instrumental figures, and others.  Id.  "Music, like software programs
and art objects, is not capable of ready classification into only five or six constituent

---

[5] The Court acknowledges that the "Dark Horse" Writers claim that they had never
heard "Joyful Noise" before writing "Dark Horse."  The defendants in Three Boys also
insisted that they had not heard the song that they had been accused of copying.  212 F.3d
at 484.  But even if defendants cannot remember hearing "Joyful Noise," the Ninth
Circuit recognizes that copyright infringement of a popular song can be subconscious.
See id. at 483.

EXHIBIT  B
PAGE  17

Case 2:15-cv-05642-CAS-JC   Document 489   Filed 10/11/19   Page 18 of 94   Page ID
#:10299
Case 2:15-cv-05642-CAS-JC   Document 299   Filed 08/13/18   Page 10 of 13   Page ID #:3557

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**               **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | August 13, 2018 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

elements; music is comprised of a large array of elements, *some combination of which* is protectable by copyright." [6]  Id. (emphasis added).

In support of their argument concerning substantial similarity, plaintiffs rely upon the report submitted by their musicologist expert, Todd Decker, Ph.D.[7]  Dkt. 282, Declaration of Aaron M. Wais ("Wais Decl.") ¶ 5, Ex. 3 ("Decker Report").  Decker opines that the "most obvious, pervasive, and substantial similarity" between the two songs is a "descending ostinato[8] figure which serves as the primary formal building block for both tracks."  Decker Report at 4.  According to Decker, the ostinatos in both songs are identical in phrase length as both use two-bar units of eight beats in length, identical in rhythm as both use eight even quarter notes in duple meter time in a stiff and mechanical style, and remarkably similar in the timbre of the upper and primary voice. Id. at 4-6.  Decker further explains that both ostinatos are nearly identical in pitch content and melodic contour.  Id. at 5.  Decker also identifies differences in the ostinatos but

---

[6] Defendants cite Satava v. Lowry, 323 F.3d 805, 811 (9th Cir. 2003) for the proposition that a combination of unprotectable elements is only eligible for protection "if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship."  The Ninth Circuit recently distinguished music, which is comprised of a large array of elements, from the glass-in-glass jellyfish sculpture at issue in Satava, and declined to deviate from the substantial similarity standard articulated in Swirsky in musical infringement suits. Williams v. Gaye, 895 F.3d 1106, 1120 (9th Cir. 2018).  To the extent the defendants seek to persuade the Court to deviate from the substantial similarity standard as it is articulated in Swirsky, the Court declines to do so.

[7] The Court finds that Decker is qualified to offer an opinion regarding the similarity of "Joyful Noise" and "Dark Horse."  Decker holds a Ph.D. in musicology from the University of Michigan and has published research involving musical borrowing in popular songs.  Decker Report at 2-3.

[8] Decker defines "ostinato" as "a fairly short melodic, rhythmic, or chordal pattern repeated continuously throughout a piece or section." Decker Report at 2 (quoting Oxford Companion to Music, 2002).

EXHIBIT  B
PAGE  18

Case 2:15-cv-05642-CAS-JC   Document 489   Filed 10/11/19   Page 19 of 94   Page ID
#:10300
Case 2:15-cv-05642-CAS-JC   Document 299   Filed 08/13/18   Page 11 of 13   Page ID #:3558

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | August 13, 2018 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

explains that they are trivial and can be partially explained by the different generic context of the two songs. Id. at 7.

Decker concludes that the "ostinato in Dark Horse clearly borrows a memorable and highly characteristic combination of discrete and specific musical elements heard in Joyful Noise" and that "[g]iven the important structural function and expressive use of the ostinato in Dark Horse, Joyful Noise can be said to have provided essential and highly characteristic musical materials for Dark Horse." Id. at 15.

Defendants, in turn, rely on the report of their musicology expert, Lawrence Ferrara, Ph.D., who opined that "'Dark Horse' does not share any significant structural, harmonic, rhythmic, melodic, or lyrical similarities, individually or in combination, with 'Joyful Noise.'" Dkt. 282, Declaration of Aaron M. Wais ("Wais Decl.") Wais Dec. ¶ 6, Ex. 6 at 65 ("Ferrara Report").

The Court finds that Decker's expert testimony is sufficient to raise a genuine issue of material fact as to substantial similarity. As in Three Boys, Decker has identified particular features of the works which, taken in combination, could support a finding of substantial similarity by a reasonable jury. Three Boys, 212 F.3d at 485 (upholding jury verdict based upon a combination of five unprotectable elements). Although Decker's opinions are contradicted or challenged by defendants' expert, Ferrara, all plaintiffs must do to defeat summary judgment is provide "indicia of a sufficient disagreement concerning the substantial similarity of the two works." Swirsky, 376 F.3d at 846 (quoting Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1472 (9th Cir. 1992)).

Furthermore, the Court is largely unconvinced by defendants' criticisms of Decker.

First, defendants argue, without citation to legal authority, that Decker failed to properly apply the methodology of the extrinsic test because he did not transcribe the musical similarities of the two compositions into musical notation.[9] MSJ at 26. "The

---

[9] Defendants object to Decker's expert report on Federal Rule of Evidence 702 grounds due to Decker's methodology. At this juncture, it does not appear that Decker's decision not to reduce the "Joyful Noise" and "Dark Horse" compositions to musical notation precludes him from rendering an opinion on the alleged similarities between the two compositions. Defendants also object to Decker's allegedly improper opinion on the intrinsic test during his deposition testimony and in his rebuttal report. The Court did not

EXHIBIT  B
PAGE  19

Case 2:15-cv-05642-CAS-JC   Document 489   Filed 10/11/19   Page 20 of 94   Page ID
Case 2:15-cv-05642-CAS-JC   Document 299   Filed 08/13/18   Page 12 of 13   Page ID #:3559
#:3301

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | August 13, 2018 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

extrinsic test considers whether two works share a similarity of ideas and expression as measured by external, objective criteria." Swirsky, 376 F.3d at 845. As stated earlier, the Ninth Circuit does not require a uniform set of factors to be utilized in analyzing a musical composition under the extrinsic test. Id. Without transcribing the works into musical notation, Decker identified concrete elements of the ostinatos including phrase length, rhythm, pitch content, and timbre. Decker also explained his reasons for depicting the pitch content of the two songs with scale degrees instead of musical notations:

> Pitch content in this context is best understood by way of scale degrees, which allow for comparison to be made despite the difference in key between the two tracks and without using musical notation. Scale degrees at once speak to the melodic contour (the shape of a melody) and the harmonic function of given pitches in the tonal music system (as specific scale degrees inherently suggest either the need for further motion or arrival at a point of rest).

Decker Report at 5. The Court concludes that although Decker did not transcribe the two songs into musical notation, he nonetheless engaged in an analysis of external, objective criteria of both songs through his evaluation of elements such as phrase length, rhythm, pitch content, and timbre.

Defendants then argue that Decker did not extract unprotectable musical elements from his comparison of the two songs nor did he explain how the combination of elements in the ostinato of "Joyful Noise" constitutes protectable expression. MSJ at 27-28. The Court acknowledges that certain elements Decker relies upon to support his opinion on substantial similarity may be unprotectable individually. The Ninth Circuit has made clear, however, that the extrinsic test can be satisfied by showing copying of a "*combination* of unprotectible elements." Three Boys, 212 F.3d at 485 (emphasis added); see also Swirsky, 376 F.3d at 851–52 ("Although it is true that a single musical note would be too small a unit to attract copyright protection (one would not want to give the first author a monopoly over the note of B-flat for example), an arrangement of a limited number of notes can garner copyright protection."). Decker's report engages in a comparison of the overlapping similarities of several elements of the ostinatos in both

_____

rely on Decker's deposition testimony or his rebuttal report in reaching its decision and therefore does not reach defendants' objection.

EXHIBIT  B
PAGE  20

Case 2:15-cv-05642-CAS-JC   Document 489   Filed 10/11/19   Page 21 of 94   Page ID
#:10302
Case 2:15-cv-05642-CAS-JC   Document 299   Filed 08/13/18   Page 13 of 13   Page ID #:3560

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | August 13, 2018 |
|----------|-------------------------|------|-----------------|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

songs and eventually concludes that "Dark Horse clearly borrows a memorable and
highly characteristic combination of discrete and specific musical elements heard in
Joyful Noise." Decker at 15. Accordingly, the Court cannot determine as a matter of law
that the overlapping similarities identified by Decker are not protectable musical
expressions.

In light of the foregoing, the Court finds that there is a genuine issue of material
fact as to whether "Dark Horse" is substantially similar to protectable elements in "Joyful
Noise."

**V.      CONCLUSION**

Consistent with the Court's findings and conclusions above, defendants' motion
for summary judgment is **DENIED**.

IT IS SO ORDERED.

|  | 00 | 19 |
|--|----|----|
| Initials of Preparer | CMJ | |

---

EXHIBIT B
PAGE 21

# EXHIBIT C

EXHIBIT  C
PAGE  22

Case 2:15-cv-05642-CAS-JC   Document 489   Filed 10/11/19   Page 23 of 94   Page ID
#:15904
Case 2:15-cv-05642-CAS-JC   Document 314   Filed 10/17/18   Page 1 of 7   Page ID #:3685

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL        'O'

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | October 17, 2018 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**     **(IN CHAMBERS) -** DEFENDANTS' MOTION FOR
RECONSIDERATION OF DENIAL OF MOTION FOR
SUMMARY JUDGMENT (Dkt. 302, filed September 11, 2018)

The Court finds this motion appropriate for decision without oral argument.  See
Fed. R. Civ. P. 78; C.D. Cal. L.R. 7–15.  Accordingly, the hearing date of October 15,
2018 is vacated, and the matter is hereby taken under submission.

## I.    INTRODUCTION

On July 1, 2014, Marcus Gray (P.K.A. Flame), Lecrae Moore (P.K.A. Lecrae),
Emanuel Lambert, and Chike Ojukwu filed this action alleging that the song "Dark
Horse" infringes upon plaintiffs' copyright in the song "Joyful Noise."  Dkt. 1.  Since
then, plaintiffs have amended their pleadings to add or dismiss various parties.  The
operative Third Amended Complaint ("TAC"), filed on November 1, 2016, no longer
lists Moore as a plaintiff and alleges copyright infringement by Katheryn Elizabeth
Hudson (P.K.A. Katy Perry, hereinafter "Perry"); Jordan Houston (P.K.A. Juicy J);
Lukasz Gottwald (P.K.A. Dr. Luke); Sarah Theresa Hudson; Karl Martin Sandberg
(P.K.A. Max Martin); Henry Russell Walter (P.K.A. Cirkut); Kasz Money, Inc.; Capitol
Records, LLC; Kitty Purry, Inc.; UMG Recordings, Inc.; Universal Music Group, Inc.;
WB Music Corp.; BMG Rights Management (US) LLC; and Kobalt Music Publishing
America, Inc.  Dkt. 172.

On June 25, 2018, defendants filed a motion for summary judgment.  Dkt. 274
("MSJ").  On August 13, 2018, the Court denied defendants' motion for summary
judgment.  Dkt. 299 ("Order").

EXHIBIT  C
PAGE  23

Case 2:15-cv-05642-CAS-JC Document 489 Filed 10/11/19 Page 24 of 94 Page ID
#:15506
Case 2:15-cv-05642-CAS-JC Document 314 Filed 10/17/18 Page 2 of 7 Page ID #:3686

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | October 17, 2018 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

On September 11, 2018, Gottwald, Houston, Hudson, Sandberg, Walter, Capitol Records, Kasz Money, Kobalt Music Publishing America, UMG Recordings, Universal Musical Group, and WB Music filed the instant motion for reconsideration pursuant to Rule 60(b) of the Federal Rules of Civil Procedure and Local Rule 7–18. Dkt. 302 ("Mot."). On September 12, 2018, Perry and Kitty Purry filed a joinder to the motion for reconsideration. Dkt. 303. On September 24, 2018, plaintiffs filed an opposition. Dkt. 304. Defendants filed a reply on October 1, 2018. Dkt. 307 ("Reply").

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.    LEGAL STANDARD

Under Rule 60(b), the Court may relieve a party from a final judgment or order for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud or other misconduct; (4) a void judgment; (5) a satisfied or discharged judgment; or (6) any other reason that justifies relief. Fed. R. Civ. P. 60(b). Rule 60(b)(1) permits a court to correct its own inadvertence, mistakes of fact . . . or mistakes of law. However, a Rule 60(b)(1) reconsideration motion should not merely present arguments previously raised, or which could have been raised in the original briefs. A party seeking reconsideration under Rule 60(b)(6), the "catch-all" provision, must show "extraordinary circumstances justifying the reopening of a final judgment." Hall v. Haws, 861 F.3d 977, 987 (9th Cir. 2017) (citation omitted).

In addition, "[i]n this district, motions for reconsideration are governed by Local Rule 7–18," Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc., 568 F. Supp. 2d 1152, 1162 (C.D. Cal. 2008), which states: "[a] motion for reconsideration of the decision on any motion may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision. No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion." C.D. Cal. L.R. 7–18.

EXHIBIT C
PAGE 24

Case 2:15-cv-05642-CAS-JC   Document 489   Filed 10/11/19   Page 25 of 94   Page ID
#:15506
Case 2:15-cv-05642-CAS-JC   Document 314   Filed 10/17/18   Page 3 of 7   Page ID #:3687

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | October 17, 2018 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

## III.   DISCUSSION

Defendants' motion for summary judgment argued that plaintiffs did not establish a triable issue as to whether defendants had access to plaintiffs' song "Joyful Noise." "To prove access, a plaintiff must show a reasonable possibility, not merely a bare possibility, that an alleged infringer had the chance to view the protected work." Loomis v. Cornish, 836 F.3d 991, 995 (9th Cir. 2016) (citations omitted). The Court denied defendants' motion for summary judgment after finding that plaintiffs "demonstrated a triable issue of fact as to access because 'Joyful Noise' achieved critical success, including a Grammy nomination, and was readily available and viewed millions of times on YouTube and Myspace." Order at 8. Defendants move for reconsideration on the grounds that "this Court overlooked key tenets in the controlling Ninth Circuit decision of Loomis and that the Court's ruling on access is contrary to Loomis's holding as to what is required for 'widespread dissemination.'" Mot. at 4. However, defendants do not show a "manifest showing of a failure to consider material facts," nor do they explain how "extraordinary circumstances" justify their request for reconsideration. Rather, the instant motion largely repeats "written argument made in support of or in opposition to the original motion."[1] C.D. Cal. L.R. 7–18. Nevertheless, the Court addresses defendants' arguments below.

### A.      The Facts in Loomis

In Loomis, the plaintiff brought a copyright infringement action against songwriters and a music publisher. 2013 U.S. Dist. LEXIS 162607, at *2 (C.D. Cal. November 13, 2013). The district court granted defendants' summary judgment motion, finding that plaintiff "failed to present any evidence supporting a plausible theory of access." Id. at *13. On appeal, the plaintiff relied on two separate theories to show a reasonable possibility of access in the absence of direct evidence: (1) chain of events, and (2) widespread dissemination. Loomis, 836 F.3d at 995. With respect to the first theory,

---

[1] The instant motion for reconsideration and defendants' motion for summary judgment both argue: (1) "Joyful Noise" lacked commercial success, mot. at 9–10, MSJ at 17–18; (2) "Joyful Noise" did not saturate a relevant market in which defendants participate, mot. at 10–11, MSJ at 9, 20; and (3) the number of YouTube and Myspace views of "Joyful Noise" does not establish a reasonable possibility of access, mot. at 11–15, MSJ at 21–22.

EXHIBIT C
PAGE 25

Case 2:15-cv-05642-CAS-JC  Document 489  Filed 10/11/19  Page 26 of 94  Page ID
#:15567
Case 2:15-cv-05642-CAS-JC  Document 314  Filed 10/17/18  Page 4 of 7  Page ID #:3688

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL   'O'

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | October 17, 2018 |
|----------|--------------------------|------|------------------|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

the Ninth Circuit held that the plaintiff did not show evidence to support its chain of
events theory. Id. at 996–97. Under the second theory of widespread dissemination, the
plaintiff attempted to show access via a "doctrinal variant" of widespread dissemination
that focuses on saturation in a relevant market in which both parties participate. Id. at
997–98. The plaintiff argued that the defendants spent ten days recording an album in
Santa Barbara during a time when the plaintiff's song "saturated" the local music scene
through airplay on local radio stations, and Mix Magazine, Billboard, and the Santa
Barbara Independent newspaper ran stories about the band's achievements. Id. at 998.
The Ninth Circuit affirmed the district court's decision, holding that the plaintiffs did not
raise a triable issue of access because the defendants' "production responsibilities [during
their ten days in Santa Barbara] had nothing to do with listening to local radio, reading
local press, or scouting local bands, and there was no evidence that they undertook any
other activity in that market that created a reasonable possibility of access to Bright Red
Chords." Id.

