1  CHRISTINE LEPERA (admitted *pro hac vice*)
     ctl@msk.com
2  JEFFREY M. MOVIT (admitted *pro hac vice*)
     jmm@msk.com
3  JACOB D. ALBERTSON (admitted *pro hac vice*)
     j1a@msk.com
4  MITCHELL SILBERBERG & KNUPP LLP
   437 Madison Avenue, 25th Floor
5  New York, New York 10022
   Telephone: (212) 509-3900
6  Facsimile: (212) 509-7239

7  AARON M. WAIS (SBN 250671)
     amw@msk.com
8  GABRIELLA A. NOURAFCHAN (SBN 301594)
     gan@msk.com
9  MITCHELL SILBERBERG & KNUPP LLP
   2049 Century Park East, 18th Floor
10 Los Angeles, California  90067
   Telephone: (310) 312-2000
11 Facsimile: (310) 312-3100

12 GREENBERG TRAURIG, LLP
   VINCENT H. CHIEFFO (SBN 49069)
13 Email:  ChieffoV@gtlaw.com
   ALANA C. SROUR (SBN 271905)
14 Email:  SrourA@gtlaw.com
   1840 Century Park East, Suite 1900
15 Los Angeles, CA 90067-2121
   Telephone:  310-586-7700
16 Facsimile:  310-586-7800

17 Attorneys for Defendants

18                UNITED STATES DISTRICT COURT

19      CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| 20  MARCUS GRAY (p/k/a FLAME), et al., | CASE NO. 2:15-cv-05642-CAS (JCx) |
| 21          Plaintiffs, | Honorable Christina A. Snyder |
| 22          v. | **DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, ALTERNATIVELY, FOR A NEW TRIAL** |
| 23  KATHERYN ELIZABETH HUDSON (p/k/a KATY PERRY), et al., | |
| 24 | |
| 25          Defendants. | Date:     January 27, 2020 |
| 26 | Time:    10:00 a.m. |
| 27 | Ctrm:    8D—8th Fl., First Street |
| 28 | Filed:    July 1, 2014 |
| | Trial:     July 17, 2019 |

Mitchell
Silberberg &
Knupp LLP

11780345.1

---

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JMOL OR NEW TRIAL**

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ........................................................................................... 10

II.   THE COURT SHOULD ENTER JUDGMENT AS A MATTER OF
      LAW ON PLAINTIFFS' COPYRIGHT INFRINGEMENT CLAIM ......... 11

      A.   Plaintiffs Failed To Refute Defendants' Showing That The
           Extrinsic Test Was Not Satisfied As A Matter of Law ..................... 11

           1.   Plaintiffs' Challenges To The Jury Instructions Lack Merit .... 11

                a.   Plaintiffs Ignore The Court's Proper Jury Instruction
                     To Filter Out And Extract Unprotectable Expression .... 11

                b.   Plaintiffs' Attack On The Court's Jury Instruction On
                     The Thin Copyright Doctrine And The Requisite
                     Proof Of Virtually Identical Copying Must Fail ........... 12

           2.   Plaintiffs Cannot Escape Dr. Decker's Admissions
                Establishing That All Of The Similarities Between "Joyful
                Noise" And "Dark Horse" Are Common ................................. 15

           3.   There Is No Virtually Identical "Combination Of
                Unprotectable Expression," As Dr. Decker Admitted
                Multiple Differences Between The Ostinatos ......................... 19

           4.   The Extrinsic Test And The Thin Copyright Doctrine,
                Properly Applied, Mandate Judgment For Defendants ........... 19

      B.   The Intrinsic Test Also Mandates Judgment For Defendants ............ 20

      C.   Plaintiffs' Opposition Fails To Rebut Defendants' Showing That
           No Sufficient Evidentiary Basis Exists To Support Any Finding
           Of Widespread Dissemination Of "Joyful Noise" ............................. 21

           1.   Plaintiffs Ignore The Evidence Presented At Trial Proving
                That The Views Of "Joyful Noise" On YouTube And
                Myspace Were *De Minimis* In The Context Of Online
                Music ..................................................................................... 22

           2.   No Amount Of Overstatement Can Raise Plaintiffs' Other
                "Dissemination" Evidence To The Level Of Widespread ....... 24

Mitchell
Silberberg &
Knupp LLP

11780345.1

2

3.   Plaintiffs Concede That Defendants Did Not Avail
Themselves Of The Opportunity To Hear "Joyful Noise".......25

D.   Plaintiffs' Inability To Overcome Defendants' Evidence Of
Independent Creation Compels Judgment As A Matter Of Law........25

1.   Walter And Gottwald Were Corroborated And Unrebutted ....26

2.   Plaintiffs' Contention That Walter And Gottwald's
Testimony Should Be Disregarded Is Contrary To Law ..........27

E.   No Legally Sufficient Evidentiary Basis Supports The Jury's
Finding That "Joyful Noise" Is A Joint Work ...................................30

F.   No Legally Sufficient Evidentiary Basis Supports The Jury's
Finding Of Liability Against Multiple Defendants............................31

III.   PLAINTIFFS' OPPOSTION FAILS TO OFFER ANY COUNTER TO
DEFENDANTS' APPORTIONMENT POSITION .....................................33

IV.   PLAINTIFFS MISAPPREHEND THE LAW ON OVERHEAD ...............36

V.   PLAINTIFFS HAVE FAILED TO SHOW THAT, IN THE
ALTERNATIVE, A NEW TRIAL SHOULD NOT BE GRANTED ..........37

A.   Plaintiffs Distort And Unnecessarily Limit The Rule 59 Standard ....37

B.   Plaintiffs Fail To Rebut Defendants' Showing That The Jury's
Verdict Was Against The Clear Weight Of The Evidence.................38

C.   Plaintiffs' Effort To Avoid The Consequences Of Their Counsel's
And Witness' Repeated Misconduct Is Unavailing...........................39

1.   Dr. Decker's Testimony Regarding "Musical Borrowing"
Was Improper And Prejudicial .................................................39

2.   Dr. Decker's Testimony Regarding The Intrinsic Test Was
Improper And Prejudicial .........................................................41

3.   "Striking Similarity" Testimony In Contravention Of The
Court's Order Was Improper And Prejudicial..........................42

4.   Plaintiffs' Counsel's Statements Regarding The Relief
Sought By Plaintiffs Were False And Highly Prejudicial........43

Mitchell
Silberberg &
Knupp LLP

11780345.1

3

1

VI.    CONCLUSION ................................................................................44

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

11780345.1

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JMOL OR NEW TRIAL**

# **TABLE OF AUTHORITIES**

## CASES

*Aalmuhammed v. Lee*,
    202 F.3d 1227 (9th Cir. 2000) .................................................................. 30

*Adobe Sys. Inc. v. Blue Source Grp., Inc.*,
    125 F. Supp. 3d 945 (N.D. Cal. 2015) ..................................................... 32

*Aguilar v. Int'l Longshoremen's Union Local No. 10*,
    966 F.2d 443 (9th Cir. 1992) .................................................................. 40

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ............................................................................... 28

*Angle v. Sky Chief, Inc.*,
    535 F.2d 492 (9th Cir. 1976) .................................................................. 38

*Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*,
    69 F.3d 337 (9th Cir. 1995) .................................................................... 40

*Apple Computer, Inc. v. Microsoft Corp.*,
    35 F.3d 1435 (9th Cir. 1994) ............................................................ 13, 20

*Art Attacks Ink, LLC v. MGA Entm't Inc.*,
    581 F.3d 1138 (9th Cir. 2009) ............................................................... 21

*Burgin v. Lahaye*,
    399 F. App'x 464 (11th Cir. 2010) ......................................................... 27

*Calhoun v. Lillenas Publ'g*,
    298 F.3d 1228 (11th Cir. 2002) ........................................................ 27, 29

*Cones v. Cty. of Los Angeles*,
    2016 WL 7438817 (C.D. Cal. Sept. 28, 2016) ...................................... 41

*Cosmos Jewelry, Ltd. v. Po Sun Hon Co.*,
    2006 WL 5105219 (C.D. Cal. Apr. 5, 2006) ......................................... 29

*Darrell v. Joe Morris Music Co.*,
    113 F.2d 80 (2d Cir. 1940) (per curiam) .............................................. 14

*Erickson v. Blake*,
    839 F. Supp. 2d 1132 (D. Or. 2012) ...................................................... 15

Mitchell
Silberberg &
Knupp LLP

11780345.1

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JMOL OR NEW TRIAL

1
2

# TABLE OF AUTHORITIES

(*continued*)

3
4

*Ets-Hokin v. Skyy Spirits, Inc.*,
   323 F.3d 763 (9th Cir. 2003) ................................................................. 14

5
6

*Experience Hendrix L.L.C. v. Hendrixlicensing.com*,
   762 F.3d 829 (9th Cir. 2014) ................................................................. 37

7
8

*Fahmy v. Live Nation Entm't, Inc.*,
   2015 WL 3617040 (C.D. Cal. June 8, 2015) .......................................... 33

9

*Folkens v. Wyland*,
   2002 WL 1677708 (N.D. Cal. July 22, 2002) .................................. 36, 37

10
11

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,
   772 F.2d 505 (9th Cir. 1985) ................................................................. 36

12
13

*Funky Films, Inc. v. Time Warner Entm't Co., L.P.*,
   462 F.3d 1072 (9th Cir. 2006) ............................................................... 41

14
15

*Gant v. Vanderpool*,
   350 F. App'x 181 (9th Cir. 2009) .......................................................... 40

16
17

*GN Resound A/S v. Callpod, Inc.*,
   2013 WL 1190651 (N.D. Cal. 2013) ...................................................... 24

18
19

*Granite Music Corp. v. United Artists Corp.*,
   532 F.2d 718 (9th Cir. 1976) ........................................................... 18, 25

20

*Hall v. Mortgage Inv'rs Grp.*,
   2011 WL 4374995 (E.D. Cal. Sept. 19, 2011) ....................................... 24

21
22

*Hall v. Swift*,
   2019 WL 6608746 (9th Cir. Dec. 5, 2019) ............................................ 12

23
24

*Hall v. Swift*,
   782 F. App'x 639 (9th Cir. 2019) .......................................................... 12

25
26

*Hunt v. Rios*,
   690 F. App'x 476 (9th Cir. 2017) .......................................................... 44

27
28

*Jerden v. Amstutz*,
   430 F.3d 1231 (9th Cir. 2005) ............................................................... 37

Mitchell
Silberberg &
Knupp LLP

11780345.1

6

1
2

## <u>TABLE OF AUTHORITIES</u>
(*continued*)

3
4

*Kamar Int'l, Inc. v. Russ Berrie & Co.*,
   752 F.2d 1326 (9th Cir. 1984) ................................................................ 36

5
6

*Kaseberg v. Conaco, LLC*,
   260 F. Supp. 3d 1229 (S.D. Cal. 2017) ................................................ 14

7
8

*Landes Const. Co. v. Royal Bank of Canada*,
   833 F.2d 1365 (9th Cir. 1987) ................................................................ 38

9

*Lillie v. ManTech Int'l. Corp.*,
   2019 WL 3387732 (C.D. Cal. July 26, 2019) .................................... 27

10
11

*Marya v. Warner/Chappell Music, Inc.*,
   131 F. Supp. 3d 975 (C.D. Cal. 2015) ................................................ 30

12
13

*Mattel, Inc. v. MGA Entm't, Inc.*,
   616 F. 3d 904 (9th Cir. 2010) ................................................................ 14

14
15

*McEuin v. Crown Equip. Corp.*,
   328 F.3d 1028 (9th Cir. 2003) ................................................................ 27

16
17

*McIntyre v. Old Trapper Smoked Prod., Inc.*,
   1 F.3d 1246 (9th Cir. 1993) ................................................................ 31

18
19

*Medina v. Metro. Interpreters & Translators, Inc.*,
   139 F. Supp. 3d 1170 (S.D. Cal. 2015) ................................................ 41

20

*Mitchell v. Black & Decker (USA) Inc.*,
   6 F. App'x 652 (9th Cir. 2001) ................................................................ 40

21
22

*Morrill v. Stefani*,
   338 F. Supp. 3d 1051 (C.D. Cal. 2018) ................................................ 15

