1  Michael A. Kahn (pro hac vice)
   Kahn@capessokol.com
2  Jonathan S. Jones (pro hac vice)
   Jones@capessokol.com
3  CAPES SOKOL
   7701 Forsyth Blvd. 12th Floor
4  St. Louis, MO 63015
   (314) 721-7701
5
6  Eric. F. Kayira (pro hac vice)
   eric.kayira@kayiralaw.com
   KAYIRA LAW, LLC
7  200 S. Hanley Road, Suite 208
   Clayton, Missouri 63105
8  (314) 899-9381

9  Daniel R. Blakey (SBN 143748)
   blakey@capessokol.com
10 CAPES SOKOL
   3601 Oak Avenue
11 Manhattan Beach, CA 90266

12 *Attorneys for Plaintiffs*

13                 UNITED STATES DISTRICT COURT
14                CENTRAL DISTRICT OF CALIFORNIA

15 MARCUS GRAY, et al.,

16         Plaintiffs,                CASE NO. 2:15-cv-05642-CAS (JCx )

17         v.                         Honorable Christina A. Snyder

18 KATHERYN ELIZABETH             **PLAINTIFFS' OPPOSITION TO
   HUDSON, et al.,                MOTION FOR LEAVE TO FILE
19                                AMICUS CURIAE BRIEF**
           Defendants.
20
21                                Date: January 27, 2020
                                  Time: 10:00 a.m.
22                                Ctrm: 8D—8th Floor, First Street

23                                Filed: July 1, 2014
                                  Trial: July 17, 2019
24
25
26
27
28

## I. Introduction

A group of fifteen musicologists (the "Movants") seek leave of this Court to file an *Amicus Curiae* brief urging the Court to grant Defendants' Motion for Judgment as a Matter of Law or Motion for New Trial. (Dkt. 500). While the Movants present themselves as "friends of the Court," the more accurate term is "friends of the Defendants." Neither the Movants nor their proposed brief—which is deficient or improper in several respects—meets the legal standard required to appear as an *amicus*. Moreover, their brief relies, in part, upon inadmissible evidence outside the record in this case, which is both highly prejudicial to Plaintiffs and improperly considered under the legal standards for post-trial motions. As discussed below, the Court should deny the motion for leave to file an *Amicus Curiae* brief.

## II. Legal Standard for Granting Leave to File an *Amicus* Brief

"There is no inherent right to file an amicus curiae brief with the Court." *Nat'l Petrochemical & Refiners Ass'n v. Goldstene*, No. CVF10-163 LJO DLB, 2010 WL 2228471, at *1 (E.D. Cal. June 3, 2010), quoting *Long v. Coast Resorts, Inc.,* 49 F.Supp.2d 1177, 1178 (D.Nev.1999). This Court possesses broad discretion to either permit or reject the appearance of amicus curiae. *Gerritsen v. de la Madrid Hurtado,* 819 F.2d 1511, 1514 (9th Cir.1987).

The simply stated test for the propriety of such a brief is whether it can offer information that is "timely and useful." *Waste Management of Pennsylvania, Inc. v. City of York,* 162 F.R.D. 34, 36 (M.D.Pa.1995). More specifically, information may be useful in the amicus context when it falls within one of three categories: (i) a party is not represented competently or not represented at all, (ii) the Movants have unique information or perspective that can help the court beyond the help that the lawyers from the parties are able to provide, or (iii) the legal issues in the case have potential ramifications beyond the parties directly involved. *Rocky Mountain*

*Farmers Union v. Goldstene*, No. CVF092234LJODLB, 2010 WL 1949146, at *2 (E.D. Cal. May 11, 2010); *AmeriCare MedServices, Inc. v. City of Anaheim*, No. 816CV1596JLSAFMX, 2017 WL 1836354, at *1 n.3 (C.D. Cal. Mar. 28, 2017). Some courts have recognized the second prong as primary and exclusive, with the other two prongs being potential sources of proof for that sole criterion. *See Voices for Choices v. Illinois Bell Tel. Co.*, 339 F.3d 542, 545 (7th Cir. 2003) ("[T]he criterion for deciding whether to permit the filing of an amicus brief should be…whether the brief will assist the judges by presenting ideas, arguments, theories, insights, facts, or data that are not to be found in the parties' briefs. The criterion is more likely to be satisfied in a case in which a party is inadequately represented; or in which the would-be amicus has a direct interest in another case that may be materially affected by a decision in this case; or in which the amicus has a unique perspective or specific information that can assist the court beyond what the parties can provide.") [1]

