UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   **'O'**   **JS-6**

| Case No. | 2:15-CV-05642-CAS-JCx | Date | March 16, 2020 |
|---|---|---|---|
| Title | GRAY; ET AL. V. PERRY; ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Chia Mei Jui | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Michael Kahn (By Telephone) | Jeffrey Movit |
| | Aaron Wais |
| | Christine Lepera |
| | Gabriela Nourafchan |
| | Vincent Chieffo |

**Proceedings:**   DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, OR ALTERNATIVELY FOR A NEW TRIAL (ECF No. 483, filed October 9, 2019; ECF No. 435, filed July 25, 2019; and ECF No. 459, filed July 31, 2019)

PLAINTIFFS' MOTION FOR AN AWARD OF PREJUDGMENT INTEREST (ECF No. 488, filed October 10, 2019)

## I.   INTRODUCTION & BACKGROUND

This copyright infringement action concerns the allegation that an 8-note ostinato[1] from defendants' song "Dark Horse" infringes upon the plaintiffs' copyright in the musical composition of the 8-note ostinato in their song "Joyful Noise." Following a jury trial, the jury found for the plaintiffs, awarded damages, and the Court entered judgment. Now before the Court are defendants' renewed motions for judgment as a matter of law, or in the alternative for a new trial, as well as plaintiffs' motion for prejudgment interest on its damages award.

---

[1] An ostinato is a short musical phrase or rhythmic pattern repeated in a musical composition. See "Ostinato," Encyclopaedia Brittanica (15th ed. 2013).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O'  JS-6 |
|---|---|---|---|
| Case No. | 2:15-CV-05642-CAS-JCx | Date | March 16, 2020 |
| Title | GRAY; ET AL. V. PERRY; ET AL. | | |

Plaintiffs Marcus Gray (P.K.A. Flame), Emanuel Lambert, and Chike Ojukwu filed the operative third amended complaint on November 1, 2016, naming defendants Katheryn Elizabeth Hudson (P.K.A. Katy Perry), Jordan Houston (P.K.A. Juicy J), Lukasz Gottwald (P.K.A. Dr. Luke), Sarah Theresa Hudson, Karl Martin Sandberg (P.K.A. Max Martin), Henry Russell Walter (P.K.A. Cirkut), Kasz Money Inc., Capitol Records LLC, Kitty Purry Inc., UMG Recordings Inc., Universal Music Group Inc., WB Music Corp., BMG Rights Management (US) LLC, and Kobalt Music Publishing America, Inc. See ECF No. 172 ("TAC"). In substance, plaintiffs claim that the instrumental beat of the ostinato in "Joyful Noise" is protectable original expression, and that the defendants had access to and copied that protectable original expression when they composed an allegedly infringing ostinato for their song "Dark Horse."

The Court held a jury trial from July 17, 2019, through August 1, 2019. The jury entered verdicts finding defendants liable to plaintiffs for copyright infringement, and awarding plaintiffs $2.8 million in damages. The Court entered judgment in favor of plaintiffs on September 11, 2019. See ECF No. 473. Defendants filed the instant renewed motions for judgment as a matter of law, or in the alternative for a new trial, on October 9, 2019. See ECF No. 485 ("JMOL"). Plaintiffs filed an opposition on November 20, 2019. See ECF No. 499 ("JMOL Opp."). Defendants filed a reply on December 27, 2019. ECF No. 508 ("JMOL Reply"). In addition to these submissions from the parties, a group of musicologists submitted an amicus brief in support of defendants' motion for renewed judgment as a matter of law, or in the alternative a new trial, on January 9, 2020. See ECF No. 514 ("Am. Br.").

Plaintiffs, meanwhile, filed a motion for an award of prejudgment interest on October 10, 2019. See ECF No. 488 ("MPJI"). Defendant Katy Perry filed an opposition on November 20, 2019. See ECF No. 498 ("Perry MPJI Opp."). Perry also joined in the opposition filed by the balance of the defendants, which was filed on the same day. See ECF No. 499 ("MPJI Opp."). Plaintiffs filed a reply on December 27, 2019. See ECF No. 505 ("MPJI Reply").

Having reviewed the trial record, the parties' submissions, and the submissions from amici, the Court finds and concludes as follows.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O'  JS-6 | |
|---|---|---|---|---|
| Case No. | 2:15-CV-05642-CAS-JCx | Date | March 16, 2020 | |
| Title | GRAY; ET AL. V. PERRY; ET AL. | | | |

## II.     LEGAL STANDARDS

### A.     Judgment as a Matter of Law

Judgment as a matter of law is appropriate when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue[.]" Fed. R. Civ. P. 50(a)(1); see also Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 149 (2000). If the court does not grant a motion for judgment as a matter of law pursuant to Rule 50(a), a party may file a renewed motion for judgment as a matter of law after the trial. See Fed. R. Civ. P. 50(b). It is well-settled that the standard for judgment as a matter of law is the same as the standard for summary judgment. Reeves, 530 U.S. at 150 (citing Anderson v. Liberty Lobby, Inc., 447 U.S. 242, 250–52 (1986)). The prior denial of summary judgment does not preclude a district court from later granting judgment as a matter of law pursuant to Rule 50 because the latter tests the sufficiency of the evidence actually presented at trial. See Lies v. Farrell Lines, Inc., 641 F.2d 765, 772 (9th Cir. 1981) (explaining that, after trial, a court may have "a better basis on which to determine the existence of material issues," including that there was never a true issue of fact at all).

Judgment as a matter of law is accordingly appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the trial record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts on which a reasonable jury could have relied in order to reach the verdict that the motion challenges. Anderson, 477 U.S. at 250. In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must then decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 n. 3 (9th Cir. 1987). The Court must "view the trial evidence in the light most favorable to the non-moving party, and if conflicting inferences may be drawn from the facts presented at trial, the case must go to the jury." Reed v. Lieurance, 863 F.3d 1196, 1204 (9th Cir. 2017) (internal marks and citations omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | **'O'**  **JS-6** |
|---|---|---|---|
| Case No. | 2:15-CV-05642-CAS-JCx | Date | March 16, 2020 |
| Title | GRAY; ET AL. V. PERRY; ET AL. | | |

In entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record. <u>Reeves</u>, 530 U.S. at 150. In so doing, however, the Court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. <u>Id.</u> (citations omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." <u>Anderson</u>, 447 U.S. at 255. Thus, although the Court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. <u>Reeves</u>, 530 U.S. at 151 (citing 9B C. Wright & A. Miller, <u>Federal Practice and Procedure</u>, § 2529 (3d ed. 2019)). In other words, the Court should give credence to the evidence favoring the nonmovant as well as that "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." <u>Reeves</u>, 530 U.S. at 151 (citing Wright & Miller, <u>supra</u>, § 2529).

**B.     Motion for a New Trial**

A court may grant a new trial if the jury's verdict is against the clear weight of the evidence. <u>Landes Const. Co., Inc. v. Royal Bank of Can.</u>, 833 F.2d 1365, 1371 (9th Cir. 1987). In considering such a Federal Rule of Civil Procedure 59 motion, unlike a motion for judgment as a matter of law, the court may "weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party." <u>Id.</u> at 1371–72 (citing 11 C. Wright & A. Miller, <u>Federal Practice and Procedure</u>, § 2806, at 48–49 (1973) ("If, having given full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed, it is to be expected that he will grant a new trial.")).

Additionally, if the Court "determines that the damages award is excessive, it . . . may grant defendant's motion for a new trial or deny the motion conditional upon the prevailing party accepting a remittitur." <u>Fenner v. Dependable Trucking Co.</u>, 716 F.2d 598, 603 (9th Cir. 1983). The district court may grant a new trial even though substantial evidence supports the jury's verdict. <u>See</u> <u>Oltz v. St. Peter's Comm. Hosp.</u>, 861 F.2d 1440, 1452 (9th Cir. 1988).

**C.     Prejudgment Interest**

"Prejudgment interest is available under the Copyright Act" in the discretion of the district court in situations of "undisputed copyright infringement" to "discourage needless delay and compensate the copyright holder for the first time it is deprived of lost profits or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | **'O'**   **JS-6** |
|---|---|---|---|
| Case No. | 2:15-CV-05642-CAS-JCx | Date | March 16, 2020 |
| Title | GRAY; ET AL. V. PERRY; ET AL. | | |

license fees." <u>Polar Bear Productions, Inc. v. Timex Corp.</u>, 384 F.3d 700, 716 & n. 12, 718 (9th Cir. 2004). Unlike claims for prejudgment interest that arise under many state laws, "federal law does not require the denial of prejudgment interest just because [a] claim was not 'liquidated.'" <u>Golden State Transit Corp. v. City of Los Angeles</u>, 773 F. Supp. 204, 212 (C.D. Cal. 1991). "Federal courts clearly have the latitude to award prejudgment interest in cases arising under the patent, copyright, antitrust laws, and tax laws" where the "claims are . . . not liquidated." <u>Id.</u>

In "vigorously contested" cases, however, a district court may properly decline to impose prejudgment interest. <u>Societe Civile Succession Guino v. Renoir</u>, 305 F. App'x 334, 339 (9th Cir. 2008) (denying prejudgment interest because infringement was not "undisputed"). If prejudgment interest is granted, it should be awarded as "an element of compensation, [and] not [as] a penalty." <u>Oracle USA, Inc. v. Rimini St., Inc.</u>, 879 F.3d 948, 964 (9th Cir. 2018) (quoting <u>Barnard v. Theobald</u>, 721 F.3d 1069, 1078 (9th Cir. 2013)).

## III.   JUDGMENT AS A MATTER OF LAW, OR FOR A NEW TRIAL

To prove copyright infringement, a plaintiff must establish (1) "ownership of a valid copyright," and (2) "copying of constituent elements of the work that are original." <u>Feist Publications, Inc. v. Rural Tel. Serv. Co.</u>, 499 U.S. 340, 361 (1991).

