UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

HONORABLE CHRISTINA A. SNYDER, U.S. DISTRICT JUDGE

MARCUS GRAY, ET AL.,            )
                               )
                PLAINTIFFS,    )
                               )
        vs.                    ) No. CV 15-5642-CAS (JCx)
                               )
KATHERYN ELIZABETH HUDSON, ET  )
AL.,                           )
                               )
                DEFENDANTS.    )
_____)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

MONDAY, MARCH 16, 2020

10:07 A.M.

LOS ANGELES, CALIFORNIA

_____

**CHIA MEI JUI, CSR 3287, CCRR, FCRR**
FEDERAL OFFICIAL COURT REPORTER
350 WEST FIRST STREET, ROOM 4311
LOS ANGELES, CALIFORNIA 90012
cmjui.csr@gmail.com

APPEARANCES OF COUNSEL:

FOR THE PLAINTIFFS:

     (VIA TELEPHONE)
     CAPES SOKOL
     BY:  MICHAEL A. KAHN, ATTORNEY AT LAW
     7701 FORSYTH BOULEVARD, 12TH FLOOR
     ST.LOUIS, MISSOURI 63015
     (314) 721-7701


FOR THE AMICI CURIAE MUSICOLOGISTS:

     (VIA TELEPHONE)
     FREUNDLICH LAW
     BY:  KENNETH D. FREUNDLICH, ATTORNEY AT LAW
     16133 VENTURA BOULEVARD, SUITE 645
     ENCINO, CALIFORNIA 91436
     (310) 275-5350


FOR THE DEFENDANTS:

     GREENBERG TRAURIG, LLP
     BY:  VINCENT H. CHIEFFO, ATTORNEY AT LAW
     1840 CENTURY PARK EAST, SUITE 1900
     LOS ANGELES, CALIFORNIA 90067
     (310) 586-7731


FOR THE DEFENDANTS:

     MITCHELL SILBERBERG & KNUPP LLP
     BY:  CHRISTINE LEPERA, ATTORNEY AT LAW
     AND JEFFREY M. MOVIT, ATTORNEY AT LAW
     437 MADISON AVENUE, 25TH FLOOR
     NEW YORK, NEW YORK 10022
     (212) 509-3900

     MITCHELL SILBERBERG & KNUPP LLP
     BY:  GABRIELLA A. NOURAFCHAN, ATTORNEY AT LAW
     2049 CENTURY PARK EAST, 18TH FLOOR
     LOS ANGELES, CALIFORNIA 90067
     (310) 312-2000

LOS ANGELES, CALIFORNIA; MONDAY, MARCH 16, 2020

10:07 A.M.

- - -

THE CLERK:  Calling CV 15-5642-CAS (JCx), Marcus Gray, et al., versus Katy Perry, et al.  Counsel, please step forward and state your appearances and please identify yourselves before you speak.

MR. KAHN:  This is Michael Kahn, and I represent the plaintiffs in this matter.

MS. LEPERA:  Christine Lepera, Mitchell Silberberg & Knupp with my colleagues Jeffrey Movit, Aaron Wais, and Gabby Nourafchan on behalf of the defense.

MR. CHIEFFO:  Vincent Chieffo, Greenberg and Traurig, on behalf of Katheryn Hudson.

MR. FREUNDLICH:  Kenneth Freundlich on behalf of amici musicologists.

THE CLERK:  That's all, Judge.

THE COURT:  Good morning.  I'm sorry for the inconvenience.  I'm particularly sorry that defense counsel had to travel from New York.  Our Court adopted this policy late Friday.  So to the extent we caused inconvenience, and I am sure we have, please accept our apologies.

MS. LEPERA:  Not at all, Your Honor.  We're glad to be here, and it's no one's fault.  It happens.  So no apology needed.  Thank you.

THE COURT: Okay. So hopefully everyone has the tentative.

And I suspect, Mr. Kahn, that you ought to go first.

MR. KAHN: Thank you, Your Honor. Michael Kahn for the plaintiff.