### B.    Whether the Facts in Loomis and the Instant Case Are "On Par"

Defendants argue that the facts in Loomis and in the instant case are "on par."
Mot. at 5. However, unlike Loomis, plaintiffs in the instant case do not rely on a theory
of saturation in a relevant market to show widespread dissemination. Plaintiffs rather
make the argument that there is a triable issue of fact as to whether defendants heard
"Joyful Noise" because the song was viewed millions of times on YouTube and
Myspace, nominated for music awards, and received high rankings on Christian/Gospel
music charts. Loomis did not evaluate whether millions of views of a song on easily
accessible websites like YouTube and Myspace could create a triable issue of access.
Loomis instead examined whether the plaintiff in that case established a triable issue of
access through his theory that his song saturated a specific geographic location.
Accordingly, the facts in Loomis and in the instant case are not "on par" and Loomis
does not require the Court to grant summary judgment.

### C.    Whether the Holding in Loomis Created Requirements for Widespread
###        Dissemination

Defendants suggest that Loomis limited the grounds upon which a plaintiff can
show access by widespread dissemination by requiring plaintiffs to show *both*
commercial success and distribution through relevant mediums, *or* saturation in the

EXHIBIT C
PAGE 26

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL     'O'

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | October 17, 2018 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

relevant market.  Mot. at 4, 8–11; Reply at 7.  Because plaintiffs did not show commercial success or saturation in the relevant market, defendants argue that <u>Loomis</u> required the Court to grant defendants' motion for summary judgment.

However, <u>Loomis</u> did not make any such holding.  Rather, the Ninth Circuit stated "[t]he evidence required to show widespread dissemination will *vary from case to case*." 836 F.3d at 997 (emphasis added).  Additionally, the Ninth Circuit recognized that "in *most* cases," not all, "the evidence of widespread dissemination *centers* on the degree of a work's commercial success and on its distribution through radio, television, and other relevant mediums." <u>Id.</u> (emphasis added).

The facts in the instant case required the Court to consider whether a song's popularity on the internet, a powerful tool that can "reach a wide and diverse audience," <u>Art Attacks Inc., LLC v. MGA Entertainment Inc.</u>, 581 F.3d 1138, 1145 (9th Cir. 2009), diminished the relevance of commercial success in its analysis of whether plaintiffs demonstrated a triable issue of access by widespread dissemination.  In denying summary judgment, the Court also rejected defendants' argument that plaintiffs are required to show commercial exploitation in order to prove access because "such reasoning would make it permissible to infringe on a copyrighted work simply because it was never for sale."  Order at 8.  The Court remains persuaded that due to the millions of views of "Joyful Noise" on easily accessible and free websites and its success and popularity, a reasonable jury could conclude that there is more than a "bare possibility" that defendants had the opportunity to hear "Joyful Noise."  <u>See</u> <u>id.</u>

Defendants' motion for reconsideration fails for the reasons stated above. However, the Court will address the remainder of defendants' arguments in turn.

### D.     Whether <u>Loomis</u> Creates a New "Nationwide Saturation" Requirement

Consistent with their theory that <u>Loomis</u> established requirements to show a reasonable possibility of access, defendants argue that plaintiffs "must either establish 'an appreciable level of national saturation' or, alternatively, 'saturation in a relevant market in which both the plaintiff and the defendant participate.'" Mot. at 4 (citing <u>Loomis</u>, 836 F.3d at 994, 997–98) (emphasis omitted).  Defendants essentially argue that <u>Loomis</u> redefined commercial success as requiring a song to have achieved "nationwide saturation." <u>See</u> Mot. at 9–10.  To support this argument, defendants engage in a close

EXHIBIT C
PAGE 27

Case 2:15-cv-05642-CAS-JC   Document 489   Filed 10/11/19   Page 28 of 94   Page ID
Case 2:15-cv-05642-CAS-JC   Document 314-1 Filed 10/17/18   Page 6 of 7   Page ID #:3690
#:15500

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | October 17, 2018 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

reading of the background section in <u>Loomis</u>, where the Ninth Circuit described how the plaintiff's song was not commercially successful:

> Although the band hired a radio promotions company to promote the song on a variety of radio stations and a video promotions company to disseminate the music video through multiple media platforms, Bright Red Chords did not achieve an appreciable level of national saturation.  Loomis was able to provide to the district court documentation of only 46 sales of the recording.

836 F.3d at 994; Mot. at 9.  This statement is dicta. The Ninth Circuit did not establish a new standard requiring "national saturation" in a background section.  <u>See</u> <u>Loomis</u>, 836 F.3d at 994.  Furthermore, the Ninth Circuit was not presented with the issue of whether "evidence of Bright Red Chord's dissemination in retail chains and evidence of its multimedia publicity campaign raised a triable issue of access."  <u>Id.</u> at 998 n.3. The Ninth Circuit explained in a footnote that this argument was waived because plaintiff failed to make it in his opening brief and that even if the argument were not waived, "it was belied by the fact that he was only able to document 46 sales of 'Bright Red Chords.'"  <u>Id.</u>  And even if the Ninth Circuit did create a new requirement for showing commercial success, for reasons explained earlier, the Court does not read <u>Loomis</u> to require all copyright plaintiffs to show commercial success in order to demonstrate a triable issue as to access.

Defendants also repeat their argument that the approximately four million views of "Joyful Noise" only equates to about 25,000 digital download sales under Recording Industry Association of American (RIAA) standards.  Mot. at 12.  However, the relevant question here is not whether the YouTube and Myspace views of "Joyful Noise" approximate commercial success, but whether defendants had access to it.  The Court remains unpersuaded that RIAA standards rule out the possibility that defendants accessed "Joyful Notice" through free and easily accessible websites.

**E.      Whether Plaintiffs Must Show Saturation in a Relevant Market**

Defendants argue that under <u>Loomis</u>, if plaintiffs cannot show national saturation via commercial success of their song, they must show saturation in a relevant market. Mot. at 4, 10.  Accordingly, defendants contend that they "did not participate at any relevant time in the Christian hip-hop/rap industry in which 'Joyful Noise' abides."  Mot. at 11.  However, as mentioned earlier, the Ninth Circuit in <u>Loomis</u> stated that "[t]he

EXHIBIT  C
PAGE  28

Case 2:15-cv-05642-CAS-JC   Document 489   Filed 10/11/19   Page 29 of 94   Page ID
#:15810
Case 2:15-cv-05642-CAS-JC   Document 314   Filed 10/17/18   Page 7 of 7   Page ID #:3691

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | October 17, 2018 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

evidence required to show widespread dissemination will *vary from case to case*," 836 F.3d at 997 (emphasis added), thus there are no set requirements to demonstrate a reasonable possibility of access as defendants suggest.  See Mot. at 4.  The Ninth Circuit did not hold that saturation in a relevant market is the *only* alternative to prove widespread dissemination besides commercial success and distribution through relevant mediums.  Rather, the Ninth Circuit merely "*recognized* a doctrinal variant that focuses on saturation in a relevant market in which [both parties] participate." Id.  (emphasis added).  Additionally, the Court did not analyze whether "Joyful Noise" saturated the relevant market because plaintiffs did not rely on that theory to establish their case. While the Ninth Circuit in Loomis centered its analysis on the song's saturation of a specific geographic location, the Court's analysis here centered on the millions of YouTube and Myspace views of "Joyful Noise," its music award nominations, and its music chart rankings.  Order at 2–3.

**F.    Whether Plaintiffs Created a Triable Issue of Fact**

Defendants argue again that because YouTube has "billions of hours of content" and hosts videos with "hundreds of millions to over a billion views in a single year," there is "the *barest* of possibilities that any Dark Horse writer could have stumbled across 'Joyful Noise' on YouTube and Myspace."  Mot. at 13 (emphasis added).  In denying summary judgment, the Court addressed this contention, stating that "[d]ue to the millions of views and plays of 'Joyful Noise' on YouTube and Myspace, both readily accessible websites, and the success and popularity of 'Joyful Noise' in the Christian hip-hop/rap industry, a reasonable jury could conclude that there is more than a 'bare possibility' that defendants – who are experienced professional songwriters – had the opportunity to hear 'Joyful Noise.'"  Order at 8.  The Court remains persuaded that plaintiffs have demonstrated a triable issue of fact as to a reasonable possibility of access.

**IV.    CONCLUSION**

Consistent with the Court's findings and conclusions above, defendants' motion for reconsideration is **DENIED**.

IT IS SO ORDERED.

| | 00 | 00 |
|---|---|---|
| Initials of Preparer | | CMJ |

EXHIBIT C
PAGE 29

# EXHIBIT D

Case 2:15-cv-05642-CAS-JC   Document 489   Filed 10/11/19   Page 31 of 94   Page ID
#:10312
Case 2:15-cv-05642-CAS-JC   Document 403   Filed 07/05/19   Page 1 of 40   Page ID #:7225

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**      (IN CHAMBERS) - MOTIONS *IN LIMINE*

## I.   INTRODUCTION

On July 1, 2014, Marcus Gray (P.K.A. Flame), Lecrae Moore (P.K.A. Lecrae), Emanuel Lambert, and Chike Ojukwu filed this action alleging that the song "Dark Horse" infringes upon plaintiffs' copyright in the song "Joyful Noise." Dkt. 1. Since then, plaintiffs have amended their pleadings to add or dismiss various parties. The operative Third Amended Complaint ("TAC"), filed on November 1, 2016, no longer lists Moore as a plaintiff and alleges copyright infringement by Katheryn Elizabeth Hudson (P.K.A. Katy Perry, hereinafter "Perry"); Jordan Houston (P.K.A. Juicy J); Lukasz Gottwald (P.K.A. Dr. Luke); Sarah Theresa Hudson; Karl Martin Sandberg (P.K.A. Max Martin); Henry Russell Walter (P.K.A. Cirkut); Kasz Money, Inc.; Capitol Records, LLC; Kitty Purry, Inc.; UMG Recordings, Inc.; Universal Music Group, Inc.; WB Music Corp.; BMG Rights Management (US) LLC; and Kobalt Music Publishing America, Inc. Dkt. 172. A trial in this matter is currently scheduled to begin on July 16, 2019.

The Court held a hearing on July 1, 2019. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

EXHIBIT  D
PAGE  31

Case 2:15-cv-05642-CAS-JC   Document 489   Filed 10/11/19   Page 32 of 94   Page ID
#:10310
Case 2:15-cv-05642-CAS-JC   Document 403   Filed 07/05/19   Page 2 of 40   Page ID #:7226

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

## II.    PLAINTIFFS' MOTIONS *IN LIMINE*

### A.    Plaintiffs' Corrected Motion *in limine* No. 1 (Dkt. 333, filed on June 12, 2019)

Defendants plan to argue at trial that plaintiffs' evidence of widespread dissemination through Myspace and YouTube is insufficient to show that it was reasonably possible for defendants to have heard "Joyful Noise" because defendants would have had to actively sought out "Joyful Noise" to access it through those mediums. See Dkt. 369.  Plaintiffs request an order precluding "defendants from arguing that an absence of direct evidence of access defeats plaintiff's ability to prove access" or that defendants needed to take "affirmative action to hear the song."  Dkt. 333 at 3, 4. Defendants represent that they do not intend to argue that plaintiffs must show direct evidence of access and contend that there is nothing improper about their arguments about how users listen to music on Myspace and YouTube because it goes to whether there was a "*reasonable* possibility, not merely a bare possibility," that defendants heard "Joyful Noise."  Dkt. 369 at 4 (quoting Loomis v. Cornish, 836 F.3d 991, 995 (9th Cir. 2016) (emphasis added)).

"Proof of access requires an opportunity to view or to copy plaintiff's work."  L.A. Printex Indus., Inc. v. Aeropostale, Inc., 676 F.3d 841, 846 (9th Cir. 2012) (internal quotation marks omitted) (citing Three Boys Music Corp. v. Bolton, 212 F.3d 477, 482 (9th Cir. 2000)).  "To prove access, a plaintiff must show a reasonable possibility, not merely a bare possibility, that an alleged infringer had the chance to view the protected work."  Id. (quoting Art Attacks Ink, LLC v. MGA Entm't Inc., 581 F.3d 1138, 1143 (9th Cir. 2009)).  "Absent direct evidence of access, a plaintiff can prove access using circumstantial evidence of either (1) a 'chain of events' linking the plaintiff's work and the defendant's access, or (2) 'widespread dissemination' of the plaintiff's work."  L.A. Printex, 676 F.3d at 847 (quoting Three Boys Music, 212 F.3d at 482).  A presumption of copying is created when a copyright plaintiff establishes both reasonable access and substantial similarity.  See Three Boys Music, 212 F.3d at 486.  The burden then "shifts to the defendant to rebut that presumption through proof of independent creation."  Id. (citation omitted).

Plaintiffs contend that "whether any viewer, including defendants, had direct access to and/or took specific affirmative action to hear the song on, for example, YouTube, is not a required element of the proof of widespread dissemination[.]"  Dkt.

EXHIBIT  D
PAGE  32

Case 2:15-cv-05642-CAS-JC   Document 489   Filed 10/11/19   Page 33 of 94   Page ID
#:10314
Case 2:15-cv-05642-CAS-JC   Document 403   Filed 07/05/19   Page 3 of 40   Page ID #:7227

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

333 at 6.  The Court observes, however, that courts routinely assess the characteristics and practices of a defendant in determining whether a plaintiff has established access through widespread dissemination.  See e.g., Three Boys Music Corp. v. Bolton, 212 F.3d at 483 (finding that plaintiffs presented sufficient evidence of widespread dissemination of an Isley Brothers song by showing, in part, that Bolton grew up listening to groups like the Isley Brothers, that the infringed song was played on the radio in the area where Bolton grew up, and that Bolton confessed to being a huge fan of the Isley Brothers); Loomis, 836 F.3d at 998 (holding that plaintiff did not create a triable issue of access as to whether its song was widely disseminated because "there was no evidence that [the defendants] undertook any [ ] activity in that market that created a reasonable possibility of access to [the plaintiff's song]").  These cases demonstrate that whether evidence of widespread dissemination establishes access depends, in part, on the circumstances by which a particular defendant would have heard or viewed the plaintiff's work.

Plaintiffs here bear not only the burden of showing widespread dissemination of "Joyful Noise," but also the burden of showing that such evidence demonstrates a reasonable, not just bare, possibility that defendants heard "Joyful Noise" before creating "Dark Horse."  Although it would be inappropriate for defendants to argue that plaintiffs must show direct evidence of access to prevail on their claim for copyright infringement, the Court finds that defendants' arguments about whether it was likely that defendants would have accessed "Joyful Noise" on Myspace or YouTube are appropriate and relevant to the issue of whether defendants had a reasonable opportunity to hear "Joyful Noise."  And in the event plaintiffs demonstrate a reasonable possibility of access and the burden shifts to defendants to prove independent creation, defendants' argument would also be proper to show that they never availed themselves of the opportunity to hear "Joyful Noise."  See 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright, § 13.02[A] ("The trier of fact may conclude that [the defendant] had, but did not avail himself of, the opportunity to view, but this conclusion properly goes to the ultimate issue of copying, and not to the subordinate issue of access.").

Accordingly, the Court **DENIES** plaintiffs' Motion *in limine* No. 1.