23
24

*Murphy v. City of Long Beach*,
   914 F.2d 183 (9th Cir. 1990) ................................................................ 39

25
26

*Newton v. Diamond*,
   204 F. Supp. 2d 1244 (C.D. Cal. 2002) ............................................ 15

27
28

*Nichols v. Universal Pictures Corp.*,
   45 F.2d 119 (2d Cir. 1930) ................................................................ 14

Mitchell
Silberberg &
Knupp LLP

11780345.1

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JMOL OR NEW TRIAL**

1

2

# **<u>TABLE OF AUTHORITIES</u>**
(*continued*)

3

*Reeves v. Sanderson Plumbing Prods., Inc.*,
    530 U.S. 133 (2000) ....................................................11, 27, 28, 29, 31

4

5

*Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*,
    531 F.3d 962 (9th Cir. 2008) ....................................................... 30

6

7

*Satava v. Lowry*,
    323 F.3d 805 (9th Cir. 2003) .........................................11, 12, 13, 15, 20

8

9

*Settlegoode v. Portland Pub. Sch.*,
    371 F.3d 503 (9th Cir. 2004) ....................................................... 44

10

11

*Silva v. U.S. Bancorp*,
    2011 WL 7096576 (C.D. Cal. Oct. 6, 2011) ...................................... 24

12

13

*Smith v. Jackson*,
    84 F.3d 1213 (9th Cir. 1996) ....................................................... 11

14

15

*StrikePoint Trading, LLC v. Sabolyk*,
    528 F. App'x 731 (9th Cir. 2013)................................................... 37

16

17

*Swirsky v. Carey*,
    376 F.3d 841 (9th Cir. 2004) .............................................11, 13, 19, 20

18

19

*Tennant v. Peoria & Pekin Union Ry.*,
    321 U.S. 29 (1944) ................................................................. 38

20

*Three Boys Music Corp. v. Bolton*,
    212 F.3d 477 (9th Cir. 2000)...............................................20, 27, 29

21

22

*Tortu v. Las Vegas Metro Police Dept.*,
    556 F.3d 1075 (9th Cir. 2009) ...................................................... 38

23

24

*United Nat'l Maintenance, Inc. v. San Diego Convention Ctr. Corp, Inc.*,
    2012 WL 12845620 (S.D. Cal. Sept. 5, 2012) ................................... 31

25

26

*Vollrath Co. v. Sammi Corp.*,
    9 F.3d 1455 (9th Cir. 1993)......................................................... 27

27

28

*Williams v. Gaye*,
    895 F.3d 1106 (9th Cir. 2018) ................................................. 13, 32

Mitchell
Silberberg &
Knupp LLP

11780345.1

8

1

2

# **TABLE OF AUTHORITIES**
*(continued)*

3

**STATUTES**

4

17 U.S.C.
   § 106 ...................................................................................................... 31
   § 501 ............................................................................................... 31, 33

Fed. R. Civ. P.
   12(b)(6) .................................................................................................. 12
   50 ................................................................................................ 11, 21, 37
   59 .......................................................................................................... 37

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

11780345.1

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JMOL OR NEW TRIAL**

## I.      INTRODUCTION[1]

Plaintiffs' Opposition actually provides further support for Defendants' Motion and position that, yes, the jury verdict was indeed a travesty of justice— one borne out of the jury's failure to follow the jury instructions and special verdict forms that were carefully and properly given by the Court. The trial record simply does not support a finding of copyright infringement; Plaintiffs' contention that Defendants' view of this verdict disparages the Court is baseless.

In fact, Defendants' Motion is in total lockstep *with* the Court's instructions, whereas Plaintiffs' submission is not. Plaintiffs sarcastically denigrate the Court's instructions as crafted by Defendants, challenge them as wrong, or ignore them entirely. Plaintiffs also misstate the law on several issues, including on the extrinsic test, ignore large swaths of dispositive, unrebutted evidence, particularly the evidence demonstrating deficiencies of their access proof, and fail to address many of Defendants' arguments. In these ways, Plaintiffs have conceded many of Defendants' positions, while simultaneously revealing that they have no true answers to plug the holes in their evidence.

No amount of rhetoric can alter the evidentiary trial record, or how that record should have been measured under the proper burdens of proof and legal standards for access and substantial similarity consistent with the instructions given. There is only one outcome that comports with the legal standards applied to this trial record[2]: no copyright infringement was proved by Plaintiffs as a matter of law.

---

[1] Defendants' Opening Brief (Dkt. 485, the "Mtn.") defines the capitalized terms used herein.

[2] Plaintiffs' contention that Defendants are simply rehashing their summary judgment arguments is patently incorrect: this motion addresses the *trial evidence*, (and lack thereof), not the record on summary judgment.

Mitchell Silberberg & Knupp LLP

11780345.1

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JMOL OR NEW TRIAL**

## II. THE COURT SHOULD ENTER JUDGMENT AS A MATTER OF LAW ON PLAINTIFFS' COPYRIGHT INFRINGEMENT CLAIM[3]

### A. <u>Plaintiffs Failed To Refute Defendants' Showing That The Extrinsic Test Was Not Satisfied As A Matter of Law</u>

#### 1. Plaintiffs' Challenges To The Jury Instructions Lack Merit

In their Opposition (the "Opp."), Plaintiffs either ignore or challenge the Court's proper jury instructions as to the extrinsic test and the thin copyright doctrine. This is a critical point, as it is tantamount to a concession by Plaintiffs that no reasonable jury following those instructions could have found for them.

##### a. Plaintiffs Ignore The Court's Proper Jury Instruction To Filter Out And Extract Unprotectable Expression

Plaintiffs ignore core elements of the extrinsic test which this Court correctly instructed the jury to follow. Dkt. 441, Jury Instr. 37. The test "requires breaking the [plaintiff's and defendant's] works 'down into their constituent elements'" (*Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004)) and it is then "essential" to **extract** the unprotected material before comparing the two works. *Id.* Plaintiffs fail to acknowledge another key tenet: "common or trite" musical elements are not protected, *Smith v. Jackson*, 84 F.3d 1213, 1216 n.3 (9th Cir. 1996), and must be excluded unless they "are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003); Dkt. 441, Jury Instr. 34. That Plaintiffs seek to avoid the application of these principles is telling, and shows they know their music case falls apart under proper scrutiny.

Showing exactly how desperate Plaintiffs are to prevent such scrutiny by this Court, Plaintiffs seized upon an inapplicable and now superseded holding in the

---

[3] Plaintiffs' effort to challenge Defendants' accurate recitation of the legal standard governing Rule 50(b) motions on the ground that Defendants rely, in part, on cases from outside of the Ninth Circuit is unavailing. Opp., p. 2. There is no conflict between these authorities and the Ninth Circuit, and Plaintiffs' attempt to create an imaginary circuit split or otherwise muddy the standard should be disregarded. Indeed, it is Plaintiffs who misrepresent the legal standard by, among other things, proffering a tortured interpretation of the Supreme Court's decision in *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000). *See infra*, pp. 27-29.

unpublished decision *Hall v. Swift*, 782 F. App'x 639 (9th Cir. 2019) to contend

that this Court is precluded from finding that any musical elements in "Joyful

Noise" are unprotectable. That is simply not the law, and the Ninth Circuit's swift

change of the portion of its decision Plaintiffs cited signals exactly the opposite:

Courts are gatekeepers and there can be no such blanket prohibition.[4]

*Hall* is also procedurally distinguishable. The district court had dismissed a

complaint alleging lyric infringement at the Rule 12(b)(6) stage, after taking

judicial notice of certain third-party works. The Ninth Circuit reversed and

remanded, holding that the judicially noticed materials did not establish that the

plaintiff's lyrics were unoriginal as a matter of law. Here, by contrast, Defendants

are not in any pre-discovery pleading stage, but seek judgment based upon the

**admissions at trial** of Plaintiffs' expert Dr. Decker. The *Hall* decision does not in

any way change the extrinsic test and is completely irrelevant to this motion.

### b. Plaintiffs' Attack On The Court's Jury Instruction On The Thin Copyright Doctrine And The Requisite Proof Of Virtually Identical Copying Must Fail

As this Court recognized by including a "thin copyright" instruction, Dkt.

441, Jury Instr. 34, even if a combination of commonplace elements is entitled to

protection, it receives, at most, a "thin copyright that protects against only virtually

identical copying." *Satava*, 323 F.3d at 812. Clearly cognizant that this doctrine

signals a death knell to their case, Plaintiffs spend substantial portions of their

Opposition attacking the Court's proper thin copyright instruction. Plaintiffs go so

far as to invent a *fictitious* legal rule to try to demote musical compositions to

second class citizenship among copyrighted works, proclaiming that "thin

copyright protection does not apply to musical compositions." Opp., p. 16. There is

no such rule; instead, as this Court already recognized, the limiting doctrine of thin

copyright must be applied to a musical phrase—just like any other type of work—

---

[4] The portions of *Hall* which Plaintiffs rely on were **deleted** from the opinion by
the Ninth Circuit. *See Hall v. Swift*, 2019 WL 6608746 (9th Cir. Dec. 5, 2019).

1    that is comprised of a small number of commonplace and unprotectable elements.

2         Of course, Plaintiffs can provide no citations to appellate authority that

3    stands for their proposition that the thin copyright doctrine does not apply to

4    music. Citing *Williams v. Gaye*, 895 F.3d 1106 (9th Cir. 2018) and *Swirsky v.*

5    *Carey,* 376 F.3d 841 (9th Cir. 2004), Plaintiffs mislead as to their holdings;

6    *Williams* provides no support for Plaintiffs' position,[5] and *Swirsky* directly

7    contradicts it. In *Swirsky*, the Ninth Circuit held "substantial similarity can be

8    found in a combination of elements, even if those elements are individually

9    unprotected." 376 F.3d at 848 (citing *Satava*, 323 F.3d at 811; *Apple Computer,*

10   *Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1445 (9th Cir. 1994)). By citing *Satava* and

11   *Apple Computer*[6]—the seminal Ninth Circuit decisions *enunciating* the limiting

12   thin copyright doctrine—the *Swirsky* court thus embraced it in the music context.

13        Music is entitled to no lesser status than other works when it comes to the

14   application of the thin copyright doctrine, applied in the context in which it was

15   intended. Although creative works such as plays, dolls, photographs, jokes and

16   musical compositions **in their entireties** often may be entitled to broad copyright

17   protection, when the allegedly infringed **portion** of such a work merely constitutes

18   a combination of a small number of commonplace or clichéd elements, that

19   combination is entitled, at most, to a thin copyright. For example, while paintings

20   often may be entitled to broad copyright protection, "[i]f there's only a narrow

21   range of expression (for example, there are only so many ways to paint a red

22   bouncy ball on blank canvas), then copyright protection is 'thin' and a work must

---

23   [5] As Defendants explained, the *Williams* court declined to apply the thin copyright
24   doctrine to an **entire musical composition**. That is an entirely different matter, and
     this holding in no way stands for the proposition that the thin copyright doctrine
     does not apply to a **specific phrase of a musical composition** which is concededly
25   comprised of a combination of a few commonplace elements. Mtn., p. 19 n.8.

26   [6] *Satava*, 323 F.3d at 812 ("Satava's copyright on these original elements (or their
     combination) is 'thin'"); *Apple Computer*, 35 F.3d at 1442 ("considering . . . the
27   limited number of ways that the basic ideas of the Apple GUI can be expressed
     differently, we conclude that only 'thin' protection, against virtually identical
28   copying, is appropriate.").

Mitchell
Silberberg &
Knupp LLP

11780345.1

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JMOL OR NEW TRIAL**

be 'virtually identical' to infringe." *Mattel, Inc. v. MGA Entm't, Inc*., 616 F. 3d 904, 914 (9th Cir. 2010). Similarly, while many photographs may be entitled to a broad copyright, there is only thin copyright protection for advertising photographs of a blue vodka bottle, given the limited range of possible ways to take such a photograph. *Ets-Hokin v. Skyy Spirits, Inc*., 323 F.3d 763, 766 (9th Cir. 2003); *see also Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 121-23 (2d Cir. 1930) (thin copyright for characters and events in a play about a young couple in love with disapproving fathers) (cited in *Ets-Hokin*); *Kaseberg v. Conaco, LLC*, 260 F. Supp. 3d 1229, 1245 (S.D. Cal. 2017) (thin copyright for jokes based on topical subjects).