Generally, a court does not address issues raised only in an amicus brief (in other words, not raised by the parties to the lawsuit). *Rocky Mountain Farmers Union* at *2, citing *Artichoke Joe's Cal. Grand Casino v. Norton,* 353 F.3d 712, 719 n. 10 (9th Cir.2003); *see also Trunk v. City of San Diego*, No. 06CV1597-LAB (WMC), 2007 WL 9776582, at *3 (S.D. Cal. Dec. 10, 2007) ("Parties and *amici* are reminded that *amici* may not formally raise issues or arguments.").

Finally, the proposed *amicus* should provide *neutral* assistance to the court. *In re Baldwin-United Corp.*, 607 F. Supp. 1312, 1327 (S.D.N.Y. 1985) citing *Sony Corp. v. Universal City Studios, Inc.,* 464 U.S. 417, 104 S.Ct. 774, 785 n. 16 (1984). "The term 'amicus curiae' means friend of the court, not friend of a party." *Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1063 (7th Cir.

---

[1] *Voices for Choices* was cited with approval by the Southern District of California in *Trunk v. City of San Diego*, No. 06CV1597-LAB (WMC), 2007 WL 9776582, at *1 (S.D. Cal. Dec. 10, 2007), and was noted as the basis for that court's standing order on amicus briefs.

1997). "[T]he partiality of an amicus is a factor to consider in deciding whether to allow participation." *Waste Management*, *supra,* 162 F.R.D. at 36. "When the party seeking to appear as *amicus curiae* is perceived to be an interested party or to be an advocate of one of the parties to the litigation, leave to appear *amicus curiae* should be denied." *Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.*, 149 F.R.D. 65, 82 (D.N.J. 1993).

### III. This Case Does Not Warrant an *Amicus* Brief.
#### A. The proposed *amicus* brief merely restates Defendants' arguments and does not present any unique argument or perspective.

The Movants' motion should be denied because their proposed brief merely restates and reargues a portion of Defendants' arguments. Their proposed brief presents no unique information or perspective that can assist the Court beyond what the counsel for the parties and the expert testimony presented at trial have already provided.

The proposed *Amicus* brief contains a single argument, namely the contention that "the alleged similarities between the ostinatos in question are not of original expression." (Dkt, 500-2, pp. 6-10). That issue has been exhaustively briefed by Defendants with extensive citations to the trial testimony of expert musicologists.[2] Because the Movants' proposed brief adds nothing new or useful to the analysis, the Court should deny leave to file. *Waste Management,,* 162 F.R.D. at 36; *AmeriCare MedServices, Inc.,* 2017 WL 1836354, at *1 n.3; *see also Barnes-Wallace v. Boy Scouts of Am.*, No. 00CV1726-J (AJB), 2004 WL 7334945, at *1 (S.D. Cal. Mar. 23, 2004) ("a district court lacking joint consent of the parties should go slow in accepting ... an amicus brief unless, as a party, although short of a right to intervene, the amicus has a special interest that justifies his having a say,

---

[2] Defendants have filed approximately 19 pages of briefing on this issue. *See* Dkt. 485, pp. 20-27; Dkt. 508, pp. 11-21.

or unless the court feels that existing counsel may need supplementary assistance," quoting *Strasser v. Doorley*, 432 F.2d 567, 569 (1st Cir. 1970)).