The sole issue at trial concerned the second element: whether defendants' "Ostinato 2" in "Dark Horse" infringed upon plaintiffs' ostinato in "Joyful Noise" by copying constituent elements of plaintiffs' ostinato that are original. <u>See</u> ECF No. 486 ("Trial Tr.") at 1349:24-1350-3. This kind of copying can be proven either (a) with direct evidence that the defendant actually copied the work, or (b) by showing that the defendant (i) had access to the work and (ii) that the works are "substantially similar." <u>L.A. Printex Indus., Inc. v. Aeropostale, Inc.</u>, 676 F.3d 841, 846 (9th Cir. 2012). The plaintiffs only assert copying pursuant to the latter method of proof: substantial similarity and access. <u>See</u> Trial Tr. at 1163:21-1164-20.

Substantial similarity is determined by "a two-part test of extrinsic similarity and intrinsic similarity." <u>Three Boys Music Corp. v. Bolton</u>, 212 F.3d 477, 485 (9th Cir. 2000). The extrinsic test raises a question of law that "may often be decided as a matter of law" by the court. <u>See</u> <u>Benay v. Warner Bros. Entm't</u>, 607 F.3d 620, 624 (9th Cir. 2010); <u>e.g.</u>, <u>Morrill v. Stefani</u>, 338 F. Supp. 3d 1051, 1058 (C.D. Cal. 2018) ("A plaintiff who cannot satisfy the extrinsic test necessarily cannot prevail on a copyright claim as a matter of law.")

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES – GENERAL | | 'O'   JS-6 | |
|---|---|---|---|
| Case No. | 2:15-CV-05642-CAS-JCx | Date | March 16, 2020 |
| Title | GRAY; ET AL. V. PERRY; ET AL. | | |

(citing Funky Films, Inc. v. Time Warner Entm't Co., L.P., 462 F.3d 1072, 1077 (9th Cir. 2006)).  The extrinsic test "requires that the plaintiff identify concrete elements based on objective criteria" that the works are similar.  Three Boys Music, 212 F.3d at 485.  There are two steps to the analysis: the Court (1) identifies the protected elements of the plaintiff's work, and then (2) determines whether the protected elements are objectively similar to the corresponding elements of the allegedly infringing work.  See Malibu Textiles, Inc. v. Label Lane Int'l, Inc., 922 F.3d 946, 952-53 (9th Cir. 2019).  A collection of otherwise unprotected elements may be found eligible for copyright protection under the extrinsic test, but "only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship."  Satava v. Lowry, 323 F.3d 805, 811 (9th Cir. 2003).  For a plaintiff that seeks to apply this theory of protection to "works where there is a narrow range of available creative choices, the defendant's work would necessarily have to be 'virtually identical' to the plaintiff's work in order to be substantially similar."  Skidmore v. Led Zeppelin, No. 16-56057, slip op. at 48 n. 13 (9th Cir. March 9, 2020) (en banc) (citing Satava, 323 F.3d at 811 and adding that the Ninth Circuit has "at times described this result as the work having a 'thin' copyright").  Infringement claims involving a combination of individually unprotected musical elements are subject to this analysis.  Id.[2]  Only after "the extrinsic test is satisfied" does a

---

[2] Plaintiffs argue that Williams v. Gaye, 895 F. 3d 1106 (9th Cir. 2018), foreclosed the application of the "virtually identical" standard to musical copyright cases.  See Opp. at 5-6.  Although the Court had accepted this argument in its summary judgment order, see ECF No. 299 ("MSJ Order") at 10 n.6, the Court later reconsidered this ruling and instructed the jury to apply the "virtually identical" standard if it found only thin protection.  See Jury Instruction No. 34 ("[W]hen a work embodies only the minimum level of creativity necessary for copyright, it is said to have 'thin' copyright protection. A thin copyright only protects against virtually identical copying.").  No party objected to this instruction.  See Trial Tr. at 1095:1-3 ("THE COURT: I'm going to leave the thin copyright protection language in.  But does that take care of this? MR. MOVIT: Your Honor, we were unclear whether Your Honor has ruled on [a different instruction, a conversation about which followed].").  In view of the en banc opinion in Led Zeppelin, cited above, the Court concludes that this instruction correctly states the applicable law.  See Led Zeppelin, No. 16-56057, slip op. at 48 n. 13; see also id. at 54-56 (Watford, J., concurring) (distinguishing Williams on this basis, opining that the works at issue would need to be "virtually identical" to be substantially similar, and finding no infringement as a matter of law pursuant to that test).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   **'O'**   **JS-6**

| Case No. | 2:15-CV-05642-CAS-JCx | Date | March 16, 2020 |
|---|---|---|---|
| Title | GRAY; ET AL. V. PERRY; ET AL. | | |

"factfinder"—in this case, the jury—reach and "appl[y] the intrinsic test." Malibu Textiles, 922 F.3d at 952-53. This test raises a question of fact that "asks 'whether the ordinary, reasonable person would find the total concept and feel of the works to be substantially similar.'" Id. (quoting Pasillas v. McDonald's Corp., 927 F.2d 440, 442 (9th Cir. 1991) (internal quotations omitted)).

A plaintiff that proves substantial similarity must still prove access. "Proof of access requires an opportunity to view or to copy plaintiff's work." Loomis v. Cornish, 836 F.3d 991, 995 (9th Cir. 2016) (citation omitted). "To prove access, a plaintiff must show a

---

Other factors corroborate this conclusion. First, in Swirsky v. Carey, 376 F.3d 841 (9th Cir. 2004)—a musical composition copyright case—the Ninth Circuit held that "substantial similarity can be found in a combination of elements, even if those elements are individually unprotected." Id. at 848 (citing Satava, 323 F.3d at 811 and Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1445 (9th Cir. 1994)). Satava and Apple Computer announced the Ninth Circuit's thin copyright doctrine and concomitant "virtually identical" standard. By citing those cases in a musical composition case, the Swirsky court indicated that the standard applies in the musical context.

Second, while Williams elaborated on a limitation of the Swirsky holding, it did not expressly overrule it. The Williams court extensively relied on Swirsky to hold that "the Gayes' copyright is not limited to only thin copyright protection, and the Gayes need not prove virtual identity to substantiate their infringement action." Williams, 895 F.3d at 1120. But "the Gayes' copyright" at issue concerned the elements comprising the *entire musical composition* for the song "Got To Give It Up," not a specific phrase of that composition. The Williams court explained that its holding was based on the undisputed fact that all music is "comprised of a large array of elements, some combination of which is protectable by copyright," and that a broader rule—one that reduced all music to a combination unprotectable elements subject only to thin protection—might prevent any musical compositions from receiving the full benefit of the copyright law. See id. at 1120 (quoting Swirsky, 376 F.3d at 849). If anything, Williams stands for the proposition that the "thin" copyright protection doctrine, as applied to musical compositions, ordinarily will not apply to musical works as a whole. See Led Zeppelin, No. 16-56057, slip op. at 54-56 (Watford, J., concurring) (suggesting that interpretation). To the extent that proposition even survives the en banc decision in Led Zeppelin, that rule, as explained below, would have no application to this case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**    **JS-6**

| Case No. | 2:15-CV-05642-CAS-JCx | Date | March 16, 2020 |
| Title | GRAY; ET AL. V. PERRY; ET AL. | | |

reasonable possibility, not merely a bare possibility, that an alleged infringer had the chance to view the protected work." Art Attacks Ink, LLC v. MGA Entm't Inc., 581 F.3d 1138, 1143 (9th Cir. 2009); see also 4 Nimmer on Copyright § 13.02[A] (2019) (stating same). "Where there is no direct evidence of access, circumstantial evidence can be used to prove access either by (1) establishing a chain of events linking the plaintiff's work and the defendant's access, or (2) showing that the plaintiff's work has been widely disseminated." Id. Plaintiffs argue only the latter "circumstantial" type of access. See Trial Tr. at 1164:7-14.

Defendants move for judgment as a matter of law at every step of this copying analysis. See JMOL at 15-40. In addition, defendants contend that they are entitled to judgment as a matter of law on a series of other defenses and damages issues. Id. at 40-50. At a minimum, defendants argue that the Court should exercise its discretion to weigh the evidence and order a new trial pursuant to Federal Rule of Civil Procedure 59. Id. at 50-59. The Court addresses each of these arguments in turn.

### A.    Copying

Plaintiffs' theory of copying requires them to prove substantial similarity and access. Aeropostale, 676 F.3d at 846. Defendants argue that plaintiffs failed to present evidence that a reasonable jury could have relied upon to find either. See JMOL at 15-40

#### 1.    Substantial Similarity

First, defendants argue that plaintiffs failed to establish substantial similarity. They advance arguments under both the extrinsic test, which presents questions of law to be resolved by the Court, as well as the intrinsic test, which presents a question of fact that here requires the Court to determine whether the jury's verdict was supported by sufficient evidence. Williams, 895 F.3d at 1119 (citing Benay, 607 F.3d at 624); see also Reeves, 530 U.S. at 150.

##### a.  Extrinsic Test

The extrinsic test requires the Court to determine whether any elements of the ostinato in "Joyful Noise" are protected and objectively similar to corresponding and allegedly infringing elements of "Dark Horse." See Smith v. Jackson, 84 F.3d 1213, 1218 (9th Cir. 1996) (explaining in a case involving a musical composition copyright that the "extrinsic test asks whether two works share a similarity of ideas and expression based on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:15-CV-05642-CAS-JCx | Date | March 16, 2020 |
| Title | GRAY; ET AL. V. PERRY; ET AL. | | |

external, objective criteria"). This test is critical because "copyright law does not forbid all copying," only the "illicit copying" of protected works. Rentmeester v. Nike, Inc., 883 F.3d 1111, 1117 (9th Cir. 2018) (affirming dismissal of copyright claim as a matter of law). If plaintiffs cannot satisfy the extrinsic test, for any reason, the inquiry ends and defendants will be entitled to judgment as a matter of law. Stefani, 338 F. Supp. 3d at 1058.

The initial query is whether any elements of the ostinato in "Joyful Noise" are individually protected, and if not, whether the unprotectable elements that make up the ostinato, taken in combination, are nevertheless entitled to copyright protection. Swirsky v. Carey, 376 F.3d 841, 848 (9th Cir. 2004) (citing Satava, 323 F.3d at 811-12).