In reading the opinion, the tentative opinion, there appears to be no dispute that the repeating melodies in "Dark Horse" were substantially similar.

One of the plaintiffs' song, the principal issue is whether that ostinato is sufficiently original to qualify for copyright protection.

The defendants, in making their argument, have picked out some isolated statements by Dr. Decker. They have labeled these statements admissions, and they overemphasized the significance. But when you look at the actual substance of the so-called admissions, they don't refute his core testimony or his opinions. Rather than going through the entire testimony, I will just give four examples.

THE COURT: Sure.

MR. KAHN: One of them is the issue of pitch sequence. The Court notes that the idea of a pitch sequence is not entitled to copyright protection, and that's true. No one can monopolize the idea of a pitch sequence. But you

can certainly copyright an actual pitch sequence.

Pitch sequence is just a musicologist's term for the sequence of notes for a melody.  And the pitch sequence or melody is at the heart of every music copyright.

Here the pitch sequence at issue is the melody of the ostinato which plays through almost half of "Dark Horse."

In his testimony, Dr. Decker goes into great detail of the originality of that pitch sequence and on the objective similarity of the two melodies.

And he finds significant similarity that we summarize in page 9 of our brief and significant originality, particularly focuses on the descending nature of the melody in the minor key and the way it reached downward at the end.

To quote him as we do on page 9, quote, "I had never seen another piece that descends in the way these two do," close quote.

Another example is the evenly syncopated rhythm of the eight quarter notes.  Yes, Dr. Decker agrees that no one can claim the monopoly of eight evenly spaced quarter notes.

That misses the point here.  It's about the use of that idea in this particular type of music and not standing alone, and that's what makes it unique and original.

THE COURT:  Tell me what you mean by "the use of

the idea."

MR. KAHN:  Okay.  In this particular case, that is, with the eight quarter notes, he testified, quote, what -- and this is page 11 -- what's distinctive here is that the rhythm of eight beat is completely even and full of no syncopation which is squarely on the beat which is unusual.

And then he testified in the copying music in America for the last 150 years, syncopation has been the thing that says American music, and that's what is lacking here.

So, yes, you can't monopolize eight quarter notes in an unsyncopated rhythm, but it's their particular use here and the way that they operate which makes them unusual, according to Dr. Decker.

Another one of these is the issue of texture.  And the Court's actually correctly.  It's an inherent feature of any kind of music.

But that misses Dr. Decker's point here.  He identified what he -- the original similarity of texture here.  If you look at page 12 of our brief, he explained most pop music is what he calls thick, which is, quote, full of sounds and mixed in a way you can hear each of these sounds.

I contrast these two ostinatos, he testifies, are

significantly different from are standard pop music.  Again I, quote, both textures are remarkably empty.  When we first hear the ostinatos, they are in relative isolation.  There's very little else going on which directs your ear to it. It's the only thing to listen to.

And he testified for ostinato this is unusual, and that's original.  These are three elements that, while the ideas themselves can't be copyrighted or monopolized, it's how those ideas are expressed.

The only other thing I would point out here is -- are the two examples of prior art that Dr. Ferrara offered which is two songs "Jolly St. Nick" and "Merrily We Roll Along" where, yes, the first fixed notes of the ostinato melody appears in each of those songs.

What it appears is part of a larger pitch sequence in a major chord.  Neither is repeated and neither obviously functions as part of an ostinato.

And we would then argue, based on Dr. Decker's testimony -- he goes into great detail in his testimony that this is not prior art.

We -- as you recall, Your Honor, we played them both for the jury.  It was obvious these two songs were no way similar to this repeating eight note melody that plays through almost half of "Dark Horse."

So without going through each of the nine

elements, we would discourage the Court to rereview that and find Dr. Decker's testimony in full, and we would submit he provides ample evidence of the originality of this ostinato melody.

THE COURT: Okay.

Is it -- who is going to respond?

MS. LEPERA: Thank you, Your Honor.