EXHIBIT  D
PAGE  33

Case 2:15-cv-05642-CAS-JC   Document 489   Filed 10/11/19   Page 34 of 94   Page ID
#:10315
Case 2:15-cv-05642-CAS-JC   Document 403   Filed 07/05/19   Page 4 of 40   Page ID #:7228

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL             'O'

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|----------|--------------------------|------|--------------|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

**B.      Plaintiffs' Motion *in limine* No. 2 (Dkt. 328, filed on June 12, 2019)**

Plaintiffs seek an order precluding defendants from presenting any evidence or argument regarding the amount of money Chike Ojukwu received for licensing the musical beat for "Joyful Noise" to Marcus Gray, the amount of money he has received for other beats, and whether plaintiffs have licensed any of their music.  Dkt. 328 at 3. Plaintiffs argue that this evidence is not relevant and, in the alternative, that its "probative value is substantially outweighed by a danger of unfair prejudice, confusion of the issues, and misleading the jury."  Id.  Defendants argue that the evidence is relevant in determining a hypothetical license fee.  Dkt. 372 at 5.  Specifically, King opines in his rebuttal report that a hypothetical license fee for the beat at issue would be "quite low" given that it had been licensed to Marcus Gray for $300.  Id.

In an action for copyright infringement, "[a]ctual damages are usually determined by the loss in the fair market value of the copyright, measured by the profits lost due to the infringement or by the value of the use of the copyrighted work to the infringer."  Polar Bear Prods., Inc. v. Timex Corp., 384 F.3d 700, 708 (9th Cir. 2004) (internal citations omitted).  Actual damages may be based on a hypothetical lost license fee, provided that the amount is not based on "undue speculation."  Id. at 709.  To establish the amount of a hypothetical lost license fee, evidence may be presented of a reasonable market value for the license fee using a history of comparable licenses or "benchmark" licenses in the industry.  See id.; see also Oracle Corp. v. SAP AG, 765 F.3d 1081, 1093 (9th Cir. 2014).

The Court finds that evidence of plaintiffs' prior licensing agreements and the amount Ojukwu received for licensing beats in the past, including the beat in "Joyful Noise," may be relevant in determining a hypothetical lost license fee.  The Court does not find that the risks of prejudice, jury confusion, or misleading the jury outweigh the probative value of this evidence.  Accordingly, the Court **DENIES** plaintiffs' Motion *in limine* No. 2.

**C.      Plaintiffs' Motion *in limine* No. 3 (Dkt. 329, filed on June 12, 2019)**

Plaintiffs seek to exclude evidence and argument related to Ojukwu's use of a free program to create the beat for "Joyful Noise" and the fact that the song writers of "Joyful Noise" agreed to their respective ownership shares of the "Joyful Noise" composition after the filing of the instant lawsuit.  Dkt. 329 at 3.  Plaintiffs argue that this evidence is

EXHIBIT  D
PAGE  34

Case 2:15-cv-05642-CAS-JC   Document 489   Filed 10/11/19   Page 35 of 94   Page ID
#:10316
Case 2:15-cv-05642-CAS-JC   Document 403   Filed 07/05/19   Page 5 of 40   Page ID #:7229

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

not relevant to the issues in the case and claim that the danger of prejudice, confusion, and misleading the jury outweighs its probative value. <u>Id.</u> at 3–4. Defendants respond that Ojukwu's use of a free program to create the beat at issue is relevant to damages and whether the beat is original and protected by copyright law. Dkt. 373 at 3. Defendants also assert that timing of their ownership agreement is relevant to the validity and timing of plaintiffs' copyright registration for "Joyful Noise." <u>Id.</u> at 3-4.

The Court is persuaded by defendants that this evidence is relevant and does not find that the risks of prejudice, jury confusion, or misleading the jury outweigh its probative value. Accordingly, the Court **DENIES** plaintiffs' Motion *in limine* No. 3.

## III.   **DEFENDANTS' MOTIONS** *IN LIMINE*

### A.   **Defendants' Motion** *in limine* **No. 1 (Dkt. 337, filed on June 12, 2019)**

Defendants seek to preclude plaintiffs from introducing evidence or argument regarding their moral rights or any reputational harm caused by defendants' alleged infringement. Dkt. 337 at 2. Specifically, defendants seek to preclude evidence regarding the "tarnish" to the "devoutly religious message of 'Joyful Noise'" caused by "witchcraft, paganism, black magic, and Illuminati imagery" evoked by "Dark Horse." <u>Id.</u> Defendants contend that this evidence is irrelevant, prejudicial, and an improper attempt by plaintiffs to enforce "moral rights" under the Copyright Act. <u>Id.</u> Plaintiffs respond in their opposition brief that they do not intend to assert a "moral rights" theory at trial but that they should be permitted to offer evidence of the reputational damage they suffered as part of their claim for lost profits. Dkt. 375 at 1.

At the hearing, plaintiffs indicated that they do not have any evidence of lost profits and that they are not going to pursue that theory of damages at trial. It thus appears that evidence regarding any "tarnish" to "Joyful Noise" caused by "Dark Horse" is irrelevant to the issues in this action. Accordingly, the Court **GRANTS** defendants' Motion *in limine* No. 1.

### B.   **Defendants' Motion** *in limine* **No. 2 (Dkt. 338, filed on June 12, 2019)**

A presumption of copying is created when a copyright plaintiff establishes both reasonable access and substantial similarity. <u>See</u> <u>Three Boys Music</u>, 212 F.3d at 486. However, "[a]bsent evidence of access, a 'striking similarity' between the works may give rise to a permissible inference of copying." <u>Baxter v. MCA., Inc.</u>, 812 F.2d 421, 423

EXHIBIT  D
PAGE  35

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

(9th Cir. 1987) (citation omitted).  "At base, 'striking similarity' simply means that, in human experience, it is virtually impossible that the two works could have been independently created."  Nimmer on Copyright § 13.02[B].  In a technical area, such as music, expert testimony is generally necessary to establish striking similarity.  Id.

Defendants contend that plaintiffs have thus far only argued that "Joyful Noise" and "Dark Horse" are substantially similar and seek to exclude plaintiffs from changing course and arguing at trial that "Joyful Noise" and "Dark Horse" are strikingly similar. Dkt. 338.  According to defendants, this argument is untimely and plaintiffs have no musicologist expert opinion of striking similarity (as opposed to substantial similarity). Plaintiffs respond that their musicology expert, Dr. Todd Decker, did not ascribe any legal meaning to the term "substantially similar" as used in his expert report, and that Decker did, in fact, opine that the similarities between the works "suggest[] significant borrowing of musical material from 'Joyful Noise' by the creators of 'Dark Horse.'" Dkt. 375 at 4.  Thus, according to plaintiffs, Decker's expert testimony will support their argument at trial that the works are strikingly similar.  Id.

The Court is not persuaded that Decker's expert testimony qualifies as a "striking similarity" opinion.  Decker was not asked by plaintiffs to provide an opinion on whether the musical material in the two songs are strikingly similar, dkt. 338-1 at 85, nor does he opine in his report that the ostinatos in the two works are virtually identical or strikingly similar, see dkt. 338-1 at 6–20.  Although Decker opines that the ostinatos in the two works share some identical features such as phrase length and rhythm, he also opines that the two ostinatos are only "nearly identical" or "substantially similar" in pitch content and timbre and that they differ in key and tempo as well as their final note.  Id. at 9–14. Although Decker ultimately concludes that the similarities in the two works "suggest" musical borrowing, that opinion is not equivalent to an opinion that the two works are so strikingly similar that it is "virtually impossible that the two works could have been independently created[.]"  Nimmer on Copyright § 13.02[B].

Due to the absence of expert testimony that the two works are strikingly similar or that copying is the only explanation for the similarities between the works, the Court precludes plaintiffs from arguing at trial that the two works are so strikingly similar that they need not prove access.  Accordingly, the Court **GRANTS** defendants' Motion *in limine* No. 2.

EXHIBIT  D
PAGE  36

Case 2:15-cv-05642-CAS-JC   Document 489   Filed 10/11/19   Page 37 of 94   Page ID
#:10816
Case 2:15-cv-05642-CAS-JC   Document 403   Filed 07/05/19   Page 7 of 40   Page ID #:7231

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL            'O'

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

**C.    Defendants' Motions *in limine* Nos. 4, 5, 6 (Dkts. 340, 341, 342 filed on June 12, 2019)**

Defendants seek an order excluding plaintiffs from introducing evidence of: (1) plaintiffs' live performances of "Joyful Noise"; (2) radio and TV interviews with plaintiffs featuring "Joyful Noise"; and (3) critical acclaim of "Joyful Noise" or *Our World Redeemed* within the Christian music community. Dkts. 340–342. Defendants contend that this evidence is not relevant to the issue of access because, according to defendants, widespread dissemination requires a showing of "an appreciable level of national saturation," which can only be proven by demonstrating "commercial success" and "distribution through radio, television, and other relevant mediums." Dkt. 340 (quoting Loomis, 836 F.3d at 994, 997). In the absence of national saturation, defendants contend that the only other way plaintiffs can demonstrate widespread dissemination is through "saturation in a relevant market in which both the plaintiff and the defendant participate." Id. (quoting Loomis, 836 F.3d at 997). According to defendants, plaintiffs' evidence of performances, interviews, and critical acclaim are not relevant because they demonstrate neither national saturation nor saturation in a market that defendants participated in because defendants did not participate in the Christian music market.

The Court has previously found defendants' narrow reading of Loomis to be misplaced. See Dkt. 314. In its decision on defendants' motion for reconsideration of denial for summary judgment, the Court found that, despite defendants' arguments to the contrary, Loomis did not impose new requirements for establishing widespread dissemination:

> Because plaintiffs did not show commercial success or saturation in the relevant market, defendants argue that Loomis required the Court to grant defendants' motion for summary judgment. However, Loomis did not make any such holding. Rather, the Ninth Circuit stated "[t]he evidence required to show widespread dissemination will *vary from case to case.*" 836 F.3d at 997 (emphasis added).

Id. at 5.

Despite the Court's previous ruling, defendants continue to insist that Loomis imposes new requirements for demonstrating access in a copyright infringement case.

EXHIBIT D
PAGE 37

Case 2:15-cv-05642-CAS-JC   Document 489   Filed 10/11/19   Page 38 of 94   Page ID
#:10816
Case 2:15-cv-05642-CAS-JC   Document 403   Filed 07/05/19   Page 8 of 40   Page ID #:7232

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                              **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

The Court reiterates that "[t]he evidence required to show widespread dissemination will *vary from case to case*." Loomis, 836 F.3d at 997 (emphasis added). The Court finds that the three categories of evidence that defendants seek to exclude are relevant to widespread dissemination and whether defendants had a reasonable opportunity to hear "Joyful Noise." Whether this evidence proves that defendants had a reasonable opportunity to hear "Joyful Noise" is a matter for cross-examination and argument. Accordingly, the Court **DENIES** defendants' motions *in limine* to the extent they seek to exclude plaintiff's evidence on the grounds that it does not show nationwide saturation or saturation in a relevant market.

Defendants also argue that this evidence is irrelevant because plaintiffs cannot prove that defendants attended any of plaintiffs' concerts, heard plaintiffs' song on the radio or TV, or participated in the Christian music market. The Court is not persuaded. A plaintiff need not establish that a defendant actually viewed and knew of the plaintiff's work to prevail on his claim for copyright infringement. See Nimmer on Copyright, § 13.02[A]. Such a requirement would ignore "the underlying policy considerations that permit proof of access (and substantial similarity) as substitutes for direct proof of copying." Id. "Just as it is virtually impossible to offer direct proof of copying, so it is often impossible for a plaintiff to offer direct evidence that defendant . . . actually viewed or had knowledge of the plaintiff's work" because "[s]uch viewing will ordinarily have occurred, if at all, in a private office or home outside of the presence of any witnesses available to the plaintiff." Id. Thus, "[f]or this reason, it is clear that, even if evidence is unavailable to demonstrate actual viewing, proof that the defendant had the opportunity to view (when combined with probative similarity) is sufficient to permit the trier to conclude that copying as a factual matter has occurred—in other words, the factfinder has the discretion to reject even the uncontradicted testimony of [the defendant] that he had never in fact viewed the plaintiff's work." Id. Thus, the issue of whether defendants heard or knew about "Joyful Noise"—either by attending plaintiffs' concerts, listening to the song on the radio or TV, or learning of "Joyful Noise" through its various award nominations—is a question of fact to be decided by the jury.

Defendants also seek to exclude evidence of plaintiffs' concert performances on the grounds that plaintiffs lack any admissible evidence of those performances. Plaintiffs respond that they will establish a foundation for all evidence of concert performances through: (1) Marcus Gray's testimony about his personal knowledge of the concerts at which "Joyful Noise" was played; and (2) Crystal Gray's testimony based on her

EXHIBIT D
PAGE 38

Case 2:15-cv-05642-CAS-JC   Document 489   Filed 10/11/19   Page 39 of 94   Page ID
#:10521
Case 2:15-cv-05642-CAS-JC   Document 403   Filed 07/05/19   Page 9 of 40   Page ID #:7233

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. |

knowledge as Marcus Gray's manager. Dkt. 375 at 8–9. The Court finds no reason to
exclude testimony about plaintiffs' concert performances at this juncture and reserves
ruling on the admissibility of this testimony until after the witnesses have had an
opportunity to lay a foundation for their testimony.

Defendants also contend that plaintiffs' evidence of radio and TV interviews is
inadmissible because plaintiffs will not lay a proper foundation for this evidence and
because it contains hearsay. Plaintiffs respond that Marcus Gray and Crystal Gray will
offer testimony on this subject and that they have personal knowledge regarding the
details of these interviews. Dkt. 375 at 11. As for defendants' hearsay objection,
plaintiffs argue that the fact that "Joyful Noise" played in the background of these
interviews is not an assertion but rather an observable occurrence. Id. The Court agrees
with plaintiffs that testimony about "Joyful Noise" playing in the background during
radio and television interviews is not hearsay as it is based on the witnesses's personal
observations and does not concern a statement offered in evidence to prove the truth of
the matter asserted. See Federal Rule of Evidence 801.

Accordingly, the Court **DENIES** defendants' Motions *in limine* Nos. 4, 5, and 6,
without prejudice to their raising objections as to the foundation of Marcus Gray's or
Crystal Gray's testimony on plaintiffs' concert performances.

**D.     Defendants' Motion *in limine* Nos. 3, 9 (Dkts. 339, 345 filed on June 12,
2019)**

**i.     Testimony about Sales**

Defendants represent that plaintiffs have failed to adduce any evidence of sales of
"Joyful Noise" or the album it appeared on, *Our World Redeemed*, and seek an order
precluding plaintiffs from offering testimony about such sales in lieu of records
evidencing those sales. Dkt. 339 at 5. Specifically, defendants seek to exclude testimony
from Marcus Gray about any purported sales because such testimony would not be based
on personal knowledge and would lack foundation. Id. Defendants also seek to exclude
any testimony about the fact that plaintiffs' former record label refused to provide
plaintiffs with records of any sales. Id. According to defendants, plaintiffs could have
subpoenaed these records from Gray's record label yet declined to do so, thus this

EXHIBIT  D
PAGE  39

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. |

testimony would be confusing to the jury and would result in the jury speculating about what those "hypothetical records might say." Id. at 6.

Plaintiffs respond that, although they do not have evidence of the exact number of sales, they intend to introduce circumstantial evidence of sales through the testimony of Marcus Gray's wife, Crystal Gray. Dkt. 375 at 5. In light of plaintiffs' representation that Marcus Gray will not offer testimony about sales, the Court **DENIES** as moot defendants' motion to exclude this testimony.

Plaintiffs also argue that they only intend to use the record label's refusal to provide sales records as rebuttal evidence in the event plaintiffs argue that defendants have no evidence regarding sales. Id. According to plaintiffs, "[d]efendants cannot highlight [p]laintiffs' inability to come forward with specific sales numbers, while at the same time seek to preclude [p]laintiffs from explaining to the jury why they were unable to do so." Id. at 6. The Court finds that testimony about the record label's refusal to provide sales records would be appropriate to rebut an assertion that plaintiffs lack any evidence of sales. To the extent defendants wish to establish that plaintiffs could have obtained this information through a subpoena, they may elicit that testimony through cross-examination. In light of plaintiffs' representation that they only intend to offer testimony about the record label's refusal to provide sales records as rebuttal evidence, the Court **DENIES** defendants' motion to exclude this testimony.