As the Ninth Circuit explained in holding the expression of a "young, female fashion doll with exaggerated proportions" was only entitled to a thin copyright:

> It's true that there's a broad range of expression for bodies with exaggerated features…But…[d]olls depicting young, fashion-forward females have to have somewhat idealized proportions-which means slightly larger heads, eyes and lips; slightly smaller noses and waists; and slightly longer limbs than those that appear routinely in nature. But these features can be exaggerated only so much.... *The expression of an attractive young, female fashion doll with exaggerated proportions is thus highly constrained.*

*Mattel, Inc.*, 616 F. 3d at 915 (emphasis added).

Similarly, in music, notwithstanding Plaintiffs' speculation that a large number of combinations of pitches are hypothetically possible (Opp., p. 6 n.3), "only a few are pleasing; and much fewer still suit the infantile demands of the popular ear." *Darrell v. Joe Morris Music Co*., 113 F.2d 80, 80 (2d Cir. 1940) (per curiam).[7] Thus, "[i]n assessing originality, courts must be 'mindful of the limited number of notes and chords available to composers and the resulting fact that

---

[7] Plaintiffs speculate (p. 6 n.3) that there are 5,764,801 "potential sequences" for an eight-note melody. This assertion has no evidentiary basis in the trial record.

common themes frequently appear in various compositions, especially in popular music.'" *Newton v. Diamond*, 204 F. Supp. 2d 1244, 1253 (C.D. Cal. 2002).

Based upon this well-established precedent, the district court in *Erickson v. Blake*, 839 F. Supp. 2d 1132, 1139 (D. Or. 2012), had no problem correctly holding that a **musical composition** based on the number pi was only entitled to thin copyright protection. The *Erickson* court held:

> Despite the added difficulty of analytically dissecting musical works, however, it is clear that any substantial similarity between [the works] is based on non-protectable elements. Thus the scope of Mr. Erickson's copyright, at least vis-à-vis Mr. Blake's work, is "thin."

*Id*.; *see also Morrill v. Stefani*, 338 F. Supp. 3d 1051, 1061 (C.D. Cal. 2018) (combination of multiple unprotectable "basic musical devices" held insufficient to survive the defendants' summary judgment motion: "there is not such a great overlap to conclude both songs are substantially similar") (citing *Satava*, 323 F.3d at 811). Based on the admissions of Dr. Decker (discussed in Defendants' Opening Brief and further *infra*), the same analysis applies here.

### 2. Plaintiffs Cannot Escape Dr. Decker's Admissions Establishing That All Of The Similarities Between "Joyful Noise" And "Dark Horse" Are Common

At trial, Plaintiffs proffered **seven** purported similarities between "Joyful Noise" and "Dark Horse."[8] Dr. Decker admitted each of these alleged similarities is commonplace and unremarkable. Mtn., pp. 21-24. Critically, Plaintiffs do not, and cannot, dispute that Dr. Decker admitted at trial that "[a]ny single one of those would not have been enough"[9] and that "[i]t's the combination of them" that was

---

[8] WD, Ex. 6, p. 1165 ll. 12-17 ("And Dr. Decker . . . identified these **seven elements** of the two songs that he found to be substantially similar; the descending ostinato, the phrase length, the rhythm, the pitch content, the overlapping musical domain, the [timbre], the texture.") (emphasis added).

[9] Plaintiffs absurdly try to walk back this concession by asserting that Dr. Decker was merely testifying that "the rigors of musicology required multiple similar (…continued)

Mitchell Silberberg & Knupp LLP
11780345.1

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JMOL OR NEW TRIAL**

purportedly significant. WD, Ex. 3, p. 524 ll. 9-23.

Instead, Plaintiffs attempt to confuse matters by arguing for the first time in the Opposition that there are **nine** similarities between "Joyful Noise" and "Dark Horse." However, one of these nine is "a rhythm of eighth notes"—which Plaintiffs did not even assert at trial to constitute a similarity.[10] The other purported similarities which Plaintiffs claim to exist in the Opposition are the same ones Plaintiffs asserted at trial, now organized and described slightly differently. Defendants will again demonstrate how Dr. Decker admitted each of the purported similarities, as described by Plaintiffs in their Opposition, is unprotectable:

1.  "A melody built on the minor mode." Plaintiffs concede that this is common. Opp., p. 12.

2.  "A phrase length of eight notes." Dr. Decker admitted that "[i]t's characteristic for a phrase like this to last for eight beats," WD, Ex. 3, p. 448 ll. 3-9, and Plaintiffs admit this is "not particularly rare," and common. Opp., p. 12.

3.  "A pitch sequence beginning with '3, 3, 3, 3, 2, 2.'" Plaintiffs do not dispute that "Merrily We Roll Along" and "Jolly Old St. Nicholas" also contain this pitch sequence. WD, Ex. 5, pp. 904 l. 7-905 l. 17; 907 l. 17-908 l. 4. It was also undisputed that this pitch sequence is a "universal," basic exercise that children are taught when they are learning to play a musical instrument. *Id.*, pp. 908 l. 16-909 l. 22.[11] This is unsurprising, given Dr. Decker's admissions that the

---

(…continued)
elements." Opp., p. 8. However, the extrinsic test demands identification, by specific element. Dr. Decker was testifying **as an expert musicologist** required to dissect the elements in common, specifically. Any non-expert opinions that he may have had about the significance of the similarities in any capacity other than as an expert musicologist are irrelevant and improper.

[10] Dr. Decker never testified that the rhythm of "Joyful Noise" is comprised of eighth notes. To the contrary, he testified that he could not determine whether the rhythm was half, quarter, or eighth notes. WD, Ex. 3, pp. 508 l. 6-509 l. 1.

[11] Plaintiffs misrepresent Dr. Ferrara's testimony regarding this pitch sequence. Opp., p. 11. What Dr. Ferrara testified to, and which Dr. Decker did not dispute, was that these pitches "represent a musical building block" in the form of "simply repeating notes on a descending scale" which is a "standard practice [exercise] for how beginners learn to play instruments." WD, Ex. 5, p. 939, ll. 16-25.

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JMOL OR NEW TRIAL

Mitchell
Silberberg &
Knupp LLP

11780345.1

piano keys on which these pitches are played (C and B) are two white keys next to each other that are not hard to play, and relatively simple to hit. *Id.*, Ex. 3, p. 494 ll. 1-7; 516 ll. 1-14. Plaintiffs also cannot escape from Dr. Decker's testimony that repeating scale degree 3 is simply a technique which composers use to "build[] up tension that wants to be released and it's released to two." *Id.*, p. 451 ll. 22-23.[12]

Plaintiffs strain to distinguish the prior art (Opp., pp. 10-11), but they cannot dispute that all of this prior art contains the same "3, 3, 3, 3, 2, 2" pitch sequence. Instead, Plaintiffs contend that this prior art contains **other** purported differences between "Joyful Noise" and "Dark Horse." However, these other alleged differences do not change the fact that the "3, 3, 3, 3, 2, 2" sequence, the admitted "bedrock" of Plaintiffs' substantial similarity claim, is unprotectable.

4.  "<u>A similar resolution to both phrases</u>." It was undisputed at trial (and in the Opposition) that "Love Me Or Hate Me" (co-written by Gottwald), "Brainchild" and "Choosing Life," which were all released prior to "Joyful Noise," also contain the repeating scale degrees 3, 2, 1, 5. WD, Ex. 5, p. 884 ll. 8-20; 886 ll. 12-24. Plaintiffs also concede that Ostinato 1, which Plaintiffs concede is not infringing, contains the same descent from 3 to 2 to 1. *Id.*, Ex. 3, pp. 496 l. 9-497 l. 6. This conclusively refutes Dr. Decker's testimony that he purportedly had "not seen another, a third piece that descends in the way these two do." Opp., p. 9.

Critically, Plaintiffs cannot escape Dr. Decker's concessions that "scale degrees have tendencies," in that "3 wants to go down to 2" and "2 desperately wants to go to 1" because "1 is our home note." WD, Ex. 3, pp. 443 l. 24-444 l.14; 450 ll. 18-22. Plaintiffs try to walk back this admission as merely "explaining, generally, to a lay audience what scale degrees represent" (Opp., p. 9 n.5), but this testimony is a slam dunk concession as to how commonplace and natural it is for

---

[12] Given the many admissions as to the commonplace, universal use of "3, 3, 3, 3, 2, 2", the prior art with respect to this sequence was hardly limited to "one Christmas carol and one children's song," as Plaintiffs wrongly claim. Opp., p. 15.

1  anyone creating music to write that descending pattern exactly that way based

2  simply upon the inherent nature of the resolve downward. Plaintiffs' revisionist

3  explanation is absurd and does not bear the slightest scrutiny. *See Granite Music*

4  *Corp. v. United Artists Corp.*, 532 F.2d 718, 720-21 (9th Cir. 1976) (describing

5  similar descending sequence—A G F C, which in the key of F Major is the same 3

6  2 1 5 sequence present in Ostinato #1—as a "four note 'building block'").

7      5.  "<u>A rhythm of eighth notes</u>." Plaintiffs concede this is common. *Id.*, p. 12.

8      6.  "<u>A square and even rhythm</u>." Dr. Decker admitted that evenly spaced

9  notes are a "relatively simple rhythmic choice" that "no composer's entitled to

10  monopolize." WD, Ex. 3, p. 507 ll. 12-23; 516 ll. 18-20. It was also undisputed that

11  "Love Me Or Hate Me," "Merrily We Roll Along," and "Jolly Old St. Nicolas"

12  contain evenly spaced notes. *Id.*, Ex. 5, pp. 904 l. 7-905 l. 17; 907 l. 17-908 l. 4;

13  913 l. 8-914 l. 11.

14      7.  <u>Use of an ostinato</u>. Plaintiffs concede ostinatos are common (Opp., p. 12)

15  and Dr. Decker acknowledged that their use is not protectable since countless

16  musical works have contained ostinatos. WD, Ex. 3, pp. 506 l. 14-507 l. 7.

17      8.  "<u>The timbre of the instrumentation</u>." Dr. Decker admitted that the timbres

18  of the songs are "not identical," *Id.*, pp. 452 l. 21-453 l. 19, and that a pingy

19  synthesized timbre cannot be monopolized. *Id.*, pp. 516 l. 21-517 l. 4. Plaintiffs

20  concede a pingy, synthesized timbre is common. Opp., p. 12.

21      9.  "<u>Empty and sparse texture</u>." Dr. Decker did not dispute that "Love Me Or

22  Hate Me" contains an ostinato with a sparse texture. Moreover, Plaintiffs fail to

23  controvert that unrebutted testimony from Dr. Ferrara established that sparse

24  texture is commonplace. Mtn., p. 24 (citing WD, Ex. 5, pp. 912 l. 15-913 l. 7.)

25      Because Plaintiffs cannot dispute any of these admissions establishing the

26  unprotectable nature of each of the musical elements at issue, they instead spend

27  pages purporting to summarize Dr. Decker's testimony in which he describes these

28  elements in vague and meaningless terms such as "distinctive," "significant,"

"noteworthy" and "kind of cool." Opp., pp. 9-12.[13] However, none of these terms make the common elements protectable expression, and none of this subjective rhetoric alters the blatant admissions that these elements are commonplace.[14]

### 3. There Is No Virtually Identical "Combination Of Unprotectable Expression," As Dr. Decker Admitted Multiple Differences Between The Ostinatos

On pages 24-25 of their Opening Brief, Defendants set forth Dr. Decker's admissions of the many differences between the ostinato in "Joyful Noise" and Ostinato 2 in "Dark Horse." In their Opposition (p. 13), Plaintiffs do not attempt to refute the existence of any of these differences, and instead, merely attempt to self-servingly argue these differences are purportedly unimportant.[15] Accordingly, it is undisputed that the ostinatos at issue are **not** identical.