Moreover, the Movants do not present any unique insight or perspective beyond that of certain of the Defendants in this case. They claim to represent the interests of music composers, songwriters and musicians. (Dkt. 500, p. 4, l. 13; p. 5, l. 1-2; Dkt. 500-2, p. 4, l. 1-5; p. 12, l. 2-3, 14-15). But those interests are fully represented by the six individual Defendants and their respective legal counsel, thus obviating the need for input from the Movants. *Rocky Mountain Farmers Union*, supra, 2010 WL 1949146, at *2; *AmeriCare MedServices, supra,* 2017 WL 1836354, at *1 n.3.

**B. The proposed *amici's* arguments are speculative and are not supported by either the trial record or admissible evidence.**
  **i.   The Movants have improperly relied upon a highly partisan version of the trial evidence.**

"The ideal amicus curiae is one 'who, not as [a party], but, just as any stranger might, for the assistance of the court, gives information of some matter of law in regard to which the court is doubtful or mistaken, *rather than one who gives a highly partisan account of facts*.'" Michael Rustad & Thomas Koenig, *The Supreme Court and Junk Social Science: Selective Distortion in Amicus Briefs*, 72 N.C. L. Rev. 91, 95 (1993) (citing Bryan A. Garner, *A Dictionary of Modern Legal Usage* 40 (1987) (quoting *New England Patriots Football Club v. University of Colorado*, 592 F.2d 1196, 1198 n.3 (1st Cir. 1979)) (emphasis supplied). Here, the Movants have crossed that red line of neutrality through their one-sided account of the trial evidence, which includes adopting Defendants' inaccurate version of the record—a version Plaintiffs have challenged in their briefing, which preceded but was ignored by the Movants' filing.

The Movants' brief contains numerous inaccuracies and misstatements of the evidence without record citations. For example, they state, without citation to the record, that Dr. Decker testified that "the ostinato in 'Joyful Noise' takes 16 beats for all of the melodic content in that ostinato to be expressed before it repeats." (Dkt. 500-2, p. 10, Page ID# 10870). But Dr. Decker did not so testify. Indeed, Dr. Decker testified that the "Joyful noise" ostinato was eight notes in length. (*See*, e.g., July 19, 2019 Tr. 129:15 – 130:6; 130:5-13; 135:17-23; 137:21 – 138:5).

So, too, the Movants mischaracterize or ignore other testimony of Dr. Decker in the process of attacking his opinion of substantial similarity. (Dkt. 500-2, pp. 5-11). They claim that Dr. Decker "based his findings of musical similarity *entirely* on a combination of five commonplace and unremarkable musical elements he alleged were shared by 'Dark Horse' and 'Joyful Noise' . . ." (Id. at p. 5) (emphasis added). They continue by describing Dr. Decker's analysis as "cherry-picking an array of commonplace unprotectable musical elements and unprotectable sonic attributes." (Id. at p. 6). They further contend: "The most important elements of a musical composition are *melody, harmony and rhythm*…. and substantial similarity analysis between two popular songs almost invariably results in a question of melodic similarity." (Id. at p. 7) (emphasis in original). Finally, the Movants contend that "when there is no significant similarity of melody, harmony or rhythm, there can be no possibility of actionable similarity between two musical compositions." (Id. at p. 8). [3]

---

[3] Ironically, they cite Fishman, J. P., *Music as a Matter of Law*, Harvard Law Review, Vol. 131, pp. 1861–1923 (2018) for their contention that melody reigns supreme in the analysis of musical copyright infringement (Dkt. 500-2 at p. 7). But Professor Fishman's prologue to that article undercuts that contention: "Recent judicial decisions are beginning to break down the old definitional wall around melody, looking elsewhere within the work to find protected expression…. A closer inspection reveals that, if anything, they are in fact more faithful than their predecessors. *As a factual matter, the notion that melody is the primary locus of music's value is a fiction*." Id. at 1862. (emphasis added).

6

**PLAINTIFFS' OPPOSITION TO MOTION FOR LEAVE TO FILE AMICUS CURIAE BRIEF**

In short, the Movants' brief is simply a one-sided "expert" opinion, with limited evidentiary analysis, that purports to contradict Dr. Decker's testimony at trial. They would have this Court supplant the jury's determinations and the parties' expert trial testimony with the Movants' opinions as to what elements are or are not distinctive, what elements are important in comparing two works, when substantial similarity may arise, etc. This is especially improper where those opinions are untested by the trial process (i.e., they were not subject to cross-examination, motions in limine, or rebuttal by the parties' experts). In fact, their brief assumes, without any analysis, that the thin copyright doctrine applies to this case, though that, too, was a jury question.