### i.   Individually Protectable Elements

Although there is generally a low bar for originality in copyright, see Swirsky, 376 F.3d at 851, given the "limited number of notes and chords available to composers," and because "common themes frequently reappear in various compositions," Gaste v. Kaiserman, 863 F.2d 1061, 1068 (2d Cir. 1988) (citation omitted), many if not most of the elements that appear in popular music are not individually protectable. See 1 Nimmer on Copyright § 2.05 (2019) ("In the field of popular songs, many, if not most, compositions bear some similarity to prior songs."). Music, perhaps more than any other work of art, "borrows, and must necessarily borrow, and use much which was well known and used before." Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 575 (1994) (quoting Emerson v. Davies, 8 F. Cas. 615, 619 (C.C.D. Mass. 1845) (Story, J.)). For this reason, courts in musical copyright cases have a significant obligation to strike a "balance between the First Amendment and the Copyright Act"—to "encourage[] others to build freely upon the ideas and information conveyed by a work," and at the same time motivate creative activity, Feist Publications, 499 U.S. at 349-50—by carefully limiting the scope of copyright protection to truly original expression only. Bikram's Yoga Coll. of India, L.P. v. Evolation Yoga, LLC, 803 F.3d 1032, 1037 (9th Cir. 2015) (internal citation omitted).

Musical elements that are "common or trite"—such as the "use of a long-short-long rhythm," "chord progressions," certain "tempos," a "recurring vocal phrase," repeating "hook phrases," the alternating "emphasis of strong and weak beats," "syncopation," the use of "tritones," or the use of "basic musical devices in different manners," Stefani, 338 F. Supp. 3d at 1060 (citing cases)—are, accordingly, not protectable. Jackson, 84 F.3d at 1216 n.3; see also Swirsky, 376 F.3d at 850 (stating that "when certain commonplace expressions are indispensable and naturally associated with the treatment of a given idea, those expressions are treated like ideas and therefore not protected by copyright"). Nor are

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O'   JS-6 | |
|---|---|---|---|---|
| Case No. | 2:15-CV-05642-CAS-JCx | Date | March 16, 2020 | |
| Title | GRAY; ET AL. V. PERRY; ET AL. | | | |

other elements "ubiquitous in popular music" like "rhythms," "glissando[s]," "chants," "the use of horns," or "jingling or pulsing synthesizer element[s]" entitled to protection. See Batiste v. Najm, 28 F. Supp. 3d 595, 615-623 (E.D. La. 2014) (cited in Stefani and collecting cases) (finding that these elements are "common in nearly all pop genres," and concluding that these and related elements of the plaintiffs' pop music compositions were "unoriginal and, thus, unprotectable" as a matter of law). "These building blocks belong in the public domain and cannot be exclusively appropriated by any particular author." Led Zeppelin, No. 16-56057, slip op. at 33, 36 (holding that "commonplace elements that are firmly rooted in [a] genre's tradition" are not copyrightable as a matter of law, and concluding that the jury was properly instructed that "descending chromatic scales, arpeggios[,] or [a] short sequence of three notes" are "common musical elements") (citing Williams, 895 F.3d at 1140-41 (Nguyen, J., dissenting).

At trial, plaintiffs presented the expert testimony of musicologist Dr. Todd Decker that there are "five or six" protectable elements in the "Joyful Noise" ostinato, which defendants allegedly copied:

"The length of the ostinato is similar, eight notes. The rhythm of the ostinato is similar. The melodic content, the scale degrees present. The melodic shape so the—the way the melody moves through musical space. Similar, the timbre or the quality and color of the sound is similar, and the use of the—the placement of this material, this ostinato, in the musical space of the recording in the mix, that is also similar. So that's five or six points of similarity between the two ostinatos."

See Trial Tr. at 445:17-446:3 (brackets added).

In their opposition papers, plaintiffs claim that these "five or six" elements are actually nine separate elements: "(1) a melody built in the minor mode; (2) a phrase length of eight notes; (3) a pitch sequence beginning with '3, 3, 3, 3, 2, 2'; (4) a similar resolution to both phrases; (5) a rhythm of eighth notes; (6) a square and even rhythm; (7) the structural use of the phrase as an ostinato; (8) the timbre of the instrumentation; and (9) the notably empty and sparse texture of the compositions." See JMOL Opp. at 8. Amici musicologists, meanwhile, contend that Dr. Decker's testimony at most identifies five allegedly protected elements: "(i) A pitch sequence of scale degrees 3-3-3-3-2-2; (ii) The temporal spacing of the notes (i.e., rhythm); (iii) Timbre (in the form of a 'pingy' synthesizer sound); (iv) A purported phrase length of eight notes; and (v) The 'placement' of the ostinato in the sound recording's mix." See Am. Br. at 4 (citing Trial Tr. at 445:17-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**   **JS-6**

| Case No. | 2:15-CV-05642-CAS-JCx | Date | March 16, 2020 |
|---|---|---|---|
| Title | GRAY; ET AL. V. PERRY; ET AL. | | |

446:3). Defendants' opening brief addresses the elements that Dr. Decker set forth in the passage cited above, but also, in its reply, addresses the nine elements that the plaintiffs set forth in their opposition. See, e.g., JMOL Reply at 16-18. In fact, Defendants argue that, whether these elements are five, six, or nine in number, none of them individually can be accorded copyright protection as a matter of law. Id.

The Court agrees that the uncontroverted evidence points to only one conclusion: that none of these individual elements are independently protectable. It is plaintiffs' burden to establish the protected elements of their allegedly infringed work. See 3 Nimmer on Copyright § 12.11 (2019) ("Obviously, the plaintiff bears the burden of proof on the prima facie case, and the defendant bears the burden as to defenses.").[3] Dr. Decker did not provide testimony that each of the elements he identified are individually original.[4] To the contrary, he testified that "[n]o one single . . . element" caused him to determine that the works contained protected features that were substantially similar. Trial Tr. at 524:4. "Any

---

[3] Although possession of a Certificate of Registration with the U.S. Copyright Office can, on some issues, shift the burden to the defendant to establish the non-protectable elements, see Swirsky, 376 F.3d at 851; 3 Nimmer on Copyright § 12.11[B][1] (2019), it is well-settled in this circuit that "[t]he presumption of originality created by a Certificate of Registration is not relevant to the district court's scenes a faire determination"—i.e., the winnowing out of unprotected commonplace elements—that takes places as part of the "copying inquiry." Jackson, 84 F.3d at 1219. The certificate "only creates a rebuttable presumption of originality applicable to a defendant's attack on the *validity* of a plaintiff's copyright." Id. (emphasis original). It remains a copyright plaintiff's burden to establish which elements of its work are protected. See also Feist, 499 U.S. at 348 ("The mere fact that a work is copyrighted does not mean that every element of the work may be protected. . . . . [C]opyright protection may extend only to those components of a work that are original to the author.")

[4] The excerpts of Dr. Decker's testimony discussed on pages 9-12 of the plaintiffs' opposition do not establish protectability in any of the identified elements, either. See JMOL Opp. at 9-12. These excerpts either address how individual elements are allegedly similar between the two ostinatos, or else how individual elements in the two ostinatos are distinct from certain identified works of prior art. The excerpted portions of his testimony does not put forward evidence, and certainly not sufficient evidence, that each of the identified musical elements warrant copyright protection by themselves.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'     JS-6**

| Case No. | 2:15-CV-05642-CAS-JCx | Date | March 16, 2020 |
|----------|----------------------|------|----------------|
| Title | GRAY; ET AL. V. PERRY; ET AL. | | |

single one of those [elements] would not have been enough," he conceded, "[i]t's the combination of them" that supported his conclusion. Id. at 524:16-17.

Plaintiffs contend that, notwithstanding what Dr. Decker said, he did not expressly concede "that each individual element was unremarkable or commonplace." JMOL Opp. at 8. The clear—indeed, only—implication of Dr. Decker's testimony is that, if the two ostinatos are similar at all, it is reasonable only as a result of the arrangement of elements within those ostinatos, not any similarities between the individual elements themselves (which "would not have been enough"). Plaintiffs' burden to present evidence that establishes the protectability of each individual element is not met when their own expert provides testimony that assumes the opposite.

Further, Dr. Decker conceded, in substance, that several of the allegedly original individual elements of the plaintiffs' ostinato are not original: (1) with respect to the phrase length of eight notes, Dr. Decker testified that it is "characteristic for a phrase like this [ostinato] to last for eight beats," Trial Tr. at 448:3-9; (2) with respect to the beginning pitch sequence of "3, 3, 3, 3, 2, 2," Dr. Decker testified that a repeating scale degree of "3" that later resolves is a technique used for "building up tension that wants to be released" and that, when such tension is released in a song with "strong beat" like "Joyful Noise" it is "released to 2," id. at 451:22-24;[5] (3) with respect to the way the "Joyful Noise" ostinato resolves from 3 to 2 to 1, Dr. Decker testified that "scale degrees have tendencies" in popular music such that, to make a pleasant consonant sound, "3 wants to go down to 2" and "2 desperately wants to go to 1" because "1 is our home note," which indicates that the way the ostinato resolves is not so much original as it is necessary, id. at 443:24-444:14, 450:18-22; (4) with respect to the "Joyful Noise" ostinato's "square and even rhythm," Dr. Decker testified that this is a "relatively simple rhythmic choice" and agreed that "no composer [is] entitled to monopolize the rhythm of eight even quarter notes," id. at 507:12-23;[6] (5) with respect to the ostinato's pingy synthesized timbre, Dr. Decker testified that it

---

[5] Dr. Decker also testified that it is "relatively simple" to "hit four Cs in a row on a piano and then two Bs," in part because doing so just amounts to hitting two adjacent white keys. Id. at 494:1-7, 516:12-14.

[6] Defendants also presented testimony that prior works—including prior works composed by plaintiff Gottwald—also contain evenly-spaced notes. See id. at 904:7-905:17, 907:17-908:4, 913:8-914:11.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'    JS-6**

| Case No. | 2:15-CV-05642-CAS-JCx | Date | March 16, 2020 |
|----------|------------------------|------|----------------|
| Title | GRAY; ET AL. V. PERRY; ET AL. | | |

is essentially common since it would be "very difficult to monopolize," id. at 517:3-5; and (6) with respect to the deployment of these phrases as an ostinato (as opposed to some other musical device), Dr. Decker testified that ostinatos are commonly-used musical devices in "countless" musical compositions, id. at 506:14-507:7.