Firstly, with respect to the question posed by this case what are the precedents that apply here in analyzing what plaintiffs presented as a combination of admittedly unprotectable elements and whether that combination is protectable under the juris prudence, as the Court has correctly gone through the operative precedence, including the most recent Led Zeppelin en banc hearing, the three-step analysis was properly applied here and the result that was reached that there is no protectable combination and, even if there is, the thin copyright doctrine applies and the two pieces are not virtually identical -- obtains.

Firstly with respect to Mr. Kahn's contention that Mr. Decker did not admit that the five or nine -- it was a little bit of a moving tar target -- elements that he claimed in "Joyful Noise" were infringed, he did admit that they were unprotectable, each and every one of them and specifically a square and even rhythm which Mr. Kahn just went into in detail, Dr. Decker admitted that evenly spaced

notes are a relatively simple rhythmic choice that no composer's entitled to monopolize.

The texture element.  Dr. Decker did not dispute that Mr. Gottwald's "Love Me or Hate Me" contains an ostinato with a sparse texture.  The pitch sequence he also admitted was, ultimately, not protectable.  He does not dispute that the prior art contained them.

What we have here is under the juris prudence as the Court methodically evaluated it, a series of unprotectable elements that on their own were admittedly not copyrightable.

Mr. Kahn's argument to this Court and to the jury is that, notwithstanding that, he had a protectable combination.

We have clear law on both prior to Led Zeppelin and now confirmed by Led Zeppelin is that, in order to actually have a protectable combination, you have to meet the Satava test, which was not met here, that you have to have a sufficiently numerous number and elements of -- elements that are the same and selected in a range in a particular fashion that is a holistic design.

The Court properly found that, given all the prior art and given the admissions, this combination did not rise to that level and that, even if it did, which it did not, the next step in the analysis was properly applied, that all

that combination had was a thin copyright and there were numerous differences between the "Dark Horse" ostinato and the ostinato in "Joyful Noise" such that the thin copyright could not prevail because the similarities were not virtually identical.

There were numerous differences even admitted by Dr. Decker and many more on top of that that were identified by the defense.

So at the end of the day, applying the precedence carefully and methodically here, extracting the unprotectable elements individually was appropriately done based on the admissions, finding that the combination here did not rise to the Satava, now Led Zeppelin mandate and, even if it did, it was a thin copyright at best and there was no virtual identity between the "Dark Horse" ostinato and the "Joyful Noise" ostinato sufficient to find substantial similarity and the ruling that substantial similarity is a matter of law no reasonable jury could find was proper and appropriate.

And to Mr. Kahn's first point then, there is a dispute about substantial similarity that's the entirety of this.  The question of originality has to be answered.  Once it is, there can be no substantial similarity.

And that is where we respectfully submit that the tentative is completely proper, thorough, methodical in

applying the precedence and the evidence to a conclusion

that we were entitled to prevail on our Rule 50 motion.

Thank you, Your Honor.

THE COURT:  Mr. Kahn, do you have anything to say? I am going to take the matter under submission.  I think it's fair to say that I want to go back and look again. Thus far I have not heard anything that would cause me to change my mind.

And I -- as I said, I think the Led Zeppelin case has confirmed the views set forth in the order.

MR. KAHN:  I understand, Your Honor.

I would -- I want to make one response to the argument of defendants and then point out where I think there was inadvertent error in the -- my response is this is the classic distinction between an idea and an expression of the idea.

There are five, six -- I'm not sure how many -- nine ideas that are involved in these two ostinatos.  And Dr. Decker has admitted that these ideas cannot be monopolized.  His focus and the focus of the testimony is on the expression of those ideas and that's what we would argue is protected by copyright.  And I do appreciate the fact Your Honor is going to go back and review that.

I would point out one inadvertent error, I believe.

THE COURT:  Probably.

MR. KAHN:  -- in a part that I hope becomes relevant which is in your section on the motion for new trial --

THE COURT:  Yes.

MR. KAHN:  -- in talking about the jury damage award.

We say that the jury damage award in this case which in some cases disgorged dollar amounts from the individual defendants have exceeded the payment defendant actually received for their work on "Dark Horse" --

THE COURT:  What page is that?