### ii.     Billboard Charts as Evidence of Sales

Defendants also seek to preclude plaintiffs from using Billboard charts as evidence of sales because the charts do not "reveal the amount of units" of sales of a song or album. Dkt. 345 at 6. Defendants represent that Billboard rankings are based on various different metrics, not sales alone, and therefore, the charts are not evidence of sales. Id. Plaintiffs respond that, although the Billboard charts "do not establish definitively how many albums or singles were sold," the charts on which "Joyful Noise" and *Our World Redeemed* appeared ranked songs and albums based on physical and digital album sales as well as digital downloads. Dkt. 375 at 23. In lieu of providing evidence about the actual number of sales, plaintiffs contend that they should be allowed to introduce the Billboard charts as circumstantial evidence that "Joyful Noise" and *Our World Redeemed* experienced commercial success. Id. at 24.

EXHIBIT  D
PAGE  40

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

The Court has reviewed the cases in which commercial success was analyzed in determining whether the plaintiff had established widespread dissemination of a work. In each of those cases, the approximate number of sales of the work was analyzed to determine its reach. See Art Attacks Inc. v. LLC v. MGA Entertainment Inc., 581 F.3d 1138, 1144 (9th Cir. 2009) (2000 sales per year insufficient to establish widespread dissemination); Rice v. Fox Broadcasting Co., 330 F.3d 1170, 1178 (9th Cir. 2003) (19,000 sales over 13 years insufficient to establish widespread dissemination); Jason v. Fonda, 526 F. Supp. 774, 776 (C.D. Cal. 1981) (sales of 2,000 copies nationwide did not create more than a bare possibility of access). Here, the Billboard charts do not reveal the number of sales of either "Joyful Noise" or *Our World Redeemed*, and it appears that Billboard has refused to reveal either its methodology or the data underlying its rankings. It is thus unknown whether plaintiffs sold one hundred copies or one million copies of "Joyful Noise." The Billboard charts are therefore not probative of whether "Joyful Noise" was commercially successful, or, more precisely, whether it was widely disseminated through sales.

Accordingly, the Billboard charts may not be introduced for the purpose of establishing that "Joyful Noise or *Our World Redeemed* experienced commercial success or a high number of sales.

**iii.     Relevance**

Defendants also contend that the Billboard charts should be excluded because they are not relevant to access. The Court finds that the Billboard charts are relevant to access for the same reasons set forth in the Court's order on Motions *in Limine* Nos. 4, 5, and 6. Specifically, the Court finds that the appearance of "Joyful Noise" and *Our World Redeemed* on Billboard charts is relevant to the issue of access because Billboard is a popular music publication—as such, defendants may have learned about "Joyful Noise" by seeing it on a Billboard chart. The Billboard charts also indicate that those works were relatively popular within the Christian music market—which may be relevant depending on the extent to which defendants participated in that market.

**iv.     Hearsay**

Defendants also seek to exclude any tables prepared by Billboard which summarize the instances when "Joyful Noise" and *Our World Redeemed* appeared on a

EXHIBIT D
PAGE 41

Case 2:15-cv-05642-CAS-JC   Document 489   Filed 10/11/19   Page 42 of 94   Page ID
#:10325
Case 2:15-cv-05642-CAS-JC   Document 403-4   Filed 07/05/19   Page 12 of 40   Page ID #:7236

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

Billboard chart prior to the creation of "Dark Horse."  Dkt. 345 at 7.  Defendants contend
that these summary tables contain hearsay in that they are being offered to prove the truth
that "Joyful Noise" and *Our World Redeemed* appeared on the Billboard chart in the
position and on the date stated.  Id.  Plaintiffs respond that the summary tables were
created and produced by Billboard in response to a subpoena and were authenticated
during a deposition with a representative from Billboard.  Dkt. 375 at 24.  The Billboard
representative testified that he researched the title "Joyful Noise" and *Our World
Redeemed* in the Billboard internal database and pulled the charts on which the song and
album appeared on a week-by-week basis.  Dkt. 375-4 at 16.  When asked why Billboard
did not just produce the charts themselves, the representative testified that "it's easier to
digest a week by week summary than to just find it on a chart if we just provided images,
and not every week of those charts had a printed chart that accompanied it."  Id. at 18.
Plaintiffs do not dispute that the summary charts constitute hearsay but assert that the
business records exception should apply because the data and information underlying the
summary tables were kept by Billboard in the ordinary course of business.  Defendants
respond that the summary tables are not business records because they were prepared for
purposes of litigation.  Dkt. 345 at 8.

    Federal Rule of Evidence 803(6) provides that "records of a regularly conducted
activity" are exceptions to the rule against hearsay if, among other requirements, "the
record was kept in the course of a regularly conducted activity of a business . . ."  The
summary charts do not fall within this exception because, although the summary charts
appear to be based on business records, the summary charts themselves were prepared for
the purposes of litigation and were not kept in the course of a regularly conducted
activity.  And although Federal Rule of Evidence 1006 provides that a "proponent may
use a summary, chart, or calculation to prove the content of voluminous writings,
recordings, or photographs that cannot be conveniently examined in court," the proponent
must nonetheless "make the originals or duplicates available for examination or copying .
. . by other parties at a reasonable time and place."  See also Paddack v. Dave
Christensen, Inc., 745 F.2d 1254, 1259 (9th Cir. 1984).  At the hearing, it became
apparent that at least some of the data and records underlying Billboard's summary charts
were never made available to the parties for inspection and that plaintiffs will not be able
to obtain those records before trial.  Accordingly, the Court will exclude the summary
charts unless plaintiffs obtain all the underlying business records from Billboard prior to
trial.

EXHIBIT D
PAGE 42

Case 2:15-cv-05642-CAS-JC   Document 489   Filed 10/11/19   Page 43 of 94   Page ID
#:10324
Case 2:15-cv-05642-CAS-JC   Document 403   Filed 07/05/19   Page 13 of 40   Page ID #:7237

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

At the hearing, however, plaintiffs indicated that they may be able to provide evidence of some of the weekly Billboard charts through screenshots of the Billboard website.  The Court reserves ruling on the admissibility of those weekly Billboard charts until plaintiffs have had an opportunity to lay a foundation for that evidence.

Accordingly, the Court **GRANTS** in part and **DENIES** in part defendants' Motions *in limine* Nos. 3 and 9.  Plaintiffs may offer testimony about the record label's refusal to provide sales records as rebuttal evidence.  Plaintiffs may not introduce the Billboard charts for the purpose of establishing that "Joyful Noise or *Our World Redeemed* experienced commercial success or a high number of sales, but they may offer the Billboard charts for the purpose of showing that "Joyful Noise" and *Our World Redeemed* appeared on those charts and to show that those works were relatively popular in the Christian music market.  The Court will exclude the summary charts created by Billboard for purposes of this litigation unless plaintiffs obtain all the underlying business records from Billboard.  The Court reserves ruling on the admissibility of any weekly Billboard charts until plaintiffs have had an opportunity to lay a foundation for that evidence.

### E.   Defendants' Motion *in limine* No. 7 (Dkt. 343, filed on June 12, 2019)

Defendants seek to preclude plaintiffs from introducing screenshots of archived versions of Lecrae Moore's and Marcus Gray's Myspace pages captured by the Internet Archive.  Dkt. 343 at 4.  It appears that plaintiffs plan to introduce these screenshots to show the play counts of "Joyful Noise" on Moore's and Gray's Myspace pages.  Defendants argue that the screenshots are unreliable, lack foundation, contain hearsay, and that the conclusions drawn by plaintiffs from the screenshots are speculative.  Id. The screenshots at issue are displayed below:

EXHIBIT  D
PAGE  43

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |



EXHIBIT  D
PAGE  44

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |



Dkt. 343-1 at 22–24.

    **i.**    **Foundation**

    Defendants claim that plaintiffs will not be able to lay a proper foundation for the contents of the screenshots because they "cannot establish that the pages were, in fact, created by Gray and Moore; that the 'Joyful Noise' audio file identified on the page was the song at issue in this case or was even available to listen to[.]"  Dkt. 343 at 5. Plaintiffs argue that Gray and Moore can testify to the fact that they created the pages and uploaded "Joyful Noise" to those pages.  Dkt. 375 at 14.  In the alternative, plaintiffs also contend that "anyone familiar with how the page looked could identify it."  Id.  It appears that both Gray and Moore will be able to lay a foundation for the contents of the screenshots.  Moreover, the Court is not persuaded that there is a genuine dispute as to the authenticity of these screenshots and the fact that these Myspace pages were created by Gray and Moore.

Case 2:15-cv-05642-CAS-JC   Document 489   Filed 10/11/19   Page 46 of 94   Page ID
Case 2:15-cv-05642-CAS-JC   Document 403   Filed 07/05/19   Page 16 of 40   Page ID #:7240
#:10327

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

####    ii.        Reliability and Speculation

Defendants contend that the "play counts" are "entirely unreliable and speculative"
because a play count "does not identify any one person in particular as having initiated
playback or listened to the song in question" and "does not account for or foreclose that
the 'play counts' were improperly inflated by bots or other online crawlers." Dkt. 347 at
6. Plaintiffs respond that the parties are working on a stipulation related to how "plays"
are counted and what the meaning of a "play count" is. Dkt. 375 at 14. It appears that
defendants are not contesting the authenticity of the number of play counts displayed on
the screenshots but rather the meaning of those play counts. This concern goes to the
weight of the evidence, not its admissibility, and can be addressed by defendants through
cross-examination.

####    iii.        Hearsay

Defendants also argue the screenshots contain hearsay because the "Internet
Archive cannot testify to the truth of the contents of the screenshots; *e.g.*, the Internet
Archive cannot say what the song allegedly was or that the number of "plays" stated on
the pages accurately reflects the number of times the song was, in fact, clicked on." Dkt.
347 at 5. Plaintiffs contend that the screenshots are admissible to prove the truth of their
contents under the residual exception to the hearsay rule. Federal Rule of Evidence 807
provides that a hearsay statement not otherwise covered by an exception in Rule 803 or
804 is admissible if: "(1) the statement has equivalent circumstantial guarantees of
trustworthiness; (2) it is offered as evidence of a material fact; (3) it is more probative on
the point for which it is offered than any other evidence that the proponent can obtain
through reasonable efforts; and (4) admitting it will best serve the purposes of [the
Federal Rules] and the interests of justice." Fed. R. Evid. 807.

As an initial matter, the Court is not persuaded that the Myspace play counts are
hearsay. See United States v. Lizarraga-Tirado, 789 F.3d 1107, 1109–10 (9th Cir. 2015)
(explaining that Rule 801 only applies to "a *person's* oral assertion, written assertion, or
nonverbal conduct" and holding that "machine statements aren't hearsay") (emphasis in
the original). But even assuming that the play counts are hearsay, the Court nonetheless
finds that the play counts of "Joyful Noise" on the Myspace screenshots are admissible
through the residual hearsay exception. Here, defendants do not do not dispute that the
screenshots are from the Internet Archive and that the screenshots accurately reflect the

EXHIBIT  D
PAGE  46

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

content of the Myspace pages at the time the screenshots were captured. The screenshots clearly indicate that the name of the song is "Joyful Noise" and provide the number of times that "Joyful Noise" has been played. The number of Myspace plays of "Joyful Noise" also goes to a material fact in the case—namely, whether "Joyful Noise" was widely disseminated. And given defendants' representation at the hearing that Myspace is "mostly defunct," it does not appear that plaintiffs would be able to obtain this information from any other source. The Court also finds that admitting these screenshots will serve the purposes of the Federal Rules of Evidence and the interests of justice. The Court thus finds that, to the extent that the play counts are even hearsay, the requirements of Rule 807 are satisfied.

In accordance with the foregoing, the Court **DENIES** defendants' Motion *in limine* No. 7.

### F.    Defendants' Motion *in limine* No. 8 (Dkt. 344, filed on June 12, 2019)

Defendants seek to exclude a screenshot produced from the Internet Archive of a "Joyful Noise" music video on YouTube. Dkt. 344 at 4. Defendants argue that the document was produced in an untimely manner after discovery closed. Id. Defendants assert that five different YouTube videos were authenticated and produced during discovery and that plaintiffs did not disclose this sixth YouTube video until June 11, 2019. Id. at 5-6. Defendants argue that the document lacks foundation, has not been authenticated, is hearsay, and will severely prejudice defendants. Id. at 7-8.

Plaintiffs oppose defendants' motion by arguing that the document was produced on May 13, 2016, more than two years before the discovery cut-off date of May 25, 2018. Dkt. 375 at 16; Dkt. 267. Furthermore, plaintiffs explain that both parties were acting under a mutual misapprehension with respect to the identity of the official YouTube video for Joyful Noise. Id. at 17. As a result, the fifth video identified in the Joint YouTube Stipulation was mistakenly identified as the official video. Id. Defendants contest this fact and argue that plaintiffs have not pursued any discovery on this video, that this video was not included in the parties' "YouTube stipulated facts," nor did plaintiffs proffer this particular video in their opposition to defendants' motion for summary judgment. Dkt. 387-1 at 5.

It appears that defendants were made aware of the official YouTube video as early as May 13, 2016, and that defendants were not prevented from conducting any discovery

EXHIBIT  D
PAGE  47

Case 2:15-cv-05642-CAS-JC   Document 489   Filed 10/11/19   Page 48 of 94   Page ID
Case 2:15-cv-05642-CAS-JC   Document 403 Filed 07/05/19   Page 18 of 40   Page ID #:7242
#:6329

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**              **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

in relation to this screenshot.  Id.  Plaintiffs contend that they can and will properly authenticate the screenshot and the underlying YouTube video through affidavits, judicial notice, and live testimony.  Id. at 19.  In addition, plaintiffs argue that the screenshot is not hearsay since it is not a statement at all and to the extent it is offered for the truth of the matter asserted, the screenshot is admissible under the residual exception to the hearsay rule.  Id. at 20.

The Court is not persuaded by defendants' contention that they will be unfairly prejudiced if this screenshot is admitted into evidence.   Moreover, it appears that plaintiffs will be able to lay a proper foundation for this evidence at trial.  Accordingly, the Court **DENIES** defendants' Motion *in limine* No. 8, without prejudice to their raising objections as to the foundation of this evidence at trial.

### G.    Defendants' Motion *in limine* No. 10 (Dkt. 346, filed on June 12, 2019)

Defendants seek to exclude evidence that Perry performed the song "I Kissed a Girl" at the 51st GRAMMY awards on February 8, 2009, which is the same year that *Our World Redeemed* was nominated in the category of Best Rock or Rap Gospel Album. Dkt. 346 at 4.  Defendants contend that evidence about this performance is irrelevant to the issue of widespread dissemination because "Joyful Noise" was not played or mentioned during the award show and would result in the jury speculating that Katy Perry would have learned about "Joyful Noise" during the award show.  Id. at 5, 7. Plaintiffs respond that they "do not intend, and have never indicated that they intend, to try this case by proving that Katy Perry attended or performed at the GRAMMYs.  Dkt. 375 at 29.  At the hearing, counsel for plaintiffs confirmed that they will not introduce evidence about Perry's performance at the 51st GRAMMY awards.  Accordingly, the Court **DENIES** as moot defendants' motion to exclude evidence about Perry's performance at the 51st GRAMMY awards.

Defendants also seek to exclude evidence that Gottwald was a voting member of the GRAMMYs the same year that *Our World Redeemed* was nominated for an award. Dkt. 346 at 4.  Plaintiffs contend that this fact is relevant because "the GRAMMYs served as a third-party intermediary linking Plaintiffs and Defendants" and thus "the jury may impute access where there is evidence that a third party (the GRAMMYs) with whom both Plaintiffs and Defendants were dealing, concurrently, had possession of 'Joyful Noise.'"  Dkt. 375 at 26.  According to defendants, plaintiffs had previously indicated that they were not going to offer any evidence or argument regarding access

EXHIBIT D
PAGE 48

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**    **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

through a chain of events. See Dkt. 346-1, Ex. 2 at 14. Plaintiffs also do not dispute defendants' representation that "Joyful Noise" was not made available to GRAMMY voters.

As it appears that plaintiffs have no evidence demonstrating that Gottwald would have been able to access the song because he was a voting member of the GRAMMYs, the Court finds that plaintiffs' chain of events theory is too speculative to establish a reasonable possibility of access and would confuse and distract the jury. Accordingly, plaintiffs may not introduce evidence of the fact that Gottwald was a voting member of the GRAMMYs for the purpose of demonstrating that he could have obtained access to "Joyful Noise" through the GRAMMYs.