### 4. The Extrinsic Test And The Thin Copyright Doctrine, Properly Applied, Mandate Judgment For Defendants

As demonstrated above, Plaintiffs' Opposition fails to change the following facts borne of Dr. Decker's admissions: (1) it is undisputed that there are only commonplace elements in common between the two ostinatos and (2) there is no "virtually identical" combination in the ostinatos.

---

[13] Although Plaintiffs strain in their Opposition to assert the purported existence of harmonic similarities between "Joyful Noise" and "Dark Horse," they cannot escape from Dr. Decker's unequivocal admission that "The harmony is different in Joyful Noise than in Dark Horse." WD, Ex. 3, p. 504 ll. 13-18.

[14] Contrary to Plaintiffs' assertion (Opp., pp. 14-15), the sheer volume of admissions by Dr. Decker as to the commonplace nature of each of the musical similarities at issue—including but far from limited to the "3, 3, 3, 3, 2, 2" pitch sequence—distinguishes this case from *Swirsky*. In *Swirsky*, there were far fewer admissions as to the unprotectable nature of the similarities at issue, and the Ninth Circuit accordingly held that an issue of fact existed as to the extrinsic test that precluded summary judgment. And contrary to Plaintiffs' characterization, the Ninth Circuit nowhere in *Swirsky* enunciated a rule that "comparing compositions from different genres" is always a "poor measure of whether a musical phrase is commonplace" (Opp., pp. 14-15), particularly in a case where (as here) Plaintiffs' and Defendants' composition are themselves in different genres.

[15] Dr. Decker admitted that the seventh and eighth pitches in "Joyful Noise" and "Dark Horse" were "[c]ertainly" "different," but attempted to minimize those differences with a nonsensical statement that the ostinatos adopted the same "strategies" for the seventh and eighth pitches. WD, Ex. 3, p. 459 ll. 1-22. This subjective testimony is meaningless and does not change his empirical admission.

1    Based on those admissions, and properly applying the extrinsic test as set

2  forth in the instructions, all of the unprotectable elements in "Dark Horse" and

3  "Joyful Noise" must be extracted before the works are compared. Dkt. 441, Jury

4  Instr. 37; Mtn., p. 25. Since all of the elements at issue are concededly and

5  indisputably commonplace and unremarkable, nothing remains between the

6  ostinatos at issue other than differences. *Id.*, p. 26.[16]

7    Of course, even if the "combination" of elements in the "Joyful Noise"

8  ostinato were entitled to copyright protection—and it is not—pursuant to this

9  Court's proper jury instructions, it constitutes at best a thin copyright. Dkt. 441,

10  Jury Instr. 34.[17] Because this ostinato is admittedly and indisputably **not** virtually

11  identical to Ostinato 2 in "Dark Horse," the extrinsic test cannot be satisfied as a

12  matter of law pursuant to the thin copyright doctrine.[18]

13    **B.    The Intrinsic Test Also Mandates Judgment For Defendants**

14    As explained in Defendants' Opening Brief (Mtn., p. 27), the inquiry stops

15  at the extrinsic test as there is no basis for the intrinsic test to be considered. Even

16  if there were, the same result must obtain because, in considering that test, as

17  Plaintiffs concede, a jury may only compare whether "the total concept and feel of

18  'Joyful Noise' and 'Dark Horse' are substantially similar in **original, protectable**

19  **expression**.'" Dkt. 441, Jury Instr. 37 (emphasis added); *see, e.g.*, *Apple*

20

21  [16] Plaintiffs concede that the "bedrock" similarity between the ostinatos at issue is
the "3, 3, 3, 3, 2, 2" (or me, me, me, me, re, re) pitch sequence on evenly spaced
22  notes. Opp., p. 15. Given the voluminous admissions of Dr. Decker set forth *supra*,
this simple pattern is unprotectable by itself or in purported "combination" with the
23  other claimed similarities, which are equally basic, simplistic and unprotectable.

24  [17] Plaintiffs cite *Three Boys Music Corp. v. Bolton*, 212 F.3d 477 (9th Cir. 2000),
in wrongly arguing the contrary. However, *Three Boys* predates the Ninth
25  Circuit's seminal decision on the thin copyright in *Satava*, as well as the Ninth
Circuit's application of thin copyright to music in *Swirsky*. Additionally, there is
26  no indication in the opinion that any defendant in *Three Boys* brought the thin
copyright doctrine to the attention of the Court.

27  [18] The alleged combination claim also fails because the elements are not
"numerous enough and their selection and arrangement original enough that their
28  combination constitutes an original work of authorship." *Satava*, 323 F.3d at 811.

*Computer*, 35 F.3d at 1443 ("Because only those elements of a work that are protectable and used without the author's permission can be compared when it comes to the ultimate question of illicit copying, we use analytic dissection to determine the scope of copyright protection **before** works are considered 'as a whole'") (emphasis added). Since it is undisputed that the works share no protectable similarities and that there are many differences between them as a whole (Mtn., p. 25 n.13), the intrinsic test resolves in Defendants' favor as well.

## C. <u>Plaintiffs' Opposition Fails To Rebut Defendants' Showing That No Sufficient Evidentiary Basis Exists To Support Any Finding Of Widespread Dissemination Of "Joyful Noise"</u>

Ignoring Defendants' specific arguments as to why judgment as a matter of law should enter based on the lack of access proof at trial, Plaintiffs complain that Defendants are "rehash[ing] their arguments [on] summary judgment." Opp., p. 17. Not so. Defendants' motion is predicated on the *trial* evidence which differed significantly from the record on summary judgment,[19] in particular regarding Plaintiffs' purported view counts of "Joyful Noise" on YouTube and Myspace.

Plaintiffs bore the burden of proving widespread dissemination—their only access theory. Trying to reduce their burden, Plaintiffs press the *mantra* that "Joyful Noise" was "out there in the song universe." WD, Ex. 6, p. 1167 l. 2. That is not the standard: "widespread" is not synonymous with being "out there." Plaintiffs were required to prove that the dissemination of "Joyful Noise" was so "widespread" (or "extensive," "far-reaching" or "sweeping"[20]) as to have given rise to a "reasonable possibility, not merely a bare possibility," that Walter or Gottwald had the opportunity to hear it. *Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1143 (9th Cir. 2009).

---

[19] Plaintiffs' argument that the standard governing Rule 50 and summary judgment is the same (Opp., pp. 2, 18) entirely misses the point. The evidence to be assessed on a Rule 50 motion is what was presented at trial; not on summary judgment.

[20] *See Widespread*, Merriam-Webster Thesaurus, https://www.merriam-webster.com/thesaurus/widespread (last visited Dec. 23, 2019).

Plaintiffs wholly fail to rebut Defendants' showing that the meager access evidence presented by Plaintiffs at trial could not, in whole or in part, rise to the level of widespread dissemination under the prevailing case law to support a verdict of access. Mtn., pp. 27-38. Plaintiffs' few retorts are entirely unavailing.

**1. Plaintiffs Ignore The Evidence Presented At Trial Proving That The Views Of "Joyful Noise" On YouTube And Myspace Were *De Minimis* In The Context Of Online Music**

Like their *mantra* that "Joyful Noise" was "out there," Plaintiffs simply repeat the number of views of "Joyful Noise" as if that number requires a finding of widespread dissemination without any analysis of the context and timeline. Again, this is pure sophistry and a clear effort to decrease Plaintiffs' burden. Plaintiffs' conclusory assertion that "*by any measurement*, 6 million is a huge number—and far greater than other cases finding widespread dissemination" (Opp., p. 18 (emphasis added)) is inaccurate and misleading. First, Plaintiffs have not described *any* measure to put those numbers in context, no less any factual or legal authority to argue that those numbers are "huge" "by any measurement." Second, there are no cases assessing view counts in the context of the universe of the Internet, and thus Plaintiffs have zero legal basis for their bald contention that their view counts provide more access than in other cases.

Merely saying that 6 million is a "huge number" is meaningless and legally insufficient. A number is not big or small in a vacuum; its significance depends on the context. 6 million may sound like a large number in a vacuum, but in context (*e.g.*, number of people residing in China, miles in space[21]), it is *factually* infinitesimal. Thus, it was Plaintiffs' burden to ***prove with evidence*** that 3.88 million views on YouTube or 2.49 million plays on Myspace is widespread in that context. They presented no such evidence.

---

[21] *What Is a Light-Year?*, NASA Space, https://spaceplace.nasa.gov/light-year/en/ (last updated May 23, 2018).

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JMOL OR NEW TRIAL**

In fact, Plaintiffs tacitly concede the opposite by failing to contest the veracity of Defendants' expert evidence. In the Opposition, Plaintiffs do not even *mention* the testimony of Defendants' experts, because they know that they have no way to contest the evidence presented, which demonstrates the fallacy of their widespread dissemination theory. By ignoring this evidence, Plaintiffs in essence admit it is fatal to their case.[22] Defendants' experts demonstrated that Plaintiffs' view counts were miniscule in the context of the *trillions* of views/plays that YouTube and Myspace received during the same time period. Mtn., pp. 32-33. Trillions is "huge" in that context; 6 million is not. It is undisputed that the 6 million views over approximately 4 years is a miniscule number of views on the platforms in question; it cannot be deemed widespread dissemination.

Plaintiffs also tacitly concede that any user would have had to affirmatively search for "Joyful Noise" by title or artist to find it in this mega universe. Defendants' unrebutted expert testimony established as a matter of undisputed fact that there was no reasonable opportunity for Walter or Gottwald to have heard "Joyful Noise" simply by virtue of the fact that the videos were on the Internet and that over 4 years there were approximately 6 million views. Accordingly, that evidence was patently insufficient to create a reasonable inference of access. The jury's conclusion that there was widespread dissemination was without factual basis, and its further conclusion that there was a reasonable opportunity to have heard "Joyful Noise" from this evidence is pure conjecture and speculation.

In sum, Plaintiffs failed to prove widespread dissemination with their view counts, as they offered no evidence as to how those numbers fit into and are to be

---

[22] While Plaintiffs argue that "Joyful Noise" should not be lumped into a universe of billions of videos on YouTube (Opp., p. 18), Plaintiffs cannot explain why. This argument also highlights the relevance of search functionalities. That "Joyful Noise" was merely one video among billions of other equally available videos on YouTube; that Plaintiffs' Myspace profile pages were only two among hundreds of millions of other equally available profile pages; and that "Joyful Noise" was merely one song among over 50 million equally available songs from over 14 million equally available artists underscores that context is critical.

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JMOL OR NEW TRIAL**

1   measured against the voluminous content on the Internet, or as to the essential

2   search mechanisms and functionality tools necessary for finding such content on

3   those platforms. Indeed, Plaintiffs' agenda has been to avoid consideration of the

4   reality of dissemination so as to insulate their view counts from any context

5   scrutiny. At trial, however, Plaintiffs were confronted with the undisputed evidence

6   of context and were unable to rebut it. Then, and now by their silence on this

7   motion, Plaintiffs have tacitly conceded that Defendants' evidence regarding the

8   views of "Joyful Noise" being *de minimis* is factually established without dispute.

9   *See, e.g.*, *Silva v. U.S. Bancorp*, 2011 WL 7096576, at *3 (C.D. Cal. Oct. 6, 2011)

10  ("Plaintiff concedes his recordkeeping claim should be dismissed by failing to

11  address Defendants' arguments in his Opposition").[23]

12        As discussed below, the balance of Plaintiffs' access evidence does not

13  remotely bridge the gap to support a finding of widespread dissemination.

14        **2.    No Amount Of Overstatement Can Raise Plaintiffs' Other**
15        **"Dissemination" Evidence To The Level Of Widespread**

16        Again, Plaintiffs' Opposition fails to address and respond to Defendants'

17  arguments in their Opening Brief as to why Plaintiffs' other purported access

18  evidence fails to rise to level of widespread dissemination. Mtn., pp. 34-38.