But perhaps most critically, the Movants' brief ignores Dr. Decker's extensive trial testimony in reaching his conclusions. Dr. Decker testified at length as to the distinctiveness of the "Joyful Noise" ostinato. (See, e.g. Dkt. 499-2, Ex. 1, pp. 16-30). Among other testimony, Dr. Decker distinguished Defendants' prior art examples and demonstrated how these were unconvincing illustrations that the "Joyful Noise" ostinato lacked distinctiveness.[4] Instead, he comprehensively demonstrated the opposite. Dr. Decker testified that he had never seen a third piece with the same descending contour of "Joyful Noise" and "Dark Horse" (Id. at pp. 17-18). The Movants fail to recognize, address, or attempt to analyze Dr. Decker's contrary testimony. As such, their brief merely adopts Defendants' position and ignores extensive relevant expert testimony of Dr. Decker.

Additionally, the only citations to the record in their proposed brief are to Defendants counsel Aaron Wais's Declaration and its exhibits (Dkt. 500-2, pp. 5, 9). That Declaration was submitted in support of the Defendants' motions and thus includes record citations favorable to the Defendants. Again, the Movants' record

---

[4] This is one reason why the trial process is important and why the Movants' attempt to introduce unidentified prior art examples at this stage should not be countenanced.

citations demonstrate that their brief is based upon bits and pieces of evidence favorable to Defendants. There is no indication that the entire record, or even Plaintiffs' citations thereto, was ever reviewed by the Movants or their counsel. As such, their slanted opinion is of no use to a district court.[5] *Leigh v. Engle*, 535 F.Supp. 418, 420 (N.D.Ill. 1982) (an amicus brief proffered by an amicus "with a partisan, rather than an impartial view" should be denied.); *Coleman v. Newsom*, 2019 WL 2410434, at *1 (E.D. Cal. June 7, 2019) (same); *Feld Entm't, Inc. v. Arena Grp. 2000, LP*, No. 06CV1077 J (WMC), 2006 WL 8455518, at *1–2 (S.D. Cal. June 2, 2006), quoting *Tiara Corp. v. Ullenberg Corp.*, 1987 WL 16612, at *1-2 (N.D. Ill. Sept. 1, 1987) (same, while also observing, "In recent years, the role of amici curiae has shifted from one of neutrality to *partisanship*, particularly at the appellate level. Such a shift is proper in appellate courts where, usually only issues of law are resolved; it *is not proper in a trial court*.") (emphasis added); *Ryan v. Commodity Futures Trading Commission, supra*, 125 F.3d at 1063-64 ("The vast majority of amicus curiae briefs are filed by allies of litigants and duplicate the arguments made in the litigants' briefs, in effect merely extending the length of the litigant's brief. Such amicus briefs should not be allowed. They are an

---

[5] The public statements of some of the Movants refute any pretension of scholarly neutrality. For example, Charles Cronin, PhD, one of the Movants, commented on this case in his blog as follows: "Until judges recognize and curb this perfidious—or perhaps merely witless—conflating of sound and music by 'expert' musicologists playing to the sympathies of bewildered jurors, we can expect a continuing blitz of meritless claims like this one, and the deleterious constraints and ambiguities they impose on popular musicians and the American music industry." (https://blogs.law.gwu.edu/mcir/case/marcus-gray-et-al-v-katy-perry-et-al/). Dr. Cronin has publicly vilified copyright plaintiffs and their legal counsel generally for their alleged venality and avariciousness, alluding to the alleged "abuse of the jury system by litigants and their contingency-fee attorneys in shakedowns of successful popular musicians." (https://blogs.law.gwu.edu/mcir/regrettable-denouement-in-the-blurred-lines-dispute/ ) Similarly, Robert W. Fink, PhD, another of the Movants, in commenting on Adam McNeely's YouTube video relating to this case (see https://variety.com/2019/music/news/forensic-musicologists-copyright-law-katy-perry-blurred-lines-1203423422/), which apparently formed part of his "research" for serving as one of the Movants herein stated, in part, "… [T]his stuff has to stop.… [P]eople think any trivial element of coincidence is the basis for a big payday."