In fact, the nine individual elements that plaintiffs identify in their opposition (see JMOL Opp. at 8) are precisely the kinds of commonplace elements that courts have routinely denied copyright protection, at least standing alone, as a matter of law:

- First, the key or scale in which a melody is composed is not protectable as a matter of law. See, e.g., Tisi v. Patrick, 97 F. Supp. 2d 539, 548–49 (S.D.N.Y. 2000) (concluding that "the key of A major" is a "non-protectible musical element[]" that is "not copyrightable as a matter of law"); see also Gaste, 863 F.2d at 1068 (limited number of musical elements renders most individual elements, like scale, unprotected).

- Second, plaintiffs concede that a phrase length of eight notes is not an independently protectable musical element. See JMOL Opp. at 12; see also Darrell v. Joe Morris Music Co., 113 F.2d 80, 80 (2d Cir. 1940) (per curiam) (holding that "a sequence of eight notes" is a "simple, trite theme[]" that is "likely to recur spontaneously").

- Third, a pitch sequence, like a chord progression, is not entitled to copyright protection. Stefani, 338 F. Supp. 3d at 1060.

- Fourth, because the way that the "Joyful Noise" ostinato resolves is determined by rules of consonance common in popular music, see Trial Tr. at 443:24-444:14, 450:18-22, it is not the type of musical element that is protectable as a matter of law. See Swirsky, 376 F.3d at 850 (expressions that are "naturally associated with the treatment of a given idea" are not copyrightable); Darrell, 113 F.2d at 80 (holding that "while there are an enormous number of possible permutations of the musical notes of the scale, only a few are pleasing; and much fewer still suit the infantile demands of the popular ear").

- Fifth, plaintiffs concede that a "rhythm of eighth notes" is commonplace. See JMOL Opp. at 12 (conceding that "a rhythm of eighth notes itself is not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:15-CV-05642-CAS-JCx | Date | March 16, 2020 |
| Title | GRAY; ET AL. V. PERRY; ET AL. | | |

particularly rare" and is only "unique when viewed in context" with other elements); see also Stefani, 338 F. Supp. 3d at 1060 (rhythm not protectable).

- Sixth, an evenly-syncopated rhythm, standing alone, is also not a protectable element.   See Stefani, 338 F. Supp. 3d at 1060 ("syncopation" not protectable); see also Najm, 28 F. Supp. 3d at 616 (citing inter alia N. Music Corp. v. King Record Distrib. Co., 105 F. Supp. 393, 400 (S.D.N.Y. 1952) for the proposition that "originality of rhythm is a rarity, if not an impossibility").

- Seventh, because an ostinato is a "basic musical device" that is common in popular music, see Trial Tr. at 506:14-507:7, the use of an ostinato in a given composition is not, standing alone, protectable.   Stefani, 338 F. Supp. 3d at 1060 (citing Jackson, 84 F.3d at 1216 n.3).

- Eighth, even assuming the "pingy" synthesized timbre of the ostinato in "Joyful Noise" is part of a musical composition and not the sound recording or performance of the composition, see Newton v. Diamond, 204 F. Supp. 2d 1244, 1258 (C.D. Cal. 2002), aff'd, 388 F.3d 1189 (9th Cir. 2004) ("Plaintiff may rely only upon those elements protected by his copyright over the musical composition—not those attributable to his performance of the piece or the sound recording"), a synthesized timbre is a commonplace element of contemporary popular music that is not protectable as a matter of law.   See Najm, 28 F. Supp. 3d at 623 ("a jingling or pulsing synthesizer element" is "common in nearly all pop genres" and not protected as a matter of law).

- And ninth, assuming that a composition's "texture" is a product of composition and not recording or performance, Diamond, 204 F. Supp. 2d at 1258, a composition's texture—which, according to Dr. Decker, refers to the way a composition is "mixed" to reveal "different elements" of sound and its absence, Trial Tr. at 454:10-18—is an inherent feature in any kind of music. Stefani, 338 F. Supp. 3d at 1060 (citing Jackson, 84 F.3d at 1216 n.3).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O'  JS-6 |
|---|---|---|---|
| Case No. | 2:15-CV-05642-CAS-JCx | Date | March 16, 2020 |
| Title | GRAY; ET AL. V. PERRY; ET AL. | | |

For the foregoing reasons, the Court cannot conclude, pursuant to the extrinsic test, that any of the allegedly original individual elements of the "Joyful Noise" ostinato are independently protectable as a matter of law.[7]

### ii.    Protection For Combination Of Unprotected Elements

The Court's inquiry, however, does not end there.  Plaintiffs may still prove infringement of their ostinato if they can demonstrate that it is comprised of a protectable combination of otherwise unprotected elements.  Satava, 323 F.3d at 811-12.  Those elements must be "numerous enough, and their selection and arrangement original enough" to warrant protection as "an original work of authorship."  Id. at 811.  Since "a selection and arrangement copyright protects . . . the *particular* way in which the artistic elements form a coherent pattern, synthesis, or design," it is not enough to assert "a 'combination of unprotectable elements' without explaining how these elements are particularly selected and arranged."  Led Zeppelin, No. 16-56057, slip op. at 44-45, 46 (explaining that this "amounts to nothing more than trying to copyright commonplace elements") (citing Satava, 323 F.3d at 811-12).

In considering this issue, the Court is "guided by relatively little precedent." Swirsky, 376 F.3d at 848-49 (acknowledging that the "extrinsic test provides an awkward framework to apply to copyrighted works like music" and that "no one magical combination of [compositional elements] will automatically substantiate a musical infringement suit").  "[E]ach allegation of infringement [is] unique" in the musical context, and must be assessed *ad hoc*.  Id. at 849.  To determine whether the various compositional elements of plaintiffs' ostinato are entitled to this sort of copyright protection in the aggregate, the Court first reviews the relevant precedents.

Beginning with perhaps the most notable case that found a protectable combination of otherwise unprotected musical elements, in Three Boys, the Ninth Circuit affirmed a finding of copyright protection based on the combination of "five otherwise unprotectable elements": (1) the title hook phrase (including the lyric, rhythm, and pitch); (2) the shifted cadence; (3) the instrumental figures; (4) the verse/chorus relationship; and (5) the fade ending.  Three Boys, 212 F.3d at 485; see also Swirsky, 376 F.3d at 849 (discussing the

---

[7] Plaintiffs concede that, in final analysis, "[t]his case was about a distinctive *combination* of multiple musical elements," not any individual elements.  JMOL Opp. at 7 (emphasis original).  The Court addresses this argument in the section below.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:15-CV-05642-CAS-JCx | Date | March 16, 2020 |
| Title | GRAY; ET AL. V. PERRY; ET AL. | | |

decision in <u>Three Boys</u>).[8]  <u>Three Boys</u> concerned whether Michael Bolton's 1991 song "Love is a Wonderful Thing," in its entirety, infringed upon the Isley Brothers' 1954 song of the same name, in its entirety.  <u>See Three Boys</u>, 212 F.3d at 480.  After a trial in which Bolton's defense expert conceded that "he had not found the combination of unprotectible elements in the Isley Brothers' song" in any prior compositions, the jury entered a verdict that "found infringement based on a unique compilation of those elements."  <u>Id.</u> at 485. The district court denied the defendants' post-trial motions for judgment as a matter of law and a new trial, <u>id.</u> at 481, and the Ninth Circuit affirmed, <u>id.</u> at 485.

Next, although it did not squarely address whether the combination of otherwise unprotected musical elements at issue warranted copyright protection,[9] the Ninth Circuit in <u>Swirsky</u> considered whether the first measure of the chorus in plaintiff's song "One of

----

[8] Although <u>Three Boys</u> preceded both the Ninth Circuit's 2004 decision in <u>Swirsky</u> (that recognized the application of the thin copyright doctrine to musical composition cases) and 2003 decision in <u>Satava</u> (which clarified how to apply the thin copyright doctrine), it followed the Ninth Circuit's seminal 1994 decision in <u>Apple Computer Co.</u>, 35 F.3d at 1446, which held in part that an "original selection and arrangement of unprotected elements" may be entitled to copyright protection.

[9] The <u>Swirsky</u> court addressed the question of what kind of musical elements could in combination warrant copyright protection only hypothetically since the district court had "disregard[ed]" the possibility that a combination of unprotected elements might still receive copyright protection.  376 F.3d at 848.  Because the panel held that it was error to omit this analysis and rely exclusively upon an inappropriately rigid "mechanical" test to grant defendant summary judgment, and because the defendant did not argue that summary judgment could be alternatively affirmed under the appropriate standard, the Ninth Circuit reversed without reaching the issue.  <u>Id.</u>  The court thus stated, by way of example, that "although chord progressions may not be individually protected, *if* in combination with rhythm and pitch sequence, they show the chorus of 'Thank God' to be substantially similar to the chorus of 'One,' infringement *can be* found."  <u>Id.</u> at 848 (emphasis added).  The court did not express an opinion on whether it would have been error to grant defendant judgment as a matter of law on the question of protectable combination, and the case settled on remand.  <u>See</u> Swirsky v. Carey, No. 00-CV-09926-CAS (Ex), ECF No. 83 (C.D. Cal. April 7, 2006) (order of dismissal following settlement).  The opinion is nevertheless instructive for the reasons discussed in the accompanying text.

----

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:15-CV-05642-CAS-JCx | Date | March 16, 2020 |
| Title | GRAY; ET AL. V. PERRY; ET AL. | | |

Those Love Songs" (allegedly infringed by defendant Mariah Carey's song "Thank God I Found You") did not constitute original expression as a matter of law. See Swirsky, 376 F.3d at 851-52. Carey advanced this argument for the first time on appeal as an alternative basis to affirm the district court's grant of summary judgment. Id. at 851. She contended, in part, that the allegedly infringed 7-note first measure of plaintiff's song "lack[ed] protection because of its brevity." Id. The Ninth Circuit rejected this argument, explaining that while "a single musical note would be too small a unit to attract copyright protection[,] . . . an arrangement of a limited number of notes can garner copyright protection." Id. at 851. The court then held that "[i]t cannot be said as a matter of law that seven notes is too short a length to garner copyright protection." Id. at 852.