MR. KAHN:  I'm sorry.  Page 30.

THE COURT:  Okay.

MR. KAHN:  It's in the whole paragraph at the bottom of the page 30 where there is a reference to the dollar amount exceeded the payments to those defendants.

Actually that is not the case.  There was a stipulation as to what each of the defendants received by way of profit, in fact, I think included in the jury verdict.  And for each of those defendants separately, the jury awarded a disgorgement of, I believe, 22.5 percent.

So no individual defendant in that damage award was asked to disgorge even 50 percent of what that defendant is paid in the way of profits.  I just wanted to point that

out to the Court.

There may be other reasons that the Court would feel compelled to do a remittitur of which I hope there are not, but I just wanted to point out that in the verdict none of these defendants -- none of the individual defendants were required to disgorge a dollar amount greater than what they received for their work and in fact, the verdict for each of the individual defendants, which was 22.5 percent of the profits they received from "Dark Horse."

MS. LEPERA:  Briefly, Your Honor, the way we read that sentence was effectively -- and perhaps this was the intent and not the expression of it precisely that the plaintiffs ultimately received more than the individual -- some of the individual defendants for their work on "Dark Horse."

THE COURT:  Okay.  Let me do this.  I think we all agree that the defendants, to the extent the verdict stands, the defendants were not required to disgorge more funds than they had received.  And let me look at the language and see if I can clarify it because I think it's a little muddled myself.

MS. LEPERA:  Thank you, Your Honor.

THE COURT:  Okay.  Anything further?

MR. CHIEFFO:  Yes, Your Honor.  It's Vincent Chieffo.

There is one other correction, I believe, should be made.  Let me step to the podium, please.

I will be referring to page 28 of the tentative, the carryover paragraph at the top of the page.  And the language that I am questioning is actually I think a quotation from Mr. Kahn's opposing brief.

The sentence in full says, second, defendants, Katy Perry and Jordan Houston, could be liable for creating a music video and publicly performing "Dark Horse" in concerts.

I suggest and request that the end of that sentence starting with "and" and ending with "concerts" be deleted because it's actually contrary to Your Honor's ruling in 2017 that granted partial summary judgment to Ms. Hudson that the performances at her concerts were not infringing because they were licensed.

And I would like to avoid any confusion by simply deleting "and publicly performing 'Dark Horse' in concerts" because that's already been determined as to be not an infringing act by anyone.

THE COURT:  You are correct based upon the lengthy proceedings we had back then.  So I appreciate your reminding me of this.

MR. CHIEFFO:  Thank you, Your Honor.  And that order in 2017 was Docket Entry 246.  Thank you.

CHIA MEI JUI, CSR 3287, CCRR, FCRR
UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

THE COURT: Thank you. Okay. Any other corrections, arguments, or whatever?

MS. LEPERA: No, Your Honor.

THE COURT: Okay.

MR. KAHN: No, Your Honor.

THE COURT: Thank you, everyone. Again, I am sorry for the inconvenience we've caused to defense counsel. But in any event, I hope you all stay safe. I will take this under submission, and hopefully we'll have something for you in the next week.

MS. LEPERA: Thank you, Your Honor. Appreciate it and for all your time and the staff's time. We appreciate the effort.

MR. CHIEFFO: Yes. Again, Vincent Chieffo. Quite impressed by the amount of work that your staff has put into this and the thoughtfulness, and thank you.

THE COURT: Thank you, everyone.

MS. LEPERA: Thank you. Be safe.

THE CLERK: This Court's in recess.

     (Proceedings concluded at 10:28 A.M.)

                    --oOo--

CERTIFICATE


     I hereby certify that pursuant to Section 753,

Title 28, United States Code, the foregoing is a true and

correct transcript of the stenographically reported

proceedings held in the above-entitled matter and that the

transcript page format is in conformance with the

regulations of the Judicial Conference of the United States.


Date:  March 29, 2020.




                    _/S/ CHIA MEI JUI_____

                    Chia Mei Jui, CSR No. 3287