At the hearing, however, plaintiffs explained that Gottwald's status of a voting member was also relevant to access because he received a list of nominated songs, which included "Joyful Noise," and therefore may have had more of an incentive to seek out "Joyful Noise" on the internet. Although the Court is not persuaded that Gottwald's status of a voting member of the GRAMMYs is relevant to establishing that "Joyful Noise" was widely disseminated, this fact may become relevant in the event Gottwald testifies that he did not know, or have any reason to know, about plaintiffs, "Joyful Noise," or *Our World Redeemed*. Accordingly, the Court reserves ruling on whether evidence about Gottwald's status as a voting member of the GRAMMYs may be received in rebuttal until after Gottwald has testified at trial.

### H.    Defendants' Motion *in limine* No. 11 (Dkt. 347, filed on June 12, 2019)

Defendants seek an order precluding any argument or evidence regarding defendants' general wealth or the relative wealth of plaintiffs and defendants. Dkt. 347 at 4. Defendants acknowledge that plaintiffs have agreed that such evidence is not relevant and that they generally do not intend to offer such evidence, however, defendants claim that plaintiffs will not agree to a "blanket prohibition" on such argument or evidence. Id. Accordingly, defendants argue that evidence of defendants' financial condition should be precluded because it is irrelevant, unduly prejudicial, and may improperly influence the jury. Id. at 5-6.

Plaintiffs respond that they have no present intention of offering evidence of defendants' general wealth, however, plaintiffs seek permission to comment on defendants' industry experience and success as context for evidence offered in support of

EXHIBIT D
PAGE 49

Case 2:15-cv-05642-CAS-JC   Document 489   Filed 10/11/19   Page 50 of 94   Page ID
#:8387
Case 2:15-cv-05642-CAS-JC   Document 403   Filed 07/05/19   Page 20 of 40   Page ID #:7244

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

plaintiffs' claim. Dkt. 375 at 29. Plaintiffs contend that it is "unavoidable" for jurors to perceive defendants' wealth. Id. at 30. Plaintiffs intend to present evidence on the profits of "Dark Horse" in support of their claim for damages, and plaintiffs claim that these profits will necessarily reveal the defendants' vast financial resources. Id.

At the hearing, plaintiffs explained that defendants' success is relevant to establishing that defendants listen to a wide variety of music. It appears, however, that plaintiffs can elicit the fact that defendants listen to a wide variety of music without suggesting that the defendants are successful or wealthy. The Court thus finds that defendants' wealth or success are irrelevant to plaintiffs' claim for copyright infringement, except possibly the question of damages. Accordingly, the Court **GRANTS** Defendants' Motion *in limine* No. 11.

## IV.    PLAINTIFFS' DAUBERT MOTIONS

### A.    Plaintiffs' Daubert Motion No. 1 (Dkt. 330, filed on June 12, 2019)

Defendants' musicology expert, Lawrence Ferrara, is expected to provide testimony at trial regarding: (1) the quantitative value of the amount of the music at issue in the "Dark Horse" composition; (2) the qualitative value of the music at issue within the context of the overall musical and lyrical "Dark Horse" composition; and (3) his expert opinion that the value of music at issue in the "Dark Horse" composition should be less than 3.6%. Dkt. 330-1 ("Ferrara Report") at 1, 4. Plaintiffs seek to exclude this testimony on the grounds that it is outside his area of qualifications and relies on a novel, untested, and untestable method of percentage valuation. Dkt. 330 at 1.

Under Federal Rule of Evidence 702, a trial judge acts as a "gatekeeper" to ensure that expert testimony "is not only relevant, but reliable." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993). A trial judge executes this "gatekeeper" role regardless of whether expert testimony is scientific or non-scientific, with the purpose of ensuring that "an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co., v. Carmichael, 526 U.S. 137, 152 (1999).

The Supreme Court in Daubert enumerated a list of factors useful for evaluating the reliability of an expert. These factors include: (1) whether the theory or technique can be (and has been) tested, (2) whether the theory or technique has been subjected to peer

EXHIBIT  D
PAGE  50

Case 2:15-cv-05642-CAS-JC   Document 489   Filed 10/11/19   Page 51 of 94   Page ID
Case 2:15-cv-05642-CAS-JC   Document 403   Filed 07/05/19   Page 21 of 40   Page ID #:7245
#:10383

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**               **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

review and publication, (3) whether there is a known or potential error rate, and (4) whether the theory or technique is generally accepted in the relevant community. Daubert, 509 U.S. at 587-89.  When an expert's testimony is not scientific or technical, the reliability of that testimony need not be based on "a particular methodology or technical framework," but instead can be found reliable based on the expert's knowledge and experience alone.  Hangarter v. Provident Life & Acc. Ins. Co., 373 F.3d 998, 1018 (9th Cir. 2004).

In addition to evaluating an expert's reliability, a trial court must also determine whether an expert has "appropriate qualifications – i.e., some special knowledge, skill, experience, training or education."  United States v. Hankey, 203 F.3d 1160, 1168 (9th Cir. 2000).  "Rule 702 contemplates a broad conception of expert qualifications." Hangarter, 373 F.3d at 1015.

Ferrara is a professor of music at New York University's Steinhardt School and has taught music for over 40 years.  Ferrara Report at 1; Dkt. No. 374-1 ("Ferrara Decl.") at 8.  He has taught courses in music theory and analysis, music history, music criticism, and aesthetic inquiry.  Ferrara Decl. at 14–15.  He has written and published books and articles regarding music analysis and methodologies in music research.  Id. at 14.  He has also provided deposition or trial testimony in eight cases in the last five years.  Id. at 16. Based on this experience, defendants claim that Ferrara is qualified to testify on the musicological value of the music at issue in "Dark Horse."  Dkt. 374 at 12.

Plaintiffs argue that Ferrara's method for calculating the monetary value of the allegedly infringed portions of "Dark Horse" is "novel, untested, and untestable."  Dkt. 330 at 6.  Defendants respond that Ferrara will not opine on the monetary value of the ostinato from "Joyful Noise" that was allegedly infringed[1] but rather on the musical significance of that ostinato to the "Dark Horse" composition as a whole.  Dkt. 374 at 2. Plaintiffs appear to be incorrect in their assertion that Ferrara "purports to quantify the monetary value of plaintiff's song." Dkt. 330 at 5.  Ferrara's report is cabined to his opinion about the musicological value of the allegedly infringed portions of "Dark

---

[1]      For ease of reference, and not as a comment on the merits of the case, the Court hereinafter uses the phrase "'Joyful Noise' ostinato" to refer to the ostinato that was allegedly copied from "Joyful Noise."

EXHIBIT  D
PAGE  51

Case 2:15-cv-05642-CAS-JC   Document 489   Filed 10/11/19   Page 52 of 94   Page ID
#:10383
Case 2:15-cv-05642-CAS-JC   Document 403   Filed 07/05/19   Page 22 of 40   Page ID #:7246

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

Horse"—he offers no opinion about the monetary value of the ostinato from "Joyful Noise."

According to Ferrara's report, the proper method for assessing the quantitative value of the "Joyful Noise" ostinato is to identify the total number of notes heads in "Dark Horse," subtract out duplicative "Sub Bass" parts, and then identify all note heads in all iterations and variations of the ostinato at issue. Dkt. 374 at 9. Based on this method, Ferrara concluded that the "Joyful Noise" ostinato constitutes 7.2% of the total note heads in the "Dark Horse" composition. Id. Ferrara also explains that because the lyrics make up 50% of the "Dark Horse" composition, the "Joyful Noise" ostinato is 3.6% of the combined music and lyrics of the "Dark Horse" composition. Id. Ferrara also provides a qualitative value assessment of the "Joyful Noise" ostinato in "Dark Horse," opining that the "Joyful Noise" ostinato is not as important as another ostinato in "Dark Horse" and concluding that the value of the "Joyful Noise" ostinato is less than 3.6% of the "Dark Horse" composition. Id. at 10-11.

The Court finds that Ferrara is qualified to provide an opinion about the quantitative and qualitative musicological value of the music at issue in "Dark Horse." Ferrara has the necessary qualifications to engage in the aforementioned analysis, and despite plaintiffs' contention otherwise, Ferrara's methods have been peer-reviewed. Dkt. 374 at 14–15. Ferrara's analysis, which is based on his expertise and peer-reviewed methodology, may be helpful to the factfinder in determining the musicological value of the "Joyful Noise" ostinato in the "Dark Horse" composition.

Plaintiffs cite Fahmy v. Jay-Z, No: 2:07-cv-05715-CAS, 2015 WL 5680299 (C.D. Cal. Sept. 24, 2015), in support of their argument that Ferrara may not offer precise percentages of the purported monetary value of the music at issue. In Fahmy, the defendants' expert, Dr. Jason King, had estimated that "use of [plaintiff's song] contributed between .004% and .03% to defendants' total concert revenues . . . and between .0071% and .0714% to the success for the album." Id. at *3. The Court noted that Dr. King had not explained how those numbers were calculated and determined that Dr. King "may not testify regarding the percentage values by which he quantifies these factors" because his method "has not been peer-reviewed by any journal nor has he established that it is generally accepted in the relevant field." Id. at *4. The Court also found that "given the complexity of apportioning profits in a copyright infringement case, it may be misleading to present the jury with numbers as remarkably precise as those in King's report." Id. at 5. The Court finds that the troubling aspects of King's testimony in

EXHIBIT  D
PAGE  52

Case 2:15-cv-05642-CAS-JC  Document 489  Filed 10/11/19  Page 53 of 94  Page ID
#:9334
Case 2:15-cv-05642-CAS-JC  Document 403  Filed 07/05/19  Page 23 of 40  Page ID #:7247

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

<u>Fahmy</u> will not be presented by Ferrara's proposed testimony. First, Ferrara will not opine on the monetary value of the "Joyful Noise" ostinato. Second, unlike King, Ferrara does disclose an objective, replicable, and peer-reviewed method for calculating his percentages. And finally, unlike the percentages offered by King, Ferrara's opinion that the value of the "Joyful Noise" ostinato is less than 3.6% is not "remarkably precise." Thus, the Court is not persuaded that Ferrara's opinion must be excluded for the same reasons that King's opinion was excluded in the <u>Fahmy</u> case.

Accordingly, the Court **DENIES** plaintiffs' motion to exclude Ferrara's expert testimony.

### B.     Plaintiffs' Daubert Motion No. 2 (Dkt. 331, filed on June 12, 2019)

Plaintiffs seek to exclude or limit the testimony of defendants' expert Jason King regarding the impact of various factors, including the "Joyful Noise" ostinato, to the commercial success of "Dark Horse" and the *PRISM* album. Dkt. 331. Plaintiffs contend that King's conclusions are prejudicial and the product of unreliable methods. <u>Id.</u> at 1.

King is an associate professor at the Clive Davis Institute of Recorded Music at New York University. Dkt. 331-1 ("King Report") at 4. As a professor at the Clive Davis Institute, King has helped to establish a curriculum focusing on the study of hip-hop, pop, electronic music, and the recording industry. <u>Id.</u> He has taught courses on the labeling and branding of celebrities, including a course that used articles on Katy Perry. <u>Id.</u> at 6. He has also worked and consulted with numerous individuals and companies in the music recording industry. <u>Id.</u> at 9. Based on this experience, King claims to have specialized knowledge regarding the historical, cultural, and social aspects of popular music, celebrity, and stardom. <u>Id.</u> at 4. He also claims to have expertise in the business of marketing and branding, particularly as it relates to music. <u>Id.</u>

Defendants intend to present King's testimony regarding the various factors that have contributed to the commercial success of "Dark Horse" and *PRISM*. In his expert report, King asserts that it is possible to retroactively deconstruct the factors that contributed to the success of a particular song or sound recording. <u>Id.</u> at 8. From evidence such as marketing campaigns, chart successes, and historical and journalistic discussions of a song, King identifies and prioritizes the factors that contributed to the song's success. <u>Id.</u> at 8.

EXHIBIT D
PAGE 53

Case 2:15-cv-05642-CAS-JC   Document 489   Filed 10/11/19   Page 54 of 94   Page ID
#:10589
Case 2:15-cv-05642-CAS-JC   Document 403-1   Filed 07/05/19   Page 24 of 40   Page ID #:7248

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

In applying his method to "Dark Horse," King identifies eight factors that drove the success of the song and prioritizes them as either primary, secondary, or tertiary factors. Id. at 17-25. The factors include: (1) celebrity star power/branding, (2) marketing of the single, (3) hook, (4) vocal performances, (5) instrumental elements other than the "Joyful Noise" ostinato, (6) production/arrangement, (7) lyrics, and (8) the "Joyful Noise" ostinato. Id. at 25. King explains in his report that "Dark Horse" is "pop fusion" music compromised of multiple styles and that one of the contributing factors to the success of "Dark Horse" was the novelty of its offbeat fusion of sounds. Id. at 3. He also explains that PepsiCo, Inc. promoted *PRISM* through a social media campaign which led to significant radio play prior to a label push. Id. at 4. Accordingly, King concludes that celebrity star power/branding and marketing of the single were the most significant factors contributing to the success of "Dark Horse." Id. at 25. While King admits that the "Joyful Noise" ostinato is one of the elements that helped drive the success of "Dark Horse," he concludes that the ostinato is a tertiary factor at best and contributed only a "small, insignificant percentage" to the success of "Dark Horse" and an even smaller amount to the success of *PRISM*. Id. at 25, 29.

Plaintiffs argue that King's conclusion that the "Joyful Noise" ostinato contributed a "small, insignificant percentage" to the success of "Dark Horse" and *PRISM* should be excluded because his conclusion attempts to quantify the significance of that ostinato through an "unsupportable and misleading mathematical approach." Dkt. 331 at 5. In support of their argument, plaintiffs cite to the Fahmy case mentioned above in which King was precluded from testifying on precise percentage ranges to quantify the importance of factors he deemed relevant. Id. at 3–4. Here, plaintiffs contend that King is attempting to testify in a similar manner and there is no possible way to test the validity of a "small, insignificant percentage." Id.

As a preliminary matter, the Court finds that King is qualified to testify regarding cultural and social factors that contribute to the success of musicians and their songs. The Court also finds that King is qualified to engage in a comparative discussion of these factors, including a discussion of the relative influence of defendants' use of "Joyful Noise" in comparison to other factors contributing to the success of "Dark Horse." As explained above, King has extensive academic and professional credentials with regard to the music industry and the convergence of pop culture and music. Based on his experience and scholarship, King bears the necessary qualifications to engage in the type of comparative discussion set forth in his expert report. See also Ty, Inc. v. Publications

EXHIBIT D
PAGE 54

Case 2:15-cv-05642-CAS-JC   Document 489   Filed 10/11/19   Page 55 of 94   Page ID
Case 2:15-cv-05642-CAS-JC   Document 403   Filed 07/05/19   Page 25 of 40   Page ID #:7249
#:10336

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

Int'l Ltd., 2004 WL 2359250, at *6 (N.D. Ill. Oct. 19, 2004) ("[A]n expert informed by observation and experience might determine the relative importance of the infringing content to the value of the infringing work as a whole.").

The Court also finds that King's basic methodology for evaluating the relative importance of various factors to the success of "Dark Horse" may be considered by the jury. King's opinion is informed by a lengthy and detailed analysis of relevant sources such as chart successes, marketing materials, and journalistic and historical evidence of the success of defendants and "Dark Horse." In addition, King's methodology stems from the apparently reasonable assumption that the success of a given work of music can best be understood within its cultural and historical context. Accordingly, the Court finds that King's qualitative analysis, which is based on his demonstrated expertise, may be helpful to the factfinder in determining the relative importance of the "Joyful Noise" ostinato to the success of "Dark Horse." See Daubert, 509 U.S. at 597 (expert testimony may be admissible if it "rests on a reliable foundation and is relevant to the task at hand.").

Furthermore, the Court finds that plaintiffs have not presented a persuasive reason to preclude King from testifying that the "Joyful Noise" ostinato contributed a "small, insignificant percentage" to the success of "Dark Horse." Unlike King's opinion in Fahmy, his opinions here are not expressed as remarkably precise percentages. King's use of the phrase "small, insignificant percentage" is merely another way of saying "very insignificant." The Court does not find that this terminology carries a substantial risk that a jury will attach undue weight to the description provided.