19        Cognizant that they have **no** sales evidence, and only a meager amount of

20  evidence as to any other dissemination, Plaintiffs offer little more than their

21  improper argument that they adduced evidence of "significant sales" by "the fact

22  that the song and album charted on various Billboard charts." Opp., p. 19. Not only

23  is this ***not*** evidence of sales, this argument violates the Court's repeated rulings

24  that the charts of "Joyful Noise" and *Our World Redeemed* cannot be proffered as,

---

[23] *See also GN Resound A/S v. Callpod, Inc.*, 2013 WL 1190651, *5 (N.D. Cal. 2013) (when plaintiff failed to oppose a motion as to a particular issue, "the Court construes as a concession that this claim element [is] not satisf[ied]"); *Hall v. Mortgage Inv'rs Grp.*, 2011 WL 4374995, *5 (E.D. Cal. Sept. 19, 2011) ("Plaintiff does not oppose Defendants' arguments regarding the statute of limitations in his Opposition. Plaintiff's failure to oppose . . . serves as a concession[.]").

and are not, evidence of sales. Dkt. 403, p. 11 ("[T]he Billboard charts may not be introduced for the purpose of establishing that 'Joyful Noise' or *Our World Redeemed* experienced commercial success or a high number of sales."); WD, Ex. 3, p. 315 ll. 5-7 ("I am not going to permit Billboard to be used to show sales or anything of that nature."); *id.*, ll. 17-18 ("they cannot come in to show sales.").

Plaintiffs' Opposition is remarkably silent as to any of the other purported evidence that they sought to adduce as "access" evidence, thus conceding the dearth thereof. *See supra*, p. 24 & n.23. Thus, Plaintiffs' Opposition in fact establishes that there is no legally sufficient basis for the jury's verdict on widespread dissemination from traditional dissemination sources.

### 3. Plaintiffs Concede That Defendants Did Not Avail Themselves Of The Opportunity To Hear "Joyful Noise"

Similarly, Plaintiffs entirely ignore Defendants' showing that even if "Joyful Noise" was widely disseminated, and it most definitely was not, neither Walter nor Gottwald (nor any other "Dark Horse" author) availed himself of the opportunity to hear the song. The issue is thus conceded. *See* Mtn., pp. 38-40; Dkt. 441, Jury Instr. 36; *supra*, p. 24 & n.23.

### D. Plaintiffs' Inability To Overcome Defendants' Evidence Of Independent Creation Compels Judgment As A Matter Of Law

Plaintiffs do not, nor can they, dispute that Defendants presented affirmative evidence of independent creation of "Dark Horse" by the unrebutted and unimpeached testimony of Walter and Gottwald and by the audio file of the instrumental track, titled "Oh No!" *See* Mtn., pp. 40-41. Defendants also presented substantial evidence of prior art, including earlier music created by Gottwald, with respect to the musical elements that Plaintiffs claimed were in common between the two works.[24] Defendants' evidence warrants entry of judgment as a matter of

---

[24] This evidence of prior art, and the fact that the only elements in common between "Joyful Noise" and "Dark Horse" were merely commonplace expression, are relevant to rebutting any inference of copying. *See Granite Music*, 532 F.2d at

(…continued)

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JMOL OR NEW TRIAL**

law their favor. Mtn., pp. 40-41. Plaintiffs' few arguments in response do not avail.

### 1. Walter And Gottwald Were Corroborated And Unrebutted

First, Plaintiffs try to argue that Walter and Gottwald's testimony of independent creation was not corroborated by any physical evidence, such as music files. Opp., p. 20. This, however, is demonstrably false. Defendants introduced the initial instrumental track, titled "Oh No!", which Walter testified was the instrumental track he created in the studio on March 8, 2013. WD, Ex. 4, pp. 634 l. 10-639 l. 9. Consistent therewith, the music file itself has a "date modified," which reads "3/8/2013 [@] 8:51 PM." WD, Ex. 23. Thus, Walter and Gottwald's testimony was corroborated.[25]

Plaintiffs also claim that Walter and Gottwald's testimony was rebutted by their musicologist, Dr. Decker, who opined that "Ostinato #2 preceded the creation of Ostinato #1"; and both "derived from the ostinato in 'Joyful Noise.'" Opp., p. 20. This argument is unavailing, as it would suggest that in any case where plaintiff has a music expert who opines there is substantial similarity, a defendant creator would automatically lose on independent creation. Clearly, that is not the type of rebuttal proof that contradicts or impeaches a factual recitation of independent creation. Dr. Decker had no personal knowledge of the creation of the instrumental track. His opinion could not rebut Walter's (or Gottwald's) testimony as to the facts of the creation of "Dark Horse."

_____
(…continued)
720-21 ("Evidence of similar musical phrases appearing in prior works is also logically relevant to rebut the inference of copying.").

[25] Plaintiffs' speculative assertions that there should have been additional session files have no place on this motion, but do demonstrate the absence of any legitimate argument to counter independent creation. Plaintiffs failed to present any evidence that additional session files did exist, or should have existed. Walter testified that he started and finished the initial instrumental track at the studio in a single day. The single file was produced in discovery and introduced at trial, fully consistent with this testimony. Nothing offered by Plaintiffs at trial or in their opposition challenges this undisputed evidence of independent creation.

Mitchell Silberberg & Knupp LLP
11780345.1

1

### 2.    Plaintiffs' Contention That Walter And Gottwald's Testimony Should Be Disregarded Is Contrary To Law

2

3       Plaintiffs contend that, even if Defendants presented unimpeached and

4  unrebutted evidence of independent creation, the Court cannot consider this

5  evidence on this motion because it primarily consists of testimony from interested

6  witnesses. To the contrary, the law is that "in entertaining a motion for judgment as

7  a matter of law, the court should review ***all of the evidence in the record***." *See*

8  *Reeves*, 530 U.S. at 150 (emphasis added); *see also Lillie v. ManTech Int'l Corp.*,

9  2019 WL 3387732, at *1 (C.D. Cal. July 26, 2019) (Snyder, J.) (granting JMOL

10 after "[h]aving carefully considered the parties' arguments and the entire record of

11 this action"). The law is equally clear that judgment as a matter of law "is proper if

12 the evidence, construed in the light most favorable to the nonmoving party, permits

13 only one reasonable conclusion, and that conclusion is contrary to the jury's."

14 *Vollrath Co. v. Sammi Corp.*, 9 F.3d 1455, 1460 (9th Cir. 1993).[26]

15       As Plaintiffs acknowledge, the standard for judgment as a matter of law is

16 the same as summary judgment. Opp., pp. 2, 18. Certainly, a defendant's own

17 interested testimony of independent creation can support summary judgment. *See,*

18 *e.g.*, *Calhoun v. Lillenas Publ'g*, 298 F.3d 1228, 1233 (11th Cir. 2002) (affirming

19 summary judgment on independent creation based on evidence including affidavit

20 of defendant of his independent creation; "Calhoun did not offer any evidence to

21 contradict McGee's testimony. Therefore, the district court was correct in

22 concluding that McGee's testimony constitutes uncontradicted evidence of

23 independent creation, which fully negates any claim of infringement"); *Burgin v.*

24 *Lahaye*, 399 F. App'x 464, 467 (11th Cir. 2010) (affirming summary judgment on

25

26 ------
[26] While Plaintiff cites *McEuin v. Crown Equip. Corp.*, 328 F.3d 1028, 1037 (9th Cir. 2003) to argue that the Court "may not reject the jury's verdict simply because another appears preferable" (Opp., p. 22), the word "preferable" assumes a choice. Where the *only* evidence compels one conclusion—and evidence was not impeached or rebutted—a jury is speculating in reaching a conclusion that flies in the face of that evidence. *See Three Boys*, 212 F.3d at 481.

27

28

Mitchell Silberberg & Knupp LLP

11780345.1

27

1   independent creation because "defendants testified in detail regarding their

2   collaborative creative process for composing the two works in question, [] both

3   have maintained that they had never seen or read Burgin's manuscript [and] Burgin

4   has offered no evidence to refute this testimony").

5          On summary judgment, the court must review the record "taken as a whole."

6   *Reeves*, 530 U.S. at 150. And while a court must draw all reasonable inferences in

7   favor of the nonmoving party, the court is not to weigh the evidence or make

8   credibility determinations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255

9   (1986). *The same is true for judgment as a matter of law*: "[T]he court must draw

10  all reasonable inferences in favor of the nonmoving party, and it may not make

11  credibility determinations or weigh the evidence." *Reeves*, 530 U.S. at 150.

12         In support of their argument that the Court not consider the testimony of

13  Defendants on independent creation, Plaintiffs take out of context a statement from

14  *Reeves* that a court should consider "evidence supporting the moving party that is

15  uncontradicted and unimpeached, at least *to the extent that that evidence comes*

16  *from disinterested witnesses*." Opp., p. 21 (quoting and emphasizing *Reeves*, 530

17  U.S. at 150-51). Plaintiffs' erroneous reading of *Reeves* ignores that it rejected the

18  concept of looking only at the evidence favorable to the nonmoving party and

19  made it clear that the entire record should be considered.

20         *Reeves* in fact supports the entry of judgment as a matter of law here, as

21  Plaintiffs did not rebut or disprove Defendants' evidence of independent creation.

22  *Reeves* addressed a discrimination case, in which the plaintiff bore the initial

23  burden to establish a *prima facie* case of discriminatory firing. 530 U.S. at 142.

24  Once established, it shifted to the defendant to produce evidence of a legitimate,

25  nondiscriminatory reason. *Id. Reeves* noted that "the evidence supporting

26  [defendant's] explanation for [plaintiff's] discharge **consisted primarily of**

27  **testimony" from defense-interested witnesses**, and documentation of plaintiff's

28  "shoddy record keeping." *Id.* at 143 (emphasis added). The Court then explained

1   that the plaintiff had "to prove by a preponderance of the evidence that the

2   legitimate reasons offered by the defendant were not its true reasons, but were a

3   pretext for discrimination." *Id*. The Court made it clear that a plaintiff must do

4   more than simply argue that the defendant is lying; the plaintiff must come forth

5   with evidence proving the falsity of the defendant's evidence. *Id*. at 147 ("[I]t is

6   not enough . . . to *dis* believe the employer; the factfinder must *believe* the

7   plaintiff's explanation of intentional discrimination.").

8        This analysis in *Reeves* is analogous here. Cases make clear that "[b]y

9   establishing reasonable access and substantial similarity, a copyright plaintiff

10  creates a *presumption* of copying." *Three Boys*, 212 F.3d at 486 (emphasis added).

11  A defendant then can "rebut that presumption through proof of independent

12  creation." *Id*. Where the defendant does so, the burden shifts back to plaintiff to

13  rebut this proof because ultimately the burden of proving copying remains with

14  plaintiff. *Calhoun*, 298 F.3d at 1233 ("Once McGee offers evidence of independent

15  creation, Calhoun has the burden of proving that McGee in fact copied 'Before His

16  Eyes.'"). *Cf.*, *Cosmos Jewelry, Ltd. v. Po Sun Hon Co.*, 2006 WL 5105219, at *1

17  (C.D. Cal. Apr. 5, 2006) (independent creation is not an affirmative defense).

18       No different than in *Reeves*, Defendants' burden should be "one of

19  production, not persuasion" and "involve no credibility assessment." *Reeves*, 530

20  U.S. at 142. Plaintiffs did not present any evidence rebutting Defendants' evidence

21  or suggesting that Defendants' testimony of independent creation was false. This

22  was their burden and Plaintiffs' failure to do so compels judgment as a matter of

23  law. And even if Plaintiffs' improper rebuttal evidence (Decker's "expert"

24  testimony) is credited, such evidence, at best, "created only a weak issue of fact" as

25  to the issue of independent creation and cannot override the "abundant and

26  uncontroverted" evidence of independent creation.[27] *Reeves*, *supra*.

27

28

---

[27] This same reasoning also supports entry of judgment on the ground that Walter and Gottwald did not avail themselves of the opportunity to hear "Joyful Noise."

**E.**     **No Legally Sufficient Evidentiary Basis Supports The Jury's Finding That "Joyful Noise" Is A Joint Work**

As set forth in Defendants' Opening Brief, there was no legally sufficient evidentiary basis to find that the copyright in "Joyful Noise" includes Ojukwu's beat—the sole musical portion at issue—as part of a joint work. The evidence showed that "Joyful Noise" was a derivative work incorporating Ojukwu's beat.

In the Opposition, Plaintiffs contend that they met their burden of proving "Joyful Noise" was a joint work based on what they argue is the "dispositive" fact that there was a "contract that unequivocally evidences intent to be co-authors." Opp., p. 24. They are wrong on the facts and the law.