abuse…*We are not helped by an amicus curiae's expression of a strongly held view about the weight of the evidence*."). (emphasis added). The Movants' proposed brief, which is unabashedly partisan, should thus be rejected.

    **ii.    The Movants improperly include "extra-record" evidence and "facts" subject to being stricken.**

In addition to distorting that actual evidentiary record of this case, the Movants also improperly attempt to interject "extra-judicial" evidence in urging the Court to "[overturn] the errant jury verdict" or "at the least, order a new trial." (Dkt. 500, p. 5)(Dkt. 500-2, p. 9-10). Specifically, the Movants state that "Amici Musicologists inputted CCCCBB into the RISM database and there were more than two thousand (2000) matches in all keys with the bulk coming from 18th and 19th century works." (Dkt. 500-2, pp. 9-10). They claim to have done the same with another database which supposedly revealed 26 matches. However, they do *not* (1) explain how RISM or Themefinder.org works, (2) provide transcriptions or even descriptions of the prior art examples, (3) explain what constitutes a "match" on these databases, (4) analyze whether these prior art examples are useful in determining whether the pitch sequence is common in pop music, given that most of the prior art was 1700s and 1800s compositions, or (5) explain whether any of the examples were repeating figures or if all were part of a larger tune. This "extra-judicial" evidence is clearly inappropriate, given that they are not expert witnesses and their opinions (and databases) have not been tested at trial.

The courts are clear that such "evidence" should be excluded: "Ordinarily, amicus curiae are non-parties who can only provide general information and assistance to the Court. Consequently, courts often decline to consider evidence submitted by an amicus curiae." *S.E.C. v. Private Equity Mgmt. Grp., Inc.*, No. CV 09-2901 PSG (EX), 2009 WL 2488044, at *6 n.5 (C.D. Cal. Aug. 10, 2009) (internal citations omitted). The reason is obvious: "The methodological rigor of

9
**PLAINTIFFS' OPPOSITION TO MOTION FOR LEAVE TO FILE AMICUS CURIAE BRIEF**

social science evidence introduced in trial courts is tested by such mechanisms as the rules of evidence, cross-examination, relevancy rulings and jury instructions. Challenges to experts and their qualifications are common throughout the litigation process, but do not exist when social science information does not come from the record [but, rather, from amici]." Rustad & Koenig *supra* at n. 10

Accordingly, the Movants should not be allowed to attempt to sway the Court's decision based upon "evidence" outside the trial record. *Metcalf v. Daley,* 214 F.3d 1135, 1141, n. 1 (9th Cir.2000); *High Sierra Hikers Ass'n v. Powell*, 150 F. Supp. 2d 1023, 1045 (N.D. Cal. 2001), *aff'd in part, rev'd in part sub nom. High Sierra Hikers Ass'n v. Blackwell*, 390 F.3d 630 (9th Cir. 2004).

### IV.   CONCLUSION

Plaintiffs respectfully request this Court deny the motion for leave to file the Amicus Curiae Brief.

Respectfully submitted,

/s/ Michael A. Kahn
Michael A. Kahn (pro hac vice)
Kahn@capessokol.com
Jonathan S. Jones (pro hac vice)
Jones@capessokol.com
CAPES SOKOL
7701 Forsyth Blvd., 12th Floor
St. Louis, MO 63105
Telephone: (314) 721-7701

Eric F. Kayira (pro hac vice)
Kayira Law, LLC

Daniel R. Blakey (SBN 143748)
blakey@capessokol.com
CAPES SOKOL
3601 Oak Avenue
Manhattan Beach, CA 90266

***Attorneys for Plaintiffs***