The Ninth Circuit again addressed the issue only hypothetically in Williams, 895 F.3d at 1120. While, as discussed, the court there held that the "virtually identical" step of the Satava analysis did not apply to the musical composition at issue (an entire work, not just a portion), see supra § III at n. 2, the court embraced and applied the principle from Apple Computer, Satava, and Swirsky that a combination of elements—there, portions of six musical elements: "[1] signature phrases, [2] hooks, [3] bass lines, [4] keyboard chords, [5] harmonic structures, and [6] vocal melodies," Williams, 895 F.3d at 1117—may receive copyright protection if sufficiently original. Id. at 1120. At trial, the jury found that the combination of these elements of the Gayes' song "Got To Give It Up" was protected, that the Thicke parties infringed on the protected elements, returned a verdict for the Gayes, and awarded damages. Id. at 1127-28. Critically, the Thicke parties "failed to make a Rule 50(a) motion for judgment as a matter of law at trial" which "preclude[d] consideration of a Rule 50(b) motion for judgment as a matter of law" following trial. Id. at 1134-35 (citation omitted). Accordingly, the Ninth Circuit's review of the jury's finding of a protected combination was confined to a "factbound" highly deferential review that did not permit the panel to revisit the protectability issue even if "it is able to determine substantial similarity, or lack thereof, under the extrinsic test" as a matter of law. Id. at 1127-28, 1134-35 (explaining that "an advocate's failure to comply with Rule 50's requirements . . . compels us to heighten the level of deference we apply on appeal" and concluding that the panel lacked the authority "to enter judgment as a matter of law in the absence of a Rule 50(a) motion below" on the extrinsic test). Although neither the district court nor the Ninth Circuit for this reason had the opportunity to consider the question of protectability as a matter of law after all the evidence had been presented, the court's conclusion that the jury could have found the six individually unprotectable musical elements identified at trial cumulatively protectible is informative.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:15-CV-05642-CAS-JCx | Date | March 16, 2020 |
| Title | GRAY; ET AL. V. PERRY; ET AL. | | |

A court in the District of Oregon squarely found a protectable combination of
otherwise unprotected musical elements in <u>Erickson v. Blake</u>, 839 F. Supp. 2d 1132 (D.
Or. 2012). That case involved two musical compositions that "transpos[ed] the digits of *pi*
to a set of musical notes" deployed as a motif. <u>Id.</u> at 1139. The plaintiff alleged that the
defendant's composition infringed, in its entirety, upon the plaintiff's composition in its
entirety. <u>Id.</u> at 1134. The defendant moved to dismiss the complaint pursuant to the
extrinsic test on grounds that the works lacked any similarity beyond the unprotectable idea
"of putting the digits of *pi* into music." <u>Id</u>. The Court agreed that "*pi* is a non-copyrightable
fact and the transcription of *pi* to music is a non-copyrightable idea," but did not end its
analysis there. <u>Id.</u> at 1139. After filtering out those unprotectable elements of the allegedly
infringed composition's "primary motif," the court considered whether the composition's
remaining "pattern of other musical elements: the choice of scale, rhythm, harmony, and
embellishments or variation" comprised a combination of elements protectable pursuant to
<u>Apple Computer</u> and <u>Satava</u>. <u>Id.</u> The court concluded that they did: "[t]he copyrightability
of the song is not . . . the melody based on pi, but the fitting together of this sequence with
other melodious phrases into a unique composition." <u>Id.</u> (internal marks omitted) (citing
<u>Granite Music Corp. v. United Artists Corp.</u>, 532 F.2d 718, 721 (9th Cir. 1976)). It
identified "the cadence, flourishes, harmonies, [and] structure" of the remaining
composition, in particular, to conclude that the plaintiff had a "thin" copyright in the song
as a whole that "protects his work only from virtually identical copying." <u>Id.</u> at 1140.

Other courts have declined to find similar combinations of musical elements
protectable. In <u>Stefani</u>, 338 F. Supp. 3d at 1051, for example, a court in this district
considered whether the (1) "distinctive pronunciation and rhyming", (2) use of a particular
lyric at a particular beat, (3) rhythm, (4) recurring vocal phrase, and (5) the presence of
tritones "qualif[ied]" the plaintiff's song "for copyright protection" by virtue of their
"arrange[ment] in an original manner." <u>Id.</u> at 1059-61 (collecting the five elements from
Features A, B, and C that the court considered). The court concluded that these features
were not "voluminous" enough to provide "the quantum of originality needed to merit
copyright protection," and entered judgment for defendant as a matter of law. <u>Id.</u> at 1061
(quoting <u>Satava</u>, 323 F.3d at 811).

Similarly, in <u>Cottrill v. Spears</u>, No. 02-CIV-A-03646, 2003 WL 21223846 (E.D. Pa.
May 22, 2003), <u>aff'd</u>, 87 F. App'x 803 (3d Cir. 2004), plaintiffs alleged that Brittany
Spears' "What U See Is What U Get" infringed upon the following compositional elements
of their song "What You See Is What You Get": (1) two identical pitches at the opening of
each song's chorus; (2) two verses that begin and end with an A-minor chord; (3) the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:15-CV-05642-CAS-JCx | Date | March 16, 2020 |
| Title | GRAY; ET AL. V. PERRY; ET AL. | | |

repetition of a particular note three times in their verses; and (4) a setting in 4/4 time. Id. at 9. After concluding that none of those elements was individually protectable, the court cited the Ninth Circuit's standard and considered whether "a combination of [the] unprotectible elements" in the plaintiff's song may nevertheless "qualify for copyright protection." Id. at *9 (citing Apple Computer, 35 F.3d at 1446). The court then cited the Ninth Circuit's decision in Satava, 323 F.3d at 811, for the rule that those elements must still be "numerous enough and their selection and arrangement original enough" to warrant protection, and concluded that "[t]he same cannot be said of the elements here, especially in light of the fact that they are common to music of this type." Id. at *9 (citing Gaste, 863 F.2d at 1068). On this basis, the court granted Spears judgment as a matter of law. Id.

Considering these decisions, the Court notes as follows. First, Swrisky stands for the proposition that even a very short musical phrase containing some mix of musical elements may be entitled to protection if that mix is sufficiently original. Second, in each of the cases that addressed and found a protected combination of otherwise unprotectible elements, the protected combination concerned a mix of compositional elements present across a compositional work as a whole, not within a single portion of that composition. See Three Boys, 212 F.3d at 485; Williams, 895 F.3d at 1127-28; Erickson, 839 F. Supp. at 1139. And third, the number of elements comprising a given combination does not strictly determine its protectability in the aggregate, and supplies a less material consideration than the overall combination's originality. Compare Three Boys, 212 F.3d at 485 (five elements were protected) and Williams, 895 F.3d at 1127-28 (no abuse of discretion for district court to determine that the jury's finding that six elements were protected was not clearly against the weight of the evidence) with Stefani, 338 F. Supp. 3d at 1061 (five elements not protected); see also Led Zeppelin, No. 16-56047, slip op. at 45 n. 11 ("Properly read, Swirsky left open the possibility that five or more different musical elements may be analyzed for a substantial similarity analysis, not that a set of five musical elements is always sufficient to find infringement.").

In view of these decisions, the Court now turns to whether the musical elements that comprise the 8-note ostinato in "Joyful Noise" are "numerous enough" and "arranged" in a sufficiently original manner to warrant copyright protection. See Satava, 323 F.3d at 811. The Court concludes that they do not. Although Swirsky contemplates the possibility that an 8-note musical phrase may be entitled to copyright protection pursuant to Satava, the parties have not cited any authority (let alone binding authority) holding that an otherwise unprotected musical phrase, isolated from the rest of a musical composition, in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**           **'O'**     **JS-6**

| Case No. | 2:15-CV-05642-CAS-JCx | Date | March 16, 2020 |
|---|---|---|---|
| Title | GRAY; ET AL. V. PERRY; ET AL. | | |

fact warranted copyright protection.[10]  See Stefani, 338 F. Supp. 3d at 1060 (no protection, even across entire song, for five comparable elements); see also 4 Nimmer on Copyright § 13.03[A][2][a] (2019) ("[I]t is most unusual for infringement to be found on the basis of similarity of a single line, and generally, the likelihood of copying but a single line of such importance, as to warrant a finding of substantial similarity, is remote.")

It is undisputed in this case, even viewing the evidence in the light most favorable to plaintiffs, that the signature elements of the 8-note ostinato in "Joyful Noise"—the 3-3-3-3-2-2 pitch sequence, the resolution of that sequence with a 3-2-1-5 sequence, the even rhythm without syncopation, and its development across a sparse texture—is not a particularly unique or rare combination, even in its deployment as an ostinato: prior compositions, including prior works composed by the parties, as well as what all agree is a separate non-infringing ostinato in "Dark Horse," all contain similar elements.  See Trial Tr. at 904:7-905:17, 907:17-908:4 (unrebutted testimony of defendants' expert Dr. Ferrara discussing the presence of this pitch sequence in an even rhythm in the children's songs "Merrily We Roll Along" and "Jolly Old St. Nicholas"); see id. at 884:8-20, 886:12-24, 913:8-914:11 (unrebutted testimony from Dr. Ferrara that three other songs, including a song composed by defendant Gottwald called "Love Me Or Hate Me," contains the same evenly-spaced, repeating, pitch content, with the same 3-2-1-5 resolution, including as an ostinato); see id. at 496:8-497:6 (testimony from Dr. Decker that the "melodic contour of pitches" in the allegedly infringing ostinato in "Dark Horse," and another ostinato in "Dark

---

[10] The Court also notes Judge Hand's observations made nearly a century ago that an eight-note ostinato was "the proper subject" of an infringement action since it comprised a "substantial component" of the plaintiff's copyrighted song.  See Fred Fisher, Inc., v. Dillingham, 298 F. 145, 147 (S.D.N.Y. 1924) (Hand, J.).  The Ninth Circuit has cited the case favorably, but only (as relevant here) for the proposition that even a "relatively small" portion of an "entire work" may receive copyright protection if it is "qualitatively important" in context.  Baxter v. MCA, Inc., 812 F.2d 421, 425 (9th Cir. 1987) (string-citing cases).  That begs the material question, of course, as to when a small combination of otherwise unprotected elements of a larger musical work becomes "qualitatively important" enough to prompt protection.  In Baxter, the court explained in dicta that, even if its analysis were limited to six notes and not plaintiff's entire composition, a six-note sequence could still be "qualitatively important" enough to become protectible expression.  Id.  And in Swirsky, the case settled before the same question involving the seven-note sequence at issue in that case could be fully litigated.  See supra n. 9.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:15-CV-05642-CAS-JCx | Date | March 16, 2020 |
| Title | GRAY; ET AL. V. PERRY; ET AL. | | |

Horse" that is not infringing, are "the same"). See also Am. Br. at 8 (explaining that a search of music databases housed by the Center for Computer Assisted Research in the Humanities at Stanford University, and the Repertoire International des Sources Musicales, indicates that there are at least 6 other compositions in the same key containing the same pitch sequence, and more than 2,000 in all keys).