Accordingly, the Court **DENIES** plaintiffs' motion to exclude King's expert testimony.

### C. Plaintiffs' Daubert Motion No. 3 (Dkt. 334, filed on June 12, 2019)

Plaintiffs move to exclude the testimony of defendants' expert, Charles Diamond. Dkt. 334. Diamond is an economist and is offered as a rebuttal witness for plaintiffs' expert witness, Michael Einhorn. In his rebuttal report, Diamond concludes that Einhorn's methodology of calculating Capitol Records' net profits from "Dark Horse" is contrary to the fundamental principles of the economics discipline. Dkt. 334-1. Plaintiffs contend that Diamond, as a labor and employment economist, does not have the

EXHIBIT D
PAGE 55

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

appropriate qualifications and specialized knowledge to opine on economic, accounting, and financial matters in the music industry.  Dkt. 334 at 4.  Plaintiffs further contend that his report relies on undisclosed and unreliable information that defendants never produced to plaintiffs, and that, by critiquing Einhorn's failure to include costs when calculating "Dark Horse's" profits, Diamond impermissibly provided an alternative damages model instead of merely contradicting, impeaching, or defusing Einhorn's testimony.  Id. at 8.

### i.    Diamond's Qualifications

The Court has reviewed Diamond's qualifications and rebuttal reports and finds that Diamond is qualified to testify on whether Einhorn's methodology is contrary to fundamental principles of the economics discipline.  Diamond is trained as an economist and bears the necessary qualifications to engage in the type of analysis set forth in his rebuttal report.  See Dkt. 334-1 ("Diamond Report") at 2 (listing his qualifications, including his training in economics, his experience in preparing economic and statistical assessments for litigation, and his publications in academic journals).  Diamond does not offer any testimony that requires knowledge or expertise specific to the music industry; thus, his purported lack of experience in that industry does not disqualify him from providing an opinion about the purported flaws in Einhorn's economic analysis.

### ii.    Appropriate Rebuttal Testimony

The Court finds that Diamond's critique of Einhorn's failure to include costs when calculating profits is appropriate rebuttal testimony and is not, as plaintiff contends, an alternative damages model.

### iii.    Undisclosed Assumptions

In forming his rebuttal opinion, Diamond relied on the following assumptions:

- "I am informed that, for an album by a superstar artist like Katy Perry, 18 months is a conservative estimate, since the album cycle is often much longer."
- "[I] am informed that, because Prism spawned so many hit singles and four years transpired between Prism and Perry's next album, the active promotion

Case 2:15-cv-05642-CAS-JC  Document 489  Filed 10/11/19  Page 57 of 94  Page ID
#:10338
Case 2:15-cv-05642-CAS-JC  Document 403-1 Filed 07/05/19  Page 27 of 40  Page ID #:7251

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

cycle likely lasted longer than 18 months, which makes UMG's conservative approach even more reasonable."

- "I am informed that these companies are separately incorporated, have their own employees, and their own expenses."
- "[I] am informed that this entity charges UMG-affiliated entities a *lower rate* than it charges third-party entities."
- "[I] am informed that Universal Music Logistics charges the same rates to UMG-related entities that it charges to unrelated third parties."
- "I am informed that the UMG-related entities who provide those services charge the same rate to other UMG-related entities that they charge to unrelated third parties."

Dkt. 334-1 at 12–13. Plaintiffs seek to exclude Diamond's opinions that rely on these assumptions because the evidence underlying those assumptions were never disclosed to them. Defendants respond that it "is standard for experts to be provided with factual assumptions, and the specific assumptions which [d]efendants provided to Diamond will be established at trial through the testimony of a representative of Capitol Records." Dkt. 377 at 6.

At the hearing, plaintiffs indicated that they had an opportunity to depose Diamond but elected not to do so. To the extent plaintiffs wanted to obtain information about the basis of the assumptions in Diamond's rebuttal report, they could have sought additional discovery or deposed Diamond. Accordingly, the Court is not persuaded that the nondisclosure of the facts underlying these assumptions is a basis for excluding Diamond's testimony at trial.

In accordance with the foregoing, the Court **DENIES** plaintiff's motion to exclude Diamond's expert testimony.

### D.    Plaintiffs' Daubert Motion Nos. 4, 5 (Dkt. 336, 335 filed on June 12, 2019)

Plaintiffs seek to exclude testimony of defendants' experts Zachary St. Martin and Bill Rosenblatt. Dkt. 336 at 1; Dkt. 335 at 1. St. Martin and Rosenblatt are being offered to provide background information about Myspace and YouTube and to opine that it is unreasonable for a person to have viewed "Joyful Noise" on either Myspace or YouTube

EXHIBIT D
PAGE 57

Case 2:15-cv-05642-CAS-JC   Document 489   Filed 10/11/19   Page 58 of 94   Page ID
#:10339
Case 2:15-cv-05642-CAS-JC   Document 403   Filed 07/05/19   Page 28 of 40   Page ID #:7252

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

without prior knowledge of the artist or song or without affirmative action. Plaintiffs contend that both St. Martin and Rosenblatt lack requisite training and professional experience to provide testimony on website engineering, functionality, or the individual internet websites. Id. at 2. Plaintiffs also criticize the experts' methodologies as being unreliable, amateur, untested, and non-reviewed. Id. Lastly, plaintiffs claim that St. Martin's and Rosenblatt's testimonies are irrelevant and will confuse the jury. Id.

### i.     Zachary St. Martin

St. Martin graduated from Tulane University School of Law and has been a practicing attorney since 2001. Dkt. 336, Ex. A ("St. Martin Report") ¶ 2. In 2006, he became the Director of Business and Legal Affairs for Fox Interactive Media, which at the time was the parent company of Myspace. Id. ¶ 3. During his time at Fox, he worked on legal matters related to Myspace services. Id. ¶ 4. He continued to work for Myspace until April 2015, at which time he left to work for Sony Pictures. Id. ¶ 3. Through his work with Myspace, St. Martin contends that he became familiar with the product. Id. ¶ 4. He also was a "heavy user" of Myspace for over a decade. Id. ¶ 5.

St. Martin is expected to provide testimony on how users generally viewed or listened to content on Myspace between 2008 and 2013 and the circumstances under which an individual could possibly have come upon "Joyful Noise" as it appeared on Myspace. Dkt. 336 at 1. St. Martin opines that a person who had no knowledge of "Joyful Noise" could not have reasonably come across "Joyful Noise" on Myspace without affirmative action. St. Martin Report ¶ 9. According to St. Martin, a person would need to have known of the song or its artists in order to find the song on Myspace. Id. St. Martin is also expected to provide testimony on how each "play" does not mean that: (1) a person listened to the song; (2) it was played in its entirety; or (3) a person initiated the song as opposed to a bot. Id. at 1, 2. St. Martin's opinions are based in part on screenshots of Myspace pages using the Internet Archive between 2008 and 2013. Id.

### ii.     Bill Rosenblatt

Rosenblatt is the president and founder of GiantSteps Media Technology Strategies, a consulting firm specializing in the media and content technology industries. Dkt. 379 at 7. Rosenblatt has a degree in electrical engineering and computer science from Princeton University and a degree in computer and information science from the

Case 2:15-cv-05642-CAS-JC   Document 489   Filed 10/11/19   Page 59 of 94   Page ID
#:10340
Case 2:15-cv-05642-CAS-JC   Document 403   Filed 07/05/19   Page 29 of 40   Page ID #:7253

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**               **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

University of Massachusetts.  Id.  In the past 19 years, Rosenblatt has consulted multiple clients, including music companies, on technology and business issues related to copyright law.  Id. at 7-8.  Rosenblatt became "intimately familiar with YouTube's features, content, and user base, including YouTube's features for accessing content" when he worked with a digital music start-up that was in competition with YouTube and when he was retained by YouTube for a legal matter.  Id. at 9-10.  He has also testified on behalf of other media and music companies in other cases about YouTube.  Id. at 10.

Rosenblatt is expected to provide testimony on how users generally viewed or listened to content on YouTube between 2008 and 2013 and the circumstances under which an individual could have come upon a YouTube video of "Joyful Noise."  Dkt. 335 at 1.  Specifically, Rosenblatt opines that: (1) view counts are not evidence that a specific person took an affirmative step to watch a video; (2) view counts are not inherently reliable indicators of the number of people who actually watched the video; and (3) the view counts of "Joyful Noise" are not significant in the context of the larger YouTube universe.  Id.  Rosenblatt provides information about the large number of YouTube music videos and views between 2008 and 2013 and concludes that the view count of "Joyful Noise" is extremely small when considering the size of the YouTube universe.  Id. Ex. A. Rosenblatt also opines that "it was not reasonably possible for any individual to have come upon 'Joyful Noise' on YouTube so as to hear it without having taken specific affirmative action."  Id.

   **iii.      Discussion**

   As a preliminary matter, the Court finds that St. Martin and Rosenblatt possess relevant experience and knowledge of digital media and online platforms and are qualified to provide background information about the functionality of Myspace and YouTube between 2008 and 2013 and to opine about what one would have had to do to access "Joyful Noise" on those websites.  St. Martin and Rosenblatt may also opine about whether the play or view counts of "Joyful Noise" on Myspace and YouTube accurately reflect how many people actually heard the song and whether those view or play counts are significant relative to the number of views and plays garnered by other songs on YouTube and Myspace.  However, St. Martin and Rosenblatt may not opine about the ultimate probability or likelihood that an individual would have accessed "Joyful Noise." Such testimony invades the province of the jury as factfinder as it is for the jury to decide

Case 2:15-cv-05642-CAS-JC  Document 489  Filed 10/11/19  Page 60 of 94  Page ID
Case 2:15-cv-05642-CAS-JC  Document 403-1 Filed 07/05/19  Page 30 of 40  Page ID #:7254
#:5349

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

whether the defendants in this case had a reasonable opportunity to hear "Joyful Noise" through Myspace or YouTube.

In accordance with the foregoing, plaintiffs' motion to exclude the testimony of St. Martin and Rosenblatt is **GRANTED** in part and **DENIED** in part. St. Martin and Rosenblatt may offer testimony consistent with what was disclosed in their expert reports, but they may not opine about the ultimate probability or likelihood that an individual would have accessed "Joyful Noise."

## V.    DEFENDANTS' DAUBERT MOTIONS

### A.    Defendants' Daubert Motion No. 1 (Dkt. 348, filed on June 12, 2019)

Defendants seek to exclude the portions of Todd Decker's expert testimony that rely upon evidence that is unauthenticated, irrelevant, or not timely disclosed. Dkt. 348. Specifically, defendants seek to exclude testimony regarding: (1) four YouTube videos of unknown origin containing "mash-ups" that purport to compare the sound recordings of "Dark Horse" and "Joyful Noise"; (2) lay-listener impressions regarding the alleged similarities between the two sound recordings; (3) the similarity of texture in both "Joyful Noise" and "Dark Horse"; and (4) any opinion or analysis provided in a declaration prepared by Decker and served on May 28, 2019. Id. at 2.

#### i.    Mash-Up Videos

In his rebuttal report, Decker states that "several individuals have constructed comparative audio analyses of the ostinatos at issue in the form of YouTube mashups" and opines that "[t]hese acts of popular musicology express the perception of contemporary listeners . . . that the two tracks at issue bear a relationship that can only be described as . . . 'Dark Horse,' taking or copying highly characteristic material from the earlier track, 'Joyful Noise.'" Dkt. 388-1 at 45. Defendants argue that Decker should be precluded from relying on "mash-up" YouTube videos to compare the sound recordings of "Dark Horse" and "Joyful Noise" because those videos cannot be verified or authenticated, and because the creators of those videos may have changed the songs to make them sound more similar. Dkt. 348 at 12.

Plaintiffs rely on Williams v. Gaye, 895 F.3d 1106 (9th Cir. 2018), in which the Ninth Circuit held that the playing of mash-up audio recordings in connection with the

EXHIBIT D
PAGE 60

Case 2:15-cv-05642-CAS-JC   Document 489   Filed 10/11/19   Page 61 of 94   Page ID
Case 2:15-cv-05642-CAS-JC   Document 403   Filed 07/05/19   Page 31 of 40   Page ID #:7255
#:8342

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|----------|--------------------------|------|--------------|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

musicologist's testimony was not an abuse of discretion.  Id. at 1126–27.  However, the expert in Williams created the mash-up recordings herself.  Id. at 1128.  Here, Decker admitted in his deposition that he did not know the "full extent of alterations" made to the sound recordings in the mash-up videos and that it was "possible" that those users "made additional alterations to the sound recordings of which [he] is not aware[.]"  Dkt. 348-1 at 136–137.  Here, in the absence of testimony from the creators of those videos as to the manner by which they altered the sound recordings, the Court finds that these videos cannot be properly authenticated under Federal Rule of Evidence 901 ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.").  And although an expert witness may rely on inadmissible data in support of his opinion, he may only do so if experts in his field would reasonably rely on that data in forming their opinion or if their prejudice value outweighs their prejudicial effect.  Fed. R. Evid. 703.  Here, there is no evidence in the record demonstrating that musicologists rely on similar YouTube videos when engaging in a comparative objective analysis of two songs.  And in the absence of testimony establishing how the sound recordings were altered, these videos appear to have no probative value as they may not be an accurate representation of either sound recording.

Accordingly, the Court finds that Decker may not rely on, nor may plaintiffs play, the mash-up YouTube videos during trial.

**ii.      Lay-Listener Opinions**

In determining whether two works are "substantially similar" for the purposes of copyright infringement, the Ninth Circuit "employ[s] a two-part analysis: an objective extrinsic test and a subjective intrinsic test."  Swirsky v. Carey, 376 F.3d 841, 845 (9th Cir. 2004).  "The extrinsic test considers whether two works share a similarity of ideas and expression as measured by external, objective criteria [and] . . . requires analytical dissection of a work and expert testimony."  Id. (internal quotations omitted).  "[T]he subjective question of whether works are intrinsically similar"—i.e., the subjective intrinsic test—"must be left to the jury."  Id.

In his rebuttal report, Decker opines that "Ferrara's insistence that musical notation and transcription are essential to this case is a false assertion designed to distract the ear from the very evident, clearly audible relationship between these two ostinatos, a relationship heard by many and demonstrated with skill from severally mutually

EXHIBIT  D
PAGE  61

Case 2:15-cv-05642-CAS-JC   Document 489   Filed 10/11/19   Page 62 of 94   Page ID
#:10349
Case 2:15-cv-05642-CAS-JC   Document 403   Filed 07/05/19   Page 32 of 40   Page ID #:7256

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

reinforcing strategies in social media." Dkt. 338-1 at 48.  Defendants contend that
Decker's reliance on lay-listener opinions should be precluded because the opinions
improperly invade the jury's role in conducting the subjective intrinsic test.  Dkt. 348 at
14.  The Court agrees that this testimony invades the province of the jury and precludes
Decker from testifying about how the two songs are perceived by lay listeners.  See
Cottrill v. Spears, 2003 WL 21223846, at *8 (E.D. Pa. May 2003) (excluding expert
testimony about how the songs "are aurally perceived by the lay listener" because it went
to the intrinsic test, not the extrinsic test, and thus, "regardless of its reliability, does not
aid the trier of fact in the detailed examination of the elements of the two works required
under the extrinsic test").

      **iii.**      **Decker's Untimely Declaration**

     Defendants seek to exclude testimony based on a declaration authored by Decker
and served on May 28, 2019—four days after the close of expert discovery and twenty-
five days after the deadline for rebuttal reports.  Dkt. 348 at 16–17.  Plaintiffs respond
that Decker's May 28, 2019 declaration will not be the subject of his testimony at trial.
Dkt. 367 at 7.  However, at the hearing, defendants noted that Einhorn's testimony relies
in part on the substance of Decker's untimely declaration.  The Court is not persuaded
that defendants will be prejudiced by Einhorn's reliance on this declaration at trial.  The
substance of the declaration is straightforward—Decker merely states that the total
playing time of "Dark Horse" is 212 seconds and that the "Joyful Noise" ostinato played
a total of 95 seconds during "Dark Horse."  Dkt. 348-2 at 82.  To the extent defendants
disagree with that statement, it would not be unduly burdensome for their musicologist
expert to conduct a similar analysis to determine how many seconds the "Joyful Noise"
ostinato plays during "Dark Horse."