First, as the Ninth Circuit has made clear, "the most important factor" in determining whether a work is "joint" will often be whether the author of the original work "'superintend[s]' the work by exercising control." *Aalmuhammed v. Lee*, 202 F.3d 1227, 1234 (9th Cir. 2000); *see also Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*, 531 F.3d 962, 968 (9th Cir. 2008).[28] Unsurprisingly, based on the importance of this factor, Plaintiffs completely ignore the evidence that Ojukwu exercised absolutely no control over the beat after he sold it to Gray. Mtn., pp. 42-43. Thus, the "most important" factor heavily weighs in Defendants' favor.

Second, Plaintiffs cannot plausibly deny that they failed to offer evidence of an "objective manifestation of shared intent" to be co-authors (*Aalmuhammed*, 202 F.3d 1227 at 1235) that was manifested by "each contributing author **at the time [his] contribution is composed**." *Marya v. Warner/Chappell Music, Inc.*, 131 F. Supp. 3d 975, 994 (C.D. Cal. 2015) (emphasis added).

None of Plaintiffs' evidence comes close to manifesting the requisite intent. First, the "contract" that Plaintiffs rely on (WD, Ex. 13) was not executed until late 2014—seven years after "Joyful Noise" was written and months after Plaintiffs

---

[28] Despite Plaintiffs' assertion, whether the alleged authors made "objective manifestations of a shared intent to be co-authors" is not "dispositive" in this analysis. *Id.* In any event, Plaintiffs made no such objective manifestation.

registered the copyright and filed this suit. This self-serving document was obviously created solely for this suit. Second, Plaintiffs' testimony that they always had an intent to create a joint work necessarily fails to support a finding of intent, as it is (1) not a contemporaneous "objective manifestation"; and (2) directly contrary to the documentary evidence and Plaintiffs' *own* sworn testimony. *See* Mtn., pp. 42-43. The Court should not credit such testimony. *McIntyre v. Old Trapper Smoked Prod., Inc.*, 1 F.3d 1246 (9th Cir. 1993) (court need not credit non-moving party's "assertion [that] contradicts [its] own testimony"); *United Nat'l Maintenance, Inc. v. San Diego Convention Ctr. Corp, Inc.*, 2012 WL 12845620, at *2 (S.D. Cal. Sept. 5, 2012) (nonmoving party must "do more than rely on conclusory, self-serving, and speculative testimony."). The only other evidence Plaintiffs offer is that Ojukwu was listed as a "producer" of the recording and not a "writer" of the composition on the liner notes. But this only furthers Defendants' argument. This lone document would at best be a "scintilla" of evidence, and insufficient to support the jury's finding. *Reeves*, 530 U.S. at 148.

Because the evidence was insufficient to show that "Joyful Noise" was a joint work incorporating the beat, there was no basis to find that the copyright in "Joyful Noise" protects the preexisting material embodied in the beat.

**F. No Legally Sufficient Evidentiary Basis Supports The Jury's Finding Of Liability Against Multiple Defendants**

Plaintiffs' sole claim was for direct copyright infringement. Thus, to recover from any Defendant, it was Plaintiffs' burden to prove such Defendant "violate[d] any of the exclusive rights" of Plaintiffs, *i.e.*, the rights to reproduce, prepare derivative works, distribute, publicly perform, or display the copyrighted work. 17 U.S.C. §§ 106, 501. Plaintiffs offered no such evidence as to Defendants Katheryn Hudson, Gottwald, Sarah Hudson, Sandberg, Houston, Kobalt, WB, and KMI.

In the Opposition, Plaintiffs have no argument other than the conclusory contention that liability exists because all defendants allegedly were "involved in

1  and profited handsomely from the creation and distribution of ['Dark Horse']."

2  Opp., p. 25. That argument is insufficient as a matter of law.

3       First, as to the songwriters, Plaintiffs cannot distinguish *Williams*, in which

4  the Ninth Circuit specifically rejected the argument that a co-owner of a copyright

5  who contributed a non-infringing portion to the infringing work is *per se* liable.

6  There, one of the defendants, Harris, contributed a rap verse to the song "Blurred

7  Lines" after the infringing portion had been created, performed on the recording,

8  and co-owned the composition copyright. 895 F.3d at 1116. Based on these facts,

9  the Ninth Circuit reversed the trial court's finding that Harris was directly liable

10  and held he could not be vicariously liable. *Id.* at 1132. Here, nearly all of the

11  writers of "Dark Horse" are in a position legally indistinguishable from that of

12  Harris in *Williams*. The evidence at trial demonstrates that the contributions of

13  Katheryn Hudson, Gottwald, Sarah Hudson, Sandberg, and Houston all came ***after***

14  the allegedly infringing portion of what would become "Dark Horse" was already

15  complete. Mtn., p. 45. Plaintiffs proffered no ***evidence*** that any of these writers

16  violated any of the exclusive rights of Plaintiffs. While Plaintiffs assert that each of

17  these songwriters "[c]reat[ed] . . . a derivative work . . . based upon ['Joyful

18  Noise']," and "[a]uthorized" the distribution and public performance of "Dark

19  Horse" (Opp., p. 26), they cannot point to a shred of evidence from trial to show

20  that any of the above writers copied "Joyful Noise," or distributed "Dark Horse,"

21  as the jury instructions mandated. There was no such evidence.[29]

22       Second, Plaintiffs claim KMI, Kobalt, and WB are liable because they

23  "profited by their role[s]." Opp., pp. 26-27. But that a party "profited" does not

24

25

---

26  [29] *Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 973 (N.D. Cal. 2015), cited by Plaintiffs, is inapposite. In that case, the court merely held that the

27  plaintiffs had adequately alleged that the defendants distributed the infringing product in the United States. *Id.* Here, there were no such allegations—let alone

28  proof—of distribution by these Defendants.

Mitchell
Silberberg &
Knupp LLP

11780345.1

1  mean it is liable for direct infringement.[30] There is no evidence supporting a

2  violation by any of them of Plaintiffs' exclusive rights. Judgment should be entered

3  on this ground as to the aforementioned writers and companies.

## III.  PLAINTIFFS' OPPOSTION FAILS TO OFFER ANY COUNTER TO DEFENDANTS' APPORTIONMENT POSITION

6      The proof at trial as to what portion, if any, of Defendants' profits is

7  attributable to the "Joyful Noise" ostinato was clear and unequivocal: Ostinato 2 in

8  "Dark Horse" contributed only an insignificant amount to its financial success.

9  Defendants' experts proffered substantial, unrebutted evidence that "Dark Horse"

10 succeeded primarily because of the massive star power of Katy Perry and Juicy J

11 and the unique marketing, financial and campaign efforts promoting the song.

12      Plaintiffs' Opposition provides no assistance to challenge Defendants'

13 apportionment evidence because no evidence was proffered at trial to accomplish

14 that. Plaintiffs offered no rebuttal testimony to Jason King, and the testimony from

15 Dr. Decker referenced in Plaintiffs' Opposition provides no counter to the

16 apportionment evidence. Opp., pp. 29-30.

17      First, Dr. Decker's testimony that Ostinato 2 plays for 95 seconds during

18 "Dark Horse" was **not** an opinion regarding the **value** of Ostinato 2 from a

19 musicological perspective. WD, Ex. 3, pp. 464 l. 24-465 l. 6. At no time during

20 trial did Dr. Decker offer testimony regarding the value of Ostinato 2 to "Dark

---

[30] While profits may be relevant to a vicarious infringement claim, there is no such claim here against any defendant. Recognizing this, Plaintiffs now absurdly claim it is "immaterial" whether they asserted a vicarious claim, since Defendants had "adequate notice that their various acts made them liable for infringement of Plaintiffs' copyright." Opp., p. 27. Obviously, Plaintiffs cannot fabricate a claim now when none was filed, and would be contrary to and in violation of the applicable orders in this matter. Worse, Plaintiffs expressly represented at trial that they had no vicarious infringement claim. Mtn., p. 44 n.35. Certainly, even if they had evidence of a vicarious claim, any such purported evidence would not support a direct infringement claim. *See* 17 U.S.C. § 501. Plaintiffs cite dicta from two cases to suggest that the lines between vicarious and direct infringement are not always clear. Opp., pp. 27-28. But the law is clear that "contributory or vicarious infringement is separate from and dependent on direct infringement." *Fahmy v. Live Nation Entm't, Inc.*, 2015 WL 3617040, at *5 (C.D. Cal. June 8, 2015).

1  Horse" as a whole, and he did not object to Dr. Ferrara's transcription of "Dark
2  Horse" or contradict Dr. Ferrara's testimony regarding the quantitative and
3  qualitative musicological value of Ostinato 2. To the contrary, Dr. Decker's
4  testimony was entirely consistent with Dr. Ferrara's testimony during the damages
5  phase. He admitted that Ostinato 2 does not play during the chorus (*id.*, p. 495 ll.
6  12-17) or at all during the majority of "Dark Horse" (*id.*, pp. 464 l. 24-465 l. 6),
7  and that "Dark Horse" contains multiple musical and lyrical elements that are not
8  similar to "Joyful Noise." Mtn., pp. 21-25; *see also supra*, p. 19.[31]

9       Second, neither Dr. Decker's testimony nor anything else offered by
10 Plaintiffs contradicted, addressed, or rebutted Dr. King's testimony in any way. Dr.
11 King's unrebutted testimony was that Ostinato 2 was, at best, only a small factor in
12 the financial success of "Dark Horse." That financial success was driven primarily
13 by the combined star power of Katy Perry and Juicy J and the massive and unique
14 marketing campaign promoting the song.

15      As to the importance of star power, Plaintiffs attempt to characterize Dr.
16 King's testimony as self-refuting, but their argument simply ignores the facts and
17 relies on assumptions, rather than evidence. Plaintiffs argue (without evidence) that
18 Katy Perry's star power could not have accounted for the success of "Dark Horse"
19 because other songs by Katy Perry were not as successful as "Dark Horse." Opp.,
20 p. 30.[32] Plaintiffs' arguments are no substitute for evidence, of which there is none,
21 so they cannot sustain the jury's apportionment finding. Moreover, any suggestion
22 that Ostinato 2, and not Katy Perry, was responsible for the financial success of
23 "Dark Horse" ignores Plaintiffs' primary contention that Ostinato 2 is the same as
24 the ostinato in "Joyful Noise"—a song that achieved no financial success.

25

26 [31] Plaintiffs state, without evidence, that Ostinato 2 is qualitatively important to "Dark Horse," improperly referencing other short musical phrases from songs that
27 were not the subject of this case and were not part of the record at trial. Opp., p. 31. The Court should disregard this improper and unsupported argument.

28 [32] Plaintiffs ignore Dr. King's testimony on the star power of Juicy J. Mtn., p. 47.

Mitchell
Silberberg &
Knupp LLP

11780345.1

34

1    Plaintiffs also (unavailingly) attempt to refute Dr. King's exhaustive
2    recitation of the significant marketing efforts relating to "Dark Horse" by noting
3    that a portion of that marketing was paid for by Pepsi, not Capitol. Opp., p. 30. Of
4    course, it makes no difference who paid for the marketing—it is the fact that it was
5    done that matters. Dr. King testified that the Pepsi marketing campaign "helped
6    really drive the single" (WD, Ex. 9, pp. 1513 l. 2-1514 l. 2), and that Capitol later
7    spent $1.1 million marketing "Dark Horse" (*id.*, p. 1415 ll. 3-23).

8    In addition, Plaintiffs completely ignore Dr. King's testimony that the
9    factors in terms of importance "have to be understood in relationship." *Id.*, p. 1534
10   ll. 3-15. Contrary to Plaintiffs' suggestion otherwise, Dr. King indeed took into
11   consideration the music of "Dark Horse," testifying that the hook (chorus) and
12   vocal performances by Katy Perry and Juicy J were secondary factors driving the
13   song's success. *Id.*, pp. 1516 l. 11-1518 l. 5. He also identified the combined
14   instrumental musical elements (including Ostinato 2 as one of a number of
15   elements) and the production/arrangement as factors driving success. *Id.*, pp. 1518
16   l. 6-1519 l. 17. Dr. King testified that Ostinato 2 on its own was, at best, a tertiary
17   factor. *Id.*, pp. 1521 l. 21-1522 l. 18. Like Dr. Ferrara's apportionment testimony,
18   Dr. King's testimony is consistent with Dr. Decker's testimony that Ostinato 2
19   plays in less than half of the recording, is not part of the chorus, and is among
20   several other musical elements that are not similar to "Joyful Noise." *Supra*, p. 19.
21   Since Dr. King's testimony was not refuted, but was in fact supported by Dr.
22   Decker's testimony, there was no reasonable basis for the jury to conclude that
23   22.5% of the profits of "Dark Horse" were attributable to Ostinato 2.