That these other works may also contain other dissimilar elements does not alter the conclusion that the elements they share in combination comprise the "bedrock" of what plaintiffs and their expert claim to be original. See Opp. at 11, 15 (quoting Trial Tr. 524:11). This does not meet the applicable standard of originality. See, e.g., Griffin v. J-Records, 398 F. Supp. 2d 1137, 1143 (E.D. Wash. 2005) (granting judgment as a matter of law to defendant in action alleging infringement of copyright in musical composition where the plaintiff "failed to . . . present competent testimony contesting the conclusions of expert musicologist Dr. Ferrara" that "the two works are not substantially similar and the portion that is similar is a seven-note melodic sequence that is in the public domain") (discussed in 4 Nimmer on Copyright § 13.03[A][2][a] (2019)).

The other elements present in plaintiffs' 8-note ostinato also do not bring the combination within the ambit of the copyright law's protection. The placement of the ostinato within the composition's verses does not make it so exceptionally original as to warrant protection. See, e.g., Allen v. Destiny's Child, No. 06-CV-06606, 2009 WL 2178676, at *12 (N.D. Ill. July 21, 2009) (finding no "legal authority for this court to consider that the location of a single, common three-note sequence in a musical composition is sufficient to support a finding of protectability in the context of alleged copyright infringement"). That the ostinato is phrased in minor scale also does not make the combination sufficiently original given the limited number of scales that exist. See Led Zeppelin, No. 16-56057, slip op. at 36 (holding that "musical concepts like the minor chromatic line and the associated chords 'have been used in music for quite a long time' as 'building blocks'"); Gaste, 863 F.2d at 1068. That effectively leaves the ostinato's pingy synthesizer sound, which, even if considered a function of composition, cf. Diamond, 204 F. Supp. 2d at 1258, would not transform the "Joyful Noise" ostinato into protected expression. Synthesized timbre is, as mentioned above, a common element in contemporary popular music. A relatively common 8-note combination of unprotected elements that happens to be played in a timbre common to a particular genre of music cannot be so original as to warrant copyright protection. See Jackson, 84 F.3d at 1216 n. 3; see also Heim v. Universal Pictures Co., 154 F.2d 480, 488 (2d Cir. 1946) (affirming

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:15-CV-05642-CAS-JCx | Date | March 16, 2020 |
| Title | GRAY; ET AL. V. PERRY; ET AL. | | |

trial court's judgment that "common trite note sequence did not possess enough originality, raising it above the level of the banal").

Because the sole musical phrase that plaintiffs claim infringement upon is not protectable expression, the extrinsic test is not satisfied, and plaintiffs' infringement claim—even with the evidence construed in plaintiffs' favor—fails as a matter of law. Rentmeester, 883 F.3d at 1117 ("copyright law does not forbid all copying," only the "illicit copying" of protected works); e.g., Stefani, 338 F. Supp. 3d at 1058 ("A plaintiff who cannot satisfy the extrinsic test necessarily cannot prevail on a copyright claim as a matter of law."). Defendants are therefore entitled to judgment as a matter of law on plaintiffs' copyright infringement claim. Conditionally in the alternative, defendants are entitled to a new trial because, for the same reasons set forth above, the jury's verdict is against the clear weight of the evidence. See Fed. R. Civ. Proc. 50(c)(1).

### iii.   Substantial Similarity Between Combinations

Even if the 8-note ostinato were protected expression as a combination, defendants would still be entitled to judgment as a matter of law since the evidence submitted at trial does not support a legal conclusion that the two ostinatos are, objectively, substantially similar. See Satava, 323 F.3d at 811-12.[11]  "[A] selection and arrangement copyright is infringed only where the works share, in substantial amounts, the 'particular,' i.e. the 'same,' combination of unprotectable elements." Led Zeppelin, No. 16-56057, slip op. at 46.  Here, because "the range of protectable expression" in an 8-note pop music ostinato comprised of individually unoriginal elements "is narrow"—see Gaste, 863 F.2d at 1068; 1 Nimmer on Copyright § 2.05 (2019)—the combination of unprotectable elements in defendants' allegedly-infringing ostinato "would necessarily have to be 'virtually identical'" to their counterparts in the plaintiffs' ostinato "in order to be substantially similar." Led Zeppelin, No. 16-56057, slip op. at 48 n. 13.

While "virtual identity is not the same as absolute identity," the existence of "greater distinctions do indeed negate liability." 4 Nimmer on Copyright § 13.03[A][4] (2019) (citing cases).  For example, the Erickson court found no infringement where "the cadence,

---

[11] The application of the substantial similarity test to assess whether a defendant's work infringes upon a plaintiff's combination of otherwise unprotected elements is an objective inquiry included within the extrinsic test and thus a question of law reserved to the Court in the first instance.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**    **'O'**    **JS-6**

| Case No. | 2:15-CV-05642-CAS-JCx | Date | March 16, 2020 |
|---|---|---|---|
| Title | GRAY; ET AL. V. PERRY; ET AL. | | |

flourishes, harmonies, [and] structure," among other elements of the defendant's song, were "not virtually identical, or even particularly similar" to the plaintiff's thinly-protected musical composition. See Erickson, 839 F. Supp. 2d at 1140 (concluding that the defendant's "musical work, therefore, does not infringe on" plaintiff's copyright).

The evidence in this case does not support a conclusion that the relevant ostinatos in "Dark Horse" and "Joyful Noise" are virtually identical. There are a number of undisputed objective distinctions that, as a matter of law, negate liability. First, Dr. Decker testified that the pitches on the seventh and eighth beats of the "Joyful Noise" ostinato are different from the pitches on the corresponding beats of the "Dark Horse" ostinato: in "Joyful Noise," the pitch sequence on these beats resolves up from B-A/F, while in "Dark Horse," the pitch sequence on these beats resolves down from A-E. See Trial Tr. at 499:8-501:7. Plaintiffs characterize this testimony as signaling a similarity in how the songs resolve, and point to Dr. Decker's testimony that both ostinatos "shar[e] similar musical strategies for how to end." See JMOL Opp. at 8, 13 (citing Trial Tr. at 459:15-19). But that conclusion is contrary to law: the question is whether the identified and allegedly protected concrete elements of the "Joyful Noise" ostinato are, in their combined form, objectively similar in articulable ways to corresponding concrete elements in the "Dark Horse" ostinato, not whether the ostinatos reflect common "strategies." See Malibu Textiles, Inc., 922 F.3d at 952 ("The extrinsic test 'is an objective comparison of specific expressive elements; it focuses on the articulable similarities between the two works.'") (quoting Aeropostale, 676 F.3d at 848). Moreover, the fact that the two 8-note ostinatos resolve using two different pitches despite a tendency to resolve within only a narrow range of pitches, see id. at 443:24-444:14, 450:18-22 (Dr. Decker conceded that "scale degrees have tendencies" to resolve in a particular manner), indicates an objective distinction rather than a similarity. Second, the composition for the ostinato in "Joyful Noise" contains at least six instances of portamento (i.e. a slide between musical notes) not present in "Dark Horse." See Trial Tr. at 505:9-22. Dr. Decker testified that he does not "hear" these differences "as significant," Trial Tr. at 506:1, but that opinion is legally irrelevant. Dr. Decker acknowledged that the presence of slides in the composition for "Joyful Noise" is "a difference" between the compositions. Id. at 505:22. And third, Dr. Decker acknowledged that the compositions for the ostinatos use different keys, tempos, harmonies, and rhythms. See id. at 460:5-25, 462:1-6, 504:11-22).[12]

---

[12] Amici musicologists note these and other differences, as well. See Am. Br. at 10. Additionally, while Dr. Ferrara testified as to other differences, some of these are clearly

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | **'O'** **JS-6** |
|---|---|---|---|
| Case No. | 2:15-CV-05642-CAS-JCx | Date | March 16, 2020 |
| Title | GRAY; ET AL. V. PERRY; ET AL. | | |

Taken together, these objective distinctions are substantial enough as to preclude a determination of virtual identity. See Erickson, 839 F. Supp. 2d at 1140. For this reason as well, even if the "Joyful Noise" ostinato were entitled to combination copyright protection in the aggregate—and the Court concludes that it is not—the Court concludes that defendants would still be entitled to judgment as a matter of law. Defendants are therefore also entitled to judgment as a matter of law on plaintiffs' copyright infringement claim on this basis. Conditionally in the alternative, defendants are also entitled to a new trial on this basis because, for the same reasons set forth above, the jury's verdict is against the clear weight of the evidence. See Fed. R. Civ. Proc. 50(c)(1).

### b. Intrinsic Test

Defendants also move for judgment as a matter of law on substantial similarity pursuant to the intrinsic test. See JMOL at 27-29. "The intrinsic test is subjective and asks 'whether the ordinary, reasonable person would find the total concept and feel of "Joyful Noise" and "Dark Horse" to be "substantially similar." Three Boys, 212 F.3d at 485. "[T]he subjective question whether works are intrinsically similar must be left to the jury" to resolve in the first instance. Swirsky, 376 F.3d at 845. And since "the intrinsic test for expression is uniquely suited for determination by the trier of fact," reviewing courts generally "will not second-guess the jury's application of the intrinsic test." Id. at 485 (citing Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp., 562 F.2d 1157, 1166 (9th Cir. 1977)).