      **iv.**      **Testimony on "Texture"**

     Defendants argue that Decker's opinion about the textural similarities of the two
songs in his rebuttal report should be excluded because he did not disclose that opinion in
his opening report.  Plaintiffs respond that this testimony is appropriate to rebut Ferrara's
opinion about the similarity of the ostinatos to prior art.  According to Decker, Ferrara's
prior art exhibits do not "demonstrate anything close to the spare textural qualities . . .
that are shared by the melodic ostinatos at issue . . ."  Dkt. 348-2.  Plaintiffs also note that
defendants questioned Decker about this opinion in his January 2018 deposition.  Dkt.
368 at 7.  It appears that Decker's opinion about the textural similarities of the two songs

Case 2:15-cv-05642-CAS-JC   Document 489   Filed 10/11/19   Page 63 of 94   Page ID
#:10344
Case 2:15-cv-05642-CAS-JC   Document 403   Filed 07/05/19   Page 33 of 40   Page ID #:7257

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

qualifies as proper rebuttal to Ferrara's report and that, in any event, defendants would not be prejudiced by the introduction of this testimony because they have had an opportunity to question Decker about this particular opinion.

In light of the foregoing, the Court **GRANTS** in part and **DENIES** in part defendants' motion to exclude portions of Decker's expert testimony. Decker is precluded from relying on mash-up YouTube videos or offering his opinion about how lay-listeners have perceived similarities between the two songs. Decker may, however, provide testimony about the textural similarities between the two songs to rebut Ferrara's opinion about the similarity of the ostinatos to prior art.

### B.    Defendants' Daubert Motion No. 2 (Dkt. 351, filed on June 12, 2019)

Defendants move to exclude the testimony of plaintiffs' damages expert, Michael Einhorn, at trial. Dkt. 351. According to defendants, Einhorn plans to provide the following "improper" opinions at trial: (1) that defendants' net profit is equivalent to their gross revenue; (2) that actual damages should amount to 15% of the publishing income earned by "Dark Horse" because plaintiffs could have hypothetically negotiated ownership of 15% of the copyright in the "Dark Horse" composition; (3) that the song "Dark Horse" was critically important in selling *PRISM*; and (4) that Ferrara's methodology of assessing the musicological value of the "Joyful Noise" ostinato is flawed. Id. Defendants also move to exclude testimony related to Einhorn's allegedly untimely "updated" expert reports. Id.

As a preliminary matter, the Court finds that Einhorn is qualified to provide an opinion on plaintiffs' damages and defendants' profits resulting from the alleged infringement. Einhorn has worked as a professional economist since receiving a Ph.D in economics in 1981. Dkt. 351-1, Ex. C ("Einhorn Report") ¶ 2.1. He has testified as an expert at depositions and trials in several cases, including cases involving the valuation of intellectual property owned by musicians and record labels. Id. ¶ 2.3. And as explained below, the Court finds that defendants' concerns with Einhorn's testimony go to its weight and not its admissibility. Any purported flaws in his methodology or the evidence he relied upon in reaching his opinion are matters for cross-examination and argument.

EXHIBIT  D
PAGE  63

Case 2:15-cv-05642-CAS-JC   Document 489   Filed 10/11/19   Page 64 of 94   Page ID
#:10349
Case 2:15-cv-05642-CAS-JC   Document 403   Filed 07/05/19   Page 34 of 40   Page ID #:7258

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                'O'

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

### i.    Einhorn's Calculation of Net Profit

Defendants contend that Einhorn's opinions regarding profits should be excluded because he failed to subtract defendants' costs from their revenue. Dkt. 351 at 15. It appears that Einhorn decided not to incorporate defendants' costs in his analysis because he was not satisfied that defendants had proven the amounts of their deductible expenses. Id. The Court is not persuaded that this purported flaw in Einhorn's methodology renders his opinion inadmissible under Daubert. Einhorn's failure to consider costs when calculating profits goes to the weight of his testimony and can be addressed on cross-examination.

### ii.    Einhorn's Calculation of Actual Damages

Einhorn opines that "a reasonable outcome for copyright negotiations for rights in 'Joyful Noise' would have granted to Plaintiffs a 15 percent share of copyright royalties . . . in the musical composition 'Dark Horse.'" Einhorn Report ¶ 5.12 He explained his methodology as follows: "There are now five listed primary writers of "Dark Horse"— "Katy Perry, Max Martin, Dr. Luke, Cirkut, and Sarah. Together, the five primary writers owned a copyright share of 90 percent of the work. Each of the five writers then received an equal royalty share of 18 percent." Id. ¶ 5.13. Relying on Decker's opinion about the significance of the "Joyful Noise" ostinato in "Dark Horse," Einhorn opines that the "taking of the ['Joyful Noise'] ostinato would then represent a sixth contribution to 'Dark Horse' that must be assigned some share of royalties paid." Id. ¶ 5.15. Einhorn concludes that "[i]f each of [the] five primary shares are equally valued at eighteen percent of royalties paid, each of [the six shares] would then be valued at fifteen percent." Id. ¶ 5.16. Thus, according to Einhorn, plaintiffs could have reasonably negotiated for 15% of the copyright royalties of "Dark Horse." Id. ¶ 5.17. Based on this figure, Einhorn estimates how much plaintiffs would have earned as a licensing payment for their share of "Dark Horse." Id. ¶ 5.19.

Defendants contend that this opinion should be precluded because it: "(a) fail[s] to consider additional, highly relevant evidence of prior transactions; (b) misstate[s] the evidence in the record; and (c) [is] entirely outside of his professed knowledge and expertise as an economist." Dkt. 351 at 21. Defendants point out Einhorn's failure to consider the fact that Chike Ojukwu testified in his deposition that he licensed the beat, which includes the "Joyful Noise" ostinato, to Marcus Gray for $300. Id. at 22.

EXHIBIT  D
PAGE  64

Case 2:15-cv-05642-CAS-JC   Document 489   Filed 10/11/19   Page 65 of 94   Page ID
#:10340
Case 2:15-cv-05642-CAS-JC   Document 403   Filed 07/05/19   Page 35 of 40   Page ID #:7259

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                                            **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

Plaintiffs respond that Einhorn's opinion is based on an application of cooperative game theory and that game theory is often used by economists to establish values. Dkt. 367 at 8. Plaintiffs also contend that Einhorn rightfully chose the negotiations among the writers of "Dark Horse" as the correct benchmark to determine plaintiffs' hypothetical share of "Dark Horse's" copyright royalties.

The Court is not persuaded that the purported flaws in Einhorn's analysis merit excluding his testimony under <u>Daubert</u>. These issues go to the weight of his testimony and can be addressed on cross-examination.

### iii.       Apportionment

Einhorn's calculations of revenues related to "Dark Horse" includes all revenue from the *PRISM* album, without any apportionment. Einhorn Report ¶ 4.5. Einhorn opines "that 'Dark Horse' was one of the most important commercial songs on the album *PRISM*, if not the most important. Given the demonstrated importance of the song 'Dark Horse' to generating sales of the *PRISM* album, any method of apportioning album or concert revenues to 'Dark Horse' by simply dividing total sales by the total number of tracks or songs is not an economic means of valuing its relative worth." <u>Id.</u> ¶ 9.26. Defendants seek to exclude Einhorn's opinion regarding apportionment on the grounds that the purported rationales for his opinion are unreliable. Dkt. 351 at 24. For example, defendants critique Einhorn's opinion that the appearance of "Dark Horse" in concert tours means that the song was important to the success of *PRISM* because every other song from *PRISM* was also played during the concert tour. <u>Id.</u> The Court also finds that these issues go to the weight of Einhorn's testimony rather than its admissibility and can be addressed on cross-examination.

### iv.       Einhorn's Rebuttal Report

Einhorn submitted a rebuttal report addressing Ferrara's musicological value assessment of the "Joyful Noise" ostinato in "Dark Horse." <u>See</u> Dkt. 351-1, Ex. 7 ("Einhorn Rebuttal"). In this report, Einhorn opines that "Ferrara presents no evidence that his technique or related valuations has ever appeared in any peer-reviewed paper or formed the foundation for fees for licensing of music samples in the music business." <u>Id.</u> ¶ 4.8. Ferrara only opines that 3.6% of "Dark Horse" is based on the "Joyful Noise" ostinato. He does not argue that this percentage reflects the monetary value of the

EXHIBIT D
PAGE 65

Case 2:15-cv-05642-CAS-JC   Document 489   Filed 10/11/19   Page 66 of 94   Page ID
Case 2:15-cv-05642-CAS-JC   Document 403   Filed 07/05/19   Page 36 of 40   Page ID #:7260
#:7034

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

"Joyful Noise" ostinato to "Dark Horse" in the event of an infringement.  Einhorn's
rebuttal report attempts to rebut a theory that has not been advanced by Ferrara and is
therefore irrelevant and confusing.  Accordingly, the Court excludes Einhorn's rebuttal
testimony.

### v.  Einhorn's "Updated" Reports

Defendants represent that Einhorn submitted two "updated" reports after the
relevant deadlines and seek to exclude any testimony based on those reports because,
defendants "were frustrated or denied the ability to rebut Einhorn's constantly changing
and new opinions." Dkt. 351 at 30.  One example of what defendants contend are
"multiple substantive changes" is a sentence that Einhorn changed from, "The results of
other negotiations involving similar situations *are* useful benchmarks to inform this
analysis," to, "The results of other negotiations involving similar situations *can
sometimes be* useful benchmarks to inform this analysis." Id. at 28.

Plaintiffs respond that Einhorn's updated opinions merely supplemented or
corrected his expert reports pursuant to Federal Rule 26(e)(2). Dkt. 367 at 12.  Plaintiffs
also note that the updated reports were served on or before May 28, 2019—19 days
before the cut-off for filing pre-trial disclosures under Federal Rule 26(a)(3).

Under Rule 37(c)(1), opinions not included in expert reports pursuant to Rule 26(a)
must be excluded unless the lack of disclosure was "substantially justified" or
"harmless."  However, Rule 26(a)(2)(B) "does not limit an expert's testimony simply to
reading his report[.] The rule contemplates that the expert will supplement, elaborate
upon, and explain his report in his oral testimony." Hall v. City of Fairfield, 2012 WL
1155666, at *4 (E.D. Cal. Apr. 5, 2012).  Here, the Court finds that the nature of
Einhorn's "updates" are fairly within the scope of supplementing, elaborating upon, or
explaining his report in oral testimony and sees no reason to exclude these updates.

Accordingly, the Court **DENIES** in part and **GRANTS** in part defendants' motion
to exclude Einhorn's testimony.

---

EXHIBIT  D
PAGE  66

Case 2:15-cv-05642-CAS-JC   Document 489   Filed 10/11/19   Page 67 of 94   Page ID
Case 2:15-cv-05642-CAS-JC   Document 403   Filed 07/05/19   Page 37 of 40   Page ID #:7261
#:7348

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

## VI.   ISSUES RAISED AT THE HEARING

### A.   Defendants' Arguments Regarding the Validity of Plaintiffs' Copyright

At the hearing, plaintiffs sought to preclude defendants from arguing that
plaintiffs' copyright of the "Joyful Noise" composition is invalid.  At the hearing,
defendants represented that they plan to argue that the copyright is invalid because
plaintiffs did not disclose that "Joyful Noise" is based on a derivative work in their
application for a copyright and because the beat that contains the ostinato at issue is not
an original work.  Plaintiffs responded that this was the first time they learned that
defendants were pursuing these specific contentions.  Plaintiffs argued that defendants
should be precluded from making these arguments at trial because defendants had
responded to plaintiffs' interrogatory about this defense with objections and never
amended their answer to disclose the facts that they are now relying on to argue that the
copyright is invalid.  Plaintiffs, however, indicated that they did not move to compel a
further response from defendants.  Accordingly, the Court finds that there is no basis for
excluding these arguments because defendants were never compelled to provide a further
response.

However, defendants do not set forth sufficient details about their contentions as to
why the copyright is invalid in either the proposed pretrial conference order or their
memorandum of contentions of fact and law.  Defendants merely state in the proposed
pretrial conference order that they will contest plaintiffs' position that it owns a valid
copyright in "Joyful Noise." Dkt. 390 at 4.  And defendants' memorandum of
contentions of fact and law explains only that defendants "will present evidence that
Plaintiffs' copyright registration does not satisfy this standard due to its inclusion of
materially false or inaccurate information related to the nature, ownership, or chain of
title to the work." Dkt. 385 at 29.  Defendants are thus directed to amend the pretrial
conference order by July 10, 2019 to reflect their contentions and any evidence upon
which they intend to rely.

### B.   Perry's Concert Revenues

At the hearing, counsel for plaintiffs noted that the Court had stayed discovery on
Perry's concert revenues until after the determination of liability and inquired whether
they would have an opportunity to pursue this discovery before damages phase of the
trial.  In its order on defendants' motion for partial summary judgment, the Court

EXHIBIT  D
PAGE  67

Case 2:15-cv-05642-CAS-JC   Document 489   Filed 10/11/19   Page 68 of 94   Page ID
Case 2:15-cv-05642-CAS-JC   Document 403   Filed 07/05/19   Page 38 of 40   Page ID #:7262
#:7349

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|----------|-------------------------|------|--------------|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

determined that any licensed performances by defendants of "Dark Horse" could not have infringed plaintiffs' performance rights in "Joyful Noise" and that profits from those performances are therefore not relevant.  Dkt. 246 at 16.  However, the Court acknowledged the possibility that certain revenues from "infringements that allegedly preceded the performances themselves" could be the basis of a damages award.  Id. Plaintiffs, however, appear to misunderstand this order and contend that if liability is found in their favor, they would have a "right to recover a portion of those revenues reflecting the performance of the infringing song[.]"  Dkt. 383 at 9.  The Court's summary judgment order forecloses plaintiffs' contention that they may be entitled to concert revenues reflecting the performance of "Dark Horse."  To the extent plaintiffs still intend to seek a portion of the concert revenues, plaintiffs are directed to identify by July 10, 2019 what, other than the performances, would give rise to concert revenues attributable to defendants' alleged infringement of "Joyful Noise."

**V.    CONCLUSION**

In accordance with the foregoing, the Court **DENIES** plaintiffs' Motion *in limine* No. 1.

The Court **DENIES** plaintiffs' Motion *in limine* No. 2.

The Court **DENIES** plaintiffs' Motion *in limine* No. 3.

The Court **GRANTS** defendants' Motion *in limine* No. 1.

The Court **GRANTS** defendants' Motion *in limine* No. 2.

The Court **DENIES** defendants' Motions *in limine* Nos. 4, 5, and 6, without prejudice to their raising objections as to the foundation of Marcus Gray's or Crystal Gray's testimony on plaintiffs' concert performances.

The Court **GRANTS** in part and **DENIES** in part defendants' Motions *in limine* Nos. 3 and 9.  Plaintiffs may offer testimony about the record label's refusal to provide sales records as rebuttal evidence.  Plaintiffs may not introduce the Billboard charts for the purpose of establishing that "Joyful Noise or *Our World Redeemed* experienced commercial success or a high number of sales, but they may offer the Billboard charts for the purpose of showing that "Joyful Noise" and *Our World Redeemed* appeared on those charts and to show that those works were relatively popular in the Christian music

EXHIBIT  D
PAGE  68

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|---|---|---|---|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

market.  The Court will exclude the summary charts created by Billboard for purposes of this litigation unless plaintiffs obtain all the underlying business records from Billboard before trial.  The Court reserves ruling on the admissibility of any weekly Billboard charts until plaintiffs have had an opportunity to lay a foundation for that evidence.

The Court **DENIES** defendants' Motion *in limine* No. 7.

The Court **DENIES** defendants' Motion *in limine* No. 8, without prejudice to their raising objections as to the foundation of this evidence at trial.

The Court **GRANTS** in part and **DENIES** in part defendants' Motion *in limine* No. 10.  Plaintiffs may not introduce evidence about Gottwald's status as a voting member of the GRAMMYs to demonstrate that Gottwald accessed "Joyful Noise" through the GRAMMYs.  The Court reserves ruling on whether evidence about Gottwald's status as a voting member of the GRAMMYs may be received in rebuttal until after Gottwald has testified at trial.

The Court **GRANTS** Defendants' Motion *in limine* No. 11.

The Court **DENIES** plaintiffs' motion to exclude Ferrara's expert testimony.