24   Finally, the contention that Katy Perry "herself identified the importance of
25   Ostinato #2" by choosing the instrumental beat for "Dark Horse" is false. Opp., p.
26   32. Her choice says nothing about why the song was financially successful.[33]

27
28   ---
[33] There is also no evidence that "the song's music video was also shaped by the beat's dark sound," or that this "dark sound" was created by Ostinato 2.

Mitchell Silberberg & Knupp LLP

11780345.1

## IV.     PLAINTIFFS MISAPPREHEND THE LAW ON OVERHEAD

Overhead expenses are appropriately deducted where they are "of actual assistance in the production, distribution or sale of the infringing product." *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 516 (9th Cir. 1985) (quoting *Kamar Int'l, Inc. v. Russ Berrie & Co.*, 752 F.2d 1326, 1333 (9th Cir. 1984)). In their Opening Brief, Defendants set forth the evidence of overhead incurred by Capitol and how that overhead "assist[ed]" the production, distribution, and sale of "Dark Horse." Mtn., pp. 48-50. This unrebutted evidence was more than sufficient to meet Defendants' burden of showing, "in general terms, how claimed overhead actually contributed to the production of the infringing work." *Frank Music*, 772 F.2d at 516.

In response, Plaintiffs contend that the jury appropriately disregarded all of Capitol's overhead costs, supporting that erroneous contention solely with a misapplication of the law and selective citation to the trial record. Plaintiffs' claim that overhead costs are deductible **only** if they are directly "caused" by the infringing goods (Opp., p. 35) is simply not the law. While a reference to "general and administrative expenses" with no connection to the infringing product was held insufficient in *Frank Music*, later cases have upheld the deduction of overhead costs such as "salaries, benefits, commissions, rent . . . , painting supplies, sales expenses, travel expenses, taxes, utilities outside services and insurance" inferred to have contributed to the infringing work. *See Folkens v. Wyland*, 2002 WL 1677708, at *6 (N.D. Cal. July 22, 2002) ("While not specifically attributable to [the infringing work], the Court can infer that these categories of costs contribute to [the infringing work]"; calculating profits after deducting "[the defendants'] calculations of indirect costs, which the Court has no reason to disbelieve").

Here, Capitol's profit & loss statement included a breakdown of overhead costs, and Mr. Drellishak testified extensively regarding how these costs assisted in the sale and distribution of "Dark Horse." Mtn., pp. 49-50. When analyzed in light

Mitchell Silberberg & Knupp LLP

11780345.1

1   of the appropriate standard, it is clear that Capitol's overhead costs were both

2   specific and related to "Dark Horse," and more than sufficient to sustain

3   Defendants' burden. *See Folkens*, 2002 WL 1677708, at *6.[34]

4         The jury's complete disregard for each category of overhead costs, despite

5   extensive trial testimony linking such costs to "Dark Horse," was improper.[35]

6   **V.   PLAINTIFFS HAVE FAILED TO SHOW THAT, IN THE**
7   **ALTERNATIVE, A NEW TRIAL SHOULD NOT BE GRANTED**

8         **A.   <u>Plaintiffs Distort And Unnecessarily Limit The Rule 59 Standard</u>**

9         Plaintiffs misleadingly state that a new trial is warranted *only* "where the

10   verdict is contrary to the clear weight of the evidence and the verdict results in the

11   miscarriage of justice." Opp., p. 36. This is contrary to established Ninth Circuit

12   law and significantly discounts the discretion afforded to the trial court in deciding

13   whether to order a new trial. Indeed, the Ninth Circuit recognizes that a new trial

14   may be granted *either* where the verdict is against the clear weight of the evidence

15   or "for **any reason** necessary to prevent a miscarriage of justice." *Experience*

16   *Hendrix L.L.C. v. Hendrixlicensing.com*, 762 F.3d 829, 841 (9th Cir. 2014)

17   (emphasis added). As explained in Defendants' Opening Brief (Mtn., pp. 50-52),

18   these other reasons include misconduct by counsel and witnesses and excessive

19   damages awards. Moreover, a new trial can be ordered based on "cumulative error

20   in a civil trial … even if each error standing alone may not be prejudicial." *Jerden*

---

21   [34] Plaintiffs contend that Capitol's profit number actually should have been ***higher***
22   because there was no basis for the jury to deduct the royalties accrued to the writers of "Dark Horse." Opp., pp. 35-36. Plaintiffs did not make a Rule 50 motion
23   and waived any argument challenging the verdict. *StrikePoint Trading, LLC v. Sabolyk*, 528 F. App'x 731, 731 (9th Cir. 2013). This argument is also
24   preposterous. Mr. Drellishak testified the accrued royalties were payments owed or made to the "Dark Horse" artists and writers. WD, Ex. 9, pp. 1458 l. 8-1460 l. 23.

25   [35] As discussed in the Opening Brief, if the Court does not grant judgment as a
26   matter of law, it should find that the award is contrary to the clear weight of authority and excessive. Mtn., pp. 58-59. Plaintiffs' only additional argument in
27   opposing remittitur is that Defendants "distort the evidence" by arguing that Plaintiffs offered no evidence that they are entitled to 45% of Defendants' profits.
28   Opp., p. 40. As discussed above, Dr. Decker's testimony about the number of seconds that Ostinato 2 plays says nothing about its **value** to "Dark Horse."

*v. Amstutz*, 430 F.3d 1231, 1240-41 (9th Cir. 2005).

### B. Plaintiffs Fail To Rebut Defendants' Showing That The Jury's Verdict Was Against The Clear Weight Of The Evidence

As set forth above and in Defendants' Opening Brief, the jury's findings as to liability were contrary to the clear weight of the evidence and, at minimum, a new trial should be ordered. Plaintiffs' arguments in opposition are easily rejected.

First, Plaintiffs incorrectly claim that "Defendants' evidence was not unimpeached or uncontradicted," without citing a single example of such alleged impeachment or contradiction (because none exist). Opp., p. 38. Defendants' evidence at trial was objectively **not** impeached or contradicted; in contrast, Plaintiffs' evidence and witnesses were on numerous occasions.

Second, Plaintiffs wrongly assert that a new trial would result in the Court "improperly substitut[ing] its evaluations for those of the jurors" and "encroach[] upon [their] right to a jury trial and to have the jury determine the issues pertaining to their claims." [36] Opp., p. 38. However, as Plaintiffs' own cited authority recognizes, a judge's "power to set aside the verdict is … **far from being a denigration or usurpation of a jury trial**" and "has long been regarded as **an integral part of trial by jury** as we know it." *Landes Const. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987) (emphases added).[37] In ruling on a motion for new trial, "the district judge ha[s] the right, **and indeed the duty**, to

---

[36] Plaintiffs rely on a number of authorities to support this flawed argument, none of which applies. In *Tortu v. Las Vegas Metro Police Dept.*, 556 F.3d 1075, 1079, 1084 (9th Cir. 2009), the plaintiff presented "significant medical evidence of his injuries" and the district court impermissibly "discounted" that evidence. Here, Plaintiffs presented almost no evidence supporting their claims. *Tennant v. Peoria & Pekin Union Ry.*, 321 U.S. 29, 35 (1944) involved the grant of judgment as a matter of law, to which a different standard is applied. *Angle v. Sky Chief, Inc.*, 535 F.2d 492, 494 (9th Cir. 1976) does not apply because the plaintiff-movant's "[e]vidence regarding the liability of [two of the defendants] was in conflict."

[37] The facts of *Landes* are not applicable here. That case involved whether an oral contract existed between the parties, and as a result, the trial "consisted of little more than a swearing contest." 833 F.3d at 1371. That is entirely different from here, where Defendants introduced extensive documentary evidence and expert testimony demonstrating the weakness of Plaintiffs' infringement claim.

Mitchell Silberberg & Knupp LLP

11780345.1

38

1  weigh the evidence as [she] saw it, and to set aside the verdict of the jury, even

2  though supported by substantial evidence, where, in [her] conscientious opinion,

3  the verdict is contrary to the clear weight of the evidence." *Murphy v. City of Long*

4  *Beach*, 914 F.2d 183, 187 (9th Cir. 1990) (emphasis added). This Court should

5  perform its duty to weigh the evidence and determine that Defendants presented

6  unimpeached, uncontradicted, credible evidence justifying a new trial on liability.[38]

7      **C.   Plaintiffs' Effort To Avoid The Consequences Of Their Counsel's And Witness' Repeated Misconduct Is Unavailing**

8

9          **1.   Dr. Decker's Testimony Regarding "Musical Borrowing" Was Improper And Prejudicial**

10      Nothing in Plaintiffs' Opposition refutes that Dr. Decker's testimony

11  repeatedly violated the Court's Orders to Defendants' great prejudice. Critically,

12  Plaintiffs concede that testimony regarding "copying" is improper testimony on the

13  ultimate issue. Opp., pp. 39-40. However, Plaintiffs seek to insulate Dr. Decker's

14  testimony from violating that acknowledged rule by implausibly claiming "musical

15  borrowing" is not the equivalent of copying, but rather of "substantial similarity."

16  *Id.*, p. 40. It is disturbing that Plaintiffs would argue this when it is directly

17  contradicted by Dr. Decker's own emphatic testimony: **"Borrowing means**

18  **copying in this respect."** WD, Ex. 3, p. 427 ll. 4-11 (emphasis added); Mtn., p. 53.

19      It is equally disturbing that Plaintiffs ignore this Court's recognition that Dr.

20  Decker equated "borrowing" with "copying" and not with substantial similarity

21  when it cautioned during his testimony that "borrowing" is "a jury question." *See*

22  WD, Ex. 3, p. 463 ll. 18-19. Dr. Decker's testimony on "musical borrowing" is no

23  different from the testimony regarding "reasonableness" and "foreseeability" in

24

---

25  [38] Plaintiffs also claim that a new trial should not be ordered because another possible basis for the jury's findings on liability is "subconscious copying." Opp.,

26  p. 38 n. 20. However, "subconscious copying" is not an independent theory of copyright liability. Rather, this concept merely acknowledges that copyright

27  infringement does not have a scienter requirement. Plaintiffs' failure to adduce sufficient evidence of access and substantial similarity applies regardless of whether the argument is conscious or subconscious copying. *Compare* Dkt. 441,

28  Jury Instr. 35 (Copying) *with* Jury Instr. 39 (Subconscious Copying).

Mitchell
Silberberg &
Knupp LLP

11780345.1

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JMOL OR NEW TRIAL**

Plaintiffs' cited authority, *Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir. 1992), which Plaintiffs concede was improper.