Although some district courts have determined that the intrinsic test can be resolved as a matter of law in music copyright infringement actions where "no reasonable person could confuse" the subject compositions' overall "concept and feel," see, e.g., ZZ Top v. Chrysler Corp., 54 F. Supp. 2d 983, 986 (W.D. Wash. 1999) (granting defendant judgment as a matter of law because "no reasonable person could confuse the two riffs, even if they were exposed to only six or eight seconds of each"), the Court declines to do so here. Even though the Court concludes that plaintiffs' ostinato is neither protected nor virtually identical to the allegedly infringing ostinato in "Dark Horse" (and that defendants are therefore entitled to judgment as a matter of law), a reasonable jury could nevertheless

---

controverted. Compare Trial Tr. at 918:1-919:13 (Dr. Ferrara stating that the ostinato in "Joyful Noise" proceeds in a 16-note cycle, whereas the allegedly infringing ostinato in "Dark Horse" proceeds in 8-note cycles), with id. at 439:16-25 (Dr. Decker stating that in "Joyful Noise" the ostinato is "eight notes in length").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       **'O'**   **JS-6**

| Case No. | 2:15-CV-05642-CAS-JCx | Date | March 16, 2020 |
|---|---|---|---|
| Title | GRAY; ET AL. V. PERRY; ET AL. | | |

conclude that the "concept and feel" of the two ostinatos in this case are "intrinsically" similar.

  **2.** **Access**

   Defendants contend that they are also entitled to judgment as a matter of law because no sufficient evidence supports a finding of access. See JMOL at 27-40.

   At trial, plaintiffs relied on a theory of widespread dissemination to prove access. See JMOL Opp. at 17-19.  "The evidence required to show widespread dissemination will vary from case to case." Loomis, 836 F.3d at 997 (quoting Aeropostale, Inc., 676 F.3d at 847).  The touchstone of the inquiry, however, is whether "the defendant had a reasonable opportunity to view [or hear] plaintiff's work." 4 Nimmer on Copyright § 13.02[A] (2019).  The question presented by this post-trial motion is therefore "not whether Plaintiff has proven access by a preponderance of evidence, but whether *reasonable minds* could find that Defendants had a *reasonable opportunity* to have heard Plaintiff's song before they created their own song."  Three Boys, 212 F.3d at 485 (emphasis original).  "Given the ubiquity of ways to access media online . . . access may be established by a trivial showing that the work is available on demand."  Led Zeppelin, No. 16-56057, slip op. at 31.  The Court must defer to the jury's determination of reasonableness on this question.  Even where a plaintiff's theory of access is "fantastic," the "plaintiff's credibility, even as to those improbabilities, should be left to the jury."  Id. (citing Arnstein v. Porter, 154 F.2d 464, 469 (2d Cir. 1946)).

   While "distinguishing a 'bare' possibility from a 'reasonable' possibility will present a close question," 4 Nimmer on Copyright § 13.02[A] (2019), the Court believes the evidence presented by plaintiffs at trial was sufficient to support the jury's finding as to access.  Plaintiffs presented evidence at trial that "Joyful Noise" was played more than 6 million times on YouTube and MySpace, that "Joyful Noise" was nominated for a Grammy, that "Joyful Noise" was performed at hundreds of concerts across the country, and that "Joyful Noise" ranked highly on the Billboard charts for popular music.  A reasonable jury could have concluded from this evidence that the relevant defendants who composed the allegedly infringing ostinato in "Dark Horse" had a reasonable opportunity to have encountered "Joyful Noise."  See Three Boys, 212 F.3d at 485 ("Although we

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**      **JS-6**

| Case No. | 2:15-CV-05642-CAS-JCx | Date | March 16, 2020 |
|---|---|---|---|
| Title | GRAY; ET AL. V. PERRY; ET AL. | | |

might not reach the same conclusion as the jury regarding access, we find that the jury's conclusion about access is supported by substantial evidence.").[13]

### B.    Other Defenses

Defendants advance three additional arguments, which, they claim, negate their copyright liability, even if the jury could have reasonably found infringement. Although the Court concludes that defendants are entitled to judgment as a matter of law on the infringement claim because plaintiffs cannot satisfy the extrinsic test for substantial similarity, see supra § III.A.1.a, the Court will address each of these additional arguments in turn.

### 1.    Independent Creation Defense

"By establishing reasonable access and substantial similarity," plaintiffs "create a presumption of copying" that defendants may rebut "through proof of independent creation." Three Boys Music, 212 F.3d at 486 (citing Granite Music, 532 F.2d at 721). This is a "factual issue . . . for trial to resolve." 3 Nimmer on Copyright § 12.10[B][2][b] (2019); see, e.g., Kaseberg v. Conaco, LLC, 260 F. Supp. 3d 1229, 1248 (S.D. Cal. 2017) (quoting Nimmer and concluding that the independent creation defense "necessarily implicates credibility determinations" that are "inappropriate" for resolution as a matter of law).

Defendants proffered extensive testimony from defendants Gottwald and Walter that they created the ostinato in "Dark Horse" on their own without knowledge of "Joyful Noise." See JMOL at 40-41 (reciting this evidence). The jury was entitled to credit or discredit this self-interested testimony as it saw fit. See Kaseberg, 260 F. Supp. 3d at 1248. After the jury decided that the testimony was not credible, or at least not so credible as to establish "proof of independent creation," the Court must, at least on this issue of fact,

---

[13] The Court's conclusion is consistent with the Ninth Circuit's decision in Loomis, 836 F.3d at 997-98. As the Court explained in its order denying defendants' earlier motion for summary judgment, Loomis does not require proof of commercial success to establish widespread dissemination. Id. at 997. The decision merely states that in "most cases" the evidence "centers on the degree of a work's commercial sentence," id., while acknowledging that "[t]he evidence required to show widespread dissemination will vary from case to case." Id. See generally MSJ Order at 8.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:15-CV-05642-CAS-JCx | Date | March 16, 2020 |
| Title | GRAY; ET AL. V. PERRY; ET AL. | | |

yield to that determination. See Reeves, 530 U.S. at 150-51 (holding that a district court should only "give credence" to unrebutted testimony favoring a Rule 50 movant if that testimony "comes from disinterested witnesses"). The Court would accordingly not disturb the jury's verdict as to independent creation, had it reached this question.

## 2.   Failure to Establish Ownership of a Joint Work

As an alternate basis for judgment as a matter of law, the defendants argue that plaintiffs failed to present evidence that they own the expression that the defendants allegedly infringed. See JMOL at 41-42 (citing 17 U.S.C. § 411(a)).

According to the defendants, the evidence shows that the ostinato in "Joyful Noise" was originally part of a beat published by Chike Ojukwu that plaintiff Gray purchased and later incorporated into "Joyful Noise." See Trial Tr. at 183:17-184:1, 118:19-119:3, 194:19-22, 356:6-8. They contend "Joyful Noise" is therefore a derivative work, and that plaintiffs' copyright does not extend to protect the preexisting material embodied in the beat. See 17 U.S.C. § 103. Plaintiffs oppose on grounds that "Joyful Noise" is a joint work of authorship created by plaintiffs and Ojukwu, and that Ojukwu retained a 50% ownership stake in the song created with his beat. See Trial Tr. 184:7-22, 186:6-25, 195:9-197:4.

The Copyright Act defines a joint work as "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. "The authors of a joint work are co-owners of the copyright in the work." 17 U.S.C. § 201(a). "[C]ontemporaneous and coordinated action between [creators] is not required" to establish a joint work between creators. Siegel v. Time Warner Inc., 496 F. Supp. 2d 1111, 1145-46 (C.D. Cal. 2007) (citing Edward B. Marks Music Corp. v. Jerry Vogel Music Co., 140 F.2d 266, 267 (2nd Cir. 1944) (Hand, J.)). What matters is that, at some point, "the putative coauthors made objective manifestations of a shared intent to be coauthors." Richlin v. Metro-Goldwyn-Mayer Pictures, Inc., 531 F.3d 962, 968 (9th Cir. 2008) (internal marks omitted). "A contract evidencing intent to be or not to be coauthors is dispositive." Id. (also identifying other factors to consider in the event there is no dispositive contract).

Plaintiffs presented evidence at trial that Ojukwu and Gray contracted to become coauthors of "Joyful Noise." See ECF No. 499-7 (attaching Trial Ex. 5). That is dispositive and establishes plaintiffs' ownership as a matter of law. See Richlin, 531 F.3d at 968. Additional evidence corroborates this conclusion, as well. See, e.g., ECF No. 499-9

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**    **JS-6**

| Case No. | 2:15-CV-05642-CAS-JCx | Date | March 16, 2020 |
|---|---|---|---|
| Title | GRAY; ET AL. V. PERRY; ET AL. | | |

(attaching Trial Ex. 58, which includes the liner notes that lists Ojukwu as the producer of "Joyful Noise," which refers to the person who wrote the instrumental portion of the song).

Defendants are accordingly not entitled to judgment as a matter of law on this basis.

### 3. Liability for Individual Defendants

Defendants also contend that they are entitled to judgment as a matter of law because, they claim, no evidence supports a finding that any defendants other than Walter and Capitol Records are individually liable for the alleged infringement of "Joyful Noise." See JMOL at 44-45.

"Courts in the Ninth Circuit held that in patent, trademark, literary property, and copyright infringement cases, any member of the distribution chain of allegedly infringing products can be jointly and severally liable for the alleged misconduct." Adobe Sys. Inc. v. Blue Source Grp., Inc., 125 F. Supp. 3d 945, 973 (N.D. Cal. 2015) (citing cases). In this case, each of the defendants named in the third amended complaint could be liable for their role in the "distribution chain" at issue. First, each of the other songwriters and producers (in addition to Walter) could be held liable for (i) creating an unauthorized infringing work in "Dark Horse," (ii) permitting and/or directing Capitol Records to distribute copies of "Dark Horse," and (iii) permitting and/or directing Capitol Records to publicly perform "Dark Horse" on radio and on streaming services. See 17 U.S.C. §§ 106(2)-(4). Second, defendants Katy Perry and Jordan Houston could be liable for creating a music video. See id. § 106(4). Third, the remaining corporate defendants provided sound recording and music publishing services for "Dark Horse" that facilitated the creation, distribution, and performance of "Dark Horse." Id. §§ 106(2)-(4).