The Court **DENIES** plaintiffs' motion to exclude King's expert testimony.

The Court **DENIES** plaintiffs' motion to exclude Diamond's expert testimony.

In accordance with the foregoing, plaintiffs' motion to exclude the testimony of St. Martin and Rosenblatt is **GRANTED** in part and **DENIED** in part.  St. Martin and Rosenblatt may offer testimony on how users interacted with Myspace and YouTube between 2008 and 2013 and opine about what one would have had to do to access "Joyful Noise" on those websites.  St. Martin and Rosenblatt, however, may not opine about the ultimate probability or likelihood that an individual would have accessed "Joyful Noise."

The Court **GRANTS** in part and **DENIES** in part defendants' motion to exclude portions of Decker's expert testimony.  Decker is precluded from relying on mash-up YouTube videos or offering his opinion about how lay-listeners have perceived similarities between the two songs.  Decker may, however, provide testimony about the textural similarities between the two songs to rebut Ferrara's opinion about the similarity of the ostinatos to prior art.

EXHIBIT D
PAGE 69

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:15-cv-05642-CAS (JCx) | Date | July 5, 2019 |
|----------|-------------------------|------|--------------|
| Title | MARCUS GRAY ET AL. V. KATY PERRY ET AL. | | |

The Court **DENIES** in part and **GRANTS** in part defendants' motion to exclude Einhorn's testimony.

Defendants are directed to amend the pretrial conference order by July 10, 2019 to reflect their specific contentions as to why the plaintiffs' copyright is invalid and any evidence upon which they intend to rely to support this defense.

To the extent plaintiffs still intend to seek a portion of the concert revenues, plaintiffs are directed to identify by July 10, 2019 what, other than the performances, would give rise to concert revenues attributable to defendants' alleged infringement of "Joyful Noise."

IT IS SO ORDERED.

|  | 00 | 00 |
|--|----|----|
| Initials of Preparer | CMJ | |

# EXHIBIT E

REDACTED

FILED
CLERK, U.S. DISTRICT COURT

JUL 26 2019

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                    WESTERN DIVISION

11

MARCUS GRAY; ET AL.,                  )   Case No. 2:15-CV-05642-CAS(JCx)
12                                      )
                                        )   SPECIAL VERDICT
13                                      )
              Plaintiff,                )
14                                      )
vs.                                     )
15                                      )
KATY PERRY; ET AL.,                     )
16                                      )
                                        )
17            Defendants.               )
                                        )
18 _____      )

19

20

21

22

23

24

25

26

27

28

We the jury in the above-entitled action answer the questions submitted to us as follows:

**Question 1**:

Did Plaintiffs prove, by a preponderance of the evidence, that "Dark Horse" contains material from the musical composition "Joyful Noise" that is both original to Plaintiffs and not commonplace expression?

Yes ___✓___   No _____

If you answer Question 1 "No," turn to the last page, sign and return this verdict.

If you answer Question 1 "Yes," then proceed to answer Question 2.

## **Question 2**:

Did Plaintiffs prove, by a preponderance of the evidence, that the "Joyful Noise" and "Dark Horse" musical compositions are objectively substantially similar in copyrightable protectable expression?

Yes _✓_ No _____

If you answer Question 2 "No," turn to the last page, sign and return this verdict.

If you answer Question 2 "Yes," then proceed to answer Question 3.

**Question 3**:

Did Plaintiffs prove, by a preponderance of the evidence, that an ordinary, reasonable person would find that the total concept and feel of the "Joyful Noise" and "Dark Horse" musical compositions are substantially similar in copyrightable protectable expression?

Yes ✓    No ____

If you answer Question 3 "No," turn to the last page, sign and return this verdict.

If you answer Question 3 "Yes," then proceed to answer Question 4.

**Question 4**:

      Did Plaintiffs prove, by a preponderance of the evidence, that "Joyful Noise" was widely disseminated such that Defendants had a reasonable opportunity to hear "Joyful Noise" prior to creating "Dark Horse"?

      Yes  ✓    No ____

      If you answer Question 4 "No," turn to the last page, sign and return this verdict.

      If you answer Question 4 "Yes," then proceed to answer Question 5.

**Question 5**:

Did Defendants prove, by a preponderance of the evidence, that they did not avail themselves of the opportunity to hear "Joyful Noise" prior to creating "Dark Horse"?

Yes _____    No _✓_

If you answer Question 5 "Yes," turn to the last page, sign and return this verdict.

If you answer Question 5 "No," then proceed to answer Question 6.

**Question 6**:

Did Defendants prove, by a preponderance of the evidence, that Defendants independently created "Dark Horse"?

Yes _____    No ✓_____

If you answer Question 6 "Yes," turn to the last page, sign and return this verdict.

If you answer Question 6 "No," then proceed to answer Question 7.

**Question 7**:

Did Plaintiffs prove, by a preponderance of the evidence, that the inclusion of the instrumental music (i.e., the beat) created by Mr. Ojukwu in "Joyful Noise" is part of a joint work of authorship with the other Plaintiffs?

Yes ___✓___   No _____

If you answer Question 7 "No," turn to the last page, sign and return this verdict.

If you answer Question 7 "Yes," then proceed to answer Question 8.

**Question 8**:

As to each defendant listed below, do you find by a preponderance of the evidence that he/she/it copied "Joyful Noise" or distributed "Dark Horse"?

| | |
|---|---|
| Capitol Records, LLC | Yes ✓  No ____ |
| Jordan Houston | Yes ✓  No ____ |
| Lukasz Gottwald | Yes ✓  No ____ |
| Katheryn Elizabeth Hudson | Yes ✓  No ____ |
| Sarah Theresa Hudson | Yes ✓  No ____ |
| Karl Martin Sandberg | Yes ✓  No ____ |
| Henry Russell Walter | Yes ✓  No ____ |
| WB Music Corp. | Yes ✓  No ____ |
| Kobalt Music Publishing America, Inc. | Yes ✓  No ____ |
| Kasz Money, Inc. | Yes ✓  No ____ |

After answering "Yes" or "No" for each Defendant, turn the page, sign and return this verdict.

The foreperson should now sign this verdict form.

Dated: July 19, 2019

After this verdict form has been signed, notify the clerk that you are ready to present your verdict in the courtroom.

# EXHIBIT F

REDACTED

FILED
CLERK, U.S. DISTRICT COURT

AUG - 1 2019

CENTRAL DISTRICT OF CALIFORNIA
BY                                    DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MARCUS GRAY; ET AL., | Case No. 2:15-CV-05642-CAS(JCx) |
| Plaintiff, | SPECIAL VERDICT |
| vs. | (PHASE II) |
| KATY PERRY; ET AL., | |
| Defendants. | |

We the jury in the above-entitled action answer the questions submitted to us as follows:

## Question 1:

Did Plaintiffs show that there is a causal nexus between the infringement and Defendants' gross revenue.

Yes ✓      No ____

If you answer Question 1 "No," turn to the last page, sign and return this verdict.

If you answer Question 1 "Yes," then proceed to answer Question 2.

**Question 2**:

The parties have stipulated to the following amounts of gross revenues and costs of certain defendants:

| Defendant | Gross Revenues | Costs |
|---|---|---|
| Jordan Houston | $631,448.47 | $119,343.76 in legal and accounting fees |
| Karl Martin Sandberg | $1,265,083.02 | $126,508.30 in management commissions; $12,650.83 in legal, administrative, and accounting fees |
| Lukasz Gottwald | $347,797.89 | $245.17 in production expenses; $77,334.57 in professional fees |
| Kasz Money, Inc. | $1,079,218.20 | $760.75 in production expenses; $239,969.46 in professional fees |
| Henry Walter | $826,704.07 | $124,005.61 in management fees; $41,335.20 in legal fees; $41,335.20 in business management fees |
| Sarah Hudson | $670,852.47 | $15,837.50 in legal fees; $32,750.75 in legal fees; $33,542.63 in business management fees |
| Kathryn Elizabeth Hudson | $3,260,782.07 | $489,117.31 in management commissions; $163,039.10 in legal fees; $163,039.10 in business management and accounting fees |

| | Net Income | |
|---|---|---|
| Kobalt Music Publishing America, Inc. | $132,476.14 | |
| WB Music Corp. | $130,450.36 | |

EXHIBIT F
PAGE 85

Please state the amount of net profits, if any, earned by each Defendant from "Dark Horse":

    Jordan Houston: $ _512,104.71_

    Karl Martin Sandberg: $ _1,125,923.89_

    Lukasz Gottwald: $ _270,218.15_

    Kasz Money, Inc.: $ _838,487.99_

    Henry Russell Walter: $ _620,028.06_

    Sarah Hudson: $ _588,721.59_

    Katheryn Elizabeth Hudson: $ _2,445,586.56_

    Kobalt Music Publishing America, Inc.: $ _132,476.14_

    WB Music Corp.: $ _130,450.36_

    Capitol Records, LLC: $ _5,732,938.00_

Please proceed to Question 3.

**Question 3**:

What percentage, if any, of the net profits earned by Defendants from "Dark Horse" is attributable to the use of the "Joyful Noise" musical composition in ostinato #2 in "Dark Horse" as opposed to other factors?

Answer: % _22.5_

Please proceed to Question 4.

**Question 4**:

Please multiply the amount of net profits earned by each Defendant identified in Question 2 by the percentage you determined in Question 3, and state the resulting amount for each Defendant below.

Jordan Houston: $ 115,223.56

Karl Martin Sandberg: $ 253,332.88

Lukasz Gottwald: $ 60,799.08

Kasz Money, Inc.: $ 188,659.80

Henry Russell Walter: $ 139,506.31

Sarah Hudson: $ 132,462.36

Katheryn Elizabeth Hudson: $ 550,256.98

Kobalt Music Publishing America, Inc.: $ 29,807.13

WB Music Corp.: $ 29,351.33

Capitol Records, LLC: $ 1,289,911.05

Please continue to the next page.

The foreperson should now sign this verdict form.

Dated: _August 1, 2019_

After this verdict form has been signed, notify the clerk that you are ready to present your verdict in the courtroom.

# EXHIBIT G

CHRISTINE LEPERA (admitted *pro hac vice*)
   ctl@msk.com
JEFFREY M. MOVIT (admitted *pro hac vice*)
   jmm@msk.com
JACOB D. ALBERTSON (admitted *pro hac vice*)
   j1a@msk.com
MITCHELL SILBERBERG & KNUPP LLP
437 Madison Avenue, 25th Floor
New York, New York 10022
Telephone: (212) 509-3900
Facsimile: (212) 509-7239

AARON M. WAIS (SBN 250671)
   amw@msk.com
GABRIELLA A. NOURAFCHAN (SBN 301594)
   gan@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, California  90067
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

GREENBERG TRAURIG, LLP
VINCENT H. CHIEFFO (SBN 49069)
Email:  ChieffoV@gtlaw.com
ALANA C. SROUR (SBN 271905)
Email:  SrourA@gtlaw.com
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
Telephone:  310-586-7700
Facsimile:  310-586-7800

Attorneys for Defendants-Appellants

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| MARCUS GRAY (p/k/a FLAME), et al., | CASE NO. 2:15-cv-05642-CAS (JCx) |
| Plaintiffs, | Honorable Christina A. Snyder |
| v. | **REPRESENTATION STATEMENT** |
| KATHERYN ELIZABETH HUDSON (p/k/a KATY PERRY), et al., | Filed:   July 1, 2014<br>Trial:   July 17, 2019 |
| Defendants. | |

Mitchell
Silberberg &
Knupp LLP

11522975.1

EXHIBIT  G
PAGE  91

1       **TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF**

2  **RECORD:**

3       Pursuant to Ninth Circuit Rule 3-2, Defendants-Appellants Capitol Records

4  LLC, Jordan Houston, Lukasz Gottwald, Sarah Theresa Hudson, Karl Martin

5  Sandberg, Henry Russell Walter, Katheryn Elizabeth Hudson, WB Music Corp.,

6  Kobalt Music Publishing America, Inc., and Kasz Money, Inc. provide the

7  following disclosure:

8

9       Defendants-Appellants Capitol Records LLC, Jordan Houston, Lukasz

10  Gottwald, Sarah Theresa Hudson, Karl Martin Sandberg, Henry Russell Walter,

11  WB Music Corp., Kobalt Music Publishing America, Inc., and Kasz Money, Inc.

12  are represented by the following counsel:

13       CHRISTINE LEPERA (admitted *pro hac vice*)

14         ctl@msk.com
       JEFFREY M. MOVIT (admitted *pro hac vice*)

15         jmm@msk.com

16       JACOB D. ALBERTSON (admitted *pro hac vice*)
         j1a@msk.com

17       MITCHELL SILBERBERG & KNUPP LLP

18       437 Madison Avenue, 25th Floor
       New York, New York 10022

19       Telephone: (212) 509-3900

20       Facsimile: (212) 509-7239

21

22       AARON M. WAIS (SBN 250671)
         amw@msk.com

23       GABRIELLA A. NOURAFCHAN (SBN 301594)

24         gan@msk.com
       MITCHELL SILBERBERG & KNUPP LLP

25       2049 Century Park East, 18th Floor

26       Los Angeles, California  90067
       Telephone: (310) 312-2000

27       Facsimile: (310) 312-3100

28

Mitchell
Silberberg &
Knupp LLP

11522975.1

2

**REPRESENTATION STATEMENT**

EXHIBIT G
PAGE 92

1    Defendant-Appellant Katheryn Elizabeth Hudson is represented by the

2  following counsel:

3       GREENBERG TRAURIG, LLP
4       VINCENT H. CHIEFFO (SBN 49069)
        Email:  ChieffoV@gtlaw.com
5       ALANA C. SROUR (SBN 271905)
        Email:  SrourA@gtlaw.com
6       1840 Century Park East, Suite 1900
7       Los Angeles, CA 90067-2121
        Telephone:  310-586-7700
8       Facsimile:  310-586-7800
9

10

11      Plaintiffs-Appellees Marcus Gray, Emanuel Lambert, and Chike Ojukwu are

12  represented by the following counsel:

13      Michael A. Kahn (*pro hac vice*)
14      Kahn@capessokol.com
        Drey A. Cooley (*pro hac vice*)
15      Cooley@capessokol.com
16      Capes Sokol Goodman Sarachan
        PC 7701 Forsyth Blvd., 12th Floor
17      St. Louis, MO 63105
18      Telephone:  (314) 721-7701

19      Eric F. Kayira (*pro hac vice*)
20      eric.kayira@kayiralaw.com
        Kayira Law, LLC
21      200 S. Hanley Road, Suite 208
22      Clayton, Missouri 63105
        Telephone:  (314) 899-9381
23

24      Daniel R. Blakey (SBN 143748)
25      blakey@capessokol.com
        CAPES SOKOL
26      3601 Oak Avenue
27      Manhattan Beach, CA 90266

28

Mitchell
Silberberg &
Knupp LLP

11522975.1

**REPRESENTATION STATEMENT**

EXHIBIT G
PAGE 93

1   DATED: October 11, 2019     MITCHELL SILBERBERG & KNUPP LLP

2

3                          By:  /s/ Aaron M. Wais

                              Aaron M. Wais (SBN 250671)

4                         Attorneys for Defendants-Appellants Capitol Records, LLC, Jordan Houston, Lukasz Gottwald, Sarah Theresa Hudson, Karl Martin Sandberg, Henry Russell Walter, WB Music Corp., Kobalt Music Publishing America, Inc., and Kasz Money, Inc.

5

6

7

8   DATED: October 11, 2019     GREENBERG TRAURIG, LLP

9

10                        By:  /s/ Vincent H. Chieffo

                           Vincent H. Chieffo (SBN 49069)

11                     Attorneys for Defendant-Appellant Katheryn Elizabeth Hudson p/k/a Katy Perry

12

13

14          **ATTESTATION REGARDING SIGNATURES**

15      Pursuant to Local Civil Rule 5-4.3.4(a)(2)(i), I hereby attest that all Parties,

16  on whose behalf this filing is jointly submitted, concur in this filing's content and

17  have authorized its filing.

18   DATED: October 11, 2019      /s/ Aaron M. Wais

19                           Aaron M. Wais

20

21

22

23

24

25

26

27

28

4

**REPRESENTATION STATEMENT**

EXHIBIT G
PAGE 94