Plaintiffs also wrongly contend that Defendants waived a new trial on this basis by failing to object at the first opportunity. Opp., p. 40. But Defendants *did* object at the first opportunity, *i.e.*, when it first became apparent that Dr. Decker was equating "musical borrowing" with "copying." WD, Ex. 3, p. 427 ll. 12-22. The portion of the testimony cited by Plaintiffs in opposition occurred *well after* Defendants' first objection to this testimony. Plaintiffs also ignore that Defendants objected to Dr. Decker's testimony regarding "musical borrowing" numerous other times, which prompted the Court to strike the testimony and caution the witness and Plaintiffs' counsel repeatedly. *Id.*, p. 463 ll. 8-20; 476 ll. 3-20. Defendants were not required to object to every single instance of Dr. Decker's improper testimony. *Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 346 (9th Cir. 1995) ("[C]onstant objections are certainly not required, as they could antagonize the jury") (citations and quotation marks omitted).[39]

Finally, Defendants were grossly prejudiced by this testimony. Despite this Court's clear instructions, Plaintiffs' counsel "repeatedly and impermissibly elicited testimony and made reference to matters previously ruled inadmissible 'with the sole purpose of bringing to the jury something it should not have heard.'" *Anheuser-Busch*, 69 F.3d at 347 (granting new trial). Plaintiffs' contention that there was no prejudice because the Court struck Dr. Decker's testimony regarding "musical borrowing" is not credible. Opp., p. 41. Striking testimony and giving a curative instruction does not provide relief where, as here, Dr. Decker repeatedly testified regarding "musical borrowing," including *after* this Court's admonitions

---

[39] The cases relied on by Plaintiffs are inapposite. In *Gant v. Vanderpool*, 350 F. App'x 181, 183-84 (9th Cir. 2009), the jury was exposed to two exhibits that the plaintiff "never objected to admission of." In *Mitchell v. Black & Decker (USA) Inc.*, 6 F. App'x 652, 653 (9th Cir. 2001), which is not citable under Ninth Cir. R. 36-3, the plaintiff "failed to object to any of the[] statements" at issue. Here, on the other hand, Defendants objected to Dr. Decker's testimony numerous times.

Mitchell
Silberberg &
Knupp LLP

11780345.1

1  and instruction. Mtn., pp. 53-54. The jury's repeated exposure to the phrase

2  "musical borrowing" clearly contributed to its finding for the Plaintiffs.[40] Indeed,

3  where there is repeated misconduct during trial, "[c]ourts have recognized that

4  cautionary instructions to the jury may be 'insufficient to immunize the jury from

5  the improper and inflammatory remarks' of opposing counsel." *Cones v. Cty. of*

6  *Los Angeles*, 2016 WL 7438817, at *9 (C.D. Cal. Sept. 28, 2016) (citation omitted)

7  (granting new trial due to repeated misconduct).[41]

8  **2.  Dr. Decker's Testimony Regarding The Intrinsic Test Was Improper And Prejudicial**

9  Plaintiffs' Opposition fails to demonstrate that Dr. Decker did not

10  improperly testify regarding the intrinsic test.[42] Plaintiffs engage in wordplay by

11  claiming Defendants have "conflate[d] 'subjective' with 'sensory'" and thus

12  "erroneously label[ed] [Dr. Decker's testimony] as subjective." Opp., p. 41.

13  According to Plaintiffs, "[t]he true test as to whether the song analysis is extrinsic

14  or intrinsic is whether the analyzer is scrutinizing the song's musical elements

15  (extrinsic) or the *total sense and* feel of the song *as a whole* (intrinsic)." Opp., pp.

16  41-42. However, a "sensory" perception by Dr. Decker is the same as a subjective

17  view of the "sense and feel" of a song. As this Court already properly recognized

18  during trial, Dr. Decker expressly testified as to the "ordinary person's"

19  impressions of the works at issue. WD, Ex. 3, pp. 460 l. 23-461 l. 15 ("layperson"

20  would not be able to tell that "Dark Horse" and "Joyful Nose" are in different

---

[40] Plaintiffs claim that Defendants could not show gross injustice because "both parties were allowed to elicit the same expert testimony" regarding "musical borrowing." Opp., p. 41. This is false and is belied by the evidentiary record. Defendants' expert Dr. Ferrara testified only regarding his conclusions as to the similarities of the works, and not regarding "copying" or "musical borrowing."

[41] *Medina v. Metro. Interpreters & Translators, Inc.*, 139 F. Supp. 3d 1170, 1177 (S.D. Cal. 2015) is not applicable. The improper testimony there consisted only of a "brief reference" that was immediately stopped by the court. Here, Dr. Decker's improper testimony was extensive and continued despite Court instruction.

[42] The intrinsic test "examines **an ordinary person's** subjective impressions of the similarities between two works" as a whole, which is why it "is exclusively the province of the jury." *Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072, 1077 (9th Cir. 2006) (emphasis added).

Mitchell Silberberg & Knupp LLP

11780345.1

41

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JMOL OR NEW TRIAL**

1  keys); *id.,* p. 524 ll. 17-21 ("you feel" the repetition of the ostinatos and "hear[s] it

2  over and over again"). Plaintiffs also contend that Dr. Decker's testimony did not

3  violate this Court's *in limine* Order because he purportedly did not testify as to

4  how the works "are aurally perceived by the lay listener." Opp., p. 44 (quoting Dkt.

5  403, pp. 31-32). As explained above, this argument is patently incorrect.[43]

### 3. "Striking Similarity" Testimony In Contravention Of The Court's Order Was Improper And Prejudicial

7  Plaintiffs' arguments that Dr. Decker's testimony of striking similarity was

8  not improper are likewise unavailing. First, Plaintiffs make the disingenuous

9  argument that Dr. Decker's testimony was not in violation of the Court's *in limine*

10  Order because the Order does not preclude the use of the word "striking," and only

11  precludes Plaintiffs from arguing that they need not prove access because the

12  works are "strikingly similar." Opp., p. 44. Thus, according to Plaintiffs, Dr.

13  Decker was free to use the word "striking" in its "ordinary colloquial sense." *Id.*

14  This is nonsensical. During the *in limine* briefing, Plaintiffs expressly stated their

15  intention that Dr. Decker's testimony would "support their argument at trial that

16  the works are strikingly similar." Dkt. 403, p. 6. Accordingly, in precluding

17  Plaintiffs from arguing that the striking similarity standard of access, this Court

18  necessarily precluded Plaintiffs from eliciting "striking similarity" testimony

19  altogether. Even assuming that Plaintiffs initially understood the Order to mean

20  something else, any confusion was dispelled when the Court sustained Defendants'

21  objection to Dr. Decker's first use of the word "striking." Nonetheless, Dr. Decker

22  continued to improperly use the word "striking" to describe his opinions.

---

[43] Plaintiffs also attempt to explain away Dr. Decker's improper testimony by misleadingly claiming that Defendants' expert Dr. Ferrara also used the word "hear." Opp., p. 43 n.24. Plaintiffs miss the point. The mere use of the word "hear" by an expert does not invade the province of the jury. It is the substance of that testimony that dictates its impropriety. Unlike Dr. Decker, Dr. Ferrara did not testify as to the layperson's impressions of the similarities or differences between two works at issue. Rather, Dr. Ferrara's used the word "hear" to describe the specific musical elements that he was testifying about, to identify the various portions of the two works that were played during his testimony, and to identify the prior artworks that he played for the jury during trial. This was entirely proper.

Plaintiffs also argue that the testimony was not improper because the jury would have "no reason to ascribe any significance to" the use of the term "striking" since it was never instructed as to the differences between substantial and striking similarity. Opp., p. 44. Common sense and a basic understanding of the English language dictates that "striking" similarities are necessarily more significant than "substantial" ones. This is precisely what the law recognizes. The jurors did not need to be instructed on the law as to these issues to know that "striking" similarities are more significant than "substantial" similarities.

Plaintiffs' final argument—that Defendants were not prejudiced by Dr. Decker's repeated use of the word "striking" because of the Court's curative instruction—is likewise unconvincing. Opp., p. 45. As explained above, curative instructions do not automatically prevent prejudice. *Supra*, pp. 40-41. Moreover, given the jury's clear disregard for Plaintiffs' lack of access evidence in coming to its verdict, it is apparent that Dr. Decker's repeated references to the purported "striking" similarities between the works left the jury with the impression that the works at issue were "strikingly" as opposed to "substantially" similar.

### 4.    Plaintiffs' Counsel's Statements Regarding The Relief Sought By Plaintiffs Were False And Highly Prejudicial

Plaintiffs similarly attempt to explain away their counsel's false and inflammatory statements during closing argument that Defendants would not be financially harmed by an adverse verdict. None of Plaintiffs' excuses have merit.

Plaintiffs first claim their counsel's statements were accurate (and thus proper) because, at trial, Plaintiffs only sought a percentage of Defendants' pre-trial profits and did not, at the time, seek future profits or royalty payments, or an injunction. Opp., pp. 45-46. That is not correct. Mr. Kahn's statements were about what would happen to Defendants' future earnings; they had nothing to do with pre-trial profits. Mr. Kahn definitively averred that Plaintiffs would not be seeking any *further* relief from Defendants whatsoever: "This is the plaintiffs['] **one and**

1   **only opportunity** to seek ... justice"; the "**last day for justice**"; "[Defendants will]

2   be **keeping 100 percent of the profits ... after today**" and "**a hundred percent of**

3   **their profits going forward**." Mtn., pp. 56-57 (emphases added). Plaintiffs'

4   disingenuous attempt to walk back these repeated false statements is unavailing.

5        Plaintiffs wrongly blame Defendants for not objecting to these statements

6   during closing.[44] Opp., p. 47. Defendants could not have objected then because, at

7   that time, Defendants did not know they were false. Their falsity was only made

8   clear by Mr. Kahn's email.[45] WD, Ex. 37. Even assuming that Defendants must

9   establish plain error due to their failure to object, that threshold is surely met here,

10  where Plaintiffs' counsel made objectively false statements regarding the relief

11  they sought during both phases of trial to induce sympathy for Plaintiffs and obtain

12  a verdict in their favor.[46] *See Hunt v. Rios*, 690 F. App'x 476, 479 (9th Cir. 2017).

13       Plaintiffs repeatedly flouted the Court's directives with improper testimony

14  and false statements. While each of these improprieties is enough to warrant a new

15  trial, considered together, they undoubtedly tainted the verdict.

16  **VI.   CONCLUSION**

17       The Court should grant judgment as a matter of law, or a new trial.

18

19

20

---

21  [44] Plaintiffs also contend that since Mr. Kahn's statements were made during closing argument, they were less prejudicial. Opp., p. 47. Plaintiffs ignore that Mr. Kahn made these false statements **repeatedly** in his closings during both the

22  liability and damages phases. Mr. Kahn's references to Defendants' future exploitation of "Dark Horse" during the **liability** phase was especially prejudicial,

23  given its utter irrelevance to the issues considered by the jury during that phase.

24  [45] Plaintiffs also falsely state that Mr. Kahn's email merely "add[ed] a standard reservation of rights regarding damages." Opp., p. 48. However, Plaintiffs' email

25  requested that Mr. Kahn confirm that Plaintiffs would not be seeking any future revenue or profits resulting from the exploitation of "Dark Horse." WD, Ex. 37. If Plaintiffs intended to stand by Mr. Kahn's statements at trial, Mr. Kahn could have

26  easily said so. Instead, he "reserve[d] all rights **and claims** regarding damages." *Id.*

27  (emphasis added). This by no means is a standard reservation of rights.

28  [46] The statements in *Settlegoode v. Portland Pub. Sch.*, 371 F.3d 503, 518 (9th Cir. 2004) were not patently false like Mr. Kahn's. As such, that case is inapplicable.

Mitchell
Silberberg &
Knupp LLP

11780345.1

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JMOL OR NEW TRIAL**

1   DATED: December 27, 2019          MITCHELL SILBERBERG & KNUPP LLP

2

3                                    By:  /s/ Aaron M. Wais
                                     Aaron M. Wais (SBN 250671)
4                                    Attorneys for Defendants Capitol Records,
                                     LLC, Jordan Houston, Lukasz Gottwald,
5                                    Sarah Theresa Hudson, Karl Martin Sandberg,
                                     Henry Russell Walter, WB Music Corp.,
6                                    Kobalt Music Publishing America, Inc., and
                                     Kasz Money, Inc.
7

8

9   DATED: December 27, 2019          GREENBERG TRAURIG, LLP

10

11                                   By:  /s/ Vincent H. Chieffo
                                     Vincent H. Chieffo (SBN 49069)
12                                   Attorneys for Defendant Katheryn Elizabeth
                                     Hudson p/k/a Katy Perry
13

14

15            **ATTESTATION REGARDING SIGNATURES**

16          Pursuant to Local Civil Rule 5-4.3.4(a)(2)(i), I hereby attest that all Parties,

17   on whose behalf this filing is jointly submitted, concur in this filing's content and

18   have authorized its filing.

19   DATED: December 27, 2019           /s/ Aaron M. Wais
                                      Aaron M. Wais
20

21

22

23

24

25

26

27

28

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JMOL OR NEW TRIAL**