Since all of the defendants participated in the distribution chain of "Dark Horse" at one level or another, each of the defendants could be found liable for infringement.

### C. Damages Issues

In addition to their arguments on liability, defendants request judgment as a matter of law against the jury's damages award on grounds that the jury (1) failed to properly apportion damages, and (2) that the jury failed to deduct overhead costs from its award. See JMOL at 45-50.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**    **'O'**    **JS-6**

| Case No. | 2:15-CV-05642-CAS-JCx | Date | March 16, 2020 |
|----------|------------------------|------|----------------|
| Title | GRAY; ET AL. V. PERRY; ET AL. | | |

### 1.   Failure to Apportion

At trial, the jury found that 22.5% of the net profit earned by each defendant from "Dark Horse" derived from the use of the ostinato in "Joyful Noise" as opposed to other factors.  See ECF No. 457 ("Damages Verdict") at Question 3.  Defendants contend that this decision reflects "pure speculation unsupported by evidence," justifying judgment in defendants' favor as a matter of law notwithstanding what the jury may have found with respect to liability.  See JMOL at 46.

To recover profits earned by an infringer, "[1] the copyright claimant must first show a causal nexus between the infringement and the gross revenue; and [2] once the causal nexus is shown, the infringer bears the burden of apportioning the profits that were not the result of infringement."  Polar Bear Prods., Inc. v. Timex Corp., 384 F.3d 700, 711 (9th Cir. 2004) (citing 17 U.S.C. § 504(b)).  The Ninth Circuit interprets "the statute's general reference to 'gross revenue' to mean the gross revenue associated with the infringement, as opposed to the infringer's overall gross sales resulting from all streams of revenue."  Id. at 711 n.8.  For this reason, unless substantial evidence supports a "causal link between the infringement and the monetary remedy sought," a court is required to "vacate the award" set forth by the jury.  Id. at 708.

The jury's damages award in this case is not so clearly unsupported by substantial evidence as to warrant vacatur.  Evidence in the record, largely agreed to by stipulation, established the total profits that defendants each received from "Dark Horse."  See Jury Instruction (Phase II) No. 3 (explaining that "the parties have stipulated to the amounts of gross revenues and costs of certain defendants"); see also Trial Tr. at 1400:3-17 (testimony of Capitol Records designate that Capitol Records' total profits attributable to Dark Horse, not otherwise stipulated to, was $12,402,637, and $629,725 after deducting expenses).  Evidence in the record also established that the infringing ostinato in "Dark Horse" plays across 45% of the composition.  See Trial Tr. at 465:1.  Based on that testimony, plaintiffs requested 45% of defendants' aggregated profits, whatever the jury determined that amount to be.[14]  This method of determining damages was not invalid as a matter of law.  See, e.g., Three Boys, 895 F.3d at 487 (holding that an award of "less than 100% of the profits but more than the percentage estimates of [defendant's] experts does not represent clear

---

[14] Defendants also request judgment as a matter of law with respect to the jury's determination of this amount, which defendants claim is contrary to law because it fails to deduct a portion of defendant Capitol Records' overhead costs.  See infra § III.C.2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' JS-6 |
|---|---|---|---|
| Case No. | 2:15-CV-05642-CAS-JCx | Date | March 16, 2020 |
| Title | GRAY; ET AL. V. PERRY; ET AL. | | |

error"). The jury evidently decided to divide plaintiffs' requested amount in half—either as a result of defendants' evidence, or some other reason—and award damages in the amount of 22.5% of total profits.

The jury's decision was based on substantial evidence, and not contrary to law. Therefore, had the Court reached this issue, defendants would not have been entitled to judgment as a matter of law.

## 2. Failure to Deduct Overhead

Defendants further contend that, even if the jury's method of determining damages was supported by substantial evidence and not contrary to law, the jury failed to deduct certain overhead costs borne by Capitol Records, and thus calculated a damages amount with respect to Capitol Records that is contrary to law. See JMOL at 48-50.

To determine the defendants' net profits, the Court instructed the jury to "deduc[t] all appropriate expenses incurred by that defendant from that defendant's gross revenue." See Jury Instruction (Phase II) No. 3. In the Ninth Circuit, appropriate expenses are only those which "contributed to the production, distribution or sales of the infringing goods," including "fixed overhead" costs, provided that the overhead "contributed" to the infringing good. Kamar Int'l, Inc. v. Russ Berrie & Co., 752 F.2d 1326, 1333 (9th Cir. 1984). In this case, defendant Capitol Records presented testimony that its deductible expenses amounted to $11,772,912, including $5,103,213 in overhead costs. See Trial Tr. at 1400:3-17 (discussing Trial Ex. 111). At trial, plaintiffs sought to discredit the appropriateness of this overhead figure through cross-examination, suggesting that the figure contained fixed expenses that did not "contribute" to the production, marketing, or commercial success of "Dark Horse." See Trial Tr. at 1431:15-1435:11. Weighing this evidence, the jury appears to have rejected defendants' request by instead only deducting $6,669,699 of the $11,772,912 in claimed expenses from the total claimed profits, and declining to deduct the $5,103,213. See Damages Verdict at Question 2.

The jury's decision to reject the deduction of $5,103,213 in claimed overhead costs was supported by substantial evidence adduced at trial, see Trial Tr. at 1431:15-1435:11, and not otherwise contrary to law. For this reason, had the Court reached the issue of Capitol Records' overhead, defendants would not have been entitled to judgment as a matter of law.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | **'O'    JS-6** |
|---|---|---|---|
| Case No. | 2:15-CV-05642-CAS-JCx | Date | March 16, 2020 |
| Title | GRAY; ET AL. V. PERRY; ET AL. | | |

### D.    Motion For A New Trial

Because the Court concludes that defendants are entitled to judgment as a matter of law on plaintiffs' copyright infringement claim pursuant to the extrinsic test, see supra § III.A.1.a, defendants' motion for a new trial is denied as moot.

However, had the Court not granted defendants judgment as a matter of law on liability, the Court would have exercised its discretion to order a new trial on damages unless plaintiffs accepted a remittitur.  See Fenner, 716 F.2d at 603 (permitting this procedure).  The jury's damage award in this case—which disregarded powerful testimony that it was Katy Perry's star power and Capitol Records' marketing efforts (not plaintiffs' ostinato) that generated "Dark Horse's" commercial success, see, e.g., Trial Tr. 1508:9-24, 1523:18-1528:23—seems clearly against the weight of the evidence presented at trial, even if otherwise based on substantial evidence offered by the plaintiffs.  See Oltz, 861 F.2d at 1452  (holding that a district court may order a new trial on damages even though substantial evidence supports the jury's verdict).  Had the Court reached this issue, the Court therefore would have been inclined to order a new trial unless a remittitur were accepted.

### IV.    PREJUDGMENT INTEREST

The Court's grant of judgment as a matter of law to defendants also moots plaintiffs' motion for prejudgment interest on the jury's damages award: "[b]ecause there is no award, the question of whether [plaintiffs] was entitled to receive prejudgment interest on that award is moot."  PSM Holding Corp. v. Nat'l Farm Fin. Corp., 884 F.3d 812, 826 (9th Cir. 2018).  For the same reason, even had the Court denied defendants' motion for judgment as a matter of law as to liability, because the Court orders a new trial on damages, there still would have been no damages award from which plaintiffs could have sought interest. Id.

Even putting both of those issues aside, plaintiffs still would not have been entitled to prejudgment interest had the Court left the jury verdict in place.  A district court may, but need not, award prejudgment interest to a copyright infringement claimant, even where a claim is not liquidated.  See Polar Bear, 384 F.3d at 716; Golden State Transit, 773 F. Supp. at 212.  A district court has discretion, for example, to decline claims for prejudgment interest in copyright cases that "vigorously contest[]" close questions of disputed copyright law since any delay in providing restitution, in such circumstances, is justified. See Renoir, 305 F. App'x at 339.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | **'O'**   JS-6 |
|---|---|---|---|
| Case No. | 2:15-CV-05642-CAS-JCx | Date | March 16, 2020 |
| Title | GRAY; ET AL. V. PERRY; ET AL. | | |

Had the Court left the verdict in place, the Court would have exercised its discretion to a decline plaintiffs' claim for prejudgment interest for this reason. This case presented difficult questions of not clearly-settled copyright law. Fully litigating the dispute through trial was accordingly "not needless delay." See, e.g., Brighton Collectibles, Inc. v. Coldwater Creek Inc., No. 06-CV-01848-H (POR), 2009 WL 160235, at *5 (S.D. Cal. Jan. 20, 2009) (denying prejudgment interest because "Coldwater's decision to fully litigate its infringement of the 'Carolina' copyright was not needless delay, as there were legitimate disputes over infringement" that warranted the litigation). In these circumstances, prejudgment interest would not have been warranted. See Renoir, 305 F. App'x at 339.

## V.    CONCLUSION

The Court concludes as follows: (1) defendants' motion for judgment as a matter of law is **GRANTED** and the jury's verdicts as to liability and damages are **VACATED** because plaintiffs' fail to satisfy the extrinsic test; (2) defendants' motion for a new trial is **DENIED AS MOOT**; and (3) plaintiffs' motion for prejudgment interest is **DENIED AS MOOT**, as are any related evidentiary objections.

In the event that the Court of Appeals were to find that judgment as a matter of law on the extrinsic test is not appropriate in this case, the Court conditionally grants a new trial because, for the same reasons set forth above, the jury's findings on the extrinsic test and damages are against the clear weight of the evidence. See Fed. R. Civ. Proc. 50(c)(1).

IT IS SO ORDERED.

| | 00 | : | 23 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |